**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JAIME RIOS

       Plaintiff,

          vs.                        Case No. 1:22-cv-03973

REYNALDO GUEVARA
MICHAEL MASON
JOANN HALVORSEN AS
SPECIAL REPRESENTATIVE FOR
ERNEST HALVORSEN, DECEASED
CITY OF CHICAGO

        Defendants.                  JURY TRIAL DEMANDED

                 Defendants.

**MOTION TO EXPAND THE NUMBER OF 404(B) WITNESSES WHICH**
**PLAINTIFF CAN DESIGNATE ON A "WILL CALL" LIST FROM 15 WITNESSES**
**TO 20 WITNESSES AND TO ALLOW PLAINTIFF TO ALLOCATE THE VAST**
**MAJORITY OF THE WITNESSES ON THE "WILL CALL" LIST TO WITNESSES**
**RELEVANT TO THE ACCUSATIONS AGAINST DEFENDANT REYNALDO**
**GUEVARA**

      Plaintiff, Jaime Rios, by and through his attorneys, Stephen L. Richards and Joshua S.M.

Richards respectfully moves to expand the number of 404(b) witnesses which plaintiff can

designate on a "will call" list from 15 witnesses to 20 witnesses and to allow plaintiff to

allocate the vast majority of the witnesses on the "will call" list to witnesses relevant to the

accusations against defendant Reynaldo Guevara. Jaime Rios is asking the court to modify its

order of July 6, 2023 requiring Jaime Rios to identify to defendants five rule 404(b) witnesses

for each defendant – a total of 15 witnesses -- by July 20, 2023. (Dkt # 77).

1

The requested modification is in two parts.

The first request is that Jaime Rios be allowed to allocate the vast majority of the 404(b) witnesses to the claims against defendant Reynaldo Guevara. If the total number of designated Rule 404(b) witnesses remains at 15, Jaime Rios requests to be allowed to designate at least 14 of those witnesses as 404(b) trial witnesses with respect to the claims against Reynaldo Guevara, with one each for defendant Mason.

The second request is that the total number of Rule 404(b) trial witnesses be increased from 15 witnesses to 20 witnesses. Given the unique circumstances of Guevara's alleged misconduct, and the many different types of misconduct alleged in this complaint, this request is reasonable.

*Jaime Rios's Allegations Against Reynaldo Guevara*

Jaime Rios was wrongfully convicted of first degree murder and sentenced to 35 years in prison, ultimately serving 18 years. Chicago police detective Reynaldo Guevara, then a gang specialist, was the driving force behind his arrest and conviction.

Years after Jaime Rios was released from prison, a flood of evidence established that Guevara had engineered the wrongful convictions of over forty defendants. Beginning in 2013, Guevara has invoked his fifth amendment rights and refused to answer any questions about his misconduct. And in a deposition in this case, Guevara again took the fifth when questioned about his violations of Jaime Rios's civil rights.

Jaime Rios and his attorneys eventually uncovered evidence that Guevara had committed misconduct in his case. After Rios obtained affidavits from three witnesses to the misconduct, Rios's conviction was vacated and he was fully exonerated. He was also awarded a certificate of innocence. This civil rights suit followed.

Although Jaime Rios's suit contains claims not only against Guevara but also against two other Chicago police detectives, Michael Mason and Ernest Halvorsen, the vast majority of the claims hinge of the conduct of Guevara, not the conduct of Halvorsen or Mason. And the centrality of the claims against Guevara has become even more clear in the party depositions which have been so far conducted,

Depositions have now been taken for defendants Guevara and Mason, as well as for the plaintiff, Jaime Rios. (Halvorsen, who is deceased, has not been deposed). The depositions of Guevara and Mason are attached as Exhibits A and B. It should be noted that Guevara took the fifth with respect to every accusation in the complaint as well as with respect to every 404(b) allegation.

With the exception of Count XVI, the indemnification count, and Counts XIV and XV, the malicious prosecution counts against defendants Mason and Halvorsen, Defendant Guevara is named in all of the counts of the complaint. And, as the facts alleged in the complaint demonstrate, Guevara was the prime mover in the wrongful prosecution and conviction of Jaime Rios.

