Rios v. Guevara, et al.,
22-cv-3973

# Exhibit E

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.1
### Eastern Division

Derrell Fulton

                  Plaintiff,

v.

                                    Case No.: 1:17–cv–08696

                                    Honorable Martha M. Pacold

Michael Clancy, et al.

                  Defendant.

---

# NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, October 30, 2019:

        MINUTE entry before the Honorable Sunil R. Harjani: Status and motion hearing held. Status hearing is set for 12/5/2019 at 9:15 a.m. For the reasons stated in open court, Defendants' motion for extension of time to complete discovery [173] [155] is granted in part and denied in part. The Court finds that the parties need additional time to complete depositions. The deadline for fact discovery is extended to 3/31/2020. In order to ensure that the parties meet the fact discovery deadline of 3/31/2020, the parties shall issue any written discovery requests by 11/8/2019. No new written discovery requests shall be issued after 11/8/2019. By 12/2/2019, the parties shall provide a joint updated status report with agreed upon dates for depositions through the end of fact discovery. The parties may not add deponents to the updated joint status report that were not already included in their joint status report of 10/29/2019 [180] [160] without leave of Court. Additionally, depositions of any Rule 404(b) witness is limited to ten witnesses at this time. Plaintiffs shall provide the list of Rule 404(b) witnesses by 11/15/2019. The parties represented that they are at an impasse with respect to the production of certain juvenile records. If the parties cannot resolve the issue, they may file a motion to compel with this Court. Mailed notice(lxs, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.1
### Eastern Division

Derrell Fulton

                              Plaintiff,

v.                                                    Case No.: 1:17−cv−08696
                                                      Honorable Martha M. Pacold

Michael Clancy, et al.

                              Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, February 12, 2020:

      MINUTE entry before the Honorable Sunil R. Harjani: Status and motion hearing held. Status hearing continued to 3/18/2020 at 9:15 a.m. Defendants advised that an extension to the 3/31/2020 fact discovery deadline may be necessary. Plaintiffs advised that they would oppose an extension to the fact discovery deadline. The Court declines to rule on extending the fact discovery deadline at this juncture. By 3/13/2020, the parties shall file an updated joint status report, which identifies the depositions taken to date, as well as the depositions that still need to be taken for the purposes of fact discovery. For the reasons stated in open court, because Mr. Jakes and Mr. Day are not "unavailable" as the Court intended that term, Plaintiffs' Joint Motion for Leave to Substitute 404(b) Witnesses [209] is denied. The parties represented that Plaintiffs' Rule 404(b) witness list now consists of only 8 witnesses because Plaintiffs have withdrawn Mr. Jakes and Mr. Day as Rule 404(b) witnesses. For clarity, the Court's holding does not prevent Plaintiffs from keeping Mr. Jakes and Mr. Day as their Rule 404(b) witnesses. The Court has previously held that proportionality concerns under Rule 26(b)(1) warranted limiting depositions of Rule 404(b) witnesses to ten witnesses and that holding stands. Rather, the Court only holds that Plaintiffs cannot replace Mr. Jakes and Mr. Day with new witnesses on the basis of their purported unavailability. If Plaintiffs still wish to voluntarily withdraw Jakes and Day from their list, however, they are free to do so. Mailed notice(lxs, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Rios v. Guevara, et al.,
22-cv-3973

# Exhibit F

1    **TRANSCRIBED.  FROM DIGITAL RECORDING**

2
                    IN THE UNITED STATES DISTRICT COURT
3                     NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION
4
     PATRICK PRINCE,                        )
5                                           )
                    Plaintiff,              )
6                                           )
                    vs.                     )  No. 18 C 2952
7                                           )
     KRISTON KATO, et al.,                  )  Chicago, Illinois
8                                           )  May 9, 2019
                    Defendants.             )  9:31 A.M.
9
                    TRANSCRIPT OF PROCEEDINGS - Status
10      BEFORE THE HONORABLE SUNIL R. HARJANI, Magistrate Judge

11   APPEARANCES:

12   For the Plaintiff:         LOEVY & LOEVY
                                311 N. Aberdeen Street, Third Floor
13                              Chicago, Illinois  60607
                                BY:  MR. DAVID BENJAMIN OWENS
14
     For the Individual         BORKAN & SCAHILL, LTD.
15   Officers:                  20 South Clark Street, Suite 1700
                                Chicago, Illinois  60603
16                              BY:  MS. KRISTA ELANORE STALF
                                     MS. MISHA ITCHHAPORIA
17
     For Defendant City:        REITER BURNS LLP
18                              311 South Wacker Drive, Suite 5200
                                Chicago, Illinois  60606
19                              BY:  MR. DANIEL MATTHEW NOLAND

20
                          PAMELA S. WARREN, CSR, RPR
21                          Official Court Reporter
                          219 South Dearborn Street
22                                 Room 2342
                            Chicago, Illinois   60604
23                               (312) 408-5100

24   **NOTE:  Please notify of correct speaker identification.**
     **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
25   **UNINTELLIGIBLE.**

1       (Proceedings held in open court:)

2           THE CLERK:  18 C 9252 (sic), Prince versus Kato.

3           MR. OWENS:  Good morning, your Honor.  I'm David B.

4   Owens, and I represent Patrick Prince, the plaintiff in this

5   case.

6           MS. STALF:  Good morning, your Honor.  Krista Stalf on

7   behalf of the individual defendant officers.

8           THE COURT:  Okay.

9           MS. ITCHHAPORIA:  Misha Itchhaporia also on behalf of

10  the individual defendant officers.

11          MR. NOLAND:  Good morning, your Honor.  Daniel Noland

12  for the City of Chicago.

13          THE COURT:  Okay.  Good morning to all of you.

14          So first off I have reviewed your status report

15  listing your dates for the depositions.  I did notice that you

16  had not identified all the deponents.

