Rios v. Guevara, et al.,
22-cv-3973

# Exhibit H

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.1.1
### Eastern Division

Jacques Rivera

                                Plaintiff,

v.                                              Case No.: 1:12−cv−04428
                                                Honorable Joan B. Gottschall

Reynaldo Guevara, et al.

                                Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, January 16, 2014:

      MINUTE entry before the Honorable Mary M. Rowland:Status hearing held. Defendants' Joint Motion for Extension [74] is granted as follows: By 1/30/14, plaintiff will identify no more than ten Rule 404(b) witnesses he intends to call at trial, and defendants will identify the approximately ten police witnesses (previously identified in paragraph 14 of defendants' Rule 26(a) disclosures) they intend to call as witnesses. Fact discovery will close on May 2, 2014. No further extensions will be granted. Status set for 4/24 /14 at 9:30 AM. Parties should be prepared to set expert discovery schedule. Mailed notice(gel, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

Rios v. Guevara, et al.,
22-cv-3973

# Exhibit I

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KASANDRA BELLAMY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 02678 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| THE CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In advance of the pretrial conference, the Court issues the following decisions on the parties' motions in limine that can be decided without further argument. For other motions, the Court directs the parties to provide more information during the pretrial conference.

## I. Plaintiff's Motions in Limine

### A. Uncontested Motions

**Plaintiff's Motion in Limine 10 (Undisclosed Witnesses).** Kasandra Bellamy moves to bar any previously undisclosed witnesses and evidence. She also moves to exclude all witnesses (other than the named parties) from the courtroom during other witness testimony. This motion is granted as unobjected, and applies to witnesses for both sides.

### B. Contested Motions

**Plaintiff's Motion in Limine 1 (Alcohol Consumption).** Bellamy moves to bar any reference to the fact that she drank alcohol before the July 4, 2014 encounter with Officer Hillel Watkins, and to bar any argument that she was drunk or intoxicated. In her deposition, Bellamy admitted that she had one drink, either a mixed drink or wine, before the incident. R. 90-1, Pl.'s Exh. A, Bellamy Dep. 3:17-4:10. But Defendants are allowed to introduce their firsthand observations of Bellamy's behavior based on their interactions with her, as long as this testimony is "rationally based on [their] perception[s]" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Of course, Defendants will have to provide *specific facts* to explain their opinions—they may not simply say, in a conclusory manner, that Bellamy was intoxicated. But so

long as the defense witnesses testify as to specific facts to support their opinion, this kind of non-expert opinion evidence on intoxication can be relevant in excessive force cases where, as here, it "tends to make more probable that the plaintiff acted as the defendant contended [s]he did … ." *Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979) (affirming decision to allow evidence of intoxication). In other words, the witnesses' perceptions of Bellamy's physical and mental state are relevant to how they chose to act and respond to her behavior. Bellamy's admission that she had at least one drink before the arrest is also relevant, especially when combined with the witnesses' observations. Additionally, the evidence's probative value is not substantially outweighed by unfair prejudice under Rule 403, because the evidence of drinking and intoxication will be confined to just the one day, and is not being used as a general character attack (nor will the jury be confused into thinking that the one-day evidence is part of a general character attack).

Thus, this motion is largely denied. As discussed in more detail below (in the discussion on Bellamy's Motion in Limine 13), however, the motion is granted in part, specifically as to any testimony about how Bellamy's alcohol consumption interacted with her psychological medications.

**Plaintiff's Motion in Limine 2 (Prior Arrests).** Bellamy moves to bar reference to any of her or the other witnesses' prior arrests. Prior arrests are ordinarily inadmissible character evidence under Rule 404(b), which prohibits "[e]vidence of a crime, wrong, or other act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b); *see Barber v. City of Chicago*, 725 F.3d 702, 709 (7th Cir. 2013) ("The well-established, general rule is that a witness's credibility may not be impeached by evidence of his or her prior arrests, accusations, or charges." (citation omitted)). Although Rule 609 allows parties to use criminal *convictions* for certain purposes, the rule does not encompass prior arrests. Fed. R. Evid. 609 (governing "impeachment by evidence of a criminal conviction"); Fed. R. Evid. 608(b) ("Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.").

As for Bellamy, Defendants seek to introduce her prior 2009 arrest only if she opens the door by claiming that the arrest in this case was her first arrest. R. 92 at 6. Bellamy replied that she does not intend to make such a claim. R. 93 at 4. In addition, Defendants do not seek to introduce the prior arrests of witnesses Kerr, Atkins, Gardner, and Williams. R. 92 at 7. And witness Dabo-Apraku has no known arrests. *Id.* So, as to arrests, the motion is granted.

The parties do dispute whether witnesses Bellamy-Sanders's and Henderson's respective convictions should be allowed into evidence. The disputes will be discussed in more detail below, specifically in the discussion of Bellamy's Motion in Limine 3 and Defendants' Motion in Limine 16.

**Plaintiff's Motion in Limine 3 (Bellamy-Sanders's Prior Conviction).**
Bellamy moves to bar any reference to witness Bellamy-Sanders's three prior convictions in 1988. Bellamy-Sanders pled guilty to two counts of making a false or fraudulent statement to the federal government under 18 U.S.C. § 1001, and to one count of attempted tax evasion under 26 U.S.C. § 7201. R. 92-8, Defs.' Exh. H, Bellamy-Sanders J.

