IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAIME RIOS, | ) | |
| | ) | Case No. 22 CV 3973 |
| Plaintiff, | ) | |
| | ) | Hon. Jeremy C. Daniel |
| vs. | ) | |
| | ) | |
| REYNALDO GUEVARA, MICHAEL MASON, | ) | Magistrate Judge Young B. Kim |
| JOANN HALVORSEN AS SPECIAL | ) | |
| REPRESENTATIVE FOR ERNEST | ) | |
| HALVORSEN, DECEASED, AND | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT GUEVARA'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(B)(3)

Defendant Reynaldo Guevara, by his attorneys, submits this Statement of Additional Undisputed Material Facts, pursuant to Local Rule 56.1(b)(3) in opposition to Plaintiff Motion for Partial Summary Judgment Against Defendant Reynaldo Guevara. (Dkt. 109).

1. On July 28, 1989, at approximately 3:15pm, Cristino Garcia was arrested by Chicago police officers Aubrey O'Quinn and P. Mertes and taken to Area 5 as a suspect in the murder of Luis Morales. (Garcia Arrest Report attached as Def. Ex. 11).

2. Officer O'Quinn placed Garcia in a room on the second floor of Area 5. (Plt. Ex. I, Garcia Tr. at pp. 113). Initially, Garcia was alone in the room. (Plt. Ex. I, Garcia Tr. at pp. 114).

3. Assistant State's Attorney (ASA) Barbara Riley subsequently came into the room and introduced herself to Cristino Garcia as a State's Attorney. (Plt. Ex. I, Garcia Tr. at pp. 37, 114, 159-160, 173-174; Def. Ex. 1, Plaintiff's Second Amended Complaint, Dkt. No. 61, ¶ 108).

4. Plaintiff alleges that ASA Barbara Riley was in the interview room and witnessed Guevara's alleged abuse of Garcia and that O'Quinn was outside the room, aware the abuse was

1

occurring (the complaint states, "Cook County [Assistant] States Attorney Barbara Riley was present for Guevara's abuse of Garcia, but ignored it and made no report of it."). (Def. Ex. 1, Plaintiff's Second Amended Complaint, Dkt. No. 61, ¶ 108-109).

5. Garcia testified that a female ASA was in the room while Guevara interrogated him and physically abused him and O'Quinn was outside the door when the alleged abuse by Guevara occurred. (Pl.'s Ex. I, 37:1-39:1, 40:21-41:3).

6. Officer Aubrey O'Quinn was employed as a Chicago Police Officer from 1965 to 1996 and he never observed nor was he aware of Reynaldo Guevara hitting or attempting to elicit a false confession from any subject. (Aubrey O'Quinn Declaration attached as Def. Ex. 9).

7. ASA Riley never saw Guevara, or any other Chicago police officer, abuse a witness or suspect, she was never in an interview room where any police officer abused a defendant or witness, and she did not witness Detective Guevara abuse Garcia on July 28 or July 29, 1989. (Def. Ex. 6, Barbara Riley Dep. Tr. at pp. 75-77).

8. Garcia testified that he provided an alibi to Officer O'Quinn and that Guevara was present during the exchange. (Plt. Ex. I, Garcia Tr. at pp. 157:15-159:15).

9. O'Quinn denies that Garcia ever provided an alibi. (Def. Ex. 9, ¶6).

10. O'Quinn and Mertes reported their arrest of Garcia in an arrest report and a July 28, 1989, a Supplementary Report. The supplementary report does not contain any mention of Garcia providing an alibi or Guevara's presence. (7/28 Supp. Report Regarding the Cristino Garcia Arrest attached as Def. Ex. 12; Aubrey O'Quinn Declaration ¶4-6, attached as Def. Ex. 9).

11. If Garcia had provided O'Quinn with an alibi, O'Quinn would have reported it. (Aubrey O'Quinn Declaration ¶4-6, attached as Def. Ex. 9).

