**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAIME RIOS, ) | |
| ) | **Case No. 22 CV 3973** |
| Plaintiff, ) | |
| ) | **Judge Jeremy Daniel** |
| vs. ) | |
| ) | |
| REYNALDO GUEVARA, MICHAEL MASON, ) | |
| ERNEST HALVORSEN, CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION FOR RECONSIDERATION
AND SUCCESSIVE SUMMARY JUDGMENT[1]**

NOW COMES Defendants REYNALDO GUEVARA, and CITY OF CHICAGO, by and through their undersigned counsels, and moving for successive summary judgment under Fed. R. Civ. P. 56 and partial reconsideration of denial of summary judgment. In support thereof, Defendants state as follows:

**INTRODUCTION**

Under recent Seventh Circuit precedent, *Blackmon v. Jones*, 132 F.4th 522 (7th Cir. 2025), this Court's previous denial of summary judgment in favor of Defendant Guevara on Counts II, VIII, IX, and XIII should be reversed and this Court should grant summary judgment in favor of Guevara.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 16, 2024, this Court ruled on the parties' Motions for Summary Judgment. *See* Dckt. No. 215; *see also Rios v. Guevara*, 2024 WL 5119954 (N.D.Ill., 2024). Defendants sought summary judgment, inter alia, on Plaintiff's claims that Defendants used unduly suggestive identification procedures with a witness named Luis Huertas ("Huertas"), specifically: Count VIII of Plaintiff's

---

[1] For the purposes of Local Rule 56.1, Defendant Guevara hereby adopts and incorporates by reference the documents filed under Local Rule 56.1 in the initial Motions for Partial Summary Judgment. *See* Dckt. Nos. 178, 182, 191, 194.

Complaint which alleged an independent claim for use of an unduly suggestive identification procedures and Count XI which asserted a *Brady* claim premised on the alleged suppression of such allegedly unduly suggestive identification procedures. *See* Dckt. No. 181 at 15-16; Dckt. No. 177 at 12-19. As this Court may recall, Huertas played a central role in this case insofar as he was a direct eyewitness to Plaintiff murdering Luis Morales ("Morales") on June 27, 1989. *See* Dckt. No. 191 at ¶ 67; Dckt. No. 194 at ¶¶ 45, 46, 56. Since the day of the murder until the present day, Huertas has uniformly and adamantly stuck by the veracity of his identification of Plaintiff as Morales' murderer (a fact which Plaintiff has expressly admitted in this case). *Id.*

In support of their claims, Defendants argued that the use of unduly suggestive identification tactics cannot form the basis for subsequent monetary damage claims under Section 1983 or, at minimum, that Defendants were entitled to Qualified Immunity on such claims. Dckt. No. 181 at 15-16; Dckt. No. 177 at 12-19 *citing Vega v. Tekoh*, 597 U.S. 134, 150 (2022), *Coleman v. City of Peoria*, 925 F.3d 336, 347 (7th Cir. 2019), *Holloway v. City of Milwaukee*, 43 F.4th 760, 766 (7th Cir. 2022), *Ezell v. City of Chicago*, 2024 WL 278829 (N.D. Ill. 2024). Moreover, Defendants argued, again among other things, that the issue of whether such claims are legally cognizable was, at the time, being considered by the Seventh Circuit in the case *Blackmon v. Jones, et. al.*. Dckt. No. 177 at 12 *citing Blackmon v. Jones, et al.*, 23-3288. This Court acknowledged that this issue was currently on appeal but rejected these arguments because "the Court is bound by precedent allowing plaintiffs to recover for flawed identification techniques which undermine their right to a fair trial." *See Rios v. Guevara*, 2024 WL 5119954, at *12 (N.D. Ill. 2024) *citing Alexander v. City of S. Bend*, 433 F.3d 550, 555 (7th Cir. 2006). This Court also rejected Defendants' claims of Qualified Immunity. *Id.*

