IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAIME RIOS, ) | |
| ) | Case No. 22 CV 3973 |
| Plaintiff, ) | |
| ) | Judge Jeremy Daniel |
| vs. ) | |
| ) | |
| REYNALDO GUEVARA, MICHAEL MASON, ) | |
| ERNEST HALVORSEN, CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION AND SUCCESSIVE SUMMARY JUDGMENT

Defendants REYNALDO GUEVARA, and CITY OF CHICAGO, by and through their counsels, submit the following reply brief in further support of their motion for reconsideration and successive summary judgment.

### INTRODUCTION

The Seventh Circuit's decision in *Blackmon v. Jones*, 132 F.4th 522 (2025), decided after the Court ruled on the parties' summary judgment motions, forecloses Plaintiff's claims against Guevara (and in turn the City as an indemnifying party) with respect to Plaintiff's claims predicated upon Guevara allegedly using suggestive identification procedures with eye-witness Luis Huertas ("Huertas") during the homicide investigation at issue. As such, Count VIII and IX fail as a matter of law. Further, Counts II (Fourteenth Amendment Due Process Claim – Evidence Fabrication), and XIII (Malicious Prosecution), likewise fail. Plaintiff's response fails to address any of the arguments made in Defendants' Motion and, worse, fails to accept that *Blackmon* forecloses his claims predicated upon an alleged unduly suggestive identification techniques. For the reasons set forth in their Motion and herein, the Court should grant the Motion and enter judgment in favor of Guevara and the City as to Counts VIII, IX, II and XIII.

1

# ARGUMENT

### I. Count VIII (Fourteenth Amendment Due Process Claim - Unduly Suggestive Identification Procedures).

Defendants' Motion demonstrated that that Plaintiff's Fourteenth Amendment Due Process Claim predicated upon alleged unduly suggestive identification procedures fails as a matter of law after the Seventh Circuit's decision in *Blackmon*. In *Blackmon*, the Seventh Circuit established that a plaintiff has no § 1983 due process claim against a police officer based on unduly suggestive identification procedures. In doing so, the court undertook a two-part inquiry, determining (1) whether the police violate a suspect's constitutional right to a fair trial by obtaining an identification through suggestive means; and (2) whether "the police violate the suspect's constitutional right to a fair trial by introducing into evidence the results of a suggestive identification." *Blackmon*, 132 F.4th at 524-26. The Seventh Circuit answered "no" to both questions. Id.

In response, Plaintiff essentially ignores *Blackmon* and states that Count VIII is "problematic" but, nonetheless, argues that this claim should be allowed to proceed to trial. *See* Dckt. No. 228 at 10 ("Guevara might be entitled to move for a Rule 50 judgment as a matter of law with respect to Count VIII, either at the close of plaintiff's case or after the close of all evidence."). But Plaintiff misunderstands the Motion's argument. *Blackmon* did not hold that the type of claim Plaintiff brings in Count VIII is "problematic", it foreclosed it as a matter of law. Plaintiff's response fails to distinguish *Blackmon* or demonstrate why *Blackmon* does not apply. *See* Dckt. No. 228 at 10. Plaintiff has, thus, waived any ability to contest its application. *See Practice Mgmt. Supp. Servs., Inc. v. Appeal Solutions, Inc.*, 2010 WL 748170, *5 (N.D. Ill. 2010)("Where…a party does not respond to an argument raised in a summary judgment brief, it will be deemed a waiver."); *Ienco v. Angarone*, 429 F.3d 680, 684 (7th Cir.2005)(same); *Palmer v. Marion Cty.*, 327 F.3d 588, 597–99 (7th Cir.2003)(claims not addressed in a summary judgment opposition brief are abandoned). Even if Plaintiff did not waive opposition

to summary judgment as to Count VIII, Plaintiff does not cite any authority or point to any admissible evidence to present a triable issue as to this claim.

