UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAIME RIOS,<br>   Plaintiff<br><br>  v.<br><br>REYNALDO GUEVARA, *et al.*,<br>   Defendants | No. 22 CV 3973<br><br>Judge Jeremy C. Daniel |

### ORDER

The defendants' motions for reconsideration and successive summary judgment [227] are granted in part and denied in part. As to Count II, the motion for reconsideration is granted, and the motion for successive summary judgment is denied. The motions are granted as to Count VIII and IX. The motions are denied as to Count XIII.

### STATEMENT

**Background**

This matter is before the Court on the defendants, Reynaldo Guevara and the City of Chicago's ("City"), motions for reconsideration and successive summary judgment. (R. 227.)[1] The Court assumes familiarity with the facts of the case and will recount only those necessary to resolve the present motion. On December 16, 2024, the Court entered an order denying Plaintiff Jaime Rios' motion for summary judgment, and granting in part and denying in part the defendants' motion for summary judgment. (R. 215.) As relevant here, the Court granted Guevara's motion as to Counts III–VII and denied the motion as to Counts I, II, and VIII–XIII. (*Id.*) The defendants move for reconsideration as to Counts II, VIII, IX, which are evidence fabrication and suppression claims; and Count XIII, a malicious prosecution claim. (R. 227 at 1.) The defendants argue they are entitled to summary judgment on these counts because they are foreclosed by *Blackmon v. Jones*, 132 F.4th 522 (7th Cir. 2025), a case the Seventh Circuit decided after the Court issued its summary judgment order. (R. 227 at 1.)

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

**Legal Standard**

To succeed on a motion for reconsideration, "the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Reconsideration is also appropriate "when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

Additionally, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The applicable substantive law determines which facts are material." *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

**Analysis**

The Court begins with a discussion of the Seventh Circuit's decision in *Blackmon*. The Court then addresses Counts II, VIII, IX, and XIII in turn, discussing the Court's prior rulings and *Blackmon*'s effect, if any.

*Blackmon v. Jones*

*Blackmon* involved a suit under 42 U.S.C. § 1983 against three police officers, alleging they used an "unconstitutionally suggestive" photo array during a 2002 murder investigation that resulted in charges against Blackmon. *Blackmon*, 132 F.4th at 523–24. The Seventh Circuit addressed two questions: First, "Do the Police violate a suspect's constitutional rights by showing witnesses a suggestive photo array or conducting a suggestive lineup?" *Id.* at 524. Second, "Do *the police* violate the suspect's constitutional right to a fair trial by introducing into evidence the results of a suggestive identification?" *Id.* at 525. The Seventh Circuit answered "no" to both questions. *Id.* at 524–25.

For the first question, the Seventh Circuit reasoned that the right at issue, "the Due Process right to a fair trial," guarantees "a right to a trial untainted by evidence obtained through unduly suggestive methods." *Id.* at 525. It is the use of evidence at trial, not the creation of such evidence, that could be a constitutional violation. *See id.* The Seventh Circuit provided the example, "Suppose a prosecutor had concluded

2

that the lineup or array was too suggestive and told the police to put the results in the file. The material in a drawer would not have violated Blackmon's rights . . . ." *Id.* And "[b]ecause conducting identification procedures did not violate Blackmon's rights, a derivative use [other than introducing the evidence at trial] also would not have violated Blackmon's rights." *Id.*

For the second question, the Seventh Circuit reasoned that "[a] prosecutor's use of evidence at trial is a weak ground of liability for police officers" because prosecutors and judges make the decision, not the officers. *Id.* Additionally, the right is "a trial right, [and] the appropriate remedy is one *at* trial: exclusion of wrongfully obtained evidence." *Id.* (citing *Vega v. Tekoh*, 597 U.S. 134, 152 (2022)). Officer liability may attach, however, in "unusual circumstances," such as where "police coached the witnesses to identify the suspect but told the prosecutor that they had not done so" or "had only one lookalike in the photo array but then furnished the prosecutor with a bogus array containing six or eight similar persons." *Id.* at 525–26. Officer liability might attach in these scenarios because, the Seventh Circuit reasoned, "[b]y defrauding the prosecutor or otherwise manufacturing evidence, the police could undermine the value of the safeguards offered against the admission of unduly suggestive evidence." *Id.* at 526. The underlying district court case in *Blackmon* did involve such claims, but the Seventh Circuit's review was limited to the question of whether "an unduly suggestive photo array or lineup *by itself* entitles an accused to damages." *Id.*

