IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAIME RIOS

    Plaintiff,

        vs.                              Case No. 1:22-cv-03973

REYNALDO GUEVARA
MICHAEL MASON
JOANN HALVORSEN AS
SPECIAL REPRESENTATIVE FOR
ERNEST HALVORSEN, DECEASED
CITY OF CHICAGO


    Defendants.                      JURY TRIAL DEMANDED


    Defendants.

**MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF DR. JACK SCHAFER**

Plaintiff Jaime Rios, by and through his attorneys, Stephen L. Richards and Joshua S.M. Richards submits the following motion in limine to preclude the testimony of Dr. Jack Schafer as an expert on interrogation techniques and "disputed" confessions.

**SUBSTANCE OF DR. SHAFER'S PROPOSED TESTIMONY**

*Qualifications*

Dr. John R. "Jack" Schafer, P.H.D. is an intelligence agent and former Special Agent with the Federal Bureau of Investigation. He retired in 2005 after 20 years. As an FBI agent, he

1

worked as a behavioral analyst. In foreign counterintelligence, in civil rights, white collar crimes, and violent crimes. From 1980 to 1985 he worked as a police officer with the Hinsdale police department.

Dr. Schafer has a P.H.D. in Psychology, and Masters of Arts media psychology, clinical psychology, and criminal justice.

Dr. Schafer has published a number of books and articles. The bulk of these works are popular guides to interviewing techniques and methods of detecting deception. He has also published articles in professional journals on similar topics.

*Dr. Schafer's Opinions*

Dr. Schafer has offered the following opinions, in summary, all of which relate to his critique of Dr. Melissa Russano's opinions on the science of false confessions and the application of that science to the facts of the Jaime Rios case.

1. In so far as Dr. Russano based her opinions on experimental studies exploring risk factors which lead to false confessions, these studies lack "external validity" and therefore her opinions should be viewed with "extreme caution."
2. Dr. Russano's identification of risk factors in the Rios case is "suspect" because she uses qualifying words.
3. The detectives investigating the Morales murder did not fall into "confirmation bias."
4. Rios's youth did not represent a vulnerability that might have led him to confess falsely.
5. Whether Rios was isolated from his arrival at the Area 6 police station until the time of his formal arrest is "disputed." Further, the effect of isolation cannot be gauged

    because Russano does not know Rios's personality, behavioral characteristics, and personal preferences.

6. Russano's inclusion of all in custody time to calculate the length of the incarceration is flawed.

7. Although "using physical force on suspects is unacceptable," whether Rios was physically abused is disputed.

8. Whether Rios was denied basic necessities is disputed.

9. Sleep deprivation was not a factor in the interrogation of Rios.

10. Rios was not subjected to a guilt presumptive, accusatorial interrogation and the social science research showing that such techniques lead to false confessions is flawed.

11. Rios was not presented with false evidence, and even if he was, the social science research showing that presentation of false evidence leads to false confessions is flawed.

12. Whether Rios was threatened with the loss of his children is disputed, although such a threat is "never permitted in the interrogation room."

In addition to these critiques of Dr. Russano's opinions, Dr. Schafer also offers a number of observations on the dynamics of the interrogation process and its application to Jaime Rios's interrogation. These observations are not supported by references to peer reviewed literature, particular interrogations, or any other source. These observations include the following opinions:

1. Guilty suspects use an "innocent-presumptive" technique in which they tell the truth up to a certain point, but then withhold incriminating information. Jaime Rios's denial of being with Cristino Garcia or being at the crime scene fits into that category.

2. Guilty suspects use "false evidence ploys" to mislead investigators. Schafer does not provide an opinion as to whether Jaime Rios used a "false evidence" ploy.

3. Guilty suspects use "truth overlays" to maintain their innocence. In a "truth overlay" a guilty suspect uses a true narrative of a past event, unrelated to the actual crime, to confuse interviewers. Jaime Rios used a "truth overlay" mislead investigators when he "confabulated" a murder he had witnesses in front of his house with the murder of Morales.

