## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JAIME RIOS | ) | |
| | ) | Case No. 22 CV 3973 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Hon. Jeremy C. Daniel |
| vs. | ) | |
| | ) | |
| REYNALDO GUEVARA, MICHAEL MASON, | ) | |
| JOANN HALVORSEN AS SPECIAL | ) | |
| REPRESENTATIVE FOR ERNEST | ) | |
| HALVORSEN, DECEASED, CITY OF | ) | |
| CHICAGO | ) | |
| | ) | JURY DEMAND |
| Defendants | ) | |

## DEFENDANTS' MOTIONS *IN LIMINE*

Date: December 22, 2025

Respectfully submitted,

/s/Caroline P. Golden_____
CAROLINE P. GOLDEN, Atty No. 6270259
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant Michael Mason*
*and JoAnn Halvorsen, special representative for Ernest*
*Halvorsen, deceased*

/s/ Eileen E. Rosen_____
EILEEN E. ROSEN
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant City of Chicago*

/s/Graham Miller_____
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant Guevara*

# TABLE OF CONTENTS

**Page**

MOTIONS IN LIMINE NO. 1: Motion to Bar Certificate of Innocence ....................................1

MOTION IN LIMINE NO. 2: Motion to Bar Any Evidence or Argument About Suggestiveness or Coercion Leading to Any Identification in this Case or Failure to Inform Prosecutors of same ..................................................................................................................2

MOTIONS IN LIMINE NO. 3: Motion to Bar Evidence or Argument Contradicting Admissions Made During Summary Judgment Proceedings ........................................................5

MOTION IN LIMINE NO. 4: Motion to Bar Any Evidence or Reference to Allegedly False Testimony of Any Defendant at Plaintiff's Criminal Trial........................................................7

MOTION IN LIMINE NO. 5: Motion to Bar Any Evidence or Concerning Prior Claims of Misconduct, Citizen Complaints, and Lawsuits, and the testimony of Plaintiff's Proffered Fed. R. Evid. 404(b) Witnesses against Guevara...................................................................8

MOTION IN LIMINE NO. 6: Motion to Geoffrey Loftus........................................................10

MOTION IN LIMINE NO. 7: Motion to Bar Evidence of Fifth Amendment Invocation, or in the Alternative, To Bar Live Elicitation of Fifth Amendment Invocation of Defendant Guevara and/or Limit the Number and Nature of Questions Designed to Elicit Such Invocation ..........11

MOTION IN LIMINE NO. 8: Motion to Bar Any Attempt to Elicit a Fifth Amendment Invocation From Defendant Guevara Without First Establishing The Existence of Such Facts Through Independent Evidence ..................................................................................................17

MOTION IN LIMINE NO. 9: Motion to Bar Any Attempt to Elicit a Fifth Amendment Invocation From Defendant Guevara on Matters Already Adjudicated Against Plaintiff on Summary Judgment ..................................................................................................................20

MOTION IN LIMINE NO. 10: Motion to Bar Any Evidence, Argument or Inquiry Relating To Any Judicial Commentary on the Credibility of Defendant Guevara or Other Matters Relating to Other Cases Involving Defendant Guevara.............................................................21

MOTION IN LIMINE NO.11: Motion to Bar Imputing Any Inference from Guevara's Assertion of the Fifth Amendment to Defendants Halvorsen and Mason .................................24

MOTION IN LIMINE NO. 12: Motion to Bar Evidence or Argument Related to Halvorsen's Disavowed Fifth Amendment Invocation in Unrelated Litigation .............................................28

## <u>TABLE OF CONTENTS-CONTINUED</u>

**Page**

MOTION IN LIMINE NO. 13: Motion to Bar Any Testimony by Criminal Defense Attorneys Or Other Witnesses Speculating on the Outcome of Criminal Trial ...........................................30

MOTION IN LIMINE NO. 14: Motion to Bar Any Testimony Regarding Rios's Friends and Family's Person Feelings, Emotions Status, and/or Suffering after Plaintiff's Arrest ..............32

MOTION IN LIMINE NO. 15: Motion to Bar Evidence or Argument Regarding Any Alleged Abuse or Illegal Conditions of Confinement Experienced or Witnessed by Plaintiff While Incarcerated .......................................................................................................................32

MOTION IN LIMINE NO. 16: Motion to Bar Any Argument or Questioning Regarding the Failure to Record Interrogations, Witness Statements or Identification Procedures .................33

MOTION IN LIMINE NO. 17: Motion to Bar Any Evidence or Argument Concerning Sufficiency of Investigation .................................................................................................................34

MOTION IN LIMINE NO. 18: Motion to Bar Chicago Police Department Policy or Practice Violations by Defendant Officers .......................................................................................................36

MOTION IN LIMINE NO. 19: Motion to Bar General Evidence or Argument Regarding Alleged Code of Silence ......................................................................................................................37

MOTION IN LIMINE NO. 20: Motion to Bar Plaintiff's False Confession Expert Melissa Russano...........................................................................................................................................38

MOTION IN LIMINE NO. 21: Motion to Bar Prior Evidence or Argument Concerning Prior Claims of Misconduct, Citizen Complaints, and Lawsuits against Halvorsen, Mason and Non-Party CPD Witnesses ..................................................................................................................38

MOTION IN LIMINE NO. 22: Motion to Bar Reference to Highly Publicized Cases of Police Misconduct..................................................................................................................................41

MOTION IN LIMINE NO. 23: Motion to Plaintiff from Arguing or Referring to "Constitutional Rights" as a Category of Damages ....................................................................41

MOTION IN LIMINE NO. 24: Motion to Bar Any "Golden Rule" Arguments .......................42

MOTION IN LIMINE NO. 25: Motion to Admit Felony Convictions of Plaintiff's Witnesses Benjamin Carrero, Cristino Garcia and Lamont Burr................................................................43

## TABLE OF CONTENTS-CONTINUED

**Page**

MOTION IN LIMINE NO. 26: Motion to Exclude the City of Chicago on the Verdict Form, Jury Instructions and Case Caption ....................................................................................50

## DEFENDANTS' MOTIONS *IN LIMINE*

Defendants, JoAnn Halvorsen, as Special Representative for Ernest Halvorsen (deceased) and Michael Mason, and Reynaldo Guevara (collectively "Defendant Officers"), and the City of Chicago (the "City"), jointly move *in limine* to bar certain evidence from being introduced in the trial of the above referenced case and state as follows in support of their motion.

**MIL 1: Motion to Bar Certificate of Innocence[1]**

**MIL 2.  Motion To Bar Any Evidence or Argument About Suggestiveness or Coercion Leading to Any Identifications in this Case or Failure to Inform Prosecutors of Same**

This Court must bar Plaintiff from introducing evidence, arguing, or insinuating that any Defendant or other police officer engaged in any coercive or suggestive conduct toward any witness, including Luis Heurtas, during the underlying criminal investigation in this case. Plaintiff must similarly be barred from introducing evidence, arguing, or insinuating in any way that any Defendants or other police officer failed to inform any prosecutor of any suggestive or coercive conduct leading to any identification. This bar must include: (1) any examination or cross examination by Plaintiff's counsel of any witness designed to attempt to cast doubt upon the reliability of his/her identification(s) or the manner in which such identification was obtained; (2) any argument or insinuation that any Defendant or other police officer engaged in any conduct rendering it more likely that any identification of Plaintiff by such witnesses was unreliable; and (3) introduction of any expert testimony of any sort on the topic of the reliability of eyewitness identifications and/or suggestibility/reliability of any identification procedures or techniques resulting in any identification.

Throughout this case, Plaintiff has attempted to cast doubt upon the reliability of eyewitness

---

[1] Plaintiff moves affirmatively to admit his COI into evidence. For purposes of efficiency, Defendants will incorporate their arguments to exclude Plaintiff's COI in their responses to Plaintiff's affirmative motion *in limine,* rather than cross-brief the motion. To be clear, Defendants seek affirmative relief to bar Plaintiff's COI for the reasons set forth in Defendants' Responses to Plaintiff's Motions *in Limine.*

identifications of him as the killer of Luis Morales by stating or implying that witnesses were subjected to identification techniques by the police that were unduly suggestive. This has included not only examining and cross-examining eyewitnesses regarding the police procedures used and circumstances of such identifications to insinuate suggestion/unreliability but also retaining an expert witness, Geoffrey Loftus, to provide expert testimony on the alleged suggestiveness of various identification techniques employed in obtaining such identifications. All of this evidence and any inquiry or argument on the alleged suggestiveness underlying any identification must be barred.

Relying on *Blackmon v. Jones,* 2025 WL 869045 (7th Cir. 2025), this Court held unequivocally that Plaintiff was not permitted to pursue any claims that Defendants engaged in conduct with eyewitnesses that produced unduly suggestive (and, thus, unreliable) identifications. Dkt. No. 243 at 4-6. Moreover, this Court went even further and held that, while the Seventh Circuit held that "unusual circumstances" such as deception of prosecutors and coercion of witnesses to falsely testify at trial might provide an exception to this rule, Defendants were entitled to Qualified Immunity. *Id.* at 5. As such, this Court's Order does not allow for Plaintiff to attempt to establish that any witness identification was made by employing unduly suggestive identification techniques nor any alleged coercion involved in same nor any failure to disclose same to the prosecution. *Id.*

This Court's rulings on summary judgment are considered to be the "law of the case" and cannot now be challenged at any further proceedings. The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618 (1983). This rule of practice promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." *Christianson v. Colt. Indus. Operating Corp.,* 486 U.S. 800, 815–16 (1988). "The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *Cannon v. Armstrong Containers, Inc.,* 92 F.4th

688, 701 (7th Cir. 2024); *Pepper v. United States,* 562 U.S. 476, 506 (2011)(defining the doctrine to "posit[ ] that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). It prevents a party from getting a "second bite at the [ ] apple." *Grede v. FCStone, LLC,* 867 F.3d 767, 775 (7th Cir. 2017). Accordingly, the law of the case doctrine "binds a court to its own previous decision on issues arising earlier in the litigation." *Waid v. Merrill Area Public Schools,* 130 F.3d 1268, 1272 (7th Cir.1997). "A ruling that evidence was insufficient to support some finding is the type of ruling that establishes the law of the case." *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir. 1998).

This Court's rulings that Plaintiff may not proceed on his coercive or suggestive identification claims are now "law of the case." Accordingly, Plaintiff must hew his arguments and evidentiary and legal theories to the issues already decided by this Court. *Carr v. O'Leary*, 167 F.3d 1124, 1125 (7th Cir.1999) (where the trial court entered an order granting partial summary judgment, resolving the issue of liability and reserving determination of damages for trial, that order is the law of the case); *Life Spine, Inc. v. Aegis Spine, Inc.,* 2023 WL 7919579, at *4 (N.D. Ill. 2023) (same; "The court's prior rulings are law of the case and cannot be relitigated at trial without a showing of good cause."); *Sioux Steel Company v. Prairie Land Mill Wright Services,* 2022 WL 17082541, at *3 (N.D. Ill. 2022) ("Plaintiff's motion is granted as agreed to the extent it seeks to bar Defendants from relitigating this Court's rulings on claim construction or eliciting testimony that contradicts this Court's rulings."); *General Citrus Intern. Inc. v. Remien,* 2009 WL 2486164, at *2–3 (N.D. Ill. 2009) (same; "The law of the case doctrine precludes defendants' efforts to relitigate Remien's liability under the Remien Subordinated Guaranty at any time prior to February 26, 2009, and our related findings that Ury Corp. is Ury's alter ego and that the Assignment lacked consideration. As General Citrus observes in its motion, an order granting judgment is not a "mere first draft[ ], subject to revision and reconsideration at [defendants'] pleasure." It cannot be changed

without good reason. Accordingly, absent a showing of good cause, this Court will not revisit the issues resolved in connection with our summary judgment determination.") (citations omitted); *Central Illinois Carpenters Health and Welfare Trust Fund v. Olsen,* 2006 WL 8443225, at *1 (C.D. Ill. 2006) ("In light of this Court's ruling granting summary judgment in favor of the Plaintiffs on liability on all counts of the Complaint, the Court finds that the issue of estoppel was decided by this Court in its June 1, 2006, Opinion. Defendants are therefore precluded from introducing any exhibits or testimony regarding the issue of estoppel at trial.").

In this case, Plaintiff has repeatedly insinuated that he was targeted, investigated, charged, and prosecuted without basis, that all of the witnesses against him were somehow lead to identify him as a result of police malfeasance, and that all of the identifications of him by witnesses were, in essence, the product of police fabrication. As noted above, the claims relating to allegations of coercion or suggestion with respect to Luis Heurtas' identification of Plaintiff have been conclusively established *against Plaintiff.* The only live trial issue relates to whether Plaintiff received a fair trial and whether Defendant Guevara initiated, continued the criminal prosecution against Plaintiff maliciously and without probable cause. To allow Plaintiff free reign to make arguments tethered to issues already decided against him and contrary to the adverse findings against him would render the summary judgment proceedings a nullity and would violate well-established law on the "law of the case."