Count II of the complaint alleges that Reynaldo Guevara coerced unknown informants and falsely claimed that those informants had told him that Jaime Rios and Cristino Garcia committed the murder of Luis Morales. Count XIII of the complaint alleges that Guevara maliciously prosecuted Jaime Rios by, among other things, falsely arresting him without probable cause. Neither of these counts concern defendants Mason and Halvorsen. In his deposition, Guevara pled the fifth to both sets of allegations.

In his deposition, Michael Mason conceded that it was Guevara who took two informants to the police station, informants who allegedly fingered Jaime Rios. Mason also

conceded that it was Guevara who brought Rios to the station. Jaime Rios testified at his deposition that he was arrested without probable cause by Guevara and other officers, but did not meet Mason until he arrived at the station. In his deposition, Guevara took the fifth with respect to all of these allegations.

In his deposition, Jaime Rios has also testified that Guevara had a specific animus towards Rios and his family, an animus which supports his claim of malicious prosecution. Rios has testified that for years Guevara had terrorized Rios's neighborhood, stopping young men, stealing their money and jewelry and threatening them with arrest. Guevara was also known to ride shotgun for drug dealers. Jaime Rios's mother was the only one in the neighborhood who had ever confronted Guevara over his misconduct. Guevara's attitude towards Rios was aggressive and hostile. In contrast, before Rios's arrest in this case, Mason and Rios had never met.

In Counts VIII and IX of the indictment, Jaime Rios has also claimed that Reynaldo Guevara impermissibly suggested and coerced Luis Huertas, the sole eyewitness who identified Rios as the shooter, into making an improper and constitutionally inadmissible identification. Guevara took the fifth with respect to these claims. Although Mason and Halvorsen are named in Count VIII, the complaint does not contain any specific allegations against them with respect to the allegations in the count. At his deposition, Mason denied any knowledge of these events.

Count X of the complaint alleges that Reynaldo Guevara coerced Benjamin Carrero into giving false testimony that Jaime Rios had given Carrero a gun just after the murder and had told Carrero that he had just shot someone. This count, as it presently stands, does not name Mason or Halvorsen and does not concern them. Guevara has taken the fifth with respect to this allegation.

Counts XI and XII of the complaint allege that Reynaldo Guevara concealed from the defense evidence that Cristino Garcia had given an alibi for the night of the murder and that Guevara had attempted to force Garcia to give a false statement against Jaime Rios by beating Garcia with a flashlight or billy club struck against a phone book held to Garcia's head. This claim also does concern Mason or Halvorsen. Guevara has taken the fifth with respect to this allegation.

In summary, six of the 15 non-indemnification counts concern Guevara alone. Two of the remaining nine counts are claims of malicious prosecution against Mason and Halvorsen.

In the remaining counts, Guevara's conduct is intertwined with the conduct of Mason and Halvorsen, but is still very prominent. Guevara is accused of planning for, and being presented when Mason pulled Rios by the hair and slammed his head against a table. He is accused, along with Mason, of coercing Jaime Rios into making a false statement by threatening Rios that he would lose his child if he did not confess. (Count I). He is accused, along with Mason, of concealing from prosecutors that Rios had initially denied participation in the Morales murder. (Count III). He is accused, along with Mason and Halvorsen, of giving false reports and false information to the prosecutors by concealing the fact that they had supplied the details of the Morales murder to Jaime Rios to induce a false confession. (Count IV). He is accused of concealing exculpatory information from prosecutors and fabricating evidence with respect to their statements to Rios that he was present on the scene and should just say that he was there. (Count V). He is accused, along with Mason and Halvorsen, of concealing exculpatory information from prosecutors and fabricating evidence with respect to Mason's physical coercion of Rios. (Count VI). And he is accused, along with Mason and Halvorsen, of concealing exculpatory information from prosecutors and fabricating evidence with respect to Mason and

Guevara's statements to Rios that he would lose his child if he did not falsely confess. (Count VII). Mason has denied all of these allegations, but Guevara has taken the fifth with respect to each one.