17          Can you tell me why?

18          MS. STALF:  We were at that point still filling them

19  in, and we have filled in some of those dates --

20          THE COURT:  Okay.

21          MS. STALF:  -- as we speak.

22          THE COURT:  Okay.  So I'm going to want to get an

23  updated report from you --

24          MS. STALF:  Sure.

25          THE COURT:  -- with as many, if not all, deponents.

1    And the reason I'm doing this, of course, is because you have a

2    lot of depositions in this case, and I need to be on -- ensure

3    that you are on track to meet your deadlines and then getting

4    things scheduled.

5           We have a September 27th deadline for fact discovery.

6    I have every intention of keeping that deadline.  I think I

7    have already stated no further extensions.  So we are going to

8    keep that deadline.

9           So how long do you need to file that updated status

10   report before me?

11          MR. OWENS:  We could probably do it in the next couple

12   days.  I mean, we were -- we have been actively filling in

13   those dates --

14          THE COURT:  Uh-huh.

15          MR. OWENS:  -- through the end of June.  We have

16   discussed availability through (unintelligible).  We have seen

17   each other every day this week, and so we are on the rails --

18          THE COURT:  Good.

19          MR. OWENS:  -- and moving forward.

20          THE COURT:  So let's say 5-16.  That's about a week.

21   5-16 for the updated report.

22          Okay.  I also recall there was an issue with respect

23   to the scope of the Rule 404(b) depositions and how many were

24   going to be taken and how that was going to be narrowed.

25          Have you resolved that?

1          MR. OWENS:  We believe that we have reached probably

2     an impasse on this issue.  I -- I can outline it now or I don't

3     know if they wanted to bring a motion, something with respect

4     to that.

5          Our position is that the proposal that we put out

6     there was that we would try to identify witnesses who would be

7     potential -- potential live witnesses at trial.  That would be

8     the universe of individuals who -- from which we would conduct

9     oral discovery in this matter.

10          There is written discovery that defendants have been

11     extremely aggressive about sending subpoenas for tons and tons

12     of witnesses.  We tried to narrow it that way so that we can

13     create a universe of people who may potentially testify at

14     trial.  But the defendants reject that proposal saying that if

15     there is any -- going to be any possible mention of a witness,

16     even on cross examination, of an officer or via an expert

17     talking about the pattern of incidents, there -- they need to

18     do oral discovery on that person.

19          THE COURT:  So let me stop you there.  This is an

20     issue in every case where we have Loevy on one side and the

21     city on the other.  I have many of these cases.  Judges in this

22     district have many of these cases.  This is -- 404(b) is always

23     an issue.

24          My understanding is that you probably have worked this

25     out in the past.  This is not the first time this has come up.

5

1   So why is this case different?

2          MS. ITCHHAPORIA:  Your Honor, in this case it is

3   different because they have named 40 404(b) witnesses.  And all

4   the cases that we have had with their office they have named

5   about five or six.  We got to trial in a case before Judge Lee,

6   Judge Lee only allowed one of the witnesses to testify.

7          So with 40 404(b) witnesses identified in their

8   disclosures, contact information only provided for eight of

9   those witnesses, counsel is telling me, I may call some of

10  those witnesses live and may not call some of those witnesses

11  live, but I'm still going to ask my expert about it maybe or I

12  may ask your clients about it on the stand.

13         I'm at a loss of what to do at this point.  I have to

14  go ahead and obtain the documents's (unintelligible) to be able

15  to defend those 404(b) allegations and also to seek the

16  depositions of those 404(b) witnesses.

17         Counsel themselves have had and represented Mr. Prince

18  for over six years.  Some of those 404(b) witnesses were

19  disclosed in the post-conviction proceedings.  And to date we

20  still don't have contact information.

21         So I don't know if we're talking about witnesses in

22  the abstract to -- the defendants's position is it makes no

23  difference whether these witnesses are coming in live or not.

24  If they are disclosed by the plaintiff, we have to be able to

25  depose them in order to be -- to be able to present to the

1    Court a sufficient analysis under United States versus Gomez to

2    be able to identify the similarities, if there are any, between

3    the 404(b) allegations and the allegations that Mr. Prince

4    brings --

5         THE COURT:  Well, how would they come in?  If it is

6    not through a live witness, how would the information about

7    404(b) be presented?

8         MS. ITCHHAPORIA:  Plaintiff contends that he can ask

9    the defendant officers and third-party officers about it on the

10   witness stand during cross and through their expert.

11        THE COURT:  Okay.  So you have a client.  Your clients

12   are going to tell you what they know or don't know about that

13   particular 404(b) scenario.  What's the issue there?  You're

14   going to get the information, what your client is going to

15   say, right?

16        MS. ITCHHAPORIA:  Right.  And so I would then want to

17   depose the 404(b) witnesses to see what they're going to say.

18   They may not even have a memory of this incident --

19        THE COURT:  But a 404(b) --

20        MS. ITCHHAPORIA:  -- or they may have a firm

21   recollection.

22        THE COURT:  -- witness is a live witness put in in the

23   plaintiff's case in chief that doesn't go to character but is

24   offered for some other purpose, which the plaintiff has to show

25   a sufficient basis that there is either a pattern or a practice

1   or modus operandi or something or the other for a sufficient

2   basis to allow that to testify -- the person to testify.

3          So if the plaintiff narrows down a set of witnesses

4   that it chooses to present subject to the district court's

5   approval for 404(b) evidence, right, why isn't it enough to

6   just depose those people?  It is not 404(b) when it comes to

7   cross examination.  That's now how 404(b) evidence gets

8   admitted.

9          MS. ITCHHAPORIA:  Right.  But -- so I'm a little

10  (unintelligible) here as to what you are asking, your Honor.

11         THE COURT:  So I am -- why do you need to depose

12  everybody?