Although Rule 609(a) allows some criminal convictions to be used for impeachment, a conviction that is over 10 years old is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). Bellamy-Sanders's prior convictions occurred more than 10 years ago, but Defendants argue that these "convictions could still shed light on her present tendency towards her truthfulness and her veracity." R. 92 at 8. But the bar for admission is high, as Rule 609(b) is meant "to ensure that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004) (citations and quotation marks omitted). And Defendants' argument is conclusory, offering no "specific facts and circumstances" required by the Rule to explain the convictions' probative value. Fed. R. Evid. 609(b). Their additional argument that "[t]here is no evidence in the record that Ms. Bellamy-Sanders has successfully satisfied the conditions of her judgment or otherwise rehabilitated herself," R. 92 at, is a near-frivolous argument, because there is no such requirement in the Rule (nor does the defense cite any case for that proposition).

What's more, any probative nature of the convictions would be severely weakened by their old age. The convictions occurred more than 28 years ago, and their underlying conduct happened in 1983 and 1985—over 30 years ago. In addition, the prejudicial effects of the convictions are probably high, because their only effect would be to suggest to the jury that Bellamy-Sanders has a propensity to lie. Thus, this motion is granted, and Defendants are prohibited from referencing Bellamy-Sanders's 1988 convictions.

**Plaintiff's Motion in Limine 4 (Watkins's Judicial Admissions).**
Defendants admitted in their Answer "that on July 4, 2014, Defendant WATKINS [was] acting under color of law and within the scope of his employment as a Chicago police officer or a HAYWIL security employee, or both." R. 71, Defs.' Answer to Amend. Compl. ¶ 6. Bellamy requests (1) that this admission be read and provided to the jury; and (2) that Defendants are prohibited from offering evidence that controverts this admission. Defendants do not contest that judicial admissions are binding and cannot be controverted at trial, R. 92 at 9, so there is no dispute that Defendant Watkins's admission on this issue is deemed admitted. But a blanket decision as to all admissions is premature, because there could be disputes over the meaning of the words that are used in other admissions, and what evidence would actually contradict the admissions. So, other than the scope-of-employment and under-color-of-law admission, the motion is denied without prejudice.

3

**Plaintiff's Motion in Limine 5 (Improper Financial Considerations).**
Bellamy moves to bar reference to improper financial considerations, such as
suggestions that jurors are taxpayers who will be responsible for paying any award
and that the jury award will not be taxed, or any reference to Bellamy's attorneys'
fees. Defendants have no objection unless Bellamy argues that hiring counsel to
defend her case was a harm that she suffered, R. 92 at 10; Bellamy responds that
she does not intend to argue that, R. 93 at 6. This motion is granted.

The Court notes that even though Bellamy brought this motion, at other
times she seems to argue the opposite—that she *should* be allowed to make
arguments about dismissed claims and defendants. As discussed below in
Defendants' Motions in Limine 4 and 14, the Court needs more information from
Bellamy regarding any potential theory of liability involving these dismissed
parties.

**Plaintiff's Motion in Limine 6 (Dismissed Claims and Defendants).**
Bellamy moves to bar evidence or argument about any dismissed claims and
defendants. Defendants have no objection unless Bellamy implies that any
dismissed Defendant is at fault or should be held liable. But Bellamy is not opening
the door to otherwise irrelevant evidence just by arguing that other officers engaged
in misconduct of some kind. To be sure, Bellamy would *not* be allowed to argue or
even to imply that Watkins or Viti can be held *liable* for the actions of another.
Section 1983 restricts liability to a defendant's *personally* committed conduct.
*Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). But so long as Bellamy
stays away from implying some form of vicarious liability, the fact of a dismissal is
not relevant; the defense cites to no case law on this point. R. 92 at 10. Even if there
was some probative value to the dismissals, the evidence would pose a serious Rule
403 problem: Bellamy probably would want to respond by introducing evidence that
Bellamy made the decision to dismiss on the advice of counsel, and that in turn
would require explaining confusing litigation concepts like the summary-judgment
standard, how much quicker the case got to trial without summary-judgment
briefing, and other strategic decisions. All of that would implicate the attorney-
client privilege. So getting bogged down in back-and-forth over the dismissals would
waste time and confuse the issues, well outweighing whatever probative value the
dismissals might have. Thus, this motion is granted.

**Plaintiff's Motion in Limine 7 (Leading Questions).** Bellamy moves to
bar the defense from asking leading questions to the Defendant officers, and
conversely to allow Bellamy to ask leading questions of all police officers and City
employees. This motion is granted in part and reserved for trial in part. With
regard to defense questioning ,the Court agrees with Defendants that a blanket
restriction on leading questions before the trial is unwarranted, because this issue
is more properly raised during the trial. Indeed, although leading questions should
generally be avoided on direct examination, they may be used "as necessary to

develop the witness's testimony." Fed. R. Evid. 611(c). Thus, the Court reserves ruling on this aspect of the motion until trial.

With regard to Bellamy's questioning, the Court will allow Bellamy to pose leading questions to any police officers and any City employees. All of these potential witnesses, including the Office of Emergency Management and Communications (OEMC) employees, are aligned with the City and co-workers, like the Defendant officers, so that there is a legitimate concern for bias. *E.g.*, *Ratliff v. City of Chicago*, 2013 WL 3388745, at *7 (N.D. Ill. July 8, 2013) ("All of these witnesses, by virtue of their employment with Defendant City of Chicago, by their involvement (even if tangential or limited) with the case, and by their relationship with the Defendant Officers as their co-workers, clearly qualif[y] as 'witness(es) identified with an adverse party' for purposes of Rule 611(c)." (citation and quotation marks omitted)).

**Plaintiff's Motion in Limine 8 (Police Reports).** Bellamy moves to bar Defendants from introducing or testifying about the contents of their police reports. At this point, Defendants intend to use police reports only to refresh memory or for impeachment, but the defense argues that they should be permitted to testify to the contents of the police reports. R. 92 at 13.