12. On July 28, 1989, the Area Five Violent Crimes Unit asked that Garcia be held for 24 hours (past the next regularly scheduled court call) so that a lineup required by the State's Attorney's Office could be held the following day. (7/28 Supp. Request to Hold attached as Def. Ex. 13).

13. On July 29, 1989, a mugshot of Cristino Garcia was taken holding a card that says JUL 29 (Cristino Garcia JUL 29 Mug Shot attached as Def. Ex. 17).

14. Detective Michael Mason interviewed Garcia on July 29, 1989 at 11 a.m. at Area 5. Mason read him his *Miranda* rights and Garcia declined to speak with Mason. This was documented in a July 29, 1989 Supplemental Report authored by Mason. (Dep. Tr. Michael Mason at 82:15-83:4, 116:11-14 attached as Def. Ex. 4; 7/29 Lineup Supp. Report attached as Def. Ex. 14).

15. On July 29, 1989, at 1:20 p.m. at Area 5, Detective Michael Mason conducted a physical lineup in the Morales homicide investigation. Eyewitness Javier Torres viewed the lineup, which included Christino Garcia. Torres was unable to identify anyone in the lineup, including Garcia, as one of the persons involved in the shooting. This is documented in a July 29, 1989 Line Up Supplemental Report, a July 29, 1989 Supplemental Report, and a July 29, 1989 Release of Person in Custody Report. (7/29 Release Supp. Report attached as Def. Ex. 14; Dep. Tr. Michael Mason at 149:13-44:4, attached as Def. Ex. 4; 7/29 Cristino Garcia Release Report attached as Def. Ex. 16).

16. After the lineup, at approximately 3:40 p.m., Detective Mason reported, in a Release of Custody report, that his investigation revealed there was not sufficient cause to further detain Garcia and requested Garcia's immediate release. Detective Mason also reported that

3

eyewitness Torres had viewed Garcia in a lineup and was unable to identify Garcia as an offender. (7/29 Cristino Garcia Release Report attached as Def. Ex. 16).

17. Copies of the police reports were in the investigative file provided to Plaintiff' criminal trial team. (Def. Ex. 10).0

18. After Torres was unable to identify Garcia as an offender, Detective Mason contacted felony review, and Assistant State's Attorney Connelly responded to Area Five. Detective Mason apprised ASA Connelly about the status of the investigation and ASA Connelly and Detective Mason agreed to release Garcia without charging him with any crime based on a lack of sufficient evidence to substantiate the charge and a lack of an identification. Detective Mason reported this in his July 29, 1989 Supplementary Report and July 29, 1989 Release of Person in Custody Report. (Def. Ex. 15, 7/29 Supp. Report regarding Cristino Garcia Release; De. Ex. 16, 7/29 Cristino Garcia Release Report; Def. Ex. 4 at 86:6-12).

19. In July of 1989, Cook County Assistant State's Attorney Barbara Riley was assigned to the felony review unit of the Cook County State's Attorney's Office. As a felony review assistant prosecutor, it was her job to review proposed charges against an individual and the evidence in a case to determine whether the charges should be approved. (Def. Ex. 6, Barbara Riley Dep. Tr. at pp. 23:12-24:22, 98:5-99:8).

20. In July 1989, Guevara was a Gang Crimes Specialist and not a detective. Guevara became a detective in August 1989, four months prior to the Rios trial. Guevara was not the detective assigned to the Morales homicide investigation. (Plt. Ex. B at pp. 271:15-22, 307:7-13, 281:18-24-282:1-6).

21. Garcia never said anything about Guevara's alleged beating of him to the police or any State's Attorney. (Plt. Ex. I, Garcia Tr, at pp. 154:14-24, 155: 3).

4

22. Garcia cannot remember the name of his attorney who he spoke to while at Area 5 but was able to meet with the attorney for close to an hour and claims that he told the lawyer he was being beaten by Guevara. (Plt. Ex. I, Garcia Tr., at pp. 122:15-18, 123:9-18) Garcia claims the lawyer confronted the officers and when they denied it, said he could not stay all day. (Plt. Ex. I, Garcia Tr., at pp. 125:15-126:3).