This Court, however, granted summary judgment in favor of Defendants Mason and Halvorsen on, XIV (Malicious Prosecution vs. Mason) and XV (Malicious Prosecution vs. Halvorsen) on other bases. *See Rios*, 2024 WL 5119954 at *13. With respect to Plaintiff's unduly suggestive

identification claim, this Court held that there was insufficient evidence that either Mason or Halvorsen had personal involvement in such conduct. *Id.* And, with respect to the malicious prosecution claims, this Court held that the lack of evidence about Guevara's alleged coercion in the identification of Plaintiff by Huertas barred such claims because Huertas' identification otherwise supplied probable cause for the prosecution. *Id. citing Moran v. Calumet City,* 54 F.4th 483, 500 (7th Cir. 2022) (providing that "even if questionable," "an eyewitness 'identification [is] enough to give [the police] probable cause to arrest").

On March 20, 2025, the Seventh Circuit issued its opinion in *Blackmon v. Jones*, 132 F.4th 522 (7th Cir. 2025).[2] For the reasons set forth below, *Blackmon* dictates that summary judgment be granted in favor Guevara on Counts II, VIII, IX, and XIII of Plaintiff's Complaint.

## APPLICABLE LEGAL STANDARDS

Motions for reconsideration are properly considered for, among other things, "correcting manifest errors of law or fact." *Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 902 (N.D. Ill. 2015). A party may also use a motion for reconsideration to alert the court to "a significant change in the law or facts." *Janusz v. City of Chicago*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015), *aff'd*, 832 F.3d 770 (7th Cir. 2016); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

Moreover, Rule 56(a) expressly allows for partial motions for summary judgment on limited issues or discrete parts of a case, and the Rule does not prohibit successive motions. *Collins Engineers, Inc. v. Travelers Property Casualty Company of America*, 2024 WL 4333117, at *8 (N.D. Ill., 2024); Fed. R. Civ. P 56(a). Rule 56 does not preclude the filing of successive motions for summary judgment. *Id.* Such motions may be filed for reasons including "an intervening change in controlling law." *Whitford*

---

[2] For what its worth, Plaintiff appears to believe that the subject claims remain valid in light of *Blackmon* insofar as he unilaterally (and in violation of this Court's Standing Order requiring a "meet and confer" on all such instructions) filed Proposed Jury Instructions which expressly include the claims subject to *Blackmon*. See Dckt. No. 220.

*v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) ("[T]he district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist."). Reasons to permit a successive motion may include: "(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice."); *see also Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009); *Hollingshead v. Wexford Health Sources, Inc.*, 2025 WL 2054358, at *1 (C.D. Ill. 2025); *Hollingshead v. Wexford Health Sources, Inc.*, 2025 WL 2054358, at *1 (C.D. Ill. 2025).

## **ARGUMENT**
### **PLAINTIFF'S CLAIMS BASED ON UNDULY SUGGESTIVE IDENTIFICATION TECHNIQUES ARE BARRED BY RECENT SEVENTH CIRCUIT PRECEDENT.**

Counts VIII and IX of Plaintiff's Second Amended Complaint must be dismissed with prejudice and judgment entered in Guevara's favor on these counts. Plaintiff alleges in those counts that Guevara used unduly suggestive and coercive identification procedures to induce witness Huertas into identifying Plaintiff as the murderer of Morales. *See supra*; *see also* Dckt. No. 61 at Cts. VIII-IX. These claims are clearly and unambiguously barred by *Blackmon*.

In *Blackmon*, as here, a plaintiff in a reversed-conviction case brought a claim for monetary damages under the Fourteenth Amendment, alleging his due process right was violated when identifications procured from the police officers' use of unduly suggestive techniques were introduced at trial against the plaintiff, leading to his conviction. 132 F. 4th at 524. The defendants in *Blackmon* argued, as Defendants did here on summary judgment, that qualified immunity protected them from suit on this claim because (1) the use of an identification procured from unduly suggestive techniques at trial does not constitute a Fourteenth Amendment due process violation by the officers; (2) and even if it did, such a constitutional violation was not clearly established in 2002, when the identifications were made. *Blackmon*, 700 F. Supp. 3d at 640-43 *citing Vega v. Tekoh*, 597 U.S. 134, 150 (2022) and *Holloway v. City of Milwaukee*, 43 F.4th 760, 766 (7th Cir. 2022). The district court rejected