### II. Count II (Fourteenth Amendment Due Process Claim - Fabrication of Information From Informants).

In Count II, Plaintiff contends Guevara fabricated the fact that when he became involved in the homicide investigation after he spoke to sources on the street and two confidential informants reported to him that "Jamie" (Plaintiff) and "Tino" (Cristino Garcia) were involved in the shooting. It is undisputed that Guevara documented in a July 7, 1989, Supplemental Report that "R/Is [reporting investigators] developed information from two separate reliable informants that the subject that killed 'New York' [homicide victim Luis Morales] was 'Jamie' Jamie Rios of 1440 N. Leavitt." *See* Dckt. No. 182-8 (Ex. 20)(7/7/89 Supp. Report); Dckt. No. 194 at ¶¶19-20, 69. It is further undisputed that the July 7, 1989 Supplemental Report was not admitted into evidence at trial or even referenced by any trial witness, the State, or even Plaintiff in his defense. *See* Dckt. No. 182-6 at Ex. 10; Dckt. No. 191 at ¶ 60; *see also* Dckt. No. 192 at 20 (admitting fabrication claims are not based on introduction of any false piece of documentary evidence; "Obviously, any false police report was not actually admitted and shown to the jury."). Instead, at Plaintiff's criminal trial, the State called Guevara and asked him how on July 3, 1989, he became involved in the Morales investigation and, specifically, if he came to learn the name of the shooter. *See* Dckt. No. 196 at ¶¶ 11-14. Guevara testified that he learned the shooter's name and said "I was given the name of Jamie and Tino as being involved in the shooting of Luis Morales. Jamie being the shooter." *Id.* The Court sustained a hearsay objection to this testimony. *Id.* The State then asked Guevara how he gained information on July 3, 1989, and Guevara testified he got the names "Jamie" and "Tino" through reliable informants and that he knew Jamie, had prior dealings with him, knew that Jamie was a Latin King, and he went looking for Jamie for three days before finding him on July 6, 1989. *Id.*

3

In the Motion, Defendants argued that Plaintiff's claim in Count II failed as a matter of law under *Blackmon* insofar as *Blackmon* re-affirmed that Section 1983 liability for an evidence fabrication claim fails as a matter of law if the evidence is not *actually introduced at a trial*. Further, *Blackmon* reiterated that allegedly false testimony regarding this same alleged fabricated information does not give rise to liability because of the application of absolute testimonial immunity. *See* Dckt. No. 227 at 8-10.

Guevara made this argument in his original summary judgment brief. *See* Dckt. No. 177 at 6-7 *citing Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020); *Moran v. Calumet City*, 54 F.4th 483, 499 (7th Cir. 2022) ("Because the evidence we assume was fabricated—the police report and detectives' pretrial testimony—was not introduced at the trial, it could not have influenced the jury's verdict."); *Whitlock v. Brueggemann*, 682 F.3d 567, 682 (7th Cir. 2012) ("[I]f an officer fabricates evidence and puts the fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process[.]"); *Briscoe v. LaHue*, 460 U.S. 325, 332 (1983); *Knox v. Curtis*, 771 F. App'x 656, 657-58 (7th Cir. 2019). However, this Court's opinion did not address these arguments in denying summary judgment to Guevara on Count II with respect to the hearsay information from confidential informants. *Rios v. Guevara*, 2024 WL 5119954, *10 (N.D. Ill. 2024). Rather, the only argument addressed by this Court was whether the confidential informant evidence was "material" under the Fourteenth Amendment. *Id.*

Plaintiff response argues that: (1) "*Blackmon's* holding concerns qualified immunity, not testimonial immunity"; and (2) "Guevara does not suggest that qualified immunity protects his fabrication of information from mythical confidential informants, nor could he do so." *See* Dckt. No. 228 at 9-10. Plaintiff argues that *Blackmon* did not establish "some rule that police officers are immune from money damages for all section 1983 claims involving the use of evidence at trial – if it was, section 1983 would be a dead letter." *Id.* Plaintiff cites no legal authority for these arguments.

4

Moreover, Plaintiff is mistaken as to the law. Testimonial immunity squarely applies to this claim and *Blackmon* reinforced that concept.