Finally, the Seventh Circuit addressed qualified immunity as a possible alternative way to resolve the case. *Id.* It concluded that the defendant officers were entitled to qualified immunity because "[e]ven as late as 2022, this circuit expressed uncertainty about how the law treats" "suggestive identification procedures." *Id.* "Before 2002 neither this circuit, nor any other, had held that an officer could be liable for employing suggestive identification procedures." *Id.* Therefore, because "it did not become clearly established in the years between 2002 and 2022 that officers could be personally liable for suggestive identification procedures," the officers were entitled to qualified immunity. *Id.*

**Count II**

According to the Court's prior summary judgment order, "Count II alleges that Guevara fabricated evidence by testifying falsely at Rios' trial that confidential sources implicated Rios" in the murder. (R. 215 at 24.) The Court concluded that there was "a genuine dispute of material fact as to fabrication" and denied summary judgment on that basis. (*Id.* at 25.) The defendants now argue that *Blackmon* makes clear that such acts "cannot be a basis for a Due Process claim because police officers are immune from liability for false testimony." (R. 227 at 9.) They also point out that the Court did not address their argument invoking absolute immunity in its summary judgment order. (*Id.*)

3

Admittedly, the Court's original analysis of Count II did focus in part on Guevara's trial testimony, for which he enjoys absolute immunity. (R. 215 at 24–26); *see also Brisco v. LaHue*, 460 U.S. 325, 326 (1983). However, Count II as alleged in the complaint focuses on Guevara's pre-trial conduct, not his trial testimony. It alleges that "Guevara authored false reports detailing the informants' claims and conveyed that same false information to prosecutors during the course of the investigation . . . and the subsequent trial." (R. 74 ¶ 115.) Further, the Court found that there was a genuine issue of material fact regarding "whether [Guevara] lied in police reports[ and] to prosecutors." (R. 215 at 25.) These facts fall under the "unusual circumstances" exception discussed in *Blackmon* because they involve lies to prosecutors, which undermine procedural safeguards. *See Blackmon*, 132 F.4th at 525–26.

Accordingly, as to Count II, the Court grants the defendants' motion for reconsideration, denies their successive motion for summary judgment, and clarifies that Count II may only proceed as it relates to Guevara's pre-trial conduct, not his testimony at trial.

**Counts VIII & IX**

"Counts VIII and IX pertain to Rios' claim that the defendants impermissibly used suggestive identification techniques in connection with [the] lineup identification of Rios." (R. 215 at 28.) The Court denied summary judgment "[b]ecause there is evidence from which a jury could conclude that Guevara orchestrated a show-up identification procedure that caused the criminal trial to be unfair [(Count VIII)] or withheld material exculpatory evidence from the defense and prosecutor [Count IX])." (*Id.* at 29 (citation modified).) The Court also noted that the Seventh Circuit was considering *Blackmon* at the time, but concluded that "the Court is bound by precedent allowing plaintiffs to recover for flawed identification techniques which undermine their right to a fair trial." (*Id.* at 28.)

For Count VIII, the defendants argue it is "the exact claim rejected in *Blackmon*, specifically that Guevara violated his Fourteenth Amendment Rights by using coercive and suggestive identification procedures." (R. 227 at 6.) The plaintiff offers little pushback; in fact, he admits "it is problematic whether the jury could be instructed on this claim consistent with *Blackmon*." (R. 228 at 10.) Reviewing the complaint, it is clear that Count VIII is exactly the type of claim barred under *Blackmon*. It alleges "Guevara deprived [Rios] of due process by showing [a witness] a series of photographs and then by threatening to lock [him] up if he did not identify [Rios] as the shooter." (R. 74 ¶ 170.) This is a claim based on the mere creation of evidence rather than its use at trial, which is barred under *Blackmon*. Further, the officers are entitled to qualified immunity from this claim. The facts surrounding this case took place in 1989, (*see generally* R. 74), and the law in this circuit on suggestive

4

identification claims before *Blackmon* was uncertain as late as 2022. *Blackmon*, 132 F.4th at 526. Even if the allegations are true, the defendants would be entitled to qualified immunity. The defendants are therefore entitled to summary judgment as to Count VIII.