4. Guilty suspects minimize their participation in the crime being investigated. Rios minimized his participation in his murder by naming Garcia as the shooter. Rios used minimization in a similar way that Russano reports interrogators use minimizations.

**ARGUMENT**

Dr. Schafer's testimony is not admissible.

The admission of expert testimony is governed by the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Fed. R. Evid. 702, which provides that to admit a "witness who is qualified as an expert by knowledge, skill, experience, training, or education," the proponent must demonstrate, by a preponderance of the evidence, that:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Fed. R. Evid. 702.

In *Daubert*, the Court interpreted Rule 702 as appointing courts the "gatekeeper" to ensure "that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." 509 U.S. at 592. The *Daubert* gate keeping function applies not only to "scientific testimony," but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The district court's gatekeeper role is critical. This is due to the fact that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Gopalratnam v. Hewlett-Packard* Co., 877 F.3d 771, 778–79 (7th Cir. 2017).

**I**n performing its gatekeeper role under Rule 702 and *Daubert*, "the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.' " *Myers v. Ill. Cent. R.R. Co*., 629 F.3d 639, 644 (7th Cir. 2010). In other words, the district court must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony. *Gopalratnam*., 877 F.3d at 779.

Dr. Schafer's opinions do not pass *Daubert*.

Shafer's opinions fall into two categories. The first category is his critique of Dr. Russano's opinions, and the social science underlying the study of false confessions. The second category comprises his own opinion that guilty suspects employ certain techniques to hide their guilt from interrogators, and that Jaime Rios employed such techniques. Neither category of opinion passes any three of the *Daubert* prongs.

*Dr. Schafer's Qualifications*

Dr. Schafer does not possess the qualifications to render most, if not all, of his opinions.

5

Under Fed. R. Evid. 702, a witness can be "qualified as an expert by knowledge, skill, experience, training, or education." The question for the court is "not whether an expert is qualified in general, but whether [her] qualifications provide a foundation for [her] to answer the specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (cleaned up). Specifically, courts first "must look at each of the conclusions [the expert] draws individually to see if he has the adequate education, skill, and training to reach them." *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016). Courts routinely find that an expert who is qualified to opine on one area may not be equally as qualified to opine on another. See, e.g., *Happel v. Walmart Stores, Inc*., 602 F.3d 820 (7th Cir. 2010) (affirming the district court's exclusion of the expert testimony of a board-certified physician, who despite his medical experience, was unfamiliar with the medical literature on the plaintiff's disease and lacked experience treating it); *Higgins v. Koch Dev. Corp*., 794 F.3d 697 (7th Cir. 2015) (a doctor with experience diagnosing and treating asthma was not qualified to assess its genesis and testify as to causation).

First, to the extent that Dr. Schafer seeks to critique or debunk the science of false confessions in general, he is clearly unqualified, and the district courts have rejected experts with similar qualifications.

Dr. Schafer essentially offers two qualifications: his Ph. D in psychology, and his experience as an interrogator of criminal suspects. He has published a number of guides for law enforcement officers on interviewing or interrogating suspects and on detecting deception. None of these guides appear to have been peer-reviewed.

Dr. Schafer has also authored peer reviewed articles on a number of topics, including: the "psychopathology of hate, ethics in law enforcement, civil rights, detecting deception, and the universal principles of criminal behavior." He does not appear, however, to have authored any peer

6

reviewed articles on false confessions or on the science of false confessions. Nor does he appear to have conducted experimental research on false confessions.

With respect to the social science and psychology of false confessions, Dr. Schafer's credentials in this field appear to be similar to the credentials of Dr. Diana Goldstein, which the district court found to be inadequate in *Fulton v. Bartik*, No. 20 C 3118, 2025 WL 725213, at *2–6 (N.D. Ill. Feb. 7, 2025).