Accordingly, Plaintiff must be barred from:

(1)    Conducting any examination or cross examination of any witness designed to attempt to cast doubt upon the reliability of his/her identification(s) or the manner in which such identification was obtained whether by alleged suggestible identification techniques or coercion;

(2)    Making any argument or insinuation that any Defendant or other police officer engaged in any conduct rendering it more likely that any subsequent identification of Plaintiff by such witnesses was unreliable;

4

(3)     Introducing of any expert testimony of any sort on the topic of the reliability of
        eyewitness identifications and/or suggestibility/reliability of any identification
        procedures or techniques resulting in any identification;

(4)     Arguing, introducing evidence, or otherwise insinuating in any way that any
        Defendant failed to disclose the circumstances of any identification of Plaintiff made
        by any witness; and

(5)     Presenting evidence, argument, or insinuation that Luis Heurtas' identification of
        Plaintiff was false or fabricated by any Defendant.

## MIL 3.  Motion To Bar Evidence or Argument Contradicting Admissions Made During Summary Judgment Proceedings

Plaintiff must be barred from introducing any evidence or argument that contradicts certain

material facts that Plaintiff admitted during summary judgment. During the summary judgment

proceedings in this case, Plaintiff expressly admitted the following facts:

(1)     Luis Huertas "saw Plaintiff shoot Luis Morales" and "had a direct view of Plaintiff's
        face in a well-lit area immediately before the incident and…never lost sight of him at
        any point in between." Dkt. No. 194 at ¶ 11 (admitting that "Huertas had a direct
        view of Plaintiff's face in a well-lit area immediately before the incident and saw him
        shoot Morales shortly thereafter and never lost sight of him at any point in
        between."); Dkt. No. 191 at ¶ 67.

(2)     Prior to the lineup involving Plaintiff, Luis Huertas was shown photographs of gang
        members to see if he could make an identification of the shooter. Dkt. No. 194 at ¶¶
        17-18, 43-47. Plaintiff was not among these photos and Huertas did not identify
        anyone from these photographs. *Id.* The first time Huertas identified Plaintiff was at
        the lineup. *Id.*

(3)     At the lineup, Huertas entered the lineup room, immediately noticed Plaintiff, and
        told Defendant Mason that Plaintiff was the shooter of Morales. Dkt. No. 194 at ¶ 45.

(4)     Defendant Mason thereafter told Huertas to take his time and make sure he had the
        right guy so Huertas took his time, looked at all lineup participants again, and again
        identified Plaintiff as Morales' shooter. Dkt. No. 194 at ¶ 45.

(5)     No one told Huertas who to pick in the lineup or photos he reviewed. Dkt. No. 194 at
        ¶ 47.

(6)     Huertas was not coerced by anyone to identify Plaintiff. Dkt. No. 194 at ¶ 47.

(7)     The State called Huertas to testify at Rios' criminal trial. Dkt. No. 194 at ¶ 56.

(8)     Huertas testified that he positively identified Rios in a lineup at Area 5 on July 7, 1989. Dkt. No. 194 at ¶ 56.

(9)     Huertas was extensively cross examined at trial by Plaintiff's criminal defense attorney relating to the veracity and reliability of his identification of Rios as the shooter of Morales. Dkt. No. 194 at ¶ 56; Dkt. No. 191 at ¶ 63.

(10)    When Huertas testified at trial, he told the truth. Dkt. No. 194 at ¶¶ 46, 56.

(11)    Huertas is certain to this day that Plaintiff is the person he saw shoot Morales. Dkt. No. 194 at ¶ 46.

(12)    Huertas' testimony at Plaintiff's criminal trial that he saw Plaintiff shoot Morales was truthful. Dkt. No. 194 at ¶ 46.

Parties' admissions in response to an opponent's properly supported statements of fact under Local Rule 56.1 are binding judicial admissions of fact for the purposes of the case and cannot be contradicted. *See Tobey v. Extel/JWP, Inc*., 985 F.2d 330, 333 (7th Cir. 1993) ("[T]he failure to contest a party's statement of uncontested facts is treated as a binding admission of the truth of those facts. An admission trumps evidence, rather than vice versa."); *Delapaz v. Richardson*, 634 F.3d 895, 899–900 (7th Cir. 2011) ("[T]he district court relied on appellants' admission, as it was entitled to do. We, too, are entitled to rely on that admission, and are inclined to hold appellants to their 56.1 response. In light of their admission that Picardi made the demotion decision, appellants cannot establish § 1983 liability against Richardson."); *Caterpillar Inc. v. Estate of Lacefield-Cole*, 520 F.Supp.2d 989, 995–96 (N.D. Ill. 2007) ("Strict compliance with the local rules is mandatory for practitioners appearing before this court; failure to do so results in a binding judicial admission of fact. These admissions trump evidence that is later produced, let alone evidence that a party claims does not exist at all."); *Banks v. Chamberlain*, 2021 WL 2529568, *6 (N.D. Ill. 2021) ("Rule 56.1 statements of fact, responses, and even the failure to respond are judicial admissions that are binding on a party."); *Horton v. City of Chicago*, 2018 WL 6505398, *6 (N.D. Ill. 2018) ("Russell admits in its response to Maverick's Local Rule 56.1 statement that the Subcontract Agreement is a contract

6

between itself and Maverick—not Henry Horner/Westhaven Homes and Maverick. This is a judicial admission, which is binding on Russell and has the effect of withdrawing from contention the fact that Russell is a party to the Subcontract Agreement."); *Posey v. Pruger*, 2015 WL 5610764, *8 (N.D. Ill. 2015) ("Plaintiff agrees with Defendants that he stopped at the sign, thereby creating 'a binding judicial admission of fact' on the issue. How this squares with Pruger's prior sworn testimony is, of course, not at issue here.").

Such judicial admissions cannot be disputed at trial. *Neita v. City of Chicago*, 148 F.4th 916, 927 (7th Cir. 2025); *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention"); *Portis v. City of Chicago*, 2012 WL 13207536, at *2 (N.D. Ill. Nov. 30, 2012)(expressly allowing plaintiff to offer defendants' admission in its 56.1 statement as judicial admissions at trial) (*see also Frymire v. Peat, Marwick, Mitchell & Co.*, 1991 WL 66381, at *1-2 (N.D. Ill. Apr. 22, 1991) (allowing plaintiff to introduce admissions made in defendant's 56.1 statement at trial); *cf. Portis v. City of Chicago*, 2013 WL 12443086, at *1 (N.D. Ill. Sept. 24, 2013) (allowing 56.1 statements by opposing party to be introduced as evidentiary admissions at trial).

**MIL 4. Motion To Bar Any Evidence or Reference to Allegedly False Testimony of Any Defendant at Plaintiff's Criminal Trial**

Plaintiff must be barred from introducing any evidence or argument or making any inquiry relating to any Defendant, including, but not limited to, Defendant Guevara, testifying falsely at any stage of Plaintiff's criminal proceedings.

Witnesses in a criminal trial, including police officers testifying for the prosecution, have absolute immunity from a later suit under 42 U.S.C. § 1983 based on their alleged perjury. *Khorrami*

*v. Rolince,* 539 F.3d 782, 789 (7th Cir. 2008) *citing Briscoe v. LaHue,* 460 U.S. 325 (1983).

It follows that any argument, testimony, references, or suggestions to the effect that a police officer provided false or misleading testimony at Plaintiffs' criminal trials or related proceedings is irrelevant and has no probative value. Even if it were relevant, the Court should exclude it under Rule 404(b) as inadmissible propensity evidence and/or under Rule 403 because it confuses the issues, misleads the jury, and is highly prejudicial in that it suggests—without any basis—that Plaintiff's conviction were based on perjured testimony and that Defendants were and are lying. Fed. R. Evid. 403, 404(b).

Finally, to allow such substance-less theories of perjurious testimony would violate the principles set forth by the U.S. Supreme Court to protect judges, prosecutors, and witnesses. *Briscoe,* U.S. at 345 (extending to witnesses the protections recognized in *Imbler v. Pachtman,* 424 U.S. 409, 429, (1976) (recognizing absolute immunity for prosecutors under § 1983 even though it may leave the genuinely wronged defendant without civil redress for malicious or dishonest action that deprives him of liberty) and *Pierson v. Ray,* 386 U.S. 547, 554 (1967) (recognizing the absolute immunity of judges from liability for damages for acts committed within their judicial jurisdiction even when the judge is accused of acting maliciously and corruptly).

**MIL 5. Motion to Bar Prior Evidence or Argument Concerning Prior Claims of Misconduct, Citizen Complaints, and Lawsuits, and the testimony of Plaintiff's Proffered Fed. R. Evid. 404(b) Witnesses against Guevara[2]**

Plaintiff should be barred from introducing any evidence, testimony, or argument concerning citizen complaints, prior disciplinary matters, lawsuits, or other allegations of

---

[2] Plaintiff moves affirmatively to admit his Fed. R. Evid. 404(b) witnesses into evidence. For purposes of efficiency, Defendants will incorporate their arguments to exclude Plaintiff's designated 404(b) witnesses in Defendants' responses to Plaintiff's affirmative motion *in limine,* rather than cross-brief the motion. To be clear, Defendants seek affirmative relief to bar Plaintiff's 404(b) witnesses for the reasons set forth in Defendants' Responses to Plaintiff's Motions *in Limine.*

misconduct against Guevara. Such evidence is irrelevant, constitutes improper character and propensity evidence and, even if marginally relevant, must be excluded under Rule 403.

During discovery Defendants produced Guevara's CPD disciplinary histories and related citizens complaint (Complaint Register or "CR") files, as well as information related to prior lawsuits against Guevara. However, evidence of prior complaints, allegations, discipline, or lawsuits against Guevara have no bearing on whether he engaged in the specific conduct alleged in this case. The Federal Rules of Evidence prohibit using evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *see also* Fed. R. Evid. 401, 402.

Introducing unrelated allegations would impermissibly invite the jury to conclude that because Guevara was previously accused of misconduct, he was more likely to have acted improperly here. That is precisely the inference Rule 404(b) forbids.

While Rule 404(b)(2) permits "other acts" evidence for limited purposes such as intent, opportunity, preparation, and plan, the Seventh Circuit has made it crystal clear that the proponent must establish a propensity-free chain of reasoning such "that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *United States v. Gomez*, 763 F.3d 845, 855-60 (7th Cir. 2014) (*en banc*).

Plaintiff cannot meet that burden here. Any relevance of prior complaints, discipline, or lawsuits necessarily depends on the forbidden inference that Guevara had a propensity for misconduct and therefore acted similarly in this case. Courts in this District routinely exclude such evidence on that basis. *See Harris v. City of Chicago*, 2017 WL 2462197, *3 (N.D. Ill. June 7, 2017) (excluding prior discipline because plaintiff "failed to establish a propensity-free chain of reasoning for why similar acts in the past would be relevant to a permitted purpose"); *see also Burton v. City of Zion*, 901 F.3d 772, 783 (7th Cir. 2018); *Young v. City of Harvey, et al.*, 2016

9

WL 4158952, at *2 (N.D. Ill. Aug. 4, 2016). Accordingly, there is no permissible basis under Rule 404(b) and *Gomez* for admitting such evidence.

Even assuming arguendo that prior allegations had some minimal probative value—they do not—that value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. As courts have recognized, juries may place undue weight on character evidence and decide cases on an improper basis when presented with unrelated allegations of misconduct. *See Young*, 2016 WL 4158952, at *4 ("[T]he concern is that juries will rely too heavily on character to decide the disputed issue.")**.**

Allowing evidence of prior complaints, discipline, or lawsuits would also lead to time-consuming and confusing mini trials regarding the merits of each unrelated allegation. Guevara, through other witnesses, would be forced to rebut collateral matters wholly divorced from Plaintiff's claims, diverting the jury's attention from the actual issues in dispute. Courts exclude such evidence for that very reason. *See Kaufman v. City of Chicago*, 2021 WL 1885985, at *6 (N.D. Ill. May 11, 2021) (barring other bad acts evidence because "putting witnesses on the stand to discuss unsubstantiated events from many years ago will lead to 'distracting and time consuming mini-trials regarding the merits of these other allegations.'") (quoting *Patterson v. City of Chicago*, 2017 WL 770991, at *4 (N.D. Ill. Feb. 28, 2017)).

There is no doubt that the introduction of such evidence would delay these proceedings and would improperly shift the focus of the trial away from Plaintiff's claims. Therefore, this Court should grant this motion *in limine* and exclude from trial any evidence and/or argument regarding citizen complaints, prior disciplinary allegations, other lawsuits, or other allegations of misconduct against Defendant Guevara.