*Proposed 404(b) Evidence*

Since the relevance of any 404(b) evidence depends, in part upon the similarity of the 404(b) conduct to the conduct alleged in the complaint, it may be useful to the court to examine the proposed 404(b) evidence against defendant Guevara and the other defendants. The list attached as Exhibit C, summarizes the proposed evidence which has been tendered in discovery.

**ARGUMENT**

**LEGAL STANDARD**

At this point, the court is charged to manage discovery and "enjoy[s] extremely broad discretion" in doing so. *Jones v. City of Elkhart, Ind*., 737 F.3d 1107, 1115 (7th Cir. 2013). Federal Rule of Civil Procedure 26 governs the scope of civil discovery and allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

At this stage of the proceeding, this court is, of course, not empowered to make any determination as to the admissibility of testimony or the number of witnesses on any topic who may be called at trial. To limit the number of witnesses ""this early in the case would be improper and also outside the bounds of this Court's authority in managing the discovery

process only." *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, at *15 (N.D. Ill. Mar. 18, 2020). But this court does have the power to limit discovery in accordance with the relevancy and proportionality concerns outlined in Rule 26(b), and these limitations may ultimately have an impact on the extent and nature of the evidence admitted at trial. Analysis of this concerns demonstrates that, with respect to the main bad actor in this litigation, Reynaldo Guevara, five Rule 404(b) "will call" witnesses is far too low. Moreover, even the total of fifteen Rule 404(b0 witnesses

The first concern, of course, is relevancy. Relevance, particularly in the discovery phase, "is a low bar to meet." *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, at *7 (N.D. Ill. Mar. 18, 2020). Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)-(b). In determining the scope of discovery under Rule 26, relevance is construed broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Under Rule 404(b), evidence of a crime, wrong, or other act can be used for certain permissible, non-propensity purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Yet it is not enough that evidence of the other act merely be "connected to the defendant's knowledge, intent, or identity (or some other plausible non-propensity purpose)[.]" *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014). For that reason, a proponent of Rule 404(b) evidence cannot "simply [ ] point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." 763 F.3d at 856. Rather, the proponent must establish the relevance to a permitted purpose under Rule 404(b)(2) "through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in

accordance with that character on the occasion charged in the case." 763 F.3d at  860.  If the proponent can satisfy that initial showing, then the trial court must weigh the probative value of the other-act evidence against the risk of unfair prejudice, pursuant to Fed. R. Evid. 403. Id. As part of the trial court's Rule 403 balancing test, the court must consider the degree to which the other act is actually contested, id., because "if a defendant offers to concede or stipulate to the fact for which the evidence is offered, additional evidence may have little probative value." *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, at *5 (N.D. Ill. Mar. 18, 2020).

For the purpose of this lawsuit, the potential 404(b) witnesses whose evidence could be connected to Reynaldo Guevara's  motive, intent, preparation, and plan to secure false confessions and frame suspects  by a chain of reasoning which does not include an impermissible inference as to a general propensity are best analyzed by the counts of the complaint to which they relate.

With respect to Count I, which alleges that Guevara coerced Jaime Rios into making a false confession by conspiring to subject him to physical force and by threatening with him with the loss of a child a number of the proposed witnesses are extremely relevant. For example, **Adriana Mejia** would testify that in August of 1990, Guevara pulled her hair and hit her in the back of the neck in an attempt to get her to make a false inculpatory statement. This conduct is nearly identical to the conduct of Mason, which Guevara allegedly planned and approved of, in pulling Rios by the hair and slamming his head on a table.

With respect to the claim in Count I that Guevara threatened Jaime Rios with the loss of his child if he did not go along with the false statement, this claim is extremely similar to Guevara's conduct in three other cases, the cases of **Evelyn Diaz** (1990), **Gloria Ortiz Bordoy** (1995) and **Rosa Bello** (1990), where he threatened to place their  children in DCFS if they did

not make implicate themselves or make false statements. It is also very similar to his conduct as to **Colleen Miller** (1999), whom he told that if she did not falsely implicate a suspect she would be giving birth in jail.