13         MS. ITCHHAPORIA:  Well, the 404(b) witnesses they have

14  named, because they haven't narrowed them down.  I don't know

15  who is going to be hitting the stand --

16         THE COURT:  Okay.

17         MS. ITCHHAPORIA:  -- or not hitting the stand.

18         THE COURT:  So why can't we do that?

19         MR. OWENS:  Well, that was our proposal.  What -- we

20  were trying to identify the universe of people that we would

21  possibly depose.  They said we need to depose everyone in the

22  entire --

23         THE COURT:  No.  No one is deposing anybody, everybody

24  here.  That's not happening.

25         Why can't you identify the 404(b) witnesses that you

1  intend to present to the district judge as live witnesses in
2  your case in chief?
3        MR. OWENS:  We can.  We have offered -- we have
4  offered to do that.
5        THE COURT:  How many?
6        MR. OWENS:  But that's -- we have a --
7        THE COURT:  There can't be 44.
8        MR. OWENS:  Absolutely.
9        THE COURT:  Don't kid me here.
10       MR. OWENS:  Ab- -- absolutely.
11       THE COURT:  What is it?
12       MR. OWENS:  We haven't reached the point of a specific
13 number at this point.  I mean, we could -- I should go back to
14 my team and talk about what.
15       But we have had, to clarify the record, we have named,
16 you know, the 40 -- like 30 or 40 witnesses in other cases.
17 This happened in another case involving the same detective, the
18 one that was mentioned and, you know, sort of the -- we have
19 been able to narrow this down.  I'm sure that we can come up
20 with a proposed number of potential witnesses that we might
21 call live.  And that's what we have -- and that's what we have
22 been proposing to them.  They haven't been willing to entertain
23 that.
24       THE COURT:  So here's what we're going to do.  You're
25 going to produce a report that identifies a narrow list of

1    people that you intend to call in your case in chief.  You and

2    I both know that Judge Lee is not going to give you a lot of

3    leeway on this.  You're going to have to pick your best

4    witnesses, and you're going to do a motion in limine.  He's

5    going to grant you -- you may get one, you may get two, you may

6    get three, I don't know.  But it is not going to be 40.  It is

7    certainly not going to be 30, 20, and probably not even ten.

8    In my experience you are going to be very narrowed in what the

9    404(b).

10        What you don't want is a mini trial on all this other

11   stuff, which is what every district court judge will tell you

12   when you get to 404(b).  So it is going to be limited.

13        So I need you to produce -- to meet and confer with

14   the other side and produce a -- by 5-16 the same report that we

15   have, an agreed list of your 404(b) witnesses.  And those are

16   people that will be -- that will allow to be deposed.  And

17   those are going to be people that you intend to call at trial.

18        You can always put a maybe list together.  But that's

19   always going to be 30, 40 or 50 people.  I need to know who

20   you're calling so we can limit the discovery on the

21   404(b). Okay?

22        MR. OWENS:  Absolutely.  And one thing we proposed,

23   your Honor, was that the three 404(b) witnesses who were

24   deposed in another case involving allegations against the same

25   officer, you know, that this office defended, that we don't

1   redepose those three people in this case.  And they are saying

2   we need to redepose them too.  So we'll -- we will do that.

3          THE COURT:  It is a different case.  They may have

4   other topics.  You can't stop them from asking what they feel

5   they fairly need in discovery.  So if they want to redepose

6   them, they can redepose them.  It might be the same stuff.  It

7   may not.  But they get a crack at it.

8          So I need an agreed list of the 404(b) witnesses you

9   intend to call at trial, and I'll take a look at what that

10  looks like.

11         And then I want to see you back here by the end of May

12  to keep this on track.

13         THE CLERK:  Thursday, May 30th at 9:15.

14         MS. STALF:  We have a dep in this case, and I believe

15  that dep is --

16         THE COURT:  Okay.

17         MS. STALF:  -- out of Chicago.  It is Mr. Green.

18         MR. OWENS:  He's here.

19         MS. STALF:  Oh, he's here?

20         MR. OWENS:  We can do it.

21         MS. STALF:  That's fine.

22         THE COURT:  Okay.  That's fine.  We'll pick another

23  date.

24         THE CLERK:  Wednesday, May --

25         MR. OWENS:  No, no, the 30th is --

```
 1              THE CLERK:  The 30th works?

 2              MR. OWENS:  The 30th is great.  I'll be out of the

 3    country, but -- until then so --

 4              THE COURT:  Okay.  So what date?

 5              THE CLERK:  May 30th at 9:15.

 6              THE COURT:  May 30th, 9:15.

 7              Okay.  And we'll talk about those reports at that

 8    time.

 9              MR. OWENS:  Thank you, your Honor.

10              THE COURT:  What else?  Not -- if you need to meet and

11    confer on things, so be it.  But I want to know what else is

12    percolating out there that is an issue.  Anything?

13              MR. OWENS:  Well, there are probably five other issues

14    that are percolating that we have been sort of conferring

15    about.

16              THE COURT:  Okay.

17              MR. OWENS:  Two with respect to Monell.

18              THE COURT:  Maybe I shouldn't ask that question

19    anymore.

20              MR. OWENS:  Several which related to damages,

21    scheduling of depositions out of state that we have been sort

22    of in active conference.  I think that the one that -- I

23    believe that we had reached some impasse on was the 404(b)

24    issue, and I think we can present that in the status.

25              THE COURT:  Okay.
```

1      MR. NOLAND:  And there is issues percolating with

2  respect to discussions that we have been having about limiting

3  the Monell claim and how that would look and whether the

4  parties can come to some meeting of the minds, at least

5  understanding, on that potential limit.  So we want to

6  discovery -- additional discovery will be necessary on that.

7      THE COURT:  Yeah, I mean, appreciate you bringing that

8  up.  I had that on my list.  I saw that bifurcation was denied

9  on the Monell.

10      So have you started Monell discovery yet?

11      MR. OWENS:  We have, your Honor.  So we have -- the --

12  sent some written discovery requests.  And then the city sent

13  some, you know, (unintelligible) the Monell-specific

14  interrogatories to us.  We responded to those in March.