Generally speaking, police reports fall within the public records exception to the hearsay rule in civil cases. Rule 803(8) provides that "[a] record or statement of a public office" is not hearsay if "it sets out … a matter observed while under a legal duty to report, but not including, *in a criminal case*, a matter observed by law-enforcement personnel." Fed. R. Evid. 803(8)(A)(ii) (emphasis added). So police reports can qualify as hearsay-exception public records in civil, but not criminal cases. *E.g.*, *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 918-19 (N.D. Ill. 2013) ("[G]enerally, statements made in police reports are admissible under Fed. R. Evid. 803(8), which is a hearsay exception permitting the admission of public records." (citation omitted)); *Wilson v. City of Chicago*, 2013 WL 268468, at *5 (N.D. Ill. Jan. 24, 2013), *aff'd*, 758 F.3d 875 (7th Cir. 2014) ("Federal Rule of Evidence 803(8) permits the introduction of police reports in civil cases." (citations omitted)). But the police report is admissible only if "the source of information or other circumstances [do not] indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B).

Similarly, a police report can also be admissible as a business record under Rule 803(6) as long as, like the public record, the information is trustworthy. Fed. R. Evid. 803(6); *see also, e.g.*, *Truesdale v. Klich*, 2006 WL 1460043, at *3 (N.D. Ill. May 23, 2006) ("In a civil case, police reports may be admissible as a public record or business record." (citations omitted)); *Hottenroth v. Vill. of Slinger*, 2003 WL 24153923, at *5 n.8 (E.D. Wis. Mar. 31, 2003), *aff'd*, 388 F.3d 1015 (7th Cir. 2004) ("The police report is a public record excepted from the hearsay rule … . It also qualifies under the business record exception.").

A blanket ban against police reports on hearsay grounds is not warranted because those reports generally qualify for one of those two exceptions. But courts must be wary of potential Rule 403 inadmissibility, because "[p]olice reports are not presumed to be categorically reliable." *United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014) (citation omitted). Also, statements in the report are admissible for their truth only if the statements themselves fit their own hearsay exception. Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."); *Jordan v. Binns*, 712 F.3d 1123, 1132 (7th Cir. 2013) ("[E]ach layer of hearsay must be admissible on an independent basis."). So a police report cannot simply transmit the hearsay of another declarant.

In light of the fact-specific nature of these evaluations, the motion for a blanket ban on police reports is denied, and the parties must raise particular issues, if any, during the trial.

**Plaintiff's Motion in Limine 9 (Juror Background Checks).** Bellamy moves to bar Defendants from conducting background checks on jurors using law enforcement databases such as CLEAR, NCIC, and LEADS. She argues that using the databases for that purpose would violate administrative regulations and police department general orders limiting database use to official police business. *See* 20 Ill. Adm. Code § 1240.80(d) ("LEADS data shall not be disseminated to any individual or organization that is not legally authorized to have access to the information."); CPD General Order G09-01-01, § VI(A)(2) ("Access to information is restricted to official police business. Access of information for personal or other reasons is strictly prohibited."); CPD General Order G09-01-01, § VII(A) ("The contents of any record, file or report will not be exhibited or divulged to any non-Departmental person or entity except in the performance of official duties and in accordance with Department policy, and applicable federal, state and local laws.").[1] Bellamy also argues that there would be an informational imbalance because only Defendants have access to this information, and because it would also waste valuable court time and resources.

Defendants, for their part, explain that they will not run the jurors' background checks after the jury has been empaneled. R. 92 at 15. But the defense argues that background checks during *voir dire* are critical to ensuring an impartial jury, especially in this case where a juror's prior interactions with police officers and the criminal justice system are relevant to bias. *Id.* at 14.

Police department orders are not binding on this Court, nor is there any reason to believe that those orders create enforceable rights. Courts in this district have allowed the use of *voir dire* background checks in other trials. *See Dyson v.*

---

[1]The General Orders can be found on the Chicago Police Department's Directives System, located at http://directives.chicagopolice.org/directives/.

*Szarzynski*, 2014 WL 7205591 (N.D. Ill. Dec. 18, 2014) (permitting *voir dire* background checks after the plaintiff withdrew an objection, and after holding a hearing to ensure that the checks would not interfere with the court's jury selection protocol); *Logwood v. City of Chicago*, 2013 WL 1385559, at *1 (N.D. Ill. Apr. 4, 2013) (allowing the checks because there "is no controlling precedent that holds that parties are barred from running background checks on potential jurors"); *Anderson v. City of Chicago*, 2011 WL 2292327, at *2 (N.D. Ill. June 9, 2011) (holding that it was proper to remove a juror after the defense ran a background check mid-trial, revealing that the juror did not disclose prior arrests during *voir dire*).

Background checks could save time and resources if it is later discovered that jurors were dishonest during *voir dire*, and they also help to ensure an impartial jury in a § 1983 case "where the potential bias against law enforcement officers stemming from prior contacts with the criminal justice system could result in prejudice against the officers … ." *Dyson*, 2014 WL 7205591, at *4. So this motion is denied. But because of the strong interest in conducting a prompt and efficient *voir dire*, and to ensure non-discriminatory use of the checks, the use of background checks is subject to the following limits: (1) the background checks may only be used during *voir dire* (as already agreed to by Defendants) and *before* the jury has been released from any further questioning; (2) any background checks (both the fact of and the results) must be disclosed to the Court and to Bellamy. Bellamy is free to challenge any discriminatory use of background checks that might violate *Batson v. Kentucky*, 476 U.S. 79 (1986).