23. According to Garcia, he probably told other people he ran into about Guevara's alleged abuse of him, but he never told his friend, and fellow Latin King, Rios about it even though he knew Rios was in jail, had been arrested for the same crime, was waiting to be tried for murder, and wanted to testify for Rios because they were friends. (Plt. Ex. I, Garcia Tr., at pp.21:17-18, 53:17-21, 95: 13-18, 134:6-10, 136: 6-12, 154:14-19).

24. Cristino Garcia is Jaime Rios's brother-in-law. (Plt. Ex. I, Garcia Tr. At pp. 6:5-6). Garcia's sister Nori and Rios's brother Ricardo, have a child together. (Plt. Ex. I, Garcia Tr. At pp. 6:3-7:1).

25. Garica has two sisters, Maria and Noria, also known as Nori, Garcia. (Plt. Ex. I, Garcia Tr. at pp. 19:14-20:1, 6:18-21). Maria Garcia was friends with Rios's then-girlfriend, Diana Rodriguez. (Plt. Ex. I, Garcia Tr. At pp. 46, 65, 71, 93-96).

26. Public Defenders (PDs) John Carey and Karen Shields represented Rios in his criminal trial. At the time of Rios's criminal trial, Jack Carey, Rios's lead criminal defense attorney, was an experienced criminal defense lawyer who was known for going the extra mile in terms of investigating his cases. (Def. Ex. 8, Shields' Dep., pp. 68:22-23, 69:1, p. 69:9-20; Public Defender, John Carey is now deceased. Def. Ex 8, p. 262:9-12.

27. Garcia's sisters, Maria and Noria Garcia were listed as witnesses the defense might call at trial. (Def. Ex. 8, Shields Tr. At pp. 148:22-24; Def. Ex. 18, Rios's Answer to Motion for pre-trial Discovery).

28. Cristino Garica was disclosed as a witness on the State's Answer to Discovery (State's Answers to Discovery attached as Def. Ex. 10).

29. Garcia testified that he was allowed to call his sister Maria during the alleged abusive interrogation, that he called her, and she told him not to write a statement and that she would be sending an attorney for him. (Pl.'s Ex. I, at 41:4-24; 121:9-24).

30. Although she does not specifically recall interviewing either witness, PD Shields expects that Maria and Noria Garcia would have been thoroughly interviewed before they were disclosed as witnesses in the case. PD Shields also expects that if either of them had any exculpatory evidence, it would have been elicited at trial. (Def. Ex. 8, Shields Tr. at pp. 148-149).

31. According to PD Shields, there is a real problem with alibis backed up only by relatives, because juries tend to assume that relatives will lie for you and that is what they are doing. PD Shields testified she would try to investigate and prove Garcia's alibi but that she could not identify what evidence that might be, and she does not know if either of the alibi witnesses (Garcia's mother and girlfriend) could or would corroborate Garcia's alibi (Def. Ex. 8, Shields Tr. At pp. 252:13-18, 214:7-21).

32. Rios's criminal defense counsel did not interview Garcia or call Garcia at Rios's trial. (Def. Ex. 8, Shields Tr. At pp. 216-217).

33. Guevera was not involved in the search of Carrero's residence and was not involved in the interview of Carrero at Area 5 following the search. (Def. Ex. 5 at ¶¶ 88, 91 Plt. Ex. B at 371:13-374:3; 546:23-549:7).

34. Luis Huertas testified at trial that Rios was the person he saw shoot and kill Luis Morales. (Plt. Ex. B at pp. 151:24-165:8; Def. Ex. 7, Huertas Tr. At pp. 43: 3-13; 51:4-16).

35. Huertas he was not coerced into making an identification and he stands by his identification today. (Def. Ex. 7 at pp. 37:5-25, 39:2-40-12; 43:10-13; 46:22-47:12; 47:25-48:16; 49:4-17; 53:4-18).