4

that argument and held that: (1) an unduly suggestive identification claim was cognizable so long as the plaintiff "can prove improper identification procedures affected his trial." (*Id.* at 641); and (2) the defendants were not entitled to qualified immunity because the right was clearly established based on the disputed techniques at issue (*id.* at 646-49). The defendants then took an interlocutory appeal of the denial of qualified immunity to the Seventh Circuit. *Blackmon*, 132 F. 4th at 524. The Seventh Circuit reversed. *Blackmon*, 132 F. 4th at 524-26.

The Court held that police officers were not liable under the Fourteenth Amendment for the use of unduly suggestive identification techniques or for the use of those identifications against the plaintiff at trial. The Court explained that to create a constitutional due process violation, the identifications must be used at trial. *Id.* But the Court held that the police were not responsible for the admission of identifications at trial. The prosecutors, defense attorneys, and judges are the parties who play a role in what ultimately is admitted at trial. The decision to introduce the results of an allegedly suggestive identification is not a decision made by the police. *Id.* at 525. Thus, the officers could not be held liable for the introduction of such evidence at trial. *Id.* ("[S]ince an investigating officer is not responsible for the decisions of the prosecutor and the judge, without which there could not have been a problem under the Due Process Clause, it is hard to see why damages would be appropriate."). The Court noted too that the officers also cannot be held liable if they testify to the identifications at trial because they are protected by absolute testimonial immunity. *Blackmon,* 132 F. 4th at 525.

The Court held that, just as the Supreme Court held in *Vega*, the remedy for the use of unduly suggestive identification techniques is exclusion of identifications as evidence at the criminal trial. *Id.* ("*Vega* wrapped up by holding that, because *Miranda* creates a trial right, the appropriate remedy is one at trial: exclusion of wrongfully obtained evidence. '[E]xcept in unusual circumstances, the 'exclusion of unwarned statements' should be 'a complete and sufficient remedy.' That is equally true of eyewitness identifications potentially influenced by suggestive procedures.").

5

Finally, the Court held that it was not clearly established even as of 2022 that a police officer could be personally liable for conducting suggestive identification procedures. *Blackmon*, 132 F. 4th at 526. Accordingly, even were none of the above true, police defendants in cases alleging unduly suggestive identification techniques are entitled to qualified immunity. *Id.*

A. **COUNTS VIII AND IX (14th Amendment Coercive and Suggestive Identification and 14th Amendment Concealment of Coercive and Suggestive Identification )**

Following *Blackmon*, Guevara is now entitled to judgment in his favor on Counts VIII and IX. These claims explicitly attempt to impose liability for both the use of unduly suggestive identification techniques as well as the concomitant usage of such evidence at trial. *See* Dckt. No. at Cts. VIII-IX. This Court rejected the arguments that Defendants made for dismissal of the claims related to unduly suggestive identification procedures, which were ultimately later adopted by the Seventh Circuit in *Blackmon. See Rios*, 2024 WL 5119954, at *12.

In Count VIII, Plaintiff alleges the exact claim rejected in *Blackmon*, specifically that Guevara violated his Fourteenth Amendment Rights by using coercive and suggestive identification procedures to get Huertas to identify Plaintiff. *See* Dckt. No. 61 at Ct. VIII; *Blackmon*, 132 F. 4th at 526. Similarly, in Count IX, Plaintiff alleges a derivative of such claim by arguing that Guevara allegedly concealed the suggestive identification tactics used to secure the identification of Huertas. *Id.* at Ct. IX.