First, *Blackmon* addressed absolute immunity with respect to reliance on testimony as a basis for a due process claim like the one Plaintiff brings against Guevara and makes clear that testimonial immunity applies to a police officer, like Guevara, for any claim based on their supposedly false testimony. *Blackmon*, 132 F.4th at 525 ("Suppose a prosecutor had concluded that the lineup or array was too suggestive and told the police to put the results in the file. The material in a drawer would not have violated Blackmon's rights—and would not have done so even had the eyewitnesses said something that led the police to other, more reliable, evidence…A prosecutor's use of evidence at trial is a weak ground of liability for police officers. . . . The three defendant officers had absolute immunity for their testimony."). Second, fabrication of evidence that is not actually introduced at trial can never be the basis for a Fourteenth Amendment Due Process fabrication of evidence claim. *Blackmon*, 132 F.4th at 525; *Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020); *Moran*, 54 F.4th at 499; *Whitlock*, 682 F.3d at 682; *Briscoe*, 460 U.S. at 332. Even if the Court assumes that Guevara fabricated the fact that informants told him "Jamie" was the shooter and "Tino" was involved (*see* Dckt. No. 191 at ¶¶ 44; *see also id.*, ¶¶ 33, 38), the report documenting that information was not introduced at trial or even referenced. *See* Dckt. No. 182-6 at Ex. 10; Dckt. No. 191 at ¶ 60; *see also* Dckt. No. 192 at 20 (admitting fabrication claims are not based on introduction of any false piece of documentary evidence; "Obviously, any false police report was not actually admitted and shown to the jury.").

Again, Plaintiff's claim in Count II with respect to the informants centers exclusively on Guevara's trial testimony and Plaintiff's claim that Guevara supposedly lied in his response to the prosecutor's question(s) about being informed from reliable sources that Plaintiff was the shooter and Tino was involved. *See* Dckt. No. 228 at 4-6 (describing Guevara supposedly lying in testimony about the existence of confidential informants); *see also* Dckt. No. 192 at 20 (admitting fabrication claims are

5

not based on introduction of any false piece of documentary evidence; "Obviously, any false police report was not actually admitted and shown to the jury."). As the Motion pointed out and argued, this Court never addressed the testimonial immunity issue in Count II in Defendants' first summary judgment brief. *Rios*, 2024 WL 5119954. As such, the Motion respectfully requests this Court to apply existing precedent in *Briscoe*, *Blackmon*, *Patrick*, and *Moran*, to hold that Plaintiff cannot attach liability to Guevara based on allegations that Guevara lied in his trial testimony. Absolute immunity forecloses Plaintiff's claim in Count II.

### III. Count IX (Suppression Of Suggestive Identification Procedures).

In Count IX, Plaintiff contends Guevara supposedly "concealed" the fact that he used suggestive identification tactics to secure Huertas's identification of Plaintiff. *See* Dckt. No. 61 at Ct. IX. This is belied by the record insofar as Huertas has testified (and Plaintiff has admitted) that Plaintiff was the shooter and no one told Huertas to pick out Plaintiff in the lineup that he viewed. *See* Dckt. No. 194 at ¶¶ 45-47, 56 But Plaintiff also claims that Guevara violated *Brady* by failing to affirmatively document that Huertas had initially refused to identify Plaintiff as his assailant. *See* Dckt. No. 228 at 11-13. Plaintiff avers that "[t]his court did not specifically rule on this aspect of Count IX" but that "[i]t should do so." *Id.* Defendants agree. However, again, Count IX fails as a matter of law as set forth in Defendants' original summary judgment and reiterated in Defendants' instant Motion.

In his Response, Plaintiff argues that this alleged prior non-identification constitutes "impeachment evidence" and that this "should have been disclosed so that defense counsel could confront Huertas with the statement and undermine his credibility at trial." *See* Dckt. No. 228 at 11-13. With respect to the alleged concealment of suggestive identification tactics, Plaintiff offers no supportive authority but argues that concealment of suggestive identification tactics is different than use of them under *Blackmon*. *Id.*

6

There is no obligation under *Brady* for police officers to affirmatively create exculpatory or impeachment evidence by documenting statements or other investigatory tasks. *Saunders-El*, 778 F.3d at 562 ("*Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution."); *United States v. Mota*, 685 F.3d 644, 649 (7th Cir. 2012)(failure to prepare a written report does not create a *Brady* violation); *Johnson v. Guevara*, 2025 WL 903813, *27 (N.D. Ill. 2025) (same); *Smith v. City of Chicago*, 785 F.Supp.3d 356, 413 (N.D. Ill. 2025)("To the extent plaintiff is arguing that defendants had a duty to create evidence consistent with plaintiff's theory of fabrication, such a claim must fail."); *Del Prete v. Village of Romeoville, Illinois*, 2025 WL 446260, *10 (N.D. Ill. 2025)("To the extent Del Prete argues that Caliendo's failure to memorialize Harkey's concerns was a clearly established constitutional violation, she falls short…Seventh Circuit law 'makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.'"); *Brown v. City of Chicago*, 633 F.Supp.3d 1122, 1163–64 (N.D. Ill. 2022)(summary judgment on *Brady* claim; "Seventh Circuit law…'makes clear that *Brady* does not require the creation of exculpatory evidence…'"). In other words, a *Brady* claim cannot be premised on an officer simply being aware of information that is exculpatory or impeaching and not taking steps to tell prosecutors about this piece of information. *Id.* Here, this is precisely what Plaintiff seeks to do.