As for Count IX, the defendants assert it is a mere "recasting" of Count VIII as a claim for "'failure to disclose' an underlying act of misconduct[, which] is not a viable option to get around the legal deficiency of the underlying conduct." (R. 227 at 6.) They rely in part on *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015). (*See id.*) There, after being acquitted at trial on burglary charges, Saunders-El sued several officers, alleging they fabricated evidence in violation of his due process rights. *Saunders-El*, 778 F.3d at 558. Like Rios' claims here, "Saunders-El's due process claim [was] dual-pronged: he allege[d] both that the fabrication of evidence violated his constitutional rights and, separately, that the police officers' failure to admit their misdeeds to the prosecution amounts to a withholding of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 . . . (1963)." *Id.* at 561. The Seventh Circuit concluded that the evidence fabrication claim was not viable because Saunders-El was acquitted at trial. *Id.* at 560–61. For the *Brady* claim, it concluded that claim failed because it "charge[d] the officers with . . . keeping quiet about their wrongdoing, not for failing to disclose any existing piece of *evidence* to the prosecution," and "*Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution." *Id.* at 562. The court also noted,

> [I]t would be entirely incongruous for us to endorse Saunders-El's *Brady* theory, in light of our holding in *Alexander*[ *v. McKinney*, 692 F.3d 553 (7th Cir. 2012).] Since, as *Alexander* holds, a police officer does not violate an acquitted defendant's due process rights when he fabricates evidence, it would defy any semblance of logic to conclude that the same officer subsequently violates the defendant's constitutional rights simply by remaining silent about that fabrication (and thus, without taking any additional affirmative action). In essence, Saunders-El's so-called *Brady* claim is simply a recast of his evidence fabrication claim, and our precedent establishes that such a claim is not cognizable on account of his acquittal.

*Id.* at 562.

There is an informative distinction between *Saunders-El* and the "unusual circumstances" discussed in *Blackmon*. In *Saunders-El*, the Seventh Circuit concluded that the *Brady* claim "recast" the underlying fabrication claim because the defendants took no "additional affirmative action." *Id.* In *Blackmon*, the Seventh Circuit offered examples of "unusual circumstances" that may support liability where

5

officers defrauded prosecutors, either by lying to the prosecutors or furnishing them with "bogus" evidence. *Blackmon*, 132 F.4th at 525–26. Comparing these two cases, it is clear that a plaintiff may sustain a claim based on a suggestive lineup procedure where the defendant officers took subsequent affirmative steps to deceive prosecutors. Merely failing to inform prosecutors of the circumstances surrounding a suggestive lineup, without any additional steps to defraud the prosecutors, is a failure to create evidence, which cannot form the basis for a *Brady* claim.[2]

According to the plaintiff, Count IX alleges the defendants "conceal[ed] the fact that they use[d] [suggestive] techniques" and "the exculpatory evidence that the witness refused to identify the defendant." (R. 228 at 13.) The Court previously denied summary judgment on this count because "[a] jury could . . . conclude that Guevara failed to disclose the true nature of his coercive tactics by failing to make the prosecution aware of it." (R. 215 at 29.) In light of *Blackmon*, that ruling cannot stand. Count IX does not present one of the "unusual circumstances" discussed in *Blackmon* where officers affirmatively defraud prosecutors. It also is based on the defendants' failure to create evidence by informing prosecutors of the line-up's circumstances. The defendants are therefore entitled to summary judgment on Count IX.

**Count XIII**

Count XIII is a malicious prosecution claim under Illinois state law. *Blackmon* did not interpret Illinois state law, so it has no effect on this claim. The defendants rehash arguments they raised in their motion for summary judgment, claiming it is undisputed that the prosecution was supported by probable cause. (R. 227 at 10–14; R. 177 at 39; R. 181 at 23–27.) But they do not point to any mistake of law or fact supporting reconsideration in the Court's original order. The motions are denied with respect to Count XIII.

Date: December 5, 2025

JEREMY C. DANIEL
United States District Judge

---

[2] The Court recognizes that there is some tension between *Saunders-El* and *Blackmon*. *Saunders-El* dealt with allegations that officers fabricated evidence by placing the plaintiff's blood at the crime scene. *Saunders-El v. Rohde*, 778 F.3d 556, 558 (7th Cir. 2015). However, the "unusual circumstances" exception discussed in *Blackmon* explicitly contemplates liability attaching in this scenario; there the Seventh Circuit noted that officers "undermine the value of the safeguards offered against the admission of unduly suggestive evidence," such as prosecutors or judges, by "manufacturing evidence." *Blackmon v. Jones*, 132 F.4th 522, 525–26 (7th Cir. 2025). In any event, this tension does not disturb *Saunders-El*'s point that an officer's mere failure to report information to a prosecutor does not support a *Brady* claim.

6