In the field of psychology in general, Dr. Goldstein's credentials were far more substantial than Dr. Schafer's. Dr. Goldstein was a licensed and board-certified clinical neuropsychologist who has been practicing for more than 20 years. She earned a master's degree and a Ph.D. from The Chicago Medical School in clinical psychology and completed a post-doctoral fellowship in clinical neuropsychology at the University of Chicago Medical Center. She had lectured at various medical schools on the subjects of psychiatry and behavioral neuroscience. At the time of the *Daubert* motion Dr. Goldstein was the president, CEO, and director of neuropsychology at Michigan Avenue Neuropsychologists in Chicago, Illinois, where she provided neuropsychological and psychological outpatient evaluations and treatments. She additionally served as the Director of Neuropsychology for the Isaac Ray Forensic Group, LLC. In this role, she conducted forensic evaluations and consulted in criminal and civil cases including cases that involve custodial confessions. *Fulton*, 2025 WL 725213, at *3.

Dr. Goldstein offered a number of critiques of the reigning paradigm of the science of false confessions which were quite similar to Schafer's critiques: including that the research on false confessions is "fraught with methodological problems," "should not be relied upon to assess the reliability of suspect statements," that the "empirical work remains in nascent form, and that the "subject samples" are "impure." *Fulton*, 2025 WL 725213, at *6.

7

The district court found that Dr. Goldstein was unqualified to render these opinions because, despite her overall qualifications:

> "her research experiences do not appear to be pertinent to the science underlying false confessions. She has not published a peer-reviewed article or book in any field, much less on social science research methodology, in more than twenty years. Her active research activities appear to be on unrelated topics of psychiatric and psychological disorders and testing."

*Fulton*, 2025 WL 725213, at *3.

Here, similarly all of Dr. Schafer's peer-reviewed publications involve other topics, not false confessions, interrogations, or experimental research on false confessions.

Jaime Rios anticipates that defendants will argue that what Dr. Schafer lacks in professional qualifications he makes up for by his practical experience in interrogating criminal suspects. But this argument must fail, for at least two reasons.

First, such an argument would fly in the face of the district court's decision in *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 3142755, at *1-6 (N.D. Ill. July 25, 2017) where the court excluded the testimony of Dr. Paul Cassell, a law professor and former prosecutor, who, although not a social scientist, had practical experience involving police questioning of suspects and legal issues pertaining to the admissibility of confessions. 2017 WL 3142755, at *1-2.

Despite Cassell's stellar credentials as lawyer, prosecutor, federal judge, and law professor the district court found that these credentials did not make him an expert in the social science of false confessions. *Harris*, 2017 WL 3142755, at *4. And the court made this finding even though Cassell had served as an expert witness on false confessions in various jurisdictions, 2017 WL

8

3142755, at *4; the court noted that Cassell had never been found qualified to testify as an expert on this topic before a jury. Neither has Dr. Schafer.

The second reason to discount Dr. Schafer's practical experience as an interrogator is that the expertise he claims to have drawn from his experience appears to consist in a purported ability to discern when and how criminal suspects lie. But the social science research, as summarized in Dr. Melissa Russano's report, demonstrates that police officers are no better than other people in detecting deceit, with an accuracy rate of 53 per cent. (Dkt # 246-1, 10-11). In other words, the practical science which Dr. Schafer relies upon is no better than fortune telling, astrology, or lucky dice.

*Reliability of Dr. Schafer's Methodology*

Apart from his lack of qualifications, Dr. Schafer's methodology does not pass *Daubert*.

Dr. Schafer's principal critique of the social science of false confessions is that the science is based on various forms of descriptive and anecdotal evidence and that the experimental studies, including those conducted by Dr. Russano, lack "external validity." But these are the precise critiques of the science which the district courts have previously rejected.