**MIL 6. Motion To Bar Geoffrey Loftus[3]**

---

[3] Plaintiff moves affirmatively to admit the opinions of his identification expert, Geoffrey Loftus, into evidence. For purposes of efficiency, Defendants will incorporate their arguments to exclude Loftus' opinions

**MIL 7.  Motion To Bar Evidence of Fifth Amendment Invocation, or in the Alternative, To Bar Live Elicitation of Fifth Amendment Invocation of Defendant Guevara and/or Limit the Number and Nature of Questions Designed to Elicit Such Invocation**

This Court should bar any evidence or argument regarding Defendant Guevara's invocation of his Fifth Amendment Rights. In the alternative, this Court must order that the jury in this case be informed of Defendant Guevara's Fifth Amendment invocation through jury instruction as opposed to live testimony. Given the high degree of prejudice and potential for abuse, this is the most fair and efficient manner to present such evidence at trial. In the alternative, this Court must limit the number of questions posed to Defendant Guevara seeking to elicit such invocation and order that the subject matter of such questions be pre-screened by this Court to prevent any potential abuse at trial.

**I.      Allowing Evidence of Defendant Guevara's Fifth Amendment Invocation at Trial Would Impose Too High of an Economic Consequence on Defendant Guevara to Satisfy Constitutional Muster.**

First, given the unique circumstances at issue in the litigation against Defendant Guevara, allowing evidence of his invocation of his Fifth Amendment Rights imposes too high of an economic consequence to pass Constitutional muster.

While Defendant Guevara is, of course, aware that courts have allowed evidence of a civil defendant's invocation of his Fifth Amendment Rights and its attendant permissive negative inference, the peculiar circumstances of this case and the litigation facing Defendant Guevara render evidence of his Fifth Amendment invocation too costly to pass Constitutional muster.

As this Court is aware, Defendant Guevara is currently the subject of approximately nearly 40 separate civil cases pending in this District. *See Reyes v. Guevara,* 18-cv-01028; *Solache v. Guevara,* 18-cv-02312; *Almodovar, Jr. v. Guevara,* 18-cv-02341; *Maysonet, Jr. v. Guevara,* 18-cv-

---

in their responses to Plaintiff's affirmative motion in limine, rather than cross-brief the motion. To be clear, Defendants seek affirmative relief to bar all of Loftus' opinions for the reasons set forth in Defendants' Responses to Plaintiff's Motions in Limine.

02342; *Negron v. Guevara,* 18-cv-02701; *Gomez v. Guevara,* 18-cv-03335; *Rodriguez v. Guevara,* 18-cv-07951; *Bouto v. Guevara,* 19-cv-02441; *Iglesias v. Guevara,* 19-cv-06508; *Johnson v. Guevara,* 20-cv-04156; *Rios v. Guevara,* 22-cv-03973; *Rodriguez v. Guevara,* 22-cv-06141; *Gonzalez v. Guevara,* 22-cv-06496; *Flores v. Guevara,* 23-cv-01736; *Hernandez v. Guevara,* 23-cv-01737; *Lugo v. Guevara,* 23-cv-01738; *Davila v. Guevara,* 23-cv-01739; *Abrego v. Guevara,* 23-cv-01740; *Gecht v. Guevara,* 23-cv-01742; *Rivera v. Guevara,* 23-cv-01743; *Mendoza v. Guevara,* 23-cv-02441; *Diaz v. Guevara,* 23-cv-02575; *Munoz v. Guevara,* 23-cv-03210; *Cruz v. Guevara,* 23-cv-04268; *Kwil v. Guevara,* 23-cv-04279; *Mulero v. Guevara,* 23-cv-04795; *Gonzalez v. Guevara,* 23-cv-14281; *Cain v. Guevara,* 23-cv-14282; *Andino v. Guevara,* 23-cv-14283; *Santiago v. Guevara,* 23-cv-14284; *Hernandez v. Guevara,* 23-cv-15375; *Robinson v. Guevara,* 24-cv-05954; *Soto v. Guevara,* 24-CV-10869; *Ortiz v. Guevara,* 24-CV-11057; *Rosario v. Guevara,* 24-CV-11278; *Ayala v. Guevara,* 24 -CV- 12800; *T. Gonzalez v. Guevara,* 25 cv 000566. Each and every one of these cases involves persons who were previously convicted of serious criminal offenses, served years (sometimes decades) in prison, had their convictions vacated and who now are suing Defendant Guevara for a variety of alleged misconduct. *Id.* Each and every one of these cases also seeks to impose punitive damages on Defendant Guevara which would be the personal financial responsibility of Defendant Guevara in each case.

Defendant Guevara is currently 81 years old, unemployed, and living essentially on a fixed income. Suffice it to say, the economic consequences of each of these cases to Defendant Guevara personally (and the combined weight of all of them) would have serious and dire economic consequences on him. While Defendant Guevara could, in theory, introduce evidence of his economic circumstances to attempt to mitigate any punitive damage award in a particular case, this itself is fraught with practical problems given the weight of the litigation against Defendant Guevara.

Specifically, in order to accurately reflect to the jury the weight of the economic issues facing

him in a particular case, Defendant Guevara would in essence be forced to display to the jury the number of pending lawsuits and their possible economic consequences to him. In other words, in order to attempt to mitigate the dire economic consequences in any individual case, Defendant Guevara would be faced with a classic Catch-22 of equally serious negative economic consequences.

The firms that have sued Defendant Guevara have also not shied away from using his invocation as a cudgel in this litigation. In essentially every case in which Defendant Guevara is deposed (and he is deposed in every case), the questioning attorneys use the opportunity to ask Defendant Guevara about wide-ranging matters in other litigation to trigger this elicitation. Indeed, the portion of the deposition of Defendant Guevara inquiring as to his alleged conduct in other cases often constitutes the majority of the deposition. *Id.*

The Supreme Court has held explicitly that the Fifth Amendment protects a person's right "to remain silent unless [the concerned party] chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Spevack v. Klein,* 385 U.S. 511, 514 (1967) *quoting Malloy v. Hogan,* 378 U.S. 1, 8 (1964)). A "penalty" was described as "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Id.* 385 U.S. at 515 *citing Griffin v. California,* 380 U.S. 609, 614 (1965). Into that category the Court has placed sanctions with serious economic consequences. *See Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)(architects may not be forced to choose between loss of state contracts and self-incrimination); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 392 U.S. 280 (1968) (public employees may not be forced to choose between discharge from employment and self-incrimination); *Gardner v. Broderick,* 392 U.S. 273 (1968)(same) (public employees may not be forced to choose between termination from employment and self-incrimination); *Spevack,* 385 U.S. 511 (attorney may not be disbarred for exercising the privilege); *Garrity v. New Jersey,* 385 U.S. 493 (1967) (testimony compelled by threatened loss of employment cannot be used in subsequent

13

criminal prosecution); *see also National Acceptance Co. v. Bathalter,* 705 F.2d 924, 927–28 (7th Cir.1983)($8.6 million default judgment was too high of a consequence for Fifth Amendment invocation); *cf. Chan v. City of Chicago,* 916 F.Supp. 804, 808 (N.D.Ill.,1996)(loss of only 7.6% of one's income not costly enough to violate Fifth Amendment). As stated succinctly by the Supreme Court in *Lefkowitz,* "[a] waiver secured under threat of substantial economic sanction cannot be termed voluntary." *Id.,* 414 U.S. at 82–83.

In sum, while it is true that courts have allowed a Fifth Amendment invocation to be used against a litigant in a civil case, the law is clear that this is a fact specific inquiry that must take into account the specific facts and prejudice of the case to determine whether the invocation will impose too high a cost on using one's Constitutional rights. Given the nature of the litigation against Defendant Guevara, this is such a case. This Court should bar evidence of Defendant Guevara's Fifth Amendment invocation at trial.

## II.    In the Alternative, this Court Should Only Permit Evidence of Defendant Guevara's Fifth Amendment Invocation to be Introduced Through Court Instruction or Limited Pre-Screened Questions Vetted by this Court.

In the event this Court permits the jury to hear that Defendant Guevara has invoked his Fifth Amendment rights in this case, the jury should be informed of that through Court instruction rather than live testimony or, in the alternative, this Court should only permit Plaintiff to elicit such invocation on a limited subset of questions pre-screened by this Court to ensure that Defendant Guevara's rights are protected from potential abuse.

As noted above, permitting a civil jury to hear evidence of a civil litigant's invocation of his Fifth Amendment Rights is a delicate balancing act which requires a court to carefully consider the inherent cost that may inure to a person for invoking the rights afforded them as citizens under the United States Constitution. *See Spevack,* 385 U.S. at 514. The manner in which a Fifth Amendment invocation is introduced in a civil proceeding must "carefully balance the interests of the party

claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *S.E.C. v. Graystone Nash, Inc.,* 25 F.3d 187, 192 (3d Cir. 1994). To this end, in order to protect invoking litigants from unduly prejudicial attempts theatricality inherent to a live invocation, courts have ordered such evidence to be presented solely through instruction rather than live testimony. *See e.g. Evans v. City of Chicago,* 513 F.3d 735, 741 (7th Cir. 2008)(trial court properly barred plaintiff from eliciting Fifth Amendment invocation live at trial and ordered that such invocation be presented via instruction); *see also Thompson v. City of Chicago, et. al,* No. 07 CV 01130, Dkt. 378 at p. 26 (instructing the jury that "[t]he parties have stipulated that, prior to trial, each of the Defendants [ . . . ] were asked questions under oath. The parties have also stipulated that each of the Defendants [. . .] asserted his Fifth Amendment privilege not to testify in response to those questions. You may, but are not required to, infer from each of the Defendants[' . . .] assertion of his Fifth Amendment privilege that his testimony in response to those questions would have been adverse to him.").

Indeed, presenting evidence in this way is fully consistent with how Fifth Amendment invocations are ordinarily handled in the courts. It has been repeatedly held that it is improper for a party to call a witness whom it has reason to believe will invoke his Fifth Amendment privilege before the jury. *See U.S. v. Mabrook,* 301 F.3d 503, 507 (7th Cir. 2002) ("Mabrook wanted Paneras to take the stand for the purpose of asserting his privilege and that is impermissible."); *U.S. v. Foster,* 478 F.2d 1001, 1004 (7th Cir. 1973) (reversible error occurs where a party calls a witness to invoke the Fifth Amendment with the result that an inference unfavorable to the defendant is planted in the minds of the jurors); *People v. Human,* 331 Ill. App. 3d 809, 819-820 (1st Dist. 2002); *People v. Izquierdo,* 262 Ill. App. 3d 558 (4th Dist. 1994). Stated differently, it is proper to bar such a witness from testifying where the witness has indicated that, if called to testify, he will invoke the

Fifth Amendment. See id. (and cases cited therein).

The potential for abuse in allowing a live "free for all" cross-examination done with the knowledge that a witness will invoke across the board as to all matters relating to his work as a police officer is obvious. As noted by one judge, since "the supposed probative value is derived entirely from the questions put by counsel [. . .] this practice inevitably invites jurors to give evidentiary weight to questions rather than answers. [I]t leaves the examiner free, once having determined that the privilege will be invoked, to pose those questions which are most damaging to the adversary, safe from any contradiction by the witness no matter what the actual facts." *Brink's Inc. v. City of New York,* 717 F.2d 700, 715-16 (2d Cir. 1983) (Winter, J., dissenting); see also *Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1264 (9th Cir. 2000) (in minor sex abuse case, trial court properly barred questions about whether invoking defendant had underwent scientific penile testing to assess arousal by images of minors because plaintiff had no evidence this occurred and attempted to create evidence within questions).

At minimum, this Court should limit the number and scope of questions posed to Defendant Guevara to a pre-set limited series of questions pre-screened by this Court. Under Fed. R. Evid. 611(a), this Court has the discretion and duty "to exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). In this case, there is an extreme risk of Defendant Guevara's examination devolving into harassment and prejudice. The subject matter for which Plaintiff can even arguably seek to elicit a Fifth Amendment invocation is limited both by this Court's summary judgment ruling (which negated several material elements of the claims in this case) as well as by the requirement that any Fifth Amendment invocation be supported by the admission of separate independent evidence on every point for which an invocation is sought to be

elicited. Moreover, again, counsel routinely use Defendant Guevara's Fifth Amendment invocation to attempt to craft their own factual narrative through wide-ranging and argumentative questions untethered to supportive evidence on both the issues in this case as well as claims and allegations made against Defendant Guevara in other cases. This is not only inappropriate on its face but, with respect to the facts of other cases, also is well-beyond the scope of Fed. R. Evid. 403 and 404 and the discovery answers and disclosures in this case.

## CONCLUSION

For the reasons stated above, Plaintiff must be:

(a) Barred from introducing any evidence or argument regarding Defendant Guevara's invocation of his Fifth Amendment Rights relating to this case or any other; or, in the alternative;

(b) Barred from eliciting any live or recorded testimony from Defendant Guevara invoking his Fifth Amendment Rights in favor of an instruction to the jury on such topic; or, in the alternative;

(c) Ordering that Plaintiff's counsel may ask no more than 20 pre-screened questions of Defendant Guevara eliciting a Fifth Amendment invocation; or

(d) whatever other relief this Court deems fit.