Count I is also supported by Guevara's pattern and practice of using physical violence in other cases involving suspects or witnesses, many of which also involved cooperation with other officers who also used physical violence. These cases include Daniel Pena (smacking in the face and striking him between the legs with a flashlight, 1986), **Jose Maysonet** (beating with flashlight and phone book, 1990), **Gabriel Solache** (striking face with an open hand, 1990), **Arturo Reyes** (slapping face, 1990), **David Velasquez** (slapping, choking, dousing with water and threatening to kill, 1993), **Timothy Rankins** (beating, 1993), **Rosauro Mejia** (punching in stomach and hitting in face, 1998), **Armando Serrano** (slapping across the face and hitting him in the body, 1993), **Veytek Dembski** (beating and slapping Dembski, 2007), **Adolfo Frias a.k.a Adolfo Friar** (hitting him in the face multiple times, while another detective hit him in the stomach and placed a foot on his genitals), and David Gecht (physical abuse, 1999).

Finally Count I is supported by Guevara's pattern and practice of eliciting false confessions, including from **Daniel Pena**, **Jose Maysonet**, **Gabriel Solache**, **Arturo Reyes**, **Victor Vera** (1989), **David Rivera** (1991), **Elizer Cruzado** (1993) **Voytek Dembski** (2007)., and **Adolfo Frias a.k.a. Adolfo Friar**.

Upon information and belief, all of these witnesses would also support the claims in Counts III, IV, V, VI, and VII, that Guevara wrote false police reports, concealed exculpatory material, and fabricated evidence with respect to the interrogation of Jaime Rios. Similarly, upon information and belief, Count XII, which accuses Guevara of concealing exculpatory

evidence from Cristino Garcia, is supported by all of these witnesses.

Counts VIII and IX, which allege that Guevara coerced and impermissibly suggested that Luis Huertas identify Jaime Rios in a lineup are supported by Guevara's conduct as witnessed by Samuel Perez (coerced to identify Juan Johnson as a murderer, 1998), **William Dorsch** (witnessed Guevara suggest to a witness that he pick a suspect out of a photoarray, 1990), **Carl Richmond** (threatened to charge him if he did not identify Robert Bouto as the murderer, 1993), **Robert Ruiz** (telling Ruiz to falsely identify the Santiago brothers as murderers), **Evelyn Diaz** (1990), and **Luis Figueroa** (telling him to falsely identify Angel Diaz in a lineup as a murderer, 1995).

Count X as to Guevara's conduct in coercing Benjamin Carrero's false statement by threatening to charge him with a gun is supported by the witnesses **Carl Richmond**, **Wilfredo Rosario** (threatening to charge him with murder or conspiracy if he did not give false statements in murder cases, 1991), **Colleen Miller**, and **Daniel Rodriguez** (threatening to raid his girlfriend's home and falsely charging her with a crime, 1999),

Count XII, which accuses Guevara of beating Cristino Garcia with a flashlight or billy club and phone book and concealing the beating from the prosecution, is supported by Guevara's conduct in the physical coercion cases listed above, especially his conduct in the case of **Jose Maysonet**/

The second concern, proportionality, also militates in favor of a greater number of Rule 404(b) "will call" witnesses.

The first proportionality factor, the "importance of the issues at stake in the action" strongly militates in favor of a greater number of Rule 404(b) "will call" witnesses. As the court found in *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, at *15 (N.D. Ill. Mar. 18, 2020)

"the issues at stake in this litigation are substantial." As in the *DeLeon-Reyes* case, this case involves allegations about "murder *** police brutality in the City of Chicago," as well as the wrongful conviction of Jaime Rios, resulting in 18 years imprisonment. This case implicates "not only the loss of liberty, but the legitimacy of the criminal justice system." *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, at *9 (N.D. Ill. Mar. 18, 2020).