15      At the time basically, you know, the city is like, how

16  are you going to -- we want you to narrow this claim.  We asked

17  the following question, which is, will the city stipulate that

18  a certain number of incidents over a certain period of time, if

19  a jury credited them, are sufficient to show a practice over --

20  a widespread practice.  Because if we can reach an agreement

21  about the number of instances, then we can sort of try to limit

22  the universe of who we're talking about.  So we -- that was in

23  March.

24      We had a 37.2 conference on that about a week ago.

25  The city was unable to give us a conceptual agreement to that.

1  The result of that conference was that we agreed to send a

2  follow-up proposed sort of outline stipulation on what that

3  would look like, even though we had sort of asked about it a

4  couple times.  And that, I think, is where things stand as far

5  as that issue.

6          MR. NOLAND:  So, yeah, they -- and it wasn't something

7  that we had been familiar with talking about before.  When they

8  talked about stipulations is generally speaking of what types

9  of, like a sample set of complaint registers that they may

10 request.  So they don't have to get 1500 complaint registers.

11 A sample set of the topics and the time frame so that they

12 could be gathered, potentially reviewed, and if the plaintiff

13 wants to pursue some sort of an expert issue, whether or not

14 there is any disciplinary, you know, failures or not.

15          This is a bit of -- this is a new one that we're

16 hearing from them, which is that they want to cherry pick and

17 identify, okay, if we can prove at trial that there has

18 been -- and they haven't given us a number or a time frame or a

19 topic.

20          Well, no, they did give us a topic.  It is four forced

21 confessions.  If they can prove X amount -- they haven't said

22 that would be -- over X period of time.  And they haven't said

23 what that would be.  And so on this call we said, oh, okay,

24 (unintelligible) the light bulb on, now we understand what they

25 are saying.

1       The big concern for us is that they might be going

2   back to, say, the Andrew Wilson case in 1982, which the Court

3   may be familiar with.  It has been brought up from time to

4   time.  And then kind of a whose who (unintelligible) little

5   cases that may have been in the news, throughout the news.  So

6   -- or a lot of people represented by the plaintiff's law firm.

7   So, okay, we can prove this case, that case.

8       In any event, we had this discussion.  We said, all

9   right, obviously we'll take any proposal to the city, but you

10  need to put it in writing so we can see exactly what we have

11  stipulated to and, you know, (unintelligible) agreed to do

12  that.  And so once he does that, we'll give that to the city.

13  We'll get back to him to see whether or not there is some type

14  of way to work something like that out.

15      THE COURT:  Here's what I don't want, I don't want

16  this to pass and then you don't come to an agreement, and then

17  you are exploding on Monell discovery and you're not making the

18  discovery cutoff.

19      So tell me how you're going to resolve this.  Can we

20  set a time frame by which you can resolve this issue?  That is,

21  by the next status you'll advise me -- I would like you to

22  advise me what you have agreed to and what Monell discovery you

23  need to take in the months of June and July to make your

24  cutoff.  Is that fair?

25      MR. NOLAND:  Sure.  I think, yeah, that's fair.

1    MR. OWENS:  And there is another --

2    MR. NOLAND:  There is the other Monell issue.  As far

3 as we can understand, the Monell claim is extremely broad, and

4 that's one of our concerns that we brought up to plaintiff --

5    MR. OWENS:  (Unintelligible) brought this case and

6 stuff.

7    MR. NOLAND:  We think improperly so.  There is no way

8 it is going to trial that way, for the various reasons, you

9 can't just say police misconduct, throw it against the wall,

10 and let's go.

11    MR. OWENS:  (Unintelligible) --

12    MR. NOLAND:  So they need to tell us what it is.  And

13 the other --

14    THE COURT:  What is it?  Is it street files?

15    MR. OWENS:  There is -- yeah.  So I think that's what

16 Dan was ramping up to talk about, street files.

17    Right, Dan?

18    MR. NOLAND:  I was going to get into --

19    MR. OWENS:  Yeah.

20    THE COURT:  I mean, it is almost always --

21    MR. NOLAND:  I don't call them street files, but --

22    THE COURT:  Isn't it almost always street files these

23 days?

24    MR. OWENS:  There are a number of related issues we

25 have done multiple trials.  So what I would say is -- is we

```
 1    have begun the process of trying to identify the universe.  And
 2    what I -- what I have suggested was that we try to move this
 3    forward.  So what I would propose here is that if the Court
 4    wants us to try to resolve this issue about the
 5    stipulation -- whether the city is willing to agree to a
 6    potential -- to limit the universe with respect to the coerced
 7    confession Monell issue, we will send something to them by the
 8    time that we send the status report.
 9            The -- I would just, for the record, disagree that
10    this is a new concept.  It is one I put specifically in my
11    responses in March.  I said, will the city agree to this idea?
12    Because previously the city said we'll never stipulate to the
13    idea that a certain number of incidents is -- constitute a
14    widespread practice.  And in fact Mr. Noland and I had a very,
15    very long conversation about the specific issue where he also
16    used the phrase cherry picking over two years ago in another
17    case.  So --
18            THE COURT:  Okay.  Just let me stop you there.
19            MR. OWENS:  Sure.
20            THE COURT:  So I appreciate the dispute.  I do have
21    a -- I appreciate the information.  I have a handle on what the
22    issues are.
23            But what I want you to do is, of course, to meet and
24    confer and report back to me how you narrowed it, what you have
25    agreed upon, and what kind of discovery you feel that you need
```

1    to take on Monell.

2          This is not a new issue.  You have done -- all done

3    this.  And this has been done multiple times in this building.

4    So there has got to be a way -- there is a way for you to

5    resolve this, and you should follow that path.

6          MR. NOLAND:  So what I am not sure is if there has

7    ever been at a trial where they have presented through an

8    expert without witnesses that -- that there has been other

9    claims where there has been coerced -- false coerced

10   confessions, and that that came in in the underlying trial

11   (unintelligible).  I don't remember something like that.