**Plaintiff's Motion in Limine 11 (Lawsuit's Effect on Defendants' Records).** Bellamy moves to bar any argument that a finding of liability will mar Defendants' "exemplary" or "distinguished" records or impact their careers. Defendants state that they "have no intention of affirmatively touting their performance records at all," but "reserve the right to make proper arguments concerning motive to act or refrain from acting in the manner alleged by Plaintiff." R. 92 at 16. Defendants generally may testify about why they chose to act in certain ways or probably may testify on how their past experiences informed their actions. But that is different from referencing the potential career consequences of liability, which is not something the jury should consider, and would invite Bellamy to respond with evidence and argument about how effective the Police Department disciplinary system is, or is not. Any potential relevancy thus would be substantially outweighed by time-wasting and confusing evidence on that point. So Bellamy's motion is granted.

**Plaintiff's Motion in Limine 12 (Testimony that Contradicts the Fourth Amendment).** Bellamy anticipates that Defendants will argue that (1) Watkins cannot be liable for Plaintiff's false arrest because he was not the arresting officer; and (2) Bellamy was not "arrested" at the beach on the day in question but was taken into the station for "investigation." Bellamy argues that

these arguments are inconsistent with the Fourth Amendment and should be barred.

On the first line of testimony, Bellamy argues that a defendant meets the personal involvement requirement of § 1983, and thus can be held liable, "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quotation marks omitted) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Defendants agree that even though Watkins did not arrest Bellamy, Watkins can still be liable if he directed other officers to conduct the arrest, and they do not plan to argue otherwise. R. 92 at 17. Thus, the motion is granted in part as to this line of argument.

But Defendants take issue with the second line of testimony about when Bellamy was arrested. Bellamy anticipates that even though the evidence shows that she was held by police officers at the beach, placed in handcuffs, told to wait near a squadrol, and then transported in the squadrol to a holding cell at the police station, Defendants will argue that Bellamy was only "taken into custody" at the beach but not arrested until later. R. 90 at 19-20; R. 90-4, Pl.'s Exh. D, Willis Dep. 79:13-21 ("Q. Were they at the beach when they arrested her? A. We took her into custody at the beach. Q. And when did they arrest her? A. We took her into the 2nd District for processing. I don't know what the exact time would have been put down as the arrest. That would be on the case report – or the arrest report. It's on top of the arrest report."). According to Bellamy, this is an incorrect statement of the law under the Fourth Amendment, which provides that "[a]n arrest occurs when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010) (citation and quotation marks omitted). That is, the Fourth Amendment arrest could have happened at the beach. Although Defendants do not challenge this legal interpretation, they nevertheless argue that Defendants should be permitted to testify about the "arrest" in colloquial terms, referring to when someone is formally charged with a crime, even if this is different from the Fourth Amendment definition of "arrest." R. 92 at 17.[2]

The Court agrees with Defendants that there should be no regulation of the witnesses' use of the term "arrest" or of other vernacular about their actions and decisions. The Fourth Amendment inquiry is objective, so the officers' subjective belief about when the arrest occurred is not controlling. *E.g.*, *Maryland v. Pringle*,

---

[2] It is worth noting that the definition of "arrest" offered by Bellamy is not entirely accurate, because it really is the definition of any Fourth Amendment *seizure*, even temporary seizures (like *Terry* stops) short of an arrest. *Florida v. Royer*, 460 U.S. 491, 502 (1983). (The only type of seizure at issue in *Fox v. Hayes* was an arrest, so the statement in *Fox* was made in that specific context.) Again, the Court is skeptical of whether this really is an issue in this case.

8

540 U.S. 366, 366 (2003) ("To determine whether an officer had probable cause to make an arrest, a court must examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." (citation omitted)). Crucially, the jury will be instructed on the Fourth Amendment definition of an arrest (if this really becomes an issue at trial), and it will be up to the jury to apply the instruction to determine precisely when that arrest began and whether it was proper. Perhaps a limiting instruction is warranted if and when this issue arises during testimony, and the Court will discuss this (as well as the threshold issue of whether this really will be disputed at trial) with the parties at the pretrial conference. Otherwise, the motion in limine is denied in part as to this issue.

**Plaintiff's Motion in Limine 13 (Psychiatric Treatment).** Bellamy moves to bar any argument or testimony about her psychiatric treatment. This motion is granted. Bellamy explains that she is only claiming garden-variety emotional distress damages, R. 90 at 20, so psychiatric treatments and counseling are irrelevant to damages. Yes, it would have been better had Bellamy expressly acknowledged that, during discovery, she had taken the position that she would seek damages beyond garden-variety damages, but she has now limited the scope of damages.

The Court also rejects Defendants' argument that the interaction between Bellamy's psychiatric drugs and the alcohol she consumed is relevant to her physical response to Officer Watkins at the 31st Street Beach. R. 92 at 20. This would require expert testimony under Rule 702, and Defendants have disclosed no expert who can speak to the effects of alcohol and psychotropic drug interactions, including the particular drug, dosage, timing, and so on. For the same reasons, Defendant Viti may not testify that Bellamy said she was taking psychotropic drugs on the day of the incident and that she knew those drugs should not be taken with alcohol. Bellamy too is not an expert and whatever probative value that statement might have is substantially outweighed by the jury guessing as to the impact of the drugs and the jury making unfounded assumptions about people who take psychotropic drugs.

**Plaintiff's Motion in Limine 14 (Bolstering).** Bellamy moves to bar statements that bolster police officers' status, including the following:

- Police officers are heroes.
- Police officers risk their lives every day.
- Police officers serve and protect you.
- Police face dangerous situations every day.
- Police officers do not use excessive force against or arrest people for no reason.
- Police officers would never risk their careers by doing what Plaintiff alleges.