36. Rios identified Garcia as the shooter in his court reported statement for the murder of Luis Morales. (Plt. Ex. B, Trial Tr. At pp.470:20-479:22).

37. The only ASA that Garcia had contact with at Area 5 was ASA Barbara Riley. (Plt. Ex. I, Garcia Tr. At pp. 114:3-24; Def. Ex. 1, Plaintiff's Second Amended Complaint, Dkt. No. 61, ¶ 108).

38. Assistant States Attorney Kay Hanlon testified that she had no recollection of interviewing Guevara at all, or in preparation for Rios murder trial. (Deposition of Kay Hanlon, attached as Def. Ex. 11, at pp. 52:7-11).

39. Rios's criminal defense team, PDs Karen Shields and Jack Carey, knew about Garcia, that he had been a prior suspect, and that he was not being charged in the case. (Def. Ex. 8, Shields Tr. At pp. 161,182-186).

40. On September 6, 1989, the State filed its Answer to Discovery. Garcia is the second witness identified in the State's Answer. (State's Answer to Discovery, attached as Ex. 10 at 1).

41. PD Shields testified that she did not recall anything preventing her or PD Carey from interviewing Garcia, but they did not interview Garcia. (Def. Ex. 8, Shields Tr. At p. 217:11-24).

42. Garcia was never asked to testify at trial. If he had been asked to testify, he would have invoked his Fifth Amendment right. (Plt. Ex. F, Garcia Affidavit, ¶ 13; Plt. Ex I, pp. 73:22-24, p. 75:1-4).

43. On June 27, 1989, Luis Huertas was sitting alone at 1310 North Western, waiting for a friend, when he saw Rios shoot and kill Luis Morales. (Plt. Ex. B, Rios Trial Tr. at pp. 152:14-24).

44. Huertas viewed two lineups in relation to this shooting. First, on June 30, 1989, Huertas viewed a lineup without Rios and made no identification. (Def Ex A, SAC ¶ 39) Huertas later identified Rios in a lineup on July 7, 1989. (Plt. Ex. D, Huertas Affidavit ¶ 2).

45. Benjamin Carrero testified at Rios's trial that Rios had given him a gun to hold on the night of the murder. (Plt Ex. E, Carrero Affidavit ¶1).

46. In his deposition for this matter, Reynaldo Guevara consistently responded to questions of alleged wrongdoing by invoking his Fifth Amendment right. (Plt. Ex. G, Guevara Deposition at pp. 6:3-5).

47. At Rios's trial, in addition to the evidence of Luis Huertas's lineup and in-court identifications of Rios, Rios's court-reported statement regarding his participation in the Luis Morales murder, and Benjamin Carrero's testimony and grand jury testimony, the State also introduced the testimony of additional witnesses (Plt. Ex. B, Report of Proceedings at pp. 146-150, 205-338, 359-551, 677-680), and Plaintiff testified in his defense. (Plt. Ex. B at pp. 578-646).

48. Guevara was not present during Michael Mason's interview of Benjamin Carrero. (Def. Ex. 5 at ¶ 91; Plt. Ex. B at 371:13-374:3; 546:23-549:7).

Date: February 13, 2024					Respectfully Submitted,
								DEFENDANT REYNALDO GUEVARA

								*/s/ Thomas More Leinenweber*
								Thomas More Leinenweber

Thomas More Leinenweber
James V. Daffada
Gabrielle R. Sansonetti
Michael Schalka
Special Assistant Corporation Counsel
Leinenweber Daffada & Sansonetti LLC
120 N. LaSalle Street, Suite 2000
Chicago, Illinois 60602

*On Behalf of Defendant Reynaldo Guevara*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I electronically filed and served the foregoing Defendant Guevara's Statement Of Additional Undisputed Material Facts pursuant to F. R.Civ.P. 5(b)(2)(D) through the court's Electronic Case Filing System at the electronic address appearing on record on February 13, 2024.

							s/ Thomas More Leinenweber
							***Attorney for Defendant***