Count IX must also be dismissed because, as detailed below in the context of Plaintiff's malicious prosecution claim, the Seventh Circuit has held explicitly that recasting a claim as a "failure to disclose" an underlying act of misconduct is not a viable option to get around the legal deficiency of the underlying conduct itself. *See e.g. Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) ("In any event, it would be entirely incongruous for us to endorse Saunders–El's Brady theory, in light of our holding in *Alexander*. Since, as *Alexander* holds, a police officer does not violate an acquitted defendant's due process rights when he fabricates evidence, it would defy any semblance of logic to conclude that the same officer subsequently violates the defendant's constitutional rights simply by

remaining silent about that fabrication (and thus, without taking any additional affirmative action). In essence, Saunders–El's so-called *Brady* claim is simply a recast of his evidence fabrication claim, and our precedent establishes that such a claim is not cognizable on account of his acquittal."). Thus, Plaintiff's claim in Count IX attempting to recast his deficient unduly suggestive identification claim as a *Brady* claim based on failing to disclose such suggestive tactics is legally unavailing under governing law. *Id.*

The Court in *Blackmon* did comment that some allegations may present "unusual circumstances," such as circumstances involving coercion of witnesses to make a false identification or misrepresentation of the circumstances of an identification to prosecutors, that might open the door to liability. *Blackmon*, 132 F. 4th at 526. However, such claims would be subject to qualified immunity. *See Johnson v. Guevara*, 2025 WL 903813, at *24 (N.D. Ill., Mar. 24, 2025). Indeed, this is precisely the holding made by another district court judge on the heels of *Blackmon* in another case involving Defendant Guevara. *Id.* ("[W]hile Johnson's unduly suggestive identification procedures claim may raise unusual circumstances because he argues that the Individual Defendants coerced the witnesses into identifying Johnson and that the Individual Defendants did not disclose to the prosecutor that they fabricated the identifications, qualified immunity bars Johnson's claims against the Individual Defendants. The Court therefore grants summary judgment in favor of the Individual Defendants on Johnson's unduly suggestive identification claims.").

Indeed, even were Qualified Immunity not applicable to the coercion claims, the claims relating to Huertas would not even meet these standards under *Blackmon*. The examples of these "unusual circumstances" in *Blackmon* were that "the police coached the witnesses to identify the suspect but told the prosecutor that they had not done so" or "the police had only one lookalike in the photo array but then furnished the prosecutor with a bogus array containing six or eight similar

persons." *Blackmon*, 132 F. 4th at 525-26. There is no allegation in this case that anything like this occurred.

As noted in Defendants' original summary judgment briefs, it *undisputed* in this case that Huertas identified Plaintiff because he saw Plaintiff shoot Morales, that no one told him who to pick out of the lineup, and that he was not coerced into identifying Plaintiff. *See* Dckt. No. 191 at ¶ 67, Dckt. No. 194 at ¶ 47. Notwithstanding, Plaintiff has improperly attempted to rely on a renounced hearsay sham affidavit that his attorney procured from Huertas during post-conviction proceedings to contradict his own admissions under Rule 56.1. *See* Dckt. No. 191 at ¶¶ 61, 64, 65, 66; Dckt. No. 196 at ¶¶ 24, 25, 26, 27, 28, 29. Even were this appropriate to rely on to contradict both sworn deposition testimony and contrary admissions made under Rule 56.1 (which it is not, *see* Dckt. No. 204 at 7-12), the affidavit itself does not allege that Huertas was somehow coerced into falsely identifying Plaintiff; indeed, it says the opposite, specifically, that he was allegedly told he would be "locked up" if he did not "identify the shooter." *See* Dckt. No. 196-12 at ¶ 9. Even prior to *Blackmon*, the Seventh Circuit made crystal clear that coercion of a third party to truthfully identify a perpetrator is simply not a viable Due Process claim. *See Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014). Indeed, *Petty* involved the identical claimed coercion as claimed via the Huertas affidavit in this case, specifically, that a witness was threatened with jail time if he did not identify the plaintiff as assailant. *Id.*

Here, the law is now that Guevara is entitled to summary judgment because officers are not liable simply for unduly suggestive identifications being used at trial, and even if they were, there was no clearly established right at the time the identifications were procured in this case.