Nor do police officers face liability for supposedly failing to disclose their own misconduct. *See Coleman v. City of Chicago*, 2025 WL 2410325, *21 (N.D. Ill. 2025)("[I]f Coleman argues that the detectives and Garfinkel suppressed their own account of the circumstances of Fulton's confession, then the argument is squarely foreclosed by *Saunders-El*, which rejected an argument that police officers' failure to admit their misdeeds amounts to a withholding of exculpatory evidence in violation of *Brady*."); *Johnson*, 2025 WL 903813, at *27 ("Essentially, Johnson's argument is that the Individual Defendants suppressed evidence by not disclosing their own misconduct…'*Brady* does not require the

7

creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.'…Johnson has no colorable *Brady* claim to the extent that he asserts that the Individual Defendants should have affirmatively disclosed their fabrications.") (citations omitted); *Ezell v. City of Chicago*, 2024 WL 278829, *23 (N.D. Ill. 2024)("Plaintiffs claim that Defendants had an obligation to disclose the precise means they used to interrogate them... Given that the law does not require the police 'to accurately disclose the circumstances of their investigations,' and Plaintiffs do not allege that Defendants failed to hand over documents or other physical evidence, it is unclear what additional evidence Plaintiffs could have sought under *Brady*."); *Harris v. City of Chicago*, 2015 WL 1331101, *4 (N.D. Ill. 2015)("Plaintiff argues that the *Brady* violation stems from Defendants' failure to disclose the pattern and practice of coerced and fabricated confessions...."*Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.").

Second, there is no dispute that Plaintiff was fully aware of Huertas' involvement as an eyewitness. Indeed, he was the central witness in the prosecution's case. Evidence is not "suppressed" if it could have been obtained through reasonable diligence. *See Camm v. Faith*, 937 F.3d 1096, 1108-09 (7th Cir. 2019); *Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007); *United States v. Kimoto*, 588 F.3d 464, 492 (7th Cir. 2009); *Ienco*, 429 F.3d at 683; *United States v. Gonzalez*, 319 F.3d 291, 297–98 (7th Cir. 2003). A defendant in a criminal case that goes to trial has the "responsibility to probe the witnesses and investigate their versions of the relevant events" and failure to discover the information held by such persons by failing to do this does not amount to a *Brady* violation. *Carvajal*, 542 F.3d at 567; *Patrick v. City of Chicago*, 103 F.Supp.3d 907, 915–16 (N.D. Ill. 2015) ("A criminal defendant may not be expected to ask an alibi witness for evidence unrelated to the alibi issue, but reasonable diligence certainly entails questioning available fact witnesses regarding what they saw."); *Holland v. City of*

8

*Chicago*, 643 F.3d 248, 256 (7th Cir. 2011) ("A defendant in a criminal case that actually goes to trial has the responsibility to probe the witnesses and investigate their versions of the relevant events.").

Minimal reasonable diligence requires that a criminal defense attorney interview an eyewitness to determine the merits of his identification as documented by police and failure to do so to learn possible exculpatory or impeaching evidence cannot form the basis for a *Brady* violation. *United States v. Edwards*, 34 F.4th 570, 587 (7th Cir. 2022) ("When Edwards's counsel learned about the January 19, 2020, statement, reasonable diligence required counsel to follow up with Burrell to determine what she did or did not say. If Burrell recanted her recantation on January 19, she could easily have told Edwards."); *Holland*, 643 F.3d at 256 ("A defendant in a criminal case that actually goes to trial has the responsibility to probe the witnesses and investigate their versions of the relevant events."); *Serrano v. Guevara*, 2020 WL 3000284, *18 (N.D. Ill. 2020) (granting summary judgment on failure to disclose coercion of witness and fabrication of his statements because witness was disclosed and known to defense); *Patrick*, 103 F. Supp. 3d at 915-16 (failure to interview disclosed witness to discover possible exculpatory evidence barred *Brady* claim); *Boyd v. City of Chi.*, 225 F. Supp. 3d 708, 722-23 (N.D. Ill. 2016) ("Because plaintiff's trial attorney could have interviewed Bonanno regarding what she saw at the crime scene and what she said during the lineup, her statements could have been obtained through the exercise of due diligence."); *Jackson v. City of Peoria*, 2017 WL 1224526, *7 (C.D. Ill. 2017) (same).