In *Fulton*, the district court rejected a similar critique of the science in no uncertain terms:

> *"Despite her efforts, Dr. Goldstein's "methodology" does not satisfy the* requirements of Fed. R. Evid. 702 or Daubert. First, Dr. Goldstein's report is replete with instances in which she concludes that investigations and studies are unreliable, even though they are peer-reviewed publications. She does little to explain how research on false confessions is able to survive the rigors of academic publishing if it is so "fraught with methodological problems." Moreover, courts in this district have repeatedly recognized the validity of false confession research. See, e.g., *United States v. Hall*, 974 F. Supp. 1198, 1203 (C.D. Ill. 1997), aff'd, 165 F.3d 1095 (7th Cir. 1999); *Andersen v. City of Chicago*, No. 16 C 1963, 2020 WL 1848081, at *3 (N.D. Ill. Apr. 13, 2020). And this court also concluded in *Kluppelberg v. Burge*, 2016 WL 6821138 at *4 (N.D. Ill. Sept. 16, 2016), "the science of social psychology, and specifically the field involving the use of coercion in

9

interrogations, is sufficiently developed in its methods to constitute a reliable body of specialized knowledge under Rule 702."

*Fulton*, 2025 WL 725213, at *5.

Other district courts have reached the same conclusion and barred testimony which questions the reliability of false confession research. See *Chatman v. City of Chicago*, No. 14 C 2945, 2018 WL 11426158, at *3 (N.D. Ill. Oct. 30, 2018 (finding that opinions "concerning the science upon which [a false-confessions expert] relied" is a legal conclusion for the court to resolve); *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 3142755, at *5 (N.D. Ill. 7/25/2017) (barring a rebuttal expert's testimony questioning "the science on which Dr. Leo relies"); *Brown v. City of Chicago*, No. 18 C 7064, 2023 WL 2561728, at *16 (N.D. Ill. March 17, 2023) (barring a rebuttal witness from offering opinions that questioned the "empirical research foundation that informs the understanding of false confessions, specifically *** the quality, sufficiency, and reliability of the data Dr. Leo relies on in this field").

The second part of Dr. Schafer's opinions is even more problematic. In a cunning reversal of the false confession paradigm, he claims that suspects in general, and Rios, in particular, use innocent-presumptive responses, false evidence ploys, "truth overlays," and minimization to deceive investigators.

There are two problems with these opinions.

The first is that Dr. Schafer cites no evidence for any of these opinions, either from professional literature or his own experience. These opinions appear to be made out of whole cloth. They are personal opinions or common sense observations which do not pass *Daubert*. They are arguments which defendants are free to make, but coming from the mouth of a hired expert they would be of no help to the jury.

The second is that, by definition, Schafer is describing false confessions, not true ones. He is simply attributing the false confessions to the decisions made by guilty suspects rather than by investigators. But the question of whether Rios was in fact guilty is obviously beyond his expertise and Russano's; moreover, his opinion as to Rios's guilt would invade the province of the jury.

*Relevance*

Since Dr. Schafer's opinions do not pass the first two prongs of *Daubert*, there is not a great need to discuss the relevance of his opinions. However, as indicated above, his opinions as to the science are precluded by the district court case law. As to his opinions about Jaime Rios's credibility or guilt, those obviously invade the province of the jury,

## CONCLUSION

For the foregoing reasons, Dr. Schafer's testimony should be excluded, in whole or in part.

Respectfully Submitted,

/s/ Stephen L. Richards

By: Stephen L. Richards

Attorney for Plaintiff

53 W. Jackson, Suite 756

Chicago, IL 60604

(773) 817-6927

sricha5461@aol.com

Attorney No: 6191946

## CERTIFICATE OF SERVICE

Stephen L. Richards certifies that on December 22, 2025  he served the  **MOTION IN LIMINE TO PRECLUDE THE  TESTIMONY OF DR. JACK SCHAFER**

11

through the ECF filing system.

/s/ Stephen L. Richards

By: Stephen L. Richards