## MIL 8.  Motion To Bar Any Attempt To Elicit a Fifth Amendment Invocation From Defendant Guevara Without First Establishing The Existence of Such Facts Through Independent Evidence

If Plaintiff is permitted to elicit a Fifth Amendment invocation from Guevara, Plaintiff must be barred from eliciting an invocation on any topics for which Plaintiff has not established independent proof thereof by other competent and admissible evidence at trial.

## ARGUMENT

It is currently anticipated that Defendant Guevara will invoke his Fifth Amendment Rights in response to any questions in relation to his involvement in this case and to his police career with the Chicago Police Department including any other criminal investigations or police work he was

involved in while employed by the Chicago Police department. If Plaintiff's counsel is permitted to elicit such invocation from Defendant Guevara live at trial, Plaintiff must be strictly limited to posing questions for which Plaintiffs has either already introduced independent admissible substantive evidence on the subject matter or will introduce such independent admissible substantive evidence at trial. This must include not only evidence regarding the underlying conduct in this case but also any other alleged acts of misconduct supposedly committed by Defendant Guevara in any other case or police investigation.

While it is true that a litigant's invocation of his Fifth Amendment Rights may carry a permissive adverse inference at trial, it is equally well-established that the invocation of one's Fifth Amendment Rights may never be used standing alone as evidence to establish any fact at trial; rather, before applying any adverse inference to a litigant's invocation, the opposing party must establish the existence of the facts forming the basis for such invocation by other independent evidence. *See LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995)("[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden…("[T]he defendant's silence be weighed in light of other evidence rather than leading directly and without more to the conclusion of guilt or liability…[A]lthough 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them', an analysis of that evidence is nonetheless required…"); *National Acceptance Co. of Am. v. Bathalter,* 705 F.2d 924 (7th Cir. 1983)("We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment or at trial."); *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 675 (5th Cir. 1999)(adverse inference alone cannot be used to establish existence of fact); *Avirgan v. Hull,* 932 F.2d 1572, 1580 (11th Cir. 1991)(same); *Wrice v. Burge,* 2020 WL 419419, *2 (N.D.Ill.

2020)(same); *Rivera v. Guevara,* 2018 WL 11468922, *1 (N.D.Ill. 2018)("Here permissive means that '[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden…Under *Baxter, LaSalle Bank,* and a host of district court cases in this circuit, defendants' motions for summary judgment cannot be denied solely because Guevara has exercised his Fifth Amendment right to remain silent any more than the question of liability for damages could be sent to the jury on that basis alone. Instead, Rivera must identify additional evidence that would permit the jury to impose liability."); *Kluppelberg v. Burge,* 2017 WL 3142757, *4 (N.D. Ill. 2017)("When a defendant has invoked his Fifth Amendment right against self-incrimination, as Burge has consistently done during this case, adverse factual inferences may be drawn from the choice to remain silent. At the same time, a plaintiff may not rest solely on the defendant's assertion of privilege to establish liability based on refusal to answer a complaint or to testify at a disciplinary hearing if there is no other evidence supporting liability."); *Ruiz-Cortez v. City of Chicago,* 2016 WL 6270768, *7 (N.D.Ill. 2016)("[S]ilence, and adverse inferences drawn from it, cannot be the sole basis for finding liability."); *Logan v. City of Chi.,* 891 F. Supp. 2d 897, 901 (N.D. Ill. 2012)(same); *Cincinnati Ins. Co. v. Greene,* 2012 WL 3202962 at *3 (N.D. Ind. 2012)(before an adverse inference may be drawn, "there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege."); *Barker v. International Union of Operating Engineers Local 150,* 2011 WL 6338800, *6 (N.D.Ill. 2011)("[A]n adverse inference based on silence pursuant to the assertion of the Fifth Amendment privilege is insufficient by itself…"); *McArdle v. Peoria School Dist. No. 150,* 833 F.Supp.2d 1020, 1030 (C.D.Ill. 2011)(same); *Thompson v. City of Chi.,* 2009 WL 674353, *3 (N.D.Ill. 2009); *Hawkins v. St. Clair Cty.,* 2009 WL 559373, *5 (S.D. Ill. 2009); *Cho v. Holland,* 2006 WL 2859453, *6 (N.D. Ill. 2006); *Evans v. City of Chicago,* 2006 WL 463041, *6 (N.D. Ill. 2006); *FTC v. Consumer Alliance, Inc.,* 2003 WL 22287364, at *3–4 (N.D. Ill. 2003).

In fact, the Seventh Circuit in *Seguban* held that doing otherwise would not only be improper but, indeed, unconstitutional. *Id.* at 391-92 (noting that using Fifth Amendment invocation as affirmative evidence "without regard to the other evidence" supporting the existence of the facts sought to be established "exceeds constitutional bounds.") *citing Baxter,* 425 U.S. at 318; *U.S. v. White,* 589 F.2d 1283 (5th Cir. 1979).

Accordingly, Plaintiff must be barred from attempting to elicit a Fifth Amendment invocation from Defendant Guevara on any topics on which Plaintiff has not previously submitted other independent admissible evidence to support a finding on the same topic. This includes not only on topics or contentions pertaining to the underlying issues relating to Plaintiff's investigation, arrest, and prosecution but also any attempts to establish that Defendant Guevara committed acts of misconduct in other cases merely by seeking to draw an adverse inference from a loaded question imbedded with facts not otherwise supported by competent and admissible evidence. Allowing Plaintiff to attempt to establish the existence of fact merely by imbedding them in loaded questions designed to draw a Fifth Amendment invocation would be highly improper and would violate decades of legal precedent. Indeed, given the already inflammatory nature of Fifth Amendment negative inference evidence, allowing this to occur would itself likely deprive Defendants of a fair trial in this matter.

**MIL 9. Motion To Bar Any Attempt to Elicit a Fifth Amendment Invocation From Defendant Guevara on Matters Already Adjudicated Against Plaintiff on Summary Judgment**

Plaintiff must be strictly barred from attempting to elicit any Fifth Amendment invocation by Defendant Guevara on matters that were adjudicated against Plaintiff on summary judgment including, but not limited to:

(1) Any questions suggesting or insinuating that Defendant Guevara engaged in conduct with any eyewitnesses designed to or in fact constituting suggestion or coercion casting doubt on the reliability of any identification; and

(2) Any questions suggesting or insinuating that identification by Luis Huertas of Plaintiff as the shooter of Luis Morales was false or fabricated.

First, as noted above, these above issues have already been determined in Defendants' favor in this case as a matter of law and fact and, thus, they are "law of the case" for the remainder of this case. *See* Def. Mot. Lim. Nos. 2, 3. It is axiomatic that a plaintiff cannot attempt to "backdoor" evidence and legal theories that have already been conclusively adjudicated by attempting to elicit a Fifth Amendment invocation from an opposing litigant.

Second, relatedly, because no other independent evidence can be introduced on these matters under well-established law, it would be improper to permit Plaintiff to attempt to establish such facts by eliciting a naked Fifth Amendment invocation. *See LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995)(Fifth Amendment invocation standing alone cannot be used to establish existence of a fact); *National Acceptance Co. of Am. v. Bathalter,* 705 F.2d 924 (7th Cir. 1983)(same).

**MIL 10. Motion To Bar Any Evidence, Argument or Inquiry Relating to Any Judicial Commentary on the Credibility of Defendant Guevara or Other Matters Relating to Other Cases Involving Defendant Guevara**

Plaintiff must be barred from introducing evidence or making any argument or inquiry of any witness (including, but not limited to, Defendant Guevara himself) regarding any prior judicial commentary relating in any way to Defendant Guevara's credibility or his alleged history of misconduct in other cases.

In connection with various post-conviction matters involving Defendant Guevara, certain Cook County judges have made various statements impugning Defendant Guevara's credibility and alleged "history of misconduct." *See e.g. People v. Martinez,* 2021 IL App (1st) 190490, ¶ 64 (1st Dist., 2021)("This court has recognized Detective Guevara's well-documented history of influencing and manipulating witnesses. The allegations against him span decades and share common threads.

21

Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system."); *People v. Robinson,* 2022 IL App (1st) 200483-U, ¶ 26, 2022 WL 195064, at *5 (1st Dist. 2022). These examples are not intended to be exhaustive but apply to any and all statements made about or regarding Defendant Guevara by any judge in any other proceeding and any and all inquiry regarding same of Defendant Guevara or any other witness at trial.

First, Plaintiff has not listed any judges as witnesses in this case to provide testimony or evidence on Defendant Guevara's alleged credibility or history of misconduct in other cases. Plaintiff did not list such witnesses under Fed. R. Civ. P. 26(a) or list such witnesses or other evidence in response to Defendant Guevara's Interrogatories asking for any witnesses or other evidence that Plaintiff intended to use to attempt to establish that Defendant Guevara had committed other bad acts under Fed. R. Evid. 404. Thus, this evidence is, thus, barred under Fed. R. Civ. P. 37(c)(1).

Second, the introduction of the musings of judges, none of whom have any first-hand knowledge of the underlying facts of the cases before them would clearly be hearsay not subject to any exception. *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1567 (7th Cir. 1987)("[C]ivil judgments are said not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay."); *Fairley v. Andrews,* 423 F. Supp. 2d 800, 811–12 (N.D. Ill. 2006)(barring reference to outcome of prior litigation as both hearsay and as unduly prejudicial); *Rivers v. Diaz,* 2008 WL 89838, *3 (M.D. Fla. 2008)(same).

Third, allowing evidence of a third-party's statements about the credibility or conduct of a party for which this third party has no personal knowledge of the underlying facts would be reversible error under Seventh Circuit precedent. *Schultz v. Thomas,* 832 F.2d 108 (7th Cir.1987). In *Schultz,* a case squarely on point, the plaintiff, who was acquitted of disorderly conduct, brought a civil rights claim for false arrest and excessive force against the arresting officers. *See Id.* at 109. At

trial, the plaintiff called the judge who presided over the criminal case to testify regarding his findings that the officers had lied and abused their authority. *Id.* The plaintiff was also permitted to admit a transcript of the judge's decision into evidence. *Id.* The Seventh Circuit reversed the jury's verdict in the plaintiff's favor, finding that the admission of the judge's testimony regarding the witness's credibility constituted an abuse of discretion. *Id.* at 108-11. In so holding, the court held:

> In determining whether the defendants violated [the plaintiff's] civil rights by falsely arresting him and then giving willfully false testimony in order to secure his conviction, the jury was required to observe and listen to many of the same witnesses giving the identical testimony as that which formed the basis for Judge Flynn's disorderly conduct decision. Indeed, the aforequoted excerpts from Judge Flynn's opinion so unavoidably overlapped the jury's role in assessing the credibility of the key witness as to unfairly prejudice the defendants by denying them the right to have a jury decide the facts which formed the claims against them.

> Moreover, Judge Flynn's findings and opinion regarding [the plaintiff's] arrest and subsequent prosecution are irrelevant to an adjudication of his civil rights claim. Judge Flynn was not a witness to the events in question and therefore could not properly comment on what transpired on November 14, 1984. Yet the district court admitted Judge Flynn's assessment that "the officers grabbed the [plaintiff] by the hair and hit his head on the car ... and that the officers acted to confront, to depreciate, ridicule and harass ... [the plaintiff]."

> The appellee maintains that Judge Flynn was, in fact, a witness to the defendants' false testimony given during the disorderly conduct trial and therefore could properly testify upon such matters. Again, however, Judge Flynn was not testifying about the existence of some objective fact as  to which he had personal knowledge; but rather, gave his opinion based upon his own assessment of the witnesses' credibility. Such opinion testimony, unless rendered by an expert upon matters of "scientific, technical, or other specialized knowledge," see FED.R.EVID. 702 & 703, is inadmissible.

> Under FED.R.EVID. 608, "the credibility of a witness may be attacked ... by evidence in the form of opinion or reputation ... for truthfulness or untruthfulness...." But Judge Flynn merely tried the plaintiff's disorderly conduct case. He was not a witness to nor did he have any personal knowledge of the underlying facts. Thus he had no basis for his opinion about the defendants' truthfulness other than his own credibility observations during the previous trial. No person, especially a judge, should usurp the jury's exclusive duty to determine credibility. "Unless that basis or source demonstrates that the opinion is rationally based on the perception of the witness and would be helpful to the jury in determining the fact of credibility, it should not become part of the proof in the case." Accordingly, admitting Judge Flynn's assessment of the witnesses' credibility was reversible error, and we need not reach whether admitting Judge Flynn's testimony here was in any event unfairly prejudicial within the meaning of FED.R.EVID. 403.

Because Judge Flynn's testimony was irrelevant and tended to usurp the jury's function in assessing the credibility of testifying witnesses we remand this case for a new trial.

*Id*. at 110-11. This type of evidence was similarly deemed inadmissible in *Holmes v. City of Chicago,* 2016 WL 6442117 (N.D.Ill. 2016) and *Ryan v. Koester,* 2013 WL 6659847 (S.D. Ill. 2013).