The second proportionality factor, the amount in controversy, also weights in favor of granting significant Rule 404(b) discovery. Jaime Rios seek compensatory damages, attorney's fees and costs against all defendants, including Guevara, with punitive damages against all defendants, including Guevara. At trial, Jaime Rios will seek two million dollars for each year of incarceration, or a total of approximately 36 million dollars altogether. That "substantial dollar amount "certainly calls for meaningful discovery efforts." *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, at *10 (N.D. Ill. Mar. 18, 2020).

The third proportionality factor, the parties' relative access to information weighs in favor of a greater number of 404(b) "will call" witnesses, not less. Although defendants are free to depose any witness they want, the vast majority of these witnesses have already been deposed, or have given sworn testimony in other cases; Defendants are free to waste taxpayer funds. They are free to reinvent the wheel. But they are not required to do so.

The fourth proportionality factor, the parties' relative resources, also militates in favor of a greater number of Rule 404(b) witnesses. The defendants have the full resources of the City of Chicago behind them. Nine attorneys have filed appearances on their behalf. In contrast, Jaime Rios is a working class former inmate, currently employed as a building engineer for a hotel. He is represented by two attorneys from a tiny law firm. If the defendants are Goliath, Jaime Rios is David.

Jaime Rios is aware that this court may be influenced by the non-precedential decision in *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, at *5 (N.D. Ill. Mar. 18, 2020), where magistrate Harjani ruled that plaintiffs were allowed to name 10 "will call" 404(b) witnesses as to Guevara's misconduct, more than the five suggested by defendants but far less than the 250 requested by plaintiffs. That case, at a minimum, would suggest that number, five, "will call" witnesses as to Guevara allowed in this court's current order is too low, and that Jaime Rios should be allowed to reallocate the 15 witnesses currently allowed to Guevara rather than the other defendants. But it should be noted that *De-Leon Reyes* is also distinguishable because in *De-Leon Reyes* the plaintiffs, while naming 250 witnesses, neglected to provide details of their information or link them to specific counts in the complaint. *DeLeon-Reyes v. Guevara, No. 1:18-cv-01028,* at *7-8 (N.D. Ill. Mar. 18, 2020)("Plaintiffs' Rule 404(b) list does not offer specifics about what the listed witnesses will testify about. Rather, Plaintiffs assert generally that the witnesses might testify about the instances of misconduct of Defendant Guevara and his colleagues at Area Five in abusing the rights of other citizens, besides the Plaintiffs in this case."). Here, Jaime Rios has provided detailed and specific information as to the relevance of each proposed "will call" witness.

Of these potential witnesses, it is believed that three of them – **Gabriel Solache**, **Arturo Reyes**, and **William Dorsch** are unavailable. Jaime Rios will therefore seek to submit their prior sworn testimony and will not seek to have them on the "will call" list. The number of the remaining witnesses for the proposed will call Guevara list are 19, listed in Exhibit C, together with a summary of their anticipated testimony. This is a reasonable request.

Therefore, this court should grant this motion, in whole or in part.

Respectfully Submitted,

/s/ Stephen L. Richards
By: Stephen L. Richards
Attorney for Plaintiff
53 W. Jackson, Suite 756
Chicago, IL 60604
(773) 817-6927
sricha5461@aol.com
Attorney No: 6191946

<u>**CERTIFICATE OF SERVICE**</u>

Stephen L. Richards certifies that on April 7, 2023 he served **MOTION TO EXPAND THE NUMBER OF 404(B) WITNESSES WHICH PLAINTIFF CAN DESIGNATE ON A "WILL CALL" LIST FROM 15 WITNESSES TO 20 WITNESSES AND TO ALLOW PLAINTIFF TO ALLOCATE THE VAST MAJORITY OF THE WITNESSES ON THE "WILL CALL" LIST TO WITNESSES RELEVANT TO THE ACCUSATIONS AGAINST DEFENDANT REYNALDO GUEVARA**
by email to counsel for all defendants.

*/s/ Stephen L. Richards*
By: Stephen L. Richards
Attorney for Plaintiff
53 W. Jackson, Suite 756
Chicago, IL 60604
(773) 817-6927
sricha5461@aol.com
Attorney No: 6191946