12         What there have been are the Brady based, what the

13   plaintiffs call, the street files or they are Brady-based

14   Monell claim of whether or not, and there has been a couple of

15   those trial recently.

16         That's going to be an important issue in our meet and

17   confer as to the Brady-based street files thing because we

18   don't -- we don't see that as even being in play here because

19   the plaintiffs aren't contesting that any of the material that

20   they have, but what -- of the documents -- we don't get need to

21   get into the details.

22         THE COURT:  Yeah, I think --

23         MR. NOLAND:  There is going to be (unintelligible)

24   contention on that, I think.  But we need to talk about it

25   further.

18

```
1          THE COURT:  Well, I can resolve it by motion if you
2   need me to.  But why don't you meet and confer.
3          Look, the reality is you are going to complete all
4   this discovery, and I'm going to have you in for a settlement
5   conference.  You know, what -- more than 90 percent of these
6   cases settle.
7          We all know the framework for settling it.  So work
8   the issues out among you, and then let's get ready for a
9   settlement conference what, I will expect, in the month of
10  August.  That would be my plan, unless somebody gives me some
11  major objection why we can't do it then.
12         Do you have an expert discovery schedule yet?
13         MR. NOLAND:  Can I just --
14         MR. OWENS:  No.
15         MR. NOLAND:  Here's what I need to say about
16  settlement conferences, Judge, from the city, is that they both
17  before -- we will just need to get a demand from the plaintiff.
18  We need to get that to the city so that they would have a, you
19  know, position on whether or not the (unintelligible) oh, you
20  know, like (unintelligible).
21         THE COURT:  I got you.
22         MR. NOLAND:  So, in any event, before I can say, okay,
23  yeah, they are willing to even, you know, discuss it.  But of
24  course we'll -- you know, if the Court would like to do it,
25  we'll do it.
```

19

```
 1              THE COURT:  Yeah.  I mean, you have expert discovery
 2    cutoff of September.  So I intend to keep that deadline.
 3              MR. OWENS:  I think it is October.  That's the fact
 4    discovery, I believe, your Honor, is September 27th.  And then
 5    the expert discovery follows that.
 6              MR. NOLAND:  Right.
 7         (Discussion off the record.)
 8              THE COURT:  Hang on a second.  Yeah, you're right.
 9    September 27th.  I think I am looking at an old date.
10              What date did you have for expert discovery cutoff?
11              MR. OWENS:  The cutoff I thought was somewhere in
12    November.  I don't have it -- let me --
13              MS. ITCHHAPORIA:  I have a date (unintelligible).
14              MR. OWENS:  What date?
15              MS. ITCHHAPORIA:  November 29th cutoff.
16              MR. OWENS:  That sounds right.
17              MS. ITCHHAPORIA:  Fact discovery.  Maybe.
18              None of us have it properly calendared, your Honor.
19              THE COURT:  Okay.  We'll talk about that next time.
20    And I will look forward to your resolutions on this issue.
21              MR. OWENS:  Thank you, your Honor.
22              THE COURT:  Okay.
23              MS. STALF:  On more thing, your Honor.  I'm sorry.
24              THE COURT:  Yeah.
25              MS. STALF:  One more issue that we feel is ripe for
```

1   bringing before the Court is the issue of damages.  The

2   plaintiff has brought a claim for emotional damages and indeed

3   has an (unintelligible) claim.  We have issued some written

4   discovery to try to obtain identities of treaters, obtain

5   records pursuant to any treatment for emotional damages.

6           The plaintiff has objected to most of what we have

7   requested, asserting psychotherapist privilege.  We believe

8   that we're entitled to do discovery on this issue.  We can't

9   figure out what the contours of the emotional damages claim

10  are.  It is a flowers issue.  I don't know if it is a garden

11  variety emotional damages thing or if it goes into severe

12  emotional damages.

13          I don't know if your Honor wants us to bring a motion

14  before you.

15          THE COURT:  So with this request for medical records?

16          MS. STALF:  Yes.

17          THE COURT:  Okay.  So --

18          MS. STALF:  That's correct.

19          MS. ITCHHAPORIA:  And mental health.

20          MS. STALF:  Right.  Mental health more importantly.

21          THE COURT:  All right.  So this comes up all the time.

22  I have already written on this issue.  I have already granted

23  it in other cases.

24          A request, because you put it at issue, when a

25  plaintiff claims emotional distress, they put their therapy and

21

1    their psychological state and status at issue.  And generally

2    the defendants are allowed to explore and get the records.

3         So I'm not ruling on it, I am just telling you I have

4    already dealt with this issue in the past in similar cases such

5    as this.

6         So why don't you meet and confer on that, and then you

7    can bring it to my attention.

8         If you don't resolve it, bring a motion, and I'll rule

9    on it.  Okay?

10        MR. OWENS:  Thank you.

11        MS. STALF:  Thank you.

12        THE COURT:  Okay.  Thank you.

13        MR. NOLAND:  Thank you, Judge.

14     (Which concluded the proceedings.)

15                     CERTIFICATE

16        I certify that the foregoing is a correct transcript

17   from the digital recording of proceedings in the above-entitled

18   matter to the best of my ability, given the limitation of using

19   a digital-recording system.

20

21

22   */s/Pamela S. Warren*                May 20, 2019
     Official Court Reporter                   Date
23   United States District Court
     Northern District of Illinois
24   Eastern Division

25

Rios v. Guevara, et al.,
22-cv-3973

# Exhibit G

1 **TRANSCRIBED FROM DIGITAL RECORDING**

2                IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
3                        EASTERN DIVISION

4  WAYNE WASHINGTON,                    )
                                        )
5            Plaintiff,                 )
                                        )
6            vs.                        )  No. 16 C 1893
                                        )
7  CITY OF CHICAGO, et al.,             )
                                        )
8            Defendants.                )
   ------------------------------------)
9  TYRONE HOOD,                         )
                                        )
10           Plaintiff,                 )
                                        )
11           vs.                        )  No. 16 C 1970
                                        )
12 CITY OF CHICAGO, et al.,             )  Chicago, Illinois
                                        )  June 13, 2019
13           Defendants.                )  10:06 A.M.