9

Defendants "do not intend to make generalized claims concerning the risks endemic to the law enforcement profession or the manner in which police officers[]conduct themselves." R. 92 at 21. But they argue that they should be permitted to speak about their "job duties, assignment, mission, or relevant experience," as well as testify that they "took an oath or [were] charged with the duty to serve and protect the community." *Id.*

Bellamy's motion is granted as to any of the above-listed statements because they are "improper argument, which tend[s] to distract the jury from assessing the evidence fairly and impartially by invoking sympathy for police officer defendants who have a difficult job." *Battle v. O'Shaughnessy*, 2013 WL 3984463, at *6 (N.D. Ill. Aug. 2, 2013). It is also granted to any reference to the oath or the duty to serve and protect the community. The key is that Defendants cannot imply that they are serving and protecting the *jurors*, or that because they had a duty to protect, they were unlikely to have violated Bellamy's rights. Although Defendants may certainly testify about any relevant job duty, assignment, mission, or experience, and can even argue that Defendants were "just doing their job," they may not cross the line into the impermissible overtones described above.

## II. Defendants' Motions in Limine

### A. Uncontested Motions

**Defendants' Motions in Limine 10, 11, and 18.** These motions are granted as unobjected.

- **Defendants' Motion in Limine 10 (Settlement)**. Defendants move to bar any evidence about settlement proposals, negotiations, or outcomes.

- **Defendants' Motion in Limine 11 (Discussions with Attorneys While Under Oath)**. Defendants move to prohibit the attorneys from speaking any witness regarding the substance of her testimony while the witness is still under oath to provide sworn testimony. The Court infers from the parties' description of their agreement that this bar applies even when witnesses have been sworn in for *direct* examination but have *not* yet begun cross examination.

- **Defendants' Motion in Limine 18 (Attorney Opinions)**. Defendants move to prohibit counsel from vouching for or expressing personal opinions about the veracity, legitimacy, or character of any witness, party, or claim. Defendants also seek to bar attorneys from referencing personal information about themselves or other attorneys.

### B. Contested Motions

**Defendants' Motion in Limine 1 ("Code of Silence").** Defendants move to bar any reference that police officers generally lie, conspire, cover up, or otherwise maintain a "code of silence" to protect their fellow officers. They note that "this motion does not seek to bar Plaintiff from arguing that police officers in *this case* are lying for each other." R. 89 at 2 (emphasis added).

This motion is granted. Any reference to a generalized code of silence—that is, a free-standing conspiracy whereby *all* police officers tend to lie for each other and are biased—is barred because it would be speculative and highly prejudicial. Bellamy points to no *record* evidence of a generalized code of silence. Although that type of evidence might be presented "in a manner that would be both sufficiently reliable and comprehensible to the jury through the testimony of an expert witness who has performed analysis of the data using an explainable methodology and [has] drawn appropriate conclusions," *Cooper v. Dailey*, 2012 WL 1748150, at *3 (N.D. Ill. May 16, 2012) (citation omitted), Bellamy has not proposed that expert testimony in this case. Instead, Bellamy's generalized argument that "police officers have an interest in supporting each other," R. 91 at 1, "is sufficiently attenuated and ill-presented such that its probative value is substantially outweighed by the potential for confusion of the issues and lack of juror comprehension … ." *Id.*; *c.f. Obrycka v. City of Chicago*, 2012 WL 601810, at *8 (N.D. Ill. Feb. 23, 2012) (permitting expert testimony about the code of silence that met the requirements of Fed. R. Evid. 702).

Bellamy's argument that "[c]ourts have consistently denied the motion *in limine* Defendants have filed here" is wrong. R. 91 at 1. The case law emphasizes that generalized evidence of bias is improper, but plaintiffs "are entitled to develop the theme that a code of silence existed among *these particular officers* in *this particular incident*," *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (emphasis in original) (quotation marks omitted) (quoting *Moore v. City of Chicago*, 2008 WL 4549137, at *6 (N.D. Ill. Apr. 15, 2008)); *see also, e.g.*, *Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004) (barring generalized evidence of a "code of silence" but allowing "[t]he plaintiff [to] explore the possibility that the defense witnesses *in this case* are biased because of loyalty to one another." (emphasis added)); *Ford v. Bell*, 2012 WL 1416456, at *4 (N.D. Ill. Apr. 24, 2012) (same). Bellamy may do the same here, and thus is allowed to argue that the *particular* officers involved in the incident and investigation are biased in favor of one another.

**Defendants' Motion in Limine 2 (Current Events).** Defendants move to bar recently publicized news of police misconduct and findings of the Police Accountability Task Force. Bellamy states that she "does not intend to go into details about news accounts regarding wrongful arrests or convictions," but that she "reserve[s] the right to cross-examine witnesses regarding the role that such accounts may have played in Plaintiff's reaction to the actions of the police, and in

Plaintiff's claimed emotional distress." R. 91 at 3. As an example, witness "Nicole Kerr may be questioned as to the reason she decided to begin videotaping this incident. Nicole Kerr is a young Black woman who was born and raised in the City of Chicago. She may, hypothetically, feel that she had a duty in light of Chicago's history of police misconduct to come forward." *Id.*

Bellamy's argument is rejected because she does not explain how Kerr's motivations about videotaping the incident "ha[ve] any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. In other words, *why* Kerr recorded Bellamy's encounter with the police has no bearing on whether Defendant Watkins actually attacked Bellamy, falsely arrested her, or maliciously prosecuted her. Nor have Defendants suggested that they want to elicit or challenge Kerr's motivations. If the defense opens the door on motivation, then Kerr will be allowed to testify as to her motives, but the Court anticipates that the testimony would amount to little more than a few sentences, to balance against Rule 403 concerns.