## B. COUNT II (Fabrication Of Police Reports And False Testimony Regarding Confidential Informants)

Count II is also barred by *Blackmon*. In Count II, Plaintiff alleges that Guevara fabricated the existence of confidential informants who had suggested Plaintiff was the perpetrator of the Morales

murder by fabricating police reports and testifying to same in court. *See* Dckt. No. 61 at Ct. II. As set forth in Defendant Guevara's opening brief on summary judgment, the problem with this claim, among other things, is that the police reports to this effect were never used at trial and Defendant Guevara's *mere testimony* about this subject was subject to absolute immunity. *See* Dckt. No. 177 at 6-7. This Court denied Defendant Guevara's motion for summary judgment on this claim. *Rios*, 2024 WL 5119954, at \*10. However, this Court addressed neither of these arguments and addressed only whether the evidence was material to Plaintiff's conviction. *Id.*

*Blackmon* makes clear that Defendant Guevara is entitled to summary judgment on these claims. As noted above, *Blackmon* held that the introduction of "bad" evidence at trial via testimony cannot be a basis for a Due Process claim because police officers are immune from liability for false testimony. *Blackmon*, 132 F. 4th at 525 ("A prosecutor's use of evidence at trial is a weak ground of liability for police officers. The people who make the decisions—prosecutors and judges—are outside police officers' control and cannot be liable. A prosecutor has absolute immunity for acts during trial. The judge too has absolute immunity. The three defendant officers had absolute immunity for their testimony.") *citing Rehberg v. Paulk*, 566 U.S. 356 (2012); *see also Washington v. City of Chicago*, 98 F.4th 860, 873 (7th Cir. 2024)(prosecutors own investigation into supposedly bad evidence and decision to introduce it nonetheless at trial barred any claim against defendant police officers).In fact, it has long been the law that false testimony can never be the basis for a Due Process claim because of absolute immunity. *See Briscoe v. LaHue*, 460 U.S. 325, 332 (1983); *see also Knox v. Curtis*, 771 Fed. Appx. 656, 657-58 (7th Cir. 2019); *Canen v. Chapman*, 847 F.3d 407, 415 (7th Cir. 2017); *Maxson v. Dwyer*, 2017 WL 1493712, \*5 (N.D. Ill. 2017).

Moreover, as also recognized by *Blackmon*, the mere pretrial production of bad evidence by the police can never violate an accused Due Process Rights unless it is actually introduced at the trial. *Blackmon*, 132 F. 4th at 525 ("Suppose a prosecutor had concluded that the lineup or array was too

suggestive and told the police to put the results in the file. The material in a drawer would not have violated Blackmon's rights—and would not have done so even had the eyewitnesses said something that led the police to other, more reliable, evidence."). Thus, police reports which were never introduced at trial cannot be the basis for any Due Process claim. *Id.* Indeed, there is no dispute about this either. In fact, Plaintiff expressly admitted during summary judgment briefing that no allegedly fabricated police reports were introduced at his trial. *See* Dckt. No. 192 at 20 ("Obviously, any false police report was not actually admitted and shown to the jury.").

Accordingly, under the principles of *Blackmon*, Guevara is entitled to summary judgment on Count II as well.

### C. COUNT XIII (Malicious Prosecution)

Finally, Guevara is entitled to summary judgment on Count XIII as well. Count XIII is a malicious prosecution claim. As set forth in Defendants' Motions for Summary Judgment, this claim is barred because the identification of Plaintiff by Huertas as the murderer of Morales, standing alone, supplies the requisite probable cause defeating any malicious prosecution claim. *See* Dckt. No. 181 at 16-20; Dckt. No. 177 at 30. This Court rejected these arguments and held that the alleged unreliability of this evidence created an issue of fact regarding the existence of probable cause. *Rios*, 2024 WL 5119954, at *12-13.

There are two problems with this in light of *Blackmon*. The first is that, as noted above, the Seventh Circuit held that the exclusive remedy for the police engaging in arguably suggestive identification tactics during an investigation is exclusion at trial *not a claim for monetary damages. Blackmon*, 132 F. 4th at 525. Allowing a plaintiff to proceed on a claim premised entirely upon challenging pretrial identification procedures under the guise of a malicious prosecution claim would completely contradict and negate the entire point of *Blackmon. Id.* It would be entirely incongruous for the Court of Appeals to directly proclaim that police engaging in suggestive identification tactics cannot form

the basis for money damages while, at the same time, permitting a plaintiff to simply call this conduct malicious prosecution instead and receive money damages.