Third, any alleged initial failure to identify Plaintiff in a photo array is immaterial for *Brady* purposes because it is undisputed that Huertas did, in fact, identify Plaintiff in open court as the offender. Dckt. No. 194 at ¶¶ 46, 56. Indeed, this **exact** scenario has been rejected by the Seventh Circuit numerous times. *See Moran*, 54 F.4th at 489-91, 495-96 (eyewitnesses' denial of having made an on-scene identification of the plaintiff (as claimed by a defendant officer) was immaterial because witness later identified plaintiff in court); *Cairel v. Alderden*, 821 F.3d at 823, 834–35 (7th Cir. 2016) ("Plaintiffs have offered evidence that Micetich expressed some hesitation during his initial

9

identifications and that the identifications did not match his earlier descriptions very well. However, it is undisputed that Micetich did in fact identify Cairel and Johnson as the men who robbed him the night before and that Micetich remained confident in his identification after that."); *Hart v. Mannina*, 798 F.3d 578, 593 (7th Cir. 2015) (eyewitness testimony rendered uncertainty of other witness immaterial); *Holland*, 643 F.3d at 256 (affirming judgment on claims of suppression of evidence regarding victim's hesitation to identify plaintiff because victim identified him at trial).

Fourth, Plaintiff's attempt to reconcile *Blackmon* with the continuing validity of a *Brady* suppression claim based on so-called suppression of the very conduct that *Blackmon* said was not actionable must be rejected. *Blackmon* foreclosed Section 1983 claims predicated upon use of identification procedures and, in following *Vega*, held that the remedy for police using suggestive identification tactics is exclusion at the criminal trial. *Blackmon,* 132 F.4th at 525 ("[E]xcept in unusual circumstances, the 'exclusion of unwarned statements' should be 'a complete and sufficient remedy.'" That is equally true of eyewitness identifications potentially influenced by suggestive procedures."). The Seventh Circuit made clear that the exclusion at the criminal trial is the **"complete and sufficient"** remedy for this alleged misconduct. *Id.* The Seventh Circuit is also clear that attempting to recast an invalid due process right to fair trial claim (which is what *Blackmon* involved) as a failure to disclose under *Brady* is a nonstarter. *See e.g. Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015). Specifically, in *Saunders-El*, the Seventh Circuit held in strikingly similar circumstances:

> [I]t would be entirely incongruous for us to endorse Saunders–El's *Brady* theory, in light of our holding in *Alexander*. Since, as *Alexander* holds, a police officer does not violate an acquitted defendant's due process rights when he fabricates evidence, it would defy any semblance of logic to conclude that the same officer subsequently violates the defendant's constitutional rights simply by remaining silent about that fabrication (and thus, without taking any additional affirmative action). In essence, Saunders–El's so-called *Brady* claim is simply a recast of his evidence fabrication claim, and our precedent establishes that such a claim is not cognizable on account of his acquittal. *Id.*

This Court could literally substitute in *Blackmon* for *Alexander* in *Saunders-El* and the legal issues would be identical. There is no question that *Blackmon* applies to Count IX just as it applies to Count VIII.

10

### IV. Count XIII: Malicious Prosecution

Defendants are entitled to summary judgment on Count XIII (Malicious Prosecution) as well. Plaintiff's response argues that qualified immunity does not apply. *See* Dckt. No. 228 at 14-15. But Guevara has not made a qualified immunity argument. *See* Dckt. No. 227. What Guevara *has* argued is that even inconsistent, questionable or coerced identifications defeat a Malicious Prosecution claim, that a witness affirming an identification at trial (even if inconsistent with a prior identification) bars a Malicious Prosecution claim, and that the principles of *Blackmon* with regard to the prosecution's decision to proceed with eyewitness testimony precipitated by an allegedly suggestive pretrial identification bars such a claim. *See* Dckt. No. 227 at 10-14.