Accordingly, Plaintiff must be barred from introducing evidence or making any argument or inquiry of any witness (including, but not limited to, Defendant Guevara himself) regarding any prior judicial commentary relating in any way to Defendant Guevara's credibility or his alleged history of misconduct in other cases.

### MIL 11.  Motion to Bar Imputing Any Inference from Guevara's Assertion of the Fifth Amendment to Defendants Halvorsen and Mason

During Guevara's depositions, Rios's counsel asked Guevara several fact-specific questions accusing Defendants Mason and Halvorsen of the very misconduct alleged in this case, including questions such as:

- "Isn't it true that" Mason grabbed Rios by the hair and slammed him against a table;
- "Isn't it true that" Mason and Halvorsen "forced Rios to confess";
- "Isn't it true that" Mason and Halvorsen "fabricated police reports;" and
- "Isn't it true that Mason, Halvorsen and Guevara "acted in concert" or "conspired" with each other.

(Ex. A, Guevara Dep., at 21:22-22:5, 23:5-8, 49:21-50:6, 51:3-10, 55:9-17, 56:16-57:2, 57:9-13.)

As Rios's counsel knew in advance, Guevara invoked his Fifth amendment privilege in response to every substantive question concerning his work as a CPD police officer. The obvious purpose of this questioning was—and remains—to exploit Guevara's invocation of the Fifth Amendment to the detriment of Mason and Halvorsen by inviting the jury to draw an adverse inference against them based on Guevara's refusal to answer. That tactic should be barred. It is profoundly unfair, highly prejudicial, and does not advance the truth—particularly where neither

Mason nor Halvorsen has invoked the Fifth Amendment. Moreover, Halvorsen and Mason both denied the allegations of misconduct in their answers to the Second Amended Complaint,[4] Mason likewise denied the allegations in his deposition, and Halvorsen is deceased and cannot respond at all.

Whether an adverse inference may be drawn from a witness's invocation of the Fifth Amendment is a fact-specific inquiry, not governed by any bright-line rule. *Kontos v. Kontos*, 968 F. Supp. 400, 406 (S.D. Ind. 1997). The party seeking the inference bears the burden of showing that the circumstances justify imputing it to another party. *State Farm Fire & Cas. Co. v. Abrams*, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). The "overarching concern is fundamentally whether the adverse inference is trustworthy under all the circumstances and will advance the search for the truth." *Kontos*, 968 F. Supp. at 406 (quoting *Libutti v. United States*, 107 F.3d 110, 124 (2d. Cir. 1997)). Courts evaluate that question using the following "non-exclusive factors":

> (1) the nature of the relationship between the party and the invoking witness;
> (2) the degree of control the party exercises over the [invoking] witness;
> (3) the compatibility of their interests; and
> (4) the role of the [invoking] witness in the litigation.

*Banks v. Yokemick,* 144 F. Supp. 2d 272, 289 (S.D.N.Y. 2001) (citing *Libutti*, 107 F.3d at 123).

Those factors weigh decisively against any inference here.

First, there is no evidence of a meaningful relationship between Mason or Halvorsen and Guevara at the time of the relevant events in 1989 or later. In 1989, Guevara was a Gang Crimes Specialist and worked out of Area 5 at Belmont and Western. Halvorsen and Mason were Detectives and worked out of Grand and Central. Their duties, responsibilities and even their offices were different. As for later, although Halvorsen and Guevara later became partners for a period, their

---

[4] Halvorsen's Special Representative lacked knowledge or information sufficient to form a belief as to the truth of the allegations which has the effect of a denial. Fed. R. Civ. P. 8(b)(5). Mason answered written discovery requests, but by agreement no written discovery was issued to Halvorsen's Special Representative.

status as fellow officers decades ago does not suffice. *See Banks*, 144 F. Supp. 2d at 290 (refusing negative inference instruction based on ties of police patrol partnership). Mason and Guevara only worked together a handful of times over the entirety of their careers, and never socialized outside the office. (Ex. B, Mason Dep., at 32:19-21, 33:20-24, 36:1-14, and 142:3-13.)

Second, Mason and Halvorsen, who are separately represented, have no control over Guevara. *See Id.* Third, while all three Defendants would like to win at trial, their interests decidedly do not otherwise align. Mason and Halvorsen strongly prefer Guevara testify substantively and deny Rios's accusations rather than invoke the Fifth Amendment. Guevara's reasons for invoking the Fifth Amendment are his own, and fundamental fairness forbids allowing his decision to be wielded as a sword against co-Defendants who have not invoked the privilege.

Fourth**,** while Guevara is a codefendant of Mason and Halvorsen, that fact is insufficient to establish the required control where there is no indication that Guevara's invocation of the Fifth Amendment is intended to advance the interests of Mason and Halvorsen. Allowing an inference against them based on Guevara's silence would improperly substitute speculation for proof.

Even where a Fifth Amendment invocation is permitted, courts retain broad discretion under Rule 403 to prevent unfair prejudice and "lawyer abuse." *LiButti*, 107 F.3d at 122; *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986). Fact-specific questions that assume disputed facts and are designed to elicit an invocation improperly invite the jury to treat counsel's questions as evidence.

As Judge Winter observed in one case, such questioning invites jurors "to give evidentiary weight to questions rather than answers" and leaves counsel free to pose the most damaging accusations "safe from any contradiction by the witness no matter what the actual facts." *Brink's Inc. v. City of New York*, 717 F.2d 700, 716 (2d Cir. 1983) (Winter, J., dissenting). Courts have unsurprisingly and repeatedly condemned this practice. *See In re 650 Fifth Ave.*, 934 F.3d 147, 172

26

(2d Cir. 2019) (abuse of discretion to allow inflammatory presentation of Fifth Amendment invocations); *Emerson v. Wembley USA, Inc.*, 433 F. Supp. 2d 1200, 1213 (D. Colo. 2006) (denying the inference based on the broad scope of the witness's invocations because it would "unfairly favor Plaintiff's case" and would "not advance this court's pursuit of truth"); *Libutti,* 107 F.3d at 122 (citing *RAD Servs., Inc. v. Aetna Cas. and Sur. Co.,* 808 F.2d 271 at 277 (3rd Cir. 1986) (recognizing "the need to guard against 'sharp practices'" and prevent "fact-specific questions by which the examining attorney effectively testifies for the invoking witness")); *Wilson v. Transervice Lease Corp.*, 2019 WL 3891874, at * 5 (July 16, 2019 Conn. Super. Ct.) (requiring plaintiff's counsel provide the court and defense counsel with the questions it intended to ask the invoking party in advance so the court and defense could review the questions and approve them to "discharge its obligation to balance the probative value of the questions against the prejudicial nature of any questions").

Viewed against that backdrop, allowing Plaintiff to question Guevara about Mason's or Halvorsen's alleged misconduct—knowing the questions will go unanswered—would permit Plaintiff to bootstrap his case through insinuation rather than evidence. That is precisely the type of unfair prejudice Rule 403 is designed to prevent. The prejudice is especially acute as to Halvorsen, whose death preceded this lawsuit by two years and who has no ability to rebut any insinuation.

For all these reasons, Defendants respectfully request that the Court: (1) bar Plaintiff from arguing, suggesting, or implying that any adverse inference may be drawn against Mason or Halvorsen based on Guevara's invocation of the Fifth Amendment; (2) preclude Plaintiff from asking Guevara questions concerning the conduct, intent, or alleged misconduct of Mason or Halvorsen; and (3) limit any questioning of Guevara to his own conduct**,** if any, subject to the Court's Rule 403 authority. In the alternative, Defendants request that Plaintiff's counsel provide the court and defense counsel with the questions he intends to ask of Guevara in advance and in writing.

**MIL 12.  Motion to Bar Evidence or Argument Related to Halvorsen's Disavowed Fifth Amendment Invocation in Unrelated Litigation**

The Court should bar any evidence, testimony or argument concerning Defendant Halvorsen's prior and since disavowed invocation of the Fifth Amendment during a deposition in unrelated litigation on unrelated issues. Any reference to that invocation is irrelevant, highly prejudicial, and would only confuse the jury.

On April 20, 2018, more than four years before this action was filed, Defendant Halvorsen was deposed in *Montanez v. Guevara*, 17 CV 4560 and *Serrano v. Guevara*, 17 CV 2869. During that deposition, he invoked the Fifth Amendment in response to questions concerning homicide investigations he conducted as a Chicago Police Detective. He was never asked about Jaime Rios or the Luis Morales homicide investigation. (*See* Ex. C, 4/20/18 Halvorsen Dep. in *Serrano/Montanez.*) Halvorsen was re-deposed on February 6, 2019, in *Serrano/Montanez*. This time he answered every question asked of him, denied the allegations of misconduct, and expressly disavowed his prior assertion of the Fifth Amendment, explaining:

> I did not like the fact that I had to sit through Mrs. Bonjean's deposition where I had to sit there and not respond to her questions. I wanted to take the opportunity to accurately say what I had done that did not violate any laws, did not violate any department regulations. It was all -- all the police work I had done was lawful and honorable, and I wanted the chance to say my -- my story.

(*See* Ex. D, 2/6/19 Halvorsen Deposition in *Serrano/Montanez*, at 111:19-112:2.) Again, Halvorsen was not asked about Rios or the Morales homicide investigation. Halvorsen passed away on January 26, 2020.

Two and half years later, Plaintiff filed this case (Dkt. 1) and a special representative was appointed to defend this action on Halvorsen's behalf. (Dkt. 25.) Through his special representative, Halvorsen answered the Second Amended Complaint and denied all accusations of wrongdoing. Pursuant to the parties' stipulation, Halvorsen's Special Representative was never served with

written discovery, and he has never invoked the Fifth Amendment in connection with the Morales homicide investigation.

It is well-settled in the Seventh Circuit that when a civil defendant's prior assertion of the Fifth Amendment does not impair the plaintiff's access to discovery or evidence, the probative value of that assertion is extremely low. *Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001) (explaining that probative value turns on whether the invocation was used to "avoid discovery", thereby prejudicing the other party). Consistent with *Harris*, the Seventh Circuit has affirmed orders barring any reference to prior Fifth Amendment invocations where Defendants later disavowed the privilege, and the plaintiff suffered no prejudice. *Evans v. City of Chicago*, 513 F.3d 735, 745-46 (7th Cir. 2008). That is precisely the situation here. Halvorsen fully disavowed his prior invocation, answered all questions in the unrelated cases, and never invoked the Fifth Amendment with respect to the homicide investigation challenged in this action.

Even if Halvorsen's prior Fifth Amendment invocation had some marginal value—it does not —it would be substantially outweighed by the danger of undue prejudice. *See* Fed. R. Evid. 403. Permitting Rios to reference Halvorsen's invocation in an unrelated case would invite the jury to infer that because he once asserted the Fifth Amendment on other matters, he must be a "bad guy" who did something wrong in connection with the Morales investigation. That is precisely the type of improper character inference Rule 403 is designed to prevent.

The prejudice is particularly acute here because Halvorsen is deceased and cannot respond to or contextualize the prior invocation. Allowing Rios to capitalize on Halvorsen's death would severely undermine the fairness of the proceedings and distort the jury's evaluation of the evidence relevant to this case. Accordingly, Rios should be barred from presenting evidence, arguing, or otherwise referencing Halvorsen's disavowed invocation of the Fifth Amendment in unrelated litigation.

**MIL 13.  Motion to Bar Any Testimony by Criminal Defense Attorneys or Other Witnesses Speculating on the Outcome of Criminal Trial**

Plaintiff should be barred from introducing any testimony or evidence—whether from lay witnesses or experts—opining or speculating as to what the ultimate outcome of Plaintiff's criminal trial would have, could have, or might have been had certain allegedly suppressed information been disclosed or allegedly fabricated evidence not used.

During discovery, one of Plaintiff's former criminal defense attorneys, Karen Shields, provided an affidavit stating it was her "opinion" that if she and her now deceased co-counsel, Jack Carey, had known certain information, the jury would have acquitted Rios. The purportedly outcome-determinative information consists of the unsupported suppositions that:

> (1) Guevara coerced Huertas to identify Rios;
> (2) Guevara coerced Carrero into claiming that Rios made an inculpatory statement;
> (3) Garcia provided Guevara an alibi on the night of the murder; and
> (4) Guevara beat Garcia in an attempt to cause him to confess.

Although the affidavit—drafted by Plaintiff's counsel— asserted that any one of these allegations would have changed the outcome of Rios's trial, Shields later retreated substantially from that position. At her deposition, she testified only that, "assuming all of this together, Jaimie *could have had a better shot* at a fair trial."  (*See* Ex. E, Shields Dep. at 201:8-11; Dkt. No. 113 at ¶¶ 76-80) (emphasis added). And Plaintiff did not disclose Shields as an expert under either Fed. R. Civ. P. 26(a)(2)(B) or (C).