14        TRANSCRIPT OF PROCEEDINGS - Status and Motion
       BEFORE THE HONORABLE MARIA VALDEZ, Magistrate Judge
15
   APPEARANCES:
16
   For Plaintiff Washington: STEVEN A. GREENBERG, LTD.
17                            53 West Jackson Boulevard
                              Suite 1260
18                            Chicago, Illinois  6064
                              BY:  MR. STEVEN ALLEN GREENBERG
19
                     PAMELA S. WARREN, CSR, RPR
20                     Official Court Reporter
                     219 South Dearborn Street
21                          Room 2342
                     Chicago, Illinois   60604
22                        (312) 408-5100

23 **NOTE:  Please notify of correct speaker identification.**
   **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
24

25

1   **APPEARANCES:  Continued**

2   For Plaintiff Hood:        LOEVY & LOEVY
                               311 North Aberdeen
3                              3rd Floor
                               Chicago, Illinois  60607
4                              BY:  MR. SCOTT ROBERT DRURY

5   For Defendant City:        THE SOTOS LAW FIRM, P.C.
                               141 W. Jackson Boulevard
6                              Suite 1240A
                               Chicago, Illinois  60604
7                              BY:  MR. JEFFREY NEIL GIVEN
                                    MR. JOSEPH M. POLICK, JR.
8
    For Defendant Officers:    ROCK RUSCO & CONNELLY, LLC
9                              321 North Clark Street
                               Suite 2200
10                             Chicago, Illinois  60654
                               BY:  MR. PATRICK R. MORAN
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings held in open court:)

2        THE CLERK:  16 C 1893, Washington versus Boudreau, et

3    al., status and motion hearing; and 16 C 1970, Hood versus City

4    of Chicago, et al., status and motion hearing.

5        MR. DRURY:  Good morning, your Honor.  Scott Drury,

6    D-r-u-r-y, on behalf of the plaintiff Tyrone Hood.

7        MR. GREENBERG:  Good morning, your Honor.  Steve

8    Greenberg on behalf of defendant Wayne Washington.

9        MR. MORAN:  Good morning, Judge.  Pat Moran on behalf

10   of the individual police officer defendants.

11       MR. GIVEN:  Good morning, your Honor.  Jeff Given on

12   behalf of the city.

13       MR. POLICK:  Good morning, your Honor.  Joseph Polick,

14   P-o-l-i-c-k, on behalf of the defendant City of Chicago.

15       THE COURT:  Good morning.  I had one more chance to

16   get rid of you with our new judge.  We tried our best.

17    (Laughter.)

18       MR. GIVEN:  We're glad to be here, your Honor.

19       THE COURT:  You know I joke with you.  You are my

20   second favorite case.

21       MR. MORAN:  Not the first?

22       MR. GIVEN:  And we -- I always express disappointment

23   that we're not number one.

24       THE COURT:  There is a number one, and then everybody

25   else is the second favorite case.

1      (Laughter.)

2          THE COURT:  That's what I tell my two children.

3          MR. GREENBERG:  That's what I usually am used to.  I'm

4   used to coming in second place all the time myself.

5          THE COURT:  Well, sometimes that works out.

6          All right.  I do know that there has been a motion

7   filed by the defendant City of Chicago.

8          And then we have a general status in light of the fact

9   discovery cutoff that we have right now of July 19th.

10         So if we want to deal with the motion, what's the

11  plaintiffs's position?

12         MR. DRURY:  Your Honor, with respect to the motion,

13  this is just a repackaged motion to bifurcate, which two

14  judges, Judge Shadur and Judge Wood, have already denied.  My

15  sense is that the defendants are going to be asking for

16  discovery extension past the current July 19th date.

17         We would ask that your Honor summarily deny this

18  motion, which has already been denied twice.  If the defendants

19  would be -- take up their issue of needing more time to conduct

20  discovery, but I don't really think it is worth the Court's

21  time or anyone's time to fully brief this issue.

22         MR. GIVEN:  Judge, may I respond very briefly?

23         THE COURT:  Yes.

24         MR. GIVEN:  We brought this motion specifically at the

25  direction of Judge Wood who, the last time we were in front of

1  her on motions to bifurcate and discussion of this very issue,

2  said -- and we attached the transcript -- have you talked to

3  Judge Valdez about structuring discovery in this case?  The

4  motion that we filed tracks specifically what she said we

5  should raise with you.

6          So I disagree with Mr. Drury's characterization of it.

7  And the motion, other than the merits, are what is stated in

8  the motion.

9          THE COURT:  All right.  So there is nothing further

10  that you want to put with respect to the merits of the motion.

11          MR. GIVEN:  Correct.  Only that I would add that I

12  think the rest of our discussion this morning is going to be

13  about July 19th and -- and the rest of what I will call the

14  non-street file discovery, which here's a preview:  We don't

15  think July 19th is a realistic date, so --

16          THE COURT:  Well, I will --

17          MR. GIVEN:  -- that's the only thing I would add.

18          THE COURT:  I'll deal with the motion.  The motion is

19  going to be denied.  And I do -- I appreciate the comments of

20  -- that you have articulated with respect to Judge Wood.  And I

21  take it only as I'm handling discovery, you deal with Judge

22  Valdez on this issue.

23          They -- there has been a few rulings already.  Judge

24  Wood had made a ruling.  Judge Shadur had made a ruling.  The

25  Court heard you out.  And in light of the previous rulings

 1    denied it before.  So I'm going to deny it once again.  So the

 2    motion is denied.

 3            Now we can deal with the fact discovery cutoff issue.

 4            MR. MORAN:  So on that issue, Judge, we have talked

 5    and exchanged lists of deponents that we -- each side would

 6    like to take still.  I think everybody is in agreement that we

 7    will not accomplish all of this by July 19th.