On the other point raised by Bellamy—her reactions to news about police misconduct and current events can affect her emotional distress—the problem here is that Bellamy intends to pursue only "garden variety" emotional-distress damages, *see supra* Pl.'s Motion in Limine 13, which does not include individualized responses to police conduct. Thus, any task force findings or news reports about other instances of police misconduct are not relevant as to Bellamy's garden-variety damages, and this motion is granted.

**Defendants' Motion in Limine 3 (General Orders).** Defendants want to prevent Bellamy from arguing that any officer violated the Chicago Police Department's General Orders and other rules and regulations. Defendants are generally correct that violations of order and rules do not necessarily equate to the liability standards set by the Constitution. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Although a police department's general orders or policies "may give police administration a framework whereby commanders may evaluate officer conduct and job performance, it sheds no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment … ." *Id.*

Having said that, sometimes a General Order or rule will be relevant to permissibly proving a *factual* point, rather than impermissibly standing-in for a constitutional-liability standard. *E.g.*, *Maus v. Greening*, 2012 WL 4903326, at *2 (E.D. Wis. Oct. 15, 2012) ("Although the violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass." (citing *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009)). But in applying *Thompson*, it is important to recognize that it is neither so broad that no general order or policy is ever admissible nor is it so narrow that simply invoking an element of 'subjective state-of-mind' is enough to allow the general

order or policy. In this case, Bellamy argues that the way "police officers do their jobs, like the rest of us, according to certain rules, habits, and routines … may be relevant at trial." R. 91 at 5. This is too vague to evaluate. At the pretrial conference, Bellamy must identify which rules and general orders she anticipates introducing at trial and explain how they specifically are relevant to any issues in this case, as well as any potential Rule 403 concerns. Thus, decision on this motion is reserved.

**Defendants' Motion in Limine 4 (Misconduct of Non-Defendant Police Officers).** Defendants move to bar any suggestion that non-Defendant police officers or City of Chicago employees engaged in any misconduct or caused any injury to Bellamy. Defendants argue that because § 1983 does not permit officers to be held liable for the actions of another person, such testimony "invites the jury to find against Defendant officers if they wanted to compensate Plaintiff for any such alleged injury and/or to punish Defendants for the alleged actions of another individual." R. 89 at 5; *see Gossmeyer*, 128 F.3d at 495 ("The doctrine of respondeat superior cannot be used to impose § 1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights." (citation omitted)). Bellamy objects because the City could be liable for her state-law malicious prosecution claim even if a non-defendant officer was responsible for Bellamy's malicious prosecution.

On Bellamy's malicious prosecution claim, it is true that "under Illinois law, whether a primary defendant is actually ordered to pay damages or is not named in the complaint is not relevant to determining liability under respondeat superior." *Walden v. City of Chicago*, 391 F. Supp. 2d 660, 680 (N.D. Ill. 2005) (citing *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir. 1994)); *see also Lewis v. Weis*, 2012 WL 45242, at *2 (N.D. Ill. Jan. 5, 2012) (a "respondeat superior claim may be pursued against the City even if its employee is not a party to the lawsuit" (citing, e.g., *McCottrell v. City of Chicago*, 481 N.E.2d 1058, 1059-60 (Ill. App. Ct. 1985)). But although Bellamy is technically correct that the City could be held liable for the actions of a non-defendant City employee, Bellamy has not explained what evidence supports this theory. At the pretrial conference, Bellamy must identify precisely which non-defendants' actions (if any) will form the basis of the City's respondeat superior liability, and how she plans to prove that a non-defendant possessed the state of mind of actual malice. *See Sneed v. Rybicki*, 146 F.3d 478, 480-81 (7th Cir. 1998) (a malicious prosecution claim requires a plaintiff to show that "(1) [s]he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." (citation and quotation marks omitted)). It is especially unclear how Bellamy intends to make this showing given that she has moved to bar evidence and argument about dismissed claims and dismissed Defendants in *her own* Motion in Limine 6, which the Court has already granted. The Court reserves decision on this motion pending additional information at the pretrial conference.

13

**Defendants' Motion in Limine 5 (City's Training, Discipline, and Investigation of Police Officers).** Defendants move to bar any suggestion that the City improperly trains, disciplines, monitors, or controls police officers because that evidence would be confusing and prejudicial when there is no *Monell* claim against the City. Bellamy generally agrees but argues that this motion is overbroad because "[t]here are many ways that police department rules might become relevant, from impeachment to definitions of Chicago Police Department terminology." R. 91 at 7. Again, this is too vague to evaluate. As discussed earlier (Defendants' Motion in Limine 3), Bellamy must explain what police department rules she anticipates introducing at trial, and how they specifically are relevant to any issues in this case, as well as any potential Rule 403 concerns. The Court reserves ruling pending this information.

**Defendants' Motion in Limine 6 (Past Complaints).** Defendants seek to bar reference to any prior disciplinary records of the Defendant officers or any other police department personnel involved in this incident, because it would be improper propensity evidence under Rule 404. Bellamy objects only as to three former instances involving Defendant Watkins, including: (1) an alleged attack on proposed witness Yashica Williams; (2) an alleged attack on proposed witnesses Tyjuan Gardner and Tyquan Henderson; and (3) an alleged incident with proposed witness Stacy Kraft. R. 91 at 7. This motion is granted with some caveats as to the three incidents involving Watkins, as discussed below in Defendants' Motion in Limine 16.