Indeed, even in the underlying district court opinion in *Blackmon* prior to the interlocutory appeal, Judge Jenkins held that questions about the reliability of an identification are simply not a valid basis on which to create an issue of fact on a malicious prosecution claim. *Blackmon*, 700 F.Supp.3d at 633 ("Blackmon argues that 'the procedures that led to [that] identification were flawed, and Defendants knew they were flawed' because McDowell 'identified Mr. Blackmon from a photo array in which he was the only member that matched her description of the shooter.' This is not a sufficient basis to permit a reasonable jury to find that probable cause was absent…*Hart v. Mannina* [, 798 F.3d 578, 588 (7th Cir. 2015)] held that a witness identification established probable cause even though police used a flawed interview technique—not starting a recording until after a witness indicated she recognized someone—noting that 'criticism of police methods does not by itself establish a constitutional violation' and that there was 'simply no evidence of coercion or manipulation.'").

As noted above in Part I.A, in similar contexts, the Seventh Circuit holds that attempting to recast a legally barred claim in this manner by merely calling it something else is simply not allowed. *See, e.g.*, *Saunders-El*, 778 F.3d at 562("In any event, it would be entirely incongruous for us to endorse Saunders–El's Brady theory, in light of our holding in *Alexander*. Since, as *Alexander* holds, a police officer does not violate an acquitted defendant's due process rights when he fabricates evidence, it would defy any semblance of logic to conclude that the same officer subsequently violates the defendant's constitutional rights simply by remaining silent about that fabrication (and thus, without taking any additional affirmative action). In essence, Saunders–El's so-called *Brady* claim is simply a recast of his evidence fabrication claim, and our precedent establishes that such a claim is not cognizable on account of his acquittal.").

11

Indeed, stripped of the inactionable suggestive/coercive identification aspect, this Court already has held (correctly) that Huertas' identification of Plaintiff as the offender, even if "questionable," supplied probable cause negating Plaintiff's malicious prosecution claim. *See Rios*, 2024 WL 5119954, at *13. Given the Seventh Circuit's preclusion against lawsuits premised on the suggestiveness of identification by witnesses in *Blackmon*, there is simply no basis at all to deny summary judgment to Guevara. In fact, it remains *undisputed* that Huertas' identification of Plaintiff was far better than questionable. During summary judgment proceedings, Plaintiff expressly admitted:

- Luis Huertas "saw Plaintiff shoot Luis Morales" and "had a direct view of Plaintiff's face in a well-lit area immediately before the incident and…never lost sight of him at any point in between. Dckt. No. 194 at ¶ 11 (admitting that "Huertas had a direct view of Plaintiff's face in a well-lit area immediately before the incident and saw him shoot Morales shortly thereafter and never lost sight of him at any point in between."); Dckt. No. 191 at ¶ 67.

- Prior to the lineup involving Plaintiff, Luis Huertas was shown photographs of gang members to see if he could make an identification of the shooter. Dckt. No. 194 at ¶¶ 17-18, 43-47. Plaintiff was not among these photos and Huertas did not identify anyone from these photographs. *Id.* The first time Huertas identified Plaintiff was at the lineup. *Id.*

- At the lineup, Huertas entered the lineup room, immediately noticed Plaintiff, and told Defendant Mason that Plaintiff was the shooter of Morales. Dckt. No. 194 at ¶ 45.

- Defendant Mason thereafter told Huertas to take his time and make sure he had the right guy so Huertas took his time, looked at all lineup participants again, and again identified Plaintiff as Morales' shooter. Dckt. No. 194 at ¶ 45.

- No one told Huertas who to pick in the lineup or photos he reviewed. Dckt. No. 194 at ¶ 47.

- Huertas was not coerced by anyone to identify Plaintiff. Dckt. No. 194 at ¶ 47.