Plaintiff argues only that Guevara lacked probable cause by pointing to Guevara's Fifth Amendment invocation in response to Plaintiff's questions about there being no probable cause for Plaintiff's arrest and prosecution and asserting that Guevara is "stuck with his deposition admissions." *See* Dckt. No. 228 at 14-15. This argument misses the point. Guevara did not admit anything. Fifth Amendment invocations, standing alone, are entitled to **no** evidentiary value unless accompanied by other independent evidence (*see LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995); *Wrice v. Burge*, 2020 WL 419419, *2 (N.D. Ill. 2020); *Kluppelberg v. Burge*, 2017 WL 3142757, *4 (N.D. Ill. 2017). Again, it is undisputed Huertas identified Plaintiff as the shooter in a lineup before trial, under oath at trial and testified in his deposition in this case, again, that he was certain that Plaintiff was the shooter. *See* Dckt. No. 194 at ¶¶ 45-47, 56.

Plaintiff's argument suffers from a more fundamental problem. Whether there is probable cause is an objective standard and a legal conclusion. *See Pryor v. Corrigan*, 124 F.4th 475, 487 (7th Cir. 2024). Even had Guevara explicitly admitted that probable cause was lacking (rather than simply exercised his Constitutional Rights to silence), his subjective opinion would not create an issue of fact. *Id.* This exact scenario was addressed by the Seventh Circuit in *Pryor*. In *Pryor*, a plaintiff claimed the

district court erred in granting summary judgment to a defendant on a malicious prosecution claim because the defendant admitted in discovery responses that he lacked probable cause to arrest the plaintiff for a specific offense. *Id.* The Seventh Circuit rejected this argument and affirmed summary judgment:

> Pryor misunderstands the impact of Corrigan's discovery response. Probable cause is an objective standard. Corrigan's subjective understanding of probable cause is irrelevant to the objective existence of probable cause. As the Supreme Court has explained, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Instead, the court must view all facts from the standpoint of an "objectively reasonable police officer" and determine, based on those facts, whether probable cause existed. So, even if Corrigan's response were an admission, probable cause could have supported Corrigan's decision to arrest Pryor for obstruction of justice. *Id.* (citations omitted).

Plaintiff's argument that "Guevara admitted he lacked probable cause" lacks merit.

Further, Plaintiff argues that "[t]here is at least a question of fact as to whether Guevara had probable cause to initiate the prosecution of Rios when he knew that all of the evidence against Rios was false, and that he had manufactured it." Dckt. No. 228 at 15. Even though Plaintiff claims that Guevara engaged in coercive behavior, or contends there is an uncertain or inconsistent identification by Huertas that Guevara was aware of, subsequent sworn testimony from a witness (here Huertas) establishes probable cause as a matter of law. *See Moran*, 54 F.4th 483, at 495-96 (witnesses' denial of having made an on-scene identification of the plaintiff (as claimed by a defendant officer) immaterial because witness later identified plaintiff in court); *Cairel*, 821 F.3d at 834–35 ("Plaintiffs have offered evidence that Micetich expressed some hesitation during his initial identifications and that the identifications did not match his earlier descriptions very well. However, it is undisputed that Micetich did in fact identify Cairel and Johnson as the men who robbed him the night before and that Micetich remained confident in his identification after that."); *Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014)(coerced witness statement could not form basis for fabrication claim and noting that a defendant "fabricating evidence that she knows to be false is different than getting 'a reluctant witness

12

to say what may be true.'"); *Holland*, 643 F.3d at 256 (affirming judgment on *Brady* claims based on suppression of victim's hesitation to identify plaintiff because victim identified him at trial); *Johnson*, 2025 WL 903813, at *19 (summary judgment to Guevara and others based on alleged fabrication of witness identification despite plaintiff alleging identifications were unreliable); *Olson v. Cross*, 714 F.Supp.3d 1034, 1052 (N.D. Ill. 2024)(summary judgment even though defendants "questioned whether [plaintiff] was being wholly truthful in his confession, and harbored some doubt that his confession" was accurate); *Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827, 860 (N.D. Ill. 2018) (rejecting claims that coerced confession established defendant knew confession was false); *Moorer v. Valkner*, 2021 WL 5998533 (N.D. Ill. 2021) (summary judgment granted; "It's true that some of the witnesses' identifications don't line up with how they otherwise described the shooting and the suspect…But these inconsistencies and challenges to perception didn't make the witnesses so unreliable that the officers could not believe them. It's undisputed that the eyewitnesses were at the scene of the crime, saw a man committing crimes, and personally identified Moorer as that man.").