It is for the jury in this civil case—not a witness— to decide whether any allegedly suppressed or fabricated evidence was material, i.e., whether there was a reasonable likelihood that it would have changed the outcome of Rios's criminal trial when viewed in the full context of the prosecution. *See* Sev. Cir. Patt. Jur. Instr. No. 7.14.  Materiality is a *prima facie* element of Plaintiff's *Brady* and fabrication claims and is quintessentially a determination reserved for the jury, not for witnesses such as Plaintiff's former criminal defense attorneys to speculate on what jurors

"would have done." *See State of South Carolina v. Bailey*, 289 U.S. 412, 420 (1933) ("It was wholly beyond the province of the judge to speculate, as he seems to have done, concerning the probable outcome of any trial which might follow rendition to the demanding state."); *Bolden v. Pesavento*, 2024 WL 1243004, at *8, n.5 (N.D. Ill. 2024) (noting the "Court did not allow witnesses to speculate that the outcome of the trial would have been different").

Viewed against that backdrop, courts repeatedly reject attempts to introduce testimony—expert or otherwise—directing the jury how to decide core legal elements. *See Rivera v. Guevara*, 2018 WL 11468910, at *3 (N.D. Ill. 2018) ("Experts cannot express opinions on legal questions like probable cause to arrest someone or materiality under *Brady*."); *Jordan v. City of Chicago,* 2012 WL 88158, at *7 (N.D. Ill. 2012) (excluding expert testimony on reasonableness of force and probable cause). Allowing Shields—or any similar witness—to testify that the jury would have acquitted Rios had certain evidence been disclosed would impermissibly tell the jury how to resolve a *prima facie* element of Plaintiff's claims.

Independent of its legal impropriety, Shields's testimony fails for lack of personal knowledge under Fed. R. Evid. 602. Materiality must be evaluated "in light of the full context of the weight and credibility of all evidence actually presented at trial." *United States v. Morales*, 746 F.3d 310, 315-17 (7th Cir. 2014); *United States v. Agurs*, 427 U.S. 97, 112 (1976) (materiality "must be evaluated in the context of the entire record"); *Woolley v. Rednour*, 702 F.3d 411, 426 (7th Cir. 2012). But Shields admits she has "*no memory of the Rios trial.*" (Ex. E, Shields Dep., at 26:5-8, 50:11-21, 52:18-56:11, 59:22-62:8, 63:15-19, 66:11-67:9, 159:1-13.) She has not practiced law in over three decades and cannot recall any other case in her career that factually resembles Rios's prosecution. While she reviewed portions of the record that Plaintiff's counsel provided to her, she admits that her review was not thorough. (Ex., Shields Dep., at 138:1-8.)

A witness who cannot recall the trial itself, does not remember the evidence presented, and had not meaningfully reviewed the full record lacks any basis to opine on how alleged additional evidence would have affected the jury's deliberations. Such testimony is precisely the kind of conjecture Rule 602 forbids. And even if such testimony were otherwise admissible—it is not—any marginal probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. Allowing Shields—an attorney and former Illinois Circuit Court judge— to opine on what the jury "would have done"—risks cloaking speculation in the prestige and authority of legal expertise and improperly invading the jury's role as the sole arbiter of materiality and causation. trial.

**MIL 14.  Motion to Bar Any Testimony Regarding Rios's Friends and Family's Personal Feelings, Emotional Status, and/or Suffering after Plaintiff's Arrest**

The Court should bar Rios from introducing any testimony or evidence regarding the personal feelings, emotional status, or suffering of Rios's family members or friends following his arrest, prosecution, conviction and/or incarceration. Defendants anticipate Rios may attempt to testify about the sadness, loneliness, emotional hardship or similar reactions experienced *by third parties* because of Rios's criminal case and incarceration but this evidence is irrelevant to the damages Rios may permissibly recover in this action. *See* Fed. R. Evid. 401; *Gray v. City of Chicago*, 2023 WL 7092992, at *15 (N.D. Ill. May 8, 2023) (excluding testimony regarding the emotional distress of plaintiff's family members as irrelevant to plaintiff's damages.) And, even if marginally relevant, it should be excluded under Fed R. Evid. 403 because the emotional suffering of Rios's friends and family would invite juror sympathy for non-parties, confuse the issues, and risk inflaming the jury's passions against Defendants.

**MIL 15.  Motion to Bar Evidence or Argument Regarding Any Alleged Abuse or Illegal Conditions of Confinement Experienced or Witnessed by Plaintiff While Incarcerated**

Rios should be barred from introducing any evidence or argument regarding any abuse,

mistreatment or illegal conditions of confinement while incarcerated in the Cook County Jail or the Illinois Department of Corrections. When asked in discovery to identify the nature of the injuries he allegedly suffered because of Defendants' conduct, Rios did not disclose any physical abuse, sexual assault, specific threats or unconstitutional conditions of his confinement during incarceration. (*See* Ex. F, Answer to Guevara's Interrogatories, at 3.) Instead, Rios's interrogatory responses said only: "When I went to prison, I missed my son and my mother. I lived in daily fear of being attacked in prison. I was mentally challenged." *Id*.

Similarly, Rios testified at deposition that he was never in any fights, was never physically or sexually assaulted, had no serious medical issues, and had no problems with rival gangs. (*See* Ex. G, Rios's Dep. at 269-270, 278-9.) Although Rios made vague references to threats, he admitted they were nonspecific and described the individual involved as "loony." *Id*. When asked directly whether anyone had threatened him and/or his life, Rios said no, and although people at Pontiac did yell at him from within the "gates of their room[s]," there were no such threats at Menard or Dixon. *Id*. at 280. Because Plaintiff failed to disclose any claims of abuse or unconstitutional conditions of confinement in his interrogatory responses or at his deposition—and did not supplement those responses—he may not introduce such evidence or theories for the first time at trial. The Seventh Circuit has made clear that failure to disclose specific evidentiary theories in discovery bars reliance on those theories at trial. *Moran v. Calumet City*, 54 F.4th 483, 497–98 (7th Cir. 2022); *See Pursley v. City of Rockford*, 2024 WL 1050242, at *14 (N.D. Ill. 2024) ("It's not asking a lot of plaintiffs to explain their claims when they allege law enforcement officers framed them, resulting in decades of incarceration. Pursley failed to timely supplement his interrogatory answer, so in the Court's discretion, it limits his claim to the interrogatory answer.").

**MIL 16. Motion to Bar Any Argument or Questioning Regarding the Failure to Record Interrogations, Witness Statements or Identification Procedures**

Plaintiff should be barred from introducing evidence or making any argument that Defendants should have video or audio recorded any witness questioning (including Plaintiff's interrogation), lineups, or other identification procedures during the underlying investigation.

At the time of the events at issue, Illinois law imposed no requirement that custodial homicide interrogations be recorded. Illinois did not enact such a requirement until 2003, and it did not require recording of lineups or other identification procedures until 2015. *See* 725 ILCS 5/103-2.1 (eff. July 18, 2003) (suspects) and 725 ILCS 5/107A-2 (eff. Jan. 1, 2015) (lineups). Because no legal duty to record existed at the time of the Morales investigation (1989), Plaintiff may not argue or imply that Defendants acted improperly or unlawfully by failing to do so.

There is also no evidence in this case that recording of custodial interrogations or identification procedures was a standard, commonly accepted, or even permitted police practice within the CPD in 1989. Absent such evidence, any argument or inquiry on this topic would serve no purpose other than to insinuate misconduct ***without an evidentiary predicate***. Such tactics are improper because they invite the jury to base its verdict on considerations unsupported by the record. *United States v. Sebolt*, 460 F.3d 910, 916 (7th Cir. 2006); *see also Latta v. Chapala*, 2005 WL 2786999, at *16 (N.D. Ind. 2005).

Finally, any marginally probative evidence or argument regarding the absence of recordings would be substantially outweighed by unfair prejudice and should be excluded under Rule 403. Permitting Plaintiff to suggest that Defendants should have recorded interrogations or identification procedures would improperly encourage the jury to judge Defendants by modern standards and practices that did not exist at the time, risking significant unfair prejudice and jury confusion. Accordingly, Plaintiff should be barred from introducing evidence, argument, or inquiries regarding the failure to audio- or video-record interrogations, witness statements, or identification procedures.

**MIL 17.  Motion to Bar Any Evidence or Argument Concerning Sufficiency of Investigation**

Plaintiff should be barred from introducing any evidence, arguing or insinuating, including through lay or expert testimony, that the Morales investigation was insufficient, incomplete, inadequate, or otherwise unsatisfactory. Such evidence and argument are irrelevant to Plaintiff's claims and, even if marginally relevant, should be excluded under Federal Rule of Evidence 403.

To put it succinctly, there is no constitutional right to a "complete," "thorough," or "perfect" police investigation. The Seventh Circuit has repeatedly and unequivocally rejected such theories. *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (a litigant has no "constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction); *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel").  Illinois law likewise imposes no such duty.  *See* 745 ILCS 10/4-102

Nor does a suspect have a right to have police investigate any potential alibi or pursue every conceivable exculpatory lead. *Jackson v. City of Peoria*, 825 F.3d 328, 330 (7th Cir. 2016) (no obligation to have police investigate potential alibi before arrest as "police may arrest and leave to the judicial process the question of whether a defense applies."); *Lee v. Harris*, 127 F.4th 666, 673 (7th Cir. 2025) ("police are not required to thoroughly investigate a suspect's alibi before an arrest."). In addition, police officers are not required to create a report for every witness interaction and/or investigative task. *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 719 (N.D. Ill. 2016) (police officers under no obligation to submit reports regarding every witness interaction); *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988) (police not required to keep written records of all their investigatory activities). Therefore, any evidence or argument that Defendants failed to take such investigative steps should be barred.

35

**MIL 18. Motion to Bar Chicago Police Department Policy or Practice Violations by Defendant Officers**

Plaintiff should be barred from introducing evidence or argument that Defendants Officers deviated from Chicago Police Department internal policies, regulations, procedures, or practices. Plaintiff has not presented any evidence, through an expert or otherwise, that any Defendant Officer violated any specific CPD policy, rule or practice and so proffering such testimony now, must not be allowed. Plaintiff has also not identified any trial exhibits that set forth any supposed policy or protocols that Defendants supposedly deviated from in connection to the homicide investigation. But, even if he had, such evidence has no probative value and would only impermissibly prejudice Defendant Officers and confuse the jury. Fed. R. Evid. 402, 403.

It is well established that the violation of internal police policies, procedures, and practices is immaterial to whether a constitutional violation occurred under Section 1983 and is therefore inadmissible. *See Thompson v. City of Chicago,* 472 F.3d 444, 455 (7th Cir. 2006) (holding that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established.") (emphasis added); *see also Whren v. U.S.*, 517 U.S. 806, 815 (1996) (internal police department rules are an unreliable guide to measuring the reasonableness of police conduct); *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws, or, in this case, departmental regulations and police practices."); *Bruce v. City of Chicago*, 2011 WL 3471074, at *2-3 (N.D Ill. July 29, 2011) ("As to the constitutional violation, the Seventh Circuit categorically stated that 'the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."). Although evidence of this type can be admissible to show intent (*see United States v. Proano*, 912 F.3d 431, 438-39 (7th Cir. 2019), Plaintiff has not identified any CPD policy or rule

violation that bears on Defendants' intent. Nor has Plaintiff alleged any *Monell* policy or practice claim against Defendant City of Chicago.

Beyond being irrelevant, introduction of the violation of internal police protocols or regulations has been found to be unduly prejudicial under Fed. R. Evid. 403. *See Thompson,* 472 F.3d at 457-58. This evidence would be confusing and misleading because it would invite the jury to incorrectly equate the violation of an internal policy with a constitutional violation and obscure the actual liability issues in this case. Further, references to alleged violations of protocols and regulations during trial can only serve to inflame the jury against the police in general and against the Defendant Officers in particular. Thus, even if there was some arguable relevance to an alleged violation of an internal CPD policy, such evidence should be excluded because it would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. Accordingly, Plaintiff should not be permitted to interject the possibility of CPD policy or rule violations into these proceedings. *Ratliff v. City of Chicago,* 2012 WL 5845551, at *2 (N.D. Ill. Nov. 19, 2012); Fed. R. Evid. 401, 402 and 403.

**MIL 19.  Motion to Bar General Evidence or Argument Regarding Alleged Code of Silence**

Plaintiff must be barred from introducing evidence regarding an alleged police "code of silence" because it is irrelevant, and any minimal probative value it may have is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 401, 402, and 403. Here, the only relevant inquiry is whether Defendant Officers' conduct violated Plaintiff's rights.  General evidence of a police "code of silence" or similar slander has no bearing on the jury's assessment of Defendant Officers' conduct. It does not prove or disprove any of Rios's individual claims. Nor does it undermine any individuals' credibility in any specific instance. Instead, Rios can only use it to generally paint CPD and its officers in a negative light, a clearly impermissible purpose. *See Basile v. Ondrato*, 2003 WL 22953340, at *2 (N.D. Ill. Dec. 12, 2003) ("No evidence or

argument may be offered regarding a police 'code of silence' or widespread cover-ups of police misconduct, including the use of the phrase 'code of silence'"). *See also Carlson v. Banks*, 2007 WL 5711692, at \*14 (N.D. Ill. Feb. 2, 2007).