 8            The plaintiffs's version is that we should schedule

 9    spot dates after July 19th basically but not push out the

10    discovery deadline.

11            We believe that another 90 days is going to be

12    required.

13            There are a number of witnesses.  It has been slow

14    going in the last 90 days.  There have been scheduled

15    depositions where people either did not show.  One deposition

16    did not -- or it took essentially three days to complete due to

17    the witnesses's scheduling and some documents that popped up

18    along the way.

19            We're not taking the position that either side has

20    been delaying anything.  It has been diligence we believe on

21    both sides.

22            THE COURT:  So how many more depositions need to be

23    taken?

24            MR. MORAN:  From the defense side -- and this is not

25    including 404(b) or the Monell discovery -- but just on the

1   underlying claim, it is going to be roughly --

2           MR. GIVEN:  Judge, I counted -- we exchanged --

3           THE COURT:  Well, but so currently the fact discovery

4   would include all of Monell and everything else.  So I'm asking

5   for all of the discovery, the fact discovery, to be completed,

6   what needs to be completed?

7           MR. GIVEN:  Well, let me try to give you some of the

8   contours to that, your Honor.  We -- we had a 37.2 conference

9   yesterday, after which both sides exchanged lists of people

10  that they felt needed to be deposed in this case.  There are,

11  when you don't double count and account for the overlap, I have

12  come up with 35 deponents.  And as Mr. Moran was saying, that

13  does not include 404(b)s, of which we're having a dispute

14  because the plaintiffs currently list 18 404(b) witnesses and

15  have indicated that they don't intend to reduce that number any

16  further.

17          And so our position is we think that number is far too

18  high for lots of reasons.  But if you're going to insist on 18,

19  then we're going to depose all 18.

20          It also doesn't include -- and I don't think this will

21  be a big issue.  Mr. Washington currently lists, I think, 19

22  damage witnesses in his 26(a)s.  And I have spoken with

23  Mr. Greenberg, and he agrees that he's not going to call 19

24  damage witnesses.  So as he cuts those down, the number -- the

25  need to depose those will drop.

1        With regard to Monell, what I need to do is start this

2  process that's been explained in the motion of getting these

3  files from CPD and from the State's Attorney's Office.  I can

4  tell you that that is a lengthy process.  Interestingly, almost

5  always more from the State's Attorney's side.  But I'll begin

6  that this week.  And whether those will result in lots of

7  further depositions, I -- experience tends to say, no, that's

8  more of an expert issue.  But there may be deps of -- from the

9  State's Attorney's Office regarding the state of their files.

10  Maybe a 30(b)(6) witness or something like that.

11        THE COURT:  And plaintiff --

12        MR. GREENBERG:  Judge --

13        THE COURT:  -- or plaintiffs?

14        MR. GREENBERG:  -- on behalf of Mr. Washington, let me

15  address this.  I got asked yesterday for the first time to

16  narrow down damage witnesses.  I will be happy to do that in

17  short order.  But there hasn't really been any attempt before

18  to talk to those people.

19        And many of the people on the defendants's list, in

20  looking at them, have been around.  They have been known.  They

21  are around.  They could have tried to do these depositions over

22  the past few years.  There is --

23        THE COURT:  Like how many depositions do you have to

24  take?

25        MR. GREENBERG:  We don't have very many, Judge.  We

1  have got, I think, nine from -- from -- nine are on our list,

2  right?

3          MR. DRURY:  Eleven.

4          MR. GREENBERG:  We have got 11.

5          Your Honor, I'm sorry, 11 on our list.  Some of

6  whom -- a couple of those people we have been trying to depose

7  all along.  They haven't shown up.  We have got Marshal Morgan,

8  Sr., who is in the penitentiary who is probably just taking the

9  Fifth.

10          There is a retired judge.  She was the prosecutor on

11  the case.  I think I have got an address for her.  She's been

12  very hard to find, but I was able to get an address from her.

13          THE COURT:  We try to go underground when we are done

14  with our work.

15          MR. GREENBERG:  Yeah.  Right.

16      (Laughter.)

17          MR. GREENBERG:  Except I look in the obvious places

18  when I was trying to find her, which was the ARDC website.

19          THE COURT:  That would have been my first choice too.

20          MR. GREENBERG:  Yeah.  The -- but many of these people

21  have been known.  And I just think that it is just going to

22  continue ad nauseam.  And I object to any long continuance for

23  further discovery.

24          THE COURT:  What continuance would you agree to?

25          MR. GREENBERG:  I think we can get it done by July

1    19th.  I mean, I think we should try and get it done by July

2    19th.

3         The fact is it is then going to be years before we go

4    to trial on this case.  I mean, it is -- it is getting old, and

5    it is time to move it along.  And, you know, the defendants --

6    I am probably the most disadvantaged.  I have got two people on

7    the case.  Everyone else, they have lots of people.  I think we

8    can get it done.

9         MR. MORAN:  So one of the things, Judge, though is

10   that Mr. Greenberg's schedule has held us up on a number of

11   depositions.  We have had to reschedule so he can be there or

12   someone from his office can be there.

13        Marsha Escofrey (phonetic) is a witness who we tried

14   to get in three times.  She canceled three times.

15        There is a number of witnesses here who just -- dates

16   were reserved, and they didn't show up.  That's a date that

17   could have been used on somebody else.

18        So if counsel is going to say that, you know, we

19   haven't actively sought out people on here -- I didn't know we

20   were going to show up today and point fingers.  I thought,

21   frankly, it was just a debate over how much time to take.