**Defendants' Motion in Limine 7 (Indemnification).** Defendants move to bar any reference to indemnification of the individual Defendants by the City of Chicago. When a plaintiff does not have *Monell* claim and when the municipality is only named as a defendant for purposes of indemnification, reference to the municipality as a named defendant can unfairly prejudice the individual defendants because it could "encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) (citation omitted). Bellamy does not object unless Defendants open the door by suggesting that the individual Defendants are personally liable for damages. R. 91 at 7; *Galvan v. Norberg*, 2006 WL 1343680, at *2 (N.D. Ill. May 10, 2006) ("[D]efense counsel should be aware that if they plan to apprise the jury of the fact that the individual officers will have to bear such damages out of their own pockets, fairness would require that the jury also be informed of the true situation (indemnification) as to compensatory damages."). Thus, this motion is granted unless the defense opens the door.

**Defendants' Motion in Limine 8 (Sending Message to the City).** Defendants move to exclude any argument that the jury should send a message to the City with its verdict. That message, Defendants argue, only applies to punitive damages, which cannot be awarded against the City. Bellamy responds that

because the City is a Defendant in the state-law malicious prosecution claim, such an argument is proper.

Punitive damages are unavailable against a municipality unless explicitly authorized by statute. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). And the Illinois Tort Immunity Act also provides that "[n]otwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2-102. Bellamy does not explain why the statute would permit punitive damages against the City in her state-law malicious prosecution claim. Thus, the Defendants' motion is granted. Because the Chicago Police Department is a component of the City, the same goes for arguing that a message should be sent to the Police Department.

It is worth noting that the defense did not seek to bar a "send a message" argument as to the individual Defendants.

**Defendants' Motion in Limine 9 (Receiving Payment to Testify).** Defendants move to bar any suggestion that police department personnel are paid by the City to appear in court, testify, or prepare for trial because that evidence is irrelevant and prejudicial. Bellamy argues that this testimony may be relevant to her malicious prosecution claim because Defendant "Watkins failed to appear in court on [Bellamy's] criminal case and then failed to seek reinstatement of those charges – steps he would have been paid to do. Plaintiff's counsel should be permitted to explore the fact that Watkins gets paid to appear in criminal court, to challenge Watkins' credibility and to challenge his motives in initiating charges in the first place." *Id.* R. 91 at 8.

This motion is granted. The jury almost surely will assume that officers and City employees are paid for their court time and trial-preparation time. To expressly highlight the payments would imply that the officers are getting paid to testify in a certain *way*, which is an unfairly prejudicial implication. Any minimal relevance of this evidence is outweighed by the danger of that unfair prejudice. To be sure, Watkins's failure to appear for Bellamy's criminal case is probably relevant to the malicious prosecution claim, but highlighting whether he would have been paid to do so raises the problem just described.

**Defendants' Motion in Limine 12 (IPRA Investigation).** Defendants move to bar any reference to IPRA's investigation of this incident because disciplinary scrutiny by an internal agency would imply that Defendants engaged in wrongdoing.

Bellamy agrees that the nature, quality, and conclusions of the IPRA investigation are not relevant to the issues before the jury and may be prejudicial, so this motion is granted in part in that regard. R. 91 at 8; *e.g.*, *Gonzalez v. Olson*,

2015 WL 3671641, at *17 (N.D. Ill. June 12, 2015) ("[E]vidence concerning any conclusion reached as a result of the IPRA investigation is not relevant to or probative of anything the jury must determine."); *Bruce v. City of Chicago,* 2011 WL 3471074, at *6 (N.D. Ill. July 29, 2011) ("The jury also should not hear evidence that there was an investigation, the reasons for undertaking the investigation, or the findings and recommendations of IPRA. The potential prejudice from testimony about the IPRA investigation substantially outweighs its questionable probative value … .").

Statements made to IPRA investigators, however, may be introduced for impeachment or as a party admission, so this motion is denied in part as to these uses. *E.g.*, *Gonzalez*, 2015 WL 3671641, at *17; *Norton v. Schmitz*, 2011 WL 4984488, at *1 (N.D. Ill. May 27, 2011). If these statements are introduced, then the jury should hear exactly that: the statements were given as part of an IPRA investigation. Any concern about an implication of wrongdoing can be cured by an instruction that the jury should draw no inference from the mere fact that there was an investigation.

Finally, Bellamy wishes to testify that she filed an IPRA complaint shortly after leaving the hospital for treatment of her injuries, arguing that this filing corroborates her version of the events. This would be a prior consistent statement, which is only excepted from hearsay if it "is offered: (i) to rebut an express or implied charge that the declarant recently fabricated [the statement] or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B). If the defense mounts an attack that triggers these non-hearsay exemptions, then Bellamy will be allowed to introduce (only) the fact of her IPRA filing for rebuttal or rehabilitation.

**Defendants' Motion in Limine 13 (Passage of Time).** Defendants move to bar Bellamy from arguing that they have delayed the trial or that Bellamy has waited a long time for trial. Bellamy responds that she does not intend to imply that Defendants caused any delay, but she wishes to reference the passage of time if Defendants suggest that Bellamy is out for an "easy pay day," or to explain any memory issues on both sides. R. 91 at 9. This motion is granted in large part. Bellamy may certainly refer to the *fact* of the passage of time to explain any memory issues or rebut the "easy pay day" assertion, but she may not insinuate that she has been waiting a "long" time for her day in court or that Defendants caused any of this delay. This testimony or argument would run into Rule 403 problems: the time that a litigant waits for trial is caused by any number of irrelevant factors, such as the time elapsed from the filing of the event to the filing of the complaint, the speediness (or lack thereof) of discovery, the Court's trial calendar, and so on. Any suggestion that Bellamy has waited a "long" time is prejudicial, confusing, and misleading, because it suggests that she should be compensated for this lost time.