- The State called Huertas to testify at Rios' criminal trial. Dckt. No. 194 at ¶ 56.

- Huertas testified that he positively identified Rios in a lineup at Area 5 on July 7, 1989. Dckt. No. 194 at ¶ 56.

- Huertas was extensively cross-examined at trial by Plaintiff's criminal defense attorney relating to the veracity and reliability of his identification of Rios as the shooter of Morales. Dckt. No. 194 at ¶ 56; Dckt. No. 191 at ¶ 63.

- When Huertas testified at trial, he told the truth. Dckt. No. 194 at ¶¶ 46, 56.

12

- Huertas is certain to this day that Plaintiff is the person he saw shoot Morales. Dckt. No. 194 at ¶ 46.

- Huertas' testimony at Plaintiff's criminal trial that he saw Plaintiff shoot Morales was truthful. Dckt. No. 194 at ¶ 46.

There is simply no reasoned legal basis to salvage Plaintiff's malicious prosecution claim under governing law under these circumstances without essentially negating the entire crux of *Blackmon*.

Second, this claim fails on the causation grounds established by *Blackmon*. Again, the Court explained that the decision to introduce identification evidence at a trial is never one made by the police but made by trial prosecutors. *Blackmon*, 132 F.4th at 525. The Court explained thusly:

> Do the police violate the suspect's constitutional right to a fair trial by introducing into evidence the results of a suggestive identification? This question focuses not on the "what" but on the "who". For the police do not introduce evidence at trial. That is done by prosecutors, and rulings on admissibility are made by judges.

> A prosecutor's use of evidence at trial is a weak ground of liability for police officers. The people who make the decisions—prosecutors and judges—are outside police officers' control and cannot be liable. A prosecutor has absolute immunity for acts during trial. The three defendant officers had absolute immunity for their testimony. These immunities create a temptation to drop liability on the head of someone who might be ordered to pay damages: an officer in his capacity as an investigator. But since an investigating officer is not responsible for the decisions of the prosecutor and the judge, without which there could not have been a problem under the Due Process Clause, it is hard to see why damages would be appropriate.

*Id.*. This holding solidified precisely what the Seventh Circuit held last year in *Washington v. City*, specifically, that police officer defendants cannot be held liable for the prosecution's independent decision to introduce even questionable evidence at trial. *See Washington*, 98 F. 4th at 873-74 (prosecutor's decision to introduce evidence despite knowing alleged flaws barred any claim against defendant police officers).

Given this clarification of the law in *Blackmon*, Defendants cannot be held liable for any claim for malicious prosecution premised upon the use of supposedly unreliable evidence because the use of such evidence was within the sole purview of prosecutors and judges. As noted above, it is undisputed that the prosecution made the decision to call Huertas as a witness at trial and Huertas

was extensively cross-examined about the circumstances of his identification. *See supra*. Accordingly, Defendant Guevara is entitled to summary judgment on Count XIII.

## **CONCLUSION**

WHEREFORE Defendants pray this Court:

1. Enter summary judgment in Defendant Guevara's favor on Counts II, VIII, IX, and XIII and any derivative claims for indemnification and *respondeat superior* asserted against Defendant City of Chicago; and

2. Whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:    /s/ <u>Timothy P. Scahill</u>
           *Special Assistant Corporation Counsel*

           Steven B. Borkan
           Timothy P. Scahill
           Special Assistants Corporation Counsel
           Borkan & Scahill, Ltd.
           20 South Clark Street
           Suite 1700
           Chicago, IL 60603
           (312)580-1030
           *Attorneys for Reynaldo Guevara*

By: /s/ <u>Eileen E. Rosen</u>
           Special Assistant Corporation Counsel
           for Defendant City of Chicago

           Eileen E. Rosen
           Catherine M. Barber
           Theresa Berousek Carney
           Austin G. Rahe
           ROCK FUSCO & CONNELLY, LLC
           333 West Wacker Dr., 19th Floor
           Chicago, IL 60606
           (312) 494-1000
           erosen@rfclaw.com