Here, it is undisputed that Huertas identified Plaintiff in a lineup, then again in open court at trial and stood by his identification at his deposition in this case. *See* Dckt. No. 194 at ¶¶ 45-47, 56. It is further undisputed that:

- Luis Huertas "saw Plaintiff shoot Luis Morales" and "had a direct view of Plaintiff's face in a well-lit area immediately before the incident and…never lost sight of him at any point in between. Dckt. No. 194 at ¶ 11 (admitting that "Huertas had a direct view of Plaintiff's face in a well-lit area immediately before the incident and saw him shoot Morales shortly thereafter and never lost sight of him at any point in between."); Dckt. No. 191 at ¶ 67.

- Prior to the lineup involving Plaintiff, Luis Huertas was shown photographs of gang members to see if he could make an identification of the shooter. Dckt. No. 194 at ¶¶ 17-18, 43-47. Plaintiff was not among these photos and Huertas did not identify anyone from these photographs. *Id.* The first time Huertas identified Plaintiff was at the lineup. *Id.*

- At the lineup, Huertas entered the lineup room, immediately noticed Plaintiff, and told Defendant Mason that Plaintiff was the shooter of Morales. Dckt. No. 194 at ¶ 45.

- Defendant Mason thereafter told Huertas to take his time and make sure he had the right guy so Huertas took his time, looked at all lineup participants again, and again identified Plaintiff as Morales' shooter. Dckt. No. 194 at ¶ 45.

- No one told Huertas who to pick in the lineup or photos he reviewed. Dckt. No. 194 at ¶ 47.

- Huertas was not coerced by anyone to identify Plaintiff. Dckt. No. 194 at ¶ 47.

- The State called Huertas to testify at Rios' criminal trial. Dckt. No. 194 at ¶ 56.

- Huertas testified that he positively identified Rios in a lineup at Area 5 on July 7, 1989. Dckt. No. 194 at ¶ 56.

- Huertas was extensively cross-examined at trial by Plaintiff's criminal defense attorney relating to the veracity and reliability of his identification of Rios as the shooter of Morales. Dckt. No. 194 at ¶ 56; Dckt. No. 191 at ¶ 63.

- When Huertas testified at trial, he told the truth. Dckt. No. 194 at ¶¶ 46, 56.

- Huertas is certain to this day that Plaintiff is the person he saw shoot Morales. Dckt. No. 194 at ¶ 46.

- Huertas' testimony at Plaintiff's criminal trial that he saw Plaintiff shoot Morales was truthful. Dckt. No. 194 at ¶ 46.

Plaintiff's response ignores these facts. But admissions in summary judgment submissions are binding and, here, foreclose Plaintiff's malicious prosecution claim against Guevara in Count XIII. *See Hawkins v. City of Harvey*, 2025 WL 2483180, *6 (N.D. Ill. 2025)(statements that facts were undisputed in summary judgment filings were "binding judicial admissions" and could not be contradicted in subsequent motion practice); *Banks v. Chamberlain*, 2021 WL 2529568, at *6 (N.D. Ill. 2021) ("Rule 56.1 statements of fact, responses, and even the failure to respond are judicial admissions that are binding on a party."); *Horton v. City of Chi.*, 2018 WL 6505398, at *6 (N.D. Ill. 2018) (L.R. 56.1 fact is a "binding" "judicial admission" and "has the effect of withdrawing from contention the fact"). These facts establish probable cause to charge Plaintiff and, as such, Defendants are entitled to summary judgment on Count XIII.

WHEREFORE Defendants pray this Court enter summary judgment in Defendant Guevara's favor on Counts II, VIII, IX, and XIII and any derivative claims for indemnification and *respondeat superior* asserted against Defendant City of Chicago and whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By: /s/ Timothy P. Scahill
    *Special Assistant Corporation Counsel*

Steven B. Borkan
Timothy P. Scahill
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
*Attorneys for Reynaldo Guevara*

By: /s/ Eileen E. Rosen
Special Assistant Corporation Counsel
for Defendant City of Chicago

Eileen E. Rosen
Catherine M. Barber
Theresa Berousek Carney
Austin G. Rahe
ROCK FUSCO & CONNELLY, LLC
333 West Wacker Dr., 19th Floor
Chicago, IL 60606
(312) 494-1000
erosen@rfclaw.com