Finally, even if general evidence of a police "code of silence" had some marginal relevance, it would be substantially outweighed its unfair prejudicial effect. *See Jones v. City of Chicago,* 2017 WL 413613, at \*2-3 (N.D. Ill. Jan. 31, 2017) (granting similar motion *in limine* and barring use of terms like "code of silence", "blue wall" or similar terms). Indeed, given its lack of connection to the specific issues and persons in this case, "'[i]ts probative value is very, very slim, and its prejudicial [impact] is very, very high.'" *Shaw v. City of New York*, 1997 WL 187352, at \*8 (S.D.N.Y Apr. 15, 1997) (citation omitted).

**MIL 20. Motion To Bar Plaintiff's False Confession Expert Melissa Russano[5]**

**MIL 21.  Motion to Bar Prior Evidence or Argument Concerning Prior Claims of Misconduct, Citizen Complaints, and Lawsuits against Halvorsen, Mason and Non-Party CPD Witnesses[6]**

Plaintiff should be barred from introducing any evidence, testimony, or argument concerning citizen complaints, prior disciplinary matters, lawsuits, or other allegations of misconduct against Defendants Mason, Halvorsen, or against any non-party CPD Officer who testifies at trial. Such evidence is irrelevant, constitutes improper character and propensity evidence and, even if marginally relevant, must be excluded under Rule 403.

---

[5] Plaintiff moves affirmatively to admit the opinions of his coerced confession expert Melissa Russano, into evidence. For purposes of efficiency, Defendants will incorporate their arguments to exclude Rossano's opinions in their responses to Plaintiff's affirmative motion *in limine*, rather than cross-brief the motion. To be clear, Defendants seek affirmative relief to bar all of Russano's opinions for the reasons set forth in Defendants' Responses to Plaintiff's Motions *in Limine*.

[6] Plaintiff moves affirmatively to admit his Fed. R. Evid. 404(b) witnesses into evidence. For purposes of efficiency, Defendants will incorporate their arguments to exclude Plaintiff's designated 404(b) witnesses in Defendants' responses to Plaintiff's affirmative motion *in limine*, rather than cross-brief the motion. To be clear, Defendants seek affirmative relief to bar Plaintiff's 404(b) witnesses for the reasons set forth in Defendants' Responses to Plaintiff's Motions *in Limine*.

During discovery Defendants produced Mason and Halvorsen's CPD disciplinary histories and related citizens complaint (Complaint Register or "CR") files. Mason also answered an interrogatory identifying other civil litigation in which he had been a named defendant. However, evidence of prior complaints, allegations, discipline, or lawsuits against Defendants Halvorsen or Mason have no bearing on whether they engaged in the specific conduct alleged in this case. The Federal Rules of Evidence prohibit using evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *see also* Fed. R. Evid. 401, 402.

Introducing unrelated allegations would impermissibly invite the jury to conclude that because Defendants were previously accused of misconduct, they were more likely to have acted improperly here. That is precisely the inference Rule 404(b) forbids.

Notably, although Defendants Halvorsen and Mason have been the subject of citizen complaints and lawsuits, neither has any adverse civil judgments or sustained disciplinary findings. Unproven allegations are especially inappropriate for admission and carry no probative value. *See Lastre v. Leonard*, 1990 WL 37658, at *3 (N.D. Ill. Mar. 21, 1990) (excluding evidence of civil complaint because it was "not evidence but merely unproven allegations").

While Rule 404(b)(2) permits "other acts" evidence for limited purposes such as intent, opportunity, preparation, and plan, the Seventh Circuit has made it crystal clear that the proponent must establish a propensity-free chain of reasoning such "that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *United States v. Gomez*, 763 F.3d 845, 855-60 (7th Cir. 2014) (*en banc*).

Rios cannot meet that burden here. Any relevance of prior complaints, discipline, or lawsuits necessarily depends on the forbidden inference that Defendants had a propensity for misconduct and therefore acted similarly in this case. Courts in this District routinely exclude

such evidence on that basis. *See Harris v. City of Chicago*, 2017 WL 2462197, *3 (N.D. Ill. June 7, 2017) (excluding prior discipline because plaintiff "failed to establish a propensity-free chain of reasoning for why similar acts in the past would be relevant to a permitted purpose"); *see also Burton v. City of Zion*, 901 F.3d 772, 783 (7th Cir. 2018); *Young v. City of Harvey, et al.*, 2016 WL 4158952, at *2 (N.D. Ill. Aug. 4, 2016). Accordingly, there is no permissible basis under Rule 404(b) and *Gomez* for admitting such evidence.

Even assuming arguendo that prior allegations had some minimal probative value—they do not—that value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. These risks are particularly acute as to Defendant Halvorsen, who is deceased and cannot personally deny or explain unrelated allegations. Allowing Rios to discredit a deceased defendant with unrelated accusations would invite the jury to draw improper and irreversible inferences based on accusations alone, depriving Halvorsen of a fair trial. As courts have recognized, juries may place undue weight on character evidence and decide cases on an improper basis when presented with unrelated allegations of misconduct. *See Young*, 2016 WL 4158952, at *4 ("[T]he concern is that juries will rely too heavily on character to decide the disputed issue.")**.**

Allowing evidence of prior complaints, discipline, or lawsuits would also lead to time-consuming and confusing mini trials regarding the merits of each unrelated allegation. Defendants, particularly Halvorsen, through other witnesses, would be forced to rebut collateral matters wholly divorced from Rios's claims, diverting the jury's attention from the actual issues in dispute. Courts exclude such evidence for that very reason. *See Kaufman v. City of Chicago*, 2021 WL 1885985, at *6 (N.D. Ill. May 11, 2021) (barring other bad acts evidence because "putting witnesses on the stand to discuss unsubstantiated events from many years ago will lead to 'distracting and time consuming mini-trials regarding the merits of these other allegations.'")

(quoting *Patterson v. City of Chicago*, 2017 WL 770991, at *4 (N.D. Ill. Feb. 28, 2017)).

There is no doubt that the introduction of such evidence would delay these proceedings and would improperly shift the focus of the trial away from Plaintiff's claims. Therefore, this Court should grant this motion *in limine* and exclude from trial any evidence and/or argument regarding citizen complaints, prior disciplinary allegations, other lawsuits, or other allegations of misconduct against Defendants Halvorsen and Mason.

## MIL 22.  Motion to Bar References to Highly Publicized Cases of Police Misconduct

Rios should be barred from introducing irrelevant evidence and/or argument concerning other instances of alleged police misconduct by Chicago police officers or other police officers across the country which can only serve to inflame the jury against the police in general and against Defendant Officers. Fed. R. Evid. 401, 402, 403; *see e.g., Caldwell v. City of Chicago,* 2010 WL 380696, at *2 (N.D. Ill. Jan. 28, 2010) (barring evidence and  testimony regarding misconduct of other officers); *Saunders v. City of Chicago,* 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004) (barring evidence and testimony of allegations of other police misconduct); *Moore v. City of Chicago,* 2008 WL 4549137, at *5 (N.D. Ill. Apr. 15, 2008) (granting motion *in limine* to bar publicized incidents of police misconduct).

Accordingly, Plaintiff should be barred from making any reference to any cases or incidents of alleged police misconduct in the Chicago metropolitan area or nationally, including any recent highly publicized instances of such misconduct. *See* Fed. R. Evid. 401, 402, 403.

## MIL 23.  Motion to Bar Plaintiff from Arguing or Referring to "Constitutional Rights" as a Category of Damages

Plaintiff should be barred from introducing any evidence or argument that a violation of "constitutional rights" constitutes a separate category of damages. This prohibition should include any suggestion that a violation of "constitutional rights," or the "importance of

41

constitutional rights" can be valued in calculating a damages award or should increase any potential compensatory damages award.

The Supreme Court has held that "[d]amages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in § 1983 cases." *Memphis Cmty. Sch. Dist. v. Stachura*, 106 S.Ct. 2537, 2538 (1986). The reasoning for this is that damages for violations of "constitutional rights" would focus on the jury's subjective and abstract perception of the importance of constitutional rights, not on compensation for a provable injury. *Id*. at 2543. "Were such damages available, juries would be free to award arbitrary amounts without any evidentiary basis, or to use their unbounded discretion to punish unpopular defendants." *Id*. at 2544.

While *Stachura* focused on jury instructions, its fundamental holding applies here— jurors should not be instructed via argument or suggestion of counsel to value constitutional rights in assessing damages. Damages based on the abstract "value" or "importance" of constitutional rights are not a permissible element of compensatory damages in § 1983 cases and any argument or inference suggesting the jury place a value on constitutional rights in assessing damages is improper. *See* Seventh Cir. Fed. Jury Instruction 7.26, committee comment a (citing *Stachura* for damages recoverable under 42. U.S.C. § 1983). *See, also, e.g.*, *Pesek v. Donahu*e, 2006 WL 1049969, *11 (N.D. Ill. Feb. 9, 2006) ("Damages cannot be awarded for the mere fact of the constitutional violation, in absence of damage shown to have resulted from it"); *Kinslow v. Briscoe*, 130 F. Supp. 2d 965, 974 (N.D. Ill. 1999) ("[N]o damages may be awarded solely for the deprivation of constitutional rights.").

## MIL 24.  Motion to Bar Any "Golden Rule" Arguments

Plaintiff should be barred from imploring jurors to place or imagine themselves (or their friends, family or loved ones) in Plaintiff's position in considering any issues at any stage (jury

selection, opening statement, evidence, and closing argument). As the Seventh Circuit has

explained, "it is universally recognized [that such appeals are] improper because it encourages

the jury to depart from the neutrality and to decide the case on the basis of personal interest and

bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007)

(quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir.1989)); *Bruce v. City of Chicago*,

2011 WL 3471074, at *7 (N.D. Ill. July 29, 2011).

**MIL 25.  Motion to Admit Felony Convictions of Plaintiff's Witnesses Benjamin Carrero, Cristino Garcia and Lamont Burr[7]**

 Plaintiff's witnesses Benjamin Carrero, Cristino Garcia, and Lemont Burr have felony

convictions that Defendants seek to admit pursuant to Fed. R. Evid. ("Rule") 609. Rule 609 provides

that when a party wishes to attack a witness's character for truthfulness by evidence of a criminal

conviction for a crime punishable by imprisonment for more than a year, it "must be admitted,

subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant."

Fed. R. Evid. 609(a)(1)(A). However,

> "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[, e]vidence of the conviction is admissible only if (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."

Fed. R. Evid. 609(b)(1) and (2).[8]

The Seventh Circuit uses five factors to determine whether the probative value of a

conviction outweighs its prejudicial effect: "(1) the impeachment value of the prior crime; (2) the

---

[7] Plaintiff moves affirmatively to bar evidence of his convictions. For purposes of efficiency, Defendants will incorporate their arguments to admit Plaintiff's convictions in their responses to Plaintiff's affirmative motion *in limine*, rather than cross-brief the motion. To be clear, Defendants seek affirmative relief to admit Plaintiff's convictions for the reasons set forth in Defendants' Responses to Plaintiff's Motions i*n Limine*.

[8] Defendants gave Plaintiff notice of their intent to use convictions for Plaintiff's witnesses that were more than 10 years old by correspondence dated October 17, 2023.

point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery,* 390 F.3d 1013, 1015 (7th Cir. 2004) citing *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir. 1976). These factors serve as a guide to the exercise of the district court's discretion. *Id.*

**Benjamin Carrero**.  Carrero is expected to testify that he was coerced by Defendant Guevara to falsely testify during Plaintiff Rios' criminal proceedings that within minutes of the Morales murder, Rios gave him a black .38 caliber gun and told Carrero to hold it because he had shot someone and would be back for it. Plaintiff alleges Guevara concealed from prosecutors that he had coerced Carrero into providing this false testimony. (Dkt. 61, Count X.) Carrero claims that he lied under oath during both his grand jury and trial testimony because of Guevara's threats (Ex. H, Carrero Dep. at 76:1-78:10;105:12-106:16), but at trial Carrero did not testify that Guevara had coerced or threatened him. Ex. I, Carrero Criminal Trial Testimony.

Carrero was convicted of murder, armed robbery, and burglary in the Circuit Court of Cook County, Illinois on December 14, 1994, and sentenced to 30 years in the Illinois Department of Corrections (IDOC). Following his release in January 2008, he was convicted of felony possession of a controlled substance on January 11, 2011, and received a one-year sentence. (Ex. H at 21:20-22:25.) As to the first *Montgomery* factor, murder and drug possession are not probative of veracity, but armed robbery and burglary can be. *See United States v. Smith*, 181 F.Supp.2d 904, 908-09 (N.D. Ill. 2002) (discussing robbery and burglary convictions). As to the second factor, more than ten years have passed from Carrero's release for these convictions, but the specific facts of this case establish that the convictions probative value substantially outweighs their prejudicial effect. The murder, armed robbery, and burglary convictions occurred within four years of Carrero's trial testimony in Rios's underlying criminal case, and during his incarceration for those crimes Carrero was at two

IDOC facilities at which Rios was also incarcerated and they discussed Rios's case at least once. (Ex. H, at 25:7-30:11.) The 2011 drug conviction is indicative of recidivism given it occurred shortly after Carrero's release on his 1994 convictions.