22        But that -- we tried to get some of these people in --

23   a lot of these people in here.  And previously counsel for

24   Mr. Washington, we have had discussions, we have asked, give us

25   dates for these witnesses who are damage witnesses.  They are

1  family members.  I assume they are going to be produced by the
2  attorney for the plaintiff.
3        If we need to go out and subpoena people in Michigan
4  where these people apparently live, that's fine.  Then I will
5  assume Mr. Greenberg is not going to represent them for
6  purposes of the deposition.
7        Either way he's got 19 damages witnesses.  I doubt he
8  is really going to need that many people.  We have agreed to
9  reduce the number of 26(a)(1)s.  Both sides have tried to do
10 that.
11       So at this point to say we're going to fit all this in
12 by July 19th is -- it is just not true.  It is -- it is
13 unreasonable to even try.
14       And if that's the situation, then we're going to be
15 taking depositions every single day and, hopefully, all
16 attorneys will be available on every single date that we're
17 going to have to take depositions.  And we're not going to get
18 things like, I can't be there because of a hearing or a trial
19 or whatever.
20       MR. GREENBERG:  Judge, I wasn't --
21       THE COURT:  Sorry.
22       MR. GREENBERG:  Judge, I wasn't done --
23       THE COURT:  I'm sorry.
24       MR. GREENBERG:  -- when Mr. Moran --
25       THE COURT:  Hold on.

```
 1          Okay.  I just want to make it clear, we have extended
 2    discovery.  We have been aware of all of these issues.  I am
 3    open to -- I'll give you another 30 days at this point, until
 4    8-19.
 5          If you want to -- if you want an extension beyond
 6    that, I need to see that there has been substantial work done
 7    in those two months.  And I mean, like, we only have a few
 8    straggling that we need to get done.  That's my only opening
 9    for you.  So it is in the middle -- it is going to be summer.
10    Everybody is going to be on vacation.  It is unfortunate.
11          I remember being in front of Judge Brian Barnett Duff
12    -- I have to make sure to get the three names -- Brian Barnett
13    Duff --
14      (Laughter.)
15          THE COURT:  -- and having to take multiple depositions
16    in a single day because we got -- we got backlogged.
17          I don't want to do that to anybody.  And I am always
18    mindful of that, my experience as a litigator.  But we do need
19    to move the case forward so you can key up any dispositive
20    motions and let the Judge, you know, deal with those
21    dispositive motions.
22          So I will give you the 30-day extension beyond the
23    July 19th to August 19th.  And I will bring you back in 30 days
24    to see how you are doing.
25          MR. GIVEN:  Judge, will you -- would the Court
```

1   entertain a motion with regard to the 404(b) witnesses given

2   where you are, with your order and our discussions with the

3   plaintiffs about trying to narrow these 18 404(b) witnesses?  I

4   want to move the issue quickly, and I'm not sure that the best

5   way to do that isn't just a motion with regard to --

6               THE COURT:  Is there a disagreement --

7               MR. GIVEN:  -- cut down --

8               THE COURT:  -- that you cannot cut down the 404(b)s?

9               MR. DRURY:  Your Honor, we -- we proposed back in

10  2018.  This was a generic list.  And since that time there has

11  really been no notices issued to depose these people.

12              THE COURT:  All right.  So it sounds like you can

13  discuss this with them.  You're open to it.

14              MR. DRURY:  Well, I don't know that it is going to be

15  narrowed any more.  We're happy to have the discussions.

16              Many of those witnesses have already been deposed by

17  their law firms.  We don't know that they really need to depose

18  them again.  And that's one of the things we have been

19  discussing with them.  But there has been, you know, little to

20  no effort for them to take these depositions.

21              MR. MORAN:  (Unintelligible).

22              MR. DRURY:  We're always open to discussions, your

23  Honor.

24              MR. MORAN:  Sure.  Here is the discussions that they

25  are open to:  They have had 50 some 404(b) witnesses and have

1    told us for months and months and months and months that they
2    were going to cut the list down.  So we waited so that we
3    weren't trying to take depositions of people who they were
4    going to cut.
5            When they finally cut the --
6            THE COURT:  When did you get the 18?
7            MR. MORAN:  Last week.
8            THE COURT:  Last week.  Okay.
9            MR. MORAN:  And we said that's too many.  And, your
10   Honor, I will -- I will tell you that --
11           THE COURT:  What's that -- who are these 404(b)
12   witnesses?  What -- you know, what roles --
13           MR. GREENBERG:  Other people who were similarly
14   framed, convicted of cases, convictions vacated.
15           THE COURT:  So my guess is that, you know, you have
16   been diligent, and you have some information about what they
17   might be saying.
18           MR. GREENBERG:  Many of them --
19           THE COURT:  You don't want to call 18 witnesses at
20   trial --
21           MR. GREENBERG:  Right.
22           THE COURT:  -- correct?
23           MR. GREENBERG:  Right.  Many of them have been
24   plaintiffs in cases that --
25           THE COURT:  You can pick the best ones that you want

1    to go forward with.

2            MR. GREENBERG:  We'll --

3            THE COURT:  There is some -- I mean, 18 is --

4            MR. GREENBERG:  Right.

5            THE COURT:  -- still a lot.  So I am going to ask you

6    to work on cutting that down.

7            MR. GREENBERG:  Okay.

8            THE COURT:  Thirty-day status?

9            THE CLERK:  We actually have 28 day.  July 11th at

10   10:00 A.M.

11           MR. GREENBERG:  Thank you, your Honor.

12           THE COURT:  So are your summers going to not be so

13   happy with your family?  It is what it is.

14           All right.  Thank you.

15           MR. DRURY:  Thank you, your Honor.

16           MR. MORAN:  Thank you, Judge.

17           MR. GREENBERG:  At 10:00 A.M.?

18           THE CLERK:  Yes, 10:00 A.M., yes.

19       (Which concluded the proceedings.)

20                      CERTIFICATE

21           I certify that the foregoing is a correct transcript
     from the digital recording of proceedings in the above-entitled
22   matter to the best of my ability, given the limitation of using
     a digital-recording system.
23   /s/ Pamela S. Warren                 August 1, 2019
     Official Court Reporter                   Date
24   United States District Court
     Northern District of Illinois
25   Eastern Division