**Defendants' Motion in Limine 14 (Remove the City of Chicago as a Named Defendant).** Defendants move to bar reference to the City of Chicago during trial, and to remove the City from the jury instructions and case caption, because the municipality is only a defendant for indemnification purposes on the § 1983 claim. Bellamy responds that the City must remain because her state-law malicious prosecution claim allows municipal liability under the theory of respondeat superior even if the underlying tort was committed by an unnamed employee.

As previously explained in Defendants' Motion in Limine 4, the Court needs more information about precisely what evidence supports Bellamy's theory that a non-defendant maliciously prosecuted her. If Bellamy is unable to explain how she will prove this theory, then the Court agrees that there is a risk of an inflated compensatory damages award if the City is presented to the jury as a defendant. Once a jury has found liability against police officers, the jury is not as likely to artificially reduce damages if the City is not in the case as it is to artificially *inflate* damages if the jury knows that the City is a defendant. So the proper approach would be to bifurcate under Federal Rule of Civil Procedure 42(b), because the City would be named as a defendant only for purposes of indemnification and the City has agreed to automatic entry of judgment against it for compensatory damages (and attorney's fees, because Bellamy would have prevailed against the City as well) if Watkins or Viti are found liable. Similarly, the City would also be removed from the case caption, verdict form, and jury instructions. The Court reserves ruling on this motion pending additional information at the pretrial conference about the non-defendant malicious-prosecution theory.

**Defendants' Motion in Limine 15 (Bar Dabo-Apraku from Testifying).** Defendants move to bar the testimony of witness Kofi Dabo-Apraku. Defendants argue that they were unable to serve Dabo-Apraku for a deposition after making two attempts and after Bellamy refused to produce Dabo-Apraku without a subpoena. As a result, Defendants believe that they will be prejudiced without the benefit of his prior sworn testimony.

Defendants have cited no rule supporting their argument because no rule like that exists. Even if the defense had been diligent in trying to serve Dabo-Apraku (and they were not), still the result would not be to bar Bellamy from presenting Dabo-Apraku, because there is no evidence whatsoever that Bellamy caused the non-service. This motion is denied.

**Defendants' Motion in Limine 16 (Bar Gardner, Henderson, Williams, and Kraft from Testifying).** Defendants move to bar the testimony of witnesses Tyjuan Gardner, Tyquan Henderson, Yashica Williams, and Stacy Kraft, all of whom had prior encounters with Defendant Watkins. Defendants argue that this testimony amounts to improper character evidence prohibited by Rule 404(b). Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to

prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Bellamy responds that this testimony is admissible under Rule 404(b)(2) if used not to show character but "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In particular, Bellamy argues that this testimony will show Defendant Watkins's "*modus operandi* of attacking people who are smaller than him who he feels need to respect him on the basis of his size and status as a police officer. Watkins uses physical force to overcome verbal assaults, and then blames his victims and has them arrested." R. 91 at 11-12.

Bellamy's response does not address the controlling case law on Rule 404(b). Before 2014, the Seventh Circuit used a four-part test to determine admissibility under Rule 404(b); courts were to consider "whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Gomez*, 763 F.3d 845, 852 (7th Cir. 2014) (quotation marks omitted) (quoting *United States v. Zapata*, 871 F.2d 616, 620 (7th Cir. 1989)). But recognizing that the exceptions had swallowed the rule, the Seventh Circuit abandoned this test in an *en banc* decision and established a new set of governing principles: the proponent of Rule 404(b) evidence must establish that the "other act" evidence is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. *Id.* at 853. Crucially, the evidence's relevance to the permissible purpose must be established through a "chain of reasoning" that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the present case. *Id.* A party must "identify[] the *non-propensity* theory that makes the other-act evidence relevant and specifically ask[] *how* the evidence tends to make a particular fact of consequence more or less probable." *Id.* at 856 (second emphasis in original). If the proponent of the evidence can make this showing, then the Court must consider whether the evidence remains admissible under Rule 403. *Id.* at 860.

Here, Bellamy has forfeited any argument as to the testimony of Tyjuan Gardner, Tyquan Henderson, Yashica Williams, and Stacy Kraft. Defendants discussed *Gomez* in their opening motion, but Bellamy's response entirely ignored this controlling precedent. In light of *Gomez*, it is not enough for Bellamy to say only that some "other act" is relevant to intent, motive, identity or another enumerated Rule 404(b) purpose; the "other act" also must not rely on a *non-propensity* chain of reasoning. Bellamy offers none to evaluate (which is not surprising, because

Bellamy does not address *Gomez* at all). So the motion to bar this evidence is granted.[3]

**Defendants' Motion in Limine 17 (Failure to Provide Medical Care).** Defendants move to bar any reference to Defendants' failure to provide medical care. Bellamy responds that this issue is relevant to her damages, as "it is both emotionally degrading and physically painful to await medical care, and Plaintiff's anxiety over the delay illustrates and helps shape for the jury the scene and the circumstances surrounding these events." R. 91 at 13.

This motion is granted because Bellamy has not brought a claim for failure to provide medical care, so any argument about delayed or absent care is irrelevant to her claims of excessive force, false arrest, and malicious prosecution. Bellamy is permitted to introduce *the fact* that she suffered the injuries, and for how long, because this is relevant to compensatory damages. But she cannot suggest that her suffering was the result of any delay in medical care. Otherwise, there would be a Rule 403 risk that the jury will improperly compensate Bellamy for injuries for which Defendants are not responsible.

### III. Miscellaneous

*"Mini-Opening" Statements.* Given that there were no summary judgment motions in this case, the Court would like to get a concise summary of the parties' overall factual narratives. At the pretrial conference, each party should be prepared to make a one-minute opening statement to outline their cases.

ENTERED:


_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge


DATE: May 18, 2016

---

[3] Bellamy also has not argued that the evidence is admissible for punitive-damages purposes.