As to the third factor, none of the crimes for which Carrero was convicted are similar to the instant case. On July 9, 1989, as the homicide investigation continued after Plaintiff's arrest, a search warrant was executed at Carrero's residence, a gun was recovered, and Carrero was charged with felony obstruction of justice, but that charge was later dismissed. As to the fourth and fifth factors, Carrero is a key witness for Rios, and his credibility at trial is critical. It is Carrero's word against Defendant Guevara's (who has asserted the Fifth Amendment) on the claim that Guevara concealed the coercion (Count X), and he is also the sole witness identified by Plaintiff who can testify to the search of his residence during the underlying investigation. Further, the jury will need to know why Carrero was incarcerated along with Rios at the IDOC.

On balance, the *Montgomery* factors favor admission of Carrero's 1994 and 2011 convictions. To the extent any prejudice may exist from the nature of the crimes for which Carrero was convicted, it can be cured by a limiting instruction or sanitizing it so that the jury hears the fact of the felony conviction, but not the nature of the crimes. *See Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 626-27 (7th Cir. 2009).

**Cristino "Tino" Garcia.** In his court-reported confession, Rios implicated "Tino" (Garcia) as his accomplice in the Luis Morales murder. Garcia was arrested on July 28, 1989; he was released without charging the following day when eyewitness Javier Torres did not identify him in a line-up. Garcia is expected to testify that while in police custody he provided an alibi and was physically abused by Defendant Guevara. Plaintiff alleges Guevara concealed both the alibi and the abuse, and that had this been known it would have materially affected the outcome of his criminal trial because he could have subpoenaed Garcia to testify on his behalf. (Dkt. 61, Counts XI and XII.) In an

45

affidavit in support of Rios' post-conviction proceedings, Garcia denied being in the area of the Morales murder on June 27, 1989, and averred that on that date he was at home with his girlfriend and mother, and that they had ordered pizza and rib tips from Father & Son's Pizza. (Ex. J, Garcia Aff. at ¶¶ 1-2.) Garcia also averred that he was not asked to testify at Plaintiff's criminal trial, but that if he had been asked, he would have pleaded the Fifth Amendment – not because he was guilty, but because he was afraid of Guevara. *Id.* at ¶ 13.

Garcia has six felony convictions: two cases for possession of a controlled substance on July 19, 2021, with concurrent sentences of 24 months' probation; a July 13, 2001 conviction for aggravated unlawful use of a weapon with a sentence of 3.5 years; a July 7, 1994 conviction for unlawful use of a weapon by a felon with a sentence of one year probation; an August 26, 1991 conviction for possession of a controlled substance with a sentence of 2 years; and a July 10, 1986 conviction for aggravated battery with a sentence of 3 years. All sentences of imprisonment were in the IDOC. At this time, Defendants do not seek to admit the 1986 aggravated battery conviction because Garcia was a juvenile, and although tried as an adult, he served his sentence in an IDOC juvenile facility. The probative value of Garcia's other convictions outweigh their prejudicial effect and Defendants seek their admission.

As to the first *Montgomery* factor, the crime of possession of a controlled substance is not itself probative of untruthfulness but given the facts of the instant case and Garcia's affidavit they are probative of his credibility. Regarding Garcia's possession convictions, two are within Rule 609's 10-year limit (2021) and one is beyond that limit (1991). As to the second factor, the 2021 convictions are more recent in time, and the 1991 conviction is within a year of Plaintiff Rios' November 1990 trial. Garcia admits that in addition to drinking beer, he was using marijuana daily and had a bad cocaine habit back in June and July of 1989. (Ex. K, Garcia Dep at 87:7-13; 97:1-98:7.) He also admits that his 2021 possession convictions were for heroin. (*Id.* at 24:7-25:10.)

Given the detail of Garcia's alibi and testimony concerning his activities over 30 years ago on June 27, 1989 (who he was with, what he was eating, and where he ordered it from), his possession convictions are probative of his credibility, specifically his ability to remember and recall such details. *See United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996) (showing witness has impaired capacity to recall or relate event about which he is testifying acceptable method to attack witness's credibility); *United States v. Robinson*, 956 F.2d 1388, 1397 (7th Cir.), *cert. denied*, 506 U.S. 1020 (1992) (witness' drug use may be admitted as it relates to his possible inability to recollect and relate).

Garcia's 1991 possession conviction is also probative of his purported ability to attend and testify at Plaintiff's criminal trial, as well as the nature of and reason for his testimony as averred in his affidavit. The certified copy of the 1991 possession conviction indicates that a bond forfeiture warrant had been issued for Garcia at the time of Plaintiff's November 1990 criminal trial. (Ex. L, Cert. Copy of Conviction, Case No. 90 CR 2224601.) Given his own then-pending legal problems, as well as the potential to still be charged for the Morales murder, had Garcia even been accessible to be subpoenaed and available to testify, he would likely have asserted his Fifth Amendment privilege, but not out of fear of Defendant Guevara as he averred in his affidavit. Such evidence directly bears on Garcia's credibility.

The third factor is not an issue because Garcia was never charged in the Morales homicide. As to the last two factors, Garcia is a key witness for Plaintiff given his expected testimony, and therefore his credibility is vital. Garcia is the sole witness identified by Plaintiff to testify to the events during his time in police custody following his July 28, 1989 arrest, and it is his word against Defendant Guevara (who has asserted the Fifth Amendment) on the concealment of the alibi and abuse claims in Counts XI and XII. Thus, three of the five factors favor admission of Garcia's three possession of a controlled substance convictions.

As for Garcia's 2001 and 1994 unlawful use of a weapons convictions, the first factor does not favor admission because the crimes are not probative of untruthfulness. While the 1994 conviction is closer in time to Plaintiff's criminal trial, the 2001 conviction is further removed, and both convictions are beyond Rule 609's 10-year limitation. Thus, the second factor does not favor admission. The crimes are not similar to the events of the Morales murder for which Garcia was never charged, so the third fact is inapplicable. Given Garcia's key role in the case and the importance of his credibility, the last two factors favor admissibility. The factors being evenly split, Defendants also seek to admit the unlawful use of weapons convictions. To limit any prejudice, Defendants do not intend to address the details of the crimes, and will limit themselves to the crime charged, the date, and the disposition. *See Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992).

**Lamont Burr.** Burr is expected to testify that he was present for a shooting incident which occurred on July 2, 1989 during which unknown persons driving in a car fired shots at him, Plaintiff Rios, and others, and that he spoke to police the next day about this shooting. (Ex. M, Burr Dep. at 63:2-66:18; 88:19-96:24.) Plaintiff claims he told the Defendants about this shooting when questioned on July 7, 1989 (Ex. G, Rios Dep. at 172:12-175:12), and that they then used it to fabricate a motive for shooting Morales even though it had occurred after the June 27, 1989 Morales homicide. (Ex. N, Rios Ans. to Mason Irogs, No. 11.) Despite not discussing this incident with anyone for over 30 years, Burr claims he remembers the July 2, 1989 shooting because it occurred on the same date as a basketball tournament he participated in at Wicker Park in which he won a championship. Ex. M, at 39:11-24. Plaintiff intends to offer Burr's testimony in support of his coerced confession claim.

Burr has eight felony convictions, the latest within Rule 609's 10 year time limit and the remainder beyond it: January 18, 2017 for armed habitual criminal with a 7 year sentence; September 4, 2007 for narcotics possession with a 6 year sentence; September 22, 2005 for

possession of a controlled substance with a 3 year sentence; June 28, 2001 for manufacture and delivery of cocaine with a 6 year sentence; December 27, 1995 for narcotics possession with a 5 year sentence; January 9, 1995 for unlawful use of a weapon by a felon with a 4 year sentence which included a violation of probation for his May 17, 1994 conviction; May 17, 1994 for possession of a controlled substance under the alias Kevin Choice with a sentence of probation; and October 19, 1990 for robbery with a 4 year sentence under the alias Kevin Choice. All sentences were in IDOC.

As to the first factor, the crimes for which Burr has been convicted are not probative of his veracity. Only his 2017 conviction for armed habitual criminal is within the last ten years. The 1990 (robbery), 1994 (possession of a controlled substance), and two 1995 (unlawful use of a weapon by a felon and narcotics possession) convictions are closer in time to Plaintiff's trial. While the majority of Burr's convictions are old, they nonetheless evidence a long and significant criminal history and recidivism. Thus, the second factor could go either way. Burr was not arrested during the Morales homicide investigation, and there is no evidence that he was involved, so the third factor is inapplicable.

The last two factors favor admissibility because Burr's testimony is significant to Plaintiff's proof of his coerced confession claim, and Burr's credibility is key. Burr is the only witness (other than Plaintiff) who can testify to and corroborate the July 2, 1989 shooting incident. During his 2023 deposition, Burr testified that he had stopped drinking and using drugs -- 18 months since he took a drink and 14 months since he used marijuana. (Ex. M, at 31:24-33:5.) Despite his new-found ability to recall the July 2, 1989 date of the shooting incident after more than 30 years, Burr was defensive when asked about the status of his memory. (Ex. M at 158:8-162:7.) Thus, like Garcia, Burr's drug possession convictions should be admitted because they are probative of his ability to recall and recollect a specific event that bears on liability. *Lindemann*, 85 F.3d at 1243; *Robinson,* 956 F.2d at 1397.

Further, Burr was evasive and reluctant to answer any questions about his criminal history. (Ex. M at 140:1-149:2.) He testified he had not been convicted of a crime a crime for over 16 years, *id.* at 140:15-22, (demonstratively false given the 2017 armed habitual criminal conviction), and pleaded the Fifth Amendment when asked if he ever told the police his name was Kevin Choice (see 1990 and 1994 convictions). *Id.* at 149:17-150:7. Given Burr's deposition testimony, his convictions should be admitted to impeach his credibility because their probative value outweighs their prejudicial effect. Although numerous, "multiple convictions may communicate something different to the jury than would evidence of only one." *See Hill v. City of Chicago*, 2011 WL 263 2637214 at *2 (N.D. Ill. July 6, 2011). To limit any perceived prejudice, Defendants will not address the details of Burr's crimes, and will limit themselves to the crime charged, the date, and the disposition. *See Gora*, 971 F.2d at 1330.

## MIL 26.  Motion to Exclude the City of Chicago on the Verdict Form, Jury Instructions and Case Caption

The City of Chicago ("City") is named as a defendant in this matter solely on a claim for indemnification (Dkt. 61, Sec. Am. Compl., Count XVI), and its statutory obligation to indemnify is undisputed. Thus, the City should be excluded from the verdict form, jury instructions, and case caption. The City is not a proper defendant simply because it indemnifies it employees. *See Jones v. Lake Cnty. Sheriff's Off.*, 154 F.4th 538, 544 n. 3 (7th Cir. 2025) citing *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 637 (7th Cir. 2009) (possibility of judgment against employee does not require joining collateral funding sources as defendants). *See also, Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 639-41 (7th Cir. 2011) (because town conceded scope of employment its liability should not have been submitted to jury). The only purpose for Plaintiff to include the City on the verdict form, jury instructions, and case caption would be to suggest indemnification, which Plaintiff has already agreed not to mention or argue to the jury.

## CERTIFICATE OF SERVICE

I certify that on December 22, 2025, I electronically filed the foregoing **Defendants' Motion in *Limine*,** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

***Attorneys for Plaintiff:***
Stephen L. Richards
Joshua Richards
53 West Jackson Suite 756
Chicago, IL 60604
Tel:(773)817-6927
sricha@5461@aol.com
jsrichardscriminallaw@outlook.com

**Attorneys for City of Chicago**
Eileen E. Rosen
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Jacob H. Karaca
Martin W. McManaman
Rock Fusco & Connelly, LLC
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
(312)494-1000
ersoen@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com
arahe@rfclaw.com
jkaraca@rfclaw.com
mmcmanaman@rfclaw.com

**Attorneys for Reynaldo Guevara**
Timothy Scahill
Steven B. Borkan
Whitney Hutchinson
Emily Schnidt
Grahm Miller
Christiane Murray
Molly Boekeloo
Amanda Guertler
Borkan & Scahill, Ltd.
20 S. Clark Street, Suite 17
Chicago, IL 60603
(312)580-1030
tscahill@borkanscahill.com
sborkan@borkanscahill.com
whutchinson@borkanscahill.com
eschnidt@borkanscahill.com
gmiller@borkanscahill.com
cmurray@borkanscahill.com
mboekeloo@borkanscahill.com
aguertler@borkanscahill.com

/s/Caroline P. Golden
CAROLINE P. GOLDEN, Atty No. 6270259
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant Michael Mason
and JoAnn Halvorsen, special representative for Ernest
Halvorsen, deceased*