*Rios v. Guevara, et.al*
22 CV 3973

# EXHIBIT C



**Planet Depos®**
We Make It *Happen*™

# Transcript of Ernest Halvorsen

**Date:** April 20, 2018
**Case:** Montanez -v- Guevara, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

**Page 1**

```
1        IN THE UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF ILLINOIS
3
4    JOSE MONTANEZ,            )
5           Plaintiff,        )
6      -vs-                   ) No. 17 CV 4560
7    REYNALDO GUEVARA, et al., )
8           Defendants.       )
9    --------------------------
10   ARMANDO SERRANO,          )
11          Plaintiff,        )
12      -vs-                  ) No. 17 CV 2869
13   REYNALDO GUEVARA, et al., )
14          Defendants.       )
15
16        Deposition of ERNEST HALVORSEN
17           Chicago, Illinois
18         Friday, April 20, 2018
19              10:14 A.M.
20
21
22   Job No:  182444
23   Pages:  1 - 420
24   Reported By:  Aneesha L. Williams, CSR
```

**Page 2**

```
1        Deposition of ERNEST HALVORSEN, held at
2    the offices of:
3
4           LOEVY & LOEVY
5           311 North Aberdeen Street,
6           3rd Floor
7           Chicago, Illinois  60607
8           (312) 243-5900
9
10
11       Pursuant to notice before Aneesha L.
12   Williams, Certified Shorthand Reporter and
13   Notary Public, to and for the State of
14   Illinois.
15
16
17
18
19
20
21
22
23
24
```

**Page 3**

```
1    APPEARANCES:
2
3    ON BEHALF OF THE PLAINTIFF, JOSE MONTANEZ:
4          MS. JENNIFER BONJEAN
5          BONJEAN LAW GROUP, PLLC
6          1000 Dean Street, Suite 422
7          Brooklyn, New York 11238
8          (718) 875-1850
9
10   ON BEHALF OF THE PLAINTIFF, ARMANDO SERRANO:
11         MS. ELIZABETH MAZUR
12         LOEVY & LOEVY LLC
13         311 North Aberdeen Street, 3rd Floor
14         Chicago, Illinois  60607
15         (312) 243-5900
16
17   ON BEHALF OF THE DEFENDANT, REYNALDO GUEVARA:
18         MR. JEFFREY N. GIVEN
19         THE SOTOS LAW FIRM, P.C.
20         550 East Devon Street, Suite 150
21         Itasca, Illinois 60143
22         (630) 735-3300
23
24
```

**Page 4**

```
1    APPEARANCES:
2
3    ON BEHALF OF THE DEFENDANT, ANDT:
4          MS. TAMMY WENDT
5          HERBERT LAW FIRM
6          206 South Jefferson Street,
7          Suite 100
8          Chicago, Illinois  60661
9          (312) 655-7660
10
11   ON BEHALF OF THE DEFENDANT, MATTHEW COGHLAN:
12         MS. KRISTINA KATZ CERCONE
13         JONES DAY
14         77 West Wacker Drive
15         Chicago, Illinois  60601
16         (312) 782-3939
17
18   ON BEHALF OF THE DEFENDANT, COOK COUNTY and
19   JOHN DILLON:
20         MR. MICHAEL P. GORMAN
21         ASSISTANT STATE'S ATTORNEY
22         500 Richard J. Daley Center
23         Chicago, Illinois  60602
24         (312) 603-4366
```

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

---

**5**

```
1  APPEARANCES:
2
3  ON BEHALF OF THE DEFENDANT, CITY OF CHICAGO:
4        MS. CATHERINE M. BARBER
5        ROCK FUSCO & CONNELLY, LLC
6        321 North Clark Street, Suite 2200
7        Chicago, Illinois  60654
8        (312) 494-1000
9
10 ALSO PRESENT:  Rick Hasberg, Videographer
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

**7**

1    THE VIDEOGRAPHER:  This is the video
2  deposition of Ernest Halvorsen taken by
3  Loevy & Loevy in the matter of Montanez v.
4  Guevara, et al., case number 17 CV 4560; and
5  Serrano vs. Guevara, et al., case number
6  17 CV 2869, held at Loevy & Loevy, 311 North
7  Aberdeen Street, Chicago, Illinois.
8        Today is April 20th, 2018.  The
9  time is 10:14.  The court reporter is Aneesha
10 Williams, Planet Depos, and the videographer
11 is Rick Hasberg.
12        The counsel will now introduce
13 themselves, and the court reporter is free
14 to administer the oath.
15    MS. BONJEAN:  Good morning.  My name is
16 Jennifer Bonjean.  That's B-O-N-J-E-A-N.  I
17 represent Armando Serrano.  I will be taking
18 this deposition today along with Loevy &
19 Loevy.  My law firm is the Bonjean Law Group.
20    MS. MAZUR:  My name is Elizabeth Mazur,
21 and I'm here for Loevy & Loevy representing
22 Jose -- plaintiff, Jose Montanez.
23    MR. GORMAN:  Assistant State's Attorney
24 Michael Gorman on behalf of John Dillon and

---

**6**

1              I N D E X
2  WITNESSERNEST HALVORSEN              PAGE
3  EXAMINATION
4  BY MS. BONJEAN ........................... 8
5  BY MS. MAZUR ........................... 282
6  BY MS. BONJEAN ......................... 330
7        E X H I B I T S
8  DEPOSITION EXHIBIT        MARKED FOR ID
9  Guevara No. 1
10 Log of Criminal History Records .......... 56
11 Guevara No. 2
12 Log of Criminal History Records .......... 58
13 Guevara No. 3
14 Supplemental Report .................... 164
15 Halvorsen No. 1
16 Transcript of 07/01/93 ................. 195
17 Halvorsen No. 2
18 Transcript of Record Appeal ............. 206
19 Guevara No. 7
20 Affidavit of Francisco Vicente .......... 246
21 Halvorsen No. 3
22 Supplementary Report .................... 337
23 Halvorsen No. 4
24 Area 5 Supplemental Report .............. 370

**8**

1  Cook County.
2    MS. CERCONE:  Kristina Cercone on behalf
3  of Matthew Coghlan.
4    MS. BARBER:  Catherine Barber for
5  Defendant, City of Chicago.
6    MR. GIVEN:  Jeff Given on behalf of
7  the individual defendant officers and
8  Mr. Halvorsen at the dep today.
9    MS. WENDT:  Tammy Wendt for the ANDT
10 from the Herbert Law Firm on behalf of
11 Mr. Halvorsen.
12    (Witness sworn.)
13        ERNEST HALVORSEN,
14 called as a witness herein, having been first
15 duly sworn, was examined and testified as
16 follows:
17        EXAMINATION
18 BY MS. BONJEAN:
19    Q.  Good morning, Mr. Halvorsen.  My
20 name is Jennifer Bonjean, and I represent the
21 Plaintiff, Armando Serrano, in this matter,
22 and I'm going to begin by questioning you
23 here today.
24    Do you understand that?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

9

1    A.  Yes.
2    Q.  Okay.  Sir, can you please state
3  your full name for the record?
4    A.  Ernest Halvorsen.
5    Q.  And, sir, are you a Chicago police
6  officer?
7    A.  I was.
8    Q.  And when did you become a Chicago
9  police officer?
10    A.  23 October 1972.
11    Q.  And when did you retire from the
12  Chicago Police Department?
13    A.  16 April 2010.
14    Q.  And, sir, how long were you a
15  Chicago police officer, if you could do the
16  math for me?
17    A.  A little less than 38 years.
18    Q.  And at what rank did you retire
19  from the Chicago Police Department?
20    MR. GIVEN:  Objection; form.  You can
21  answer.
22    THE WITNESS:  Detective.
23  BY MS. BONJEAN:
24    Q.  And, sir, did you at some point in

10

1  your career investigate the murder of Rodrigo
2  Vargas?
3    A.  Yes.
4    Q.  Okay.
5    MR. GIVEN:  Go ahead.
6    MS. BONJEAN:  You want to take a second?
7    MR. GIVEN:  Sure.
8    MS. BONJEAN:  Okay.
9    MR. GIVEN:  This will literally take
10  about 30 seconds.
11    MS. BONJEAN:  Okay.
12    MS. CERCONE:  Can we agree that one
13  objection is joined by all?  That one
14  objection is joined by all.
15    MR. GIVEN:  It's okay with me.
16    MS. BONJEAN:  I'm okay with it.
17    MS. MAZUR:  That's fine.
18    MR. GIVEN:  Can you ask him that
19  question again, please?
20    MS. BONJEAN:  Sure.
21  BY MS. BONJEAN:
22    Q.  Mr. Halvorsen, at some point in
23  your career, did you investigate the murder
24  of Rodrigo Vargas?

11

1    A.  The Fifth Amendment protects the
2  innocent, as well as the guilty.  On advice
3  of counsel, I choose to exercise my
4  constitutional right to remain silent.
5    Q.  Okay.  Tell me everything you did
6  to investigate the Vargas murder.
7    A.  Oh, my God.  I forgot it already.
8      On advice of counsel, I assert my
9  Fifth Amendment.
10    Q.  Tell me every person that you
11  interviewed during the course of your
12  investigation of the Vargas murder.
13    A.  On advice of counsel, I assert my
14  Fifth Amendment.
15    Q.  Identify every document that was
16  contained in the Vargas investigative file
17  when you last saw it.
18    A.  On advice of counsel, I assert my
19  Fifth Amendment.
20    Q.  Identify all reports that you
21  authored or affixed your signature to that
22  were produced in the investigation of the
23  Vargas murder.
24    A.  On the advice of counsel, I assert

12

1  my Fifth Amendment.
2    Q.  Tell me all steps you took to
3  determine that Mr. Serrano, Mr. Montanez, and
4  Mr. Pacheco were guilty of the murder of
5  Rodrigo Vargas.
6    A.  On advice of counsel, I assert my
7  Fifth Amendment.
8    Q.  Your misconduct in the Vargas
9  investigations violated Mr. Montanez,
10  Mr. Serrano, and Mr. Pacheco's constitutional
11  rights to due process; isn't that true?
12    MR. GIVEN:  Objection; form.  You can
13  answer.
14    THE WITNESS:  On advice of counsel, I
15  assert my Fifth Amendment.
16  BY MS. BONJEAN:
17    Q.  In fact, you violated Mr. Montanez,
18  Mr. Serrano, and Mr. Pacheco's constitutional
19  rights to due process as part of a conspiracy
20  with your partner, Detective Guevara, your
21  supervisor, Sergeant Mingy, and Assistant
22  State's Attorneys Coghlan and Dillon.
23    MS. CERCONE:  Object to form.
24    MR. GIVEN:  Objection; form.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

4 (13 to 16)

13

1    THE WITNESS:  On advice of counsel, I
2 assert my Fifth Amendment.
3 BY MS. BONJEAN:
4    Q.  Your misconduct in the Vargas
5 investigation violated Montanez, Serrano, and
6 Pacheco's constitutional rights protected by
7 the Fourth Amendment; isn't that correct?
8    MR. GIVEN:  Objection; form.
9    THE WITNESS:  On advice of counsel, I
10 assert the Fifth Amendment.
11 BY MS. BONJEAN:
12    Q.  You violated Mr. Montanez, Serrano
13 and Pacheco's constitutional rights protected
14 by the Fourth Amendment as part of a
15 conspiracy with Guevara, Mingy, Coghlan, and
16 Dillon.
17    MS. CERCONE:  Objection; form.
18    MR. GIVEN:  Objection; form.
19    THE WITNESS:  On advice of counsel, I
20 assert the Fifth Amendment.
21 BY MS. BONJEAN:
22    Q.  Isn't it true, sir, that you
23 conspired with your partner, Detective
24 Guevara, Sergeant Mingy, Assistant State's

14

1 Attorneys Coghlan and Dillon reaching an
2 agreement to frame Mr. Montanez, Mr. Serrano,
3 and Mr. Pacheco for the murder of Rodrigo
4 Vargas?
5    MS. CERCONE:  Object to form.
6    THE WITNESS:  On advice of counsel, I
7 assert the Fifth Amendment.
8 BY MS. BONJEAN:
9    Q.  In fact, sir, isn't it true that
10 you conspired with Mr. Guevara, Sergeant
11 Mingy, Coghlan and Dillon to frame Montanez,
12 Serrano, and Pacheco before any of those
13 offi- -- strike that.
14    Isn't true that you conspired with
15 Detective Guevara, Sergeant Mingy, Assistant
16 State's Attorneys Coghlan and Dillon to
17 frame Mr. Montanez, Serrano, and Pacheco
18 before Montanez, Serrano, and Pacheco were
19 arrested or charged with the murder of
20 Rodrigo Vargas?
21    MS. CERCONE:  Objection --
22    MR. GIVEN:  Objection; form.
23    THE WITNESS:  On advice of counsel, I
24 assert the Fifth Amendment.

15

1 BY MS. BONJEAN:
2    Q.  In fact, you, sir, knew that your
3 fellow officers, specifically Detective
4 Guevara and Sergeant Mingy, were committing
5 acts of misconduct that violated the
6 constitutional rights of Montanez, Serrano,
7 and Pacheco, and you did nothing to stop that
8 misconduct?
9    MR. GIVEN:  Objection; form.
10    THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment.
12 BY MS. BONJEAN:
13    Q.  Indeed, sir, isn't it true that you
14 caused Mr. Montanez, Mr. Serrano, and
15 Mr. Pacheco to be prosecuted for murder and
16 ensured that the prosecution was seen through
17 to their wrongful convictions --
18    MR. GIVEN:  Objection.
19 BY MS. BONJEAN:
20    Q.  -- despite knowing that there was
21 no probable cause to arrest them?
22    MR. GIVEN:  Objection; form, calls for a
23 legal conclusion.
24    THE WITNESS:  On the advice of counsel,

16

1 I assert the Fifth Amendment.
2 BY MS. BONJEAN:
3    Q.  In fact, sir, you had no probable
4 cause to believe that Mr. Montanez,
5 Mr. Serrano, or Mr. Pacheco were involved in
6 any way in the Rodrigo Vargas's murder?
7    **A.  On advice of counsel, I assert the**
8 **Fifth Amendment.**
9    Q.  And isn't it true that you
10 intentionally framed Jose Montanez for the
11 murder that he did not commit, that of
12 Rodrigo Vargas?
13    **A.  On advice of counsel, I assert the**
14 **Fifth Amendment.**
15    Q.  And isn't it true that you
16 intentionally framed Armando Serrano for the
17 murder of Rodrigo Vargas, a murder that he
18 did not commit?
19    **A.  On advice of counsel, I assert the**
20 **Fifth Amendment.**
21    Q.  And isn't it true that you
22 intentionally framed Jordan Pacheco for the
23 murder of Rodrigo Vargas, a murder he did not
24 commit?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

17

1    MR. GIVEN: Objection; form and
2 foundation.
3    THE WITNESS: On advice of counsel, I
4 assert the Fifth Amendment.
5 BY MS. BONJEAN:
6    Q. And as a result of your misconduct
7 and the misconduct of your fellow Chicago
8 police officers, Jose Montanez and Armando
9 Serrano were convicted of Rodrigo Vargas's
10 murder?
11    MR. GIVEN: Objection; form, legal
12 conclusion, calls for speculation.
13    You can answer.
14    THE WITNESS: On advice of counsel, I
15 assert the Fifth Amendment.
16 BY MS. BONJEAN:
17    Q. And from February 1993 till
18 July 1993, isn't it true that you conspired
19 with other officers to falsely charge
20 Mr. Montanez, Serrano, and Pacheco for the
21 murder of Rodrigo Vargas?
22    **A. On advice of counsel, I assert the**
23 **Fifth Amendment.**
24    Q. And to be clear, sir, you were

18

1 assigned to investigate the murder of Rodrigo
2 Vargas along with your partner, Detective
3 Reynaldo Guevara, correct?
4    **A. On advice of counsel, I assert the**
5 **Fifth Amendment.**
6    Q. And your supervisor on the Vargas
7 case was Sergeant Edward Mingy?
8    **A. On advice of counsel, I assert the**
9 **Fifth Amendment.**
10    Q. And isn't it true that the three of
11 you consulted regularly and shared all
12 information about the progress of the Vargas
13 investigation?
14    **A. On advice of counsel, I assert the**
15 **Fifth Amendment.**
16    Q. You discussed all aspects of the
17 investigation with your partner, Detective
18 Guevara, along with your supervisor, Sergeant
19 Mingy; isn't that right?
20    **A. On advice of counsel, I assert the**
21 **Fifth Amendment.**
22    Q. And you knew when you started the
23 investigation into the murder of Rodrigo
24 Vargas that neither Montanez nor Serrano nor

19

1 Pacheco were involved in the shooting?
2    MR. GIVEN: Objection; form.
3    THE WITNESS: On advice of counsel, I
4 assert the Fifth Amendment.
5 BY MS. BONJEAN:
6    Q. You knew that there was absolutely
7 no physical evidence indicating that
8 Montanez, Serrano, and Pacheco had any
9 connection to the murder, correct?
10    **A. On advice of counsel, I assert the**
11 **Fifth Amendment.**
12    Q. And instead you decided to frame
13 Montanez, Serrano, and Pacheco by fabricating
14 false evidence; isn't that correct?
15    **A. On advice of counsel, I assert the**
16 **Fifth Amendment.**
17    Q. Specifically, Francisco Vicente
18 told you and Detective Guevara that he had no
19 knowledge about the murder of Rodrigo Vargas;
20 isn't that right?
21    **A. On advice of counsel, I assert the**
22 **Fifth Amendment.**
23    Q. You had absolutely no reason to
24 believe that Francisco Vicente possessed any

20

1 information or knowledge about the Rodrigo
2 Vargas murder; isn't that right?
3    **A. On advice of counsel, I assert the**
4 **Fifth Amendment.**
5    Q. And, in fact, Vicente told you and
6 Detective Guevara that he had no information
7 to suggest that either Serrano, Montanez, nor
8 Pacheco were involved in any way with the
9 murder of Rodrigo Vargas?
10    MR. GIVEN: Objection; form.
11    THE WITNESS: On advice of counsel, I
12 assert the Fifth Amendment.
13 BY MS. BONJEAN:
14    Q. And isn't it true that Vicente
15 actually told you that Guevara -- strike
16 that.
17    Isn't it true that Vicente told you
18 and Detective Guevara that Mr. Montanez,
19 Mr. Serrano, and Mr. Pacheco were actually
20 and factually innocent of the murder of
21 Rodrigo Vargas?
22    **A. On advice of counsel, I assert the**
23 **Fifth Amendment.**
24    Q. And despite Vicente's

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

6 (21 to 24)

---

21

1  representations to you, you and your fellow
2  officer, Detective Guevara, told Mr. Vicente
3  facts about the Vargas murder; isn't that
4  right?
5      A.  On advice of counsel, I assert the
6  Fifth Amendment.
7      Q.  And, in fact, your purpose and the
8  purpose of your partner, Detective Guevara,
9  was to feed information to Vicente so that he
10 could reiterate it back to you and you could
11 pretend that there was information to suggest
12 that Serrano, Montanez, and Pacheco were
13 responsible for the murder?
14     MR. GIVEN:  Objection; form, foundation,
15 speculation.
16     You can answer.
17     THE WITNESS:  On advice of counsel, I
18 assert the Fifth Amendment.
19 BY MS. BONJEAN:
20     Q.  And, in fact, you actually used
21 psychological and physical coercion against
22 Vicente to falsely implicate Montanez,
23 Serrano, and Pacheco?
24     A.  On advice of counsel, I assert the

---

22

1  Fifth Amendment.
2      Q.  You, Detective Guevara, Sergeant
3  Mingy, and Assistant State's Attorneys Dillon
4  and Coghlan all conspired jointly to frame
5  Mr. Montanez, Mr. Serrano, and Mr. Pacheco
6  for the Vargas murder?
7      MS. CERCONE:  Object to form.
8      THE WITNESS:  On advice of counsel, I
9  assert the Fifth Amendment.
10 BY MS. BONJEAN:
11     Q.  And isn't it true that you, along
12 with Detective Guevara, Sergeant Mingy, and
13 Assistant State's Attorneys Dillon and
14 Coghlan all conspired to jointly frame
15 Mr. Montanez, Serrano, and Pacheco for the
16 Vargas murder, specifically, by coercing
17 Francisco Vicente and Timothy Rankins to
18 falsely implicate them in that crime?
19     MR. GIVEN:  Objection; form.
20     THE WITNESS:  On advice of counsel, I
21 assert the Fifth Amendment.
22 BY MS. BONJEAN:
23     Q.  In fact, sir, isn't it true
24 that you committed perjury by testifying

---

23

1  falsely at Mr. Montanez, Mr. Serrano, and
2  Mr. Pacheco's criminal trials?
3      MR. GIVEN:  Objection; form, calls for a
4  legal conclusion.
5      THE WITNESS:  On the advice of counsel,
6  I assert the Fifth Amendment.
7  BY MS. BONJEAN:
8      Q.  And, in fact, you knowingly gave
9  false testimony at the criminal trials of
10 Mr. Montanez, Serrano, and Pacheco knowing
11 that your false testimony would lead to their
12 wrongful convictions?
13     MR. GIVEN:  Objection; form and
14 foundation.
15     THE WITNESS:  On advice on counsel, I
16 assert the Fifth Amendment.
17 BY MS. BONJEAN:
18     Q.  And from February 5th, 1993 and to
19 the present day you have concealed your
20 misconduct and the misconduct of your fellow
21 officers; isn't that right?
22     A.  On the advice of counsel, I assert
23 the Fifth Amendment.
24     Q.  Now, specifically, with regard to

---

24

1  the Vargas investigation, sir, isn't it true
2  that Rodrigo Vargas was murdered in the early
3  morning hours of February 5th, 1993?
4      A.  On the advice of counsel, I assert
5  the Fifth Amendment.
6      Q.  And you learned at some point that
7  Mr. Vargas was murdered inside his van
8  outside of his home; isn't that correct?
9      A.  On the advice of counsel, I assert
10 the Fifth Amendment.
11     Q.  And you were assigned to
12 investigate the Vargas murder a couple days
13 after it occurred; isn't that correct?
14     A.  On the advice of counsel, I assert
15 the Fifth Amendment.
16     Q.  And you, along with your partner,
17 Detective Guevara, spoke with the victim's
18 wife, a woman by the name of Wilda Vargas,
19 shortly after you were assigned to
20 investigate the case, correct?
21     MR. GIVEN:  Objection; form.
22     THE WITNESS:  On the advice of counsel,
23 I assert the Fifth Amendment.
24

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

---

25

1 BY MS. BONJEAN:
2      Q.  In fact, Wilda Vargas was a
3 Spanish-speaking woman who communicated
4 primarily through Detective Guevara, who was
5 also Spanish-speaking, correct?
6      **A.  On the advice of counsel, I assert**
7 **the Fifth Amendment.**
8      Q.  But as was your routine with
9 Detective Guevara, he always communicated to
10 you what any witness or victim may have said
11 if they were speaking in the Spanish
12 language; is that right?
13      MR. GIVEN:  Objection; form.
14      THE WITNESS:  On the advice of counsel,
15 I assert the Fifth Amendment.
16 BY MS. BONJEAN:
17      Q.  And during the month of February
18 1993, isn't it true that Detective Guevara
19 and yourself frequently communicated with
20 Ms. Vargas?
21      MR. GIVEN:  Objection; form.
22      THE WITNESS:  On the advice of counsel,
23 I assert the Fifth Amendment.
24

---

26

1 BY MS. BONJEAN:
2      Q.  And isn't it true that Detective
3 Guevara had somewhat of a cozy relationship
4 with Wilda Vargas?
5      MR. GIVEN:  Objection; form.
6      THE WITNESS:  On the advice of counsel,
7 I assert the Fifth Amendment.
8 BY MS. BONJEAN:
9      Q.  In fact, Detective Guevara told
10 you that he had tried to initiate or was
11 initiating a romantic relationship with Wilda
12 Vargas; isn't that right?
13      **A.  On the advice of counsel, I assert**
14 **the Fifth Amendment.**
15      Q.  Now, during this period of time in
16 which you and Detective Guevara interviewed
17 Ms. Vargas in February of 1993, isn't it true
18 that Ms. Vargas told you about what actions
19 she and Rodrigo Vargas, her husband, took on
20 the day leading up to his murder?
21      MR. GIVEN:  Objection; form.
22      THE WITNESS:  On the advice of counsel,
23 I assert the Fifth Amendment.
24

---

27

1 BY MS. BONJEAN:
2      Q.  And, in fact, isn't it true that
3 you and Detective Guevara asked Ms. Vargas to
4 tell you specifically everything she did and
5 everything Rodrigo Vargas did in the 24 hours
6 prior to his murder?
7      MR. GIVEN:  Form.
8      THE WITNESS:  On the advice of counsel,
9 I assert the Fifth Amendment.
10 BY MS. BONJEAN:
11      Q.  And isn't it true that you and
12 Detective Guevara told Wilda Vargas no detail
13 was too small, you wanted to hear every step
14 they took in the 24 hours prior to his
15 murder?
16      MR. GIVEN:  Form.
17      THE WITNESS:  On the advice of counsel,
18 I assert the Fifth Amendment.
19 BY MS. BONJEAN:
20      Q.  And isn't it true that she provided
21 you with information about what transpired
22 during her day and in the 24 hours prior to
23 Mr. Vargas's murder?
24      MR. GIVEN:  Form.

---

28

1      THE WITNESS:  On the advice of counsel,
2 I assert the Fifth Amendment.
3 BY MS. BONJEAN:
4      Q.  And isn't it true that Wilda Vargas
5 recounted to you that the night before the
6 murder of her husband, she and Rodrigo had
7 been to the bank where he had obtained some
8 cash related to his business dealings?
9      MR. GIVEN:  Form.
10      THE WITNESS:  On advice of counsel, I
11 assert the Fifth Amendment.
12 BY MS. BONJEAN:
13      Q.  And isn't it true that Wilda Vargas
14 told you and Detective Guevara that after
15 stopping at the bank, they stopped at a gas
16 station?
17      **A.  On advice of counsel, I assert the**
18 **Fifth Amendment.**
19      Q.  And Ms. Vargas relayed to you that
20 she recalled a minor incident at that gas
21 station where Mr. Vargas, her husband, had
22 honked at a tan car that contained three
23 Latino men; isn't that correct?
24      MR. GIVEN:  Form.

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

29

1      THE WITNESS:  On advice of counsel, I
2  assert the Fifth Amendment.
3  BY MS. BONJEAN:
4      Q.  And isn't it true that this
5  incident at the gas station was something
6  that you learned almost immediately after
7  being assigned to the case after interviewing
8  Wilda Vargas?
9      **A.  On advice of counsel, I assert the**
10 **Fifth Amendment.**
11     Q.  And isn't it true that you and
12 Detective Guevara failed to investigate any
13 legitimate leads into the murder of Rodrigo
14 Vargas?
15     MR. GIVEN:  Objection; form, foundation.
16     THE WITNESS:  On advice of counsel, I
17 assert the Fifth Amendment.
18 BY MS. BONJEAN:
19     Q.  In fact, actually investigating
20 that case was just far too much work, wasn't
21 it?
22     MR. GIVEN:  Objection; form.
23     THE WITNESS:  On advice of counsel, I
24 assert the Fifth Amendment.

30

1  BY MS. BONJEAN:
2      Q.  In fact, you and Detective Guevara
3  had an unspoken understanding, that the way
4  you cleared cases was to frame Latino men in
5  the Humboldt Park the area, correct?
6      **A.  On advice of counsel, I assert the**
7  **Fifth Amendment.**
8      Q.  And it didn't matter much to you or
9  Detective Guevara which Latino men you framed
10 because they were all sort of the same in
11 your book; isn't that right?
12     MR. GIVEN:  Objection; form.
13     THE WITNESS:  On advice of counsel, I
14 assert the Fifth Amendment.
15 BY MS. BONJEAN:
16     Q.  And as a result, after learning of
17 the murder of Rodrigo Vargas and speaking
18 with Wilda Vargas, you decided that you
19 wanted to frame three Latino men for the
20 murder of Rodrigo Vargas rather than
21 legitimately investigate the case, correct?
22     MR. GIVEN:  Objection; form.
23     THE WITNESS:  On advice of counsel, I
24 assert the Fifth Amendment.

31

1  BY MS. BONJEAN:
2      Q.  What exactly did you do to
3  investigate the case once you were assigned
4  to the case in February of 1993?
5      **A.  On advice of counsel, I assert the**
6  **Fifth Amendment.**
7      Q.  And did you prepare any general
8  progress reports whatsoever that memorialized
9  your investigation of the Vargas murder after
10 your assignment?
11     **A.  On advice of counsel, I assert the**
12 **Fifth Amendment.**
13     Q.  What police reports did you author
14 or prepare that memorialized the steps you
15 took to legitimately investigate the case and
16 the murder of Rodrigo Vargas?
17     MR. GIVEN:  Form.
18     THE WITNESS:  On advice of counsel, I
19 assert the Fifth Amendment.
20 BY MS. BONJEAN:
21     Q.  In fact, sir, it's true, isn't it,
22 that you did not investigate any lead into
23 the Vargas murder between February and June
24 of 1993?

32

1      **A.  On advice of counsel, I assert the**
2  **Fifth Amendment.**
3      Q.  At this moment, Detective
4  Halvorsen -- or Mr. Halvorsen, I'd like to
5  discuss with you the murder of Salvador
6  Ruvalcaba and your introduction to Francisco
7  Vicente.
8      MR. GIVEN:  Objection to the extent
9  that's not a question.
10     MS. BONJEAN:  Well, just for the benefit
11 of yourself and others, I was --
12     MR. GIVEN:  I understand.
13     MS. BONJEAN:  -- going to let you know
14 where I was headed.
15     MR. GIVEN:  I was making my record.
16 BY MS. BONJEAN:
17     Q.  Mr. Halvorsen, isn't it true that
18 on May 14th, 1993, you investigated the
19 murder of Salvador Ruvalcaba?
20     **A.  On the advice of counsel, I assert**
21 **my Fifth Amendment.**
22     Q.  And as part of the Ruvalcaba
23 investigation, you decided to falsely target
24 Robert Buto for that murder, even though you

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

9 (33 to 36)

---

**33**

1  knew he was innocent; isn't that right?
2      A.  On advice of counsel, I assert the
3  Fifth Amendment.
4      Q.  Isn't it true that you improperly
5  influenced Carl Richmond, Ray Lozada, and
6  Frank Escobar to falsely implicate Buto for
7  the Ruvalcaba murder?
8      MR. GIVEN:  Objection; form, foundation,
9  compound.
10     MS. BONJEAN:  Okay.  And Ruvalcaba, by
11  the way, is R-U-V-A-L-C-A-B-A.
12  BY MS. BONJEAN:
13     Q.  Isn't it true that on May 14th,
14  1993, you were informed by Assistant State's
15  Attorney Kevin Hughes that his supervisor,
16  Assistant State's Attorney Sally Gray, would
17  not agree to lodge charges against Mr. Buto?
18     MR. GIVEN:  Objection; form.
19     THE WITNESS:  On advice of counsel, I
20  assert the Fifth Amendment.
21  BY MS. BONJEAN:
22     Q.  Notwithstanding the fact that a
23  supervisor in the Assistant State's Attorney
24  office declined to lodge any charges against

---

**34**

1  Mr. Buto, you and along with Detective
2  Guevara decided you wanted to falsely charge
3  Buto with the murder?
4      A.  On advice of counsel, I assert the
5  Fifth Amendment.
6      Q.  And as a result of your agreement
7  with Detective Guevara to frame Mr. Buto for
8  the murder of Ruvalcaba, you decided to use a
9  man named Francisco Vicente, who was already
10  in the lock-up at Area 5; isn't that correct?
11     MR. GIVEN:  Objection; form, foundation,
12  compound.
13     THE WITNESS:  On advice of counsel, i
14  assert the Fifth Amendment.
15  BY MS. BONJEAN:
16     Q.  And, in fact, it was a common
17  tactic of yours and Detective Guevara to use
18  individuals who were already in police
19  custody as witnesses in your cases in order
20  to frame suspects for murders, correct?
21     A.  On advice of counsel, I assert the
22  Fifth Amendment.
23     Q.  In fact, you couldn't even bother
24  to go get people off the streets to be

---

**35**

1  witnesses in the cases where you wanted to
2  frame people.  You sometimes just took them
3  right out of the lock-up; isn't that righted?
4      MR. GIVEN:  Objection; form, foundation,
5  harassing, oppressive.  You can answer.
6      THE WITNESS:  On advice of counsel, I
7  assert the Fifth Amendment.
8  BY MS. BONJEAN:
9      Q.  Mr. Halvorsen, you discovered on
10  May 14th, 1993, that Robert Buto was talking
11  to a man named Francisco Vicente, who was in
12  the lock-up at Area 5; isn't that correct?
13     A.  On advice of counsel, I assert the
14  Fifth Amendment.
15     Q.  And you and Detective Guevara
16  decided you wanted to use Vicente to falsely
17  implicate Buto in the Ruvalcaba murder; isn't
18  that correct?
19     MR. GIVEN:  Form.
20     THE WITNESS:  On advice of counsel, I
21  assert the Fifth Amendment.
22  BY MS. BONJEAN:
23     Q.  And isn't it true that you
24  instructed the lock-up keepers to bring

---

**36**

1  Mr. Vicente to you on May 14th, 1993?
2      A.  On advice of counsel, I assert the
3  Fifth Amendment.
4      Q.  And Mr. Vicente came up from the
5  lock-up, he sat and had a conversation with
6  you and Detective Guevara; isn't that right?
7      A.  On advice of counsel, I assert the
8  Fifth Amendment.
9      Q.  You already knew at that point that
10  Mr. Vicente had four felony charges pending
11  against him; isn't that right?
12     A.  On advice of counsel, I assert the
13  Fifth Amendment.
14     Q.  In fact, isn't it true that you
15  knew that Mr. Vicente had been charged with a
16  simple robbery and three separate armed
17  robberies; isn't that correct?
18     A.  On advice of counsel, I assert the
19  Fifth Amendment.
20     Q.  And you told Mr. Vicente that he
21  was looking at a sentence that would amount
22  to natural life in prison if he was found
23  guilty of those armed robberies; isn't that
24  right?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

37

1    A.  On advice of counsel, I assert the
2  Fifth Amendment.
3    Q.  You also knew that Francisco
4  Vicente was a heroin addict; isn't that
5  correct?
6    A.  On advice of counsel, I assert the
7  Fifth Amendment.
8    Q.  And on May 14th, 1993, you knew
9  that Mr. Vicente was actually actively going
10  through heroin withdrawal while he was in
11  police custody at Grand and Central?
12    A.  On advice of counsel, I assert the
13  Fifth Amendment.
14    Q.  You had some passing familiarity
15  with the symptoms people suffered when they
16  went through heroin withdrawal and knew that
17  he was in very vulnerable state; isn't that
18  correct?
19    MR. GIVEN:  Instead of asking you to
20  re-read it, I will work off memory and object
21  as to form.
22    MS. BONJEAN:  Okay.
23    MR. GIVEN:  You can answer.
24    THE WITNESS:  On advice of counsel, I

38

1  assert the Fifth Amendment.
2  BY MS. BONJEAN:
3    Q.  And isn't it true that you brought
4  Mr. Vicente candy bars in order to help him
5  with his withdrawal symptoms?
6    A.  On advice of counsel, I assert the
7  Fifth Amendment.
8    Q.  And isn't it true that you had some
9  understanding that candy would actually help
10  with those withdrawal symptoms and used that
11  as a means to manipulate Mr. Vicente?
12    A.  On advice of counsel, I assert the
13  Fifth Amendment.
14    Q.  And isn't it true that you
15  frequently played the role of good cop in
16  interviewing witnesses while Detective
17  Guevara played the role of bad cop?
18    MR. GIVEN:  Objection; form.
19    THE WITNESS:  On advice of counsel, I
20  assert the Fifth Amendment.
21  BY MS. BONJEAN:
22    Q.  In fact, isn't it true that you
23  frequently employed the tactic where
24  Detective Guevara would physically abuse

39

1  witnesses or suspects in custody, and then
2  after that physical abuse, you would come in
3  and try to use kinder methods to gain their
4  cooperation?
5    MR. GIVEN:  Objection; form.
6    THE WITNESS:  On advice of counsel, I
7  assert the Fifth Amendment.
8  BY MS. BONJEAN:
9    Q.  Isn't it true that you told
10  Francisco Vicente on May 14th, 1993 that you
11  wanted his help in framing Robert Buto for
12  the Ruvalcaba murder?
13    A.  On advice of counsel, I assert the
14  Fifth Amendment.
15    Q.  You and Detective Guevara asked
16  Vicente about Buto's gang affiliation; isn't
17  that correct?
18    A.  On advice of counsel, I assert the
19  Fifth Amendment.
20    Q.  And you asked Mr. Vicente about his
21  gang affiliation in hopes that you might be
22  able to use that information and use him to
23  frame Buto for the Ruvalcaba murder?
24    A.  On advice of counsel, I assert the

40

1  Fifth Amendment.
2    Q.  You hoped that Vicente would be
3  willing to frame an opposing gang member for
4  a murder, and that's why you asked for his
5  gang affiliation; isn't that right?
6    MR. GIVEN:  Objection; form.
7    THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment.
9  BY MS. BONJEAN:
10    Q.  And Francisco Vicente -- strike
11  that.
12    Isn't it true that you told
13  Francisco Vicente to say that Buto confessed
14  to the shooting -- the shooting of someone
15  near Roosevelt High School; isn't that right?
16    A.  On advice of counsel, I assert my
17  Fifth Amendment.
18    Q.  And you told Vicente that, "We
19  can -- "We can make this hard for you or we
20  can make this easy for you," or words to that
21  effect; isn't that correct?
22    A.  On advice of counsel, I assert the
23  Fifth Amendment.
24    Q.  And isn't it true that Francisco

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

41

1  Vicente initially told you that he would not
2  falsely implicate Robert Buto in the murder
3  of Ruvalcaba -- Ruvalcaba's murder?
4      **A.  On advice of counsel, I assert the**
5  **Fifth Amendment.**
6      Q.  And isn't it true that you and
7  Detective Guevara told Francisco Vicente that
8  you would help him with his pending armed
9  robbery charges if he assisted you in framing
10 Buto for the Ruvalcaba murder?
11     **A.  On advice of counsel, I assert the**
12 **Fifth Amendment.**
13     Q.  And, specifically, isn't it true
14 that you and Detective Guevara told Francisco
15 Vicente that you could get him a deal, a deal
16 of leniency in his armed robbery cases, if he
17 only agreed to frame Robert Buto for the
18 murder of Ruvalcaba?
19     MR. GIVEN:  Form.
20     THE WITNESS:  On advice of counsel, I
21 assert the Fifth Amendment.
22 BY MS. BONJEAN:
23     Q.  And you were present when Detective
24 Guevara expressly told Vicente that he would

42

1  come to court and speak on Vicente's behalf
2  if Vicente lied and said that Buto confessed
3  to him?
4      **A.  On behalf --**
5      MR. GIVEN:  On advice.
6      THE WITNESS:  I forgot.  On behalf of
7  counsel, I assert my Fifth Amendment.
8      MR. GIVEN:  For the record, he means "on
9  advice of counsel."
10     THE WITNESS:  Advice, yes.  I'm sorry.
11     MS. BONJEAN:  That's okay.
12 BY MS. BONJEAN:
13     Q.  Isn't it true that despite those
14 representations by Detective Guevara and
15 yourself, Vicente still refused to falsely
16 implicate Buto?
17     **A.  On advice of counsel, I assert the**
18 **Fifth Amendment.**
19     Q.  Isn't it true that Vicente told you
20 and Detective Guevara he didn't really trust
21 you to get a deal for him; isn't that
22 correct?
23     **A.  On advice of counsel, I assert the**
24 **Fifth Amendment.**

43

1      Q.  And at that point Detective Guevara
2  then began to use physical violence against
3  Francisco Vicente to gain his cooperation;
4  isn't that right?
5      MR. GIVEN:  Objection; form and
6  foundation, calls for speculation.
7      THE WITNESS:  On advice of counsel, I
8  assert the Fifth Amendment.
9  BY MS. BONJEAN:
10     Q.  Mr. Halvorsen, it's true that you
11 saw Detective Guevara strike Vicente in the
12 back of the head multiple times; isn't that
13 right?
14     **A.  On advice of counsel, I assert the**
15 **Fifth Amendment.**
16     Q.  Isn't it true that you saw
17 Detective Guevara strike Mr. Vicente with a
18 rolled up -- like a small, rolled up
19 telephone book?
20     **A.  On advice of counsel, I assert the**
21 **Fifth Amendment.**
22     Q.  Isn't it true that Detective
23 Guevara actually walked around with a small
24 telephone book rolled up -- he often had that

44

1  on his person?
2      MR. GIVEN:  Objection; form, foundation,
3  competence.
4      THE WITNESS:  On advice of counsel, I
5  assert the Fifth Amendment.
6  BY MS. BONJEAN:
7      Q.  Isn't it true that you heard
8  that -- you heard Detective Guevara call
9  Vicente a stupid son of a bitch?
10     **A.  On advice of counsel, I assert the**
11 **Fifth Amendment.**
12     Q.  And isn't it true that you observed
13 Detective Guevara hit Vicente in the back of
14 the head multiple times with this skinny
15 phone book?
16     **A.  On advice of counsel, I assert the**
17 **Fifth Amendment.**
18     Q.  Did you and Detective Guevara
19 discuss specifically how you would get
20 Vicente to falsely implicate Buto?
21     **A.  On advice of counsel, I assert the**
22 **Fifth Amendment.**
23     Q.  And isn't it true that the reason
24 that Detective Guevara would use a phone book

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

45

1  to strike witnesses because it wouldn't leave
2  visible marks?
3      MR. GIVEN:  Objection; form, foundation,
4  competence.
5      THE WITNESS:  On advice of counsel, I
6  assert the Fifth Amendment.
7  BY MS. BONJEAN:
8      Q.  In fact, it was well known amongst
9  the Area 5 Chicago police detectives,
10 including yourself, that the use of a phone
11 book in beating suspects was a good tool
12 because it didn't leave marks that could be
13 later detected or used to corroborate claims
14 of abuse?
15     MR. GIVEN:  Same objections.
16     THE WITNESS:  On advice of counsel, I
17 assert the Fifth Amendment.
18 BY MS. BONJEAN:
19     Q.  And isn't it true, sir, that you
20 had the opportunity to stop Detective Guevara
21 from hitting Vicente?
22     **A.  On advice of counsel, I assert the**
23 **Fifth Amendment.**
24     Q.  And isn't it true that rather than

46

1  stop Detective Guevara from hitting Vicente,
2  you permitted Guevara to do so in your
3  presence and knowing that it was going on
4  outside of your presence?
5      MR. GIVEN:  Form.
6      THE WITNESS:  On advice of counsel, I
7  assert the Fifth Amendment.
8  BY MS. BONJEAN:
9      Q.  Isn't it true that at a certain
10 point during this interrogation of Francisco
11 Vicente, you left the room so that Detective
12 Guevara could be alone with Mr. Vicente?
13     **A.  On advice of counsel, I assert the**
14 **Fifth Amendment.**
15     Q.  And isn't it true that you heard
16 Detective Guevara striking Vicente while you
17 were outside of the room?
18     **A.  On advice of counsel, I assert the**
19 **Fifth Amendment.**
20     Q.  Eventually, sir, after physical
21 abuse by Detective Guevara and promises of
22 benefits and leniency, Francisco Vicente
23 eventually agreed to cooperate with framing
24 Mr. Buto?

47

1      MR. GIVEN:  Objection; form, foundation,
2  competence.
3      THE WITNESS:  On advice of counsel, I
4  assert the Fifth Amendment.
5  BY MS. BONJEAN:
6      Q.  Isn't it true that Vicente only
7  agreed to frame Buto after you promised help
8  on his pending criminal charges and after he
9  was physically abused by Detective Guevara?
10     MR. GIVEN:  Same objections.
11     THE WITNESS:  On advice of counsel, I
12 assert the Fifth Amendment.
13 BY MS. BONJEAN:
14     Q.  And it's true, sir, isn't it, that
15 you and Detective Guevara told Francisco
16 Vicente that he could not tell anyone about
17 the tactics that you and Detective Guevara
18 used to gain his cooperation in the frame-up
19 of Robert Buto?
20     MR. GIVEN:  Form.
21     THE WITNESS:  On advice of counsel, I
22 assert the Fifth Amendment.
23 BY MS. BONJEAN:
24     Q.  And isn't it true that you told

48

1  Francisco Vicente that you would make sure
2  that he received the minimum sentence for his
3  string of armed robberies and robberies in
4  exchange for his cooperation with framing
5  Robert Buto?
6      MR. GIVEN:  Form.
7      THE WITNESS:  On advice of counsel, I
8  assert the Fifth Amendment.
9  BY MS. BONJEAN:
10     Q.  Isn't it true that one of the
11 tactics that you and Detective Guevara had
12 discussed is that you were going to put
13 Vicente in line-ups, and that would be used
14 as an explanation for why he was absent from
15 the lock-up?
16     MR. GIVEN:  Form.
17     THE WITNESS:  On advice of counsel, I
18 assert the Fifth Amendment.
19 BY MS. BONJEAN:
20     Q.  And isn't it true that the motive
21 for doing this was so that Vicente could tell
22 Buto that the reason he had been pulled out
23 of the lock-up was to be placed in line-ups?
24     MR. GIVEN:  Form.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

13 (49 to 52)

49

1      THE WITNESS: On advice of counsel, I
2 assert the Fifth Amendment.
3 BY MS. BONJEAN:
4      Q.  And isn't it true that you and
5 Guevara told Vicente to tell Buto that he was
6 being placed in line-ups as a false
7 explanation for why Vicente was being removed
8 and returned to the lock-up?
9      MR. GIVEN: Form.
10      THE WITNESS: On advice of counsel, I
11 assert the Fifth Amendment.
12 BY MS. BONJEAN:
13      Q.  And isn't it true that you and
14 Detective Guevara told Vicente to get Buto to
15 talk to him as much as possible so that it
16 would be plausible that he would confess to
17 Vicente in the lock-up?
18      MR. GIVEN: Form.
19      THE WITNESS: On advice of counsel, I
20 assert the Fifth Amendment.
21 BY MS. BONJEAN:
22      Q.  And isn't it true that you reminded
23 Francisco Vicente that if he told anyone
24 about what had transpired, that he would be

50

1 labeled a rat, a snitch, a stoolie, and that
2 he would be in physical danger if that
3 information was revealed to the streets?
4      MR. GIVEN: Form.
5      THE WITNESS: On advice of counsel, I
6 assert the Fifth Amendment.
7 BY MS. BONJEAN:
8      Q.  And isn't it true that you and
9 Detective Guevara coached Vicente on what he
10 should tell the Assistant State's Attorney
11 who would take the false statement
12 implicating Robert Buto in the Ruvalcaba
13 murder?
14      A.  On advice of counsel, I assert the
15 Fifth Amendment.
16      Q.  Isn't it true that you practiced
17 with Frankie Vicente what false statement he
18 would provide to the Assistant State's
19 Attorney when she came to take the statement
20 that was going to be used to frame Robert
21 Buto?
22      MR. GIVEN: Form.
23      THE WITNESS: On advice of counsel, I
24 assert the Fifth Amendment.

51

1 BY MS. BONJEAN:
2      Q.  Now, at some point isn't it true
3 that you decided that you could get more use
4 out of Francisco Vicente as a witness in
5 other murder investigations that had not been
6 cleared?
7      MR. GIVEN: Form.
8      THE WITNESS: On advice of counsel, I
9 assert the Fifth Amendment.
10 BY MS. BONJEAN:
11      Q.  And isn't it true that you and
12 Detective Guevara and your supervisor,
13 Sergeant Mingy, along with State's Attorneys
14 Coghlan and Dillon, decided that you would
15 frame Mr. Montanez, Mr. Serrano, and
16 Mr. Pacheco for the Vargas murder with the
17 help of Frankie Vicente?
18      MS. CERCONE: Object to form.
19      THE WITNESS: On advice of counsel, I
20 assert the Fifth Amendment.
21 BY MS. BONJEAN:
22      Q.  Now, as part of your plan, along
23 with Detective Guevara, to frame
24 Mr. Montanez, Mr. Serrano, and Mr. Pacheco

52

1 for the murder of Rodrigo Vargas, isn't it
2 true that you and Detective Guevara decided
3 to gather the criminal history reports for
4 Montanez, Serrano, and Pacheco in May of
5 1993?
6      A.  On advice of counsel, I assert the
7 Fifth Amendment.
8      Q.  In May of 1993, you had absolutely
9 no reason to believe that Mr. Montanez,
10 Mr. Serrano, and Mr. Pacheco had any
11 involvement in the murder of Rodrigo Vargas?
12      A.  On advice of counsel, I assert the
13 Fifth Amendment.
14      Q.  And notwithstanding the fact that
15 there was no evidence whatsoever to suggest
16 their involvement in Vargas's murder, you
17 along Detective Guevara, decided that you
18 would frame those three individuals for this
19 murder, correct?
20      A.  On advice of counsel, I assert the
21 Fifth Amendment.
22      Q.  But before you could frame an
23 individual for a murder that had happened
24 many months earlier, it was important to make

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

14 (53 to 56)

53

1 sure that they weren't in custody at the time
2 of the murder; isn't that right?
3     MR. GIVEN: Objection, form.
4     THE WITNESS: On advice of counsel, I
5 assert the Fifth Amendment.
6 BY MS. BONJEAN:
7     Q. In fact, Detective Guevara and
8 yourself was kind of sloppy at times, and at
9 times you actually tried to frame people who
10 were in custody; isn't that right?
11     MR. GIVEN: Objection; form, harassing
12 oppressive.
13     THE WITNESS: On advice of counsel, I
14 assert the Fifth Amendment.
15 BY MS. BONJEAN:
16     Q. Well, isn't it true that you
17 actually tried to frame Efrain Cruz and
18 Francisco Veras for the murders of the Wiley
19 brothers, but you had to let them go because
20 they were actually in police custody at the
21 time of the murders?
22     MR. GIVEN: Hold on a second.
23 Objection; form, foundation, also object to
24 the fact that Efrain -- that the Wiley

54

1 brothers' murders is the subject of a
2 different lawsuit that's currently pending;
3 and I object to the use of this deposition to
4 ask questions about another lawsuit.
5     You can answer.
6     THE WITNESS: On advice of counsel, I
7 assert the Fifth Amendment.
8 BY MS. BONJEAN:
9     Q. And isn't it true that at one point
10 Detective Guevara and yourself attempted to
11 frame George Laureano for a murder that he
12 did not commit but --
13     MR. GIVEN: Objection; form, foundation.
14     I'm sorry. Were you done?
15     MS. BONJEAN: Sort of. Go ahead. You
16 can answer.
17     THE WITNESS: On advice of counsel, I
18 assert the Fifth Amendment.
19 BY MS. BONJEAN:
20     Q. And on one occasion, you learned
21 that George Laureano actually had an airtight
22 alibi, as he was visiting someone else in the
23 Illinois Department of Corrections, and you
24 couldn't frame him for that murder, correct?

55

1     MR. GIVEN: Objection; form and
2 foundation.
3     THE WITNESS: On advice of counsel, I
4 assert the Fifth Amendment.
5 BY MS. BONJEAN:
6     Q. So by 1993, you realized that you
7 probably should check the criminal histories
8 of the defendants you -- strike that.
9     By 1993, you knew that you had to
10 check the criminal history of an individual
11 who you wanted to frame for a murder to make
12 sure that they weren't in custody at the time
13 of the murder; isn't that right?
14     MR. GIVEN: Objection; form.
15     THE WITNESS: On advice of counsel, I
16 assert the Fifth Amendment.
17 BY MS. BONJEAN:
18     Q. So I am going to hand you what has
19 been previously marked as, I believe,
20 Montanez 1.
21     MR. GIVEN: Why don't we call it
22 Guevara 1.
23     MS. BONJEAN: It was just 1, right?
24     MR. GIVEN: Well --

56

1     MS. BONJEAN: Yeah, we'll call it
2 Guevara 1. That's fine.
3     MR. GIVEN: Well, only because it was
4 used in the Guevara dep, and things will get
5 really --
6     MS. BONJEAN: I just don't remember what
7 it was called in the Guevara dep.
8     MR. GIVEN: I wrote it as Guevara No. 1.
9     MS. BONJEAN: Okay. Fine.
10     MR. GIVEN: Is what I wrote it as.
11     But I think if you identify it for
12 the record with its Bates stamp, then we'll
13 be good.
14     MS. BONJEAN: Sure. Okay.
15 BY MS. BONJEAN:
16     Q. I'm going to hand you what's been
17 previously marked Exhibit 1 or Guevara 1,
18 we'll call it. It has a Bates stamp
19 RFC-Serrano/Montanez 000222.
20     I'm going to have you look at
21 what's been marked Guevara 1, and if you
22 could look specifically at the line that is
23 four up from the bottom. Isn't it true, sir,
24 that on May 20th, 1993, a person named

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

15 (57 to 60)

---

57

1 Detective Reynaldo Guevara requested the
2 criminal records for the individual with the
3 IR number 736499?
4      MR. GIVEN:  Objection; form, foundation,
5 and competence.
6      THE WITNESS:  On advice of counsel, I
7 assert the Fifth Amendment.
8 BY MS. BONJEAN:
9      Q.  And you knew that Detective Guevara
10 was going to obtain the criminal arrest
11 history for the person with IR number 736499
12 to ensure that he was not in custody on that
13 day and, therefore, would not have an alibi
14 for the murder of Rodrigo Vargas?
15      MR. GIVEN:  Form; foundation and
16 competence.
17      THE WITNESS:  On advice of counsel, I
18 assert the Fifth Amendment.
19 BY MS. BONJEAN:
20      Q.  And isn't it true that Jose
21 Montanez, one of the plaintiffs in this
22 matter, has an IR number that is 736499?
23      **A.  On advice of counsel, I assert the**
24 **Fifth Amendment.**

---

58

1      Q.  I'm going to hand you now what has
2 been previously marked Guevara 2.  It has a
3 Bates stamp that is RFC-Serrano/Montanez
4 000226.
5      Mr. Halvorsen, I'm handing you
6 what's been marked Guevara 2.  I'd like you
7 to look at the entry on this log of criminal
8 history records, four up from the bottom.
9      Sir, do you see that on May 24th,
10 1993 Detective Reynaldo Guevara requested the
11 criminal history of an individual with the
12 IR number 874175?
13      MR. GIVEN:  Objection; form, foundation,
14 and competence.
15      THE WITNESS:  On advice of counsel, I
16 assert the Fifth Amendment.
17 BY MS. BONJEAN:
18      Q.  Isn't it true that these documents
19 that you've looked at, Exhibits 1 and 2, are
20 logs of criminal history records that were
21 issued during the date that is reflected on
22 the log?
23      MR. GIVEN:  Form.
24      THE WITNESS:  On advice of counsel, I

---

59

1 assert the Fifth Amendment.
2 BY MS. BONJEAN:
3      Q.  And on May 24th, 1993, Detective
4 Guevara requested the criminal history of
5 Armando Serrano, whose IR number is reflected
6 up the upper right-hand corner of this
7 exhibit, 874175?
8      MR. GIVEN:  Form, foundation,
9 competence.
10      THE WITNESS:  On the advice of counsel,
11 I assert the Fifth Amendment.
12 BY MS. BONJEAN:
13      Q.  Isn't it true, sir, that you
14 also -- strike that.
15      Isn't it true that Detective
16 Guevara also requested the history --
17 criminal history of Jordan Pacheco in May of
18 19- -- May of 1993?
19      MR. GIVEN:  Same objections.
20      THE WITNESS:  On the advice of counsel,
21 I assert the Fifth Amendment.
22 BY MS. BONJEAN:
23      Q.  And isn't it true that you,
24 Guevara, and Mingy decided to gather the

---

60

1 criminal histories of Montanez, Serrano, and
2 Pacheco in May of 1993 before there was any
3 suggestion that those three men had any
4 involvement whatsoever in the murder of
5 Rodrigo Vargas?
6      **A.  On the advice counsel, I assert the**
7 **Fifth Amendment.**
8      Q.  Isn't it true, sir, that you and
9 Detective Guevara and Sergeant Mingy decided
10 to gather the criminal history reports for
11 Montanez, Serrano, and Pacheco in May of 1993
12 so that you could ensure that none of the men
13 were in custody on February 5th, 1993, which
14 would provide an alibi for the Vargas murder?
15      MR. GIVEN:  Form.
16      THE WITNESS:  On advice of counsel, I
17 assert the Fifth Amendment.
18 BY MS. BONJEAN:
19      Q.  And isn't it true that you, along
20 with Detective Guevara and Sergeant Mingy,
21 decided to gather the criminal history
22 reports for Montanez, Serrano, and Pacheco in
23 May of 1993 all as part of a plan to frame
24 those three men for the murder of Rodrigo

---

61

1 Vargas?
2     MR. GIVEN: Form.
3     THE WITNESS: On advice of counsel, I
4 assert the Fifth Amendment.
5 BY MS. BONJEAN:
6     Q. After you determined, along with
7 Detective Guevara, that neither Mr. Montanez,
8 Mr. Serrano, and Mr. Pacheco were, in fact,
9 in custody at the time of Rodrigo Vargas's on
10 February 5th, 1993, you took additional
11 efforts to advance your plan to frame those
12 three individuals for his murder; isn't that
13 right?
14     MR. GIVEN: Form.
15     THE WITNESS: On advice of counsel, I
16 assert the Fifth Amendment.
17 BY MS. BONJEAN:
18     Q. And one of the methods that you and
19 Detective Guevara used in order to execute a
20 plan to frame an individual was to take facts
21 that you knew to be true about the case so
22 that you could incorporate them later on to
23 give credibility to fabricated evidence;
24 isn't that right?

62

1     MR. GIVEN: Form.
2     THE WITNESS: On advice of counsel, I
3 assert the Fifth Amendment.
4 BY MS. BONJEAN:
5     Q. So just by way of example in
6 this particular case, you took information
7 that was provided by Wilda Vargas that you
8 knew to be true -- that you knew to be true
9 that occurred on the day before the murder,
10 and you used those facts in order to develop
11 a narrative that would be used to frame
12 Montanez, Serrano, and Pacheco for the
13 murders of Rodrigo Vargas?
14     MR. GIVEN: Form.
15     THE WITNESS: On advice of counsel, I
16 assert the Fifth Amendment.
17 BY MS. BONJEAN:
18     Q. In fact, you decided that a good
19 motive for this murder of Rodrigo Vargas
20 would be a robbery gone bad; is that right?
21     **A. On advice of counsel, I assert the**
22 **Fifth Amendment.**
23     Q. You and Detective Guevara and
24 Sergeant Mingy decided that you would use a

63

1 robbery gone bad motive despite the fact that
2 there was no evidence whatsoever that
3 anything was taken from the victim?
4     MR. GIVEN: Form.
5     THE WITNESS: On advice of counsel, I
6 assert the Fifth Amendment.
7 BY MS. BONJEAN:
8     Q. And as part of your plan to
9 contrive a motive for the murder of Vargas,
10 you used information that had been provided
11 to you by Wilda Vargas, namely, that the day
12 before Mr. Vargas's murder, he had gone to
13 the bank and obtained some money?
14     **A. On advice of counsel, I assert the**
15 **Fifth Amendment.**
16     Q. In fact, sir, isn't it true that
17 you used the information that Ms. Vargas
18 provided you about this incident -- episode
19 at the gas station as a basis to create a
20 motive for the murder of Rodrigo Vargas?
21     MR. GIVEN: Objection; form, asked and
22 answered.
23     THE WITNESS: On advice of counsel, I
24 assert the Fifth Amendment.

64

1 BY MS. BONJEAN:
2     Q. And you and Detective Guevara had
3 done this numerous times in the past, where
4 you would learn innocuous but truthful
5 information from the victims or witnesses
6 that you would then incorporate into
7 fabricated evidence to give it the appearance
8 of credibility?
9     MR. GIVEN: Form and foundation.
10     THE WITNESS: On advice of counsel, I
11 assert the Fifth Amendment.
12 BY MS. BONJEAN:
13     Q. Now, Mr. Halvorsen, on June 2nd,
14 1993, you brought Francisco Vicente to the
15 Cook County State's Attorney's office gang
16 crimes unit to meet with Defendants Dillon
17 and Coghlan, correct?
18     MS. CERCONE: Object to form.
19     THE WITNESS: On advice of counsel, I
20 assert the Fifth Amendment.
21 BY MS. BONJEAN:
22     Q. And, actually, you arranged for
23 Mr. Vicente to come to the Cook County
24 State's Attorney's office gang crimes unit to

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

17 (65 to 68)

---

65

1 meet with Defendants Dillon and Coghlan on
2 June 2nd, 1993?
3      MS. CERCONE:  Object to form.
4      THE WITNESS:  On advice of counsel, I
5 assert the Fifth Amendment.
6 BY MS. BONJEAN:
7      Q.  In fact, you and Detective Guevara
8 spoke specifically with Assistant State's
9 Attorneys Dillon and Coghlan about the plan
10 to bring Vicente to the gang crimes unit at
11 the Cook County State's Attorney office,
12 correct?
13      MS. CERCONE:  Object to form.
14      THE WITNESS:  On advice of counsel, I
15 assert the Fifth Amendment.
16 BY MS. BONJEAN:
17      Q.  And, in fact, Assistant State's
18 Attorneys Dillon and Coghlan actually made
19 the arrangements for Mr. Vicente to come from
20 the Cook County Jail where he was being
21 housed in general population over to the Cook
22 County State's Attorney's offices, right?
23      MS. CERCONE:  Object to form.
24      THE WITNESS:  On advice of counsel, I

---

66

1 assert the Fifth Amendment.
2 BY MS. BONJEAN:
3      Q.  And the plan that you had entered
4 into with Detective Guevara and Assistant
5 State's Attorneys Cogh -- Assistant State's
6 Attorneys Dillon and Coghlan is that you
7 wanted Vicente to invent a story that Buto's
8 lawyer had tried to offer him money not to
9 testify against Buto; isn't that correct?
10      MS. CERCONE:  Object to form.
11      THE WITNESS:  On advice of counsel, I
12 assert the Fifth Amendment.
13 BY MS. BONJEAN:
14      Q.  And, in fact, Buto's lawyer had met
15 with Francisco Vicente in the Cook County
16 jail, and you learned of that, right?
17      THE WITNESS:  On advice of counsel, I
18 assert the Fifth Amendment.
19 BY MS. BONJEAN:
20      Q.  And you were concerned, weren't
21 you, that Francisco Vicente was going to come
22 clean and tell someone about your misconduct
23 and the misconduct your fellow officers,
24 Detective Guevara and Sergeant Mingy,

---

67

1 correct?
2      MR. GIVEN:  Objection; form.
3      THE WITNESS:  On advice of counsel, I
4 assert the Fifth Amendment.
5 BY MS. BONJEAN:
6      Q.  And that concern prompted you to
7 let Assistant State's Attorneys Coghlan and
8 Dillon know about this -- about the fact that
9 Vicente had met with Buto's lawyer, right?
10      MS. CERCONE:  Object to form.
11      THE WITNESS:  On advice of counsel, I
12 assert the Fifth Amendment.
13 BY MS. BONJEAN:
14      Q.  And together the four of you
15 decided how you were going to discredit
16 Vicente -- strike that -- discredit Buto's
17 lawyer by falsely claiming that Vicente --
18 that he had tried to offer Vicente money to
19 change his testimony?
20      MS. CERCONE:  Object to form.
21      THE WITNESS:  On advice of counsel, I
22 assert the Fifth Amendment.
23 BY MS. BONJEAN:
24      Q.  And, in fact, you know that Buto's

---

68

1 lawyer never tried to offer Vicente money not
2 to testify against Buto; isn't that right?
3      A.  On advice of counsel, I assert the
4 Fifth Amendment.
5      Q.  And after Francisco Vicente was
6 brought over to the gang crimes unit of the
7 Assistant State's Attorney offices, you,
8 Detective Guevara, and Assistant State's
9 Attorneys Dillon and Coghlan met with him;
10 isn't that right?
11      MS. CERCONE:  Object to form.
12      THE WITNESS:  On the advice of counsel,
13 I assert the Fifth Amendment.
14 BY MS. BONJEAN:
15      Q.  And while Francisco Vicente was in
16 the gang crimes unit at the Cook County
17 State's Attorney on June 2nd, 1993, you
18 showed Mr. Vicente crime scene photos of the
19 Vargas homicide; isn't that right?
20      A.  On the advice of counsel, I assert
21 the Fifth Amendment.
22      Q.  You knew that Francisco Vicente had
23 no information about the Vargas murder, but
24 you decided, nonetheless, to show him

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

18 (69 to 72)

69

1  photographs of the murder; isn't that
2  correct?
3  **A. On the advice of counsel, I assert**
4  **the Fifth Amendment.**
5  Q. And you showed Mr. Vicente
6  photographs of the murder of Rodrigo Vargas
7  in the presence of fellow officers Detective
8  Reynaldo Guevara and Assistant State's
9  Attorneys Coghlan and Dillon; isn't that
10 correct?
11 MS. CERCONE: Object to form.
12 THE WITNESS: On the advice of counsel,
13 I assert the Fifth Amendment.
14 BY MS. BONJEAN:
15 Q. And isn't it true that the purpose
16 in showing Vicente the Vargas crime scene
17 photos was to make it appear as if he had
18 firsthand knowledge of the murder, even
19 though you knew that he knew nothing about
20 the murder?
21 MR. GIVEN: Form.
22 THE WITNESS: On the advice of counsel,
23 I assert the Fifth Amendment.
24

70

1  BY MS. BONJEAN:
2  Q. By giving Francisco Vicente the
3  photographs of the crime scene photos, you
4  gave him information about that murder that
5  he could then utilize in this fabricated
6  statement; is that right?
7  **A. On advice of counsel, I assert the**
8  **Fifth Amendment.**
9  Q. And by utilizing actual information
10 that might be truthful or accurate, it gave
11 the appearance that the other aspects of
12 Francisco Vicente's statements were truthful
13 and accurate; isn't that right?
14 MR. GIVEN: Form, foundation,
15 competence.
16 THE WITNESS: On the advice of counsel,
17 I assert the Fifth Amendment.
18 BY MS. BONJEAN:
19 Q. Isn't it true, Mr. Halvorsen, that
20 you, along with Detective Guevara and
21 Assistant State's Attorneys Dillon and
22 Coghlan, knew that Mr. Vicente did not
23 witness the Vargas homicide?
24 MS. CERCONE: Object to form.

71

1  THE WITNESS: On the advice of counsel,
2  I assert the Fifth Amendment.
3  BY MS. BONJEAN:
4  Q. And isn't it true that Frankie
5  Vicente never even mentioned the Vargas
6  homicide until you first raised it with him?
7  **A. On the advice of counsel, I assert**
8  **the Fifth Amendment.**
9  Q. And it's also true, sir, that you
10 knew that neither Mr. Montanez, Mr. Serrano,
11 or Mr. Pacheco had anything to do with the
12 Vargas murder when you raised questions about
13 that murder with Francisco Vicente?
14 MR. GIVEN: Form and foundation.
15 THE WITNESS: On advice of counsel, I
16 assert the Fifth Amendment.
17 BY MS. BONJEAN:
18 Q. And isn't it true that while you
19 were showing Vicente photographs of the
20 Vargas crime scene, Detective Guevara told
21 him in sum and substance, "You're an IG.
22 This is what we want you to do"?
23 **A. On advice of counsel, I assert**
24 **Fifth Amendment.**

72

1  Q. And isn't it true that you and
2  Detective Guevara fed information to
3  Mr. Vicente, including the fact that the
4  victim was shot inside a van, and that the
5  murder was part of a robbery?
6  **A. On advice of counsel, I assert the**
7  **Fifth Amendment.**
8  Q. And isn't it true that you fed
9  information to Mr. Vicente so that that
10 information could be used to fabricate a
11 story that would falsely implicate Montanez,
12 Serrano, and Pacheco?
13 MR. GIVEN: Form.
14 THE WITNESS: On advice of counsel, I
15 assert the Fifth Amendment.
16 BY MS. BONJEAN:
17 Q. And isn't it true that you told
18 Vicente while you were feeding him facts
19 about the Vargas murder and showing him crime
20 seen photos, that this was the way of telling
21 him that the word on the street was that
22 Pistol Pete, Armando, and Jordan had
23 committed the murder?
24 MR. GIVEN: Form.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

---

73

1    THE WITNESS: On advice of counsel, I
2 assert the Fifth Amendment.
3 BY MS. BONJEAN:
4    Q. And isn't it true that by telling
5 Vicente that the word on the street was that
6 Pacheco, Serrano, and Montanez were the
7 offenders of the Vargas murder, that you
8 wanted him to implicate them in that murder?
9    **A. On the advice of counsel, I assert**
10 **the Fifth Amendment.**
11    Q. And isn't it true that you,
12 Defendants Guevara and Assistant State's
13 Attorneys Coghlan and Dillon essentially
14 brainstormed a factual narrative that you
15 would then -- that you then fed to Frankie
16 Vicente?
17    MR. GIVEN: Form.
18    MS. CERCONE: Object to form.
19    THE WITNESS: On the advice of counsel,
20 I assert the Fifth Amendment.
21 BY MS. BONJEAN:
22    Q. And you, Defendant Guevara, and
23 Assistant State's Attorneys Coghlan and
24 Dillon were all feeding Vicente facts about

74

1 the Vicente (sic) murder in the gang crimes
2 unit at the State's Attorney office on
3 June 2nd, 1993?
4    MS. CERCONE: Object to form.
5    THE WITNESS: On the advice of counsel,
6 I assert the Fifth Amendment.
7 BY MS. BONJEAN:
8    Q. Isn't it true that you had the
9 opportunity to stop your fellow defendants
10 from feeding facts to Vicente; isn't that
11 right?
12    MS. CERCONE: Object to form.
13    THE WITNESS: On the advice of counsel,
14 I assert the Fifth Amendment.
15 BY MS. BONJEAN:
16    Q. And isn't it true that you had the
17 opportunity to stop Defendants Guevara and
18 Assistant State's Attorneys Coghlan and
19 Dillon from feeding facts to Vicente that you
20 knew were going to be used to frame Montanez,
21 Serrano, and Pacheco for the murder of
22 Rodrigo Vargas?
23    MS. CERCONE: Object to form.
24    THE WITNESS: On the advice of counsel,

75

1 I assert the Fifth Amendment.
2 BY MS. BONJEAN:
3    Q. Now, isn't it true that Detective
4 Guevara and yourself and Assistant State's
5 Attorneys Coghlan and Dillon first wanted
6 Vicente to claim that he was an eyewitness to
7 the murder?
8    MS. CERCONE: Object to form.
9    THE WITNESS: On advice of counsel, I
10 assert the Fifth Amendment.
11 BY MS. BONJEAN:
12    Q. You initially told Vicente that you
13 wanted him to falsely claim that he witnessed
14 the murder when he drove the car Montanez,
15 Serrano, Pacheco were supposedly using as the
16 getaway car, correct?
17    **A. On advice of counsel, I assert the**
18 **Fifth Amendment.**
19    Q. And you wanted Vicente to
20 essentially agree to make himself the getaway
21 driver, even though you knew that he had
22 neither witnessed the murder, had acted as a
23 getaway driver, or had any information about
24 the Vargas murder?

76

1    **A. On advice of counsel, I assert the**
2 **Fifth Amendment.**
3    Q. And isn't it true that you wanted
4 Vicente to claim that he had witnessed
5 Montanez, Serrano, and Pacheco commit the
6 Vargas murder because you wanted to frame
7 Montanez, Serrano, and Pacheco for that
8 crime?
9    **A. On advice of counsel, I assert the**
10 **Fifth Amendment.**
11    Q. And isn't it true that Frankie
12 Vicente refused to say that he was actually
13 present for the Vargas murder?
14    **A. On advice of counsel, I assert the**
15 **Fifth Amendment.**
16    Q. Isn't it true that Frankie Vicente
17 told you all that he didn't really trust you,
18 that you might now turn around and charge him
19 with the crime if he admitted he was present?
20    **A. On advice of counsel, I assert the**
21 **Fifth Amendment.**
22    Q. And isn't it true that Detective
23 Guevara and yourself tried to reassure
24 Frankie Vicente that he would not be charged

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

77

1 with the crime if he admitted that he was
2 present for the Vargas murder?
3     **A. On advice of counsel, I assert the**
4 **Fifth Amendment.**
5     Q. And isn't it true that you were
6 present when Assistant State's Attorneys
7 Coghlan and Dillon reassured Mr. Vicente that
8 they would make sure he was not charged with
9 the Vargas murder if he admitted that he had
10 witnessed it?
11     MS. CERCONE: Object to form.
12     THE WITNESS: On advice of counsel, I
13 assert the Fifth Amendment.
14 BY MS. BONJEAN:
15     Q. And despite those reassurances,
16 isn't it true that Frankie Vicente still
17 refused to falsely claim that he was present
18 when Rodrigo Vargas was murdered?
19     MS. CERCONE: Object to form.
20     MR. GIVEN: Form.
21     THE WITNESS: On advice of counsel, I
22 assert the Fifth Amendment.
23 BY MS. BONJEAN:
24     Q. During these conversations that you

78

1 had with Frankie Vicente with Detective
2 Guevara and Assistant State's Attorneys
3 Dillon and Coghlan also present, isn't it
4 true that it was represented to him that he
5 would be moved to the witness head---
6 witness quarters, otherwise known as "the Q"
7 for his protection if he agreed to act as a
8 witness in the Vargas murder?
9     MR. GIVEN: Form.
10     MS. CERCONE: Object to form.
11     THE WITNESS: On advice of counsel, I
12 assert the Fifth Amendment.
13 BY MS. BONJEAN:
14     Q. Isn't it true that you, along
15 Detective Guevara and Assistant State's
16 Attorneys Dillon Coghlan, tried to convince
17 Vicente to falsely claim that after the
18 Vargas murder he met up with Montanez,
19 Serrano, and Pacheco, and they gave him the
20 murder weapon?
21     MS. CERCONE: Object to form.
22     THE WITNESS: On advice of counsel, I
23 assert the Fifth Amendment.
24

79

1 BY MS. BONJEAN:
2     Q. You knew this also to be a false
3 narrative but offered it as a compromise to
4 Frankie Vicente so that he could avoid saying
5 he was actually present at the time of
6 Vargas's murder; isn't that right?
7     **A. On advice of counsel, I assert the**
8 **Fifth Amendment.**
9     Q. And isn't it true that Frankie
10 Vicente insisted that he would not make
11 himself involved in the actual crime in any
12 way, shape, or form?
13     **A. On the advice of counsel, I assert**
14 **the Fifth Amendment.**
15     Q. And isn't it true that Frankie
16 Vicente told you and Detective Guevara, along
17 with Assistant State's Attorneys Coghlan and
18 Dillon, that he would not falsely state that
19 he was given the murder weapon?
20     MS. CERCONE: Object to form.
21     THE WITNESS: On the advice of counsel,
22 I assert the Fifth Amendment.
23 BY MS. BONJEAN:
24     Q. And isn't it true that during the

80

1 meeting with Frankie Vicente in the gang
2 crimes unit of the Cook County State's
3 Attorney office, you and Detective Guevara
4 either pushed him in the head or poked him in
5 the head during the course of that
6 interrogation?
7     MR. GIVEN: Form and foundation.
8     THE WITNESS: On the advice of counsel,
9 I assert the Fifth Amendment.
10 BY MS. BONJEAN:
11     Q. And that while you were trying to
12 get Vicente to tell false stories that you
13 were feeding him, you were also actually
14 poking him in the head and telling him, "You
15 need to do this," or words to that effect?
16     **A. On the advice of counsel, I assert**
17 **the Fifth Amendment.**
18     Q. And isn't it true that every time
19 you or Detective Guevara used force against
20 Frankie Vicente, there was no justification
21 for that use of force?
22     **A. On the advice of counsel, I assert**
23 **the Fifth Amendment.**
24     Q. And isn't it true that when you

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

**81**

1 used force against Frankie Vicente and when
2 Detective Guevara used force against
3 Frankie Vicente while feeding him false
4 information, your purpose was to coerce
5 Vicente to falsely implicate Montanez,
6 Serrano, and Pacheco?
7      MR. GIVEN: Form and foundation.
8      THE WITNESS: On the advice of counsel,
9 I assert the Fifth Amendment.
10 BY MS. BONJEAN:
11     Q. Isn't it true that finally after
12 Vicente refused to go along with these
13 stories that had been proposed by yourself
14 and Detective Guevara and Assistant State's
15 Attorneys Coghlan and Dillon, you offered a
16 third fabricated story that you wanted
17 Vicente to regurgitate?
18     MS. CERCONE: Object to form.
19     THE WITNESS: On advice of counsel, I
20 assert the Fifth Amendment.
21 BY MS. BONJEAN:
22     Q. Isn't it true that you told Frankie
23 Vicente that you wanted him to falsely claim
24 that Montanez, Serrano, and Pacheco had

**82**

1 confessed to him after the murder?
2      **A. On advice of counsel, I assert the**
3 **Fifth Amendment.**
4      MS. BONJEAN: At any point, sir, you
5 want to take a break, please let me know, and
6 we can do that.
7      MR. GIVEN: Thanks. It's been about an
8 hour. Are you okay?
9      THE WITNESS: I can take a little break.
10     MS. BONJEAN: Sure. No problem.
11     MR. GIVEN: By the way, just for
12 everybody, I don't think we'll be taking like
13 an extended lunch break today.
14     MS. BONJEAN: Yeah, that's fine.
15     THE VIDEOGRAPHER: Off the record at
16 11:22.
17     (A recess was taken.)
18     THE VIDEOGRAPHER: Back on the record,
19 11:36.
20 BY MS. BONJEAN:
21     Q. Mr. Halvorsen, isn't it true that
22 on June 2nd, 1993, while in the offices of
23 the gang crimes unit of the Cook County
24 State's Attorney office, you, along with

**83**

1 Detective Guevara and Assistant State's
2 Attorneys Dillon and Coghlan, contrived a
3 story that you then fed to Francisco Vicente?
4      MS. CERCONE: Object to form.
5      THE WITNESS: On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8      Q. Eventually, when Frankie Vicente
9 decided that he would give a statement in
10 which he falsely claimed Montanez, Serrano,
11 and Pacheco confessed to him, isn't it true
12 that you, along with Guevara, Dillon, and
13 Coghlan, fabricated a detailed narrative that
14 you wanted Mr. Vicente to repeat?
15     MS. CERCONE: Object to form.
16     THE WITNESS: On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19     Q. And isn't it true that you told
20 Vicente to claim that he was at Harding,
21 H-A-R-D-I-N-G, and Altgeld on the morning of
22 February 5th, 1993?
23     **A. On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

**84**

1      Q. And isn't it true that you told
2 Vicente that you wanted him to falsely claim
3 that while he was at Harding and Altgeld,
4 Montanez, Serrano, and Pacheco told him that
5 they had seen Vargas at a gas station the
6 night before?
7      **A. On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9      Q. And isn't it true that you told
10 Frankie Vicente that you wanted him to
11 falsely claim that Montanez, Serrano, and
12 Pacheco told him that after seeing Vargas at
13 the gas station, they decided that he would
14 be a good target to rob?
15     **A. On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17     Q. And isn't it true that you and
18 Detective Guevara obtained the information
19 about the gas station previously from Wilda
20 Vargas?
21     **A. On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q. You and Detective Guevara knew
24 already as of June 2nd, 1993, that Wilda

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

---

85

1 Vargas had, in fact, been at a gas station
2 prior -- on the night prior to her husband's
3 murder; is that right?
4      **A.  On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6      Q.  You also knew as of June 2nd, 1993,
7 from your conversations and Detective
8 Guevara's conversations with Wild Vargas,
9 that there had been some type of minor
10 incident at that gas station where Rodrigo
11 Vargas had beeped the horn at three Latino
12 men in a tan car, correct?
13      MR. GIVEN:  Objection, form.
14      THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17      Q.  And it is those facts you and
18 Detective Guevara decided to utilize in your
19 construction of a fabricated story to give
20 credibility to that fabricated story?
21      MR. GIVEN:  Form.
22      THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

---

86

1 BY MS. BONJEAN:
2      Q.  And in so doing, you told Vicente
3 to falsely claim that Montanez, Serrano, and
4 Pacheco reported to him that they didn't rob
5 Mr. Vargas on that night because he had his
6 wife and kids with him at the time, correct?
7      **A.  On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9      Q.  And isn't it true that you told
10 Vicente to falsely claim that Montanez,
11 Serrano, and Pacheco told Vicente that they
12 waited by his house until 5:00 a.m., correct?
13      **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15      Q.  And the reason that you fed that
16 fact to Mr. Vicente is because you knew that
17 Mr. Vargas had been murdered in the early
18 morning hours of February 5th, 1993, correct?
19      **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21      Q.  Isn't it further true that you told
22 Vicente to falsely claim that Montanez,
23 Serrano, and Pacheco told Vicente that they
24 tried to rob the victim but "Mondo fucked up"

---

87

1 and that they had to kill the guy?
2      **A.  On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4      Q.  Isn't it true that you told Vicente
5 to falsely state that had Montanez, Serrano,
6 and Pacheco had a gun with them when they
7 were relaying this information to him?
8      **A.  On advice of counsel, I assert my**
9 **Fifth Amendment rights.**
10      Q.  And, further, isn't it true that
11 you told Vicente to say that the gun was a
12 nine millimeter gun?
13      **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15      Q.  And isn't it true that you told
16 Vicente to say that the gun was a nine
17 millimeter gun because you already knew that
18 nine millimeter bullet casings had been found
19 at the crime scene?
20      **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22      Q.  And, again, this was part of your
23 methodology in framing individuals, by using
24 facts that you knew already to be true and

---

88

1 incorporating them into fabricated statements
2 of witnesses so that those statements would
3 have the appearance of veracity and
4 credibility?
5      MR. GIVEN:  Form.
6      THE WITNESS:  On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9      Q.  And, sir, isn't it true that you
10 told Vicente to falsely claim that he saw the
11 gun when he got into the car with Montanez,
12 Serrano, and Pacheco, and that they drove to
13 a pawn shop to sell some jewelry that
14 Montanez, Serrano, and Pacheco had supposedly
15 stolen that day when they unsuccessfully
16 attempted to rob Mr. Vargas?
17      MR. GIVEN:  Form and foundation.
18      THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21      Q.  And isn't it true that it was part
22 of your methodology, along with that of
23 Detective Guevara, to incorporate unique
24 facts into fabricated statements, again, to

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

23 (89 to 92)

89

1  give the appearance that those statements had
2  veracity and credibility?
3       MR. GIVEN:  Form.
4       THE WITNESS:  On advice of counsel, I
5  assert my Fifth Amendment rights.
6  BY MS. BONJEAN:
7       Q.  And you told Vicente to say that
8  Montanez, Serrano, and Pacheco went to a pawn
9  shop because they needed money to feed their
10 heroin addiction; isn't that correct?
11      **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13      Q.  Mr. Halvorsen, you did also tell
14 Vicente to falsely claim that Montanez told
15 him that damage to his car had occurred while
16 he was driving away from the Vargas murder
17 scene and crashed into a parked car; isn't
18 that right?
19      **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21      Q.  Isn't it true that you already knew
22 that Mr. Montanez's car had some damage to
23 it; isn't that right?
24      **A.  On advice of counsel, I assert my**

90

1  **Fifth Amendment rights.**
2       Q.  And, in fact, sir, isn't it true
3  that you knew who Mr. Montanez was and you
4  knew what type of car he drove, correct?
5       **A.  On advice of counsel, I assert my**
6  **Fifth Amendment rights.**
7       Q.  And part of your plan to frame Mr.
8  Montanez and Mr. Serrano and Mr. Pacheco was,
9  again, to derive information that you knew to
10 be true and then utilize that information as
11 part of a -- the fabricated statement that
12 was fed to Mr. Vicente, correct?
13      **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15      Q.  And isn't it true that none of --
16 nothing of which you told Mr. Vicente was, in
17 fact, true?
18      **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20      Q.  In fact, you knew, along with --
21 strike that.  You knew, Detective Guevara
22 knew, and Assistant State's Attorneys Coghlan
23 and Dillon knew that Vicente had never met
24 with Montanez, Serrano, and Pacheco on

91

1  February 5th, 1993, correct?
2       MS. CERCONE:  Object to form.
3       THE WITNESS:  On advice of counsel, I
4  assert my Fifth Amendment rights.
5  BY MS. BONJEAN:
6       Q.  And isn't it true that you and the
7  other defendants in this case knew that
8  Montanez, Serrano, and Pacheco had not
9  confessed to Vicente, correct?
10      MS. CERCONE:  Object to form.
11      THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14      Q.  And you, along with your fellow
15 defendants knew that Montanez, Serrano, and
16 Pacheco had nothing to do with the murder of
17 Rodrigo Vargas?
18      MS. CERCONE:  Object to form.
19      THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22      Q.  Did you know who actually committed
23 the murder of Rodrigo Vargas?
24      **A.  On advice of counsel, I assert my**

92

1  **Fifth Amendment rights.**
2       Q.  Did you and Detective Guevara
3  protect the guilty person who was responsible
4  for the Vargas murder?
5       MR. GIVEN:  Objection; form.
6       THE WITNESS:  On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9       Q.  Was the murder of Rodrigo Vargas
10 related to any drug activity of which neither
11 you, Detective Guevara, or Joseph Majinowski
12 were benefitting financially?
13      MR. GIVEN:  Form.
14      THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17      Q.  Did you protect the true murderer
18 of Rodrigo Vargas and frame innocent people
19 so that you could protect a drug operation
20 that you were benefitting from financially?
21      **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23      Q.  Now, in order to get Vicente to go
24 along with the story that you and your fellow

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

24 (93 to 96)

---

93

1 defendants fabricated and fed to him, isn't
2 it true that Vicente was told by yourself and
3 others that he would not be charged in
4 connection with the felony -- with the --
5 with the murder of Rodrigo Vargas?
6     MS. CERCONE:  Object to form.
7     THE WITNESS:  On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10    Q.  Isn't it true that you and
11 Detective Guevara told Mr. Vicente that he
12 had already committed to being a snitch in
13 the Robert Buto case and he may as well go
14 all the way?
15    **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17    Q.  And isn't it true that you told him
18 that he was already going to be labeled a
19 snitch and a rat, so he may as well get as
20 much benefit out of that arrangement as he
21 could?
22    **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24    Q.  And part of that agreement with

---

94

1 Vicente is that so long as he continued to
2 help and you and Detective Guevara and the
3 Assistant State's Attorneys Dillon and
4 Coghlan on murder cases, that he would get
5 certain benefits throughout his stay in the
6 Cook County jail?
7     MS. CERCONE:  Object to form.
8     MR. GIVEN:  Form and foundation.
9     THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12    Q.  And isn't it true that for the
13 whole process of feeding Vicente the story
14 about Montanez, Serrano, and Pacheco
15 confessing to him, Defendants Guevara and
16 Assistant State's Attorneys Coghlan and
17 Dillon were also present?
18    MS. CERCONE:  Object to form.
19    THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22    Q.  And isn't it also true that you and
23 Detective Guevara spoke with Sergeant Mingy
24 about how you had decided to utilize Frankie

---

95

1 Vicente in the frame-up of Montanez, Serrano,
2 and Pacheco?
3     **A.  On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5     Q.  Isn't it true that while you were
6 coercing Vicente to fabricate a false story
7 against plaintiffs, Defendants Coghlan and
8 Dillon were either directly in the room with
9 you or had positioned themselves right
10 outside the room where they would have been
11 able to hear everything that was being said
12 and done?
13    MS. CERCONE:  Form.
14    MR. GIVEN:  Form.  Form, foundation,
15 competence.
16    THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19    Q.  And isn't it further true that
20 Frankie Vicente confessed to you that he was
21 back on heroin again on June 2nd, 1993 when
22 you were fabricating a statement that you
23 wanted him to falsely repeat?
24    **A.  On advice of counsel, I assert my**

---

96

1 **Fifth Amendment rights.**
2     Q.  And isn't it true that the way in
3 which you fed a false narrative to Frankie
4 Vicente was to say, "Didn't you say that
5 Mr. Montanez told you this?"
6     MR. GIVEN:  Objection; form.
7     THE WITNESS:  On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10    Q.  Isn't it true that you fed
11 Mr. Vicente the false narrative by giving him
12 "didn't you say" statements?
13    MR. GIVEN:  Objection; form.
14    THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17    Q.  And then after you would give him
18 "didn't you say" statements, he would agree
19 that he had said those things to you,
20 correct?
21    MR. GIVEN:  Form.
22    THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

---

**97**

1  BY MS. BONJEAN:
2      Q.  And while you were giving
3  Mr. Vicente the "didn't you say" statements
4  and he was agreeing that he had made those
5  statements, Assistant State's Attorneys
6  Coghlan and Dillon were writing down the
7  statement?
8      MS. CERCONE:  Object to form.
9      MR. GIVEN:  And just so I can stop
10 saying it, to the extent that you continue to
11 use the phrase, "didn't you say statements"
12 I'll just have a standing objection to that
13 as to form.  Go ahead.
14     THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17     Q.  Isn't it true that neither
18 Assistant State's Attorney Dillon nor Coghlan
19 told you or Detective Guevara to stop
20 coaching Mr. Vicente?
21     MS. CERCONE:  Object to form.
22     THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

**98**

1  BY MS. BONJEAN:
2      Q.  Now, after the June 2nd, 1993
3  meeting in the Cook County State's Attorney
4  office gang crime unit, isn't it true that
5  Assistant State's Attorney Coghlan and Dillon
6  arranged for Mr. Vincent to be placed in the
7  witness quarters or otherwise known as "the
8  Q"?
9      MS. CERCONE:  Object to form.
10     MR. GIVEN:  Foundation and competence.
11     THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14     Q.  And while Mr. Vicente was housed in
15 the Q, isn't it true that you and Detective
16 Guevara arranged for him to get between
17 $200 -- 200 and $300 in cash at various
18 points to ensure his continued cooperation in
19 the scheme to frame the plaintiffs in this
20 case?
21     A.  On advice of counsel, I assert my
22 Fifth Amendment rights.
23     Q.  Isn't it true that you and
24 Detective Guevara arranged for Mr. Vicente to

**99**

1  also get drugs and alcohol while he was in
2  the Q in order to ensure his continued
3  cooperation in the scheme to frame the
4  plaintiffs?
5      A.  On advice of counsel, I assert my
6  Fifth Amendment rights.
7      Q.  Isn't it true that Assistant
8  State's Attorneys Coghlan and Dillon would
9  call you on occasion to express concern that
10 Vicente wanted to back out of being a witness
11 against Buto and the plaintiffs in this case?
12     MS. CERCONE:  Object to form.
13     THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q.  And after Assistant State's
17 Attorneys Coghlan and Dillon would call and
18 express their concern, isn't it true that you
19 and Detective Guevara would go have a talk
20 with Frankie Vicente to ensure that he would
21 maintain his cooperation in the scheme to
22 frame, not only Robert Buto, but the
23 plaintiffs in this case?
24     MS. CERCONE:  Object to form.

**100**

1      THE WITNESS:  On advice of counsel, I
2  assert my Fifth Amendment rights.
3  BY MS. BONJEAN:
4      Q.  Isn't it true that you and
5  Detective Guevara decided that you would use
6  Frankie Vicente in, yet, a third murder as a
7  snitch witness?
8      MR. GIVEN:  Objection; form, foundation.
9      THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q.  Sir, isn't it true that you,
13 Detective Guevara, along with Assistant
14 State's Attorneys Coghlan and Dillon, decided
15 that you would use or wanted to use Frankie
16 Vicente in the murder case against a
17 defendant by the name Geraldo Iglesias?
18     MS. CERCONE:  Object to form.
19     THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q.  Isn't it true that even after the
23 June 2nd, 1993 meeting in the gang crimes
24 unit, Mr. Vicente was frequently brought up

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

26 (101 to 104)

---

101

1 to the Cook County State's Attorney gang
2 crimes unit so he could memorize and work on
3 his statements against three different --
4 well, strike that -- five different
5 defendants in criminal murder investi- --
6 criminal murder cases?
7     MR. GIVEN: Objection; form and
8 foundation.
9     THE WITNESS: On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q. Isn't it true that Assistant
13 State's Attorneys Dillon and Coghlan and
14 yourself came up with a theory that you
15 wanted Mr. Vicente to, again, claim that
16 Iglesias had confessed to murder in his
17 presence and in the bullpen?
18     MS. CERCONE: Object to form.
19     THE WITNESS: On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q. Isn't it true that Detective
23 Guevara showed Frankie Vicente a photograph
24 of Geraldo Iglesias, who went by the

---

102

1 nickname Snake, so that he could identify
2 Mr. Iglesias?
3     MR. GIVEN: Hold on just a second. I'm
4 going to repeat and just have a standing
5 objection to -- for the same reasons that I
6 mentioned earlier regarding questions about
7 another case that's not related to the
8 underlying case in this lawsuit.
9     MS. BONJEAN: Okay.
10     THE WITNESS: On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13     Q. Isn't it true that Detective
14 Guevara showed Frankie Vicente a photograph
15 of Geraldo Iglesias because Vicente didn't
16 know what Iglesias looked like? He had never
17 met him, correct?
18     MR. GIVEN: Objection; form, foundation.
19     THE WITNESS: On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q. Isn't it true that Detective
23 Guevara and yourself fed information to
24 Frankie Vicente about the murder for which

---

103

1 Iglesias had been charged?
2     **A. On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4     Q. Isn't it true that you and
5 Detective Guevara and the Assistant State's
6 Attorneys discussed the fact that it would be
7 suspicious that Frankie Vicente would have
8 been a witness to five different defendants
9 confessing to him?
10     MS. CERCONE: Object to form.
11     MR. GIVEN: Foundation.
12     THE WITNESS: On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15     Q. And even as of June 2nd, 1993,
16 wasn't it true that the four of you, the four
17 defendants in this case, discussed the fact
18 that it was not ideal that Frankie Vicente
19 would be sort of a key witness in -- in
20 this -- in the murder prosecution against
21 Serrano, Montanez, and Pacheco, correct?
22     MR. GIVEN: Form.
23     THE WITNESS: On advice of counsel, I
24 assert my Fifth Amendment rights.

---

104

1 BY MS. BONJEAN:
2     Q. And, in fact, the goal was to
3 actually get a different witness who would
4 implicate Serrano, Montanez, and Pacheco in
5 the case; isn't that right?
6     MR. GIVEN: Form.
7     THE WITNESS: On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10     Q. And, in fact, the four of you,
11 being yourself, Detective Guevara, and
12 Assistant State's Attorneys Coghlan and
13 Dillon, recognized that one witness who
14 claimed to have heard a statement by the
15 defendants would not actually satisfy the
16 State's burden of proof?
17     MS. CERCONE: Object to form.
18     THE WITNESS: On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21     Q. And also wasn't it true that one of
22 the reasons that you relied on -- strike
23 that. Another reason that you fabricated a
24 statement that was attributed to Frankie

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

105

1 Vicente was so that you could create probable
2 cause in order to make an arrest in the case?
3        MR. GIVEN:  Form.
4        THE WITNESS:  On advice of counsel, I
5 assert my Fifth Amendment rights.
6 BY MS. BONJEAN:
7        Q.  We'll get back to that in a second.
8             After June 2nd, 200- -- strike
9 that.  After June 2nd, 1993, isn't it true
10 that you and Detective Guevara decided that
11 you would continue to manipulate the victim
12 in this case, Wilda Vargas, to persuade her
13 that Serrano, Montanez, and Pacheco had
14 murdered her husband, Rodrigo Vargas?
15       **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17       Q.  And, in fact, part of your plan,
18 along with Detective Guevara and Assistant
19 State's Attorneys Coghlan and Dillon, was to
20 manipulate Vargas in a way so that her
21 statements would corroborate Vicente's story?
22       MS. CERCONE:  Object to form.
23       THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

106

1 BY MS. BONJEAN:
2        Q.  Isn't it true that you, Guevara,
3 Mena, Dillon and Coghlan decided that you
4 would manipulate her in a way that she would
5 falsely implicate Montanez's car as the car
6 she saw in the gas station the night before
7 the murder?
8        MS. CERCONE:  Object to form.
9        THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12       Q.  And isn't it true that you and
13 Detective Guevara, Sergeant Mingy, and
14 Assistant State's Attorneys Dillon and
15 Coghlan decided to manipulate Wilda Vargas to
16 get her to falsely implicate Montanez and
17 Serrano as the men she saw at the gas station
18 the night before her husband's murder?
19       MS. CERCONE:  Object to form.
20       THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23       Q.  And isn't it true that on June 6,
24 1993, a few days after this meeting on June

107

1        2nd, you and Detective Guevara picked up
2 Wilda Vargas at her home and brought her to a
3 location where Mr. Montanez's car was parked?
4        **A.  On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6        Q.  The purpose in bringing Wilda
7 Vargas to view Mr. Montanez's car parked on
8 the street was to get her to identify the car
9 as the car that she saw at the gas station
10 the night before her husband's murder; isn't
11 that right?
12       **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14       Q.  And isn't it true that Wilda Vargas
15 viewed the car and told you and Detective
16 Guevara that it looked kind of like the car
17 that she had seen at the gas station?
18       **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20       Q.  Isn't it true that Wilda Vargas
21 told you and Detective Guevara that she could
22 not say whether it was the same car, but that
23 it had a similar color?
24       **A.  On advice of counsel, I assert my**

108

1 **Fifth Amendment rights.**
2        Q.  And isn't it true that and you
3 and Detective Guevara then falsely told
4 Ms. Vargas that evidence found at the crime
5 scene matched forensic evidence from
6 Montanez's car?
7        **A.  On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9        Q.  And to put a fine point on it,
10 isn't it true that you pointed out on
11 Mr. Montanez's car what appeared to be a
12 bullet hole in the side of the car?
13       MR. GIVEN:  Form.
14       THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17       Q.  And isn't it true that you told
18 Ms. Vargas that evidence taken from that
19 bullet hole on Montanez's car matched
20 firearms evidence that was recovered from the
21 scene of her husband's murder?
22       **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24       Q.  And isn't it true that you and

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

28 (109 to 112)

---

**109**

1  Detective Guevara falsely told Ms. Vargas
2  that the evidence taken from the bullet hole
3  on Montanez's car matched ballistic evidence
4  at the crime scene in order to convince her
5  that that was the car she had seen at the
6  gas station?
7      A. On advice of counsel, I assert my
8  Fifth Amendment rights.
9      Q. And, sir, isn't it true that it was
10 a fabricated statement that was made up from
11 whole cloth that there was any firearms
12 evidence that matched Mr. Montanez's car
13 collected from the crime scene?
14     A. On advice of counsel, I assert my
15 Fifth Amendment rights.
16     Q. Isn't it true that Wilda -- Wilda
17 Vargas never told you that the car that was
18 parked on the street that you brought her to
19 see was the same car that she had seen at the
20 gas station?
21     A. On advice of counsel, I assert my
22 Fifth Amendment rights.
23     Q. In fact, you did not drive Wilda
24 around the neighborhood so that she might be

**110**

1  able to legitimately try to identify a car
2  that she had seen at the gas station the
3  night before the murder, right?
4      A. On advice of counsel, I assert my
5  Fifth Amendment rights.
6      Q. And, in fact, you didn't put
7  together any type of array or photograph
8  array of different types of cars to see if
9  she could identify which one looked like the
10 car she had seen at the gas station, right?
11     A. On advice of counsel, I assert my
12 Fifth Amendment rights.
13     Q. And when you authored a police
14 report in which you claim that you and
15 Guevara drove Wilda Vargas around the
16 neighborhood of the 3900 block of West
17 Dickens, that was, in fact, a false
18 statement, correct?
19     A. On advice of counsel, I assert my
20 Fifth Amendment rights.
21     Q. And, in fact, you and Detective
22 Guevara brought Ms. Vargas directly to
23 Montanez's car and told her that was the car
24 that had been used in her husband's murder,

**111**

1  right?
2      A. On advice of counsel, I assert my
3  Fifth Amendment rights.
4      Q. And you -- And neither you nor
5  Detective Guevara had any basis whatsoever to
6  believe that Mr. Montanez's car had any
7  involvement in the murder of Rodrigo Vargas,
8  right?
9      A. On advice of counsel, I assert my
10 Fifth Amendment rights.
11     Q. And, in fact, you and Detective
12 Guevara had no basis to believe whatsoever
13 that Mr. Montanez's car had been at a gas
14 station on the night before the murder of
15 Rodrigo Vargas, right?
16     A. On advice of counsel, I assert my
17 Fifth Amendment rights.
18     Q. You had prior knowledge that
19 Mr. Montanez's car had some damage to the
20 fender, and you used those facts in order to
21 manipulate Ms. Vargas into believing that
22 that was the car that she had seen at the gas
23 station, right?
24     A. On advice of counsel, I assert my

**112**

1  Fifth Amendment rights.
2      Q. Now, I'm going to have you look at
3  what has been previously marked as Guevara
4  Exhibit 3. It's a collection of documents
5  from RFC-Serrano/Montanez 1 through 148.
6      MR. GIVEN: The original for him, right?
7      MS. BONJEAN: Yes.
8  BY MS. BONJEAN:
9      Q. Mr. Halvorsen, I'm handing you what
10 has been previously marked as Exhibit 3,
11 which purports to be the complete
12 investigative file for the Rodrigo Vargas
13 murder. It is Bates stamped
14 RFC-Serrano/Montanez 1 through 148. I'd ask
15 please, sir, that you turn your attention, if
16 you would, to the Bates stamp 96, which is
17 towards the end of the document.
18     MR. GIVEN: And let me just state -- Go
19 ahead. You can point it out to him.
20     MS. BONJEAN: Okay. You can make
21 your...
22     MR. GIVEN: I'll just state for the
23 record and tell the witness, Mr. Halvorsen,
24 pay attention to me when Ms. Bonjean is

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

29 (113 to 116)

113

1  getting you to the page. When you are
2  directed to a document, you should feel free
3  to review the document to the extent
4  necessary -- to the extent you feel necessary
5  in order to understand and answer the
6  question; and that will apply as we go
7  through the rest of the day.
8  BY MS. BONJEAN:
9      Q. Now, Mr. Halvorsen, I'd like to
10 draw your attention to the supplemental
11 police report that begins at the Bates stamp
12 96 and goes through 99 and that bears your
13 signature at the bottom of Page 96.
14     Do you see that, sir?
15     A. Yes.
16     MR. GIVEN: Okay. That's fine. Go
17 ahead.
18 BY MS. BONJEAN:
19     Q. Sir, at the page -- At the bottom
20 of Page 96, is that your signature underneath
21 the typewritten entry that says "Detective E.
22 Halvorsen, Star No. 20692"?
23     A. On advice of counsel, I assert my
24 Fifth Amendment rights.

114

1      Q. And, sir, do you see next to that
2  entry another officer's name that reflects
3  "Detective R. Guevara, Star No. 20861 that
4  has his signature or purported signature
5  beneath it? Do you see that, sir?
6      MR. GIVEN: Objection; form and
7  compound: You can answer.
8      THE WITNESS: On advice of counsel, I
9  assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11     Q. Sir, isn't it true that frequently
12 you -- strike that.
13     Isn't it true almost -- almost
14 always you were responsible for authoring
15 police reports on cases where you and
16 Detective Guevara worked together?
17     MR. GIVEN: Form.
18     THE WITNESS: On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21     Q. And, in fact, isn't it true that
22 you had previously said that you both -- you
23 and Detective Guevara had different skill
24 sets in your policing abilities?

115

1      MR. GIVEN: Form.
2      THE WITNESS: On advice of counsel, I
3  assert my Fifth Amendment rights.
4  BY MS. BONJEAN:
5      Q. And isn't it true that Detective
6  Guevara was someone who had a lot of
7  knowledge about the streets and,
8  specifically, about the gangs in Humboldt
9  Park?
10     A. On advice of counsel, I assert my
11 Fifth Amendment rights.
12     Q. And you viewed yourself as someone
13 who had skills in writing police reports?
14 You were sort of the brains behind the
15 operation, right?
16     MR. GIVEN: Form. Sorry, Form.
17     THE WITNESS: On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20     Q. And, in fact, Detective Guevara was
21 not much of a writer, was he?
22     MR. GIVEN: Form.
23     THE WITNESS: On advice of counsel, I
24 assert my Fifth Amendment rights.

116

1  BY MS. BONJEAN:
2      Q. In fact, isn't it true that
3  Detective Guevara didn't really write
4  competent police reports?
5      MR. GIVEN: Form, foundation.
6      THE WITNESS: On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9      Q. And that usually when you were
10 investigating a case with Detective Guevara,
11 you would be the responsible party for
12 authoring the police reports, and he would be
13 the more hands-on officer in the field,
14 correct?
15     MR. GIVEN: Form.
16     THE WITNESS: On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19     Q. And that was the case when this
20 supplemental report that has been marked
21 already and is before you was prepared,
22 right?
23     MR. GIVEN: Form. And with that, I
24 don't mean to do a speaking objection; but

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

117

1  when you say "that was the case," I'm not
2  sure what you're referring to.
3       MS. BONJEAN:  Sure.  I'll -- I'll -- I
4  will rephrase.
5  BY MS. BONJEAN:
6       Q.  Sir, isn't it true that the
7  supplemental report that's before you that
8  has the Bates stamp 96 through 99 as part of
9  Exhibit 3 is a supplemental report that you,
10 in fact, authored?
11      **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13      Q.  And even though the report has
14 Detective Guevara's name on it as well, you
15 actually typed his name in there and signed
16 his name, didn't you?
17      **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19      Q.  In fact, you frequently signed
20 Detective Guevara's name to police reports;
21 isn't that correct?
22      MR. GIVEN:  Form and foundation.
23      THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

118

1  BY MS. BONJEAN:
2       Q.  Now, this police report indicates,
3  sir, that it was submitted on June 2nd, 1993;
4  isn't that right?
5       **A.  On advice of counsel, I assert my**
6  **Fifth Amendment rights.**
7       Q.  In fact, that is untrue, isn't it?
8  This police report was not submitted on
9  June 2nd, 1993, was it?
10      **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12      Q.  And, in fact, if you look at Page
13 99, the last page of the supplemental report,
14 the narrative contains facts that occurred on
15 June 6th, 1993; isn't that correct?
16      **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18      Q.  And you would agree, sir, that
19 June 6th, 1993 actually comes after
20 June 2nd, 1993 chronologically?
21      **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23      Q.  Now, in this police report that you
24 authored, sir, isn't it true that you

119

1  memorialized the meeting that occurred with
2  Frankie Vicente on June 2nd, 1993 at the gang
3  crimes unit of the Cook County State's
4  Attorney's office?
5       **A.  On advice of counsel, I assert my**
6  **Fifth Amendment rights.**
7       Q.  And isn't it true that you did not
8  name Frankie Vicente by name in the
9  supplemental police report but identified him
10 as a circumstantial witness; isn't that
11 correct?
12      **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14      Q.  And isn't it true that you claim in
15 your police report that you did so for his
16 safety so that he could remain anonymous
17 since he was giving information about a
18 crime?  But that was, in fact, the reason why
19 you called him a confidential witness -- a
20 circumstantial witness, is it?
21      MR. GIVEN:  Objection; form.
22      THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

120

1  BY MS. BONJEAN:
2       Q.  Isn't it true that because Frankie
3  Vicente was already being used in the Robert
4  Buto case, it was your hope that you would be
5  able to find a better witness than Frankie
6  Vicente to use in the frame-up of the
7  plaintiffs in this matter, correct?
8       MR. GIVEN:  Objection; form.
9       THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12      Q.  But this served as a basis that --
13 strike that.
14        But isn't it true that you,
15 nonetheless, reported the meeting with
16 Frankie Vicente in the gang crimes unit so
17 that you could use Frankie Vicente, if
18 necessary, as witness at trial against the
19 plaintiffs?
20      **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22      Q.  And, now, I'd ask you to look at
23 Page 97 of the second, I guess, full
24 paragraph that begins with "He is a member of

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

121

1 Imperial Gangsters street gang."
2        Sir, isn't it true that you wrote
3 in this report on Friday, the -- Friday,
4 February 5th, 1993, "He was hanging out by a
5 dope spot at Hamlin and Altgeld.  Between
6 8:30 and 9:00, a car arrived at this
7 location.  He recognized the driver of the
8 car as being Pistol Pete.  Also in the car
9 were Jordan and Mondo.  He recognized all
10 three of these guys, as they were also
11 members of the Imperial Gangsters."
12       Do you see that statement, sir,
13 that you drafted in this report?
14    **A.  On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16    Q.  And isn't it true that when you
17 authored this report, you knew that
18 Mr. Vicente had not been hanging out at a
19 dope spot on Hamlin and Altgeld on
20 February 5th, 1993?
21    **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23    Q.  And, in fact, when you authored
24 this report, sir, you knew that it was untrue

122

1 that Mr. Vicente had recognized the driver of
2 the car as Pistol Pete and that Jordan and
3 Mondo were in the car; isn't that correct?
4    **A.  On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6    Q.  In fact, you knew these were false
7 statements that had been fed to Frankie
8 Vicente on June 2nd, 1993, correct?
9    **A.  On advice of counsel, I assert my**
10 **Fifth Amendment rights.**
11   Q.  And these false statements you then
12 took and placed in a police report
13 representing that Mr. Vicente had made these
14 statements when, in fact, he had merely
15 repeated a story that you had fed to him,
16 along with Detective Guevara and Assistant
17 State's Attorneys Coghlan and Dillon?
18   MS. CERCONE:  Object to form.
19   THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22   Q.  And, sir, isn't it true that you
23 also falsely reported in this supplemental
24 police report that Vicente told you and

123

1 Detective Guevara that the plaintiffs in this
2 matter, Mr. Montanez, Mr. Serrano, and
3 Mr. Pacheco were riding a tan-colored Buick
4 Regal, and that he recognized -- that he
5 recognized as being Pistol Pete's car, that
6 Jordan and Mondo got out of the car, and that
7 Pistol Pete sat in the car playing around
8 with a bag of dope?
9        Isn't it true that that is a
10 statement, sir, that was falsely -- It was
11 contrived falsely by yourself, Detective
12 Guevara, Assistant's State's Attorneys Dillon
13 and Coghlan?
14   Ms. CERCONE:  Object to form.
15   MR. GIVEN:  Form.
16   THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19   Q.  And isn't it true that you included
20 this false statement in your police report
21 that you authored sometime after June 6th,
22 1993?
23   MR. GIVEN:  Form; foundation.
24   THE WITNESS:  On advice of counsel, I

124

1 assert my Fifth Amendment rights.
2 BY MS. BONJEAN:
3    Q.  Isn't it true, sir, that you also
4 included a false statement in this police
5 report that Vicente told you the following:
6 "The three of them were talking about a
7 robbery that they had just done that had gone
8 bad and that Pistol Pete had stated that
9 Mondo fucked up and that he had went at the
10 guy wrong and he would -- he would've never
11 did what he did if Mondo had not fucked up
12 and that Jordan stood around laughing at
13 Pistol Pete yelling at Mondo."
14       Isn't it true, sir, that that, too,
15 was a false statement that you included in
16 the supplemental police report?
17   MR. GIVEN:  Objection; form.
18   THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21   Q.  And isn't it true that Frankie
22 Vicente never told you these statements that
23 we have just read, that the three of them
24 were talking about a robbery that they had

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

125

1 done that had gone bad, and that Pistol Pete
2 had stated that Mondo fucked up and he went
3 at the guy wrong?
4    MR. GIVEN:  Form.
5    THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8    Q.  Isn't it true, sir, that the entire
9 narrative that is contained on Page 97, if
10 you could take a look there, was a false
11 narrative that you attributed to Frankie
12 Vicente?
13    MR. GIVEN:  Objection; form.
14        Just Page 97 or --
15    MS. BONJEAN:  Yeah, just stop there.
16 Yes.
17    MR. GIVEN:  Form.
18    THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21    Q.  And isn't it true that there is no
22 statement on Page 97 through 98 in which
23 Vicente admits -- strike that.  Just stay on
24 97 so you don't have to keep looking back and

126

1 forth.  Let me start over.
2        Sir, isn't it true that every
3 statement that is contained on 97 that -- in
4 which Vicente alleges that Mr. Serrano,
5 Mr. Montanez, or Mr. Pacheco made admissions
6 regarding their involvement in the Vargas
7 murder is, in fact, false?
8    **A.  On advice of counsel, I assert my**
9 **Fifth Amendment rights.**
10    Q.  And the narrative that is contained
11 on Page 97 is a narrative that -- a false
12 narrative that was fed to Frankie Vicente by
13 yourself, Detective Guevara, and Assistant
14 State's Attorneys Dillon and Coghlan; isn't
15 that right?
16    MS. CERCONE:  Object to form.
17    THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20    Q.  And the false narrative that is
21 contained on Page 97 of this exhibit is a
22 false narrative that you then incorporated
23 into this supplemental report, correct?
24    **A.  On advice of counsel, I assert my**

127

1 **Fifth Amendment rights.**
2    Q.  And at no point did you put in the
3 supplemental report any information about how
4 the narrative had been fed to Frankie Vicente
5 by yourself, Detective Guevara, and Assistant
6 State's Attorneys Dillon and Coghlan?
7    MS. CERCONE:  Form.
8    THE WITNESS:  On advice of counsel, I
9 assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11    Q.  And isn't it true, sir, that you
12 never reported in this supplemental report or
13 any other that Frankie Vicente had no
14 knowledge about the murder of Rodrigo Vargas
15 and was merely regurgitating a story that had
16 been fed to him by yourself and your fellow
17 defendants?
18    MS. CERCONE:  Object to form.
19    THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22    Q.  And isn't it true that if you turn
23 the page, sir, on Page 98 of Exhibit 3, you
24 authored statements alleged -- allegedly made

128

1 by Frankie Vicente during the meeting that
2 occurred on June 2nd, 1993, correct?
3    **A.  On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5    Q.  And, again, the statements that are
6 contained on Page 98 of Exhibit 3 are also
7 false statements that were attributed to
8 Frankie Vicente, correct?
9    MR. GIVEN:  Objection; form.
10    THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13    Q.  And isn't it true that Frankie
14 Vicente did not make any of these statements
15 contained in this police report, both on Page
16 97 and 98, that you report as being truthful
17 reflections of what he told you on June 2nd?
18    MR. GIVEN:  Form.
19    THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22    Q.  And, in fact, this entire statement
23 that has been attributed to Frankie Vicente
24 in the supplemental police report that you

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

129

1  authored was actually contrived by yourself,
2  Detective Guevara, Assistant State's
3  Attorneys Dillon and Coghlan and falsely
4  attributed to Frankie Vicente, correct?
5      MS. CERCONE: Object to form.
6      THE WITNESS: On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9      Q. And when you wrote this police
10 report, you knew that Frankie Vicente had not
11 been present at any point when the plaintiffs
12 confessed their involvement in the murder of
13 Rodrigo Vargas, right?
14     **A. On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16     Q. You also included in this police
17 report at the bottom of Page 98 a statement
18 by Wilda Vargas; isn't that correct?
19     **A. On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q. And this statement that is
22 attributed to Wilda Vargas is pertaining to
23 the gas station episode; isn't that correct?
24     **A. On advice of counsel, I assert my**

130

1  **Fifth Amendment rights.**
2      Q. And when I say "the gas station
3  episode," I'm talking about the gas station
4  incident on February 4th, 1993 where
5  Ms. Vargas had reported that she had gone to
6  the gas station with her husband after they
7  had gone to the bank, and that they had got
8  into like a beeping -- beeping cars at each
9  other incident there with three Latino men in
10 a tan car?
11     **A. On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13     Q. And although, sir, you included
14 this statement of Wilda Vargas in this
15 June 2nd, 1993 police report, you had
16 information about the gas station episode
17 almost immediately after you were assigned to
18 the case on February 1993; isn't that right?
19     **A. On advice --**
20     MR. GIVEN: Form.
21     THE WITNESS: On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24     Q. In fact, you and Detective Guevara

131

1  certainly interviewed the victim shortly
2  after you were assigned to the case in
3  February of 1993; and you, in fact,
4  interviewed her about the 24-hour period
5  preceding her husband's murder; isn't that
6  right?
7      MR. GIVEN: Objection. You said victim.
8      MS. BONJEAN: Okay. Let me start over.
9  I'm doing a lot of work here.
10     MR. GIVEN: All you have to do is read
11 it off the page.
12     MS. BONJEAN: No, I'm not -- I
13 actually --
14     MR. GIVEN: You have a script right over
15 there. I see it.
16     MS. BONJEAN: Well, keep up. We're
17 talking about timing here.
18     MR. GIVEN: Go ahead. Anyway, I don't
19 think anybody interviewed the victim was
20 my -- the point, so...
21     MS. BONJEAN: Yeah, that's a good point.
22 Thank you. I don't think I would have caught
23 that.
24

132

1  BY MS. BONJEAN:
2      Q. Anyway, Mr. Halvorsen, isn't it
3  true that you and Detective Guevara were able
4  to obtain information about the gas station
5  incident that occurred on February 4th, 1993
6  when you interviewed the victim's wife in
7  this case in February of 1993?
8      **A. On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10     Q. And, in fact, you had that
11 information that you did not report, but you
12 had it from having -- you did not report in
13 any GPR, right?
14     MR. GIVEN: Objection; form, foundation.
15     THE WITNESS: On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18     Q. After you had put into motion your
19 plan to frame Mr. Serrano, Mr. Montanez, and
20 Mr. Pacheco, you utilized that information to
21 give credibility to Frankie Vicente's
22 fabricated story, correct?
23     MR. GIVEN: Form.
24     THE WITNESS: On advice of counsel, I

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

---

133

1  assert my Fifth Amendment rights.
2  BY MS. BONJEAN:
3      Q.  And, in fact, sir, you also report
4  in this June 2nd, 1993 supplemental report
5  that Detective Guevara showed Ms. Vargas a
6  photo array consisting of eight
7  identification photos in that she identified
8  Mr. Montanez, Mr. Serrano, and Mr. Pacheco as
9  those individuals she saw at the gas station
10 on February 4th of 1993, correct?
11     MR. GIVEN:  Form.
12     THE WITNESS:  On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15     Q.  But that, too, was a false
16 statement that you included in your
17 supplemental report, correct?
18     MR. GIVEN:  Form.
19     THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q.  In fact, at no point did you or
23 Detective Guevara show Ms. Vargas a photo
24 array consisting of eight photographs, did

---

134

1  you or did he?
2      **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4      Q.  Rather, you and Detective Guevara
5  told Ms. Vargas that you had determined who
6  the individuals at the gas station were,
7  correct?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10     Q.  And, in fact, isn't it true, sir,
11 that you and Detective Guevara actually
12 showed Ms. Vargas three Polaroid photographs
13 of the plaintiffs in this case?
14     **A.  On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16     Q.  And rather than ask Ms. Vargas to
17 actually make an identification of the
18 individuals she saw at the gas station, you
19 told her who was at the gas station and
20 identified Mr. Serrano, Montanez, and Pacheco
21 as those three Latino men in the tan car?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q.  And, sir, isn't it true also that

---

135

1  you falsely reported in your supplemental
2  report that you had Ms. Vargas drive around
3  the neighborhood of the 3900 block of West
4  Dickens on June 6th, 1993 to see if she could
5  recognize the car from the gas station?
6      MR. GIVEN:  Objection; form.
7      THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment rights.
9  BY MS. BONJEAN:
10     Q.  And, sir, you reported in this
11 police report that she positively identified
12 a 1984 Buick Regal belonging to Jose Montanez
13 as the car that followed her from the gas
14 station, correct?
15     **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17     Q.  When, in fact, sir, you and
18 Detective Guevara actually brought Ms. Vargas
19 to Mr. Montanez's car and told her that that
20 was the car that had been at the gas station,
21 correct?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q.  You further falsely told Ms. Vargas

---

136

1  that that was the car that had been connected
2  to her husband's murder on February 5th of
3  1993, correct?
4      **A.  On advice of counsel, I assert my**
5  **Fifth Amendment rights.**
6      Q.  And the statements that you
7  included in this supplemental report
8  regarding Ms. Vargas identifying the car
9  without your prompting were false statements,
10 correct?
11     MR. GIVEN:  Form.
12     THE WITNESS:  On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15     Q.  You certainly didn't report in your
16 supplemental report that you had drove
17 Ms. Vargas to look at Jose Montanez's car,
18 correct?
19     **A.  On advice of --**
20     MR. GIVEN:  Form.  Sorry, form.
21     THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24     Q.  And, in fact, this supplemental

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

35 (137 to 140)

137

1 report that you authored is devoid of any
2 information that you -- that Ms. Vargas was
3 unable to identify the tan car as the car she
4 saw at the gas station, right?
5     A.  Form.
6     MR. GIVEN:  Form.
7     THE WITNESS:  On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10     Q.  And you failed to report in
11 this police report that you falsely told
12 Ms. Vargas that the damage to Mr. Montanez's
13 car and the bullet hole was somehow connected
14 to firearms evidence that was found at the
15 murder scene, right?
16     A.  On advice of counsel, I assert my
17 Fifth Amendment rights.
18     Q.  And you took all of these actions
19 in order to execute the plan to frame
20 Mr. Serrano, Mr. Montanez, and Mr. Pacheco
21 for the murder of Rodrigo Vargas, correct?
22     MR. GIVEN:  Form.
23     THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

138

1 BY MS. BONJEAN:
2     Q.  You also prepared this police
3 report with the state- -- with these
4 statements in order to justify an arrest of
5 Armando Serrano, correct?
6     A.  On advice of counsel, I assert my
7 Fifth Amendment rights.
8     Q.  In fact, isn't it true, sir, that
9 you and Detective Guevara arranged for
10 Mr. Serrano to be arrested on June 8th of
11 1993?
12     MR. GIVEN:  Form.
13     THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q.  And, in fact, Mr. Serrano was
17 brought to Grand and Central on June 8th,
18 1993 in connection with the murder of Rodrigo
19 Vargas, right?
20     A.  On advice of counsel, I assert my
21 Fifth Amendment rights.
22     Q.  Isn't it true that you and
23 Detective Guevara discussed that you wanted
24 to bring Mr. Serrano in for questioning in

139

1 hopes that he would make an inculpatory
2 statement against himself, correct?
3     A.  On advice of counsel, I assert my
4 Fifth Amendment rights.
5     Q.  Or, alternatively, you wanted to
6 bring Mr. Serrano in in hopes that he might
7 point the finger at another party, maybe
8 Mr. Montanez or Mr. Pacheco, correct?
9     A.  On advice of counsel, I assert my
10 Fifth Amendment rights.
11     Q.  In fact, you wanted to fabricate
12 more evidence in order to frame these three
13 individuals, the plaintiffs in this case,
14 because you didn't want to rely solely on
15 Frankie Vicente's statements, right?
16     MR. GIVEN:  Form.
17     THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20     Q.  You didn't want to use Vicente as
21 the key witness in the murder prosecution of
22 Rodrigo Vargas because he was already being
23 used in another murder case, correct?
24     MR. GIVEN:  Form; foundation.

140

1     THE WITNESS:  On advice of counsel, I
2 assert my Fifth Amendment rights.
3 BY MS. BONJEAN:
4     Q.  And isn't it true that it was
5 highly suspicious that one snitch witness
6 would be used in three separate murder cases?
7 And you knew that that would be looked at as
8 scams by the Court, correct?
9     MR. GIVEN:  Form; foundation,
10 competence, speculation.
11     THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14     Q.  And isn't it true that there was
15 absolutely no probable cause to believe that
16 Mr. Serrano had been involved in the murder
17 of Rodrigo Vargas when you arranged for him
18 to be arrested on June 8th, 1993, correct?
19     MR. GIVEN:  Objection; form.
20     THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23     Q.  The only evidence against
24 Mr. Serrano that existed at the time that he

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

36 (141 to 144)

141

1  was arrested on June 8th, 1993 was evidence
2  that you fabricated and fed to Mr. Vicente
3  and reported in your June 2nd, 1993 report,
4  correct?
5      **A. On advice of counsel, I assert my**
6  **Fifth Amendment rights.**
7      Q. In fact, the only basis for the
8  arrest of Mr. Serrano on June 8th, 1993 was
9  false and fabricated evidence that had been
10 developed by yourself, Detective Guevara, and
11 Assistant State's Attorneys Dillon and
12 Coghlan?
13     MS. CERCONE: Object to form.
14     THE WITNESS: On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17     Q. Now, after Mr. Serrano was brought
18 to Grand and Central on February 8th of
19 199- -- strike that.
20     After Mr. Serrano was brought to
21 Grand and Central on June 8th of 1993, he was
22 interrogated for a period of about 24 hours;
23 isn't that right?
24     **A. On advice of counsel, I assert my**

142

1  **Fifth Amendment rights.**
2      Q. And you and Detective Guevara did
3  as you often did and played tag team in the
4  interrogation of Mr. Serrano, correct?
5      MR. GIVEN: Form.
6      THE WITNESS: On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9      Q. And as was your routine, you played
10 the good cop while Ray played the bad cop,
11 right?
12     MR. GIVEN: Form.
13     THE WITNESS: On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q. And the way this played out on
17 June 8th of 1993 is that Detective Guevara
18 would come in the interrogation room and
19 physically abuse Mr. Serrano; isn't that
20 correct?
21     MR. GIVEN: Form.
22     THE WITNESS: On advice of counsel, I
23 assert my Fifth Amendment rights.
24

143

1  BY MS. BONJEAN:
2      Q. In fact, isn't it true, sir, that
3  Mr. Guevara slapped plaintiff repeatedly and
4  accused him of killing Rodrigo Vargas while
5  he was held in this interrogation for a
6  24-hour period?
7      **A. On advice of counsel, I assert my**
8  **Fifth Amendment rights.**
9      Q. In fact, isn't it true that you
10 either witnessed Detective Guevara slapping
11 plaintiff in the face or heard Detective
12 Guevara slapping plaintiff repeatedly during
13 the course of the 24-hour period?
14     **A. On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16     Q. And after Detective Guevara would
17 physically abuse Plaintiff Serrano by
18 slapping him, he would sometimes leave the
19 room and let you come in and do your good cop
20 thing, right?
21     MR. GIVEN: Objection; form.
22     THE WITNESS: On advice of counsel, I
23 assert my Fifth Amendment rights.
24

144

1  BY MS. BONJEAN:
2      Q. And, in fact, sir, you did come in
3  and question Mr. Serrano on a number of
4  occasions during this 24-hour period to try
5  to gain his cooperation in -- in the case by
6  using less aggressive methods, right?
7      MR. GIVEN: Form.
8      THE WITNESS: On advice of counsel, I
9  assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11     Q. Isn't it true that you told
12 Plaintiff Serrano that if he just admitted
13 his involvement, you could -- you could --
14 you could help him get leniency in the case?
15     **A. On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17     Q. Isn't it true that you told
18 Plaintiff Serrano that you already knew that
19 he and Montanez and Pacheco did it, and if he
20 just pointed the finger at Montanez and
21 Pacheco, you would make sure that he got a
22 benefit or a deal for his involvement in the
23 murder of Vargas?
24     **A. On advice of counsel, I assert my**

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

145

1 Fifth Amendment rights.
2     Q.  And then after your friendlier
3 methods were unsuccessful in obtaining
4 cooperation form Mr. Serrano, isn't it true
5 that Detective Guevara would return to the
6 interrogation room would where he would,
7 again, use physical force to extract a
8 statement from Mr. Serrano?
9     MR. GIVEN:  Form.
10    THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13    Q.  But isn't it true, sir, that during
14 that 24-hour period, your method -- your
15 methods and Detective Guevara's methods
16 didn't work, did they?
17    MR. GIVEN:  Form.
18    THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21    Q.  You and Detective Guevara couldn't
22 get Mr. Serrano to confess, could you?
23    A.  On advice of counsel, I assert my
24 Fifth Amendment rights.

146

1     Q.  And isn't it true that neither
2 you or Detective Guevara could even get
3 Mr. Serrano to implicate third parties in the
4 murder of Rodrigo Vargas, right?
5     A.  On advice of counsel, I assert my
6 Fifth Amendment rights.
7     Q.  But, sir, isn't it true that you
8 had probable cause to arrest Mr. Serrano?
9     MR. GIVEN:  Object.  Go ahead.
10    MS. BONJEAN:  Let me start over.  Let me
11 strike that.
12 BY MS. BONJEAN:
13    Q.  Isn't it true that you had prepared
14 a report that reflected that you had probable
15 cause to arrest Mr. Serrano?
16    A.  On advice of counsel, I assert my
17 Fifth Amendment rights.
18    Q.  And, in fact, you and Detective
19 Guevara were already relying on false
20 statements by Vicente and could have used
21 that information to arrest Mr. Serrano,
22 right?
23    MR. GIVEN:  Objection; form, incomplete
24 hypothetical, calls for speculation.

147

1     You can answer.
2     THE WITNESS:  On advice of counsel, I
3 assert my Fifth Amendment rights.
4 BY MS. BONJEAN:
5     Q.  Well, the point is, sir, that you
6 didn't actually arrest or charge Mr. Serrano
7 on February 8th, 1993; isn't that correct?
8     A.  On advice of counsel, I assert my
9 Fifth Amendment rights.
10    Q.  Despite claiming that you had a
11 witness who had heard Mr. Serrano confess to
12 the crime and had a witness who identified
13 Mr. Serrano at the gas station, you did not,
14 in fact, charge Mr. Serrano with the murder
15 of Rodrigo Vargas on February 8th, 1993,
16 correct?
17    MR. GIVEN:  Objection; form and
18 foundation.
19    THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22    Q.  In fact, you released Mr. Serrano
23 on February 9th, 1993, correct?
24    A.  On advice of counsel, I assert my

148

1 Fifth Amendment rights.
2     Q.  And you released Mr. Serrano on
3 February 9th, 1993 because you knew Vicente's
4 statements were going to be problems -- be a
5 problem in the future, right?
6     MR. GIVEN:  Form.
7     THE WITNESS:  On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10    Q.  You wanted to develop more false
11 evidence in order to successfully frame
12 Mr. Serrano, Mr. Montanez, and Mr. Pacheco in
13 the murder of Rodrigo Vargas, correct?
14    A.  On advice of counsel, I assert my
15 Fifth Amendment rights.
16    Q.  And you hoped that Mr. Serrano
17 might provide some statements, either
18 implicating himself or implicating others
19 that could be used, but that plan did not
20 work out, correct?
21    MR. GIVEN:  Form.
22    THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

149

1  BY MS. BONJEAN:
2      Q.  So you were forced to release
3  Mr. Serrano on February -- on June 9th, 1993,
4  correct?
5      MR. GIVEN:  Form.
6      THE WITNESS:  On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9      Q.  And, in fact, at that point, sir,
10  you decided that you would cultivate another
11  witness to act as a witness in the Vargas
12  murder, right?
13      MR. GIVEN:  Form.
14      THE WITNESS:  On advice of counsel, I
15  assert my Fifth Amendment rights.
16  BY MS. BONJEAN:
17      Q.  Did you prepare any police reports
18  regarding your arrest and interrogation of
19  Mr. Serrano on February 8th of 1993?
20      **A.  On advice of counsel, I assert my**
21  **Fifth Amendment rights.**
22      Q.  Did you prepare any GPRs that
23  reflected that Mr. Serrano had not made any
24  statements implicating himself or others in

150

1  the murder of Rodrigo Vargas?
2      **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4      Q.  And did you ensure that any of
5  those police reports or GPRs were tendered to
6  Mr. Serrano's attorneys after he was charged
7  with the murder of Rodrigo Vargas?
8      MR. GIVEN:  Objection; form, foundation,
9  competence.
10      THE WITNESS:  On advice of counsel, I
11  assert my Fifth Amendment rights.
12  BY MS. BONJEAN:
13      Q.  Now, isn't it true, Mr. Halvorsen,
14  that on June 11th of 1993, a person by the
15  name of Timothy Rankins was brought into
16  Area 5, otherwise known as Grand and Central?
17      **A.  On advice of counsel, I assert my**
18  **Fifth Amendment rights.**
19      Q.  Isn't it true that you, along with
20  Detective Guevara and your supervisor,
21  Sergeant Mingy, decided that you would
22  cultivate Mr. Rankins as a witness in the
23  murder of Rodrigo Vargas?
24      MR. GIVEN:  Form.

151

1      THE WITNESS:  On advice of counsel, I
2  assert my Fifth Amendment rights.
3  BY MS. BONJEAN:
4      Q.  You were concerned, sir, isn't it
5  true, that Vicente wouldn't be able to tell a
6  credible story implicating Montanez, Serrano,
7  and Pacheco in the Vargas homicide?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10      Q.  And isn't it true that you and
11  Detective Guevara spoke with your supervisor,
12  Sergeant Mingy, along with Assistant State's
13  Attorneys Dillon and Coghlan about the need
14  to get another witness to corroborate
15  Vicente's testimony against Montanez,
16  Serrano, and Pacheco?
17      **A.  On advice of counsel, I assert my**
18  **Fifth Amendment rights.**
19      Q.  Isn't it true that you talked to
20  Defendants Mingy, Dillon, and Coghlan about
21  the need to get another witness to play the
22  role that you initially wanted Vicente to
23  plea -- play, that is, as an eyewitness to
24  the Vargas murder who would falsely claim to

152

1  have seen Montanez, Serrano, and Pacheco
2  commit that murder?
3      MS. CERCONE:  Object to form.
4      MR. GIVEN:  Form.
5      THE WITNESS:  On advice of counsel, I
6  assert my Fifth Amendment rights.
7  BY MS. BONJEAN:
8      Q.  How exactly, sir, did you come into
9  contact with Timothy Rankins on June 11th of
10  1993?
11      **A.  On advice of counsel, I assert my**
12  **Fifth Amendment rights.**
13      Q.  Isn't it true actually that
14  Mr. Rankins was brought into Area 5 by
15  Sergeant Mingy and yourself?
16      **A.  On advice of counsel, I assert my**
17  **Fifth Amendment rights.**
18      Q.  And isn't it true that you and
19  Defendant Serrano -- I'm sorry.  Strike
20  that.  You, Defendant Guevara, and Defendant
21  Mingy told Rankins that Montanez, Serrano,
22  and Pacheco had testified against his brother
23  in another case?
24      **A.  On advice of counsel, I assert my**

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

---

153

1 Fifth Amendment rights.
2     Q.  And you told Mr. Rankins that the
3 plaintiffs in this matter had testified
4 against his brother in order to get him to
5 cooperate in falsely implicating the
6 plaintiffs in the murder of Rodrigo Vargas,
7 right?
8     A.  On advice of counsel, I assert my
9 Fifth Amendment rights.
10     Q.  And isn't it true that you and
11 Detective Guevara and Sergeant Mingy all
12 agreed that you would either coerce or entice
13 Mr. Rankins, whatever it took, to falsely
14 implicate Montanez, Serrano, and Pacheco in
15 the Vargas murder?
16     MR. GIVEN:  Form.
17     THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20     Q.  And isn't it true that in your
21 presence, Defendant Mingy told Rankins that
22 the reason he wanted to frame Montanez,
23 Serrano, and Pacheco is because he couldn't
24 catch them on a case, but he knew that they

---

154

1 were selling drugs?
2     A.  On advice of counsel, I assert my
3 Fifth Amendment rights.
4     Q.  And isn't it true that you
5 evenly -- you evenly tried to get Rankins to
6 falsely implicate two brothers by the name of
7 Rico and Marlo in a separate murder?
8     A.  On advice of counsel, I assert my
9 Fifth Amendment rights.
10     Q.  And in attempting to get
11 Mr. Rankins to implicate this -- these
12 people, Rico and Marlo in this other murder,
13 you also told Rankins that they had testified
14 against his brother in another case, correct
15 crick?
16     A.  On advice of counsel, I assert my
17 Fifth Amendment rights.
18     Q.  Isn't it true that you also told
19 Rankins that if he did you this favor and
20 falsely implicated the plaintiffs in the
21 murder of Rodrigo Vargas, you could get his
22 robbery charge dismissed?
23     A.  On advice of counsel, I assert my
24 Fifth Amendment rights.

---

155

1     Q.  And isn't it true that you told
2 Rankins that you needed him to testify that
3 he actually saw the Plaintiffs Serrano,
4 Montanez, and Pacheco murder Rodrigo Vargas?
5     A.  On advice of counsel, I assert my
6 Fifth Amendment rights.
7     Q.  And isn't it true that when
8 Mr. Rankins initially declined to assist you,
9 you also told him that you may just frame him
10 for the murder of Rodrigo Vargas?
11     A.  On advice of counsel, I assert my
12 Fifth Amendment rights.
13     Q.  And isn't it true that you and
14 Detective Guevara were present in an
15 interview room when Detective Guevara kicked
16 Mr. Rankins out of a chair that he was seated
17 in while his hands were cuffed behind him?
18     A.  On advice of counsel, I assert my
19 Fifth Amendment rights.
20     Q.  Isn't it true that you were also
21 present when Detective Guevara and Sergeant
22 Mingy kicked Mr. Rankins in the stomach and
23 the back while he was in custody at Grand and
24 Central?

---

156

1     A.  On advice of counsel, I assert my
2 Fifth Amendment rights.
3     Q.  And isn't it true that you observed
4 Detective Guevara place a phonebook on
5 Rankins's head and strike the phonebook with
6 a flashlight while he was in custody at Grand
7 and Central?
8     A.  On advice of counsel, I assert my
9 Fifth Amendment rights.
10     Q.  And, in fact, isn't it true that
11 that was a method that Detective Guevara had
12 used frequently when he was using physical
13 coercion against suspects, that is, using a
14 phonebook that he would then hit with a
15 flashlight?
16     MR. GIVEN:  Form and foundation.
17     THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20     Q.  Isn't it true that in your
21 experience that when an officer hits a
22 suspect with a flashlight while using a
23 phonebook as a barrier, that avoids leaving
24 marks on the body of the person that's being

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

157

1 beaten?
2     MR. GIVEN:  Form, foundation,
3 competence, and speculation.
4     THE WITNESS:  On advice of counsel, I
5 assert my Fifth Amendment rights.
6 BY MS. BONJEAN:
7     Q.  Isn't it true that while you were
8 making promises, as well as threats of
9 violence against Mr. Rankins, Guevara and
10 Mingy were also present?
11     **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13     Q.  And at no point during the
14 interrogation of Mr. Rankins did you tell
15 Mr. Detective to stop beating him; isn't that
16 correct?
17     **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     Q.  And the reason that you told
20 Rankins that you could help him with his
21 robbery case and also separately threatened
22 to charge him with the murder was because you
23 wanted to coerce him into fabricating a story
24 that implicated Montanez, Serrano, and

158

1 Pacheco in the Vargas murder?
2     **A.  On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4     Q.  And, in fact, eventually you were
5 successful in getting Mr. Rankins to provide
6 a false statement that implicated
7 Mr. Montanez, Mr. Serrano, and Mr. Pacheco in
8 the Vargas murder?
9     **A.  On advice of counsel, I assert my**
10 **Fifth Amendment rights.**
11     Q.  And, in fact, you had Mr. Rankins
12 in custody for almost 24 hours, isn't that
13 right, while you helped him prepare a false
14 statement that he was going to give to an
15 Assistant State's Attorney, correct?
16     MR. GIVEN:  Form.
17     THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20     Q.  And isn't it true that you told
21 Rankins to falsely tell the State's Attorney
22 that Stripes and Barrel Belly pulled up in a
23 car and said they wanted him to do a drug
24 deal with them?

159

1     **A.  On advice of counsel, I assert my**
2 **Fifth Amendment rights.**
3     Q.  Isn't it true that you told Rankins
4 to falsely say the people would want him on a
5 drug deal because he's a fast runner?
6     **A.  On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8     Q.  And isn't it true that you told
9 Rankins to falsely say that he was at a park,
10 and then Stripes, Barrel Belly, and Joker
11 said, "Let's do this," and then they drove to
12 Springfield and Cortland?
13     **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15     Q.  And isn't it true that you told
16 Rankins to falsely say that Joker, Barrel
17 Belly, and Stripes got out of the car while
18 he stayed inside of the car to wait?
19     **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q.  And isn't it true that you told
22 Rankins to falsely say that Joker, Barrel
23 Belly, and Stripes got on either side of the
24 gate and that Stripes said, "Do him, do him,"

160

1 and Barrel Belly said, "Go ahead," and that
2 Joker supposedly opened fire with a nine
3 millimeter gun?
4     MR. GIVEN:  Form.
5     THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8     Q.  And isn't it true that you told
9 Rankins to falsely say that Stripes told him
10 that if he talked about the murder, they
11 would do the same thing to him?
12     **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q.  Isn't it true that you provided
15 Rankins with photographs of Montanez,
16 Serrano, and Pacheco so that he could know
17 who they were and what they looked like?
18     **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q.  And isn't it true that you,
21 Detective Guevara, and Sergeant Mingy fed
22 information to Rankins despite knowing that
23 Rankins had no personal knowledge about the
24 Vargas murder?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

41 (161 to 164)

161

1        A.  On advice of counsel, I assert my
2  Fifth Amendment rights.
3        Q.  And isn't it true that you,
4  Guevara, and Mingy fed information to Rankins
5  despite the fact that you knew that neither
6  Mr. Montanez, Mr. Serrano, nor Mr. Pacheco
7  were involved in any way in the Vargas
8  murder?
9        A.  On advice of counsel, I assert my
10  Fifth Amendment rights.
11        Q.  And, sir, I'm going to have you
12  look at Exhibit 3, please again, if you
13  would.  I'm going to have you look at Page
14  81.  I'll give it to you.
15        Sir, Pages 81 through 85 purports
16  to be a statement of Timothy Rankins taken on
17  June 11th, 1993 at 11:35 p.m.
18        Do you see that statement in front
19  of you, sir?
20        A.  On advice of counsel, I assert my
21  Fifth Amendment rights.
22        Q.  According to this handwritten
23  statement, also present was ASA John King and
24  yourself, Detective Ernest Halvorsen; isn't

162

1  that correct?
2        A.  On advice of counsel, I assert my
3  Fifth Amendment rights.
4        Q.  Isn't it true, sir, that the
5  statement contained in this handwritten
6  statement at 81 through 85 contains a false
7  narrative that you and Detective Guevara and
8  Sergeant Mingy fed to Timothy Rankins?
9        MR. GIVEN:  Form.  Go ahead.
10        THE WITNESS:  On advice of counsel, I
11  assert my Fifth Amendment rights.
12  BY MS. BONJEAN:
13        Q.  In fact, isn't it true that the
14  statements contained in this handwritten
15  statement in which Rankins claims to have
16  been present for the murder of Rodrigo Vargas
17  and witnessed Montanez, Serrano, and Pacheco
18  participate in the murder of Rodrigo Vargas
19  was false in its entirety?
20        A.  On advice of counsel, I assert my
21  Fifth Amendment rights it.
22        Q.  And that Mr. -- Mr. Rankins didn't
23  write out this statement; isn't that fair to
24  say?

163

1        A.  On advice of counsel, I assert my
2  Fifth Amendment rights.
3        Q.  In fact, this was a statement that
4  was attributed to him by yourself, correct?
5        A.  On advice of counsel, I assert my
6  Fifth Amendment rights.
7        Q.  And through physical coercion and
8  promises of leniency, you successfully
9  obtained cooperation from Timothy Rankins, in
10  that he signed this statement, even though
11  its contents were completely false?
12        MR. GIVEN:  Form.
13        THE WITNESS:  On advice of counsel, I
14  assert my Fifth Amendment rights.
15  BY MS. BONJEAN:
16        Q.  In fact, isn't it true that you did
17  not tell the Assistant State's Attorney John
18  King that Mr. Rankins never made any
19  statements to you regarding his knowledge
20  about the murder of Rodrigo Vargas?
21        A.  On advice of counsel, I assert my
22  Fifth Amendment rights.
23        Q.  And isn't it true that you did not
24  tell Assistant State's Attorney John King

164

1  that you, Detective Guevara, and Sergeant
2  Mingy had contrived a false narrative that
3  you persuaded Timothy Rankins to adopt
4  through physical coercion and promises of
5  leniency?
6        MR. GIVEN:  Form.
7        THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment rights.
9  BY MS. BONJEAN:
10        Q.  And isn't it true that you lied in
11  your supplemental police report about the
12  circumstances of your first meeting with
13  Rankins to make it appear that Rankins was
14  voluntarily truthfully implicating Montanez,
15  Serrano, and Pacheco?
16        A.  On advice of counsel, I assert my
17  Fifth Amendment rights.
18        Q.  I'm going to have you, sir, look at
19  Page 68 through 72.  I'm having you look at
20  Page 68 through 72 of Exhibit 3 or Guevara 3
21  that purports to be a supplemental police
22  report prepared on June 14th, 1993.
23        Do you see that, sir?
24        A.  On advice of counsel, I assert my

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

165

1 Fifth Amendment rights.
2     Q.  And this is a said report that you
3 authored, and it bears your signature at the
4 bottom of Page 68, correct?
5     A.  On advice of counsel, I assert my
6 Fifth Amendment rights.
7     Q.  And, again, sir, it also bears the
8 signature of Detective Reynaldo Guevara, who
9 was your partner in the investigation of the
10 Vargas murder, right?
11     A.  On advice of counsel, I assert my
12 Fifth Amendment rights.
13     Q.  But, in fact, it's true, sir, that
14 Mr. Guevara didn't actually sign this
15 supplemental report?  You signed his name at
16 the bottom there, right?
17     A.  On advice of counsel, I assert my
18 Fifth Amendment rights.
19     Q.  And in this report that you
20 authored, you indicated, sir, that Sergeant
21 Mingy interviewed Timothy Rankins regarding
22 his knowledge about an unrelated shooting
23 involving a woman by the name of Monica
24 Roman, right?

166

1     A.  On advice of counsel, I assert my
2 Fifth Amendment rights.
3     Q.  And you also reported, sir, that
4 during this interview, Mr. Rankins revealed
5 to Sergeant Mingy that he was a witness to
6 the Vargas murder on February 5th of 1993,
7 right?
8     A.  On advice of counsel, I assert my
9 Fifth Amendment rights.
10     Q.  But, sir, Mr. Rankins never told
11 Sergeant Mingy he was a witness to the Vargas
12 murder, correct?
13     A.  On advice of counsel, I assert my
14 Fifth Amendment rights.
15     Q.  Rather, you and Sergeant Mingy and
16 Detective Guevara decided that since you had
17 Mr. Rankins in custody on an offense, that
18 you would be able to use him as a witness in
19 the Vargas murder, correct?
20     A.  On advice of counsel, I assert my
21 Fifth Amendment rights.
22     Q.  And in this report that you
23 prepared, you summarized the statement that
24 Timothy Rankins purportedly made to yourself

167

1 and later to Assistant State's Attorney King,
2 right?
3     A.  On advice of counsel, I assert my
4 Fifth Amendment rights.
5     Q.  And apart from any background
6 information about Mr. Rankins, the statements
7 that are contained in this supplemental
8 report in which Mr. Rankins purportedly
9 admitted to being a witness to the murder of
10 Rodrigo Vargas are false; isn't that correct?
11     MR. GIVEN:  Form.
12     THE WITNESS:  On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15     Q.  Isn't it true that the statements
16 that you included in this supplemental report
17 regarding -- strike that.  Let me start over.
18         You fabricated the statements in
19 this report, sir, and then attributed those
20 statements to Mr. Rankins, right?
21     MR. GIVEN:  Form.
22     THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

168

1 BY MS. BONJEAN:
2     Q.  You knew that Mr. Rankins had no
3 knowledge about the murder of Rodrigo Vargas
4 when you authored this report and included
5 false statements in this report, correct?
6     A.  On advice of counsel, I assert my
7 Fifth Amendment rights.
8     Q.  You knew there was no reason to
9 believe that Mr. Serrano, Mr. Montanez, and
10 Mr. Pacheco had any involvement in the
11 Rodrigo Vargas murder when you authored this
12 report and included false statements
13 purportedly made by Timothy Rankins, right?
14     MR. GIVEN:  Form.
15     THE WITNESS:  On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18     Q.  You knew that Timothy Rankins had
19 not witnessed the murder of Rodrigo Vargas,
20 nor had he seen Montanez, Serrano, and
21 Pacheco on February 4th, 1993?
22     A.  On advice of counsel, I assert my
23 Fifth Amendment rights.
24     Q.  You also falsely reported that

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

43 (169 to 172)

---

169

1 Timothy Rankins was shown a photo array
2 consisting of eight Polaroid color photos,
3 correct?
4 **A. On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6 Q. You also -- You falsely reported
7 that Timothy Rankins identified Mr. Serrano
8 as the person known to him as Joker,
9 identified Jorge Pacheco as the person known
10 to him as Stripes, and identified Jose
11 Montanez as the person known to him as
12 Barrel Belly, correct?
13 **A. On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15 Q. And, in fact, isn't it true that
16 you and Detective Guevara merely showed
17 Mr. Rankins Polaroid photos of the plaintiffs
18 in the case when you fed the story to him
19 that you wanted him to repeat for the
20 Assistant State's Attorney?
21 MR. GIVEN: Form.
22 THE WITNESS: On advice of counsel, I
23 assert my Fifth Amendment rights.
24

---

170

1 BY MS. BONJEAN:
2 Q. Sir, isn't it true that you knew
3 that Rankins did not know Sergeant Mingy
4 before his arrest on June 10th, 1993?
5 MR. GIVEN: Form, foundation,
6 competence, speculation.
7 THE WITNESS: On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10 Q. And it's true, sir, that you wrote
11 the supplementary report that Rankins --
12 that you wrote in your supplemental report
13 that Rankins did, in fact, know Sergeant
14 Mingy prior to his arrest in June of 1993?
15 **A. On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17 Q. And you lied in your supplementary
18 report that Rankins knew Defendant Mingy
19 prior to June of 1993?
20 **A. On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22 Q. And you did so so it would be more
23 plausible -- well, strike that.
24 Isn't it true that you falsely

---

171

1 claimed that Rankins knew Defendant Mingy to
2 try to come up with a false story for why you
3 were discussing the Vargas murder with
4 Rankins in the first place?
5 MR. GIVEN: Form.
6 THE WITNESS: On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9 Q. And after you coerced Rankins into
10 telling the story to ASA King, you also
11 brought Rankins to later see Defendant
12 Coghlan, correct?
13 **A. On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15 Q. And isn't it true that in your
16 presence Rankins told Assistant State's
17 Attorney Coghlan that he was beaten by the
18 police in an effort to get him to implicate
19 Montanez, Serrano, and Pacheco?
20 **A. On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22 Q. And isn't it true, sir, that you
23 also brought Mr. Rankins to the crime scene
24 where Mr. Vargas had been murdered so that he

---

172

1 could more credibly tell the false story that
2 you had fabricated and fed to him?
3 **A. On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5 Q. And isn't it true that you
6 coerced Mr. Rankins into falsely implicating
7 Mr. Montanez, Serrano, and Pacheco, along
8 with Mr. Mingy and Detective Guevara because
9 you wanted to frame the plaintiffs for the
10 murder of Rodrigo Vargas?
11 **A. On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13 Q. And, in fact, the supplemental
14 report that you authored, purportedly on
15 June 14th, 1993, which is in Exhibit 3, Bates
16 stamp No. 68 through 72, contains false and
17 fabricated statements that were never made by
18 Timothy Rankins, correct?
19 **A. On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21 Q. And you did not include in your
22 report at any point that you had used any
23 type of misconduct to obtain these false
24 statements from Timothy Rankins, right?

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

173

1      A. On advice of counsel, I assert my
2 Fifth Amendment rights.
3      Q. And you did not report that you had
4 used misconduct -- strike that.
5          You did not report that Detective
6 Guevara had used any physical abuse or other
7 forms of misconduct to secure these false
8 statements from Mr. Rankins, right?
9      A. On advice of counsel, I assert my
10 Fifth Amendment rights.
11     Q. And, yet, you, Detective
12 Guevara, and Sergeant Mingy all knew that
13 Mr. Rankins's story about having witnessed
14 the murder of Rodrigo Vargas was false in its
15 entirety, correct?
16     A. On advice of counsel, I assert my
17 Fifth Amendment rights.
18     Q. Now, sir, after securing this false
19 and fabricated statement from Mr. Rankins,
20 you and Detective Guevara went and arrested
21 Mr. Serrano a second time, correct?
22     A. On advice of counsel, I assert my
23 Fifth Amendment rights.
24     Q. In fact, you and Detective Guevara

174

1 went to Mr. Serrano's house yourself and
2 arrested Mr. Serrano at his home, correct?
3      A. On advice of counsel, I assert my
4 Fifth Amendment rights.
5      Q. And you did this on June 11th, 1993
6 after securing the false statement from
7 Timothy Rankins, correct?
8      A. On advice of counsel, I assert my
9 Fifth Amendment rights.
10     Q. And isn't it true that either you
11 or Detective Guevara told Mr. Serrano in sum
12 and substance, "This time you're not going
13 home"?
14     A. On advice of counsel, I assert my
15 Fifth Amendment rights.
16     MR. GIVEN: Jennifer?
17     MS. BONJEAN: Yes.
18     MR. GIVEN: Whenever you get to a
19 natural stopping --
20     MS. BONJEAN: Yeah, it's good.
21     MR. GIVEN: Okay. Why don't we just
22 take a short break. It's been an hour and a
23 half.
24     MS. BONJEAN: Yeah, sure.

175

1      THE VIDEOGRAPHER: Off the record at
2 1:05.
3      (A recess was taken.)
4      THE VIDEOGRAPHER: Back on the record,
5 1:19.
6 BY MS. BONJEAN:
7      Q. Mr. Halvorsen, isn't it true that
8 you, Detective Guevara, Sergeant Mingy, and
9 Assistant State's Attorneys Coghlan and
10 Dillon jointly discussed getting Wilda Vargas
11 to falsely identify Montanez and Serrano as
12 the men she had seen at the gas station?
13     MS. CERCONE: Object to form.
14     MR. GIVEN: Asked and answered, I think.
15 Go ahead.
16     THE WITNESS: On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19     Q. Isn't it true that you, Detective
20 Guevara, Sergeant Mingy, and Assistant
21 State's Attorneys Coghlan and Dillon jointly
22 discussed getting Wilda Vargas to falsely
23 identify Montanez and Serrano from a live
24 lineup as the men she had seen at the gas

176

1 station?
2      MS. CERCONE: Object to form.
3      THE WITNESS: On advice of counsel, I
4 assert my Fifth Amendment rights.
5 BY MS. BONJEAN:
6      Q. And, in fact, you and Detective
7 Guevara, Sergeant Mingy, and Coghlan and
8 Dillon jointly discussed getting Wilda Vargas
9 to falsely identify Montanez and Serrano as
10 the men she had seen at the gas station in
11 order to bolster your shaky case against
12 them?
13     MR. GIVEN: Objection; form.
14     MS. CERCONE: Object to form.
15     THE WITNESS: On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18     Q. And isn't it true that Wilda Vargas
19 was unable to describe any of the three men
20 that she had seen at the gas station in any
21 way prior to June 11th of 1993?
22     A. On advice of counsel, I assert my
23 Fifth Amendment rights.
24     Q. And isn't it true that she told you

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

45 (177 to 180)

177

1 previously that she had paid very little
2 attention to the men, and that had she
3 doubted she could identify them, correct?
4 **A. On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6 Q. Did you, Detective Guevara, and
7 Sergeant Mingy conduct an impermissibly
8 suggestive lineup that contained Armando
9 Serrano and was viewed by Wilda on July --
10 I'm sorry, on June 11th, 1993?
11 **A. On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13 Q. Isn't it rue that you and
14 Detective Guevara suggested to Wilda Vargas
15 that she should select Mr. Serrano from that
16 lineup on June 11th, 1993?
17 **A. On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19 Q. Isn't it true that Wilda Vargas was
20 unable to actually make an independent
21 identification of Mr. Serrano as the person
22 she saw at the gas station on June 11th,
23 1993?
24 MR. GIVEN: Form.

178

1 THE WITNESS: On advice of counsel, I
2 assert my Fifth Amendment rights.
3 BY MS. BONJEAN:
4 Q. And isn't it true that you and
5 Detective Guevara made comments to Wilda
6 Vargas that suggested that she should select
7 Mr. Serrano from that lineup -- that she
8 should select Mr. Serrano from that lineup
9 and identify him as one of the individuals
10 she saw at the gas station the day before her
11 husband's murder?
12 MR. GIVEN: Form.
13 THE WITNESS: On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16 Q. And isn't it true that you and
17 Detective Guevara actually told Ms. Vargas
18 that you had individuals in custody who were
19 responsible for her husband's murder prior to
20 her viewing the lineup on June 11th, 1993?
21 **A. On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23 Q. And, specifically, you and
24 Detective Guevara told Wilda Vargas that you

179

1 had Mr. Serrano in custody, and that you had
2 information that he was, in fact, the person
3 responsible for her husband's murder prior to
4 her viewing the lineup on June 11th, 1993?
5 **A. On advice of counsel, I assert my**
6 **Fifth Amendment rights.**
7 Q. Did you, Guevara, and Mingy conduct
8 an impermissibly suggestive lineup that
9 contained Jose Montanez and was viewed by
10 Wilda on July 9th of 1993?
11 **A. On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13 Q. Did you and Guevara suggest to
14 Wilda Vargas that she should select
15 Mr. Montanez from this live lineup on
16 July 9th of 1993?
17 **A. On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19 Q. And did you and Guevara tell Wilda
20 Vargas who to pick out of that lineup that
21 contained Mr. Montanez on July 9th of 1993?
22 **A. On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24 Q. And isn't it true that Wilda

180

1 Vargas was unable to independently identify
2 Mr. Montanez from a lineup on July 9th, 1993?
3 **A. On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5 Q. And isn't it true Wilda Vargas told
6 you that she could not identify the people
7 from the gas station because she did not pay
8 close attention to them when she saw them on
9 February 4th, 1993?
10 **A. On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12 Q. And did you and Guevara and
13 Sergeant Mingy falsely claim that Wilda
14 Vargas had identified Mr. Montanez from the
15 lineup on July 9th of 1993?
16 **A. On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18 Q. In fact, isn't it true that you,
19 Detective Guevara, and Sergeant Mingy
20 falsely claimed that Wilda had identified
21 Mr. Serrano from a live lineup on June 11th,
22 of 1993? Yes, June 11th, 1993.
23 **A. On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

Transcript of Ernest Halvorsen
46 (181 to 184)
Conducted on April 20, 2018

181

1    Q.  Did you and Detective Guevara make
2  comments to Wilda Vargas during the lineup on
3  July 9th of 1993 that suggested to her that
4  she should pick out Mr. Montanez as one of
5  the individuals she saw at the gas station?
6      A.  On advice of counsel, I assert my
7  Fifth Amendment rights.
8      Q.  And did you and Guevara tell Wilda
9  Vargas that you had someone in custody for
10 the Vargas murder before the lineup that she
11 viewed on July 9th, 1993?
12     A.  On advice of counsel, I assert my
13 Fifth Amendment rights.
14     Q.  Specifically, you and Detective
15 Guevara told Wilda Vargas that you had
16 Mr. Montanez in custody for the Vargas murder
17 prior to her viewing the lineup on July 9th,
18 1993, right?
19     A.  On advice of counsel, I assert my
20 Fifth Amendment rights.
21     Q.  And you falsely told Ms. Vargas
22 prior to her viewing the lineup on July 9th,
23 1993 that you had developed evidence showing
24 that Jose Montanez was the person or one of

182

1  the people responsible for her husband's
2  murder, correct?
3      A.  On advice of counsel, I assert my
4  Fifth Amendment rights.
5      Q.  Isn't it true that you appeared
6  before Judge Spitzer to get arrest warrants
7  for Jose Montanez and Jorge Pacheco?
8      MR. GIVEN:  Objection; foundation.
9      THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q.  And isn't it true that you lied to
13 Judge Spitzer about the evidence against Jose
14 Montanez and Jorge Pacheco?
15     A.  On advice of counsel, I assert my
16 Fifth Amendment rights.
17     Q.  And isn't it true that you lied to
18 Judge Spitzer about the evidence against Jose
19 Montanez and Jorge Pacheco so that you would
20 be able to obtain an arrest warrant for them,
21 even though you knew there was no probable
22 cause to justify their arrest?
23     A.  On advice of counsel, I assert my
24 Fifth Amendment rights.

183

1      Q.  And is it true, sir, that you lied
2  to Judge Spitzer about the evidence against
3  Jose Montanez and Jorge Pacheco so that you
4  would be able to obtain arrest warrants for
5  them because you knew that Judge Spitzer
6  would not approve the arrest warrants without
7  your lie?
8      MR. GIVEN:  Objection.  Never mind.  Go
9  ahead.
10     THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13     Q.  And isn't it true that you and
14 Detective Guevara lied to Assistant State's
15 Attorneys to get them to approve charges
16 against Montanez, Serrano, and Pacheco?
17     A.  On the advice of --
18     MR. GIVEN:  Object; foundation.
19     THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q.  I'd like to have you look, sir, at
23 Pages 54 through 55 of Exhibit 3.  I will get
24 you there.  Actually, 53 through -- Did I say

184

1  that, 53 through 55?
2      MR. GIVEN:  You said 54.
3      MS. BONJEAN:  It's actually 53.
4  BY MS. BONJEAN:
5      Q.  Mr. Halvorsen, I'm having you look
6  at what's been previously identified as
7  Guevara 3, Bates stamp 53 through 59.  This
8  purports to be a supplemental report authored
9  by yourself on July 3rd, 1993, isn't it?
10     A.  On advice of counsel, I assert my
11 Fifth Amendment rights.
12     Q.  And, again, sir, your signature is
13 affixed at the bottom of 53, along with your
14 partner, Detective Reynaldo Guevara, correct?
15     A.  On advice of counsel, I assert my
16 Fifth Amendment rights.
17     Q.  And this is a supplemental report
18 that you authored yourself, correct?
19     A.  On advice of counsel, I assert my
20 Fifth Amendment rights.
21     Q.  And although Ray Guevara's
22 signature appears at the bottom, it is, in
23 fact, your signature, or it is your
24 handwriting purporting to be Ray Guevara's

185

1 signature, correct?
2     **A. On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4     Q. And according to the supplemental
5 report that you prepared, sir, you and
6 Detective Guevara brought Timothy Rankins to
7 testify before the Cook County Grand Jury,
8 correct? And that's on Page 54, if you would
9 like to see that.
10     **A. On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12     Q. And isn't it true that prior to
13 bringing Timothy Rankins before the Grand
14 Jury, you had him review the statement --
15 the handwritten statement that you had
16 previously coerced him into signing and
17 adopting, correct?
18     **A. On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q. And, in fact, you practiced with
21 Timothy Rankins about what his testimony
22 would be before the Grand Jury, correct?
23     **A. On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

186

1     Q. And you knew that Timothy Rankins
2 was going to testify consistent with his
3 handwritten statement that you had fabricated
4 and fed to him prior to him adopting it,
5 correct?
6     **A. On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8     Q. You further knew that the
9 statements that Timothy Rankins was going to
10 give under oath at the Grand Jury implicating
11 Montanez, Serrano, and Pacheco in the murder
12 of Rodrigo Vargas were, in fact, false,
13 correct?
14     MR. GIVEN: Objection; form.
15     THE WITNESS: On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18     Q. And you had secured Mr. Rankins's
19 cooperation in not only giving the false
20 handwritten statement but also testifying
21 falsely before the Grand Jury through threats
22 of physical violence, actual use of physical
23 violence, and also promises of leniency,
24 correct?

187

1     **A. On advice of counsel, I assert my**
2 **Fifth Amendment rights.**
3     Q. And, in fact, you knew that Timothy
4 Rankins had no personal knowledge about the
5 murder of Rodrigo Vargas, correct?
6     **A. On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8     Q. And you knew that Timothy Rankins's
9 statement before the Grand Jury and his
10 testimony under oath claiming to have been a
11 witness to the Vargas murder were false?
12     **A. On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q. And you also knew that Timothy
15 Rankins had no knowledge whatsoever to
16 believe that Montanez, Serrano, and Pacheco
17 were involved in the murder of Rodrigo
18 Vargas, correct?
19     **A. On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q. And you also knew that the
22 statements that -- strike that -- that the
23 statements and testimony that Mr. Rankins
24 gave before the Grand Jury, in which he

188

1 implicated Montanez, Serrano, and Pacheco in
2 the murder of Rodrigo Vargas were false in
3 their entirety, correct?
4     **A. On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6     Q. You, nonetheless, secured the false
7 testimony from Mr. Rankins so that
8 indictments would be issued charging
9 Mr. Pacheco, Mr. Serrano, and Mr. Montanez
10 with the murder of Rodrigo Vargas?
11     MR. GIVEN: Form.
12     THE WITNESS: On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15     Q. And after having secured Timothy
16 Rankins's false Grand Jury testimony and
17 prior handwritten statement, you and
18 Detective Guevara decided also that you would
19 memorialize Francisco Vicente's false
20 narrative in a handwritten statement, right?
21     **A. On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q. And, in fact, on June 28th of 1993,
24 isn't it true, sir, that you and Detective

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

189

1  Guevara and Assistant State's Attorneys
2  Dillon and Coghlan, again, arranged for
3  Francisco Vicente to be transferred from the
4  Cook County jail to the gang prosecution unit
5  at the Cook County State's Attorney office?
6        MS. CERCONE:  Object to form.
7        MR. GIVEN:  Form.
8        THE WITNESS:  On advice of counsel, I
9  assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11       Q.  And it was at that point on
12 June 28th of 1993, you and the other
13 defendants in this case decided that the
14 fabricated story that you all had contrived
15 on June 2nd, 1993 would be memorialized in a
16 handwritten statement that you would have
17 Mr. Vicente sign and adopt, correct?
18       MS. CERCONE:  Objection to form.
19       MR. GIVEN:  Form.
20       THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23       Q.  And, in fact, Mr. Vicente gave a
24 statement on June 28th, 1993 at 2 o'clock.

190

1  Also present was yourself and an Assistant
2  State's Attorney by the name of Solita
3  Pandit, correct?
4        **A.  On advice of counsel, I assert my**
5  **Fifth Amendment rights.**
6        Q.  And, in fact, Assistant State's
7  Attorneys Coghlan and Dillon declined to be
8  present for the taking of this formal
9  statement of Vicente because -- because they
10 wanted to distance themselves from this
11 fabricated statement that would then be used
12 to wrongfully convict the plaintiffs,
13 correct?
14       MS. CERCONE:  Object to form.
15       MR. GIVEN:  Form, foundation,
16 competence, and speculation.
17       THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20       Q.  And, in fact, the Assistant State's
21 Attorney Solita Pandit that was brought in
22 to take the statement of Mr. Vicente on
23 June 28th, 1993 was unaware of the -- strike
24 that.

191

1        Let me ask it this way:  Do you
2  know whether Assistant State's Attorney
3  Solita Pandit was aware of -- was aware of the
4  meeting that took place in those offices on
5  June 2nd, 1993 during which you, Detective
6  Guevara, and Assistant State's Attorneys
7  Coghlan and Dillon fabricated a false
8  statement for Francisco Vicente that he
9  ultimately adopted?
10       MS. CERCONE:  Object to form.
11       THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14       Q.  In fact, you did not tell Assistant
15 State's Attorney Pandit, did you, that you,
16 Detective Guevara, and Assistant State's
17 Attorneys Coghlan and Dillon had manufactured
18 the false story on June 2nd, 1993 that was
19 ultimately memorialized in this handwritten
20 statement by Francisco Vicente on June 28th,
21 1993?
22       MS. CERCONE:  Object to form.
23       THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

192

1  BY MS. BONJEAN:
2        Q.  And your supplemental report also
3  does not contain any information -- strike
4  that.  Your supplemental report dated
5  July 3rd of 1993 contains no information
6  revealing that the statement that Francisco
7  Vicente signed on June 28th, 1993 was
8  actually the product of a prior meeting on
9  June 2nd, 1993 where you, Defendants Guevara,
10 Coghlan, and Dillon had manufactured this
11 statement?
12       MS. CERCONE:  Object to form.
13       THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16       Q.  Isn't it true that you knew that
17 the facts of the Vargas murder were similar
18 to the shooting investigated in RD number T,
19 as in Tom, 018247?
20       MR. GIVEN:  Form and foundation.
21       I'm sorry.  What was the RD number?
22       MS. BONJEAN:  T, as in Tom, 018247.
23       MR. GIVEN:  Go ahead.
24       THE WITNESS:  On advice of counsel, I

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

49 (193 to 196)

193

1  assert my Fifth Amendment rights.
2  BY MS. BONJEAN:
3      Q.  In fact, isn't it true that you
4  knew evidence from RD number T018247 would be
5  important evidence for Montanez, Serrano, and
6  Pacheco at their murder trial?
7      MR. GIVEN:  Form and foundation,
8  speculation, competence.
9      THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q.  In fact, there was a shooting
13 investigated that bore the RD number T018247
14 that would have been of particular interest
15 to Montanez, Serrano, and Pacheco's
16 attorneys, as it bore many similarities to
17 the Vargas shooting, correct?
18     MR. GIVEN:  Same objection.
19     THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q.  And isn't it true that you removed
23 from the file the RD number -- strike that.
24     Isn't it true that you removed from

194

1  the file police reports associated with
2  RD T018247 before it was available to be
3  subpoenaed by either the State or the
4  defense?
5      MR. GIVEN:  Objection; form and
6  foundation.
7      When you say "removed from the
8  file," you mean this file?
9      MS. BONJEAN:  Yeah, I'll ask
10 it -- strike that.  Let me start over so we
11 can...
12 BY MS. BONJEAN:
13     Q.  Isn't it true that you removed
14 police reports and information related to
15 RD T018247 from the Vargas investigative file
16 before that file was available to be
17 subpoenaed by either the State or the
18 defense?
19     MR. GIVEN:  Objection; form, foundation,
20 competence, and speculation.
21     THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24     Q.  And isn't it true that you removed

195

1  the file or the police reports associated
2  with file RD number T018247 from the Vargas
3  investigative file because it was
4  available -- because if it was available to
5  be subpoenaed, you knew it would be helpful
6  to Montanez, Serrano, and Pacheco's defense?
7      MR. GIVEN:  Same objections.
8      THE WITNESS:  On advice of counsel, I
9  assert my Fifth Amendment rights.
10     MS. BONJEAN:  Can you mark this, please,
11 as -- How do you want to do this?
12     MR. GIVEN:  Well, so this is where the
13 rubber hits the road.  We had talked the last
14 time about trying to do continuous numbers
15 and pointed out that usually doesn't work
16 very well.  So we either designate this as
17 Halvorsen 1 or --
18     MS. BONJEAN:  I think Halvorsen makes
19 sense.
20     MR. GIVEN:  I do too.
21     (Halvorsen Deposition Exhibit No. 1
22     was marked for identification.)
23 BY MS. BONJEAN:
24     Q.  Mr. Halvorsen, I'm going to hand

196

1  you what I marked as Halvorsen 1 for
2  identification purposes -- I'm sorry.  I'm
3  going to hand you what I've marked as
4  Halvorsen 1.
5      MR. GIVEN:  Which I will try to give you
6  a trick question and tell you to identify it
7  by Bates stamp for the record, but you would
8  not be able to do that.
9      MS. BONJEAN:  No, I wouldn't.  And I
10 know it's been produced, but I honestly don't
11 have an explanation because the fine people
12 here at Loevy & Loevy made the copies for me,
13 and I don't -- So I apologize, but this is --
14 I will represent for the record that this is
15 a transcript of Grand Jury testimony in the
16 matter of People versus Armando Serrano,
17 Grand Jury number 336, and Criminal
18 Indictment number 93 CR 15871, and this
19 exhibit itself is four pages, although it's
20 double-sided, okay.
21     MR. GIVEN:  I think that will identify
22 it sufficiently.
23     MS. BONJEAN:  Good.
24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

50 (197 to 200)

197

1  BY MS. BONJEAN:
2      Q.  Mr. Halvorsen, isn't it true that
3  you gave testimony at the Grand Jury or
4  before the Grand Jury in connection with the
5  criminal prosecution of Mr. Serrano and all
6  the plaintiffs in this matter?
7      **A.  On advice of counsel, I assert my**
8  **Fifth Amendment rights.**
9      Q.  And, in fact, sir, you gave
10 testimony on July 1st of 1993 before the
11 Grand Jury; isn't that right?
12     **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q.  And, sir, Page 3 up in the
15 right-hand corner, you'll see you were asked
16 a question by an Assistant State's Attorney
17 by the name of Daniel Gallivan (phonetic), a
18 question, "Did your investigation show that
19 the defendant, Armando Serrano, was also
20 present at that time?"
21     Do you see that?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q.  I'm going to back up so we have

198

1  some context as well, okay.
2      Prior to that, the Assistant
3  State's Attorney asked you, "Did your
4  investigation show that Rodrigo Vargas was in
5  the area of 1838 North Springfield at
6  approximately 5:30 a.m. on February 5th of
7  1993?" And you answered, "That's correct,"
8  correct?
9      **A.  On advice of counsel, I assert my**
10 **Fifth Amendment rights.**
11     Q.  You further testified in response
12 to the question, "Did your investigation show
13 that the Defendant Armando Serrano was also
14 present at that time?" You answered, "That's
15 correct."
16     Isn't that true, Mr. Halvorsen?
17     **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     Q.  But, sir, that testimony was
20 knowingly false, correct?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  Your expression did not show that
24 Defendant Armando Serrano was present at

199

1  1838 North Springfield at 5:30 a.m. on
2  February 5th of 1993; isn't that right?
3      **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5      Q.  In fact, you did not actually
6  conduct an investigation that showed that
7  Mr. Serrano was present at the crime scene at
8  1838 North Springfield on February 5th of
9  1993, right?
10     **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12     Q.  Rather, you along with your
13 defendant -- strike that.
14     Rather, you along with Defendants
15 Guevara and Assistant State's Attorneys
16 Dillon and Coghlan fabricated and fed false
17 stories to Mr. Vicente and Mr. Rankins that
18 suggested that Mr. Serrano and his
19 co-defendants were present at the murder
20 scene on the morning of February 5th of 1993,
21 right?
22     MR. GIVEN:  Object to form.
23     THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

200

1  BY MS. BONJEAN:
2      Q.  And that you knowingly gave false
3  testimony before the Grand Jury to secure an
4  indictment against Mr. Serrano for the murder
5  of Rodrigo Vargas, correct?
6      **A.  On advice of counsel, I assert my**
7  **Fifth Amendment rights.**
8      Q.  You were also asked the following
9  questions by the Assistant State's Attorney:
10 "Did your investigation show that Defendant
11 Armando Serrano was armed with a handgun?"
12 You answered, "That's correct."
13     You were also asked the question,
14 "What did your investigation show as to the
15 type of handgun he was armed with at that
16 time?" Your answer, "A 9 millimeter
17 semi-automatic pistol."
18     Do you remember being asked those
19 questions and giving those answers, sir?
20     **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22     Q.  Isn't it true that testimony that
23 you provided before the Grand Jury was
24 knowingly false testimony, correct?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

51 (201 to 204)

201

1    A.  On advice of counsel, I assert my
2  Fifth Amendment rights.
3    Q.  Your investigation did not show
4  that Armando Serrano was armed with handgun,
5  specifically, a nine millimeter gun on the
6  morning of February 5th of 1993 at 1838 North
7  Springfield Avenue; isn't that right?
8    A.  On advice of counsel, I assert my
9  Fifth Amendment rights.
10   Q.  In fact, that fact or those facts
11 were actually fabricated by yourself,
12 Detective Guevara, Assistant State's
13 Attorneys Coghlan and -- Coghlan and Dillon,
14 and fed to your witnesses, Mr. Vicente and
15 Mr. Rankins, correct?
16   MS. CERCONE:  Object to form.
17   THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20   Q.  You were also asked, "What did your
21 investigation show occurred at approximately
22 5:30 a.m. at 1838 North Springfield?"  And
23 you responded, Answer: "Rodrigo Vargas just
24 walked out of his house going to work at

202

1  approximately 5:30.  As he walked out the
2  front gate, he was stopped by three persons,
3  one of the persons being Armando Serrano.
4  They attempted to take money and a car radio
5  that he had in his hand.  He was able to run
6  and get in his van, which was parked across
7  the street.  He closed that van door and
8  locked it.  Armando Serrano ran up to the
9  van, shot through the window hitting Rodrigo
10 Vargas five times and killing Rodrigo
11 Vargas."
12       You provided that testimony before
13 the Grand Jury on July 1st of 1993, correct?
14   A.  On advice of counsel, I assert my
15 Fifth Amendment right.
16   Q.  And that testimony was knowingly
17 false testimony, wasn't it, Mr. Halvorsen?
18   A.  On advice of counsel, I assert my
19 Fifth Amendment rights.
20   Q.  That testimony came from evidence
21 that you, Detective Guevara, Assistant
22 State's Attorneys Dillon and Coghlan
23 fabricated and fed to your witnesses, Frankie
24 Vicente and Timothy Rankins, right?

203

1    A.  On advice --
2    MS. CERCONE:  Object to form.
3    THE WITNESS:  On advice of counsel, I
4  assert my Fifth Amendment rights.
5  BY MS. BONJEAN:
6    Q.  And, in fact, you knew that
7  Mr. Serrano was nowhere near 1838 North
8  Springfield on the morning of February 5th,
9  1993, right?
10   A.  On advice of counsel, I assert my
11 Fifth Amendment rights.
12   Q.  You also knew that neither
13 Mr. Montanez or Mr. Pacheco were with
14 Mr. Serrano at 1838 North Springfield on the
15 morning of February 5th of 1993; isn't that
16 correct?
17   A.  On advice of counsel, I assert my
18 Fifth Amendment rights.
19   Q.  And you knew that neither
20 Mr. Vicente nor Mr. Rankins had any personal
21 knowledge about Mr. Montanez, Pacheco, or
22 Serrano being at the crime scene located at
23 1838 North Springfield on the morning of
24 February 5th of 1993, correct?

204

1    A.  On advice of counsel, I assert my
2  Fifth Amendment rights.
3    Q.  And you gave this false testimony
4  before the Grand Jury for the purpose of
5  securing an indictment against Mr. Serrano,
6  correct?
7    A.  On advice of counsel, I assert my
8  Fifth Amendment rights.
9    Q.  And securing an indictment against
10 Mr. Serrano was just one of the steps that
11 you took in order to frame him for the murder
12 of Rodrigo Vargas and cause his wrongful
13 conviction, correct?
14   MR. GIVEN:  Objection; form.
15   THE WITNESS:  On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18   Q.  And you were asked at the end of
19 your examination on Page 5, Question: "Did
20 you learn the facts to which you testified
21 today through police records, interviews of
22 witnesses, and statements?"  And you said,
23 "That is correct."
24       Isn't that right, Mr. Halvorsen?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

205

1      A.  On advice of counsel, I assert my
2  Fifth Amendment rights.
3      Q.  But isn't it true that the facts
4  that you testified to that you learned
5  through police records were police reports
6  you fabricated?
7      A.  On advice of counsel, I assert my
8  Fifth Amendment rights.
9      Q.  And the fact that you testified too
10  that you learned through the interviews of
11  witnesses were actually statements by
12  witnesses who you had coerced into
13  regurgitating false stories that you gave and
14  provided to them?
15      A.  On advice of counsel, I assert my
16  Fifth Amendment rights.
17      Q.  In addition to providing false
18  testimony before the Grand Jury, you provided
19  false testimony at the trial of Mr. Pacheco,
20  Mr. Montanez, and Mr. Serrano?
21      A.  On advice of counsel, I assert my
22  Fifth Amendment rights.
23      MS. BONJEAN:  I ask that we mark that as
24  Halvorsen 2.

206

1      (Halvorsen Deposition Exhibit No. 2
2      was marked for identification.)
3  BY MS. BONJEAN:
4      Q.  Mr. Halvorsen, I'm going to hand
5  you what's been marked as Halvorsen 2 and
6  bears a caption of "People of the State of
7  Illinois versus Jose Montanez."  I will
8  represent that it bears Bates stamps JRL04985
9  through JRL05100, 5100, okay.
10      Mr. Halvorsen, did you provide
11  testimony at the trial -- bench trial of
12  Mr. Serrano, Mr. Montanez, and Mr. Pacheco?
13      A.  On advice of counsel, I assert my
14  Fifth Amendment rights.
15      Q.  Isn't it true prior to giving
16  testimony at their bench trials, you sat down
17  with Assistant State's Attorney Coghlan to
18  discuss your testimony?
19      A.  On advice of counsel, I assert my
20  Fifth Amendment rights.
21      Q.  And you, along with Assistant
22  State's Attorney Coghlan discussed how you
23  would testify falsely about the circumstances
24  under which Franco -- Frankie Vicente and

207

1  Mr. Rankins made statements implicating
2  Pacheco, Montanez, and Serrano in the murder
3  of Vargas?
4      MS. CERCONE:  Object to form.
5      THE WITNESS:  On advice of counsel, I
6  assert my Fifth Amendment rights.
7  BY MS. BONJEAN:
8      Q.  Now, I'm going to have you look at
9  page -- I'll use the page numbers that are at
10  the very bottom of the page and the center of
11  the page.  We'll start with Page 80.
12      Assistant State's Attorney
13  Defendant Coghlan asked you about the meeting
14  that you had on June 2nd of 1993 at the Cook
15  County State's Attorney gang prosecution unit
16  on the 13th floor, and you admitted, sir,
17  that you were present for that meeting,
18  correct?
19      A.  On advice of counsel, I assert my
20  Fifth Amendment rights.
21      Q.  And, sir, Mr. Coghlan asked you who
22  else was present besides yourself and
23  Mr. Vicente, and you answered, "Just the two
24  of us"; isn't that right?

208

1      A.  On advice of counsel, I assert my
2  Fifth Amendment rights.
3      Q.  And that testimony was knowingly
4  false testimony, wasn't it, sir?
5      A.  On advice of counsel, I assert my
6  Fifth Amendment rights.
7      Q.  In fact, it wasn't just you and
8  Vicente who was present for this meeting.
9  It was also Detective Guevara and Assistant
10  State's Attorneys Coghlan and Dillon,
11  correct?
12      MS. CERCONE:  Object to form.
13      THE WITNESS:  On advice of counsel, I
14  assert my Fifth Amendment rights.
15  BY MS. BONJEAN:
16      Q.  Assistant State's Attorney Coghlan
17  told you that you needed to lie about who was
18  present for this meeting because it would
19  reflect poorly on him and Assistant State's
20  Attorney Dillon if it was known to the judge
21  that they were present for a meeting with
22  Vicente prior to Mr. Serrano or Mr. Montanez
23  or Mr. Pacheco's arrest?
24      MS. CERCONE:  Object to form.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

53 (209 to 212)

---

**209**

1       MR. GIVEN:  Foundation, competence, and
2  speculation.
3       THE WITNESS:  On advice of counsel, I
4  assert my Fifth Amendment rights.
5  BY MS. BONJEAN:
6       Q.  Assistant State's Attorney Coghlan
7  told you, "Hey, you can't say I was there at
8  this meeting.  You understand that Ernie,
9  right?"
10      MR. GIVEN:  Object to form.
11 BY MS. BONJEAN:
12      Q.  Or something to that effect?
13      **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15      Q.  And you agreed to lie in front of
16 the judge when you stated that it was just
17 you and Frankie Vicente in the gang crimes
18 unit of the prosecutor's office, correct?
19      MS. CERCONE:  Object to form.
20      THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23      Q.  And, in fact, you falsely testified
24 that you had alone brought Mr. Vicente up to

---

**210**

1  the gang prosecution office to talk to him
2  about the case, right?
3      **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5      Q.  And you falsely stated that you
6  brought him up because he was involved in
7  another one of your investigations, right?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10      Q.  And while it was true that he had
11 been coerced into implicating Robert Buto in
12 the murder of Ruvalcaba, he was not involved
13 in any legitimate investigation of yours,
14 correct?
15      MR. GIVEN:  Form and foundation.
16      THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19      Q.  And, sir, you testified that
20 Frankie Vicente indicated to you that he had
21 information regarding the Vargas murder
22 during this meeting that took place on
23 June 2nd, 1993 in the prosecutor's office,
24 correct?

---

**211**

1      A.  On advice of counsel, I assert my
2  Fifth Amendment rights.
3      Q.  And, again, sir, that was false
4  testimony because Mr. Vicente never told you
5  he had information regarding the Vargas
6  murder, right?
7      **A.  On advice of counsel, I assert my**
8  **Fifth Amendment rights.**
9      Q.  In fact, it was you, Detective
10 Guevara, and Assistant State's Attorneys
11 Dillon and Coghlan who told Vicente that you
12 wanted him to implicate Montanez, Serrano,
13 and Pacheco in the Vargas murder, right?
14      MS. CERCONE:  Object to form.
15      THE WITNESS:  On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18      Q.  Now, you told -- You testified --
19 You testified before Judge Bolan that you had
20 heard of rumors on the street that a guy by
21 the name of Pistol Pete was involved in the
22 murder of Rodrigo Vargas, right?
23      **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

---

**212**

1      Q.  And isn't it true that Assistant
2  State's Attorney Coghlan told you to testify
3  to that knowing full well that it would be
4  objectionable evidence?
5      MS. CERCONE:  Object to form,
6  foundation.
7      MR. GIVEN:  Competence and speculation,
8  calls for a legal conclusion.
9      THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12      Q.  Well, by 1993, sir, you were a
13 pretty seasoned detective, and you knew
14 something called -- you knew something about
15 the rule of hearsay, right?
16      MR. GIVEN:  Form, foundation.
17      THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20      Q.  And you knew, generally speaking,
21 that you couldn't get in front of a jury or
22 any trier of fact and say, "Oh, I heard
23 rumors on the street that someone did it,"
24 correct?

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

213

1    MR. GIVEN:  Form, foundation,
2 competence, speculation, incomplete
3 hypothetical.
4        You can answer.
5    THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8    Q.  And, certainly, the former Cook
9 County State's Attorney, Matthew Coghlan, now
10 the esteemed Judge Coghlan told you, "I'm not
11 going to be able to ask you about rumors you
12 heard on the street legitimately.  So I need
13 you to just blurt it out so the judge can
14 hear it," right?
15    MR. GIVEN:  So --
16    MS. CERCONE:  Objection to form,
17 foundation, harassing.
18    MR. GIVEN:  Objection.  I adopt what she
19 says.
20    MS. BONJEAN:  Okay.
21    MR. GIVEN:  You've been doing a great
22 job so far.
23    MS. BONJEAN:  Jeff?
24    MR. GIVEN:  Go ahead.

214

1    MS. BONJEAN:  It makes my day when you
2 compliment me.  I really -- I really don't
3 know what I would do without your
4 affirmations.  Thank you.
5    MR. GIVEN:  You're welcome.  I would
6 think of it more as a backhanded compliment
7 myself, but...
8    MS. BONJEAN:  Yes, and your backhanded
9 compliments mean the world to me.  What would
10 I do?
11    THE WITNESS:  I don't really care.
12    MS. BONJEAN:  Anyway.
13    MR. GIVEN:  Is there a question to be
14 answered here.
15    MS. BONJEAN:  There will be.
16    Are you going to answer it?
17    MR. GIVEN:  He's waiting for a question.
18 He's answered every question you've asked, so
19 let's just continue.
20 BY MS. BONJEAN:
21    Q.  Now, after Assistant State's
22 Attorney Coghlan told you that he wanted you
23 to blurt out in testimony that you had heard
24 rumors on the street that a guy named Pistol

215

1 Pete was involved in the crime, you agreed to
2 do that, right?
3    MS. CERCONE:  Object to form.
4    THE WITNESS:  On advice of counsel, I
5 assert my Fifth Amendment rights.
6 BY MS. BONJEAN:
7    Q.  And Assistant State's Attorney
8 Coghlan questioned you or asked you, "So did
9 you ask Francisco Vicente regarding Pistol
10 Pete?"  And you answered that you did do
11 that, correct?
12    A.  On advice of counsel, I assert my
13 Fifth Amendment rights.
14    Q.  And isn't it true that you
15 testified that you did that because you knew
16 Francisco Vicente when he was arrested, and
17 he was arrested with a second offender who
18 had a nickname of Pistol Pete, and "I was
19 curious whether or not Francisco might be
20 able to assist me in the investigation of the
21 murder of Rodrigo Vargas," right?
22    A.  On advice of counsel, I assert my
23 Fifth Amendment rights.
24    Q.  And that testimony, sir, was

216

1 knowingly false testimony, correct?
2    A.  On advice of counsel, I assert my
3 Fifth Amendment rights.
4    Q.  And that was knowingly false
5 testimony that you prepped the Assistant
6 State's Attorney Matthew Coghlan prior to you
7 taking the stand, wasn't it?
8    MS. CERCONE:  Object to form,
9 foundation.
10    THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13    Q.  And, in fact, isn't it true that
14 you never asked Vicente whether he would be
15 able to assist you in the investigation of
16 Vargas?  Rather, you told Vicente what you
17 wanted him to say regarding the Vargas
18 murder, right?
19    MR. GIVEN:  Form.
20    THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23    Q.  You testified, sir, on Page 83 that
24 Francisco Vicente gave you a lengthy

Transcript of Ernest Halvorsen

55 (217 to 220)

Conducted on April 20, 2018

217

1 statement about what he knew about the murder
2 of Rodrigo Vargas, and that he had supplied
3 you with the three nicknames Pistol Pete,
4 Mondo, and Jordan, and that you checked the
5 nicknames in your file and saw that Pistol
6 Pete was Jose Montanez and Armando Serrano
7 was Mondo and that Jordan was George or Jorge
8 Pacheco, and that you had dealt with those
9 persons in past investigations, correct?
10    **A. On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12    Q. And, in fact, sir, that testimony
13 was false testimony, correct?
14    **A. On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16    Q. And that was false testimony that
17 you practiced with Assistant State's Attorney
18 Matt Coghlan before you took the stand and
19 testified under oath, correct?
20    MS. CERCONE:  Object to form.
21    THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24    Q. And, in fact, isn't it true that

218

1 Francisco Vicente never gave you any type of
2 statement about the murder of Rodrigo Vargas?
3 Rather, you gave him a statement to repeat
4 about the murder of Rodrigo Vargas, right?
5    MR. GIVEN:  Form.
6    THE WITNESS:  On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9    Q. Mr. Vicente didn't give you the
10 names Pistol Pete, Mondo, and Jordan.
11 Rather. You, Detective Guevara, Assistant
12 State's Attorneys Dillon and Coghlan provided
13 those names to Francisco Vicente and coerced
14 him into repeating or regurgitating those
15 names in the form of a false statement that
16 was later used against the plaintiffs in this
17 case, correct?
18    MS. CERCONE:  Object to form.
19    THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22    Q. You testified that after you got
23 those names -- strike that.
24    You falsely testified before you

219

1 received these names of Pistol Pete, Mondo,
2 and Jordan, that you hooked up with Jose
3 Montanez, Armando Serrano, and Jorge Pacheco,
4 that you went and you obtained three
5 black-and-white Chicago Police Department
6 photos of them, right?
7    MR. GIVEN:  Form.
8    THE WITNESS:  On advice of counsel, I
9 assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11    Q. And, in fact, you testified that
12 you apparently left 26th Street and went over
13 back to Area 5, and you brought -- got those
14 photos, and then you brought them back to the
15 building so you could show them to Frankie
16 Vicente, correct?
17    MR. GIVEN:  Form.
18    THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21    Q. Mr. Halvorsen, that was knowingly
22 false testimony; isn't that correct?
23    **A. On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

220

1    Q. You never went back to Grand and
2 Central to obtain these three photographs
3 because you already you had them with you
4 when you interviewed Mr. Vicente at the gang
5 crimes unit on June 2nd of 1995 -- 1993,
6 correct?
7    **A. On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9    Q. In fact, you showed Mr. Vicente the
10 photographs of Serrano, Montanez, and Pacheco
11 almost from the start of your interview on
12 June 2nd of 1993 at the gang crimes unit,
13 right?
14    **A. On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16    Q. Further, sir, you testified that
17 Mr. Vicente identified the photographs of
18 Serrano, Montanez, and Pacheco as individuals
19 that he recognized, correct?
20    **A. On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22    Q. And you testified that you went to
23 work at 3 o'clock that day and then you
24 informed your partner, Detective Guevara, of

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

56 (221 to 224)

221

1 the statement that you had gotten from
2 Frankie Vicente, correct?
3 **A. On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5 Q. And that was false testimony --
6 also false testimony that was prepared and
7 practiced with Assistant State's Attorney
8 Matt Coghlan prior to you taking the stand
9 and testifying, correct?
10 MS. CERCONE: Object to form.
11 THE WITNESS: On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14 Q. In fact, Detective Guevara was
15 present at the gang crimes unit on June 2nd
16 of 1993; isn't that right?
17 **A. On advice of counsel --**
18 MR. GIVEN: Objection; form. Go ahead.
19 THE WITNESS: On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22 Q. You testified that Detective
23 Guevara then immediately got on the telephone
24 and called the wife of Mr. Vargas, Wilda

222

1 Vargas, and questioned her on the telephone,
2 and that after you questioned -- he
3 questioned Ms. Vargas on the phone, that
4 you and Detective Guevara then drove to
5 Ms. Vargas's home with these three
6 black-and-white photographs, along with a
7 filler photograph to show Ms. Vargas a photo
8 array, correct?
9 **A. On advice of counsel, I assert my**
10 **Fifth Amendment rights.**
11 Q. And, sir, that also was false
12 testimony that you provided to the judge in
13 this case, Judge Bolan (phonetic), with the
14 preparation and practicing -- with
15 preparation by Assistant State's Attorney
16 Matt Coghlan prior to taking the stand,
17 right?
18 MS. CERCONE: Objection to form.
19 THE WITNESS: On advice -- On advice of
20 counsel, I assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22 Q. And, in fact, you never brought a
23 photo array to Ms. Vargas to view, correct?
24 **A. On advice of counsel, I assert my**

223

1 **Fifth Amendment rights.**
2 Q. Rather, you provided three
3 photographs to Ms. Vargas and told her that
4 those were the individuals responsible for
5 her husband's murder, and that they were the
6 individuals who had been at the gas station
7 the night before his murder, correct?
8 MR. GIVEN: Form.
9 THE WITNESS: On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12 Q. You provided that information, that
13 false information, to Ms. Vargas because you
14 wanted to manipulate her into believing that
15 she had seen those -- the offenders of her
16 husband's murder at the gas station prior to
17 his murder on February 5th of 1993?
18 MR. GIVEN: Form.
19 THE WITNESS: On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22 Q. You testified that that same day
23 you drove to the gas station at Central Park
24 and North Avenue with Ms. Vargas, and

224

1 Ms. Vargas explained in Spanish to Detective
2 Guevara the events that had taken place at
3 the gas station the day before her husband's
4 murder.
5 Do you remember testifying to that?
6 **A. On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8 Q. That testimony was false as well,
9 testimony that was prepared with the
10 assistance of the Assistant State's Attorney
11 Matt Coghlan prior to you taking the stand,
12 correct?
13 MS. CERCONE: Object to form.
14 MR. GIVEN: Compound.
15 THE WITNESS: On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18 Q. In fact, you, Detective Guevara,
19 and Assistant State's Attorneys Coghlan and
20 Dillon had determined that it was important
21 that you testify in a manner that would lead
22 the trier of fact to believe that Wilda
23 Vargas provided the gas station information
24 after Mr. Vicente had provided that

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

57 (225 to 228)

225

1 information, correct?
2      MS. CERCONE:  Objection; form.
3      THE WITNESS:  On advice of counsel, I
4 assert my Fifth Amendment rights.
5 BY MS. BONJEAN:
6      Q.  It was important, according to
7 yourself, Detective Guevara, and the
8 Assistant State's Attorneys that the trier of
9 fact be misled into believing that Ms. Vargas
10 provided this information after Vicente
11 because otherwise -- strike that.
12      It was important to you, Detective
13 Guevara, Assistant State's Attorneys Coghlan
14 and Dillon that the trier of fact be misled
15 into believing that Vargas provided this
16 information after Vicente so as to leave the
17 trier of fact with the impression that
18 Vicente was aware of independent information
19 that nobody would have known but someone --
20 but Ms. Vargas or Mr. Vargas?
21      MS. CERCONE:  Object to form.
22      THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

226

1 BY MS. BONJEAN:
2      Q.  And that Mr. Vicente could have
3 only gotten that information from the
4 offenders at the gas station, right?
5      **A.  On advice of counsel, I assert my**
6 **Fifth Amendment rights.**
7      Q.  But in reality, you and Detective
8 Guevara had learned from Ms. Vargas very
9 early on in the investigation that she had
10 been at the gas station prior to her
11 husband's murder, and you used that
12 information with Vicente, again, to give the
13 false impression that there was some veracity
14 to his statement, right?
15      MR. GIVEN:  Form.
16      THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19      Q.  Now, you also testified that on
20 June 6th, 1993, you and Detective Guevara
21 drove over to the 3900 block of West Dickens
22 and saw a beige-colored 1984 Buick Regal
23 four-door that had damage to the left front
24 fender, and there was a bullet hole in the

227

1 trunk, correct?
2      **A.  On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4      Q.  You testified that you went and got
5 Wilda Vargas, and you and Detective Guevara
6 went and got Wilda Vargas and that Guevara
7 instructed Ms. Vargas in Spanish that you are
8 going to drive down some streets, and if she
9 saw the car that she saw at the gas station
10 that day before her husband was killed, that
11 she was to point it out; is that correct?
12      **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14      Q.  And you also testified that you
15 drove down a number of streets eventually
16 driving down the 3900 block of Dickens, and
17 she spontaneously pointed to a car that you
18 had previously determined belonged to Jose
19 Montanez, correct?
20      MR. GIVEN:  Objection; misstates the
21 document that you're purporting to read from.
22      Go ahead.
23      THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

228

1 BY MS. BONJEAN:
2      Q.  Well, you testified that you drove
3 down a number of streets, eventually driving
4 down the 3900 block of Dickens, "And I saw
5 her" -- that being Wilda Vargas -- "indicate
6 to Detective Guevara that she was pointing to
7 the car that we had previously looked at."
8      You gave that testimony, right?
9      **A.  On advice of counsel, I assert my**
10 **Fifth Amendment rights.**
11      Q.  But that, too, was false testimony;
12 isn't that correct?
13      **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15      Q.  That was false testimony that you
16 prepared with Assistant State's Attorney Matt
17 Coghlan prior to taking the bench, correct?
18 Prior to taking the stand, correct?
19      MS. CERCONE:  Object to form.
20      THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23      Q.  And, in fact, you never took Wilda
24 Vargas along different blocks and have her

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

58 (229 to 232)

---

229

1 identify or try to identify the car from the
2 gas station, correct?
3    **A. On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5    Q. Rather, you took Wilda Vargas
6 exactly to Jose Montanez's car, you told her
7 it was the car of the offenders, and that
8 forensic evidence connected the car to the
9 crime scene; isn't that right?
10    **A. On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12    Q. You falsely told Ms. Vargas this
13 information in an attempt to manipulate her
14 testimony and persuade her, coerce her, or
15 trick her into identifying the car as the car
16 that she saw at the gas station on February
17 4th of 1993, right?
18    MR. GIVEN: Objection; form, asked and
19 answered.
20    THE WITNESS: On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23    Q. And you, Detective Guevara, and
24 Assistant State's Attorney Matthew Coghlan

---

230

1 and Assistant State's Attorney Dillon, along
2 with your supervisor, Sergeant Mingy, were
3 fully aware that you had taken Ms. Vargas
4 directly to Ms. Montanez's car and suggested
5 and manipulated her into believing that that
6 was the car that he saw at the gas station on
7 February 4th, 1993, correct?
8    MR. GIVEN: Object to form.
9    THE WITNESS: On advice of --
10    MR. GIVEN: Foundation. Go ahead.
11    THE WITNESS: On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14    Q. Now, you testified that on June
15 11th of 1993 you received a call from
16 Sergeant Mingy in which he reported to you
17 that he had Timothy Rankins in custody and
18 that he was an eyewitness to the murder of
19 Mr. Vargas; isn't that right?
20    **A. On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22    Q. Now, prior to you taking the stand
23 and giving testimony in this criminal
24 prosecution, you discussed with Assistant

---

231

1 State's Attorney Matt Coghlan that Timothy
2 Rankins was not going to be an available
3 witness at this -- at the trial, correct?
4    MS. CERCONE: Object to form.
5    THE WITNESS: On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8    Q. In fact, you knew that Mr. Rankins
9 was MIA or sort of missing in action at the
10 time of the criminal prosecution of Serrano,
11 Pacheco, and Montanez, correct?
12    MR. GIVEN: Objection; form.
13    THE WITNESS: On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16    Q. And as a result, you knew, along
17 with Detective Guevara and the Assistant
18 State's Attorney that Rankins wasn't going to
19 come in and testify falsely that he had seen
20 Serrano, Montanez, and Pacheco murder Rodrigo
21 Vargas, correct?
22    MS. CERCONE: Object to form.
23    THE WITNESS: On advice of counsel, I
24 assert my Fifth Amendment rights.

---

232

1 BY MS. BONJEAN:
2    Q. But that didn't stop Assistant
3 State's Attorney Matthew Coghlan from wanting
4 to get that evidence in before the trier of
5 fact, correct?
6    MS. CERCONE: Object to form,
7 foundation.
8    THE WITNESS: On advice of counsel, I
9 assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11    Q. In fact, prior to you taking the
12 stand, Assistant State's Attorney Matt
13 Coghlan practiced with you how you could
14 testify about the statement that Rankins made
15 to you in order to get that information in
16 front of the judge, even though it was
17 inadmissible?
18    MS. CERCONE: Object to form.
19    MR. GIVEN: And foundation, competence,
20 and speculation.
21    THE WITNESS: On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24    Q. You testified that you went along

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

59 (233 to 236)

233

1  your partner, Detective Guevara, to Area 5
2  located at 5555 West Grand Avenue at
3  approximately 2 o'clock in the afternoon to
4  interview Timothy Rankins.
5        This would have been, I believe, on
6  June 11th, 1993, correct?
7     **A.  On advice of counsel, I assert my**
8  **Fifth Amendment rights.**
9     Q.  You testified that you and
10 Detective Guevara placed Rankins in a car and
11 drove to the corner of North Avenue and
12 Springfield and -- isn't that right?
13    **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15    Q.  And then Assistant State's Attorney
16 Matt Coghlan asked you the question, "And
17 what happened next?"  And you answered, "I
18 told Timothy Rankins I wanted to believe what
19 he was telling me, but he was going to have
20 to prove to me" -- before you were
21 interrupted by an objection.
22        Do you remember giving that
23 testimony?
24    **A.  On advice of counsel, I assert my**

234

1  **Fifth Amendment rights.**
2     Q.  And that was an answer that you had
3  to practice with Assistant State's Attorney
4  Matt Coghlan in order to try to get this
5  inadmissible, incompetent evidence before the
6  trier of fact, right?
7     MS. CERCONE:  Object to form,
8  foundation.
9     MR. GIVEN:  Competence, speculation.
10    THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13    Q.  And Judge Bolan, who apparently
14 didn't know the rules of evidence any better
15 than Assistant State's Attorney Matt Coghlan,
16 allowed you to testify about statements that
17 were made to you by Mr. Rankins, right?
18    MS. CERCONE:  Object to form.
19    MR. GIVEN:  Object to form.
20    MS. CERCONE:  Move to strike.
21    MR. GIVEN:  Yes.  That's fairly
22 outrageous comment, but par for the course.
23        Go ahead.
24    MS. BONJEAN:  Why?  Are you protecting

235

1  Judge Bolan, or are you protecting your
2  client?
3     MR. GIVEN:  I'm not protecting anybody.
4  I'm making objections.  If you want to make
5  obnoxious comments like that, go right ahead.
6     MS. BONJEAN:  What's obnoxious is the
7  transcript, what happened here.  That's
8  obnoxious, 23 years go by with someone
9  wrongfully convicted.
10    MR. GIVEN:  You know, we're not here to
11 hear your speeches.
12    MS. BONJEAN:  You're the one speaking,
13 Mr. Given.  What don't you zip it?  Zip it.
14    MR. GIVEN:  Why don't you ask a
15 question --
16    MS. BONJEAN:  Why don't you zip it, and
17 then I'll ask a question.
18    MR. GIVEN:  That's why we're here.
19    MS. BONJEAN:  Zip it, and I'll ask a
20 question.
21    MR. GIVEN:  I don't even know what you
22 mean by "zip it."  What a ridiculous
23 statement.  Why don't you be professional?
24    MS. BONJEAN:  Why don't you be

236

1  professional?
2     MR. GIVEN:  And ask your question.
3     MS. BONJEAN:  Why don't you be
4  professional?
5     MR. GIVEN:  I am.
6     MS. BONJEAN:  It doesn't sound like it.
7  I will move along if you close your mouth.
8     MR. GIVEN:  Close your mouth?  You want
9  to put that on the video so we can all see
10 your act?
11    MS. BONJEAN:  Are you finished?
12    MR. GIVEN:  I am.  Are you?  Are you
13 going to ask a question?
14    MS. BONJEAN:  I'm waiting for you to be
15 quiet.
16    MR. GIVEN:  Go right ahead.
17 BY MS. BONJEAN:
18    Q.  Okay.  Now, you answered that
19 question after some back and forth, that you
20 were at the corner of North Avenue and
21 Springfield, and you told Timothy Rankins, "I
22 wanted to believe the information he was
23 providing me, but he's going to have to
24 demonstrate to me that he actually had

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

60 (237 to 240)

237

1  evidence of this.  I told him that I was
2  going to drive north on Springfield, and he
3  was going to have to show me that he knew
4  exactly where this crime took place."
5          After a question, "What happened
6  next?"  You answered, "I then started driving
7  slowly on Springfield from North Avenue.  As
8  he drove past 1838 North Springfield, Rankins
9  pointed to a house and a fence.  I recognized
10 this house and fence as being the home of the
11 victim, Rodrigo Vargas."
12         You testified, "We returned him,
13 T. Rankins, to my office at Area 5 Violent
14 Crimes, and we went out looking for the first
15 defendant, Armando Serrano."
16         Do you remember giving that
17 testimony?
18     **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q.  And that testimony, sir, was false
21 in its entirety, wasn't it?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q.  And, in fact, that testimony that

238

1  you provided was testimony that you practiced
2  with Assistant State's Attorney Matthew
3  Coghlan prior to taking the stand; is that
4  correct?
5      MS. CERCONE:  Objection; form.
6      THE WITNESS:  On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9      Q.  And, in fact, Mr. Rankins never
10 pointed out to you where the murder of
11 Rodrigo Vargas took place, correct?
12     **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q.  Instead, you told Mr. Rankins where
15 the murder of Rodrigo Vargas took place,
16 correct?
17     **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     Q.  And, in fact, you fed the entire
20 statement to Timothy Rankins that you later
21 then claimed was the basis for believing that
22 Montanez, Serrano, and Pacheco were
23 responsible for the murder of Rodrigo Vargas,
24 correct?

239

1      MR. GIVEN:  Objection; form.
2      THE WITNESS:  On advice of counsel, I
3  assert my Fifth Amendment rights.
4  BY MS. BONJEAN:
5      Q.  And you gave this false testimony
6  at the trial of Mr. Montanez, Mr. Pacheco,
7  and Mr. Serrano in part because you wanted to
8  secure a wrongful conviction against
9  Mr. Montanez, Serrano, and Pacheco, correct?
10     MR. GIVEN:  Form.
11     THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14     Q.  In fact, if the trier of fact,
15 Judge Bolan, believed that there was a
16 witness out there who had identified
17 Mr. Serrano, Mr. Montanez, and Mr. Pacheco as
18 the offender -- offenders of Rodrigo Vargas,
19 it would assist the State in meeting its
20 burden -- burden of proof, correct?
21     MR. GIVEN:  Objection; form, foundation,
22 competence, speculation.
23     THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

240

1  BY MS. BONJEAN:
2      Q.  And, in fact, you, Detective
3  Guevara, and Assistant State's Attorney
4  Coghlan and Dillon knew that the case that
5  you had against Serrano, Montanez, and
6  Pacheco was a very shaky case, correct?
7      MR. GIVEN:  Form.
8      THE WITNESS:  On advice of counsel, I
9  assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11     Q.  In fact, the case against
12 Mr. Serrano, Pacheco, and Montanez hinged
13 entirely on Francisco Vicente's testimony
14 regarding what he heard them admit to, right?
15     MR. GIVEN:  Form, foundation.
16     THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19     Q.  And you no longer had an eyewitness
20 to this crime, correct?
21     MR. GIVEN:  Objection; form.
22     THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

241

1 BY MS. BONJEAN:
2     Q.  So with the assistance and
3 preparation of Assistant State's Attorney
4 Matthew Coghlan, you testified before the
5 trier of fact to testimony that Rankins had
6 implicated Serrano in this case, correct?
7     MS. CERCONE:  Objection; form,
8 foundation.
9     THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q.  You testified further, sir, if you
13 want to look at Page 95, that you put
14 together a lineup on June 11th of 1993 that
15 you had viewed by Timothy Rankins and Wilda
16 Vargas, correct?
17     **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     MR. GIVEN:  Objection; form.
20     THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23     Q.  Isn't it true, sir, that
24 Mr. Rankins never looked at a live lineup

242

1 that contained the plaintiffs in this matter,
2 correct?
3     **A.  On advice of counsel --**
4     MR. GIVEN:  Form.  Go ahead.
5     THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8     Q.  And Wilda Vargas, when she viewed
9 the lineup, indicated to you and Detective
10 Guevara that she did not have a recollection
11 of who the individuals were at the gas
12 station, correct?
13     **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15     Q.  And you testified that she viewed
16 the lineup and made identification of -- an
17 identification of Armando Serrano as one of
18 the people at the gas station, right?
19     **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q.  And that was false testimony,
22 correct?
23     **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

243

1     Q.  And on July 9th of 1993 -- strike
2 that.
3         You testified about the lineup that
4 was conducted on July 9th of 1993, and that
5 would be at Page 97, correct?
6     **A.  On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8     Q.  You also had Wilda Vargas view that
9 lineup that contained Jose Montanez, correct?
10     **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12     Q.  And, again, Wilda Vargas told you
13 that she could not identify any of the
14 individuals who were at the gas station
15 because she had not gotten a good look at
16 them, correct?
17     **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     Q.  And notwithstanding the fact that
20 she had told you that, you instructed or
21 directed her to pick out Jose Montanez as one
22 of the individuals who was at the gas
23 station, correct?
24     **A.  On advice of counsel, I assert my**

244

1 **Fifth Amendment rights.**
2     Q.  And when you testified that she
3 identified Jose Montanez from that lineup,
4 that was false testimony, right?
5     **A.  On advice of counsel, I assert my**
6 **Fifth Amendment rights.**
7     Q.  And that was false testimony that
8 you practiced with Assistant State's Attorney
9 Matthew Coghlan prior to taking the stand,
10 correct?
11     MS. CERCONE:  Object to form,
12 foundation.
13     THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q.  And the false testimony that you
17 provided at the trial of Mr. Serrano and
18 Mr. Montanez and Mr. Pacheco was used to
19 secure wrongful convictions against the
20 plaintiffs, correct?
21     MR. GIVEN:  Objection; form, foundation,
22 competence, speculation.
23     THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

245

1 BY MS. BONJEAN:
2    Q. After you testified falsely at the
3 trial of Mr. Serrano and Mr. Montanez and
4 Mr. Pacheco, Mr. Serrano and Mr. Montanez
5 were convicted of the murder of Rodrigo
6 Vargas, correct?
7    MR. GIVEN: Form.
8    THE WITNESS: On advice of counsel, I
9 assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11    Q. And you never told the judge that
12 your testimony was a bald-faced lie, did you?
13    **A. On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15    Q. And you never told anyone, even
16 after the wrongful conviction of Mr. Montanez
17 and Mr. Serrano that the testimony you
18 provided at their trial was false, did you?
19    **A. On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21    Q. Do you have any regret for
22 testifying falsely against Mr. Montanez,
23 Mr. Serrano, and Mr. Pacheco and causing
24 their 23-year wrongful convictions?

246

1    MR. GIVEN: Objection; form.
2    THE WITNESS: On advice of counsel, I
3 assert my Fifth Amendment rights.
4 BY MS. BONJEAN:
5    Q. I'm going to have you look at
6 what's previously marked as Guevara 7.
7    Mr. Halvorsen, handing you what's
8 been marked as Guevara 7, which is an
9 affidavit of Francisco Vicente. It was
10 executed on May 26th of 2004.
11    Have you ever seen this affidavit
12 before, sir?
13    **A. On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15    Q. I want to draw your attention to
16 provision 4 or No. 4 of this affidavit, in
17 which Francisco Vicente affirms that his
18 testimony was false in all respect. While
19 attributing his acquaintance with each of the
20 defendants, he did not see any of them on
21 February 5th, 1993. At no point then or
22 thereafter did Serrano, Pacheco, or Montanez
23 speak to him -- speak to Vicente about the
24 murder or any knowledge they may have had

247

1 concerning the death of Rodrigo Vargas.
2    Do you see that, sir?
3    **A. On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5    Q. And, in fact, Francisco Vicente's
6 statement that he made on May 26th, 2004 is
7 in fact, truthful testimony; isn't that
8 right? Or a truthful statement?
9    MR. GIVEN: Objection; form and
10 foundation.
11    THE WITNESS: On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14    Q. And he went on to say that his
15 false testimony was given as a result of
16 threats, intimidation, and physical abuse by
17 Detective Reynaldo Guevara, and this began
18 during the time period that he was
19 incarcerated at Cook County jail following
20 his arrest for armed robbery. Do you see
21 that?
22    **A. On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24    Q. And, sir, you were aware and knew

248

1 that Mr. Vicente had suffered intimidation
2 and physical abuse by Detective Reynaldo
3 Guevara, correct?
4    **A. On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6    Q. I'd like you to actually take a
7 look at this affidavit. If you can, just
8 take the opportunity to read it at your
9 convenience and identify for me any statement
10 in this affidavit that you know to be false
11 by Francisco Vicente.
12    **A. On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14    Q. Isn't it true, Mr. Halvorsen, at
15 some point prior to Mr. Vicente's own
16 sentencing hearing in his armed robbery
17 cases, that he realized that he was not
18 actually going to get that six-year minimum
19 deal that he had been promised by you and
20 Detective Guevara?
21    MR. GIVEN: Form, foundation,
22 competence, speculation.
23    THE WITNESS: On advice of counsel, I
24 assert my Fifth Amendment rights.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

249

1  BY MS. BONJEAN:
2      Q.  At some point Francisco Vicente
3  learned that he was not eligible for the
4  minimum a of six -- a six-year sentence
5  because one of his rob -- well, three of his
6  armed robberies were committed while he was
7  on bond for another robbery, correct?
8      MR. GIVEN:  Same objection.
9      THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q.  And he was angry at you and
13 Detective Guevara and the Assistant State's
14 Attorney because a six-year sentence was an
15 illegal sentence?  He wasn't going to be able
16 to get it, and that the mandatory minimum
17 sentence was actually nine years, right?
18     MR. GIVEN:  Same objections.
19     THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q.  And isn't it true that he was angry
23 that he was now going to have to do a
24 nine-year sentence, and he told you as much,

250

1  correct?
2      A.  On advice of counsel, I assert my
3  Fifth Amendment rights.
4      Q.  And he felt that he had been double
5  crossed by you and Detective Guevara and the
6  Assistant State's Attorneys when he learned
7  that the mandatory minimum sentence that he
8  would have to serve for his four robbery
9  cases was actually nine years and not six
10 years, correct?
11     MR. GIVEN:  Same objections.
12     THE WITNESS:  On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15     Q.  And isn't it true that you,
16 Detective Guevara and Assistant State's
17 Attorneys Dillon and Coghlan decided that you
18 would try to make it up to him by getting him
19 pretrial custody time to which he wasn't
20 entitled?
21     MS. CERCONE:  Objection; form.
22     THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

251

1  BY MS. BONJEAN:
2      Q.  In fact, you knew that at Frankie
3  Vicente's sentencing hearing on
4  September 23rd, 1996 Assistant State's
5  Attorney Dillon stood up before Judge Surrea
6  (phonetic) on that sentencing proceeding or
7  at that sentencing proceeding, correct?
8      A.  On advice of counsel, I assert my
9  Fifth Amendment rights.
10     Q.  And, in fact, Assistant State's
11 Attorney John Dillon drafted the sentencing
12 order that was presented to Judge Surrea to
13 be signed that reflected the pretrial custody
14 time to which Mr. Vicente was entitled,
15 correct?
16     MR. GIVEN:  Form.
17     THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20     Q.  And between May 14th, 1993, the
21 date of Mr. Vicente's arrest, and the date of
22 his sentencing hearing on September 23rd,
23 1996, he was actually entitled to 1,132 days
24 of pretrial custody; isn't that correct?

252

1      MR. GIVEN:  Objection; form, foundation,
2  competence, speculation.
3      THE WITNESS:  On advice of counsel, I
4  assert my Fifth Amendment rights.
5  BY MS. BONJEAN:
6      Q.  And notwithstanding the fact that
7  he was only entitled to 1,132 days of
8  pretrial custody credit, Assistant State's
9  Attorney John Dillon wrote in the proposed
10 sentencing order that he had spent 1,476 days
11 in custody pretrial, correct?
12     MR. GIVEN:  Form, foundation.
13     THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q.  And taking into account day-for-day
17 credit, Assistant State's Attorney John
18 Dillon essentially gave Mr. Vicente an extra
19 two years of good time, correct?
20     MR. GIVEN:  Form, foundation,
21 speculation, competence.
22     THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

64 (253 to 256)

253

1  BY MS. BONJEAN:
2      Q.  And Assistant State's Attorney
3  Dillon gave Mr. Vicente over 300 days of
4  additional pretrial custody time in order to
5  make up for the fact that they had forgotten
6  that he couldn't get a six-year sentence but
7  was going to have to take a nine-year
8  sentence because of the bond-on-bond crime
9  that he had committed?
10      MR. GIVEN:  Same objection.
11      THE WITNESS:  On advice of counsel, I
12  assert my Fifth Amendment rights.
13  BY MS. BONJEAN:
14      Q.  And, in fact, Mr. Vicente served
15  about three-and-a-half years of real time on
16  that nine-year sentence; isn't that correct?
17      MR. GIVEN:  Same objections.
18      THE WITNESS:  On advice.
19      MR. GIVEN:  Hold on.
20      Form and foundation.  Yeah, same
21  objections.  Competence and foundation and
22  speculation as well.
23      Go ahead.
24      THE WITNESS:  On advice of counsel, I

254

1  assert my Fifth Amendment rights.
2  BY MS. BONJEAN:
3      Q.  And isn't it true, Mr. Halvorsen,
4  that Mr. Vicente was back on the streets
5  approximately a month after he pled guilty on
6  September 23rd of 1996?
7      **A.  On advice of counsel, I assert my**
8  **Fifth Amendment rights.**
9      Q.  And that within a few months, you
10  actually arrested him again for an armed
11  robbery for which he ended up doing 20 years
12  in prison?
13      **A.  On advice of counsel, I assert my**
14  **Fifth Amendment rights.**
15      Q.  Mr. Halvorsen, you framed
16  Mr. Montanez, Serrano, and Pacheco pursuant
17  to an official policy or practice whereby the
18  Chicago Police Department put dozens of
19  innocent individuals in prison for crimes
20  they did not commit, correct?
21      MS. CERCONE:  Objection; form.
22      THE WITNESS:  On advice of counsel, I
23  assert my Fifth Amendment rights.
24

255

1  BY MS. BONJEAN:
2      Q.  You framed Montanez, Serrano and
3  Pacheco pursuant to an official policy or
4  practice whereby members of Chicago Police
5  Department manipulated and coerced
6  eyewitness -- eyewitnesses to obtain false
7  photo and in-person identifications; isn't
8  that right?
9      MS. CERCONE:  Objection; form.
10      THE WITNESS:  On advice of counsel, I
11  assert my Fifth Amendment rights.
12  BY MS. BONJEAN:
13      Q.  You framed Montanez, Serrano, and
14  Pacheco pursuant to an official policy or
15  practice whereby members of the Chicago
16  Police Department manipulated and coerced
17  witness testimony, correct?
18      MS. CERCONE:  Objection; form.
19      THE WITNESS:  On advice of counsel, I
20  assert my Fifth Amendment rights.
21  BY MS. BONJEAN:
22      Q.  You framed Mr. Montanez, Serrano,
23  and Pacheco pursuant to an official policy or
24  practice whereby members of the Chicago

256

1  Police Department fabricated false evidence,
2  including false police reports?
3      MS. CERCONE:  Objection; form.
4      THE WITNESS:  On advice of counsel, I
5  assert my Fifth Amendment rights.
6  BY MS. BONJEAN:
7      Q.  And you framed Mr. Montanez,
8  Serrano, and Pacheco pursuant to an official
9  policy or practice whereby members of the
10  Chicago Police Department fabricated false
11  evidence, including false police reports?
12      MS. CERCONE:  Objection; form.
13      THE WITNESS:  On advice of counsel, I
14  assert my Fifth Amendment rights.
15  BY MS. BONJEAN:
16      Q.  You framed Mr. Montanez,
17  Mr. Serrano, and Mr. Pacheco pursuant to an
18  official policy or practice whereby members
19  of the Chicago Police Department kept
20  clandestine files that contained exculpatory
21  evidence that would never be shared with the
22  criminal defendants or State prosecutors;
23  isn't that right?
24      MS. CERCONE:  Objection; form.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

65 (257 to 260)

---

257

1    MR. GIVEN:  Foundation, competence.
2    THE WITNESS:  On advice of counsel, I
3 assert my Fifth Amendment rights.
4 BY MS. BONJEAN:
5    Q.  You framed Mr. Montanez,
6 Mr. Serrano, and Mr. Pacheco pursuant to an
7 official policy or practice whereby members
8 of the Chicago Police Department destroyed
9 evidence suggesting that suspects and
10 criminal defendants were, in fact, not
11 guilty, correct?
12    MS. CERCONE:  Objection; form.
13    THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16    Q.  You framed Mr. Montanez, Serrano,
17 and Pacheco pursuant to an official policy or
18 practice whereby members of the Chicago
19 Police Department concealed material
20 exculpatory evidence from suspects, criminal
21 defendants, their lawyers, and State
22 prosecutors, including materials that could
23 be used to impeach State witnesses; isn't
24 that right?

---

258

1    MS. CERCONE:  Objection; form.
2    THE WITNESS:  On advice of counsel, I
3 assert my Fifth Amendment rights.
4 BY MS. BONJEAN:
5    Q.  You framed Mr. Montanez,
6 Mr. Serrano, and Pacheco pursuant to an
7 official policy or practice whereby members
8 of the Chicago Police Department lied in
9 criminal trials about investigations they had
10 been involved in?
11    MS. CERCONE:  Objection; form.
12 BY MS. BONJEAN:
13    Q.  Correct?
14    **A.  On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16    Q.  And you framed Mr. Montanez,
17 Mr. Serrano, and Mr. Pacheco pursuant to an
18 official policy or practice whereby members
19 of the Chicago Police Department lied and
20 covered up misconduct committed by their
21 colleagues pursuant to a code of silence,
22 correct?
23    MS. CERCONE:  Objection; form.
24    THE WITNESS:  On advice of counsel, I

---

259

1 assert my Fifth Amendment rights.
2 BY MS. BONJEAN:
3    Q.  You framed Mr. Montanez,
4 Mr. Serrano, and Mr. Pacheco pursuant to an
5 official policy or practice whereby members
6 of the Chicago Police Department were never
7 disciplined for this type of misconduct
8 creating an environment of lawlessness; isn't
9 that right?
10    MS. CERCONE:  Objection; form.
11    THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14    Q.  You used unconstitutionally
15 coercive tactics, including excessive force,
16 you manipulated eyewitnesses and eyewitness
17 identifications, and you framed innocent
18 individuals for crimes they did not commit
19 more than three dozen times during the course
20 of your employment with the Chicago Police
21 Department; isn't that right?
22    MR. GIVEN:  Form; foundation.
23    THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

---

260

1 BY MS. BONJEAN:
2    Q.  Sir, you engaged in this misconduct
3 repeatedly because you knew you would never
4 be disciplined for this misconduct, correct?
5    MR. GIVEN:  Form.
6    THE WITNESS:  On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9    Q.  In fact, you were never disciplined
10 for framing people for crimes they did not
11 commit, correct?
12    **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14    Q.  And, instead, you received a merit
15 promotion to detective; isn't that right?
16    MS. CERCONE:  Objection.
17    MR. GIVEN:  Form.
18    MS. BARBER:  Join.
19    THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22    Q.  Mr. Halvorsen, you understand that
23 you alone and not your lawyers control your
24 Fifth Amendment rights, don't you?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

66 (261 to 264)

261

1    MR. GIVEN:  Object to form.  You can
2  answer.
3    THE WITNESS:  On advice of counsel, I
4  assert my Fifth Amendment rights.
5  BY MS. BONJEAN:
6    Q.  Sir, why have you asserted your
7  Fifth Amendment right not to incriminate
8  yourself in this deposition?
9    MR. GIVEN:  Objection; calls for
10  attorney client priv- -- Calls for matters
11  that are covered by the attorney-client
12  privilege, and I would instruct him not to
13  answer that question to the extent that it
14  covers attorney-client privilege.
15    THE WITNESS:  On advice of counsel, I
16  assert my Fifth Amendment rights.
17  BY MS. BONJEAN:
18    Q.  Do you intend to assert the Fifth
19  to all questions asked at this deposition?
20    MR. GIVEN:  Objection; form.
21    THE WITNESS:  On advice of counsel, I
22  assert my Fifth Amendment rights.
23  BY MS. BONJEAN:
24    Q.  Has it been and is it your

262

1  intention to assert the Fifth Amendment to
2  all questions asked to you about the Vargas
3  murder investigation?
4    MR. GIVEN:  Form.
5    THE WITNESS:  On advice of counsel, I
6  assert my Fifth Amendment rights.
7  BY MS. BONJEAN:
8    Q.  Has it been and is it your
9  intention to assert the Fifth Amendment to
10  all questions asked to you about any murder
11  investigation in which you participated?
12    MR. GIVEN:  Form.
13    THE WITNESS:  On advice of counsel, I
14  assert my Fifth Amendment rights.
15  BY MS. BONJEAN:
16    Q.  Has it been and is it your
17  intention to assert the Fifth Amendment to
18  all questions asked about you regarding any
19  witness that you have interviewed, interacted
20  with, or any suspect whom you've interrogated
21  through the course of your career?
22    MR. GIVEN:  Form.
23    THE WITNESS:  On advice of counsel, I
24  assert my Fifth Amendment rights.

263

1  BY MS. BONJEAN:
2    Q.  Do you intend to assert the Fifth
3  Amendment to all questions asked about your
4  employment with the Chicago Police
5  Department?
6    MR. GIVEN:  Form.
7    THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment rights.
9  BY MS. BONJEAN:
10    Q.  Are there any subjects that you can
11  identify as you sit here today on which you
12  are willing to give binding testimony?
13    MR. GIVEN:  Form.
14    THE WITNESS:  On advice of counsel, I
15  assert my Fifth Amendment rights.
16  BY MS. BONJEAN:
17    Q.  Has it been your intention and is
18  it your intention to assert your Fifth
19  Amendment rights to any and all questions?
20    MR. GIVEN:  Form.
21    THE WITNESS:  On advice of counsel, I
22  assert my Fifth Amendment rights.
23  BY MS. BONJEAN:
24    Q.  Mr. Halvorsen, in order to assert

264

1  your Fifth Amendment right not incriminate
2  yourself, sir, you do understand that you
3  might -- you must have a reasonable fear of
4  future prosecution based on that testimony
5  that you might otherwise give today, correct?
6    MR. GIVEN:  Form, and I object to you
7  giving legal advice to my client.
8    You can answer.
9    THE WITNESS:  On advice of counsel, I
10  assert my Fifth Amendment rights.
11  BY MS. BONJEAN:
12    Q.  Mr. Halvorsen, what crime do you
13  fear that you might be prosecuted for in
14  connection with your testimony here today?
15    MR. GIVEN:  Objection; form.  And to the
16  extent that an answer would implicate
17  attorney-client privilege, I would instruct
18  him not to answer.
19    THE WITNESS:  On advice of counsel, I
20  assert my Fifth Amendment rights.
21  BY MS. BONJEAN:
22    Q.  Do you fear prosecution by state
23  authorities or federal authorities?
24    MR. GIVEN:  Same objections.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

265

1       You can answer.
2       THE WITNESS:  On advice of counsel, I
3 assert -- I assert my Fifth Amendment rights.
4 BY MS. BONJEAN:
5       Q.  Do you fear prosecution for
6 perjury?
7       MR. GIVEN:  Same objections.
8       THE WITNESS:  On advice of counsel, I
9 assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11      Q.  Do you fear prosecution for lies
12 you have told in the past under oath or for
13 lies you intend to tell in this case under
14 oath?
15      MR. GIVEN:  Same objections.
16      THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19      Q.  Do you fear prosecution for lying
20 under oath?
21      MR. GIVEN:  Same objections.
22      THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

266

1 BY MS. BONJEAN:
2       Q.  Do you fear prosecution for
3 obstruction of justice?
4       MR. GIVEN:  Same objections.
5       THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8       Q.  Do you fear prosecution for any
9 RICO violations?
10      MR. GIVEN:  Same objections.
11      THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14      Q.  Do you fear prosecution for any
15 Hobbs Act violations?
16      MR. GIVEN:  Same objections.
17      THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20      Q.  Do you fear prosecution for
21 bribery?
22      MR. GIVEN:  Same objections.
23      THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

267

1 BY MS. BONJEAN:
2       Q.  Do you fear prosecution for fraud?
3       MR. GIVEN:  Same objections.
4       THE WITNESS:  On advice of counsel, I
5 assert my Fifth Amendment rights.
6 BY MS. BONJEAN:
7       Q.  Do you fear prosecution for mail
8 fraud?
9       MR. GIVEN:  Same objections.
10      THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13      Q.  Do you fear prosecution for assault
14 or battery?
15      MR. GIVEN:  Same objections.
16      THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19      Q.  Do you fear prosecution for
20 violation of federal civil rights criminal
21 laws?
22      MR. GIVEN:  Same objections.
23      THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

268

1 BY MS. BONJEAN:
2       Q.  When in this litigation did you
3 determine that you would assert your Fifth
4 Amendment right not to incriminate yourself?
5       MR. GIVEN:  Same objections.
6       THE WITNESS:  On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9       Q.  Why did you determine that you
10 should assert your Fifth Amendment right not
11 to incriminate yourself in this case?
12      MR. GIVEN:  Same objections.
13      THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16      Q.  And isn't it true that it is
17 because you committed the constitutional
18 violations that Montanez and Serrano allege
19 in their complaints?
20      MR. GIVEN:  I'm sorry.  Could you read
21 that?
22 BY MS. BONJEAN:
23      Q.  Isn't it true that you are
24 asserting your Fifth Amendment right not to

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

269

1  incriminate yourself here today because you
2  did, in fact, commit the constitutional
3  violations that Montanez and Serrano allege
4  in their complaints?
5       MR. GIVEN:  Same objections.
6       THE WITNESS:  On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9       Q.  Are you asserting your Fifth
10 Amendment rights in this case in order to
11 deprive plaintiffs of discovery in this case?
12      MR. GIVEN:  Same objections.
13      THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16      Q.  Do you intend to assert your Fifth
17 Amendment right not to incriminate yourself
18 in this case if you are called upon to
19 testify at trial?
20      MR. GIVEN:  Same objections.
21      THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24      Q.  Is it your decision to assert your

270

1  Fifth Amendment right not to incriminate
2  yourself your own choice -- Is it your
3  decision -- Is your decision to assert your
4  Fifth Amendment right not to incriminate
5  yourself your own choice or an instruction
6  given to you by your lawyer?
7       MR. GIVEN:  Same objections.
8       THE WITNESS:  On advice of counsel, I
9  assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11      Q.  You do realize, sir, that if at
12 some later point you wish to give testimony
13 under oath at trial or at any other
14 proceeding, that the plaintiffs will object
15 if you do not give testimony here today?
16      MR. GIVEN:  Are you done?
17      MS. BONJEAN:  Yes.
18      MR. GIVEN:  Same objections, plus
19 speculation.  I don't know how he can imagine
20 knowing what plaintiffs intend to do, but
21 same objections.
22        You can answer.
23      THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

271

1  BY MS. BONJEAN:
2       Q.  Well, sir, you do realize that if
3  at a later point you indicate that you wish
4  to give testimony in a proceeding and seek to
5  blame prior attorneys for having given you
6  the advice to plead your Fifth Amendment
7  right, the plaintiffs will, in fact, object
8  and move to bar your testimony if you do not
9  provide testimony here today regarding the
10 advice you were provided by your counsel?
11        Do you understand that?
12      MR. GIVEN:  Same objections.
13      THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16      Q.  Did you rely on all -- Did you rely
17 on the advice of your counsel in your
18 decision to assert your Fifth Amendment
19 rights?
20      MR. GIVEN:  Same objections.
21      THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24      Q.  And, sir, I'm going to, again,

272

1  instruct you that if you refuse to answer
2  questions about the legal advice that you
3  relied upon, we will move to bar you from
4  later claiming that you relied upon advice of
5  counsel as an explanation for your statements
6  here today.
7        Do you understand that?
8       MR. GIVEN:  Same objections.
9       THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12      Q.  What lawyers did you speak to about
13 asserting your Fifth Amendment right not to
14 incriminate yourself?
15      MS. BONJEAN:  You can answer.
16      THE WITNESS:  Jeff Given and Dan
17 Herbert.
18 BY MS. BONJEAN:
19      Q.  Did you speak with Mr. Soto?
20      A.  What's his first name?
21      Q.  James.
22      A.  I think I did.
23      Q.  What about Ms. Golden?
24      A.  I don't remember.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

69 (273 to 276)

---

273

1    Q.  Mr. Grille (phonetic)?
2    **A.  I don't remember.**
3    Q.  Do you remember speaking to any
4  other members of the Sotos law firm aside
5  from Mr. Sotos and Mr. Given?
6    MR. GIVEN:  About?
7  BY MS. BONJEAN:
8    Q.  About the advice that you were --
9  Well, about asserting your Fifth Amendment
10 right not to incriminate yourself?
11   **A.  No.**
12   Q.  Did you speak with any attorney
13 outside of the Sotos law firm aside from
14 Mr. Herbert about asserting your Fifth
15 Amendment right not to incriminate yourself?
16   **A.  No.**
17   Q.  Did you speak with any attorney
18 from the law firm of Rock & Fusco or Rock
19 Fusco?
20   **A.  No.**
21   Q.  Did you speak with Ms. Eileen Rosen
22 from Rock Fusco regarding your assertion of
23 your Fifth Amendment right here today?
24   **A.  No.**

---

274

1    MR. GIVEN:  Don't look at me.
2    THE WITNESS:  I don't know.  Are these
3  Fifth Amendment questions?  I don't know.
4    MR. GIVEN:  I will tell when it's a
5  Fifth Amendment question again.
6    THE WITNESS:  Okay.
7  BY MS. BONJEAN:
8    Q.  Did you speak with any attorney
9  from the Chicago law department?
10   **A.  No.**
11   Q.  Did you speak with any attorney
12 from the Cook County State's Attorneys
13 office?
14   **A.  No.**
15   Q.  Did you speak with any attorney
16 associated with the Fraternal Order of
17 Police?
18   MR. GIVEN:  With regard to his Fifth
19 Amendment?
20   MS. BONJEAN:  With regard to anything.
21   THE WITNESS:  I believe Dan Herbert is
22 the FOP lawyer.
23 BY MS. BONJEAN:
24   Q.  Okay.  Aside from Dan Herbert, did

---

275

1  you speak with any other attorneys with the
2  Fraternal Order of Police?
3    **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5    Q.  What other attorneys have
6  represented you in the past two years?
7    **A.  None.**
8    MS. BONJEAN:  Give me one second.
9  BY MS. BONJEAN:
10   Q.  The lawyer that you identified
11 regarding advice around the Fifth Amendment
12 issue, what advice did those lawyers give to
13 you that you assert as part of your advice of
14 counsel defense?
15   MR. GIVEN:  Same objections as before.
16 That calls for attorney-client privilege.  To
17 the extent that your answer would implicate
18 attorney-client privilege, I will instruct
19 you not to answer.  If it doesn't, you can
20 answer otherwise.
21   THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24   Q.  You are not asserting your advice

---

276

1  of counsel defense in this case, correct?
2    MR. GIVEN:  Objection; form.
3    THE WITNESS:  On advice of counsel, I
4  assert my Fifth Amendment rights.
5  BY MS. BONJEAN:
6    Q.  What advice did your lawyers give
7  you that you assert as part of your advice of
8  counsel defense?
9    MR. GIVEN:  Same objections, assumes a
10 fact not in evidence.  You can answer.
11   THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14   Q.  Did your attorneys give you advice
15 about whether your conduct in connection with
16 plaintiffs or the Vargas investigation
17 violated the constitution?
18   MR. GIVEN:  Same objections.
19   THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22   Q.  Did they give you advice about
23 whether your conduct in connection with
24 plaintiffs or the Vargas investigation

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

70 (277 to 280)

277

1  violated state law?
2       MR. GIVEN:  Same objections.
3       THE WITNESS:  On advice of counsel, I
4  assert my Fifth Amendment rights.
5  BY MS. BONJEAN:
6       Q.  Or did they simply just give you
7  advice generally about asserting Fifth
8  Amendment rights in this case?
9       MR. GIVEN:  Same objections.
10       THE WITNESS:  On advice of counsel, I
11  assert my Fifth Amendment rights.
12  BY MS. BONJEAN:
13       Q.  Are you prepared to answer in any
14  way, shape, or form why your attorneys told
15  you that you should assert your rights --
16  your Fifth Amendment rights in this case?
17       MR. GIVEN:  Same objections.
18       THE WITNESS:  On advice of counsel, I
19  assert my Fifth Amendment rights.
20  BY MS. BONJEAN:
21       Q.  Did any lawyer give you any advice
22  at all relating to any of your interactions
23  with Montanez, Serrano, and Pacheco prior to
24  this lawsuit?

278

1       MR. GIVEN:  Same objections.
2       THE WITNESS:  On advice of counsel, I
3  assert my Fifth Amendment rights.
4  BY MS. BONJEAN:
5       Q.  Did any lawyer give you any advice
6  at all during the course of the Vargas
7  investigation?
8       A.  On advice of counsel, I assert my
9  Fifth Amendment rights.
10       Q.  When you testified at plaintiffs'
11  criminal trial, did any lawyer there give you
12  any advice about whether to testify?
13       A.  On advice of counsel, I assert my
14  Fifth Amendment rights.
15       Q.  And apart from Assistant State's
16  Attorney Matt Coghlan, did any attorney give
17  you advice at plaintiffs' criminal trial
18  about how to testify?
19       A.  On advice of counsel, I assert my
20  Fifth Amendment rights.
21       Q.  Have you received any other advice
22  at any point in time from any attorney or
23  legal authority about the investigation of
24  the Vargas murder or Montanez, Serrano, and

279

1  Pacheco?
2       MR. GIVEN:  Object to the extent that
3  you're asking about attorney-client
4  privilege.  I would instruct him not to
5  answer to the extent an answer would
6  implicate that.  Otherwise, you can answer.
7       THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment rights.
9  BY MS. BONJEAN:
10       Q.  Isn't it true that you were
11  contacted by the attorneys at Sidley & Austin
12  in December of 2013, who sought to interview
13  you about your investigation in the Serrano
14  and Montanez case, along with other cases?
15       A.  On advice of counsel, I assert my
16  Fifth Amendment rights.
17       Q.  You agreed to meet with the
18  attorneys from Sidley & Austin, specifically,
19  Daniel Greenfield and Fred Stewart; isn't
20  that right?
21       A.  On advice of counsel, I assert my
22  Fifth Amendment rights.
23       Q.  And during that meeting, you
24  continued to provide false statements to

280

1  Mr. Greenfield and Mr. Stewart to cover up
2  your misconduct and that of your fellow
3  officers; isn't that correct?
4       A.  On advice of counsel, I assert my
5  Fifth Amendment rights.
6       Q.  In fact, you continued to lie about
7  the investigation because you hoped to
8  protect the wrongful convictions of
9  Mr. Serrano and Mr. Montanez, right?
10       A.  On advice of counsel, I assert my
11  Fifth Amendment rights.
12       Q.  You falsely told Mr. Greenfield
13  and Mr. Stewart that Vicente admitted on
14  May 14th, 1993 that he had been with the guy
15  who did the Vargas murder, correct?
16       A.  On advice of counsel, I assert my
17  Fifth Amendment rights.
18       Q.  And you continued to provide false
19  statements claiming that Vicente had told you
20  that Mr. Serrano and Mr. Montanez had
21  admitted to their involvement in the Vargas
22  murder, correct?
23       MR. GIVEN:  Form.
24       THE WITNESS:  On advice of counsel, I

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

281

1 assert my Fifth Amendment rights.
2 BY MS. BONJEAN:
3      Q.  At no point did you tell the
4 attorneys for Sidley & Austin that you had
5 framed Mr. Serrano and Mr. Montanez, correct?
6      **A.  On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8      Q.  In fact, you did not tell the
9 attorneys from Sidley & Austin that you and
10 Detective Guevara had helped fabricate
11 statements from Francisco Vicente and Timothy
12 Rankins that were later used to convict
13 Serrano and Montanez for the murder of
14 Rodrigo Vargas, did you?
15      **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17      MS. BONJEAN:  Give me a second.
18      MR. GIVEN:  Do you got a whole new
19 line --
20      MS. BONJEAN:  Yeah.
21      MR. GIVEN:  Why don't we take a break?
22      MS. BONJEAN:  Okay.
23      THE VIDEOGRAPHER:  Off the record, 2:57.
24      (A recess was taken.)

282

1      THE VIDEOGRAPHER:  Back on the record,
2 3:08.
3      MS. MAZUR:  As I introduced myself this
4 morning, I am Elizabeth Mazur.  I'm just
5 going to go ahead and ask some questions
6 today.
7           EXAMINATION
8 BY MS. MAZUR:
9      Q.  First, did you frame Thomas Sierra
10 for the May 23rd, 1995 murder of Noel Andahar
11 in Logan Square?
12      MR. GIVEN:  Objection; form and
13 foundation.  Also, I object to you asking
14 questions -- using this deposition to ask
15 questions about other cases.  I don't think
16 that's proper.  And to the extent that -- I'm
17 not going to instruct him not to answer; but
18 to the extent you're using this deposition to
19 ask questions about other cases, I may well
20 object in those cases to further depositions
21 of this witness in those.
22      I'll just keep that as a standing
23 objection.
24      MS. MAZUR:  Sure.

283

1      THE WITNESS:  On advice of counsel, I
2 assert my Fifth Amendment rights.
3 BY MS. MAZUR:
4      Q.  During the first day that you
5 joined the Andahar investigation on May 24,
6 1995, you developed no evidence to suggest
7 that Sierra was involved in the crime,
8 correct?
9      MR. GIVEN:  Same objection.
10      THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. MAZUR:
13      Q.  Did you fabricate a story about
14 having seen Sierra in a Buick Park Avenue
15 three days before the Andahar murder in an
16 effort to connect Sierra to the crime?
17      MR. GIVEN:  I'm sorry.  Maybe I -- I may
18 have made this clear or I may have said it,
19 but I just don't remember.  Standing
20 objections to all these questions.
21      MS. MAZUR:  Sure.
22      MR. GIVEN:  Apart from any specific
23 objection that I may raise, but the one I
24 made earlier will be standing.

284

1      THE WITNESS:  On advice of counsel, I
2 assert my Fifth Amendment rights.
3 BY MS. MAZUR:
4      Q.  You showed eyewitness Albert
5 Rodriguez a live lineup containing Sierra on
6 May 30th, 1995, correct?
7      **A.  On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9      Q.  During that lineup, you showed
10 Rodriguez who he should pick from the lineup,
11 correct?
12      **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14      Q.  Before the lineup, you showed
15 Rodriguez a photo array that contained
16 Sierra's photo, correct?
17      **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19      MR. GIVEN:  Liz, can you keep your voice
20 up a little?
21      MS. MAZUR:  Oh, sure.  Sorry.
22      MR. GIVEN:  We might be able to hear you
23 like this, but you're talking down in your
24 laptop.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

72 (285 to 288)

285

1    MS. MAZUR:  Okay, can you read back my
2 last question?  I'm sorry.
3    (The question was read as requested.)
4 BY MS. MAZUR:
5    Q.  During that photo array, you told
6 Rodriguez to identify Sierra's photo,
7 correct?
8    **A.  On advice of counsel, I assert my**
9 **Fifth Amendment rights.**
10    Q.  You told Rodriguez that Sierra was
11 probably the shooter during that photo array,
12 correct?
13    **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15    Q.  Before the lineup, Rodriguez had
16 informed you that he could not identify the
17 shooter, correct?
18    **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20    Q.  Before the photo array, Rodriguez
21 had informed you that he could not identify
22 the shooter, correct?
23    **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

286

1    Q.  Before the identification
2 procedure, you told Rodriguez that you
3 believed that you had "got the person" and
4 "knew the person who did the shooting,"
5 correct?
6    **A.  On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8    Q.  You showed eyewitness Jose Melendez
9 a live lineup containing Sierra on May 30th,
10 1995, correct?
11    **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13    Q.  During that lineup up, you showed
14 Melendez who he should pick from the lineup,
15 correct?
16    **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18    Q.  Before the lineup, you showed
19 Melendez a photo array that contained
20 Sierra's photo, correct?
21    **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23    Q.  During that photo array, you told
24 Melendez to identify Sierra's photo, correct?

287

1    **A.  On advice of counsel, I assert my**
2 **Fifth Amendment rights.**
3    Q.  You pointed to a picture of Sierra
4 in the photo array, correct?
5    **A.  On advice of counsel, I assert my**
6 **Fifth Amendment rights.**
7    Q.  And you told Melendez that you "had
8 reason to believe that this was the guy"
9 while pointing at the photo, correct?
10    **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12    Q.  Before the lineup, Melendez had
13 informed you that he could not identify the
14 shooter, correct?
15    **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17    Q.  Before the photo array, Melendez
18 had informed you that he could not identify
19 the shooter, correct?
20    **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22    Q.  You showed Jose Melendez a Buick
23 Park Avenue in the parking lot of Area 5 on
24 May 30th, 1995, correct?

288

1    **A.  On advice of counsel, I assert my**
2 **Fifth Amendment rights.**
3    Q.  And you asked him to identify it as
4 the car the shooter had been driving on the
5 night of the murder, correct?
6    **A.  On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8    Q.  And Melendez told you it was not
9 the car that the shooter had been driving on
10 the night of the murder, correct?
11    **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13    Q.  But you wrote a report falsely
14 stating that Melendez had identified the car
15 as the shooter's vehicle, correct?
16    **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18    Q.  You wrote a false report on
19 Melendez's purported identification of
20 Sierra, correct?
21    **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23    Q.  You wrote a false report on
24 Rodriguez's purported identification of

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

73 (289 to 292)

289

1  Sierra, correct?
2      **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4      Q.  You provided false testimony at
5  Sierra's trial, correct?
6      **A.  On advice of counsel, I assert my**
7  **Fifth Amendment rights.**
8      Q.  And at the time of Sierra's trial,
9  eyewitness Melendez was represented by
10 Richard Boyke, correct?
11     MR. GIVEN:  Objection; foundation and
12 competence.
13        You can answer.
14     THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. MAZUR:
17     Q.  And you had conversations about
18 Melendez's testimony at Sierra's trial,
19 correct?
20     MR. GIVEN:  Objection; form.
21     THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. MAZUR:
24     Q.  And you asked Boyke to prevent

290

1  Melendez from testifying at Sierra's trial?
2      **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4      Q.  Isn't it true that you framed
5  Geraldo Iglesias for the shooting death of
6  Monica Roman on the night of June 7th, 1993?
7      **A.  On advice of counsel, I assert my**
8  **Fifth Amendment rights.**
9      MR. GIVEN:  And also -- I'm late in the
10 game on this one.  Same standing objection
11 with regard to the other cases that we've
12 mentioned.
13 BY MS. MAZUR:
14     Q.  Isn't it true that you conspired
15 with other Chicago police officers to frame
16 Geraldo Iglesias for the shooting death of
17 Monica Roman on the night of June 7th, 1993?
18     **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q.  Isn't it true that you knew Geraldo
21 Iglesias did not shoot Monica Roman while you
22 were investigating the Roman shooting?
23     **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

291

1      Q.  Isn't it true that you fabricated
2  evidence, including falsifying police
3  reports, as part of the Roman homicide
4  investigation in June of 1993?
5      **A.  On advice of counsel, I assert my**
6  **Fifth Amendment rights.**
7      Q.  Isn't it true that during the Roman
8  homicide investigation, you withheld
9  exculpatory evidence from prosecutors,
10 criminal defendants, and their attorneys?
11     **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13     Q.  Isn't it true that during the Roman
14 homicide investigation in June 1993, you
15 coerced witnesses in order to obtain
16 manipulated and false photographic and live
17 lineup identification of Geraldo Iglesias?
18     MR. GIVEN:  Objection; form.
19     THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. MAZUR:
22     Q.  Isn't it true that you never
23 received a call on June 21st, 1993 or any
24 other date from any confidential informant

292

1  claiming that Geraldo Iglesias was involved
2  in the shooting of Monica Roman?
3      **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5      Q.  Isn't it true that you and your
6  partner, Reynaldo Guevara, routinely
7  fabricated claims that an anonymous informant
8  provided the name of a suspect when, in fact,
9  no such anonymous informant ever existed?
10     MR. GIVEN:  Form.
11     THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. MAZUR:
14     Q.  Isn't it true that you and
15 Detective Ernest Halvorsen -- Wait, sorry.
16        Isn't it true that Rosendo Ochoa
17 could not make an identification of the
18 shooter, and so you told him to pick Geraldo
19 Iglesias in June 1993?
20     **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22     Q.  Isn't it true that Rosendo Ochoa
23 told you that he could hot identify the
24 shooter from the photo array on June 22nd,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

74 (293 to 296)

293

1  1993 or from the live lineup on June 23rd,
2  1993?
3      **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5      Q.  Did Rosendo Ochoa initially select
6  someone other than Mr. Iglesias from the
7  photo array on June 22nd, 1993?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10     Q.  Did Rosendo Ochoa initially select
11 someone other Mr. Iglesias from the lineup on
12 June 23rd, 1993?
13     **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15     Q.  Did you make any comment to Rosendo
16 Ochoa to improperly influence his decision on
17 who to pick from the photo array you showed
18 him on June 22nd, 1993?
19     **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q.  Did you make comments to Rosendo
22 Ochoa to improperly influence his decision on
23 who to pick from the lineup you showed him on
24 June 23rd, 1993?

294

1      **A.  On advice of counsel, I assert my**
2  **Fifth Amendment rights.**
3      Q.  Isn't it true that you used threats
4  and incentives related to Rosendo Ochoa's own
5  legal problems to coerce him into falsely
6  identifying and testifying against Geraldo
7  Iglesias in June 1993?
8      MR. GIVEN:  Form.
9      THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. MAZUR:
12     Q.  Isn't it true that you and
13 Detective Reynaldo Guevara coerced an
14 eyewitness named Hugo Rodriguez into falsely
15 identifying Geraldo Iglesias from a photo
16 array and from a live lineup on June 24th,
17 1993?
18     **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q.  Isn't it true that Hugo Rodriguez
21 could not make an identification of the
22 shooter, and so you told him to pick Geraldo
23 Iglesias on June 24th, 1993?
24     **A.  On advice of counsel, I assert my**

295

1  **Fifth Amendment rights.**
2      Q.  Isn't it true that Hugo Rodriguez
3  told you that he could not identify the
4  shooter from the photo array or the live
5  lineup on June 24th, 1993?
6      **A.  On advice of counsel, I assert my**
7  **Fifth Amendment rights.**
8      Q.  Did Hugo Rodriguez initially select
9  someone other than Mr. Iglesias from the
10 photo array on June 24th, 1993?
11     **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13     Q.  Did Hugo Rodriguez initially select
14 someone other Mr. Iglesias from the lineup on
15 June 24th, 1993?
16     **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18     Q.  Did you make comments to Hugo
19 Rodriguez to improperly influence his
20 decision on whom to pick from the photo array
21 you showed him on June 24th, 1993?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q.  Did you make comments to Hugo

296

1  Rodrigo to improperly influence his decision
2  on whom to pick from the lineup you showed
3  him on June 24th, 1993?
4      **A.  On advice of counsel, I assert my**
5  **Fifth Amendment rights.**
6      Q.  Isn't it true that you used threats
7  and incentives related to Hugo Rodriguez's
8  own legal problems to coerce him into falsely
9  identifying and testifying against Geraldo
10 Iglesias in June 1993?
11     **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13     Q.  Isn't it true that on June 25th,
14 1993 or July 1st, 1993, you convinced
15 Francisco Vicente to make up a false story
16 that Geraldo Iglesias confessed to him about
17 shooting Monica Roman?
18     **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q.  Isn't it true that you used threats
21 and incentives related to Francisco Vicente's
22 own legal problems to pressure him into
23 falsely identifying and testifying against
24 Geraldo Iglesias in the summer of 1993?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

75 (297 to 300)

297

1     A. On advice of counsel, I assert my
2 Fifth Amendment rights.
3     Q. Isn't it true that at the trial of
4 Geraldo Iglesias for the murder of Monica
5 Roman, you gave false testimony, including
6 regarding your investigation of the crime and
7 manipulation of witnesses?
8     A. On advice of counsel, I assert my
9 Fifth Amendment rights.
10     Q. Isn't it true that your partner,
11 Detective Guevara, told you that he was going
12 to lie at Iglesias's trial about whether
13 Iglesias's claims -- about where Iglesias
14 claimed to be at the time of the murder?
15     A. On advice of counsel, I assert my
16 Fifth Amendment rights.
17     MS. MAZUR: Hold on a second. Can we go
18 off the record for just one second?
19     THE VIDEOGRAPHER: Off the record, 3:23.
20     (A recess was taken.)
21     THE VIDEOGRAPHER: Back on the record,
22 3:23.
23     MS. MAZUR: I'm about to ask a question
24 that contains a name that I'm not sure how to

298

1 pronounce. So maybe I'll spell it for the
2 court reporter first and go from there.
3     The name is -- I think it's Jaime
4 Alvarez, J-A-I-M-E, Alvarez, A-L-V-A-R-E-Z.
5 BY MS. MAZUR:
6     Q. Isn't it true that you were
7 assigned to investigate the murder of Jaime
8 Alvarez in June 1995 alongside your partner,
9 Detective Guevara?
10     A. On advice of counsel, I assert my
11 Fifth Amendment rights.
12     Q. Isn't it true that when you
13 questioned Michael Ybarra -- I'll spell it,
14 Y-B-A-R-R-A -- on July 2nd, 1995 regarding
15 the Alvarez murder, he told you that he did
16 not see who had shot him and Alvarez?
17     A. On advice of counsel, I assert my
18 Fifth Amendment rights.
19     MR. GIVEN: Can I interrupt for a
20 second?
21     Is Ybarra -- Is he the suspect in
22 this? Here is why I'm asking: Are you
23 moving -- I'm assuming that you are now
24 asking about a different --

299

1     MS. MAZUR: Yes, yes.
2     MR. GIVEN: -- case.
3     So I will reassert my same --
4     MS. MAZUR: Sure.
5     MR. GIVEN: -- standing objections that
6 I had previously. I don't know if this is
7 a --
8     MS. MAZUR: It's a different one, yes.
9     MR. GIVEN: Is it a civil lawsuit, a
10 case that is intended to be a civil lawsuit
11 or is, in fact, a criminal case that's in
12 some form of post conviction? But I'd object
13 to using this deposition for any or all of
14 those situations.
15     MS. MAZUR: Noted. And I -- I also
16 don't know, but I imagine Russell does. So
17 that's fair.
18     MR. GIVEN: Do you know, Jennifer?
19     MS. BONJEAN: What's that?
20     MR. GIVEN: Is Ybarra the suspect?
21     MS. BONJEAN: No, I think Edwin Davilla.
22     MS. MAZUR: It's the Edwin Davilla case.
23     MR. GIVEN: Got it. Thanks.
24     MS. BONJEAN: The witness is Ybarra.

300

1     MS. MAZUR: Did we get an answer on the
2 last one?
3     MR. GIVEN: If we did, I can guess what
4 it would be, what it was. You can answer
5 again.
6     THE WITNESS: On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. MAZUR:
9     Q. Isn't it true that when you
10 questioned Michael Ybarra on July 2nd, 1995
11 regarding the Alvarez murder, he could not
12 tell you anything about the shooter, either a
13 description or even if he had been in the car
14 that Ybarra had been chasing or not?
15     A. On advice of counsel, I assert my
16 Fifth Amendment rights.
17     Q. Isn't it true that when you
18 questioned Ivara (phonetic) Valasco,
19 V-A-L-A-S-C-O, on July 9th, 1995 regarding
20 the Alvarez murder, he told you that did he
21 not see who had killed Alvarez?
22     A. On advice of counsel, I assert my
23 Fifth Amendment rights.
24     Q. Isn't it true that when you

Transcript of Ernest Halvorsen

76 (301 to 304)

Conducted on April 20, 2018

301

1  questioned Ivara Valasco on July 9th, 1995,
2  regarding the Alvarez murder, he could not
3  tell you anything about the shooter, either a
4  description or even if he had been in the car
5  that Ybarra had been chasing?
6      **A.  On advice of counsel, I assert my**
7  **Fifth Amendment rights.**
8      Q.  Isn't it true that no one provided
9  any information whatsoever to suggest that
10 Mr. Davilla had anything to do with the
11 Alvarez murder before you showed
12 Mr. Davilla's photograph to Ybarra and
13 Valasco?
14     **A.  On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16     MR. GIVEN:  You know, by the way, let me
17 just -- Before you go on to your next
18 question, that question reminds me that I
19 would like to add to my standing objections.
20 Both retroactively and moving forward, in
21 addition to everything I've already said, the
22 fact that you're asking about these without
23 any documentation showing the witness, I
24 think, creates a foundation problem that is

302

1  more than the usual foundation objection.
2          So with that said, I'll add that to
3  the standing objections and then let you go
4  on.
5      BY MS. MAZUR:
6      Q.  Isn't it true that the people you
7  spoke with on July 9th, 1995 said nothing
8  about Mr. Davilla having anything to do with
9  the Alvarez murder?
10     **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12     Q.  Isn't it true that the children --
13 I'm sorry.  Isn't it true that the people you
14 spoke with on July 9th, 1995 said nothing
15 about Mr. Davilla having anything to do with
16 any criminal activity whatsoever?
17     **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     Q.  Isn't it true that you did not have
20 probable cause to suspect Mr. Davilla in the
21 Alvarez murder or any other crime in July of
22 1995?
23     **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

303

1      Q.  Isn't it true that Ybarra did not
2  voluntarily identify Mr. Davilla from a photo
3  array as the shooter in the Alvarez case?
4      **A.  On advice of counsel, I assert my**
5  **Fifth Amendment rights.**
6      Q.  An isn't it true that Valasco did
7  not voluntarily identify Mr. Davilla from a
8  photo array as the shooter in the Alvarez
9  case?
10     **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12     Q.  Isn't it true that you showed
13 Mr. Davilla's photograph to Ybarra and
14 Valasco because you were trying to frame
15 Mr. Davilla for the Alvarez murder?
16     **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18     Q.  Isn't it true that you knew Davilla
19 had nothing to do with the Alvarez murder
20 while you were investigating it?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  Isn't it true that you lied in your
24 July 11th, 1995 general progress report in

304

1  which you claim that Ybarra and Valasco
2  identified Mr. Davilla from a photo array?
3      **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5      Q.  Isn't it true that you told Valasco
6  and Ybarra who to select from the photo array
7  you showed them in July of 1995?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10     Q.  Did you help construct the lineup
11 that Ybarra and Valasco viewed in July 1995?
12     **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q.  Did you instruct Mr. Davilla to
15 turn around during his lineup to expose his
16 gang tattoo on his back?
17     **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     Q.  Did you instruct only Mr. Davilla
20 to turn around during his lineup in order to
21 expose his gang tattoo on his back?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24

305

1 BY MS. MAZUR:
2     Q.  Did you instruct only Mr. Davilla
3 to turn around during his lineup so that
4 Ybarra and Valasco would falsely implicate
5 him in the Alvarez murder?
6     **A.  On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8     Q.  Isn't it true that you conspired
9 with Guevara, Detective Garz (phonetic), and
10 Bill Johnson to frame Mr. Davilla for the
11 Alvarez murder?
12     **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q.  Moving on to another area regarding
15 David Colon.  Maybe I'll pose the question.
16     MR. GIVEN:  Is David Colon the suspect?
17     MS. MAZUR:  Yes.  He's the accused --
18 the wrongly convicted, I should say.
19 BY MS. MAZUR:
20     Q.  Okay.  So the first question is:
21 Isn't it true you were assigned to
22 investigate the murder --
23     MR. GIVEN:  I'm sorry.  I have the same
24 standing objections.

306

1     MS. MAZUR:  Do you want me to just do
2 the question first, and you can -- .
3     MS. BONJEAN:  What is the value of
4 standing objections to always repeat --
5     MR. GIVEN:  So that I don't have to say
6 it to every single question.  Do you not
7 understand the concept of a standing
8 objection?
9     MS. BONJEAN:  A standing objection is a
10 standing objection.  I understood it the
11 first time you said it.
12     MR. GIVEN:  Well, then -- I'm sorry.  I
13 didn't mean to interrupt your question.  I
14 just have a -- I don't need your question.  I
15 will have a standing objection to presumably
16 all of your questions about Mr. Colon.
17 BY MS. MAZUR:
18     Q.  Isn't it true that you were
19 assigned to investigate the murder of Michael
20 Velez, V-E-L-E-Z, in 1992?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  Isn't it true that you had no
24 reason to suspect David Colon, C-O-L-O-N, in

307

1 the murder of Michael Velez?
2     **A.  On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4     Q.  And isn't it true that Efrain,
5 E-F-R-A-I-N, Sanchez, told you that he could
6 not see the shooter's face because the
7 shooter never looked up at him?
8     **A.  On advice of counsel, I assert my**
9 **Fifth Amendment rights.**
10     Q.  And isn't it true that when you
11 brought Julio Sanchez to view photos and a
12 lineup as part of the Velez homicide
13 investigation on September 8th, 1993, Julio
14 was obviously intoxicated?
15     **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17     Q.  Isn't it true that in 1992 you knew
18 a gang member nicknamed "Mallo," M-A-L-L-O,
19 who was not David Colon, committed the Velez
20 murder?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  Isn't it true that you improperly
24 influenced Julio Sanchez to pick David Colon

308

1 out of a photo array?
2     **A.  On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4     Q.  Isn't it true that you improperly
5 influenced Efrain Sanchez to pick David Colon
6 out of a photo array?
7     **A.  On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9     Q.  Isn't it true that you told Efrain
10 Sanchez to pick David Colon out of a lineup
11 on September 8th, 1992?
12     **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q.  Isn't it true that you told Efrain
15 Sanchez to pick David Colon out of a lineup
16 on September 8th by telling him to pick No. 5
17 from that lineup?
18     **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q.  Isn't it true that you told Julio
21 Sanchez to pick David Colon out of a lineup?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q.  Isn't it true that you told Julio

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

309

1  Sanchez to pick David Colon out of a lineup
2  on September 8th, 1992 by telling him to pick
3  the person in spot No. 5?
4       **A.  On advice of counsel, I assert my**
5  **Fifth Amendment rights.**
6       Q.  Isn't it true that you showed Julio
7  Sanchez a single photo of David Colon before
8  Julio viewed a lineup?
9       **A.  On advice of counsel, I assert my**
10 **Fifth Amendment rights.**
11      Q.  Isn't it true that you showed Julio
12 Sanchez a single photo of David Colon before
13 Julio viewed a lineup and told Julio to pick
14 the person depicted in the photo from the
15 lineup?
16      **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18      Q.  Isn't it true that you told Julio
19 Sanchez to pick the same person he selected
20 from the photo array from the lineup he was
21 about to view on September 8th, 1992?
22      **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24      Q.  Isn't it true that Julio Sanchez

310

1  told you that he did not know who the shooter
2  was and did not get a good look at him?
3       **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5       Q.  Isn't it true that you conspired
6  with Defendant Guevara to falsely charge
7  David Colon with murder?
8       **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10      Q.  Isn't it true that you falsified
11 police reports in Navella's (phonetic)
12 homicide investigation to make it appear that
13 David Colon was guilty?
14      **A.  On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16      Q.  Isn't it true that you withheld
17 documents establishing David Colon's
18 innocence in the Navella murder, such that
19 the documents would not be available to
20 either the State's Attorney or Mr. Colon or
21 his attorneys?
22      **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24      Q.  Isn't it true that you framed David

311

1  Colon for murder?
2       **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4       Q.  Moving on to a different matter.  I
5  guess -- I think the suspect here is Manuel
6  Rivera.
7           Isn't it true that you assisted in
8  the investigation of the murder of Marlon,
9  M-A-R-L-O-N, Wade, in October 1989?
10      MR. GIVEN:  And for the record, I will
11 repeat my standing objections to questions
12 about Rivera.
13      THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. MAZUR:
16      Q.  Isn't it true that all available
17 information about the Wade murder stated that
18 the perpetrator was a member of the Latin
19 Eagles gang?
20      **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22      Q.  Isn't it true that you knew in 1989
23 Manuel Rivera had nothing to do with the Wade
24 murder?

312

1       **A.  On advice of counsel, I assert my**
2  **Fifth Amendment rights.**
3       Q.  Isn't it true that the Latin Eagles
4  and the Spanish Cobras were involved in a
5  gang war in September and October 1989?
6       **A.  On advice of counsel, I assert my**
7  **Fifth Amendment rights.**
8       Q.  Isn't it true that the Latin Eagles
9  and the Spanish Cobras were involved a gang
10 war in September and October 1989 arising, in
11 part, from the murder of Little Rook,
12 R-O-O-K, in September 1989?
13      MR. GIVEN:  Objection; competence,
14 speculation.  You can answer.
15      THE WITNESS:  On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. MAZUR:
18      Q.  Isn't it true that Detective
19 Guevara had told you that he had used Sal,
20 S-A-L, Ortiz to help frame Juan and Henry
21 Johnson for the murder of Little Rook?
22      **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24      Q.  Isn't it true that Detective

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

313

1  Guevara knew Sal Ortiz in October 1989?
2      MR. GIVEN:  Objection; competence.
3      THE WITNESS:  On advice of counsel, I
4  assert my Fifth Amendment rights.
5  BY MS. MAZUR:
6      Q.  Isn't it true that Detective
7  Guevara admitted to you that he lied at
8  Manuel Rivera's trial when he claimed not to
9  know who Sal Ortiz was?
10     **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12     Q.  Isn't it true that you, Defendant
13 Guevara, Detective Villardita,
14 V-I-L-L-A-R-D-I-T-A, and Steve Garz conspired
15 to frame Manuel Rivera for the Wade murder?
16     **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18     Q.  Isn't it true that Detective
19 Guevara told you during the Wade homicide
20 investigation that he fabricated his account
21 that an anonymous informant implicated Manuel
22 Rivera in the Wade murder?
23     **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

314

1      Q.  Isn't it true that you never had
2  any legitimate reason to suspect Manuel
3  Rivera in the Wade murder?
4      **A.  On advice of counsel, I assert my**
5  **Fifth Amendment rights.**
6      Q.  Isn't it true that you improperly
7  influenced Loretta, Helean, H-E-L-E-A-N, into
8  falsely implicating Mr. Rivera in the Wade
9  murder?
10     **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12     Q.  Isn't it true that you conspired
13 with Detective Guevara, Detective Villardita,
14 Steven Garz -- and Steven Garz to improperly
15 influence Loretta Helean into falsely
16 implicating Mr. Rivera in the Wade murder?
17     **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     Q.  Isn't it true that you and
20 Defendant Guevara, Detective Villardita, and
21 Steven Garz conspired to get Virgilio,
22 V-I-R-G-I-L-I-O, Muniz, M-U-N-I-Z, to falsely
23 implicate Manuel Rivera in the Wade murder?
24     **A.  On advice of counsel, I assert my**

315

1  **Fifth Amendment rights.**
2      Q.  Isn't it true that Detective
3  Guevara in your presence showed Virgilio
4  Muniz a photo of Manuel Rivera and told him
5  to falsely implicate Manuel Rivera in the
6  murder?
7      **A.  On advice of counsel, I assert my**
8  **Fifth Amendment rights.**
9      Q.  Isn't it true that Defendant
10 Guevara in your presence told Virgilio Muniz
11 that if he did not implicate Manuel Rivera in
12 the Wade murder, then Guevara would charge
13 Muniz with the Wade murder?
14     **A.  On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16     Q.  Isn't it true that Tran, T-R-A-N,
17 Brown told you that he could not identify the
18 shooter in the Wade homicide because he
19 ducked when the shots were being fired, and
20 he did not see the shooter?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  Isn't it true that you improperly
24 influenced Tran Brown to falsely implicate

316

1  Manuel Rivera in the Wade homicide?
2      **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4      Q.  Isn't it true that you conspired
5  with Detective Guevara, Detective Villardita,
6  and Steve Garz to get Tran Brown to falsely
7  implicate Manuel Rivera in the Wade homicide?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10     Q.  Isn't it true that no one ever said
11 a member of the Spanish Cobras committed the
12 Wade homicide?
13     **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15     Q.  Isn't it true that you knew that
16 Loretta Helean, Tran Brown, and Virgilio
17 Muniz's identification of Manuel Rivera were
18 fabricated?
19     **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q.  Moving on again.  The subjects of
22 the next line of questioning are Rosendo
23 Hernandez and Juan Hernandez, R-O-S-E-N-D-O
24 H-E-R-N-A-N-D-E-Z, and Juan, J-U-A-N.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

80 (317 to 320)

**317**

1      MR. GIVEN:  Thank you.  And I will
2  assert, again, for the record, my standing
3  objections to using this deposition for
4  Mr. Hernandez, and Mr. Hernandez who, I
5  believe, just recently filed a post
6  conviction proceeding.  So I object
7  specifically to this deposition being used to
8  get evidence for that case.
9      MS. MAZUR:  Okay.
10 BY MS. MAZUR:
11     Q.  Isn't it true that you and
12 Detective Guevara conspired to frame Rosendo
13 Hernandez and Juan Hernandez for the murder
14 of -- I believe, it's Jorge, J-O-R-G-E,
15 Gonzalez in June 1997?
16     **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18     Q.  Isn't it true that you and
19 Detective Guevara intentionally placed
20 Rosendo and Juan Hernandez in unduly
21 suggestive lineups?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q.  Isn't it true that you and

**318**

1  Detective Guevara intentionally placed
2  Rosendo and Juan Hernandez in unduly
3  suggestive lineups by having them be the only
4  one in the lineup with booking numbers on
5  their hands?
6      **A.  On advice of counsel, I assert my**
7  **Fifth Amendment rights.**
8      Q.  There is one more area -- two more;
9  but the next one, I believe, the suspect is
10 Jacqueline Montanez.
11     MR. GIVEN:  Jacqueline?
12     MS. MAZUR:  Yes, J-A-C-Q-U-E-L-I-N-E.
13     MR. GIVEN:  Montanez?
14     MS. MAZUR:  Yes, M-O-N-T-A-N-E-Z.
15     MR. GIVEN:  Thank you.
16         Same standing objections.
17 BY MS. MAZUR:
18     Q.  Isn't it true that on May 13th,
19 1992, you and Detective Guevara conspired to
20 frame Jacqueline Montanez for murder?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  Isn't it true that on May 13th,
24 1992, you and Detective Guevara conspired to

**319**

1  coerce Jacqueline Montanez to provide a false
2  confession?
3      **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5      Q.  Isn't it true that you knew that
6  Jacqueline Montanez was a juvenile when you
7  interrogated her in 1992?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10     Q.  Isn't it true that you knew that
11 Jacqueline Montanez, a juvenile, would be
12 more susceptible to coercion during her
13 interrogation?
14     MR. GIVEN:  Objection; form, foundation
15 competence, speculation, assumes facts not in
16 evidence.
17         Go ahead.
18     THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. MAZUR:
21     Q.  And isn't it true that you
22 interrogated Jacqueline Montanez without a
23 youth officer present so that you could
24 coerce her to falsely confess?

**320**

1      **A.  On advice of counsel, I assert my**
2  **Fifth Amendment rights.**
3      MS. MAZUR:  My last page is titled, "A
4  Bunch of Randoms."
5      MR. GIVEN:  Is that the suspect or the
6  victim?
7      MS. MAZUR:  Vomit from Russell's brain,
8  but we'll run through this and take a break.
9      MR. GIVEN:  Great.
10 BY MS. MAZUR:
11     Q.  Isn't it true that you and
12 Detective Guevara conspired to frame Charles
13 Ellison, E-L-L-I-S-O-N, for a crime he did
14 not commit?
15     MR. GIVEN:  Same standing objections.
16     THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. MAZUR:
19     Q.  Isn't it true that you and
20 Detective Guevara conspired to frame Daniel
21 Rodrigo for a crime he did not commit?
22     MR. GIVEN:  Same standing objections.
23     THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

81 (321 to 324)

321

1  BY MS. MAZUR:
2      Q.  Isn't it true that you and
3  Detective Guevara conspired to frame Santos
4  Flores, S-A-N-T-O-S F-L-O-R-E-S, for a crime
5  he did not commit?
6      MR. GIVEN:  Same standing objections.
7      THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment rights.
9  BY MS. MAZUR:
10     Q.  Isn't it true that you and
11 Detective Guevara conspired to frame Angel
12 Diaz, A-N-G-E-L D-I-A-Z for a crime he did
13 not commit?
14     **A.  On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16     MR. GIVEN:  Same objections.
17     THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. MAZUR:
20     Q.  Isn't it true that you and
21 Detective Guevara conspired to from Freddie
22 Santiago, S-A-N-T-I-A-G-O, for a crime he did
23 not commit?
24     MR. GIVEN:  Same objections.

322

1      THE WITNESS:  On advice of counsel, I
2  assert my Fifth Amendment rights.
3  BY MS. MAZUR:
4      Q.  Isn't it true that you and
5  Detective Guevara conspired to frame Reynaldo
6  Munoz for a crime he did not commit?
7      MR. GIVEN:  Same objections.
8      THE WITNESS:  On advice of counsel, I
9  assert my Fifth Amendment rights.
10 BY MS. MAZUR:
11     Q.  Isn't it true that you and
12 Detective Guevara conspired to frame Adolfo
13 Frias, A-D-O-L-F-O F-R-I-A-S, for a crime he
14 did not commit?
15     MR. GIVEN:  Same objections.
16     THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. MAZUR:
19     Q.  Isn't it true you and Detective
20 Guevara conspired to frame Alfredo
21 A-L-F-R-E-D-O, Gonzalez, G-O-N-Z-A-L-E-Z, for
22 a crime he did not commit?
23     MR. GIVEN:  Same objections.
24     THE WITNESS:  On advice of counsel, I

323

1  assert my Fifth Amendment rights.
2  BY MS. MAZUR:
3      Q.  And isn't it true that you and
4  Detective Guevara conspired to frame Carlos
5  Andino, A-N-D-I-N-O, for a crime he did not
6  commit?
7      MR. GIVEN:  Same objections.
8      THE WITNESS:  On advice of counsel, I
9  assert my Fifth Amendment rights.
10 BY MS. MAZUR:
11     Q.  And isn't it true that you and
12 Detective Guevara conspired to frame Angel
13 Gaya, A-N-G-E-L G-A-Y-A, for a crime he did
14 not commit?
15     MR. GIVEN:  Same objections.
16     THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18     MS. MAZUR:  Let me just confer about
19 this last section, and then I'll probably
20 hand it back over to --
21     MR. GIVEN:  Can we just stay on the
22 record, rather than go off and on?
23     MS. MAZUR:  That's fine.  I'm going to
24 talk to her outside.

324

1      I've got one last area.  Counsel
2  did ask some questions about Robert Buto
3  earlier, but they were more general, and
4  these are a few more specific things that she
5  did not ask.
6      MR. GIVEN:  If there's anything
7  objectionable, guess what?  I'll object.
8      MS. MAZUR:  Got it.
9  BY MS. MAZUR:
10     Q.  So a name that I will use in the
11 first question, which I'll just spell now is
12 Salvador, S-A-L-V-A-D-O-R, Ruvalcaba,
13 R-U-V-A-L-C-A-B-A.
14     Isn't it true that the man who shot
15 Salvador Ruvalcaba on May 14th, 1993 was
16 described by all of the witnesses as having a
17 ponytail?
18     **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q.  Isn't it true that Robert Buto,
21 B-U-T-O, did not have a ponytail on May 14th,
22 1993?
23     **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

82 (325 to 328)

325

1   Q.  Isn't it true that you knew that
2  Robert Buto had nothing to do with the
3  Ruvalcaba murder?
4       **A.  On advice of counsel, I assert my**
5  **Fifth Amendment rights.**
6       Q.  Isn't it true that you wanted to
7  frame Robert Buto for the Ruvalcaba murder
8  despite his innocence?
9       **A.  On advice of counsel, I assert my**
10 **Fifth Amendment rights.**
11      Q.  Isn't it true that on May 14th,
12 1993, you allowed Frankie Escobar, Ray
13 Lozada, Jacob Lozada, and Carl Richmond to
14 see Robert Buto in the police station in
15 handcuffs before these witnesses viewed a
16 lineup?
17      **A.  On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19      Q.  Isn't it true that you knew it was
20 improper to allow witnesses to see a suspect
21 in the police station in handcuffs before the
22 witnesses viewed a lineup?
23      **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

327

1  was the only person in the lineup wearing a
2  hooded shirt?
3       **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5       Q.  Isn't it true that you and
6  Detective Guevara knew that placing Mr. Buto
7  into a lineup in which he was the only person
8  wearing a hooded shirt was impermissibly
9  unfair because the witnesses did see the
10 shooter's face and were trying to identify
11 the suspect based on his clothing?
12      **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14      Q.  Isn't it true that you and
15 Detective Guevara placed Mr. Buto in an
16 impermissibly suggestive lineup because you
17 wanted Michael and Margaret Fleming to
18 falsely identify Mr. Buto?
19      MR. GIVEN:  Objection; form.
20      THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. MAZUR:
23      Q.  Did you make comments to Margaret
24 and Michael Fleming to unfairly get them to

326

1       Q.  Isn't it true that on May 14th,
2  1993, you allowed Carl Richmond to see
3  Mr. Buto in handcuffs in the bathroom before
4  Richmond viewed a lineup on that day?
5       **A.  On advice of counsel, I assert my**
6  **Fifth Amendment rights.**
7       Q.  Isn't it true that you allowed
8  Frankie Escobar, Ray Lozada, Jacob Lozada,
9  and Carl Richmond to view a Polaroid
10 photograph of Mr. Buto before these witnesses
11 viewed a lineup on May 14th, 1993?
12      **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14      Q.  Isn't it true that your partner.
15 Reynaldo Guevara told Frank Escobar, Ray
16 Lozada, Jacob Lozada, and Carl Richmond to
17 pick Mr. Buto out of a lineup on May 14th,
18 1993?
19      **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21      Q.  Isn't it true that you and
22 Detective Guevara intentionally placed
23 Mr. Buto in a lineup where the suspect was
24 described as wearing a hooded shirt, and he

328

1  falsely identify Mr. Buto from a lineup?
2       **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4       Q.  Tell me everything you did to
5  investigate the Ruvalcaba murder.
6       MR. GIVEN:  Objection; form.
7       THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment rights.
9  BY MS. MAZUR:
10      Q.  You and Defendant Guevara harassed
11 Carl Richmond in an effort to get him to
12 falsely implicate Mr. Buto at trial, correct?
13      **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15      Q.  You and Detective Guevara told
16 Richmond that if he did not implicate
17 Mr. Buto, you would place false criminal
18 charges against Richmond, correct?
19      **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21      Q.  Isn't it true that you knew that
22 Ray Lozada and Carl Richmond were lying when
23 they implicated Mr. Buto?
24      **A.  On advice of counsel, I assert my**

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

329

1 Fifth Amendment rights.
2      Q.  Isn't it true that you fabricated
3 evidence in your police reports in the
4 Ruvalcaba homicide investigation in order to
5 make it appear that witnesses had voluntarily
6 and accurately implicated Mr. Buto in that
7 homicide?
8      A.  On advice of counsel, I assert my
9 Fifth Amendment rights.
10     Q.  Isn't it true that you withheld
11 exculpatory and material evidence from your
12 police reports in the Ruvalcaba homicide
13 investigation in order to withhold the truth
14 about how the witnesses came to implicate
15 Mr. Buto in the Ruvalcaba murder?
16     A.  On advice of counsel, I assert my
17 Fifth Amendment rights.
18     Q.  Isn't it true that you and
19 Defendant Guevara and Defendant Mingy worked
20 jointly to frame Mr. Buto for the Ruvalcaba
21 murder?
22     A.  On advice of counsel, I assert my
23 Fifth Amendment rights.
24     MS. MAZUR:  That's all I've got.

330

1      MR. GIVEN:  By the way, I didn't say it
2 at the beginning, but I will say it at end.
3 I have the same standing objections to all
4 those questions about Mr. Buto.
5      MS. BONJEAN:  No one needs a break,
6 right?
7      MR. GIVEN:  No.
8      MS. BONJEAN:  If you need one -- Does
9 the deponent need one?
10     MR. GIVEN:  You all right?
11     THE WITNESS:  Yes.
12          FURTHER EXAMINATION
13 BY MS. BONJEAN:
14     Q.  Mr. Halvorsen, when did you first
15 meet Detective Guevara?
16     A.  On advice of counsel, I assert my
17 Fifth Amendment rights.
18     Q.  When did you actually become
19 partners with Detective Guevara?
20     A.  On advice of counsel, I assert my
21 Fifth Amendment rights.
22     Q.  I want to draw your attention to,
23 I'll say, the late 1980s, maybe 1988,
24 approximately.

331

1      Were you aware that Mr. Guevara had
2 a relationship with Richard Boyke that
3 involved Mr. Boyke paying Detective Guevara
4 to allow certain people to buy their way out
5 of trouble in the late '80s?
6      A.  On advice --
7      MR. GIVEN:  Form and foundation.
8      THE WITNESS:  On advice of counsel, I
9 assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11     Q.  You knew Richard Boyke from the
12 Assistant State's Attorney office from the
13 mid '80s, right?
14     A.  On advice of counsel, I assert my
15 Fifth Amendment rights.
16     Q.  Did you have an arrangement with
17 Mr. Boyke as well where he would pay you to
18 let people out of trouble?
19     MR. GIVEN:  Objection; form.
20     THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23     Q.  And isn't it true that Detective
24 Guevara routinely would allow gang members to

332

1 buy their way out of trouble with either
2 drugs, guns, or money?
3      MR. GIVEN:  Form, foundation,
4 competence.
5      THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8      Q.  There were a number of occasions
9 where you observed firsthand Detective
10 Guevara accepting either guns, drugs, or
11 money in exchange for letting gang members
12 out of trouble for various things, such as
13 gang activity or drug selling, right?
14     A.  On advice of counsel, I assert my
15 Fifth Amendment rights.
16     Q.  Did you also have an arrangement
17 with gang members on the streets of Humboldt
18 Park, that you allowed people to buy their
19 way out trouble if they gave you guns, drugs,
20 or money?
21     MR. GIVEN:  Form.
22     THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

84 (333 to 336)

333

1 BY MS. BONJEAN:
2   Q.  Did you participate in the arrest
3 of Abraham Omar for a murder that occurred on
4 a CTA bus sometime in the late 1980s?
5   MR. GIVEN:  Same standing objections
6 with regard to questions about Mr. Omar.
7   THE WITNESS:  On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10   Q.  While Mr. Omar was in custody, were
11 you present when a witness to that murder
12 identified Mr. Omar from a lineup as the
13 person who had committed the -- strike
14 that -- the murder on the CTA bus?
15   **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17   Q.  And isn't it true that at a later
18 point Detective Guevara arranged for Mr. Omar
19 to be released from custody after Mr. Omar
20 obtained representation from Richard Boyke?
21   MR. GIVEN:  Form, foundation,
22 competence.
23   THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

334

1 BY MS. BONJEAN:
2   Q.  Did you receive any of the $20,000
3 that Mr. Omar paid Mr. Boyke that secured his
4 release from custody after he was identified
5 as being the person responsible for
6 committing a murder on a CTA bus in the late
7 1980s?
8   MR. GIVEN:  Form, foundation,
9 competence.
10   THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13   Q.  And, in fact, Mr. Guevara and
14 Mr. Boyke were close friends, weren't they?
15   MR. GIVEN:  Form, foundation,
16 competence.
17   THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20   Q.  Did Mr. Boyke represent you in any
21 of your personal legal matters over the
22 coerce of your career?
23   **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

335

1   Q.  And with respect to the murder that
2 occurred on the CTA bus, isn't it true that
3 after Boyke secured release of Abraham Omar,
4 you and Detective Guevara conspired to frame
5 another individual for that murder?
6   **A.  On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8   Q.  And, in fact, you and Detective
9 Guevara determined that you would frame
10 George Laureano for the murder that occurred
11 on the CTA bus; isn't that right?
12   **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14   Q.  You knew that George Laureano was
15 innocent of that crime, isn't that true,
16 actually -- because Detective Guevara had
17 actually released the real offender, you
18 needed to close the case, and you decided to
19 do so by framing George Laureano, right?
20   MR. GIVEN:  Form.
21   THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24   Q.  But you were unable to frame George

336

1 Laureano for that because he had an alibi for
2 the time that the murder happened, right?
3   **A.  On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5   Q.  In fact, his alibi involved him
6 being at the Illinois Department of
7 Corrections at the institution called the
8 Vienna facility, and that was about Seventh
9 hours away from the City of Chicago, right?
10   MR. GIVEN:  Form.
11   THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14   Q.  So who did you and Detective
15 Guevara actually end up framing for the CTA
16 bus murder in the late 1980s?
17   MR. GIVEN:  Form.
18   THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21   Q.  How many times did you and
22 Detective Guevara allow a person who was
23 actually guilty to buy their way out of
24 trouble?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

85 (337 to 340)

337

1    MR. GIVEN:  Form and foundation.
2    THE WITNESS:  On advice of counsel, I
3 assert my Fifth Amendment rights.
4 BY MS. BONJEAN:
5    Q.  Now, in 1985, you were assigned to
6 investigate the murder of Ivan Mena, weren't
7 you?
8    MR. GIVEN:  Could you spell that one for
9 me?
10    MS. BONJEAN:  Yeah.  It's I-V-A-N
11 M-E-N-A.
12    MR. GIVEN:  Thank you.
13    THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15    MS. BONJEAN:  I'm going to actually mark
16 this as Halvorsen 3.
17    (Halvorsen Deposition Exhibit No. 3
18     was marked for identification.)
19    MR. GIVEN:  I'm going to assert my
20 standing objections to questions involving
21 this case and maybe Reynaldo Munoz.  Is he
22 the suspect?
23    MS. BONJEAN:  Yes.  He's the wrongfully
24 convicted.

338

1    MR. GIVEN:  Same standing objections.
2 Go ahead.
3    MS. BARBER:  This one doesn't have a
4 Bates stamp, right, or am I missing it?
5    MS. BONJEAN:  No.  No, it does not have
6 a Bates stamp.
7    MR. GIVEN:  Has this been produced?
8    MS. BONJEAN:  I believe it has been
9 produced, but don't hold me to that.  But
10 since you had objected earlier to him not any
11 being given any paper to look at, I thought
12 it was better to --
13    MR. GIVEN:  Well, I'll just have the
14 object- -- I'm not going to instruct him to
15 not answer based on the fact that it doesn't
16 have Bates stamps; but if you could --
17 If it hasn't been produced --
18    MS. BONJEAN:  Sure.
19    MR. GIVEN:  -- if you could produce it
20 with Bates stamps after the deposition, that
21 would be appropriate.
22    MS. BONJEAN:  Absolutely.
23 BY MS. BONJEAN:
24    Q.  Mr. Halvorsen, I'm handing you what

339

1 has been marked as Halvorsen 3.  I represent
2 that that's a supplemental police report that
3 bears your signature at the bottom of that,
4 Detective E. Halvorsen, Star 6036.
5    That is you, correct, sir?
6    **A.  On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8    Q.  And, in fact, this was a case that
9 you were assigned to with Detective
10 Dickinson, Star No. 4588, right?
11    **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13    Q.  And the supervisor on this case was
14 Sergeant Epplen, correct?
15    **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17    Q.  And isn't it true, sir, that you
18 framed Reynaldo Munoz for the murder of Ivan
19 Mena and the attempted murder of Beubea
20 (phonetic) Bobby Garcia that occurred on
21 September 8th, 1985?
22    **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24    Q.  And, in fact, sir, you were not

340

1 originally assigned to investigate the murder
2 of Ivan Mena that occurred on September 8th,
3 1985; isn't that right?
4    **A.  On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6    Q.  And, in fact, the investigation was
7 carried out originally by a number detectives
8 who were unable to close the case because
9 they could not identify who was responsible
10 for the murder of Ivan Mena and the attempt
11 murder of Mr. Garcia, right?
12    **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14    Q.  And Sergeant Epplen decided that he
15 would then assign you, Detective Halvorsen,
16 and Detective Dickinson, to investigate this
17 case several weeks later; isn't that right?
18    **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20    Q.  And now isn't it true that you knew
21 Reynaldo Munoz as someone who was a member of
22 the so-called Unknown street gang who went by
23 the name of Scooby prior to September 27th,
24 1985?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

86 (341 to 344)

341

1    MR. GIVEN:  Form.
2    THE WITNESS:  On advice of counsel, I
3 assert my Fifth Amendment rights.
4 BY MS. BONJEAN:
5    Q.  And you, along with Detective
6 Dickinson and Sergeant Epplen, determined
7 that you would frame Mr. Munoz for the murder
8 of Mena since the previous detectives were
9 unable to identify who was responsible for
10 that shooting, correct?
11    **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13    Q.  And, in fact, on September 26th,
14 1989, you contacted the complainant, one of
15 the complainants, the living complainant,
16 Beubea Garcia, and told him to come to Area 5
17 or Grand and Central to identify the person
18 who shot him, right?
19    **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21    Q.  And you knew that prior to
22 September 26th, 1985 that Mr. Garcia was
23 unable to describe the individual who had
24 shot at him and killed his -- killed his

342

1 friend, Ivan Mena, right?
2    **A.  On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4    Q.  And you knew that Mr. Garcia had
5 told detectives from Area 5 that he could not
6 make an identification of the offender
7 because he did not get a look at the offender
8 who had shot at him and killed his friend,
9 Ivan Mena, on September 8th, 1985?
10    **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12    Q.  And notwithstanding the fact that
13 Mr. Garcia had consistently indicated to
14 detectives at Area 5 that he was unable to
15 describe the shooter you, nonetheless,
16 directed that he be brought into Area 5 so
17 that you could persuade him, manipulate him
18 to make an identification of Reynaldo Munoz
19 as the shooter in the murder of Ivan Mena,
20 correct?
21    MR. GIVEN:  Form.
22    THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

343

1 BY MS. BONJEAN:
2    Q.  And on September 26th, 1985,
3 Mr. Munoz was arrested and brought into
4 Area 5, correct?
5    **A.  On advice of counsel, I assert my**
6 **Fifth Amendment rights.**
7    Q.  And you interviewed Mr. Garcia when
8 he came into Area 5, and he told you that he
9 didn't get a good look at the person who was
10 responsible for the shooting, right?
11    **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13    Q.  And isn't it true that you
14 persuaded Mr. Garcia that you had learned
15 from the streets that Reynaldo Munoz was the
16 person who committed the shooting on
17 September 8th, 1985 that resulted in the
18 death of his friend -- in the death of
19 Garcia's friend, Ivan Mena, right?
20    MR. GIVEN:  Form.
21    THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24    Q.  And, in fact, Mr. Garcia told you

344

1 that he knew who Mr. Munoz was from the
2 streets, right?
3    **A.  On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5    Q.  And Mr. Munoz also told you that
6 he had seen Mr. Munoz earlier on the night of
7 the murder at a party where he had
8 actually -- he and Ivan Mena had broken up a
9 fight between Mr. Munoz and another
10 individual, correct?
11    **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13    Q.  And Mr. Beubea Garcia told you
14 expressly that he had no reason to believe
15 that Mr. Munoz had anything to do with the
16 shooting that occurred on September 8th, 1985
17 that resulted in the murder of Ivan Mena;
18 isn't that right?
19    **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21    Q.  And, yet, you told Mr. Garcia that
22 you had developed evidence that Mr. Munoz was
23 responsible, and you just needed Mr. Garcia
24 to pick him out of a lineup; isn't that

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

87 (345 to 348)

---

345

1  right?
2      **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4      Q.  And, in fact, you did construct a
5  lineup in which Mr. Munoz was one of the
6  participants in the line up, and you had
7  Mr. Mena -- strike that -- Mr. Garcia view
8  that lineup up; isn't that right?
9      **A.  On advice of counsel, I assert my**
10 **Fifth Amendment rights.**
11     Q.  And isn't it true that Mr. Garcia
12 viewed that lineup up and told you that he
13 had no reason to believe that Munoz had shot
14 and murdered his friend, Ivan Mena, right?
15     **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17     Q.  And you, nonetheless, directed him
18 to identify Mr. Munoz as the culprit,
19 correct?
20     **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22     Q.  And you reassured -- you reassured
23 Mr. Garcia that you had the right guy, and
24 that it was, in fact, Reynaldo Munoz; isn't

---

347

1  identify the person who shot him and Mena;
2  isn't that right?
3      **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5      Q.  And, in fact, that statement that
6  you have -- that you authored and is
7  contained in this supplemental report was a
8  false statement because Mr. Garcia never
9  stated that he could identify who shot him
10 and Mena, right?
11     **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13     Q.  You also reported that Garcia told
14 you that he kept the information about Munoz
15 having committed the murder because he was
16 fearful that Scooby, otherwise known as
17 Reynaldo Munoz, and his friends who killed
18 Garcia?  You recorded that here, didn't you?
19     **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q.  And that statement was a false
22 statement because Mr. Garcia never told you
23 that he was afraid to identify Munoz as the
24 offender; isn't that correct?

---

346

1  that right?
2      **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4      Q.  And Mr. Garcia, whose good friend
5  had been murdered and he, himself, shot,
6  agreed to cooperate with you because he
7  believed you when you told him falsely that
8  you had evidence that Munoz was the
9  responsible party; isn't that right?
10     MR. GIVEN:  Form, foundation,
11 competence.
12     THE WITNESS:  On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15     Q.  And, in fact, after that
16 identification was purportedly made, you
17 prepared a police report that is now part
18 of -- is Halvorsen 3 that you're now
19 presently looking at; isn't that correct?
20     **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22     Q.  And you wrote in this police report
23 that reporting detective contacted Beubea
24 Garcia, who stated that he was able to

---

348

1      **A.  On advice of counsel, I assert my**
2  **Fifth Amendment rights.**
3      Q.  You fabricated the statement that
4  Mr. Garcia was afraid of Mr. Munoz in order
5  to justify and explain plausibly why
6  Mr. Garcia never previously identified
7  Mr. Munoz as the offender; isn't that right?
8      MR. GIVEN:  Form.
9      THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q.  What specifically did you tell
13 Bobby Garcia to persuade him to identify
14 Reynaldo Munoz as the shooter?
15     **A.  On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17     Q.  Isn't it true that you and
18 Detective Dickinson together jointly
19 determined that you would close this case by
20 framing 16-year-old Reynaldo Munoz because he
21 was a known gang banger on the streets?
22     **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q.  And you framed Mr. Munoz

---

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

88 (349 to 352)

349

1 specifically by coercing and/or manipulating
2 the only witness to the crime, Bobby Beubea
3 Garcia, into falsely identifying Mr. Munoz as
4 the shooter?
5      MR. GIVEN: Form.
6      THE WITNESS: On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9      Q. Now, sir, after you secured a
10 fabricated identification of Mr. Munoz, you
11 cleared this case; isn't that right?
12     **A. On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q. But on October 4th, 1989, a witness
15 by the name of Hermeno or Hermino Molina, a
16 male, aged approximately 46 years old, who
17 work at the grocery store as a butcher, came
18 into Area 5 to report that he had actually
19 seen the shooting and that Mr. Munoz was not
20 the culprit?
21     **A. On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q. I'm going to have you look at --
24 It's going to be Page 5 of this report. I'll

350

1 give you a chance to look at it.
2      MR. GIVEN: I'm sorry. Page...
3      MS. BONJEAN: Page 5.
4      MR. GIVEN: I'm sorry. I'm not tracking
5 it. Sorry, I've got --
6      MS. BONJEAN: You just have to count to
7 five starting on the fifth page --
8      MR. GIVEN: Oh, as opposed to looking at
9 the document that has page numbers on them?
10     MS. BONJEAN: It's two different
11 reports, two different reports. This is the
12 page right here. You can rip them apart, if
13 you'd like.
14 BY MS. BONJEAN:
15     Q. I'm going to show you what is a
16 supplemental report that is dated
17 October 14th, 1985 that bears your signature
18 at the end. Do you see that, sir?
19          And this is a supplemental report
20 that you actually prepared, authored, and
21 then signed; isn't that correct?
22     **A. On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24     Q. And this reflected an interview

351

1 that you conducted with a witness by the name
2 of Hermena Molina; isn't that right?
3      **A. On advice of counsel, I assert my**
4 **Fifth Amendment rights.**
5      MR. GIVEN: You know what? He's trying
6 to listen to your question and look at the
7 document at the same time.
8      MS. BONJEAN: If you want to take your
9 time, look at the document. Whenever
10 you're...
11     THE WITNESS: Okay.
12 BY MS. BONJEAN:
13     Q. Isn't it true that Mr. Molina told
14 you that he knew who the victim was and that
15 he had seen the shooting on September 8th,
16 1985?
17     **A. On advice of counsel, I assert my**
18 **Fifth Amendment rights.**
19     Q. And isn't it true that Mr. Molina
20 told you that a boy by the name of Shorty
21 from the neighborhood did the murder and that
22 it wasn't Scooby, otherwise known by his
23 legal as Reynaldo Munoz?
24     **A. On advice of counsel, I assert my**

352

1 **Fifth Amendment rights.**
2      Q. And isn't it true that Mr. Molina
3 told you that he recognized Shorty out on the
4 street when the shooting occurred, and that
5 it was not Scooby?
6      **A. On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8      Q. Isn't it true that you immediately
9 disregarded Mr. Molina's statement to you
10 because you had committed yourself to framing
11 Mr. Munoz for the murder of Ivan Mena?
12     MR. GIVEN: Form.
13     THE WITNESS: On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q. In fact, you didn't go out and try
17 to find Shorty to determine whether he had an
18 alibi at the time of the shooting, correct?
19     **A. On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q. What efforts did you take to
22 identify who Shorty was in order to determine
23 whether he may have had some involvement in
24 the murder of Ivan Mena?

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

89 (353 to 356)

353

1      A.  On advice of counsel, I assert my
2 Fifth Amendment rights.
3      Q.  Did you and Detective Dickinson
4 together jointly agree that you would make no
5 efforts to follow up on the statement that
6 Mr. Molina provided because you were
7 committed to framing Mr. Munoz for the murder
8 of Ivan Mena?
9      A.  On advice of counsel, I assert my
10 Fifth Amendment rights.
11      Q.  How many juveniles did you frame
12 during the late 1980s and 1990s for crimes
13 they did not commit?
14      MR. GIVEN:  Objection; form.
15      THE WITNESS:  On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18      Q.  You knew that Mr. Munoz was merely
19 16 years old when you framed him for the
20 murder of Ivan Mena; isn't that right?
21      A.  On advice of counsel, I assert my
22 Fifth Amendment rights.
23      Q.  And you and Detective Dickinson,
24 after being assigned to the case for less

354

1 than 24 hours, were able to solve this crime
2 where your follow detectives were unable to
3 solve the crime; isn't that correct?
4      MR. GIVEN:  Objection; form.
5      THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8      Q.  What special powers did you have
9 that allowed you to determine that Mr. Munoz
10 was responsible for the murder of Ivan Mena?
11      MR. GIVEN:  Form, harassment,
12 oppressive.
13      THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16      Q.  Prior to bringing Mr. Beubea Garcia
17 in to view a lineup with Mr. Munoz in it,
18 what information did you have that led you to
19 believe that Mr. Munoz was responsible for
20 the shooting death of Mr. Mena?
21      A.  On advice of counsel, I assert my
22 Fifth Amendment rights.
23      Q.  So you knew that a woman by the
24 name of Sonia Blevin had witnessed the

355

1 shooting that occurred on September 8th, 1985
2 at 4218 West Potomac, right?
3      A.  On advice of counsel, I assert my
4 Fifth Amendment rights.
5      Q.  And you didn't contact Sonia Blevin
6 to determine whether or not she could
7 identify Reynaldo Munoz as the person who had
8 committed the shooting, right?
9      A.  On advice of counsel, I assert my
10 Fifth Amendment rights.
11      Q.  Or did you contact Ms. Blevin, and
12 she told you that it wasn't Mr. Munoz?
13      A.  On advice of counsel, I assert my
14 Fifth Amendment rights.
15      Q.  Sir, did you not have Mr. -- strike
16 that.  Did you avoid having Ms. Blevin look
17 at the lineup that contained Mr. Munoz
18 because you knew Mr. Munoz was not
19 responsible for this murder?
20      A.  On advice of counsel, I assert my
21 Fifth Amendment rights.
22      Q.  And you knew Sonia Blevin would not
23 be able to identify Mr. Munoz as the shooter
24 of Ivan Mena and Bobby Garcia because he was,

356

1 in fact, innocent of that crime, correct?
2      MR. GIVEN:  Form.
3      THE WITNESS:  On advice of counsel, I
4 assert my Fifth Amendment rights.
5 BY MS. BONJEAN:
6      Q.  Isn't it true that you and
7 Detective Reynaldo Guevara conspired together
8 to frame Daniel Rodriguez for the murder of
9 Jose Hernandez, otherwise known as Gernito,
10 that occurred on March 17th, 1991?
11      A.  On advice of counsel, I assert my
12 Fifth Amendment rights.
13      Q.  And isn't it true that you and
14 Detective Guevara knew that Daniel Rodriguez
15 had an alibi for the time that Mr. Hernandez
16 had been murdered, and you disregarded that
17 alibi because you wanted to frame
18 Mr. Rodriguez for Gernito's murder?
19      MR. GIVEN:  At this point I'll reassert
20 my standing objections to this line of
21 questioning about Mr. Rodriguez.  Go ahead.
22      THE WITNESS:  On advice of counsel, I
23 assert my Fifth Amendment rights.
24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

90 (357 to 360)

357

1 BY MS. BONJEAN:
2     Q.  Isn't it true on May 11th, 1991,
3 you and Detective Guevara pulled Daniel
4 Rodriguez over in his car near the College of
5 Bryn Mawr?
6     **A.  On the advice of counsel, I assert**
7 **my Fifth Amendment rights.**
8     Q.  Perhaps you remember this:
9 Mr. Rodriguez was wearing a Bart Simpson
10 T-shirt when you arrested -- Hold on -- when
11 you arrested him.  Do you remember that?
12     MR. GIVEN:  Objection; form.
13     THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q.  And isn't it true that when you
17 arrested had Mr. Rodriguez, you said to him,
18 "Guess what, Bart Simpson?  You won."
19     **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q.  And isn't it true that Daniel
22 Rodriguez responded by saying, "Won what?"
23     **A.  On advice of counsel, I assert my**
24 **Fifth Amendment rights.**

358

1     Q.  And isn't it true that you
2 responded to Daniel Rodriguez by saying, "You
3 got Gernito's murder"?
4     **A.  On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6     Q.  Isn't it true, sir, that that's
7 routinely how you and Detective Guevara
8 closed cases during the 1990s in the Humboldt
9 Park area?
10     MR. GIVEN:  Objection; form, foundation.
11     THE WITNESS:  On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14     Q.  You randomly decided which gang
15 bangers you were going to frame for murders
16 that occurred in Humbolt Park; isn't that
17 correct?
18     MR. GIVEN:  Form and foundation.
19     THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q.  You had no reason to believe that
23 Daniel Rodriguez was actually responsible for
24 the murder of Gernito; isn't that correct?

359

1     **A.  On advice of counsel, I assert my**
2 **Fifth Amendment rights.**
3     Q.  You, nonetheless, decided, along
4 with Detective Guevara, that you were going
5 to frame Daniel Rodriguez for Gernito's
6 murder?
7     **A.  On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9     Q.  You and Detective Guevara also
10 decided you were going to frame George
11 Laureano for Gernito's murder, right?
12     **A.  On advice of counsel, I assert my**
13 **Fifth Amendment rights.**
14     Q.  You had been unsuccessful at
15 framing George Laureano for the murder from
16 the CTA bus, so it was sort of his time to
17 get framed, right?
18     MR. GIVEN:  Objection; form and
19 foundation.
20     THE WITNESS:  On advice of counsel, I
21 assert my Fifth Amendment rights.
22 BY MS. BONJEAN:
23     Q.  But George Laureano did what smart
24 people on the West Side in the Humboldt Park

360

1 did when they got charged with a murder
2 involving Detective Guevara; isn't that true?
3     MR. GIVEN:  Objection, form, foundation,
4 and possible to even answer that.  Go ahead.
5     THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8     Q.  Well, isn't it true that George
9 Laureano went out and hired Rick Boyke to be
10 his counsel for the murder involving Gernito?
11     MR. GIVEN:  Objection; form, foundation,
12 competence.
13     THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q.  And isn't it true that Detective
17 Guevara -- strike that.  And Detective
18 Guevara told you that George Laureano paid
19 him $20,000 to beat the case, the case
20 involving Gernito?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  And this $20,000 was above and
24 beyond whatever the fee was that he was

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

361

1 paying Mr. Boyke, correct?
2 **A. On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4 Q. And isn't it true that the case was
5 assigned to Mr. Boyke's good friend, Judge
6 Reyna?
7 MR. GIVEN: Objection; form, foundation,
8 competence.
9 THE WITNESS: On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12 Q. And isn't it true that George
13 Laureano beat that case in a bench trial
14 before Judge Reyna?
15 MR. GIVEN: Same objections.
16 THE WITNESS: On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19 Q. Do you know how much money
20 Detective Guevara paid Judge Reyna in order
21 to beat the case?
22 **A. On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24 Q. Or were Judge Reyna and Rick Boyke

362

1 such good friends that he didn't actually
2 need to pay Judge Reyna money in order to
3 beat the case?
4 MR. GIVEN: Objection; form, foundation,
5 competence.
6 THE WITNESS: On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9 Q. In any event, Daniel Rodriguez was
10 wasn't fortunate enough to beat his case
11 because he didn't have Rick Boyke as an
12 attorney; isn't that correct?
13 MR. GIVEN: Objection; form, foundation,
14 competence.
15 THE WITNESS: On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18 Q. Isn't it true that Daniel Rodriguez
19 was convicted based on a confession that you
20 and Detective Guevara had coerced from him?
21 MR. GIVEN: Objection; form, foundation,
22 competence.
23 THE WITNESS: On advice of counsel, I
24 assert my Fifth Amendment rights.

363

1 BY MS. BONJEAN:
2 Q. Isn't it true that you and
3 Detective Guevara also framed an individual
4 by the name of Tony Gonzalez for the murder
5 of Hector Rivera and the attempt murders of
6 two individuals by the name of Luis Marrero
7 and Illuminata Nieves?
8 MR. GIVEN: I'll reassert my standing
9 objection to this line of questioning for
10 reasons previously stated.
11 THE WITNESS: On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14 Q. Now, you were aware that -- strike
15 that. You and Detective Guevara were
16 assigned to the murder of Hector Rivera that
17 occurred at 2647 West Crystal in the Humbolt
18 Park area of Chicago, correct?
19 **A. On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21 Q. I'm sorry. I'm going to strike
22 that. I actually got the address wrong.
23 Let's start over.
24 You and Detective Guevara were

364

1 assigned to investigate a murder that
2 occurred at 1215 North Washtenaw in Chicago,
3 correct?
4 **A. On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6 Q. The date of this murder was
7 July 24th, 1998 --
8 THE COURT REPORTER: I'm sorry, Counsel.
9 Hold on.
10 MS. BONJEAN: Sure.
11 BY MS. BONJEAN:
12 Q. And when you were assigned to the
13 case, you read the general offense case
14 report, correct?
15 **A. On advice of counsel, I assert my**
16 **Fifth Amendment rights.**
17 Q. You knew that there was a young
18 teenage girl by the name of Yesenia Rodriguez
19 who had witnessed the murder of Hector Rivera
20 and the attempt murders of Luis Marrero and
21 Illimunata Nieves, right?
22 **A. On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24 Q. And isn't it true that you and

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

365

1 Detective Guevara read the police report that
2 reflected an interview with Ms. Rodriguez
3 immediately after the shooting or shortly
4 after the shooting?
5 **A. On advice of counsel, I assert my**
6 **Fifth Amendment rights.**
7 Q. And within hours of the shooting,
8 Yesenia Rodriguez reported that although she
9 had witnessed the shooting, she was unable to
10 describe the shooter because his face was
11 concealed by a black T-shirt that was wrapped
12 around his face; isn't that correct?
13 **A. On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15 Q. And despite having read that
16 report, you and Detective Guevara decided to
17 go speak with Yesenia Rodriguez to determine
18 whether or not you might be able to use her
19 to frame another person in Humboldt Park,
20 right?
21 MR. GIVEN: Objection; form, foundation,
22 oppressive. You can answer.
23 THE WITNESS: On advice of counsel, I
24 assert my Fifth Amendment rights.

366

1 BY MS. BONJEAN:
2 Q. And Yesenia Rodriguez was a young
3 girl, a crime victim, and a Spanish-speaking
4 young woman, right?
5 **A. On advice of counsel, I assert my**
6 **Fifth Amendment rights.**
7 Q. And you and Detective Guevara had
8 been highly successful at manipulating
9 statements and identifications from young
10 people, particularly, young women who were
11 Spanish speakers and were victims of crimes;
12 isn't that correct?
13 MR. GIVEN: Form and foundation.
14 THE WITNESS: On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17 Q. And isn't it true that Detective
18 Guevara and yourself brought Ms. Rodriguez to
19 Grand and Central to look through a book that
20 contained mugshots of Spanish Cobras?
21 **A. On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23 Q. You and Detective Guevara decided
24 you were going to frame a Spanish Cobra for

367

1 the murder of Hector Rivera, correct?
2 **A. On advice of counsel, I assert my**
3 **Fifth Amendment rights.**
4 Q. You didn't care much which Spanish
5 Cobra it was because eventually your goal,
6 along with Detective Guevara's goal, was to
7 make sure all Spanish Cobras were
8 incarcerated; isn't that correct?
9 MR. GIVEN: Objection; form, foundation
10 oppressive, and go ahead.
11 THE WITNESS: On advice of counsel, I
12 assert my Fifth Amendment rights.
13 BY MS. BONJEAN:
14 Q. Isn't it true that Yesenia
15 Rodriguez told Detective Guevara that she
16 could not see the shooter because his face
17 was concealed by a black T-shirt that was
18 wrapped around everything but his eyes?
19 **A. On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21 Q. And isn't it true that Detective
22 Guevara and yourself told Ms. Rodriguez just
23 to look through the Spanish Cobras book and
24 see if she could recognize anybody in the

368

1 book?
2 MR. GIVEN: Objection; form.
3 THE WITNESS: On advice of counsel, I
4 assert my Fifth Amendment rights.
5 BY MS. BONJEAN:
6 Q. And the young girl did as she was
7 told and started looking through the Spanish
8 Cobra book for anyone that she might be able
9 to identify; isn't that correct?
10 MR. GIVEN: Objection; form, foundation,
11 and competence.
12 THE WITNESS: On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15 Q. Isn't it true Ms. Rodriguez told
16 you and Detective Guevara that she recognized
17 Tony Gonzalez from somewhere on the street?
18 **A. On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20 Q. Yesenia Rodriguez never told you or
21 Detective Guevara that Tony Gonzalez was the
22 person that she saw commit the shooting at
23 1215 North Washtenaw; isn't that right?
24 **A. On advice of counsel, I assert my**

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

369

1 Fifth Amendment rights.
2     Q.  She only identified someone she
3 recognized, as was the instruction that was
4 given to her by you and Detective Guevara,
5 correct?
6     MR. GIVEN:  Objection; form.
7     THE WITNESS:  On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10     Q.  And she also never told you that
11 the offender made any gang announcements
12 during the murder, correct?
13     A.  On advice of counsel, I assert my
14 Fifth Amendment rights.
15     Q.  But you and Detective Guevara
16 decided to fabricate a statement in which
17 Yesenia Rodriguez purportedly said that the
18 shooter had said, "Jiver killer," right?
19     A.  On advice of counsel, I assert my
20 Fifth Amendment rights.
21     Q.  And Yesenia Rodriguez never told
22 you that the offender who shot at Luis
23 Marrero in the alley of 1215 North Washtenaw
24 said, "Jiver killer," correct?

370

1     A.  On advice of counsel, I assert my
2 Fifth Amendment rights.
3     Q.  And after you asked Ms. Rodriguez
4 to identify someone from the Spanish Cobra
5 book that she recognized, you prepared a
6 police report on July 27th, 1998; isn't that
7 correct?
8     MR. GIVEN:  Objection; form.
9     (Halvorsen Deposition Exhibit No. 4
10     was marked for identification.)
11     MS. BARBER:  I'm just noting for the
12 record this one does not appear to be Bates
13 stamped either.
14     MS. BONJEAN:  I'll represent that if it
15 has not been produced, I will make sure it
16 is, but I believe it was.  I could be wrong.
17 BY MS. BONJEAN:
18     Q.  Mr. Halvorsen, I'm handing you
19 what's been marked as Halvorsen 4.  This is a
20 supplemental report that bears your signature
21 at the bottom, along with Detective Guevara.
22 And this is also a supplemental police report
23 that you prepared or authored; isn't that
24 correct?

371

1     MR. GIVEN:  Objection; form.
2     THE WITNESS:  On advice of counsel, I
3 assert my Fifth Amendment rights.
4 BY MS. BONJEAN:
5     Q.  And if you'll look at the second
6 page of this police report, there is a
7 summary of a statement by Yesenia Rodriguez
8 that was purportedly made on July, I guess,
9 27th, 1998 or -- strike that.  On July 25th,
10 1998, correct?
11     A.  On advice of counsel, I assert my
12 Fifth Amendment rights.
13     Q.  And this would have been the day
14 after the shooting, in which you conducted
15 this interview of Ms. Rodriguez and showed
16 her photos of Spanish Cobra gang members,
17 right?
18     MR. GIVEN:  Objection; form.
19     THE WITNESS:  On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q.  And on Page 3 of this police
23 report, you reported --
24     MR. GIVEN:  Just to be clear, when you

372

1 say Page 3, you mean the page that's marked
2 Page 3 and not where I actually count the
3 pages?
4     MS. BONJEAN:  They're the same this
5 time.
6     MR. GIVEN:  Not on mine.  I actually
7 have blank pages.
8     MS. BONJEAN:  I didn't do the copying.
9 I don't know what happened.
10     MR. GIVEN:  Okay.  I just want to be
11 clear since the last time you said a page,
12 and it was not marked the right way, and you
13 told me I was wrong for not counting the
14 number of pages rather than looking at the
15 page numbers.
16     MS. BONJEAN:  I didn't tell you you were
17 wrong.  I was trying to clarify for you.
18     MR. GIVEN:  Well, I'm just trying to
19 clarify as well.
20     MS. BONJEAN:  That's fine.
21     MR. GIVEN:  Page 3 that says Page 3?
22     MS. BONJEAN:  That's 3.  I didn't
23 realize your copy had a blank page.
24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

94 (373 to 376)

373

1 BY MS. BONJEAN:
2      Q.  Now that we're on the same page --
3 no punt intended -- I'll have you look, sir,
4 at the top of that Page 3.
5          You reported that Ms. Rodriguez
6 told you that the offender was male, white
7 Hispanic, age 18 through 22, 5'7 to 5'10,
8 thin build, medium complexion; isn't that
9 correct?
10     A.  On advice of counsel, I assert my
11 Fifth Amendment rights.
12     Q.  And, in fact, Ms. Rodriguez never
13 told you that the offender was a male, white
14 Hispanic, age 18 to 22, 5'7 to 5'10 in build,
15 medium complexion, correct?
16     A.  On advice of counsel, I assert my
17 Fifth Amendment rights.
18     Q.  In fact, she told you -- the first
19 responding detectives, that the offender was
20 a dark Hispanic -- a dark-skinned Hispanic,
21 correct?
22     A.  On advice of counsel, I assert my
23 Fifth Amendment rights.
24     Q.  You attributed a false statement to

374

1 her that matched a photograph of Tony
2 Gonzalez that was contained in the Spanish
3 Cobra mug book, correct?
4      MR. GIVEN:  Objection; form.
5      THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8      Q.  You also falsely reported that
9 Ms. Rodriguez told you that the offender had
10 a white T-shirt on his head that did not
11 cover his face and that she got a good look
12 at the offender's face but had never seen him
13 before?
14     MR. GIVEN:  Form.
15     THE WITNESS:  On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18     Q.  And, in fact, that statement was
19 false too.  Ms. Rodriguez never told you that
20 the offender had a white T-shirt on his head
21 that did not cover his face, correct?
22     A.  On advice of counsel, I assert my
23 Fifth Amendment rights.
24     Q.  She also never told you that she

375

1 got a good look at the offender's face,
2 rather, she told you that she did not get a
3 good look at the offender's face because his
4 face was concealed by a black T-shirt; isn't
5 that correct?
6      A.  On advice of counsel, I assert my
7 Fifth Amendment rights.
8      Q.  But you and Detective Guevara
9 jointly decided that you would attribute
10 false statements to Ms. Rodriguez, and you
11 included those false statements in this
12 supplemental report that you authored on
13 July 28th, 1998?
14     A.  On advice of counsel, I assert my
15 Fifth Amendment rights.
16     Q.  And then after interviewing
17 Ms. Rodriguez, you took the photo of Tony
18 Gonzalez, and you brought it to Mr. Marrero,
19 who was convalescing in a hospital, correct?
20     A.  On advice of counsel, I assert my
21 Fifth Amendment rights.
22     Q.  And isn't it true that you told
23 Mr. Marrero that you had identified or
24 determined who the shooter was and showed him

376

1 a photograph of Tony Gonzalez?
2      A.  On advice of counsel, I assert my
3 Fifth Amendment rights.
4      Q.  And isn't it true that you put
5 together a so-called photo array, in which
6 Mr. Gonzalez stood out by virtue of the fact
7 that the background of his photograph was
8 white, and he had a placard in front of him,
9 whereas, the other individuals in the photo
10 array had a black background with no placard?
11     MR. GIVEN:  Objection; form and
12 foundation.
13     THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16     Q.  And you show Luis Marrero this
17 photo array -- this suggestive photo array,
18 so that he could identify Mr. Gonzalez as the
19 shooter?
20     A.  On advice of counsel, I assert my
21 Fifth Amendment rights.
22     Q.  And you tricked and manipulated
23 Luis Marrero into believing that Tony
24 Gonzalez was the person who shot him and

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

95 (377 to 380)

377

1 killed his friend, Hector Rivera, as you had
2 done in the past in a number of cases,
3 correct?
4      MR. GIVEN:  Form, foundation,
5 competence.
6      THE WITNESS:  On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9      Q.  Isn't it true that you and
10 Detective Guevara gave false testimony at
11 Mr. Gonzalez's trial in order to secure his
12 wrongful conviction?
13     **A.  On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15     Q.  You never told the State or
16 Mr. Rodriguez's -- strike that.
17       You never told the State, who was
18 prosecuting Hector Rivera's murder or the
19 defense attorneys who were representing Tony
20 Gonzalez that you and Detective Guevara had
21 showed Ms. Rodriguez a book of Spanish Cobras
22 and told her just to identify anyone she
23 recognized from that book, correct?
24     MR. GIVEN:  Form.

378

1      THE WITNESS:  On advice of counsel, I
2 assert my Fifth Amendment rights.
3 BY MS. BONJEAN:
4      Q.  You did not tell the State
5 prosecutors or the defense attorneys for
6 Mr. Gonzalez that you and Detective Guevara
7 had fabricated Ms. Rodriguez's statement,
8 that she actually did get a good look at the
9 offender?
10     **A.  On advice of counsel, I assert my**
11 **Fifth Amendment rights.**
12     Q.  And isn't it true that you never
13 told the State prosecutors or the defense
14 attorney for Tony Gonzalez that Luis Marrero
15 who he should identify from this suggested
16 photo array?
17     MR. GIVEN:  Form.
18     THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21     Q.  And, in fact, you knew that Luis
22 Marrero was highly intoxicated at the time of
23 the shooting, right?
24     **A.  On advice of counsel, I assert my**

379

1 **Fifth Amendment rights.**
2      Q.  You further knew Luis Marrero said
3 he could not make an identification because
4 his back was turned when the shooting
5 occurred, it was dark, and in an alley and he
6 was intoxicated, correct?
7      **A.  On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9      Q.  But after you and Detective Guevara
10 interviewed Mr. Rivera, you were able to
11 persuade him that he should identify Tony
12 Gonzalez as the offender, correct?
13     MR. GIVEN:  Form.
14     THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17     Q.  What exactly did you say to Luis
18 Marrero to get him to identify Tony Gonzalez
19 as the shooter when Luis Marrero had no idea
20 and had not seen the person who shot him and
21 his friend, Hector Rivera?
22     MR. GIVEN:  Sorry.  Form.
23     THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

380

1 BY MS. BONJEAN:
2      Q.  Why did you and Detective Guevara
3 frame Tony Gonzalez for the murder of Hector
4 Rivera?
5      MR. GIVEN:  Form.
6      THE WITNESS:  On advice of counsel, I
7 assert my Fifth Amendment rights.
8 BY MS. BONJEAN:
9      Q.  In fact, Tony Gonzalez wasn't even
10 a Spanish Cobra; isn't that correct?  Not one
11 that you were familiar with, right?
12     MR. GIVEN:  Form, foundation,
13 competence.
14     THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16     MR. GIVEN:  Do you want to take a break?
17     MS. BONJEAN:  Yes.
18     THE VIDEOGRAPHER:  Off the record at
19 4:45.
20     (A recess was taken.)
21     THE VIDEOGRAPHER:  Back on the record,
22 4:53.
23 BY MS. BONJEAN:
24     Q.  Mr. Halvorsen, isn't it true that

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

96 (381 to 384)

381

1  you framed Jose Juan Masonette, Jr.
2  (phonetic) for the murders of a Kevin and
3  Torrence Wiley that occurred on May 24th,
4  1990?
5      MR. GIVEN:  Same standing objections as
6  I've previously stated with regard to
7  questions about this case, this Masonette
8  case.
9      THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q.  Isn't it true that you framed
13 Alfredo Gonzalez for the murders of Kevin and
14 Torrence Wiley that occurred on May 24th,
15 1990?
16     **A.  On advice of counsel, I assert my**
17 **Fifth Amendment rights.**
18     Q.  Isn't it true that you framed
19 Jose -- strike that.  Isn't it true that you
20 framed co-defendant, Justino Cruz and
21 Christopher Goosens, for the murders of Kevin
22 and Torrence Wiley that occurred on May 24th,
23 1990?
24     MR. GIVEN:  And just for the record,

382

1  same standing objections with regard to
2  Mr. Gonzalez Cruzen?
3      MS. BONJEAN:  Cruz.
4      MR. GIVEN:  Justino Cruz and --
5      MS. BONJEAN:  And Christopher Goosens.
6      MR. GIVEN:  Goosens, whatever.  Okay.
7      MS. BONJEAN:  G-O-O-S-E-N-S.
8      THE WITNESS:  On advice of counsel, I
9  assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11     Q.  And isn't it true, sir, that you
12 you conspired with your fellow officers,
13 Detective Pawlnisky (phonetic), Detective
14 Montias (phonetic), Detective Guevara, and
15 Sergeants Mingy and Epplen to frame both Jose
16 Masonette, Alfredo Gonzalez, Justino Cruz,
17 and Christopher Goosens for the murders of
18 Kevin and Torrence Wiley that occurred on May
19 24th, 1990.
20     **A.  On advice of counsel, I assert my**
21 **Fifth Amendment rights.**
22     Q.  Isn't it true that you also
23 conspired with Assistant State's Attorney
24 DeFranco in order to secure fabricated

383

1  statements from Jose Juan Masonette and
2  Alfred Gonzalez that would later be used
3  against them to secure their wrongful
4  convictions?
5      MR. GIVEN:  Form.
6      THE WITNESS:  On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9      Q.  You were aware that Mr. Masonette
10 was arrested on July 3rd of 1990 in
11 connection with an unrelated -- with an
12 unrelated murder; isn't that correct?  Strike
13 that.  That's not accurate.  My apologies.
14     Isn't it true you that you were
15 aware that on July 3rd of 1990 Mr. Masonette
16 was arrested in connection with an unrelated
17 shooting that occurred in Humboldt Park?
18     **A.  On advice of counsel, I assert my**
19 **Fifth Amendment rights.**
20     Q.  And you were aware that Roland
21 Pawlniski had arrested Mr. Masonette for the
22 shooting that occurred on July 3rd, 1990; and
23 while Mr. Masonette was in custody at Area 5,
24 he was questioned about any knowledge he had

384

1  about the Wiley brothers murders, correct?
2      **A.  On advice of counsel, I assert my**
3  **Fifth Amendment rights.**
4      Q.  And that on July 3rd, 1990,
5  Mr. Masonette told Sergeant Mingy and
6  Detective Montia that he had no knowledge
7  about the Wiley brothers murders that
8  occurred on North Avenue, murders that
9  occurred on, let's see, May 20th -- No, I'm
10 sorry -- May 25th of 1990, correct?
11     **A.  On advice of counsel, I assert my**
12 **Fifth Amendment rights.**
13     Q.  Now, originally, Detective Guevara
14 and yourself decided that you were going
15 to -- strike that.
16     You and Detective Guevara, Sergeant
17 Mingy, and Sergeant Epplen determined that
18 you were going to frame Latin Kings for the
19 murder that occurred on North Avenue of
20 Torrence and Kevin Wiley, correct?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  And you and your fellow officers
24 determined to frame Latin Kings because North

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

385

1 Avenue at that location was King territory,
2 correct?
3        MR. GIVEN:  Objection; form and
4 foundation.
5        THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8        Q.  And, in fact, initially, you had
9 conspired with Detective Guevara and your
10 fellow officers to frame two individuals who
11 were Latin Kings by the name of Efrain Cruz
12 and Francisco Vera, correct?
13       A.  On advice --
14       MR. GIVEN:  Objection; form.  I'm sorry.
15 Go ahead.
16       THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19       Q.  And, in fact, you arrested -- you
20 and your fellow officer arrested Mr. Vera and
21 Mr. Cruz, Efrain Cruz, and brought them to
22 Grand and Central for questioning about the
23 Wiley brothers murders?
24       A.  On advice of counsel, I assert my

386

1 Fifth Amendment rights.
2        Q.  You ultimately had to release
3 Mr. Vera and Mr. Cruz from custody because it
4 was determined that they were actually in
5 police custody on the early morning hours
6 of May 25th, 1990 when with the murders
7 occurred, correct?
8        MR. GIVEN:  Objection, form.
9        THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12       Q.  So shortly after that, Detective
13 Guevara told you he wanted to frame Jose
14 Masonette for the murders of the Wiley
15 brothers, correct?
16       A.  On advice of counsel, I assert my
17 Fifth Amendment rights.
18       Q.  And you were aware, sir, weren't
19 you, that Mr. Masonette had been paying
20 protection money to Detective Guevara up
21 until around May 20th of 1990?
22       A.  On advice --
23       MR. GIVEN:  Form.
24       THE WITNESS:  On advice of counsel, I

387

1 assert my Fifth Amendment rights.
2 BY MS. BONJEAN:
3        Q.  And, in fact, isn't it true, sir,
4 that Detective Guevara told you that
5 Masonette had stopped make protection
6 payments to him because he was angry at him
7 related to the frame-up of another friend
8 whose name is Santiago Sanchez?
9        A.  On advice of counsel, I assert my
10 Fifth Amendment rights.
11       Q.  So isn't it true that on
12 August 22nd, 1990 you learned from Detective
13 Pawlniski and your fellow officers that
14 Mr. Masonette had made bond on the attempted
15 murder case that he had been previously
16 arrested for on July 3rd?
17       A.  On advice of counsel, I assert my
18 Fifth Amendment rights.
19       Q.  And you learned that Detective
20 Pawlnisky had arrested Mr. Masonette at 26th
21 and California outside of Room 101 and had
22 brought him to Grand and Central in the
23 morning, correct, of August 22nd, 1990?
24       A.  On advice of counsel, I assert my

388

1 Fifth Amendment rights.
2        Q.  And you and Detective Guevara was
3 starting your shift on the evening -- or the
4 early evening of August 22nd, 1990; isn't
5 that correct?
6        A.  On advice of counsel, I assert my
7 Fifth Amendment rights.
8        Q.  And that after coming to Grand and
9 Central, you and Detective Guevara discussed
10 the fact that Detective Guevara was going to
11 interrogate Mr. Masonette in order to get him
12 to falsely confess to the murders of the
13 Wiley brothers, right?
14       A.  On advice of counsel, I assert my
15 Fifth Amendment rights.
16       Q.  And over the course of
17 approximately 13 hours, sir, isn't it true
18 that Detective Guevara intermittently
19 would -- strike that.
20       Over the course of the next 13
21 hours, Detective Guevara used physical abuse
22 to extract an inculpatory statement from
23 Mr. Masonette?
24       MR. GIVEN:  Objection; form, foundation.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

98 (389 to 392)

389

1    THE WITNESS:  On advice of counsel, I
2 assert my Fifth Amendment rights.
3 BY MS. BONJEAN:
4    Q.  And by -- I mean, over the course
5 of 13 hours -- it wasn't necessarily 13 hours
6 straight, but Mr. Guevara would come in and
7 out of the interrogation room and
8 intermittently beat Mr. Masonette about his
9 body, genitals, and head with a telephone
10 book and a flashlight, correct?
11    MR. GIVEN:  Form and foundation.
12    THE WITNESS:  On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15    Q.  You did nothing to stop Mr. Guevara
16 from physically abusing Mr. Masonette in
17 order to secure an inculpatory statement that
18 you would later use against him in order to
19 secure his wrongful conviction, correct?
20    MR. GIVEN:  Form and foundation.
21    THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24    Q.  After approximately 13 hours of

390

1 intermittent beatings, isn't it true that
2 Detective Guevara told you that Masonette was
3 ready to "cooperate"?
4    **A.  On advice of counsel, I assert my**
5 **Fifth Amendment rights.**
6    Q.  And by "cooperate," Detective
7 Guevara that meant he was ready to repeat a
8 false narrative or a false story that
9 implicated himself and others, including
10 Alfredo Gonzalez and Justino Cruz, in the
11 murders of Torrence and Kevin Wiley?
12    MR. GIVEN:  Form, foundation competence.
13    THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16    Q.  And as a result, you and Detective
17 Guevara contacted Assistant State's Attorney
18 Frankie DeFranco and told him to come to Area
19 5 so that he could take a statement from
20 Mr. Masonette that had been secured through
21 physical abuse by Detective Guevara?
22    **A.  On advice of counsel, I assert my**
23 **Fifth Amendment rights.**
24    Q.  And isn't it true that Assistant's

391

1 State's Attorney DeFranco came to Area 5, and
2 together with Detective Guevara and yourself
3 and Detective Montia, you agreed to contrive
4 a story that involved Mr. Masonette
5 implicating himself as the driver of the car
6 that was involved in the murders of Kevin and
7 Torrence Wiley, correct?
8    MR. GIVEN:  Form.
9    THE WITNESS:  On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12    Q.  And Detective Guevara had persuaded
13 Mr. Masonette to falsely allege that Alfred
14 Gonzalez was the shooter of Torrence and
15 Kevin Wiley, correct?
16    MR. GIVEN:  Form and foundation.
17    THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20    Q.  And at approximately August 23rd,
21 1990 at 9:28 a.m., you are aware, sir, that
22 Mr. Masonette falsely confessed to the Wiley
23 brothers murders that occurred on May 20th,
24 1990, correct?

392

1    **A.  On advice of counsel, I assert my**
2 **Fifth Amendment rights.**
3    Q.  And isn't it true, sir, that
4 Mr. Masonette also falsely implicated Alfred
5 Gonzalez in the crime?
6    MR. GIVEN:  Objection; form and
7 foundation.
8    THE WITNESS:  On advice of counsel, I
9 assert my Fifth Amendment rights.
10 BY MS. BONJEAN:
11    Q.  Specifically, isn't it true, sir,
12 that Mr. Masonette falsely told the Assistant
13 State's Attorney, as well as Detective Montia
14 that Alfredo Gonzalez had asked him to hide a
15 nine millimeter pistol at his home located at
16 1320 North Homan?
17    MR. GIVEN:  Form and foundation.
18    THE WITNESS:  On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21    Q.  And isn't it true that Masonette
22 falsely stated that Alfred Gonzalez came to
23 his home between 11:30 p.m. and 12 o'clock
24 a.m. on May 24th, 1990 with two other Latin

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

99 (393 to 396)

393

1 Kings by the name of Christopher Hernandez,
2 who went by the nickname Fro and Tino, whose
3 real name was Justino Cruz; and that they
4 came to Mr. Masonette's home, again, at that
5 hour just before May 25th, 1990?
6     MR. GIVEN: Form and foundation.
7     THE WITNESS: On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10     Q. Isn't it true that Mr. Masonette
11 falsely told the detective and the Assistant
12 State's Attorney that Alfred Gonzalez, Fro,
13 and Tino had told him that they got two guys
14 on Drake and North Avenue waiting for some
15 dope, and that Masonette falsely stated that
16 he drove to Drake and North Avenue with
17 Alfred Gonzalez, Fro, and Tino?
18     MR. GIVEN: Form and foundation.
19     THE WITNESS: On advice of counsel, I
20 assert my Fifth Amendment rights.
21 BY MS. BONJEAN:
22     Q. And isn't it true, sir, that
23 Mr. Masonette falsely told you and other
24 detectives, as well as Assistant State's

394

1 Attorney DeFranco that Alfred Gonzalez was in
2 the passenger seat with a gun and that Fro
3 and Tino were in the back; and that when they
4 got to the area that Masonette waited in the
5 car while Alfred Gonzalez, Fro, and Tino
6 approached the two black men on North Avenue,
7 and that he could hear them talking?
8     MR. GIVEN: Form and foundation.
9     THE WITNESS: On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12     Q. Isn't it true, sir, you knew
13 Mr. Masonette falsely claimed that he heard
14 five or six shots and then saw the two men on
15 the ground and Alfred Gonzalez pointing the
16 nine millimeter gun at them?
17     MR. GIVEN: Form and foundation.
18     THE WITNESS: On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21     Q. You knew that Mr. Masonette's
22 statement that he made, both to Detective
23 Guevara and later to Assistant State's
24 Attorney DeFranco and Detective Montia, was

395

1 in its entirety false, and that Mr. Masonette
2 had no involvement in the murder of the Wiley
3 brothers, nor did his co-defendants, Alfredo
4 Gonzalez, Christopher Goosens, and Justino
5 Cruz, correct?
6     **A. On advice of counsel, I assert my**
7 **Fifth Amendment rights.**
8     Q. After Mr. Gonzalez -- strike that.
9 After Mr. -- strike that one more time.
10     And isn't it true also that you,
11 Detective Guevara, and Detective Montia
12 jointly decided to manipulate or coerce
13 Mr. Masonette's girlfriend into making a
14 statement that implicated Alfred Gonzalez and
15 Jose Masonette and Justino Cruz in the
16 murders of the Wiley brothers?
17     MR. GIVEN: Form.
18     THE WITNESS: On advice of counsel, I
19 assert my Fifth Amendment rights.
20 BY MS. BONJEAN:
21     Q. In fact, on August 23rd, 1990 at
22 2 o'clock p.m., Jose Masonette's girlfriend,
23 Rosa Bellow provided a handwritten statement
24 in which she falsely stated that Gonzalez,

396

1 Fro, and Tino came to her house that she
2 shared with Mr. Masonette and retrieved a
3 nine millimeter weapon at roughly 11:30 p.m.
4 on May 24th, 1990, correct?
5     **A. On advice of counsel, I assert my**
6 **Fifth Amendment rights.**
7     Q. In fact, Detective Guevara and
8 yourself threatened Ms. Bellow by telling her
9 that if she did not cooperate and state what
10 you wanted her to state, that you would
11 arrange to have her children taken away by
12 DCFS, correct?
13     **A. On advice of counsel, I assert my**
14 **Fifth Amendment rights.**
15     Q. In fact, Ms. Bellow spent
16 approximately 24 hours at the police station
17 and eventually agreed to sign a statement
18 that had been written out by an Assistant
19 State's Attorney and a detective that
20 prepared it, correct?
21     **A. On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q. And you and Detective Guevara, as
24 well as the Assistant State's Attorney knew

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

100 (397 to 400)

397

1  that the statement that Ms. Bellow had signed
2  was false, and that she only signed that
3  statement out of fear of losing custody of
4  her children?
5      MR. GIVEN:  Form, foundation, and
6  competence.
7      THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment rights.
9  BY MS. BONJEAN:
10      Q.  Now, isn't it true, sir, that after
11  Mr. Masonette was charged with the murder --
12  murders of the Wiley brothers, you and
13  Detective Guevara and your supervising
14  sergeant realized that there was no probable
15  cause to justify the arrest of Mr. Masonette
16  in the first place?
17      **A.  On advice of counsel, I assert my**
18  **Fifth Amendment rights.**
19      Q.  And as a result, you authored a
20  police report that contained false statements
21  attributing false oral statements to
22  Mr. Masonette to justify his arrest, correct?
23      **A.  On advice of counsel, I assert my**
24  **Fifth Amendment rights.**

398

1      Q.  With the collaboration of the other
2  detectives in the case, including Guevara,
3  Montia, Sergeant Mingy, as well as Assistant
4  State's Attorney DeFranco, you put your
5  report writing skills to work and began
6  drafting supplemental police reports that had
7  a number of false and fabricated statements
8  in it that served to justify plaintiff's
9  unlawful arrest, correct?
10      MR. GIVEN:  Objection; form.
11      THE WITNESS:  On advice of counsel, I
12  assert my Fifth Amendment rights.
13  BY MS. BONJEAN:
14      Q.  Specifically, you included a
15  statement in this police report that you
16  authored claiming that Mr. Masonette made
17  inculpatory statements to Defendants Mingy
18  and Montia on July 15th, 1990 when he was in
19  custody for the murder that occurred on
20  July 3rd, 1390 -- for the attempt murder that
21  occurred on July 3rd of 1990, correct?
22      THE WITNESS:  On advice of counsel, I
23  assert my Fifth Amendment rights.
24

399

1  BY MS. BONJEAN:
2      Q.  Isn't it true that you had reason
3  to believe that Mr. Masonette had made any
4  statements acknowledging knowledge about the
5  murders of the Wiley Brothers on July 15th,
6  1990?
7      **A.  On advice of counsel, I assert my**
8  **Fifth Amendment rights.**
9      Q.  And notwithstanding the fact that
10  you had no factual basis to believe that
11  Mr. Masonette had ever made any statements
12  implicating himself or any others or
13  suggesting that he had any knowledge about
14  the Wiley brothers murders, you falsely
15  reported in the supplemental report prepared
16  on August 24th, 1990 that Mr. Masonette had
17  told Mingy and Montia that he did have
18  knowledge of the murders?
19      **A.  On advice of counsel, I assert my**
20  **Fifth Amendment rights.**
21      Q.  You also falsely reported that
22  Mr. Masonette told Montia and Mingy on
23  August 1st, 1990 that he was involved in the
24  murders of the Wiley brothers, correct?

400

1      **A.  On advice of counsel, I assert my**
2  **Fifth Amendment rights.**
3      Q.  You claimed that Mr. Masonette made
4  an oral statement to Mingy and Montia in Cook
5  County jail on August 1st, 1990 in which he
6  claimed to have some involvement in the
7  murders of the Wiley brothers, correct?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10      Q.  And that oral statement that is
11  contained in the August 24th, 1990
12  supplemental police report is a false
13  statement that you authored, correct?
14      **A.  On advice of counsel, I assert my**
15  **Fifth Amendment rights.**
16      Q.  And, in fact, those oral statements
17  that were attributed to Mr. Masonette were
18  later used in the criminal trial that
19  resulted in his conviction for the murders of
20  the Wiley brothers and natural life sentence,
21  correct?
22      **A.  On advice of counsel, I assert my**
23  **Fifth Amendment rights.**
24      Q.  And, in fact, the statement that

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

101 (401 to 404)

401

1  was coerced by Rosa Bella -- Bellow, was
2  later used to force Ms. Bellow to testify at
3  the criminal trial of Alfred Gonzalez; isn't
4  that correct?
5      MR. GIVEN:  Form, foundation, and
6  competence.
7      THE WITNESS:  On advice of counsel, I
8  assert my Fifth Amendment rights.
9  BY MS. BONJEAN:
10     Q.  You knew that Mr. Masonette and
11 Mr. Alfredo Gonzalez, Mr. Cruz, and
12 Mr. Goosens had nothing to do with the Wiley
13 brothers murders; isn't that fair?
14     **A.  On advice of counsel, I assert my**
15 **Fifth Amendment rights.**
16     Q.  But you and Detective Guevara
17 decided that you would frame those four
18 individuals for those murders, and Detective
19 Guevara, specifically, was eager to frame
20 Mr. Masonette for the murders?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     MS. BONJEAN:  I'm going to move on to
24 the last --

402

1      MR. GIVEN:  Okay.  Let me just say that
2  just for the record, that all of those
3  questions that you just asked about the
4  Masonette case appear to be re-reading
5  paragraphs from the complaint and then asking
6  isn't it true or not, that's perfectly fine
7  in order to do that; but I just wanted to
8  state for the record, yet, again, that I will
9  object to re-deposing this witness in the
10 Masonette case because you've just deposed
11 him in this case on those very same issues.
12     MS. BONJEAN:  Okay.  I don't know --
13 Unless you the ability to read my notes, I
14 can assure you that this is not the
15 complaint.  There are portions of the
16 complaint that were incorporated in my notes
17 to remind me of dates and times, but this is
18 not Mr. Masonette's complaint.  In fact, I
19 referenced it in a number of different cases
20 in here.
21     MR. GIVEN:  Well, fair enough.  We'll
22 have this fight in front of the judge on
23 another day.
24     So who are we moving on to now?

403

1      MS. BONJEAN:  And for the record, I have
2  in no way exhausted my questioning of
3  Halvorsen.  It wouldn't be possible within
4  the time period, so --
5      MR. GIVEN:  Oh, it would certainly be
6  possible.  You would choose not to do it.
7  It's certainly possible.
8      MS. BONJEAN:  Well, when you spend two
9  decades framing people, it's kind of hard to
10 get to everybody.
11     MR. GIVEN:  That statement is, of
12 course, highly oppressive and would be cause,
13 in fact, for me to cancel this dep at this
14 point; but I'm not going to do that.  Why
15 don't you move on to the next set of
16 questions.
17     MS. BONJEAN:  Well, for the record, to
18 be clear, these questions are being asked
19 because there's certainly an argument that
20 plaintiff could make at a later date that
21 certain evidence pursuant to Federal Rules of
22 Evidence 404(b) would be admissible at a
23 trial; and that is the area that we're
24 exploring because it would lead potentially

404

1  to discoverable evidence, and it's not overly
2  burdensome since we have Mr. Halvorsen here.
3      MR. GIVEN:  Well, we're here to answer
4  your questions today.  So you and I can have
5  this discussion another time.
6      MS. BONJEAN:  Okay.
7      MR. GIVEN:  You want to get going, and
8  he wants to get going.
9  BY MS. BONJEAN:
10     Q.  Isn't it true you, along with
11 Detective Guevara, and Officer Mark O'Shefsky
12 (phonetic) framed Roberto Almodovar,
13 A-L-M-O-D-O-V-A-R, and William Negron for the
14 murders of Amy Merkez (phonetic), George
15 Rodriguez, and the attempt murders of
16 Jacqueline Grande and Conetti Sayez
17 (phonetic).
18     MR. GIVEN:  Same standing objections
19 with regard to this line of questioning about
20 Mr. Almodovar and Negron that I've previously
21 stated.
22     You can answer.
23     THE WITNESS:  On advice of counsel, I
24 assert my Fifth Amendment rights.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

405

1  BY MS. BONJEAN:
2      Q.  Isn't it true, sir, that you and
3  Detective Guevara were assigned to the
4  murders -- were assigned to investigate the
5  murders of George Rodriguez and Amy Merkez
6  that occurred on the early morning hours of
7  September 1st, 1994?
8      **A.  On advice of counsel, I assert my**
9  **Fifth Amendment rights.**
10     Q.  And, sir, you were aware that
11 Rodriguez and Merkez were outside a building
12 located at 3920 West Cortland Street, along
13 with Mr. Sayez and Ms. Grande in the early
14 morning of September 1st, 1994 when a blue
15 car pulled up and started shooting at the
16 group of young people standing outside or
17 hanging outside on a stoop in front of this
18 apartment building, correct?
19     **A.  On advice of counsel, I assert my**
20 **Fifth Amendment rights.**
21     Q.  And isn't it true that this blue
22 car, which was described as a blue
23 Oldsmobile, contained three individuals, but
24 that none of the living witnesses were able

406

1  to give any description of who was in that --
2  any description of the offenders in the
3  vehicle?
4      MR. GIVEN:  Objection; form and
5  foundation.
6      THE WITNESS:  On advice of counsel, I
7  assert my Fifth Amendment rights.
8  BY MS. BONJEAN:
9      Q.  In fact, you were aware that
10 Jacqueline Grande told a police officer,
11 Detective Gembowski (phonetic), that the
12 assailants were three male Hispanics, that
13 the driver was tall and thin, dark hair,
14 light complexion, that the front passenger
15 had a thin, long face with a light
16 complexion, black jacket, red hat, and that
17 the back -- the back seat passenger was
18 skinny, dark hair, medium complexion,
19 clean-looking, all teens and early 20s,
20 correct?
21     **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23     Q.  And that was the extent of the
24 description that Ms. Grande was able to

407

1  provide to the detective on September 1st of
2  1994, correct?
3      **A.  On advice of counsel, I assert my**
4  **Fifth Amendment rights.**
5      Q.  And Conelli Sayez was interviewed
6  at the police station after the shooting and
7  could only describe the offenders as three
8  male Latinos in this blue car, correct?
9      MR. GIVEN:  Objection; form.
10     THE WITNESS:  On advice of counsel, I
11 assert my Fifth Amendment rights.
12 BY MS. BONJEAN:
13     Q.  And despite the fact that those
14 were the only descriptions that were provided
15 by the witnesses/victims of the crime, you
16 and Detective Guevara determined that you
17 would close the case by framing individuals
18 who were members of the Insane Dragon gang,
19 correct?
20     MR. GIVEN:  Form.
21     THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24     Q.  You were aware that the Insane

408

1  Dragons or you thought you were aware that
2  the Insane Dragons were in some type of gang
3  war with the gang to which Mr. Rodriguez and
4  Mr. Sayez belonged, and, thus, made sense to
5  frame an individual from the Insane Dragons
6  under the theory that the victims' gang, the
7  Maniac Latin Disciples were retaliating --
8  strike that.  Let me start over.
9      You theorized that the Maniac Latin
10 Disciples, the victims' gang, and the Insane
11 Dragons were at war with one another and,
12 therefore, the shooting on Cortland was
13 actually in retaliation for the murder of an
14 Insane Dragon that had taken place actually
15 about the seven blocks away, correct?
16     MR. GIVEN:  Form.
17     THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19 BY MS. BONJEAN:
20     Q.  And you and Detective Guevara
21 decided to consult with Mark O'Shefsky about
22 which Insane Dragons you should frame for
23 this murder because Mr. O'Shefsky had a
24 particular -- a knowledge and disdain for the

Transcript of Ernest Halvorsen

103 (409 to 412)

Conducted on April 20, 2018

409

1 Insane Dragons, correct?
2    A.  On advice of counsel, I assert the
3 Fifth Amendment right.
4    Q.  In fact, Mark O'Shefsky told you
5 and Detective Guevara that he had a
6 particular Insane Dragon that he wanted to
7 frame, and that was Robert Almodovar,
8 correct?
9    A.  On advice of counsel, I assert my
10 Fifth Amendment rights.
11    Q.  But because Mr. Almodovar had not
12 been arrested previously for any serious
13 crimes, there were no photographs at Grand
14 and Central of Mr. Almodovar, and, therefore,
15 Detective O'Shefsky told you and Guevara that
16 he would get a Polaroid photo of
17 Mr. Almodovar, right?
18    A.  On advice of counsel, I assert my
19 Fifth Amendment rights.
20    Q.  And Mr. O'Shefsky and his partner
21 actually did a pretextual arrest of
22 Mr. Almodovar while he was at his cousin's
23 house and brought him in to Area 5 for the
24 sole purpose of taking a Polaroid photo of

410

1 him that would later be used to show the
2 individuals in this case, correct?
3    MR. GIVEN:  Form, foundation,
4 competence.
5    THE WITNESS:  On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8    Q.  And, in fact, you and Detective
9 Guevara also asked O'Shefsky to provide a
10 photo of another Insane Dragon who you could
11 frame for the murders that occurred on
12 Cortland, correct?
13    A.  On advice of counsel, I assert my
14 Fifth Amendment rights.
15    Q.  And with no factual basis
16 whatsoever, O'Shefsky gave you a picture of
17 William Negron and identified him as an
18 "associate of Mr. Almodovar," right?
19    MR. GIVEN:  Objection; form, foundation,
20 competence.
21    THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24    Q.  You and Detective Guevara had no

411

1 factual basis to believe that Robert
2 Almodovar or William Negron were involved in
3 the murders of George Rodriguez or Amy
4 Merkez, correct?
5    A.  On advice of counsel, I assert my
6 Fifth Amendment rights.
7    Q.  And notwithstanding the fact there
8 was no factual basis to believe that
9 Mr. Almodovar or Mr. Negron were involved in
10 those murders.  Detective Guevara took those
11 Polaroid photos and brought them to the
12 victim, the living victim, Jacqueline Grande,
13 for her to view, correct?
14    MR. GIVEN:  Form and foundation.
15    THE WITNESS:  On advice of counsel, I
16 assert my Fifth Amendment rights.
17 BY MS. BONJEAN:
18    Q.  And Detective Guevara told
19 Jacqueline Grande, who had just been released
20 from the hospital, that Robert Almodovar and
21 William Negron were the persons responsible
22 for shooting her and killing her best friend?
23    MR. GIVEN:  Objection; form.
24    THE WITNESS:  On advice of counsel, I

412

1 assert my Fifth Amendment rights.
2 BY MS. BONJEAN:
3    Q.  And, in fact, Detective Guevara,
4 manipulated this young girl, who was
5 traumatized by having been a crime victim and
6 watching her two friends murdered, that he
7 was confident that Almodovar and Negron were
8 responsible and that she should look at the
9 photos and carefully -- and that he was
10 confident that she would be able to identify
11 them as the people who committed the murder
12 on Cortland street -- murders?
13    MR. GIVEN:  Form and foundation.
14    THE WITNESS:  On advice of counsel, I
15 assert my Fifth Amendment rights.
16 BY MS. BONJEAN:
17    Q.  And through manipulation and
18 persuasion, Detective Guevara was able to get
19 Ms. Grande to agree that Mr. Almodovar and
20 Mr. Negron were in that blue Oldsmobile that
21 shot at her and her friends in the early
22 morning hours of September 1st, 1994,
23 correct?
24    MR. GIVEN:  Form and foundation.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

104 (413 to 416)

413

1    THE WITNESS:  On advice of counsel, I
2 assert my Fifth Amendment rights.
3 BY MS. BONJEAN:
4    Q.  And, relatedly, Detective Guevara
5 was able to use Ms. Grande and these
6 photographs just to persuade Mr. Sayez also
7 to agree that Almodovar and Negron were in
8 that blue Oldsmobile that shot and killed
9 their friends in the early morning hours of
10 September 1st of 1994?
11    MR. GIVEN:  Form and foundation.
12    THE WITNESS:  On advice of counsel, I
13 assert my Fifth Amendment rights.
14 BY MS. BONJEAN:
15    Q.  And Detective Guevara told
16 Ms. Grande and Mr. Sayez that he was going to
17 take them to look at a live lineup that
18 contained Mr. Almodovar and Mr. Negron at
19 Grand and Central, correct?
20    MR. GIVEN:  Form and foundation.
21    THE WITNESS:  On advice of counsel, I
22 assert my Fifth Amendment rights.
23 BY MS. BONJEAN:
24    Q.  And he had Ms. Grande and Mr. Sayez

414

1 look at a live lineup that contained
2 Mr. Almodovar and Mr. Negron after having
3 showed both of those witnesses Polaroid
4 photos of Mr. Almodovar and Mr. Negron,
5 correct?
6    MR. GIVEN:  Form and foundation.
7    THE WITNESS:  On advice of counsel, I
8 assert my Fifth Amendment rights.
9 BY MS. BONJEAN:
10    Q.  And Detective Guevara told you, did
11 he not, that he advised Sayez and Grande not
12 to mention that he had shown them the
13 Polaroid photos prior to them viewing the
14 live lineup?
15    MR. GIVEN:  Form and foundation.
16    THE WITNESS:  On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19    Q.  And, in fact, Mr. Sayez and
20 Ms. Grande did, in fact, view a live lineup
21 in which they identified Mr. Almodovar and
22 Mr. Negron as two of the offenders from the
23 shooting on September 1st, 1994?
24    **A.  On advice of counsel, I assert my**

415

1 **Fifth Amendment rights.**
2    Q.  And isn't it true that it was a
3 result of Detective Guevara's misconduct
4 that -- strike that.
5       Isn't it true that as a result of
6 your misconduct, Detective Guevara's
7 misconduct, and Detective O'Shefsky's
8 misconduct that Ms. Grande and Mr. Sayez made
9 false identifications of Mr. Almodovar and
10 Mr. Negron.
11    MR. GIVEN:  Form, foundation,
12 competence.
13    THE WITNESS:  On advice of counsel, I
14 assert my Fifth Amendment rights.
15 BY MS. BONJEAN:
16    Q.  And those false identifications
17 were later repeated in court when
18 Mr. Almodovar and Mr. Negron were criminally
19 prosecuted for the murders of George
20 Rodriguez and Amy Merkez?
21    **A.  On advice of counsel, I assert my**
22 **Fifth Amendment rights.**
23    Q.  And a result of those fabricated
24 identifications that you, Detective Guevara,

416

1 Mark O'Shefsky, and your supervising
2 sergeant, Epplen, secured from Mr. Sayez and
3 Ms. Grande, isn't it true that Mr. Almodovar
4 and Mr. Negron were wrongfully convicted of
5 the murders of George Rodriguez and Amy
6 Merkez?
7    **A.  On advice of counsel, I assert my**
8 **Fifth Amendment rights.**
9    Q.  And isn't it true that you never
10 told any State prosecutors or attorneys for
11 Mr. Almodovar or Mr. Negron that Detective
12 and Guevara and yourself had utilized
13 improper identification methods in order to
14 secure false identifications from Mr. Sayez
15 and Ms. Grande?
16    MR. GIVEN:  Form and foundation.
17    THE WITNESS:  On advice of counsel, I
18 assert my Fifth Amendment rights.
19    MS. BONJEAN:  I have nothing further.
20    MR. GORMAN:  Nothing from me.
21    MS. BARBER:  I have nothing.
22    MS. CERCONE:  I have no questions.
23    MR. GIVEN:  Nothing from me.  We'll
24 reserve signature.

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

105 (417 to 420)

417

1    THE VIDEOGRAPHER: This concludes the
2  video deposition of Mr. Halvorsen, 5:30.
3    (The deposition proceedings
4      were concluded at 5:30 p.m.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

418

1       ACKNOWLEDGMENT OF DEPONENT
2
3       I, Ernest Halvorsen, being first
4  duly sworn, on oath say that I am the
5  deponent in the aforesaid transcript of my
6  deposition taken April 20, 2018, consisting
7  of pages 1 through 415, whatever inclusive,
8  taken at the aforesaid time and place and
9  that the foregoing is a true and correct
10 transcript of my testimony so given.
11 _____ Corrections have been submitted
12 _____ No corrections have been submitted
13
14
15
16  _____
17    Ernest Halvorsen, Deponent
18
19 SUBSCRIBED AND SWORN TO
20 before me this _____ day
21 of _____, A.D., 2018.
22
23  _____
24    Notary Public

419

1  STATE OF ILLINOIS  )
2               ) SS:
3  COUNTY OF COOK    )
4    I, Aneesha L. Williams, Certified
5  Shorthand Reporter in and for the County of
6  Cook, State of Illinois, do hereby certify
7  that on the 20th day of April, A.D., 2018,
8  the deposition of witness, ERNEST HALVORSEN,
9  called by the Plaintiff, was taken before me,
10 reported stenographically and was thereafter
11 reduced to typewriting through computer-aided
12 transcription.
13    The said witness, ERNEST HALVORSEN, was
14 first duly sworn to tell the truth, the whole
15 truth, and nothing but the truth, and was
16 then examined upon oral interrogatories.
17    I further certify that the foregoing is
18 a true, accurate and complete record of the
19 questions asked of and answers made by the
20 said witness, at the time and place
21 hereinabove referred to.
22    The signature of the witness was not
23 waived by agreement.
24    Pursuant to Rule 207(a) of the Rules of

420

1  the Supreme Court of Illinois, if deponent
2  fails to read and sign this deposition
3  transcript within 30 days or make other
4  arrangements for reading and signing thereof,
5  this deposition transcript may be used as
6  fully as though signed, and the instant
7  certificate will then evidence such failure
8  to read and sign this deposition transcript
9  as the reason for signature being waived  .
10    The undersigned is not interested in the
11 within case, nor of kin or counsel to any of
12 the parties.
13    Witness my official signature as a
14 Certified Shorthand Reporter, in and for
15 Cook County, Illinois on this 8th day of
16 May, 2018.
17
18
19
20  _____
21    Aneesha L. Williams,
22    Certified Shorthand Reporter
23    License No. 084-004443
24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

106

**A**

a-d-o-l-f-o
322:13
a-l-f-r-e-d-o
322:21
a-l-m-o-d-o-v-a-r
404:13
a-l-v-a-r-e-z
298:4
a-n-d-i-n-o
323:5
a-n-g-e-l
321:12, 323:13
aberdeen
2:5, 3:13, 7:7
abilities
114:24
ability
402:13
able
39:22, 95:11,
110:1, 120:5,
132:3, 151:5,
166:18, 182:20,
183:4, 196:8,
202:5, 213:11,
215:20, 216:15,
249:15, 284:22,
346:24, 354:1,
355:23, 365:18,
368:8, 379:10,
405:24, 406:24,
412:10, 412:18,
413:5
above
360:23
abraham
333:3, 335:3
absent
48:14
absolutely
19:6, 19:23,
52:8, 140:15,
338:22
abuse
38:24, 39:2,
45:14, 46:21,

142:19, 143:17,
173:6, 247:16,
248:2, 388:21,
390:21
abused
47:9
abusing
389:16
accepting
332:10
according
161:22, 185:4,
225:6
account
252:16, 313:20
accurate
70:10, 70:13,
383:13, 419:18
accurately
329:6
accused
143:4, 305:17
acknowledging
399:4
acknowledgment
418:1
acquaintance
246:19
across
202:6
act
78:7, 149:11,
236:10, 266:15
acted
75:22
action
231:9
actions
26:18, 137:18
actively
37:9
activity
92:10, 302:16,
332:13
acts
15:5
actual
70:9, 79:11,

186:22
actually
20:15, 20:19,
21:20, 29:19,
37:9, 38:9,
43:23, 53:9,
53:17, 53:20,
54:21, 64:22,
65:18, 76:12,
79:5, 80:13,
91:22, 104:3,
104:15, 117:15,
118:19, 129:1,
131:13, 134:11,
134:17, 135:18,
147:6, 152:13,
155:3, 165:14,
177:20, 178:17,
183:24, 184:3,
192:8, 199:5,
201:11, 205:11,
236:24, 248:6,
248:18, 249:17,
250:9, 251:23,
254:10, 330:18,
335:16, 335:17,
336:15, 336:23,
337:15, 344:8,
349:18, 350:20,
358:23, 362:1,
363:22, 372:2,
372:6, 378:8,
386:4, 408:13,
408:14, 409:21
add
301:19, 302:2
addict
37:4
addiction
89:10
addition
205:17, 301:21
additional
61:10, 253:4
address
363:22
administer
7:14

admissible
403:22
admissions
126:5
admit
240:14
admits
125:23
admitted
76:19, 77:1,
77:9, 144:12,
167:9, 207:16,
280:13, 280:21,
313:7
adolfo
322:12
adopt
164:3, 189:17,
213:18
adopted
191:9
adopting
185:17, 186:4
advance
61:11
advised
414:11
affidavit
6:20, 246:9,
246:11, 246:16,
248:7, 248:10
affiliation
39:16, 39:21,
40:5
affirmations
214:4
affirms
246:17
affixed
11:21, 184:13
aforesaid
418:5, 418:8
afraid
347:23, 348:4
after
24:13, 24:19,
28:14, 29:6,
29:7, 30:16,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

107

31:9, 39:2,
46:20, 47:7,
47:8, 61:6,
68:5, 78:17,
81:11, 82:1,
84:12, 96:17,
98:2, 99:16,
100:22, 105:8,
105:9, 106:24,
118:19, 123:21,
130:6, 130:17,
131:2, 132:18,
141:17, 141:20,
143:16, 145:2,
150:6, 171:9,
173:18, 174:6,
188:15, 214:21,
218:22, 222:2,
224:24, 225:10,
225:16, 236:19,
237:5, 245:2,
245:16, 254:5,
333:19, 334:4,
335:3, 338:20,
346:15, 349:9,
353:24, 365:3,
365:4, 370:3,
371:14, 375:16,
379:9, 386:12,
388:8, 389:24,
395:8, 395:9,
397:10, 407:6,
414:2
**afternoon**
233:3
**again**
10:19, 87:22,
88:24, 90:9,
95:21, 101:15,
128:5, 145:7,
161:12, 165:7,
184:12, 189:2,
211:3, 226:12,
243:12, 254:10,
271:24, 274:5,
300:5, 316:21,
317:2, 393:4,
402:8

**against**
21:21, 33:17,
33:24, 36:11,
43:2, 66:9,
68:2, 80:19,
81:1, 81:2,
95:7, 99:11,
100:16, 101:3,
103:20, 120:18,
139:2, 140:23,
151:15, 152:22,
153:4, 154:14,
156:13, 157:9,
176:11, 182:13,
182:18, 183:2,
183:16, 200:4,
204:5, 204:9,
218:16, 239:8,
240:5, 240:11,
244:19, 245:22,
294:6, 296:9,
296:23, 328:18,
383:3, 389:18
**age**
373:7, 373:14
**aged**
349:16
**aggressive**
144:6
**agree**
10:12, 33:17,
75:20, 96:18,
118:18, 353:4,
412:19, 413:7
**agreed**
41:17, 46:23,
47:7, 78:7,
153:12, 209:15,
215:1, 279:17,
346:6, 391:3,
396:17
**agreeing**
97:4
**agreement**
14:2, 34:6,
93:24, 419:23
**ahead**
10:5, 54:15,

97:13, 112:19,
113:17, 131:18,
146:9, 160:1,
162:9, 175:15,
183:9, 192:23,
213:24, 221:18,
227:22, 230:10,
234:23, 235:5,
236:16, 242:4,
253:23, 282:5,
319:17, 338:2,
356:21, 360:4,
367:10, 385:15
**airtight**
54:21
**al**
1:7, 1:13, 7:4,
7:5
**albert**
284:4
**alcohol**
99:1
**alfred**
383:2, 391:13,
392:4, 392:22,
393:12, 393:17,
394:1, 394:5,
394:15, 395:14,
401:3
**alfredo**
322:20, 381:13,
382:16, 390:10,
392:14, 395:3,
401:11
**alibi**
54:22, 57:13,
60:14, 336:1,
336:5, 352:18,
356:15, 356:17
**all**
10:13, 10:14,
11:20, 12:2,
18:11, 18:16,
22:4, 22:14,
30:10, 60:23,
73:24, 76:17,
93:14, 121:9,
131:10, 137:18,

153:11, 173:12,
189:14, 197:5,
236:9, 246:18,
261:19, 262:2,
262:10, 262:18,
263:3, 263:19,
271:16, 277:22,
278:6, 283:20,
299:13, 306:16,
311:16, 324:16,
329:24, 330:3,
330:10, 367:7,
402:2, 406:19
**allege**
268:18, 269:3,
391:13
**alleged**
127:24
**allegedly**
127:24
**alleges**
126:4
**alley**
369:23, 379:5
**allow**
325:20, 331:4,
331:24, 336:22
**allowed**
234:16, 325:12,
326:2, 326:7,
332:18, 354:9
**almodovar**
404:12, 404:20,
409:7, 409:11,
409:14, 409:17,
409:22, 410:18,
411:2, 411:9,
411:20, 412:7,
412:19, 413:7,
413:18, 414:2,
414:4, 414:21,
415:9, 415:18,
416:3, 416:11
**almost**
29:6, 114:13,
130:17, 158:12,
220:11
**alone**
46:12, 209:24,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018
108

260:23
**along**
7:18, 18:2,
18:18, 22:11,
24:16, 34:1,
51:13, 51:22,
52:17, 60:19,
61:6, 70:20,
78:14, 79:16,
81:12, 82:24,
83:12, 88:22,
90:20, 91:14,
92:24, 100:13,
105:18, 122:16,
150:19, 151:12,
172:7, 184:13,
199:12, 199:14,
206:21, 222:6,
228:24, 230:1,
231:16, 232:24,
236:7, 279:14,
341:5, 359:3,
367:6, 370:21,
404:10, 405:12
**alongside**
298:8
**already**
11:7, 34:9,
34:18, 36:9,
84:24, 87:17,
87:24, 89:21,
93:12, 93:18,
116:21, 120:3,
139:22, 144:18,
146:19, 220:3,
301:21
**also**
5:10, 25:5,
37:3, 53:23,
59:14, 59:16,
71:9, 78:3,
79:2, 80:13,
85:6, 89:13,
94:17, 94:22,
99:1, 104:21,
121:8, 121:10,
122:23, 124:3,
128:6, 129:16,

133:3, 134:24,
138:2, 154:13,
154:18, 155:9,
155:20, 157:10,
157:21, 161:23,
165:7, 166:3,
168:24, 169:6,
171:10, 171:23,
186:20, 186:23,
187:14, 187:21,
188:18, 190:1,
192:2, 197:19,
198:13, 200:8,
200:13, 201:20,
203:12, 208:9,
221:6, 222:11,
226:19, 227:14,
243:8, 282:13,
290:9, 299:15,
332:16, 344:5,
347:13, 359:9,
363:3, 369:10,
370:22, 374:8,
374:24, 382:22,
392:4, 395:10,
399:21, 410:9,
413:6
**alternatively**
139:5
**altgeld**
83:21, 84:3,
121:5, 121:19
**although**
130:13, 184:21,
196:19, 365:8
**alvarez**
298:4, 298:8,
298:15, 298:16,
300:11, 300:20,
300:21, 301:2,
301:11, 302:9,
302:21, 303:3,
303:8, 303:15,
303:19, 305:5,
305:11
**always**
25:9, 114:14,
306:4

**amongst**
45:8
**amount**
36:21
**amy**
404:14, 405:5,
411:3, 415:20,
416:5
**andahar**
282:10, 283:5,
283:15
**andino**
323:5
**andt**
4:3, 8:9
**aneesha**
1:24, 2:11,
7:9, 419:4,
420:21
**angel**
321:11, 323:12
**angry**
249:12, 249:22,
387:6
**announcements**
369:11
**anonymous**
119:16, 292:7,
292:9, 313:21
**another**
54:4, 102:7,
104:23, 114:2,
139:7, 139:23,
149:10, 151:14,
151:21, 152:23,
154:14, 210:7,
249:7, 305:14,
335:5, 344:9,
365:19, 387:7,
402:23, 404:5,
408:11, 410:10
**answer**
9:21, 12:13,
17:13, 21:16,
35:5, 37:23,
54:5, 54:16,
113:5, 114:7,
147:1, 200:16,

201:23, 213:4,
214:16, 234:2,
261:2, 261:13,
264:8, 264:16,
264:18, 265:1,
270:22, 272:1,
272:15, 275:17,
275:19, 275:20,
276:10, 277:13,
279:5, 279:6,
282:17, 289:13,
300:1, 300:4,
312:14, 338:15,
360:4, 365:22,
404:3, 404:22
**answered**
63:22, 175:14,
198:7, 198:14,
200:12, 207:23,
214:14, 214:18,
215:10, 229:19,
233:17, 236:18,
237:6
**answers**
200:19, 419:19
**any**
14:12, 16:6,
19:8, 19:24,
20:8, 25:10,
29:12, 31:7,
31:22, 33:24,
52:10, 60:2,
60:3, 75:23,
79:11, 82:4,
92:10, 109:11,
110:7, 111:5,
111:6, 127:3,
127:13, 128:14,
129:11, 132:13,
137:1, 149:17,
149:22, 149:23,
150:4, 161:7,
163:18, 167:5,
168:10, 172:22,
173:6, 176:19,
176:20, 192:3,
203:20, 210:13,
212:22, 218:1,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    109

234:14, 243:13,
245:21, 246:20,
246:24, 248:9,
262:10, 262:18,
262:20, 263:10,
263:19, 266:8,
266:14, 270:13,
273:3, 273:12,
273:17, 274:8,
274:11, 274:15,
275:1, 277:13,
277:21, 277:22,
278:5, 278:11,
278:12, 278:16,
278:21, 278:22,
283:22, 291:23,
291:24, 293:15,
299:13, 301:9,
301:23, 302:16,
302:21, 314:2,
334:2, 334:20,
338:10, 338:11,
362:9, 369:11,
383:24, 399:3,
399:11, 399:12,
399:13, 406:1,
406:2, 409:12,
416:10, 420:11

**anybody**
131:19, 235:3,
367:24

**anyone**
47:16, 49:23,
245:15, 368:8,
377:22

**anything**
63:3, 71:11,
274:20, 300:12,
301:3, 301:10,
302:8, 302:15,
324:6, 344:15

**anyway**
131:18, 132:2,
214:12

**apart**
167:5, 278:15,
283:22, 350:12

**apartment**
405:18

**apologies**
383:13

**apologize**
196:13

**apparently**
219:12, 234:13

**appeal**
6:18

**appear**
69:17, 164:13,
310:12, 329:5,
370:12, 402:4

**appearance**
64:7, 70:11,
88:3, 89:1

**appearances**
3:1, 4:1, 5:1

**appeared**
108:11, 182:5

**appears**
184:22

**apply**
113:6

**approached**
394:6

**appropriate**
338:21

**approve**
183:6, 183:15

**approximately**
198:6, 201:21,
202:1, 233:3,
254:5, 330:24,
349:16, 388:17,
389:24, 391:20,
396:16

**april**
1:18, 7:8,
9:13, 418:6,
419:7

**area**
6:24, 30:5,
34:10, 35:12,
45:9, 150:16,
152:14, 198:5,
219:13, 233:1,
237:13, 287:23,
305:14, 318:8,

324:1, 341:16,
342:5, 342:14,
342:16, 343:4,
343:8, 349:18,
358:9, 363:18,
383:23, 390:18,
391:1, 394:4,
403:23, 409:23

**argument**
403:19

**arising**
312:10

**armando**
1:10, 3:10,
7:17, 8:21,
16:16, 17:8,
59:5, 72:22,
138:5, 177:8,
196:16, 197:19,
198:13, 198:24,
200:11, 201:4,
202:3, 202:8,
217:6, 219:3,
237:15, 242:17

**armed**
36:16, 36:23,
41:8, 41:16,
48:3, 200:11,
200:15, 201:4,
247:20, 248:16,
249:6, 254:10

**around**
43:23, 76:18,
109:24, 110:15,
123:7, 124:12,
135:2, 275:11,
304:15, 304:20,
305:3, 365:12,
367:18, 386:21

**arrange**
396:11

**arranged**
64:22, 98:6,
98:16, 98:24,
138:9, 140:17,
189:2, 333:18

**arrangement**
93:20, 331:16,

332:16

**arrangements**
65:19, 420:4

**array**
110:7, 110:8,
133:6, 133:24,
169:1, 222:8,
222:23, 284:15,
285:5, 285:11,
285:20, 286:19,
286:23, 287:4,
287:17, 292:24,
293:7, 293:17,
294:16, 295:4,
295:10, 295:20,
303:3, 303:8,
304:2, 304:6,
308:1, 308:6,
309:20, 376:5,
376:10, 376:17,
378:16

**arrest**
15:21, 57:10,
105:2, 138:4,
141:8, 146:8,
146:15, 146:21,
147:6, 149:18,
170:4, 170:14,
182:6, 182:20,
182:22, 183:4,
183:6, 208:23,
247:20, 251:21,
333:2, 397:15,
397:22, 398:9,
409:21

**arrested**
14:19, 138:10,
140:18, 141:1,
173:20, 174:2,
215:16, 215:17,
254:10, 343:3,
357:10, 357:11,
357:17, 383:10,
383:16, 383:21,
385:19, 385:20,
387:16, 387:20,
409:12

**arrived**
121:6

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                      110

asa
161:23, 171:10
aside
273:4, 273:13,
274:24
ask
10:18, 54:4,
112:14, 120:22,
134:16, 191:1,
194:9, 205:23,
213:11, 215:9,
235:14, 235:17,
235:19, 236:2,
236:13, 282:5,
282:14, 282:19,
297:23, 324:2,
324:5
asked
27:3, 39:15,
39:20, 40:4,
63:21, 175:14,
197:15, 198:3,
200:8, 200:13,
200:18, 201:20,
204:18, 207:13,
207:21, 214:18,
215:8, 216:14,
229:18, 233:16,
261:19, 262:2,
262:10, 262:18,
263:3, 288:3,
289:24, 370:3,
392:14, 402:3,
403:18, 410:9,
419:19
asking
37:19, 279:3,
282:13, 298:22,
298:24, 301:22,
402:5
aspects
18:16, 70:11
assailants
406:12
assault
267:13
asserted
261:6

asserting
268:24, 269:9,
272:13, 273:9,
273:14, 275:24,
277:7
assertion
273:22
assign
340:15
assigned
18:1, 24:11,
24:19, 29:7,
31:3, 130:17,
131:2, 298:7,
305:21, 306:19,
337:5, 339:9,
340:1, 353:24,
361:5, 363:16,
364:1, 364:12,
405:3, 405:4
assignment
31:10
assist
155:8, 215:20,
216:15, 239:19
assistance
224:10, 241:2
assistant's
123:12, 390:24
assisted
41:9, 311:7
associate
410:18
associated
194:1, 195:1,
274:16
assumes
276:9, 319:15
assuming
298:23
assure
402:14
attempt
229:13, 340:10,
363:5, 364:20,
398:20, 404:15
attempted
54:10, 88:16,

202:4, 339:19,
387:14
attempting
154:10
attention
112:15, 112:24,
113:10, 177:2,
180:8, 246:15,
330:22
attorney
4:21, 7:23,
33:15, 33:16,
33:23, 50:10,
50:19, 65:11,
68:7, 68:17,
74:2, 80:3,
82:24, 97:18,
98:3, 98:5,
101:1, 158:15,
158:21, 163:17,
163:24, 167:1,
169:20, 171:17,
189:5, 190:2,
190:21, 191:2,
191:15, 197:16,
198:3, 200:9,
206:17, 206:22,
207:12, 207:15,
208:16, 208:20,
209:6, 212:2,
213:9, 214:22,
215:7, 216:6,
217:17, 221:7,
222:15, 224:10,
228:16, 229:24,
230:1, 231:1,
231:18, 232:3,
232:12, 233:15,
234:3, 234:15,
238:2, 240:3,
241:3, 244:8,
249:14, 251:5,
251:11, 252:9,
252:17, 253:2,
261:10, 273:12,
273:17, 274:8,
274:11, 274:15,
278:16, 278:22,

310:20, 331:12,
362:12, 378:14,
382:23, 390:17,
391:1, 392:13,
393:12, 394:1,
394:24, 396:19,
396:24, 398:4
attorney's
64:15, 64:24,
65:22, 119:4
attorney-client
261:11, 261:14,
264:17, 275:16,
275:18, 279:3
attorneys
12:22, 14:1,
14:16, 22:3,
22:13, 51:13,
65:9, 65:18,
66:5, 66:6,
67:7, 68:9,
69:9, 70:21,
73:13, 73:23,
74:18, 75:5,
77:6, 78:2,
78:16, 79:17,
81:15, 83:2,
90:22, 94:3,
94:16, 97:5,
99:8, 99:17,
100:14, 101:13,
103:6, 104:12,
105:19, 106:14,
122:17, 123:12,
126:14, 127:6,
129:3, 141:11,
150:6, 151:13,
175:9, 175:21,
183:15, 189:1,
190:7, 191:6,
191:17, 193:16,
199:15, 201:13,
202:22, 208:10,
211:10, 218:12,
224:19, 225:8,
225:13, 250:6,
250:17, 271:5,
274:12, 275:1,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                     111

275:5, 276:14,
277:14, 279:11,
279:18, 281:4,
281:9, 291:10,
310:21, 377:19,
378:5, 416:10
**attribute**
375:9
**attributed**
104:24, 125:11,
128:7, 128:23,
129:4, 129:22,
163:4, 167:19,
373:24, 400:17
**attributing**
246:19, 397:21
**august**
387:12, 387:23,
388:4, 391:20,
395:21, 399:16,
399:23, 400:5,
400:11
**austin**
279:11, 279:18,
281:4, 281:9
**author**
31:13
**authored**
11:21, 110:13,
117:10, 118:24,
121:17, 121:23,
123:21, 127:24,
129:1, 137:1,
165:3, 165:20,
168:4, 168:11,
172:14, 184:8,
184:18, 347:6,
350:20, 370:23,
375:12, 397:19,
398:16, 400:13
**authoring**
114:14, 116:12
**authorities**
264:23
**authority**
278:23
**available**
194:2, 194:16,

195:4, 231:2,
310:19, 311:16
**avenue**
201:7, 223:24,
233:2, 233:11,
236:20, 237:7,
283:14, 287:23,
384:8, 384:19,
385:1, 393:14,
393:16, 394:6
**avoid**
79:4, 355:16
**avoids**
156:23
**aware**
191:3, 225:18,
230:3, 247:24,
331:1, 363:14,
383:9, 383:15,
383:20, 386:18,
391:21, 405:10,
406:9, 407:24,
408:1
**away**
89:16, 336:9,
396:11, 408:15

---
**B**
---

**b**
403:22
**b-o-n-j-e-a-n**
7:16
**b-u-t-o**
324:21
**back**
21:10, 43:12,
44:13, 82:18,
95:21, 99:10,
105:7, 125:24,
155:23, 175:4,
197:24, 219:13,
219:14, 220:1,
236:19, 254:4,
282:1, 285:1,
297:21, 304:16,
304:21, 323:20,
379:4, 380:21,
394:3, 406:17

**background**
167:5, 376:7,
376:10
**backhanded**
214:6, 214:8
**bad**
38:17, 62:20,
63:1, 124:8,
125:1, 142:10
**bag**
123:8
**bald-faced**
245:12
**ballistic**
109:3
**banger**
348:21
**bangers**
358:15
**bank**
28:7, 28:15,
63:13, 130:7
**bar**
271:8, 272:3
**barber**
5:4, 8:4,
260:18, 338:3,
370:11, 416:21
**barrel**
158:22, 159:10,
159:16, 159:22,
160:1, 169:12
**barrier**
156:23
**bars**
38:4
**bart**
357:9, 357:18
**based**
264:4, 327:11,
338:15, 362:19
**basis**
63:19, 111:5,
111:12, 120:12,
141:7, 238:21,
399:10, 410:15,
411:1, 411:8
**bates**
56:12, 56:18,

58:3, 112:13,
112:16, 113:11,
117:8, 172:15,
184:7, 196:7,
206:8, 338:4,
338:6, 338:16,
338:20, 370:12
**bathroom**
326:3
**battery**
267:14
**bears**
113:12, 165:3,
165:7, 206:6,
206:8, 339:3,
350:17, 370:20
**beat**
360:19, 361:13,
361:21, 362:3,
362:10, 389:8
**beaten**
157:1, 171:17
**beating**
45:11, 157:15
**beatings**
390:1
**because**
30:10, 45:1,
45:12, 53:19,
56:3, 76:6,
86:5, 86:16,
87:17, 89:9,
102:15, 120:2,
139:14, 139:22,
148:3, 153:23,
157:22, 159:5,
172:8, 180:7,
183:5, 190:9,
195:3, 195:4,
196:11, 208:18,
210:6, 211:4,
215:15, 220:3,
223:13, 225:11,
239:7, 243:15,
249:5, 249:14,
253:8, 260:3,
268:17, 269:1,
280:7, 303:14,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    112

307:6, 315:18,
327:9, 327:16,
335:16, 336:1,
340:8, 342:7,
346:6, 347:8,
347:15, 347:22,
348:20, 352:10,
353:6, 355:18,
355:24, 356:17,
362:11, 365:10,
367:5, 367:16,
375:3, 379:3,
384:24, 386:3,
387:6, 402:10,
403:19, 403:24,
408:23, 409:11
**become**
9:8, 330:18
**been**
8:14, 28:7,
36:15, 48:22,
51:5, 55:19,
56:16, 56:21,
58:2, 58:6,
63:10, 81:13,
82:7, 85:1,
85:9, 86:17,
87:18, 95:10,
103:1, 103:8,
110:24, 111:13,
112:3, 112:10,
116:20, 121:18,
122:7, 127:4,
127:16, 128:23,
129:11, 135:20,
136:1, 140:16,
141:9, 162:16,
171:24, 174:22,
184:6, 187:10,
193:14, 196:10,
206:5, 210:11,
213:21, 223:6,
226:10, 233:5,
246:8, 248:19,
250:4, 258:10,
261:24, 262:8,
262:16, 263:17,
280:14, 288:4,

288:9, 300:13,
300:14, 301:4,
301:5, 338:7,
338:8, 338:17,
339:1, 346:5,
356:16, 359:14,
366:8, 370:15,
370:19, 371:13,
386:19, 387:15,
390:20, 396:18,
409:12, 411:19,
412:5, 418:11,
418:12
**beeped**
85:11
**beeping**
130:8
**before**
2:11, 14:12,
14:18, 28:5,
52:22, 60:2,
62:9, 63:12,
84:6, 106:6,
106:18, 107:10,
110:3, 111:14,
116:21, 117:7,
170:4, 178:10,
181:10, 182:6,
185:7, 185:13,
185:22, 186:21,
187:9, 187:24,
194:2, 194:16,
197:4, 197:10,
200:3, 200:23,
202:12, 204:4,
205:18, 211:19,
217:18, 218:24,
223:7, 224:3,
227:10, 232:4,
233:20, 234:5,
241:4, 246:12,
251:5, 275:15,
283:15, 284:14,
285:15, 285:20,
286:1, 286:18,
287:12, 287:17,
301:11, 301:17,
309:7, 309:12,

325:15, 325:21,
326:3, 326:10,
361:14, 374:13,
393:5, 418:20,
419:9
**began**
43:2, 247:17,
398:5
**begin**
8:22
**beginning**
330:2
**begins**
113:11, 120:24
**behalf**
3:3, 3:10,
3:17, 4:3, 4:11,
4:18, 5:3, 7:24,
8:2, 8:6, 8:10,
42:1, 42:4, 42:6
**behind**
115:14, 155:17
**beige-colored**
226:22
**being**
29:7, 49:6,
49:7, 65:20,
93:12, 95:11,
99:10, 104:11,
120:3, 121:8,
123:5, 128:16,
139:22, 156:24,
167:9, 200:18,
202:3, 203:22,
228:5, 237:10,
315:19, 317:7,
334:5, 336:6,
338:11, 353:24,
403:18, 418:3,
420:9
**believe**
16:4, 19:24,
52:9, 55:19,
111:6, 111:12,
140:15, 168:9,
187:16, 224:22,
233:5, 233:18,
236:22, 274:21,

287:8, 317:5,
317:14, 318:9,
338:8, 344:14,
345:13, 354:19,
358:22, 370:16,
399:3, 399:10,
411:1, 411:8
**believed**
239:15, 286:3,
346:7
**believing**
111:21, 223:14,
225:9, 225:15,
230:5, 238:21,
376:23
**bella**
401:1
**bellow**
395:23, 396:8,
396:15, 397:1,
401:1, 401:2
**belly**
158:22, 159:10,
159:17, 159:23,
160:1, 169:12
**belonged**
227:18, 408:4
**belonging**
135:12
**bench**
206:11, 206:16,
228:17, 361:13
**beneath**
114:5
**benefit**
32:10, 93:20,
144:22
**benefits**
46:22, 94:5
**benefitting**
92:12, 92:20
**besides**
207:22
**best**
411:22
**better**
120:5, 234:14,
338:12

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    113

between
31:23, 98:16,
121:5, 251:20,
344:9, 392:23
beubea
339:19, 341:16,
344:13, 346:23,
349:2, 354:16
beyond
360:24
bill
305:10
binding
263:12
bitch
44:9
black
365:11, 367:17,
375:4, 376:10,
394:6, 406:16
black-and-white
219:5, 222:6
blame
271:5
blank
372:7, 372:23
blevin
354:24, 355:5,
355:11, 355:16,
355:22
block
110:16, 135:3,
226:21, 227:16,
228:4
blocks
228:24, 408:15
blue
405:14, 405:21,
405:22, 407:8,
412:20, 413:8
blurt
213:13, 214:23
bobby
339:20, 348:13,
349:2, 355:24
body
156:24, 389:9
bolan
211:19, 222:13,

234:13, 235:1,
239:15
bolster
176:11
bond
249:7, 387:14
bond-on-bond
253:8
book
30:11, 43:19,
43:24, 44:15,
44:24, 45:11,
366:19, 367:23,
368:1, 368:8,
370:5, 374:3,
377:21, 377:23,
389:10
booking
318:4
bore
193:13, 193:16
both
114:22, 128:15,
301:20, 382:15,
394:22, 414:3
bother
34:23
bottom
56:23, 58:8,
113:13, 113:19,
129:17, 165:4,
165:16, 184:13,
184:22, 207:10,
339:3, 370:21
boy
351:20
boyke
289:10, 289:24,
331:2, 331:3,
331:11, 331:17,
333:20, 334:3,
334:14, 334:20,
335:3, 360:9,
361:1, 361:24,
362:11
boyke's
361:5
brain
320:7

brains
115:14
brainstormed
73:14
break
82:5, 82:9,
82:13, 174:22,
281:21, 320:8,
330:5, 380:16
bribery
266:21
bring
35:24, 65:10,
138:24, 139:6
bringing
107:6, 185:13,
354:16
broken
344:8
brooklyn
3:7
brother
152:22, 153:4,
154:14
brothers
53:19, 54:1,
154:6, 384:1,
384:7, 385:23,
386:15, 388:13,
391:23, 395:3,
395:16, 397:12,
399:5, 399:14,
399:24, 400:7,
400:20, 401:13
brought
38:3, 64:14,
68:6, 100:24,
107:2, 109:18,
110:22, 135:18,
138:17, 141:17,
141:20, 150:15,
152:14, 171:11,
171:23, 185:6,
190:21, 209:24,
210:6, 219:13,
219:14, 222:22,
307:11, 342:16,
343:3, 366:18,

375:18, 385:21,
387:22, 409:23,
411:11
brown
315:17, 315:24,
316:6, 316:16
bryn
357:5
buick
123:3, 135:12,
226:22, 283:14,
287:22
build
373:8, 373:14
building
219:15, 405:11,
405:18
bullet
87:18, 108:12,
108:19, 109:2,
137:13, 226:24
bullpen
101:17
bunch
320:4
burden
104:16, 239:20
burdensome
404:2
bus
333:4, 333:14,
334:6, 335:2,
335:11, 336:16,
359:16
business
28:8
butcher
349:17
buto
32:24, 33:6,
33:17, 34:1,
34:3, 34:7,
35:10, 35:17,
39:11, 39:23,
40:13, 41:2,
41:10, 41:17,
42:2, 42:16,
44:20, 46:24,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    114

47:7, 47:19,
48:5, 48:22,
49:5, 49:14,
50:12, 50:21,
66:9, 68:2,
93:13, 99:11,
99:22, 120:4,
210:11, 324:2,
324:20, 325:2,
325:7, 325:14,
326:3, 326:10,
326:17, 326:23,
327:6, 327:15,
327:18, 328:1,
328:12, 328:17,
328:23, 329:6,
329:15, 329:20,
330:4
**buto's**
39:16, 66:7,
66:14, 67:9,
67:16, 67:24
**buy**
331:4, 332:1,
332:18, 336:23

**C**

**c-o-l-o-n**
306:24
**california**
387:21
**call**
44:8, 55:21,
56:1, 56:18,
99:9, 99:17,
230:15, 291:23
**called**
8:14, 56:7,
119:19, 212:14,
221:24, 269:18,
336:7, 419:9
**calls**
15:22, 17:12,
23:3, 43:6,
146:24, 212:8,
261:9, 261:10,
275:16
**came**
36:4, 50:19,

101:14, 202:20,
329:14, 343:8,
349:17, 391:1,
392:22, 393:4,
396:1
**can**
9:2, 9:20,
10:12, 10:18,
12:12, 17:13,
21:16, 35:5,
37:23, 40:19,
40:20, 54:5,
54:16, 82:6,
82:9, 97:9,
112:19, 112:20,
114:7, 147:1,
194:11, 195:10,
213:4, 213:13,
236:9, 248:7,
261:1, 263:10,
264:8, 265:1,
270:19, 270:22,
272:15, 275:19,
276:10, 279:6,
284:19, 285:1,
289:13, 297:17,
298:19, 300:3,
300:4, 306:2,
312:14, 323:21,
350:12, 365:22,
402:14, 404:4,
404:22
**can't**
209:7
**cancel**
403:13
**candy**
38:4, 38:9
**caption**
206:6
**car**
28:22, 75:14,
75:16, 85:12,
88:11, 89:15,
89:17, 89:22,
90:4, 106:5,
107:3, 107:7,
107:8, 107:9,

107:15, 107:16,
107:22, 108:6,
108:11, 108:12,
108:19, 109:3,
109:5, 109:12,
109:17, 109:19,
110:1, 110:10,
110:23, 111:6,
111:13, 111:19,
111:22, 121:6,
121:8, 122:2,
122:3, 123:5,
123:6, 123:7,
130:10, 134:21,
135:5, 135:13,
135:19, 135:20,
136:1, 136:8,
136:17, 137:3,
137:13, 158:23,
159:17, 159:18,
202:4, 227:9,
227:17, 228:7,
229:1, 229:6,
229:7, 229:8,
229:15, 230:4,
230:6, 233:10,
288:4, 288:9,
288:14, 300:13,
301:4, 357:4,
391:5, 394:5,
405:15, 405:22,
407:8
**care**
214:11, 367:4
**career**
10:1, 10:23,
262:21, 334:22
**carefully**
412:9
**carl**
33:5, 325:13,
326:2, 326:9,
326:16, 328:11,
328:22
**carlos**
323:4
**carried**
340:7

**cars**
110:8, 130:8
**case**
7:4, 7:5, 18:7,
24:20, 29:7,
29:20, 30:21,
31:3, 31:4,
31:15, 61:21,
62:6, 91:7,
93:13, 98:20,
99:11, 99:23,
100:16, 102:7,
102:8, 103:17,
104:5, 105:2,
105:12, 116:10,
116:19, 117:1,
120:4, 130:18,
131:2, 132:7,
134:13, 139:13,
139:23, 144:5,
144:14, 152:23,
153:24, 154:14,
157:21, 169:18,
176:11, 189:13,
210:2, 218:17,
222:13, 240:4,
240:6, 240:11,
241:6, 265:13,
268:11, 269:10,
269:11, 269:18,
276:1, 277:8,
277:16, 279:14,
299:2, 299:10,
299:11, 299:22,
303:3, 303:9,
317:8, 335:18,
337:21, 339:8,
339:13, 340:8,
340:17, 348:19,
349:11, 353:24,
360:19, 361:4,
361:13, 361:21,
362:3, 362:10,
364:13, 381:7,
381:8, 387:15,
398:2, 402:4,
402:10, 402:11,
407:17, 410:2,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

115

420:11
**cases**
30:4, 34:19,
35:1, 41:16,
94:4, 101:6,
114:15, 140:6,
248:17, 250:9,
279:14, 282:15,
282:19, 282:20,
290:11, 358:8,
377:2, 402:19
**cash**
28:8, 98:17
**casings**
87:18
**catch**
153:24
**catherine**
5:4, 8:4
**caught**
131:22
**cause**
15:21, 16:4,
105:2, 140:15,
146:8, 146:15,
182:22, 204:12,
302:20, 397:15,
403:12
**caused**
15:14
**causing**
245:23
**center**
4:22, 207:10
**central**
37:11, 138:17,
141:18, 141:21,
150:16, 155:24,
156:7, 220:2,
223:23, 341:17,
366:19, 385:22,
387:22, 388:9,
409:14, 413:19
**certain**
46:9, 94:5,
331:4, 403:21
**certainly**
131:1, 136:15,

213:8, 403:5,
403:7, 403:19
**certificate**
420:7
**certified**
2:12, 419:4,
420:14, 420:22
**certify**
419:6, 419:17
**chair**
155:16
**chance**
350:1
**change**
67:19
**charge**
17:19, 34:2,
76:18, 147:6,
147:14, 154:22,
157:22, 310:6,
315:12
**charged**
14:19, 36:15,
76:24, 77:8,
93:3, 103:1,
150:6, 360:1,
397:11
**charges**
33:17, 33:24,
36:10, 41:9,
47:8, 183:15,
328:18
**charging**
188:8
**charles**
320:12
**chasing**
300:14, 301:5
**check**
55:7, 55:10
**checked**
217:4
**chicago**
1:17, 2:7,
3:14, 4:8, 4:15,
4:23, 5:3, 5:7,
7:7, 8:5, 9:5,
9:8, 9:12, 9:15,

9:19, 17:7,
45:9, 219:5,
254:18, 255:4,
255:15, 255:24,
256:10, 256:19,
257:8, 257:18,
258:8, 258:19,
259:6, 259:20,
263:4, 274:9,
290:15, 336:9,
363:18, 364:2
**children**
302:12, 396:11,
397:4
**choice**
270:2, 270:5
**choose**
11:3, 403:6
**christopher**
381:21, 382:5,
382:17, 393:1,
395:4
**chronologically**
118:20
**circumstances**
164:12, 206:23
**circumstantial**
119:10, 119:20
**city**
5:3, 8:5, 336:9
**civil**
267:20, 299:9,
299:10
**claim**
75:6, 75:13,
76:4, 77:17,
78:17, 81:23,
83:20, 84:2,
84:11, 86:3,
86:10, 86:22,
88:10, 89:14,
101:15, 110:14,
119:14, 151:24,
180:13, 304:1
**claimed**
83:10, 104:14,
171:1, 180:20,
238:21, 297:14,

313:8, 394:13,
400:3, 400:6
**claiming**
67:17, 147:10,
187:10, 272:4,
280:19, 292:1,
398:16
**claims**
45:13, 162:15,
292:7, 297:13
**clandestine**
256:20
**clarify**
372:17, 372:19
**clark**
5:6
**clean**
66:22
**clean-looking**
406:19
**clear**
17:24, 283:18,
371:24, 372:11,
403:18
**cleared**
30:4, 51:6,
349:11
**client**
235:2, 261:10,
264:7
**close**
180:8, 236:7,
236:8, 334:14,
335:18, 340:8,
348:19, 407:17
**closed**
202:7, 358:8
**cloth**
109:11
**clothing**
327:11
**co-defendant**
381:20
**co-defendants**
199:19, 395:3
**coached**
50:9
**coaching**
97:20

cobra
366:24, 367:5,
368:8, 370:4,
371:16, 374:3,
380:10
cobras
312:4, 312:9,
316:11, 366:20,
367:7, 367:23,
377:21
code
258:21
coerce
81:4, 153:12,
157:23, 229:14,
294:5, 296:8,
319:1, 319:24,
334:22, 395:12
coerced
171:9, 172:6,
185:16, 205:12,
210:11, 218:13,
255:5, 255:16,
291:15, 294:13,
362:20, 401:1
coercing
22:16, 95:6,
349:1
coercion
21:21, 156:13,
163:7, 164:4,
319:12
coercive
259:15
cogh
66:5
collaboration
398:1
colleagues
258:21
collected
109:13
collection
112:4
college
357:4
colon
305:15, 305:16,

306:16, 306:24,
307:19, 307:24,
308:5, 308:10,
308:15, 308:21,
309:1, 309:7,
309:12, 310:7,
310:13, 310:20,
311:1
colon's
310:17
color
107:23, 169:2
come
39:2, 42:1,
64:23, 65:19,
66:21, 142:18,
143:19, 144:2,
152:8, 171:2,
231:19, 341:16,
389:6, 390:18
comes
118:19
coming
388:8
comment
234:22, 293:15
comments
178:5, 181:2,
235:5, 293:21,
295:18, 295:24,
327:23
commit
16:11, 16:18,
16:24, 54:12,
76:5, 152:2,
254:20, 259:18,
260:11, 269:2,
320:14, 320:21,
321:5, 321:13,
321:23, 322:6,
322:14, 322:22,
323:6, 323:14,
353:13, 368:22
committed
22:24, 72:23,
91:22, 93:12,
249:6, 253:9,
258:20, 268:17,

307:19, 316:11,
333:13, 343:16,
347:15, 352:10,
353:7, 355:8,
412:11
committing
15:4, 334:6
common
34:16
communicated
25:3, 25:9,
25:19
competence
44:3, 45:4,
47:2, 57:5,
57:16, 58:14,
59:9, 70:15,
95:15, 98:10,
140:10, 150:9,
157:3, 170:6,
190:16, 193:8,
194:20, 209:1,
212:7, 213:2,
232:19, 234:9,
239:22, 244:22,
248:22, 252:2,
252:21, 253:21,
257:1, 289:12,
312:13, 313:2,
319:15, 332:4,
333:22, 334:9,
334:16, 346:11,
360:12, 361:8,
362:5, 362:14,
362:22, 368:11,
377:5, 380:13,
390:12, 397:6,
401:6, 410:4,
410:20, 415:12
competent
116:4
complainant
341:14, 341:15
complainants
341:15
complaint
402:5, 402:15,
402:16, 402:18

complaints
268:19, 269:4
complete
112:11, 419:18
completely
163:11
complexion
373:8, 373:15,
406:14, 406:16,
406:18
compliment
214:2, 214:6
compliments
214:9
compound
33:9, 34:12,
114:7, 224:14
compromise
79:3
computer-aided
419:11
concealed
23:19, 257:19,
365:11, 367:17,
375:4
concept
306:7
concern
67:6, 99:9,
99:18
concerned
66:20, 151:4
concerning
247:1
concluded
417:4
concludes
417:1
conclusion
15:23, 17:12,
23:4, 212:8
conduct
177:7, 179:7,
199:6, 276:15,
276:23
conducted
243:4, 351:1,
371:14

Transcript of Ernest Halvorsen
Conducted on April 20, 2018　　　　　　　　117

conelli
407:5
conetti
404:16
confer
323:18
confess
49:16, 145:22,
147:11, 319:24,
388:12
confessed
40:13, 42:2,
82:1, 83:11,
91:9, 95:20,
101:16, 129:12,
296:16, 391:22
confessing
94:15, 103:9
confession
319:2, 362:19
confident
412:7, 412:10
confidential
119:19, 291:24
connect
283:16
connected
136:1, 137:13,
229:8
connection
19:9, 93:4,
138:18, 197:4,
264:14, 276:15,
276:23, 383:11,
383:16
connelly
5:5
consistent
186:2
consistently
342:13
consisting
133:6, 133:24,
169:2, 418:6
conspiracy
12:19, 13:15
conspired
13:23, 14:10,

14:14, 17:18,
22:4, 22:14,
290:14, 305:8,
310:5, 313:14,
314:12, 314:21,
316:4, 317:12,
318:19, 318:24,
320:12, 320:20,
321:3, 321:11,
321:21, 322:5,
322:12, 322:20,
323:4, 323:12,
335:4, 356:7,
382:12, 382:23,
385:9
constitution
276:17
constitutional
11:4, 12:10,
12:18, 13:6,
13:13, 15:6,
268:17, 269:2
construct
304:10, 345:4
construction
85:19
consult
408:21
consulted
18:11
contact
152:9, 355:5,
355:11
contacted
279:11, 341:14,
346:23, 390:17
contain
192:3
contained
11:16, 28:22,
125:9, 126:3,
126:10, 126:21,
128:6, 128:15,
162:5, 162:14,
167:7, 177:8,
179:9, 179:21,
242:1, 243:9,
256:20, 284:15,

286:19, 347:7,
355:17, 366:20,
374:2, 397:20,
400:11, 405:23,
413:18, 414:1
containing
284:5, 286:9
contains
118:14, 162:6,
172:16, 192:5,
297:24
contents
163:11
context
198:1
continue
97:10, 105:11,
214:19
continued
94:1, 98:18,
99:2, 279:24,
280:6, 280:18
continuous
195:14
contrive
63:9, 391:3
contrived
83:2, 123:11,
129:1, 164:2,
189:14
control
260:23
convalescing
375:19
convenience
248:9
conversation
36:5
conversations
77:24, 85:7,
85:8, 289:17
convict
190:12, 281:12
convicted
17:9, 235:9,
245:5, 305:18,
337:24, 362:19,
416:4

conviction
204:13, 239:8,
245:16, 299:12,
317:6, 377:12,
389:19, 400:19
convictions
15:17, 23:12,
244:19, 245:24,
280:8, 383:4
convince
78:16, 109:4
convinced
296:14
cook
4:18, 8:1,
64:15, 64:23,
65:11, 65:20,
65:21, 66:15,
68:16, 80:2,
82:23, 94:6,
98:3, 101:1,
119:3, 185:7,
189:4, 189:5,
207:14, 213:8,
247:19, 274:12,
400:4, 419:3,
419:6, 420:15
cooperate
46:23, 153:5,
346:6, 390:3,
390:6, 396:9
cooperation
39:4, 43:3,
47:18, 48:4,
98:18, 99:3,
99:21, 144:5,
145:4, 163:9,
186:19
cop
38:15, 38:17,
142:10, 143:19
copies
196:12
copy
372:23
copying
372:8
corner
59:6, 197:15,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                    118

233:11, 236:20
**corrections**
54:23, 336:7,
418:11, 418:12
**corroborate**
45:13, 105:21,
151:14
**cortland**
159:12, 405:12,
408:12, 410:12,
412:12
**could**
9:15, 21:10,
41:15, 45:12,
46:12, 47:16,
48:21, 51:3,
52:22, 56:22,
60:12, 61:22,
70:5, 72:10,
79:4, 92:19,
93:21, 101:2,
102:1, 105:1,
107:21, 110:9,
119:16, 120:17,
125:10, 135:4,
144:13, 144:14,
145:22, 146:2,
146:20, 148:19,
154:21, 157:20,
160:16, 172:1,
177:3, 180:6,
219:15, 226:2,
232:13, 243:13,
257:22, 268:20,
285:16, 285:21,
287:13, 287:18,
292:17, 292:23,
294:21, 295:3,
300:11, 301:2,
307:5, 315:17,
319:23, 337:8,
338:16, 338:19,
340:9, 342:5,
342:17, 347:9,
355:6, 367:16,
367:24, 370:16,
376:18, 379:3,
390:19, 394:7,

403:20, 407:7,
410:10
**couldn't**
34:23, 54:24,
145:21, 153:23,
212:21, 253:6
**count**
350:6, 372:2
**counting**
372:13
**county**
4:18, 8:1,
64:15, 64:23,
65:11, 65:20,
65:22, 66:15,
68:16, 80:2,
82:23, 94:6,
98:3, 101:1,
119:3, 185:7,
189:4, 189:5,
207:15, 213:9,
247:19, 274:12,
400:5, 419:3,
419:5, 420:15
**couple**
24:12
**course**
11:11, 80:5,
143:13, 234:22,
259:19, 262:21,
278:6, 388:16,
388:20, 389:4,
403:12
**court**
1:1, 7:9, 7:13,
42:1, 140:8,
298:2, 364:8,
415:17, 420:1
**cousin's**
409:22
**cover**
280:1, 374:11,
374:21
**covered**
258:20, 261:11
**covers**
261:14
**cozy**
26:3

**cr**
196:18
**crashed**
89:17
**create**
63:19, 105:1
**creates**
301:24
**creating**
259:8
**credibility**
61:23, 64:8,
85:20, 88:4,
89:2, 132:21
**credible**
151:6
**credibly**
172:1
**credit**
252:8, 252:17
**crick**
154:15
**crime**
22:18, 68:18,
69:16, 70:3,
71:20, 72:19,
76:8, 76:19,
77:1, 79:11,
87:19, 98:4,
108:4, 109:4,
109:13, 119:18,
147:12, 171:23,
199:7, 203:22,
215:1, 229:9,
237:4, 240:20,
253:8, 264:12,
283:7, 283:16,
297:6, 302:21,
320:13, 320:21,
321:4, 321:12,
321:22, 322:6,
322:13, 322:22,
323:5, 323:13,
335:15, 349:2,
354:1, 354:3,
356:1, 366:3,
392:5, 407:15,
412:5

**crimes**
64:16, 64:24,
65:10, 68:6,
68:16, 74:1,
80:2, 82:23,
100:23, 101:2,
119:3, 120:16,
209:17, 220:5,
220:12, 221:15,
237:14, 254:19,
259:18, 260:10,
353:12, 366:11,
409:13
**criminal**
6:10, 6:12,
23:2, 23:9,
47:8, 52:3,
55:7, 55:10,
57:2, 57:10,
58:7, 58:11,
58:20, 59:4,
59:17, 60:1,
60:10, 60:21,
101:5, 101:6,
196:17, 197:5,
230:23, 231:10,
256:22, 257:10,
257:20, 258:9,
267:20, 278:11,
278:17, 291:10,
299:11, 302:16,
328:17, 400:18,
401:3
**criminally**
415:18
**crossed**
250:5
**cruz**
53:17, 381:20,
382:3, 382:4,
382:16, 385:11,
385:21, 386:3,
390:10, 393:3,
395:5, 395:15,
401:11
**cruzen**
382:2
**crystal**
363:17

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

119

csr
1:24
cta
333:4, 333:14,
334:6, 335:2,
335:11, 336:15,
359:16
cuffed
155:17
culprit
345:18, 349:20
cultivate
149:10, 150:22
curious
215:19
currently
54:2
custody
34:19, 37:11,
39:1, 53:1,
53:10, 53:20,
55:12, 57:12,
60:13, 61:9,
155:23, 156:6,
158:12, 166:17,
178:18, 179:1,
181:9, 181:16,
230:17, 250:19,
251:13, 251:24,
252:8, 252:11,
253:4, 333:10,
333:19, 334:4,
383:23, 386:3,
386:5, 397:3,
398:19
cv
1:6, 1:12, 7:4,
7:6

D

d-i-a-z
321:12
daley
4:22
damage
89:15, 89:22,
111:19, 137:12,
226:23

dan
272:16, 274:21,
274:24
danger
50:2
daniel
197:17, 279:19,
320:20, 356:8,
356:14, 357:3,
357:21, 358:2,
358:23, 359:5,
362:9, 362:18
dark
373:20, 379:5,
406:13, 406:18
dark-skinned
373:20
date
58:21, 251:21,
291:24, 364:6,
403:20
dated
192:4, 350:16
dates
402:17
david
305:15, 305:16,
306:24, 307:19,
307:24, 308:5,
308:10, 308:15,
308:21, 309:1,
309:7, 309:12,
310:7, 310:13,
310:17, 310:24
davilla
299:21, 299:22,
301:10, 302:8,
302:15, 302:20,
303:2, 303:7,
303:15, 303:18,
304:2, 304:14,
304:19, 305:2,
305:10
davilla's
301:12, 303:13
day
4:13, 23:19,
26:20, 27:22,

57:13, 62:9,
63:11, 88:15,
113:7, 178:10,
214:1, 220:23,
223:22, 224:3,
227:10, 283:4,
326:4, 371:13,
402:23, 418:20,
419:7, 420:15
day-for-day
252:16
days
24:12, 106:24,
251:23, 252:7,
252:10, 253:3,
283:15, 420:3
dcfs
396:12
deal
41:15, 42:21,
144:22, 158:24,
159:5, 248:19
dealings
28:8
dealt
217:8
dean
3:6
death
247:1, 290:5,
290:16, 343:18,
354:20
decades
403:9
december
279:12
decided
19:12, 30:18,
32:23, 34:2,
34:8, 35:16,
51:3, 51:14,
52:2, 52:17,
59:24, 60:9,
60:21, 62:18,
62:24, 67:15,
68:24, 83:9,
84:13, 85:18,
94:24, 100:5,

100:14, 105:10,
106:3, 106:15,
149:10, 150:21,
166:16, 188:18,
189:13, 250:17,
335:18, 340:14,
358:14, 359:3,
359:10, 365:16,
366:23, 369:16,
375:9, 384:14,
395:12, 401:17,
408:21
decision
269:24, 270:3,
271:18, 293:16,
293:22, 295:20,
296:1
declined
33:24, 155:8,
190:7
defendant
3:17, 4:3,
4:11, 4:18, 5:3,
8:5, 8:7, 73:22,
100:17, 152:19,
152:20, 153:21,
170:18, 171:1,
171:11, 197:19,
198:13, 198:24,
199:13, 200:10,
207:13, 237:15,
310:6, 313:12,
314:20, 315:9,
328:10, 329:19
defendants
1:8, 1:14,
55:8, 64:16,
65:1, 73:12,
74:9, 74:17,
91:7, 91:15,
93:1, 94:15,
95:7, 101:5,
103:8, 103:17,
104:15, 127:17,
151:20, 189:13,
192:9, 199:14,
246:20, 256:22,
257:10, 257:21,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    120

291:10, 398:17
**defense**
194:4, 194:18,
195:6, 275:14,
276:1, 276:8,
377:19, 378:5,
378:13
**defranco**
382:24, 390:18,
391:1, 394:1,
394:24, 398:4
**demonstrate**
236:24
**dep**
8:8, 56:4,
56:7, 403:13
**department**
9:12, 9:19,
54:23, 219:5,
254:18, 255:5,
255:16, 256:1,
256:10, 256:19,
257:8, 257:19,
258:8, 258:19,
259:6, 259:21,
263:5, 274:9,
336:6
**depicted**
309:14
**deponent**
330:9, 418:1,
418:5, 418:17,
420:1
**depos**
7:10
**deposed**
402:10
**deposition**
1:16, 2:1, 6:8,
7:2, 7:18, 54:3,
195:21, 206:1,
261:8, 261:19,
282:14, 282:18,
299:13, 317:3,
317:7, 337:17,
338:20, 370:9,
417:2, 417:3,
418:6, 419:8,

420:2, 420:5,
420:8
**depositions**
282:20
**deprive**
269:11
**derive**
90:9
**describe**
176:19, 341:23,
342:15, 365:10,
407:7
**described**
324:16, 326:24,
405:22
**description**
300:13, 301:4,
406:1, 406:2,
406:24
**descriptions**
407:14
**designate**
195:16
**despite**
15:20, 20:24,
42:13, 63:1,
77:15, 147:10,
160:22, 161:5,
325:8, 365:15,
407:13
**destroyed**
257:8
**detail**
27:12
**detailed**
83:13
**detected**
45:13
**detectives**
45:9, 340:7,
341:8, 342:5,
342:14, 354:2,
373:19, 393:24,
398:2
**determine**
12:3, 268:3,
268:9, 352:17,
352:22, 354:9,

355:6, 365:17
**determined**
61:6, 134:5,
224:20, 227:18,
335:9, 341:6,
348:19, 375:24,
384:17, 384:24,
386:4, 407:16
**develop**
62:10, 148:10
**developed**
141:10, 181:23,
283:6, 344:22
**devoid**
137:1
**devon**
3:20
**diaz**
321:12
**dickens**
110:17, 135:4,
226:21, 227:16,
228:4
**dickinson**
339:10, 340:16,
341:6, 348:18,
353:3, 353:23
**didn't**
30:8, 42:20,
45:12, 76:17,
86:4, 96:4,
96:12, 96:18,
97:3, 97:11,
102:15, 110:6,
116:3, 117:16,
136:15, 139:14,
139:20, 145:16,
147:6, 162:22,
165:14, 218:9,
232:2, 234:14,
306:13, 330:1,
343:9, 347:18,
352:16, 355:5,
362:1, 362:11,
367:4, 372:8,
372:16, 372:22
**different**
54:2, 101:3,

101:4, 103:8,
104:3, 110:8,
114:23, 228:24,
298:24, 299:8,
311:4, 350:10,
350:11, 402:19
**dillon**
4:19, 7:24,
12:22, 13:16,
14:1, 14:11,
14:16, 22:3,
22:13, 51:14,
64:16, 65:1,
65:9, 65:18,
66:6, 67:8,
68:9, 69:9,
70:21, 73:13,
73:24, 74:19,
75:5, 77:7,
78:3, 78:16,
79:18, 81:15,
83:2, 83:12,
90:23, 94:3,
94:17, 95:8,
97:6, 97:18,
98:5, 99:8,
99:17, 100:14,
101:13, 104:13,
105:19, 106:3,
106:14, 122:17,
123:12, 126:14,
127:6, 129:3,
141:11, 151:13,
151:20, 175:10,
175:21, 176:8,
189:2, 190:7,
191:7, 191:17,
192:10, 199:16,
201:13, 202:22,
208:10, 208:20,
211:11, 218:12,
224:20, 225:14,
230:1, 240:4,
250:17, 251:5,
251:11, 252:9,
252:18, 253:3
**directed**
113:2, 243:21,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

121

**directly**
95:8, 110:22,
230:4
**disciples**
408:7, 408:10
**disciplined**
259:7, 260:4,
260:9
**discoverable**
404:1
**discovered**
35:9
**discovery**
269:11
**discredit**
67:15, 67:16
**discuss**
32:5, 44:19,
206:18
**discussed**
18:16, 48:12,
103:6, 103:17,
138:23, 175:10,
175:22, 176:8,
206:22, 230:24,
388:9
**discussing**
171:3
**discussion**
404:5
**disdain**
408:24
**dismissed**
154:22
**disregarded**
352:9, 356:16
**distance**
190:10
**district**
1:1, 1:2
**document**
11:15, 112:17,
113:2, 113:3,
227:21, 350:9,
351:7, 351:9
**documentation**
301:23

342:16, 345:17

**documents**
58:18, 112:4,
310:17, 310:19
**does**
192:3, 299:16,
330:8, 338:5,
370:12
**doesn't**
195:15, 236:6,
275:19, 338:3,
338:15
**doing**
48:21, 86:2,
131:9, 213:21,
254:11
**don't**
55:21, 56:6,
82:12, 116:24,
125:24, 131:18,
131:22, 174:21,
196:10, 196:13,
214:2, 214:11,
235:13, 235:14,
235:16, 235:21,
235:23, 235:24,
236:3, 260:24,
270:19, 272:24,
273:2, 274:1,
274:2, 274:3,
281:21, 282:15,
283:19, 299:6,
299:16, 306:5,
306:14, 338:9,
372:9, 402:12,
403:15
**done**
54:14, 64:3,
95:12, 124:7,
125:1, 270:16,
377:2
**door**
202:7
**dope**
121:5, 121:19,
123:8, 393:15
**double**
250:4
**double-sided**
196:20

**doubted**
177:3
**down**
97:6, 206:16,
227:8, 227:15,
227:16, 228:3,
228:4, 284:23
**dozen**
259:19
**dozens**
254:18
**drafted**
121:13, 251:11
**drafting**
398:6
**dragon**
407:18, 408:14,
409:6, 410:10
**dragons**
408:1, 408:2,
408:5, 408:11,
408:22, 409:1
**drake**
393:14, 393:16
**draw**
113:10, 246:15,
330:22
**drive**
4:14, 109:23,
135:2, 227:8,
237:2
**driver**
75:21, 75:23,
121:7, 122:1,
391:5, 406:13
**driving**
89:16, 227:16,
228:3, 237:6,
288:4, 288:9
**drove**
75:14, 88:12,
90:4, 110:15,
136:16, 159:11,
222:4, 223:23,
226:21, 227:15,
228:2, 233:11,
237:8, 393:16
**drug**
92:10, 92:19,

158:23, 159:5,
332:13
**drugs**
99:1, 154:1,
332:2, 332:10,
332:19
**ducked**
315:19
**due**
12:11, 12:19
**duly**
8:15, 418:4,
419:14
**during**
11:11, 25:17,
26:15, 27:22,
46:10, 58:21,
77:24, 79:24,
80:5, 128:1,
143:12, 144:4,
145:13, 157:13,
166:4, 181:2,
191:5, 210:22,
247:18, 259:19,
278:6, 279:23,
283:4, 284:9,
285:5, 285:11,
286:13, 286:23,
291:7, 291:13,
304:15, 304:20,
305:3, 313:19,
319:12, 353:12,
358:8, 369:12

**E**

**e-f-r-a-i-n**
307:5
**e-l-l-i-s-o-n**
320:13
**each**
130:8, 246:19
**eager**
401:19
**eagles**
311:19, 312:3,
312:8
**earlier**
52:24, 102:6,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    122

283:24, 324:3,
338:10, 344:6
**early**
24:2, 86:17,
226:9, 386:5,
388:4, 405:6,
405:13, 406:19,
412:21, 413:9
**east**
3:20
**easy**
40:20
**edward**
18:7
**edwin**
299:21, 299:22
**effect**
40:21, 80:15,
209:12
**effort**
171:18, 283:16,
328:11
**efforts**
61:11, 352:21,
353:5
**efrain**
53:17, 53:24,
307:4, 308:5,
308:9, 308:14,
385:11, 385:21
**eight**
133:6, 133:24,
169:2
**eileen**
273:21
**either**
20:7, 80:4,
95:8, 143:10,
148:17, 153:12,
159:23, 174:10,
194:3, 194:17,
195:16, 300:12,
301:3, 310:20,
332:1, 332:10,
370:13
**eligible**
249:3
**elizabeth**
3:11, 7:20,

282:4
**ellison**
320:13
**else**
54:22, 207:22
**employed**
38:23
**employment**
259:20, 263:4
**end**
112:17, 204:18,
330:2, 336:15,
350:18
**ended**
254:11
**engaged**
260:2
**enough**
362:10, 402:21
**ensure**
57:12, 60:12,
98:18, 99:2,
99:20, 150:4
**ensured**
15:16
**entered**
66:3
**entice**
153:12
**entire**
125:8, 128:22,
238:19
**entirely**
240:13
**entirety**
162:19, 173:15,
188:3, 237:21,
395:1
**entitled**
250:20, 251:14,
251:23, 252:7
**entry**
58:7, 113:21,
114:2
**environment**
259:8
**episode**
63:18, 129:23,

130:3, 130:16
**epplen**
339:14, 340:14,
341:6, 382:15,
384:17, 416:2
**ernest**
1:16, 2:1, 7:2,
8:13, 9:4,
161:24, 292:15,
418:3, 418:17,
419:8, 419:13
**ernie**
209:8
**escobar**
33:6, 325:12,
326:8, 326:15
**essentially**
73:13, 75:20,
252:18
**establishing**
310:17
**esteemed**
213:10
**et**
1:7, 1:13, 7:4,
7:5
**even**
32:24, 34:23,
69:18, 71:5,
75:21, 100:22,
103:15, 117:13,
146:2, 163:10,
182:21, 232:16,
235:21, 245:15,
300:13, 301:4,
360:4, 380:9
**evening**
388:3, 388:4
**evenly**
154:5
**event**
362:9
**events**
224:2
**eventually**
46:20, 46:23,
83:8, 158:4,
227:15, 228:3,

367:5, 396:17
**ever**
246:11, 292:9,
316:10, 399:11
**every**
11:10, 11:15,
27:13, 80:18,
126:2, 214:18,
306:6
**everybody**
82:12, 403:10
**everything**
11:5, 27:4,
27:5, 95:11,
301:21, 328:4,
367:18
**evidence**
19:7, 19:14,
52:15, 61:23,
63:2, 64:7,
108:4, 108:5,
108:18, 108:20,
109:2, 109:3,
109:12, 137:14,
139:12, 140:23,
141:1, 141:9,
148:11, 181:23,
182:13, 182:18,
183:2, 193:4,
193:5, 202:20,
212:4, 229:8,
232:4, 234:5,
234:14, 237:1,
256:1, 256:11,
256:21, 257:9,
257:20, 276:10,
283:6, 291:2,
291:9, 317:8,
319:16, 329:3,
329:11, 344:22,
346:8, 403:21,
403:22, 404:1,
420:7
**exactly**
31:2, 152:8,
229:6, 237:4,
379:17
**examination**
6:3, 8:17,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                          123

204:19, 282:7,
330:12
**examined**
8:15, 419:16
**example**
62:5
**excessive**
259:15
**exchange**
48:4, 332:11
**exculpatory**
256:20, 257:20,
291:9, 329:11
**execute**
61:19, 137:19
**executed**
246:10
**exercise**
11:3
**exhausted**
403:2
**exhibit**
6:8, 56:17,
59:7, 112:4,
112:10, 117:9,
126:21, 127:23,
128:6, 161:12,
164:20, 172:15,
183:23, 195:21,
196:19, 206:1,
337:17, 370:9
**exhibits**
58:19
**existed**
140:24, 292:9
**experience**
156:21
**explain**
348:5
**explained**
224:1
**explanation**
48:14, 49:7,
196:11, 272:5
**exploring**
403:24
**expose**
304:15, 304:21

**express**
99:9, 99:18
**expression**
198:23
**expressly**
41:24, 344:14
**extended**
82:13
**extent**
32:8, 97:10,
113:3, 113:4,
261:13, 264:16,
275:17, 279:2,
279:5, 282:16,
282:18, 406:23
**extra**
252:18
**extract**
145:7, 388:22
**eyes**
367:18
**eyewitness**
75:6, 151:23,
230:18, 240:19,
255:6, 259:16,
284:4, 286:8,
289:9, 294:14
**eyewitnesses**
255:6, 259:16

**F**

**f-l-o-r-e-s**
321:4
**f-r-i-a-s**
322:13
**fabricate**
72:10, 95:6,
139:11, 281:10,
283:13, 369:16
**fabricated**
61:23, 64:7,
70:5, 81:16,
83:13, 85:19,
85:20, 88:1,
88:24, 90:11,
93:1, 104:23,
109:10, 132:22,
141:2, 141:9,

167:18, 172:2,
172:17, 173:19,
186:3, 189:14,
190:11, 191:7,
199:16, 201:11,
202:23, 205:6,
256:1, 256:10,
291:1, 292:7,
313:20, 316:18,
329:2, 348:3,
349:10, 378:7,
382:24, 398:7,
415:23
**fabricating**
19:13, 95:22,
157:23
**face**
143:11, 307:6,
327:10, 365:10,
365:12, 367:16,
374:11, 374:12,
374:21, 375:1,
375:3, 375:4,
406:15
**facility**
336:8
**facts**
21:3, 61:20,
62:10, 72:18,
73:24, 74:10,
74:19, 85:17,
87:24, 88:24,
111:20, 118:14,
192:17, 201:10,
204:20, 205:3,
319:15
**factual**
73:14, 399:10,
410:15, 411:1,
411:8
**factually**
20:20
**failed**
29:12, 137:10
**fails**
420:2
**failure**
420:7

**fair**
162:23, 299:17,
401:13, 402:21
**fairly**
234:21
**falsified**
310:10
**falsifying**
291:2
**familiar**
380:11
**familiarity**
37:14
**far**
29:20, 213:22
**fast**
159:5
**favor**
154:19
**fear**
264:3, 264:13,
264:22, 265:5,
265:11, 265:19,
266:2, 266:8,
266:14, 266:20,
267:2, 267:7,
267:13, 267:19,
397:3
**fearful**
347:16
**february**
17:17, 23:18,
24:3, 25:17,
26:17, 31:4,
31:23, 60:13,
61:10, 83:22,
86:18, 91:1,
121:4, 121:20,
130:4, 130:18,
131:3, 132:5,
132:7, 133:10,
136:2, 141:18,
147:7, 147:15,
147:23, 148:3,
149:3, 149:19,
166:6, 168:21,
180:9, 198:6,
199:2, 199:8,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

124

199:20, 201:6,
203:8, 203:15,
203:24, 223:17,
229:16, 230:7,
246:21
**fed**
72:2, 72:8,
73:15, 83:3,
86:15, 90:12,
93:1, 96:3,
96:10, 102:23,
122:7, 122:15,
126:12, 127:4,
127:16, 141:2,
160:21, 161:4,
162:8, 169:18,
172:2, 186:4,
199:16, 201:14,
202:23, 238:19
**federal**
264:23, 267:20,
403:21
**fee**
360:24
**feed**
21:9, 89:9
**feeding**
72:18, 73:24,
74:10, 74:19,
80:13, 81:3,
94:13
**feel**
113:2, 113:4
**fellow**
15:3, 17:7,
21:1, 23:20,
66:23, 69:7,
74:9, 91:14,
92:24, 127:16,
280:2, 382:12,
384:23, 385:10,
385:20, 387:13
**felony**
36:10, 93:4
**felt**
250:4
**fence**
237:9, 237:10

**fender**
111:20, 226:24
**few**
106:24, 254:9,
324:4
**field**
116:13
**fight**
344:9, 402:22
**file**
11:16, 112:12,
193:23, 194:1,
194:8, 194:15,
194:16, 195:1,
195:2, 195:3,
217:5
**filed**
317:5
**files**
256:20
**filler**
222:7
**finally**
81:11
**financially**
92:12, 92:20
**find**
120:5, 352:17
**fine**
10:17, 56:2,
56:9, 82:14,
108:9, 113:16,
196:11, 323:23,
372:20, 402:6
**finger**
139:7, 144:20
**finished**
236:11
**fire**
160:2
**firearms**
108:20, 109:11,
137:14
**fired**
315:19
**firm**
3:19, 4:5,
7:19, 8:10,

273:4, 273:13,
273:18
**first**
8:14, 71:6,
75:5, 164:12,
171:4, 237:14,
272:20, 282:9,
283:4, 298:2,
305:20, 306:2,
306:11, 324:11,
330:14, 373:18,
397:16, 418:3,
419:14
**firsthand**
69:18, 332:9
**five**
101:4, 103:8,
202:10, 350:7,
394:14
**flashlight**
156:6, 156:15,
156:22, 389:10
**fleming**
327:17, 327:24
**floor**
2:6, 3:13,
207:16
**flores**
321:4
**follow**
353:5, 354:2
**followed**
135:13
**following**
124:5, 200:8,
247:19
**follows**
8:16
**fop**
274:22
**force**
80:19, 80:21,
81:1, 81:2,
145:7, 259:15,
401:2
**forced**
149:2
**foregoing**
418:9, 419:17

**forensic**
108:5, 229:8
**forgot**
11:7, 42:6
**forgotten**
253:5
**formal**
190:8
**former**
213:8
**forms**
173:7
**forth**
126:1, 236:19
**fortunate**
362:10
**forward**
301:20
**found**
36:22, 87:18,
108:4, 137:14
**four**
36:10, 56:23,
58:8, 67:14,
103:16, 104:10,
196:19, 250:8,
401:17
**four-door**
226:23
**fourth**
13:7, 13:14
**frame**
14:2, 14:11,
14:17, 19:12,
22:4, 22:14,
30:4, 30:19,
34:7, 34:20,
35:2, 39:23,
40:3, 41:17,
47:7, 50:20,
51:15, 51:23,
52:18, 52:22,
53:9, 53:17,
54:11, 54:24,
55:11, 60:23,
61:11, 61:20,
62:11, 74:20,
76:6, 90:7,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    125

92:18, 98:19,
99:3, 99:22,
132:19, 137:19,
139:12, 148:11,
153:22, 155:9,
172:9, 204:11,
282:9, 290:15,
303:14, 305:10,
312:20, 313:15,
317:12, 318:20,
320:12, 320:20,
321:3, 321:11,
322:5, 322:12,
322:20, 323:4,
323:12, 325:7,
329:20, 335:4,
335:9, 335:24,
341:7, 353:11,
356:8, 356:17,
358:15, 359:5,
359:10, 365:19,
366:24, 380:3,
382:15, 384:18,
384:24, 385:10,
386:13, 401:17,
401:19, 408:5,
408:22, 409:7,
410:11
**frame-up**
47:18, 95:1,
120:6, 387:7
**framed**
16:10, 16:16,
16:22, 30:9,
254:15, 255:2,
255:13, 255:22,
256:7, 256:16,
257:5, 257:16,
258:5, 258:16,
259:3, 259:17,
281:5, 290:4,
310:24, 339:18,
348:24, 353:19,
359:17, 363:3,
381:1, 381:12,
381:18, 381:20,
404:12
**framing**
39:11, 41:9,

46:23, 48:4,
87:23, 260:10,
335:19, 336:15,
348:20, 352:10,
353:7, 359:15,
403:9, 407:17
**francisco**
6:20, 19:17,
19:24, 22:17,
32:6, 34:9,
35:11, 37:3,
39:10, 40:10,
40:13, 40:24,
41:7, 41:14,
43:3, 46:10,
46:22, 47:15,
48:1, 49:23,
51:4, 53:18,
64:14, 66:15,
66:21, 68:5,
68:15, 68:22,
70:2, 70:12,
71:13, 83:3,
188:19, 189:3,
191:8, 191:20,
192:6, 215:9,
215:16, 215:19,
216:24, 218:1,
218:13, 240:13,
246:9, 246:17,
247:5, 248:11,
249:2, 281:11,
296:15, 296:21,
385:12
**franco**
206:24
**frank**
33:6, 326:15
**frankie**
50:17, 51:17,
71:4, 73:15,
76:11, 76:16,
76:24, 77:16,
78:1, 79:4,
79:9, 79:15,
80:1, 80:20,
81:1, 81:3,
81:22, 83:8,

84:10, 94:24,
95:20, 96:3,
99:20, 100:6,
100:15, 101:23,
102:14, 102:24,
103:7, 103:18,
104:24, 119:2,
119:8, 120:2,
120:5, 120:16,
120:17, 122:7,
124:21, 125:11,
126:12, 127:4,
127:13, 128:1,
128:8, 128:13,
128:23, 129:4,
129:10, 132:21,
139:15, 202:23,
206:24, 209:17,
210:20, 219:15,
221:2, 251:2,
325:12, 326:8,
390:18
**fraternal**
274:16, 275:2
**fraud**
267:2, 267:8
**fred**
279:19
**freddie**
321:21
**free**
7:13, 113:2
**frequently**
25:19, 38:15,
38:23, 100:24,
114:11, 117:19,
156:12
**frias**
322:13
**friday**
1:18, 121:3
**friend**
342:1, 342:8,
343:18, 343:19,
345:14, 346:4,
361:5, 377:1,
379:21, 387:7,
411:22

**friendlier**
145:2
**friends**
334:14, 347:17,
362:1, 412:6,
412:21, 413:9
**fro**
393:2, 393:12,
393:17, 394:2,
394:5, 396:1
**front**
161:18, 202:2,
209:15, 212:21,
226:23, 232:16,
376:8, 402:22,
405:17, 406:14
**fucked**
86:24, 124:9,
124:11, 125:2
**full**
9:3, 120:23,
212:3
**fully**
230:3, 420:6
**further**
86:21, 87:10,
95:19, 135:24,
186:8, 198:11,
220:16, 241:12,
282:20, 330:12,
379:2, 416:19,
419:17
**fusco**
5:5, 273:18,
273:19, 273:22
**future**
148:5, 264:4

---
**G**
---

**g-a-y-a**
323:13
**g-o-n-z-a-l-e-z**
322:21
**g-o-o-s-e-n-s**
382:7
**gain**
39:3, 43:3,
47:18, 144:5

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

126

gallivan
197:17
game
290:10
gang
39:16, 39:21,
40:3, 40:5,
64:15, 64:24,
65:10, 68:6,
68:16, 74:1,
80:1, 82:23,
98:4, 100:23,
101:1, 119:2,
120:16, 121:1,
189:4, 207:15,
209:17, 210:1,
220:4, 220:12,
221:15, 304:16,
304:21, 307:18,
311:19, 312:5,
312:9, 331:24,
332:11, 332:13,
332:17, 340:22,
348:21, 358:14,
369:11, 371:16,
407:18, 408:2,
408:3, 408:6,
408:10
gangs
115:8
gangsters
121:1, 121:11
garcia
339:20, 340:11,
341:16, 341:22,
342:4, 342:13,
343:7, 343:14,
343:24, 344:5,
344:13, 344:21,
344:23, 345:7,
345:11, 345:23,
346:4, 346:24,
347:8, 347:13,
347:18, 347:22,
348:4, 348:6,
348:13, 349:3,
354:16, 355:24
garcia's
343:19

garz
305:9, 313:14,
314:14, 314:21,
316:6
gas
28:15, 28:20,
29:5, 63:19,
84:5, 84:13,
84:19, 85:1,
85:10, 106:6,
106:17, 107:9,
107:17, 109:6,
109:20, 110:2,
110:10, 111:13,
111:22, 129:23,
130:2, 130:3,
130:6, 130:16,
132:4, 133:9,
134:6, 134:18,
134:19, 135:5,
135:13, 135:20,
137:4, 147:13,
175:12, 175:24,
176:10, 176:20,
177:22, 178:10,
180:7, 181:5,
223:6, 223:16,
223:23, 224:3,
224:23, 226:4,
226:10, 227:9,
229:2, 229:16,
230:6, 242:11,
242:18, 243:14,
243:22
gate
159:24, 202:2
gather
52:3, 59:24,
60:10, 60:21
gave
23:8, 70:4,
70:10, 78:19,
187:24, 189:23,
197:3, 197:9,
200:2, 204:3,
205:13, 216:24,
218:1, 218:3,
228:8, 239:5,

252:18, 253:3,
297:5, 332:19,
377:10, 410:16
gaya
323:13
gembowski
406:11
general
31:7, 65:21,
303:24, 324:3,
364:13
generally
212:20, 277:7
genitals
389:9
george
54:11, 54:21,
217:7, 335:10,
335:14, 335:19,
335:24, 359:10,
359:15, 359:23,
360:8, 360:18,
361:12, 404:14,
405:5, 411:3,
415:19, 416:5
geraldo
100:17, 101:24,
102:15, 290:5,
290:16, 290:20,
291:17, 292:1,
292:18, 294:6,
294:15, 294:22,
296:9, 296:16,
296:24, 297:4
gernito
356:9, 358:24,
360:10, 360:20
gernito's
356:18, 358:3,
359:5, 359:11
get
34:24, 41:15,
42:21, 44:19,
49:14, 51:3,
56:4, 80:12,
92:23, 93:19,
94:4, 98:16,
99:1, 104:3,

105:7, 106:16,
107:8, 144:14,
145:22, 146:2,
151:14, 151:21,
153:4, 154:5,
154:10, 154:21,
171:18, 174:18,
182:6, 183:15,
183:23, 202:6,
212:21, 232:4,
232:15, 234:4,
248:18, 249:16,
253:6, 300:1,
310:2, 314:21,
316:6, 317:8,
327:24, 328:11,
342:7, 343:9,
359:17, 375:2,
378:8, 379:11,
388:11, 403:10,
404:7, 404:8,
409:16, 412:18
getaway
75:16, 75:20,
75:23
getting
113:1, 158:5,
175:10, 175:22,
176:8, 250:18
girl
364:18, 366:3,
368:6, 412:4
girlfriend
395:13, 395:22
give
61:23, 64:7,
83:9, 85:19,
89:1, 96:17,
132:21, 158:14,
161:14, 186:10,
196:5, 218:9,
226:12, 263:12,
264:5, 270:12,
270:15, 271:4,
275:8, 275:12,
276:6, 276:14,
276:22, 277:6,
277:21, 278:5,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

127

278:11, 278:16,
281:17, 350:1,
406:1
**giving**
70:2, 96:11,
97:2, 119:17,
186:19, 200:19,
206:15, 230:23,
233:22, 237:16,
264:7
**go**
10:5, 34:24,
53:19, 54:15,
81:12, 92:23,
93:13, 97:13,
99:19, 112:18,
113:6, 113:16,
131:18, 146:9,
160:1, 162:9,
175:15, 183:8,
192:23, 213:24,
221:18, 227:22,
230:10, 234:23,
235:5, 235:8,
236:16, 242:4,
253:23, 282:5,
297:17, 298:2,
301:17, 302:3,
319:17, 323:22,
338:2, 352:16,
356:21, 360:4,
365:17, 367:10,
385:15
**goal**
104:2, 367:5,
367:6
**god**
11:7
**goes**
113:12
**going**
8:22, 32:13,
37:9, 46:3,
48:12, 50:20,
55:18, 56:16,
56:20, 57:10,
58:1, 66:21,
67:15, 74:20,

93:18, 102:4,
112:2, 148:4,
158:14, 161:11,
161:13, 164:18,
174:12, 186:2,
186:9, 195:24,
196:3, 197:24,
201:24, 206:4,
207:8, 213:11,
214:16, 227:8,
231:2, 231:18,
233:19, 236:13,
236:23, 237:2,
237:3, 246:5,
248:18, 249:15,
249:23, 253:7,
271:24, 282:5,
282:17, 297:11,
323:23, 337:15,
337:19, 338:14,
349:23, 349:24,
350:15, 358:15,
359:4, 359:10,
363:21, 366:24,
384:14, 384:18,
388:10, 401:23,
403:14, 404:7,
404:8, 413:16
**golden**
272:23
**gone**
62:20, 63:1,
63:12, 124:7,
125:1, 130:5,
130:7
**gonzalez**
317:15, 322:21,
363:4, 368:17,
368:21, 374:2,
375:18, 376:1,
376:6, 376:18,
376:24, 377:20,
378:6, 378:14,
379:12, 379:18,
380:3, 380:9,
381:13, 382:2,
382:16, 383:2,
390:10, 391:14,

392:5, 392:14,
392:22, 393:12,
393:17, 394:1,
394:5, 394:15,
395:4, 395:8,
395:14, 395:24,
401:3, 401:11
**gonzalez's**
377:11
**good**
7:15, 8:19,
38:15, 45:11,
56:13, 62:18,
84:14, 131:21,
142:10, 143:19,
174:20, 196:23,
243:15, 252:19,
310:2, 343:9,
346:4, 361:5,
362:1, 374:11,
375:1, 375:3,
378:8
**goosens**
381:21, 382:5,
382:6, 382:17,
395:4, 401:12
**gorman**
4:20, 7:23,
7:24, 416:20
**got**
88:11, 123:6,
130:7, 144:21,
159:17, 159:23,
218:22, 219:13,
221:23, 227:4,
227:6, 281:18,
286:3, 299:23,
324:1, 324:8,
329:24, 350:5,
358:3, 360:1,
363:22, 374:11,
375:1, 393:13,
394:4
**gotten**
221:1, 226:3,
243:15
**gpr**
132:13

**gprs**
149:22, 150:5
**grand**
37:11, 138:17,
141:18, 141:21,
150:16, 155:23,
156:6, 185:7,
185:13, 185:22,
186:10, 186:21,
187:9, 187:24,
188:16, 196:15,
196:17, 197:3,
197:4, 197:11,
200:3, 200:23,
202:13, 204:4,
205:18, 220:1,
233:2, 341:17,
366:19, 385:22,
387:22, 388:8,
409:13, 413:19
**grande**
404:16, 405:13,
406:10, 406:24,
411:12, 411:19,
412:19, 413:5,
413:16, 413:24,
414:11, 414:20,
415:8, 416:3,
416:15
**gray**
33:16
**great**
213:21, 320:9
**greenfield**
279:19, 280:1,
280:12
**grille**
273:1
**grocery**
349:17
**ground**
394:15
**group**
3:5, 7:19,
405:16
**guess**
120:23, 300:3,
311:5, 324:7,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                  128

357:18, 371:8
**guevara's**
85:8, 117:14,
117:20, 145:15,
184:21, 184:24,
367:6, 415:3,
415:6
**guilty**
11:2, 12:4,
36:23, 92:3,
254:5, 257:11,
310:13, 336:23
**gun**
87:6, 87:11,
87:12, 87:16,
87:17, 88:11,
160:3, 201:5,
394:2, 394:16
**guns**
332:2, 332:10,
332:19
**guy**
87:1, 124:10,
125:3, 211:20,
214:24, 280:14,
287:8, 345:23
**guys**
121:10, 393:13

**H**

**h-a-r-d-i-n-g**
83:21
**h-e-l-e-a-n**
314:7
**h-e-r-n-a-n-d-e-z**
316:24
**hair**
406:13, 406:18
**half**
174:23
**halvorsen**
1:16, 2:1, 6:2,
6:15, 6:17,
6:21, 6:23, 7:2,
8:8, 8:11, 8:13,
8:19, 9:4,
10:22, 32:4,
32:17, 35:9,

43:10, 58:5,
64:13, 70:19,
82:21, 89:13,
112:9, 112:23,
113:9, 113:22,
132:2, 150:13,
161:24, 175:7,
184:5, 195:17,
195:18, 195:21,
195:24, 196:1,
196:4, 197:2,
198:16, 202:17,
204:24, 205:24,
206:1, 206:4,
206:5, 206:10,
219:21, 246:7,
248:14, 254:3,
254:15, 260:22,
263:24, 264:12,
292:15, 330:14,
337:16, 337:17,
338:24, 339:1,
339:4, 340:15,
346:18, 370:9,
370:18, 370:19,
380:24, 403:3,
404:2, 417:2,
418:3, 418:17,
419:8, 419:13
**hamlin**
121:5, 121:19
**hand**
55:18, 56:16,
58:1, 195:24,
196:3, 202:5,
206:4, 323:20
**handcuffs**
325:15, 325:21,
326:3
**handgun**
200:11, 200:15,
201:4
**handing**
58:5, 112:9,
246:7, 338:24,
370:18
**hands**
155:17, 318:5

**hands-on**
116:13
**handwriting**
184:24
**handwritten**
161:22, 162:5,
162:14, 185:15,
186:3, 186:20,
188:17, 188:20,
189:16, 191:19,
395:23
**hanging**
121:4, 121:18,
405:17
**happened**
52:23, 233:17,
235:7, 237:5,
336:2, 372:9
**harassed**
328:10
**harassing**
35:5, 53:11,
213:17
**harassment**
354:11
**hard**
40:19, 403:9
**harding**
83:20, 84:3
**has**
55:18, 56:18,
57:22, 58:1,
58:2, 112:3,
112:10, 114:4,
116:20, 117:8,
117:13, 128:23,
261:24, 262:8,
262:16, 263:17,
338:7, 338:8,
339:1, 350:9,
370:15
**hasberg**
5:10, 7:11
**hasn't**
338:17
**hat**
406:16
**have**
23:19, 25:10,

56:20, 57:13,
88:3, 95:10,
97:12, 99:19,
102:4, 103:7,
104:14, 112:2,
124:23, 125:24,
131:10, 131:14,
131:22, 146:20,
152:1, 161:11,
161:13, 162:15,
164:18, 183:22,
187:10, 189:16,
193:14, 196:11,
197:24, 207:8,
225:19, 226:2,
228:24, 233:5,
233:19, 236:23,
237:3, 242:10,
245:21, 246:5,
246:11, 246:24,
249:23, 250:8,
253:7, 261:6,
262:19, 264:3,
265:12, 275:5,
278:21, 283:18,
302:19, 305:23,
306:5, 306:14,
306:15, 324:21,
330:3, 331:16,
332:16, 338:3,
338:5, 338:13,
338:16, 347:6,
349:23, 350:6,
352:23, 354:8,
354:18, 355:15,
362:11, 371:13,
372:7, 373:3,
396:11, 399:17,
400:6, 402:22,
403:1, 404:2,
404:4, 416:19,
416:21, 416:22,
418:11, 418:12
**having**
8:14, 132:12,
164:19, 173:13,
184:5, 188:15,
271:5, 283:14,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    129

302:8, 302:15,
318:3, 324:16,
347:15, 355:16,
365:15, 412:5,
414:2
**he's**
159:5, 214:17,
214:18, 236:23,
305:17, 337:23,
351:5
**head**
43:12, 44:14,
78:5, 80:4,
80:5, 80:14,
156:5, 374:10,
374:20, 389:9
**headed**
32:14
**hear**
27:13, 95:11,
213:14, 235:11,
284:22, 394:7
**heard**
44:7, 44:8,
46:15, 104:14,
143:11, 147:11,
211:20, 212:22,
213:12, 214:23,
240:14, 394:13
**hearing**
248:16, 251:3,
251:22
**hearsay**
212:15
**hector**
363:5, 363:16,
364:19, 367:1,
377:1, 377:18,
379:21, 380:3
**held**
2:1, 7:6, 143:5
**helean**
314:7, 314:15,
316:16
**help**
38:4, 38:9,
39:11, 41:8,
47:7, 51:17,

94:2, 144:14,
157:20, 304:10,
312:20
**helped**
158:13, 281:10
**helpful**
195:5
**henry**
312:20
**her**
26:19, 27:22,
28:6, 28:21,
85:2, 105:12,
105:14, 105:20,
106:4, 106:16,
106:18, 107:2,
107:8, 107:10,
108:21, 109:4,
109:18, 110:23,
110:24, 130:6,
131:4, 131:5,
134:19, 135:13,
135:19, 136:2,
178:10, 178:19,
178:20, 179:3,
179:4, 181:3,
181:17, 181:22,
182:1, 222:1,
223:3, 223:5,
223:14, 223:15,
224:3, 226:10,
227:10, 228:5,
228:24, 229:6,
229:13, 229:14,
229:15, 230:5,
243:21, 319:7,
319:12, 319:24,
323:24, 365:18,
369:4, 371:16,
374:1, 377:22,
396:1, 396:8,
396:10, 396:11,
397:4, 411:13,
411:22, 412:6,
412:21
**herbert**
4:5, 8:10,
272:17, 273:14,

274:21, 274:24
**here**
7:21, 8:23,
131:9, 131:17,
196:12, 214:14,
235:7, 235:10,
235:18, 263:11,
264:14, 269:1,
270:15, 271:9,
272:6, 273:23,
298:22, 311:5,
347:18, 350:12,
402:20, 404:2,
404:3
**hereby**
419:6
**herein**
8:14
**hereinabove**
419:21
**hermena**
351:2
**hermeno**
349:15
**hermino**
349:15
**hernandez**
316:23, 317:4,
317:13, 317:20,
318:2, 356:9,
356:15, 393:1
**heroin**
37:4, 37:10,
37:16, 89:10,
95:21
**hey**
209:7
**hide**
392:14
**high**
40:15
**highly**
140:5, 366:8,
378:22, 403:12
**himself**
75:20, 79:11,
139:2, 148:18,
149:24, 346:5,

390:9, 391:5,
399:12
**hinged**
240:12
**hired**
360:9
**hispanic**
373:7, 373:14,
373:20
**hispanics**
406:12
**histories**
55:7, 60:1
**history**
6:10, 6:12,
52:3, 55:10,
57:11, 58:8,
58:11, 58:20,
59:4, 59:16,
59:17, 60:10,
60:21
**hit**
44:13, 156:14
**hits**
156:21, 195:13
**hitting**
45:21, 46:1,
202:9
**hobbs**
266:15
**hold**
53:22, 102:3,
253:19, 297:17,
338:9, 357:10,
364:9
**hole**
108:12, 108:19,
109:2, 137:13,
226:24
**homan**
392:16
**home**
24:8, 107:2,
174:2, 174:13,
222:5, 237:10,
392:15, 392:23,
393:4
**homicide**
68:19, 70:23,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018          130

71:6, 151:7,
291:3, 291:8,
291:14, 307:12,
310:12, 313:19,
315:18, 316:1,
316:7, 316:12,
329:4, 329:7,
329:12
**honestly**
196:10
**honked**
28:22
**hooded**
326:24, 327:2,
327:8
**hooked**
219:2
**hope**
120:4
**hoped**
40:2, 148:16,
280:7
**hopes**
39:21, 139:1,
139:6
**horn**
85:11
**hospital**
375:19, 411:20
**hot**
292:23
**hour**
82:8, 131:4,
143:6, 143:13,
144:4, 145:14,
174:22, 393:5
**hours**
24:3, 27:5,
27:14, 27:22,
86:18, 141:22,
158:12, 336:9,
354:1, 365:7,
386:5, 388:17,
388:21, 389:5,
389:24, 396:16,
405:6, 412:22,
413:9
**house**
86:12, 174:1,

201:24, 237:9,
237:10, 396:1,
409:23
**housed**
65:21, 98:14
**how**
9:14, 44:19,
67:15, 94:24,
127:3, 152:8,
195:11, 206:22,
232:13, 270:19,
278:18, 297:24,
329:14, 336:21,
353:11, 358:7,
361:19
**hughes**
33:15
**hugo**
294:14, 294:20,
295:2, 295:8,
295:13, 295:18,
295:24, 296:7
**humboldt**
30:5, 115:8,
332:17, 358:8,
359:24, 365:19,
383:17
**humbolt**
358:16, 363:17
**husband**
26:19, 28:6,
28:21, 105:14,
130:6, 227:10
**husband's**
85:2, 106:18,
107:10, 108:21,
110:24, 131:5,
136:2, 178:11,
178:19, 179:3,
182:1, 223:5,
223:16, 224:3,
226:11
**hypothetical**
146:24, 213:3

---
**I**
---
**i'll**
97:12, 112:22,

117:3, 161:14,
194:9, 207:9,
235:17, 235:19,
282:22, 298:1,
298:13, 302:2,
305:15, 323:19,
324:7, 324:11,
330:23, 338:13,
349:24, 356:19,
363:8, 370:14,
373:3
**i've**
196:3, 301:21,
324:1, 329:24,
350:5, 381:6,
404:20
**i-v-a-n**
337:10
**id**
6:8
**idea**
379:19
**ideal**
103:18
**identification**
133:7, 134:17,
177:21, 195:22,
196:2, 206:2,
242:16, 242:17,
286:1, 288:19,
288:24, 291:17,
292:17, 294:21,
316:17, 337:18,
342:6, 342:18,
346:16, 349:10,
370:10, 379:3,
416:13
**identifications**
255:7, 259:17,
366:9, 415:9,
415:16, 415:24,
416:14
**identified**
119:9, 133:7,
134:20, 135:11,
147:12, 169:7,
169:9, 169:10,
180:14, 180:20,

184:6, 220:17,
239:16, 244:3,
275:10, 288:14,
304:2, 333:12,
334:4, 348:6,
369:2, 375:23,
410:17, 414:21
**identify**
11:15, 11:20,
56:11, 102:1,
107:8, 110:1,
110:9, 137:3,
175:11, 175:23,
176:9, 177:3,
178:9, 180:1,
180:6, 196:6,
196:21, 229:1,
243:13, 248:9,
263:11, 285:6,
285:16, 285:21,
286:24, 287:13,
287:18, 288:3,
292:23, 295:3,
303:2, 303:7,
315:17, 327:10,
327:18, 328:1,
340:9, 341:9,
341:17, 345:18,
347:1, 347:9,
347:23, 348:13,
352:22, 355:7,
355:23, 368:9,
370:4, 376:18,
377:22, 378:15,
379:11, 379:18,
412:10
**identifying**
136:8, 229:15,
294:6, 294:15,
296:9, 296:23,
349:3
**ig**
71:21
**iglesias**
100:17, 101:16,
101:24, 102:2,
102:15, 102:16,
103:1, 290:5,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                      131

290:16, 290:21,
291:17, 292:1,
292:19, 293:6,
293:11, 294:7,
294:15, 294:23,
295:9, 295:14,
296:10, 296:16,
296:24, 297:4,
297:13
**iglesias's**
297:12, 297:13
**illegal**
249:15
**illimunata**
364:21
**illinois**
1:2, 1:17, 2:7,
2:14, 3:14,
3:21, 4:8, 4:15,
4:23, 5:7, 7:7,
54:23, 206:7,
336:6, 419:1,
419:6, 420:1,
420:15
**illuminata**
363:7
**imagine**
270:19, 299:16
**immediately**
29:6, 130:17,
221:23, 352:8,
365:3
**impeach**
257:23
**imperial**
121:1, 121:11
**impermissibly**
177:7, 179:8,
327:8, 327:16
**implicate**
21:22, 22:18,
33:6, 35:17,
41:2, 42:16,
44:20, 72:11,
73:8, 81:5,
104:4, 106:5,
106:16, 146:3,
153:14, 154:6,

154:11, 171:18,
211:12, 264:16,
275:17, 279:6,
305:4, 314:23,
315:5, 315:11,
315:24, 316:7,
328:12, 328:16,
329:14
**implicated**
154:20, 157:24,
158:6, 188:1,
241:6, 313:21,
328:23, 329:6,
390:9, 392:4,
395:14
**implicating**
50:12, 148:18,
149:24, 151:6,
153:5, 164:14,
172:6, 186:10,
207:1, 210:11,
314:8, 314:16,
391:5, 399:12
**important**
52:24, 193:5,
224:20, 225:6,
225:12
**impression**
225:17, 226:13
**improper**
325:20, 416:13
**improperly**
33:4, 293:16,
293:22, 295:19,
296:1, 307:23,
308:4, 314:6,
314:14, 315:23
**in-person**
255:7
**inadmissible**
232:17, 234:5
**incarcerated**
247:19, 367:8
**incentives**
294:4, 296:7,
296:21
**incident**
28:20, 29:5,

63:18, 85:10,
130:4, 130:9,
132:5
**include**
172:21
**included**
123:19, 124:4,
124:15, 129:16,
130:13, 133:16,
136:7, 167:16,
168:4, 168:12,
375:11, 398:14
**including**
45:10, 72:3,
256:2, 256:11,
257:22, 259:15,
291:2, 297:5,
390:9, 398:2
**inclusive**
418:7
**incompetent**
234:5
**incomplete**
146:23, 213:2
**incorporate**
61:22, 64:6,
88:23
**incorporated**
126:22, 402:16
**incorporating**
88:1
**incriminate**
261:7, 264:1,
268:4, 268:11,
269:1, 269:17,
270:1, 270:4,
272:14, 273:10,
273:15
**inculpatory**
139:1, 388:22,
389:17, 398:17
**indeed**
15:13
**independent**
177:20, 225:18
**independently**
180:1
**indicate**
228:5, 271:3

**indicated**
165:20, 210:20,
242:9, 342:13
**indicates**
118:2
**indicating**
19:7
**indictment**
196:18, 200:4,
204:5, 204:9
**indictments**
188:8
**individual**
8:7, 52:23,
55:10, 57:2,
58:11, 61:20,
335:5, 341:23,
344:10, 363:3,
408:5
**individuals**
34:18, 52:18,
61:12, 87:23,
133:9, 134:6,
134:18, 139:13,
178:9, 178:18,
181:5, 220:18,
223:4, 223:6,
242:11, 243:14,
243:22, 254:19,
259:18, 363:6,
376:9, 385:10,
401:18, 405:23,
407:17, 410:2
**influence**
293:16, 293:22,
295:19, 296:1,
314:15
**influenced**
33:5, 307:24,
308:5, 314:7,
315:24
**informant**
291:24, 292:7,
292:9, 313:21
**information**
18:12, 20:1,
20:6, 21:9,
21:11, 27:21,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                      132

39:22, 50:3,
62:6, 63:10,
63:17, 64:5,
68:23, 70:4,
70:9, 72:2,
72:9, 72:10,
75:23, 81:4,
84:18, 87:7,
90:9, 90:10,
102:23, 119:17,
127:3, 130:16,
132:4, 132:11,
132:20, 137:2,
146:21, 160:22,
161:4, 167:6,
179:2, 192:3,
192:5, 194:14,
210:21, 211:5,
223:12, 223:13,
224:23, 225:1,
225:10, 225:16,
225:18, 226:3,
226:12, 229:13,
232:15, 236:22,
301:9, 311:17,
347:14, 354:18
**informed**
33:14, 220:24,
285:16, 285:21,
287:13, 287:18
**initially**
41:1, 75:12,
151:22, 155:8,
293:5, 293:10,
295:8, 295:13,
385:8
**initiate**
26:10
**initiating**
26:11
**innocence**
310:18, 325:8
**innocent**
11:2, 20:20,
33:1, 92:18,
254:19, 259:17,
335:15, 356:1
**innocuous**
64:4

**insane**
407:18, 407:24,
408:2, 408:5,
408:10, 408:14,
408:22, 409:1,
409:6, 410:10
**inside**
24:7, 72:4,
159:18
**insisted**
79:10
**instant**
420:6
**instead**
19:12, 37:19,
238:14, 260:14
**institution**
336:7
**instruct**
261:12, 264:17,
272:1, 275:18,
279:4, 282:17,
304:14, 304:19,
305:2, 338:14
**instructed**
35:24, 227:7,
243:20
**instruction**
270:5, 369:3
**intend**
261:18, 263:2,
265:13, 269:16,
270:20
**intended**
299:10, 373:3
**intention**
262:1, 262:9,
262:17, 263:17,
263:18
**intentionally**
16:10, 16:16,
16:22, 317:19,
318:1, 326:22
**interacted**
262:19
**interactions**
277:22
**interest**
193:14

**interested**
420:10
**intermittent**
390:1
**intermittently**
388:18, 389:8
**interrogate**
388:11
**interrogated**
141:22, 262:20,
319:7, 319:22
**interrogation**
46:10, 80:6,
142:4, 142:18,
143:5, 145:6,
149:18, 157:14,
319:13, 389:7
**interrogatories**
419:16
**interrupt**
298:19, 306:13
**interrupted**
233:21
**interview**
155:15, 166:4,
220:11, 233:4,
279:12, 350:24,
365:2, 371:15
**interviewed**
11:11, 26:16,
131:1, 131:4,
131:19, 132:6,
165:21, 220:4,
262:19, 343:7,
379:10, 407:5
**interviewing**
29:7, 38:16,
375:16
**interviews**
204:21, 205:10
**intimidation**
247:16, 248:1
**into**
18:23, 29:13,
31:22, 64:6,
66:4, 88:1,
88:11, 88:24,
89:17, 111:21,

126:23, 130:8,
132:18, 150:15,
152:8, 152:14,
157:23, 171:9,
172:6, 185:16,
205:12, 210:11,
218:14, 223:14,
225:9, 225:15,
229:15, 230:5,
252:16, 294:5,
294:14, 296:8,
296:22, 314:7,
314:15, 327:7,
342:16, 343:3,
343:8, 349:3,
349:18, 376:23,
395:13
**intoxicated**
307:14, 378:22,
379:6
**introduce**
7:12
**introduced**
282:3
**introduction**
32:6
**invent**
66:7
**investi**
101:5
**investigate**
10:1, 10:23,
11:6, 18:1,
24:12, 24:20,
29:12, 30:21,
31:3, 31:15,
31:22, 298:7,
305:22, 306:19,
328:5, 337:6,
340:1, 340:16,
364:1, 405:4
**investigated**
32:18, 192:18,
193:13
**investigating**
29:19, 116:10,
290:22, 303:20
**investigation**
11:12, 11:22,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    133

| | | J | john |

13:5, 18:13,
18:17, 18:23,
24:1, 31:9,
32:23, 165:9,
197:18, 198:4,
198:12, 199:6,
200:10, 200:14,
201:3, 201:21,
210:13, 215:20,
216:15, 226:9,
262:3, 262:11,
276:16, 276:24,
278:7, 278:23,
279:13, 280:7,
283:5, 291:4,
291:8, 291:14,
297:6, 307:13,
310:12, 311:8,
313:20, 329:4,
329:13, 340:6
**investigations**
12:9, 51:5,
210:7, 217:9,
258:9
**investigative**
11:16, 112:12,
194:15, 195:3
**involved**
16:5, 19:1,
20:8, 79:11,
140:16, 161:7,
187:17, 210:6,
210:12, 211:21,
215:1, 258:10,
283:7, 292:1,
312:4, 312:9,
331:3, 336:5,
391:4, 391:6,
399:23, 411:2,
411:9
**involvement**
52:11, 52:16,
60:4, 111:7,
126:6, 129:12,
144:13, 144:22,
168:10, 280:21,
352:23, 395:2,
400:6

**involving**
165:23, 337:20,
360:2, 360:10,
360:20
**ir**
57:3, 57:11,
57:22, 58:12,
59:5
**issue**
275:12
**issued**
58:21, 188:8
**issues**
402:11
**it's**
10:15, 31:21,
43:10, 47:14,
71:9, 82:7,
112:4, 165:13,
170:10, 174:20,
174:22, 184:3,
196:10, 196:19,
274:4, 298:3,
299:8, 299:22,
317:14, 337:10,
349:24, 350:10,
403:7, 403:9,
404:1
**itasca**
3:21
**its**
56:12, 162:19,
163:11, 173:14,
237:21, 239:19,
395:1
**itself**
196:19
**ivan**
337:6, 339:18,
340:2, 340:10,
342:1, 342:9,
342:19, 343:19,
344:8, 344:17,
345:14, 352:11,
352:24, 353:8,
353:20, 354:10,
355:24
**ivara**
300:18, 301:1

**J**

**j-a-c-q-u-e-l-i--n-e**
318:12
**j-a-i-m-e**
298:4
**j-o-r-g-e**
317:14
**j-u-a-n**
316:24
**jacket**
406:16
**jacob**
325:13, 326:8,
326:16
**jacqueline**
318:10, 318:11,
318:20, 319:1,
319:6, 319:11,
319:22, 404:16,
406:10, 411:12,
411:19
**jail**
65:20, 66:16,
94:6, 189:4,
247:19, 400:5
**jaime**
298:3, 298:7
**james**
272:21
**jeff**
8:6, 213:23,
272:16
**jefferson**
4:6
**jeffrey**
3:18
**jennifer**
3:4, 7:16,
8:20, 174:16,
299:18
**jewelry**
88:13
**jiver**
369:18, 369:24
**job**
1:22, 213:22

**john**
4:19, 7:24,
161:23, 163:17,
163:24, 251:11,
252:9, 252:17
**johnson**
305:10, 312:21
**join**
260:18
**joined**
10:13, 10:14,
283:5
**jointly**
22:4, 22:14,
175:10, 175:21,
176:8, 329:20,
348:18, 353:4,
375:9, 395:12
**joker**
159:10, 159:16,
159:22, 160:2,
169:8
**jones**
4:13
**jordan**
16:22, 59:17,
72:22, 121:9,
122:2, 123:6,
124:12, 217:4,
217:7, 218:10,
219:2
**jorge**
169:9, 182:7,
182:14, 182:19,
183:3, 217:7,
219:3, 317:14
**jose**
1:4, 3:3, 7:22,
16:10, 17:8,
57:20, 135:12,
136:17, 169:10,
179:9, 181:24,
182:7, 182:13,
182:18, 183:3,
206:7, 217:6,
219:2, 227:18,
229:6, 243:9,
243:21, 244:3,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                134

286:8, 287:22,
356:9, 381:1,
381:19, 382:15,
383:1, 386:13,
395:15, 395:22
**joseph**
92:11
**jr**
381:1
**jrl**
206:8, 206:9
**juan**
312:20, 316:23,
316:24, 317:13,
317:20, 318:2,
381:1, 383:1
**judge**
182:6, 182:13,
182:18, 183:2,
183:5, 208:20,
209:16, 211:19,
213:10, 213:13,
222:12, 222:13,
232:16, 234:13,
235:1, 239:15,
245:11, 251:5,
251:12, 361:5,
361:14, 361:20,
361:24, 362:2,
402:22
**julio**
307:11, 307:13,
307:24, 308:20,
308:24, 309:6,
309:8, 309:11,
309:13, 309:18,
309:24
**july**
17:18, 177:9,
179:10, 179:16,
179:21, 180:2,
180:15, 181:3,
181:11, 181:17,
181:22, 184:9,
192:5, 197:10,
202:13, 243:1,
243:4, 296:14,
298:14, 300:10,

300:19, 301:1,
302:7, 302:14,
302:21, 303:24,
304:7, 304:11,
364:7, 370:6,
371:8, 371:9,
375:13, 383:10,
383:15, 383:22,
384:4, 387:16,
398:18, 398:20,
398:21, 399:5
**june**
31:23, 64:13,
65:2, 68:17,
74:3, 82:22,
84:24, 85:6,
95:21, 98:2,
100:23, 103:15,
105:8, 105:9,
106:23, 106:24,
118:3, 118:9,
118:15, 118:19,
118:20, 119:2,
122:8, 123:21,
128:2, 128:17,
130:15, 133:4,
135:4, 138:10,
138:17, 140:18,
141:1, 141:3,
141:8, 141:21,
142:17, 149:3,
150:14, 152:9,
161:17, 164:22,
170:4, 170:14,
170:19, 172:15,
174:5, 176:21,
177:10, 177:16,
177:22, 178:20,
179:4, 180:21,
180:22, 188:23,
189:12, 189:15,
189:24, 190:23,
191:5, 191:18,
191:20, 192:7,
192:9, 207:14,
210:23, 220:5,
220:12, 221:15,
226:20, 230:14,

233:6, 241:14,
290:6, 290:17,
291:4, 291:14,
291:23, 292:19,
292:24, 293:1,
293:7, 293:12,
293:18, 293:24,
294:7, 294:16,
294:23, 295:5,
295:10, 295:15,
295:21, 296:3,
296:10, 296:13,
298:8, 317:15
**jury**
185:7, 185:14,
185:22, 186:10,
186:21, 187:9,
187:24, 188:16,
196:15, 196:17,
197:3, 197:4,
197:11, 200:3,
200:23, 202:13,
204:4, 205:18,
212:21
**just**
29:20, 32:10,
35:2, 55:23,
56:6, 62:5,
82:11, 97:9,
97:12, 102:3,
102:4, 112:18,
112:22, 124:7,
124:23, 125:14,
125:15, 125:23,
144:12, 144:20,
155:9, 174:21,
201:23, 204:10,
207:23, 208:7,
209:16, 213:13,
214:19, 248:7,
277:6, 282:4,
282:22, 283:19,
297:18, 301:17,
306:1, 306:14,
317:5, 323:18,
323:21, 324:11,
338:13, 344:23,
350:6, 367:22,

370:11, 371:24,
372:10, 372:18,
377:22, 381:24,
393:5, 402:1,
402:2, 402:3,
402:7, 402:10,
411:19, 413:6
**justice**
266:3
**justification**
80:20
**justify**
138:4, 182:22,
348:5, 397:15,
397:22, 398:8
**justino**
381:20, 382:4,
382:16, 390:10,
393:3, 395:4,
395:15
**juvenile**
319:6, 319:11
**juveniles**
353:11

---
**K**
---

**katz**
4:12
**keep**
125:24, 131:16,
282:22, 284:19
**keepers**
35:24
**kept**
256:19, 347:14
**kevin**
33:15, 381:2,
381:13, 381:21,
382:18, 384:20,
390:11, 391:6,
391:15
**key**
103:19, 139:21
**kicked**
155:15, 155:22
**kids**
86:6
**kill**
87:1

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                                135

**killed**
227:10, 300:21,
341:24, 342:8,
347:17, 377:1,
413:8
**killer**
369:18, 369:24
**killing**
143:4, 202:10,
411:22
**kin**
420:11
**kind**
53:8, 107:16,
403:9
**kinder**
39:3
**king**
161:23, 163:18,
163:24, 167:1,
171:10, 385:1
**kings**
384:18, 384:24,
385:11, 393:1
**know**
32:13, 67:8,
67:24, 82:5,
91:22, 102:16,
160:16, 170:3,
170:13, 191:2,
196:10, 214:3,
234:14, 235:10,
235:21, 248:10,
270:19, 274:2,
274:3, 299:6,
299:16, 299:18,
301:16, 310:1,
313:9, 351:5,
361:19, 372:9,
402:12
**knowing**
15:20, 23:10,
46:3, 160:22,
212:3, 270:20
**knowingly**
23:8, 198:20,
200:2, 200:24,
202:16, 208:3,

216:1, 216:4,
219:21
**knowledge**
19:19, 20:1,
69:18, 111:18,
115:7, 127:14,
160:23, 163:19,
165:22, 168:3,
187:4, 187:15,
203:21, 246:24,
383:24, 384:6,
399:4, 399:13,
399:18, 408:24
**known**
45:8, 78:6,
98:7, 150:16,
169:8, 169:9,
169:11, 208:20,
225:19, 347:16,
348:21, 351:22,
356:9
**kristina**
4:12, 8:2

**L**

**labeled**
50:1, 93:18
**language**
25:12
**laptop**
284:24
**last**
11:17, 118:13,
195:13, 285:2,
300:2, 320:3,
323:19, 324:1,
372:11, 401:24
**late**
290:9, 330:23,
331:5, 333:4,
334:6, 336:16,
353:12
**later**
45:13, 61:22,
167:1, 171:11,
218:16, 238:20,
270:12, 271:3,
272:4, 281:12,

333:17, 340:17,
383:2, 389:18,
394:23, 400:18,
401:2, 403:20,
410:1, 415:17
**latin**
311:18, 312:3,
312:8, 384:18,
384:24, 385:11,
392:24, 408:7,
408:9
**latino**
28:23, 30:4,
30:9, 30:19,
85:11, 130:9,
134:21
**latinos**
407:8
**laughing**
124:12
**laureano**
54:11, 54:21,
335:10, 335:14,
335:19, 336:1,
359:11, 359:15,
359:23, 360:9,
360:18, 361:13
**law**
3:5, 3:19, 4:5,
7:19, 8:10,
273:4, 273:13,
273:18, 274:9,
277:1
**lawlessness**
259:8
**laws**
267:21
**lawsuit**
54:2, 54:4,
102:8, 277:24,
299:9, 299:10
**lawyer**
66:8, 66:14,
67:9, 67:17,
68:1, 270:6,
274:22, 275:10,
277:21, 278:5,
278:11

**lawyers**
257:21, 260:23,
272:12, 275:12,
276:6
**lead**
23:11, 31:22,
224:21, 403:24
**leading**
26:20
**leads**
29:13
**learn**
64:4, 204:20
**learned**
24:6, 29:6,
54:20, 66:16,
205:4, 205:10,
226:8, 249:3,
250:6, 343:14,
387:12, 387:19
**learning**
30:16
**leave**
45:1, 45:12,
143:18, 225:16
**leaving**
156:23
**led**
354:18
**left**
46:11, 219:12,
226:23
**legal**
15:23, 17:11,
23:4, 212:8,
264:7, 272:2,
278:23, 294:5,
296:8, 296:22,
334:21, 351:23
**legitimate**
29:13, 210:13,
314:2
**legitimately**
30:21, 31:15,
110:1, 213:12
**lengthy**
216:24
**leniency**
41:16, 46:22,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                     136

144:14, 163:8,
164:5, 186:23
**less**
9:17, 144:6,
353:24
**let**
32:13, 53:19,
67:7, 82:5,
112:18, 126:1,
131:8, 143:19,
146:10, 167:17,
191:1, 194:10,
301:16, 302:3,
323:18, 331:18,
402:1, 408:8
**let's**
159:11, 214:19,
363:23, 384:9
**letting**
332:11
**license**
420:23
**lie**
183:7, 208:17,
209:15, 245:12,
280:6, 297:12
**lied**
42:2, 164:10,
170:17, 182:12,
182:17, 183:1,
183:14, 258:8,
258:19, 303:23,
313:7
**lies**
265:11, 265:13
**life**
36:22, 400:20
**light**
406:14, 406:15
**like**
32:4, 43:18,
58:6, 82:12,
102:16, 107:16,
110:9, 113:9,
130:8, 160:17,
183:22, 185:9,
235:5, 236:6,
248:6, 284:23,

301:19, 350:13
**line**
56:22, 281:19,
316:22, 345:6,
356:20, 363:9,
404:19
**line-ups**
48:13, 48:23,
49:6
**lineup**
175:24, 177:8,
177:16, 178:7,
178:8, 178:20,
179:4, 179:8,
179:15, 179:20,
180:2, 180:15,
180:21, 181:2,
181:10, 181:17,
181:22, 241:14,
241:24, 242:9,
242:16, 243:3,
243:9, 244:3,
284:5, 284:9,
284:10, 284:14,
285:15, 286:9,
286:13, 286:14,
286:18, 287:12,
291:17, 293:1,
293:11, 293:23,
294:16, 295:5,
295:14, 296:2,
304:10, 304:15,
304:20, 305:3,
307:12, 308:10,
308:15, 308:17,
308:21, 309:1,
309:8, 309:13,
309:15, 309:20,
318:4, 325:16,
325:22, 326:4,
326:11, 326:17,
326:23, 327:1,
327:7, 327:16,
328:1, 333:12,
344:24, 345:5,
345:8, 345:12,
354:17, 355:17,
413:17, 414:1,

414:14, 414:20
**lineups**
317:21, 318:3
**listen**
351:6
**literally**
10:9
**litigation**
268:2
**little**
9:17, 82:9,
177:1, 284:20,
312:11, 312:21
**live**
175:23, 179:15,
180:21, 241:24,
284:5, 286:9,
291:16, 293:1,
294:16, 295:4,
413:17, 414:1,
414:14, 414:20
**living**
341:15, 405:24,
411:12
**liz**
284:19
**llc**
3:12, 5:5
**located**
203:22, 233:2,
392:15, 405:12
**location**
107:3, 121:7,
385:1
**lock-up**
34:10, 35:3,
35:12, 35:24,
36:5, 48:15,
48:23, 49:8,
49:17
**locked**
202:8
**lodge**
33:17, 33:24
**loevy**
2:4, 3:12, 7:3,
7:6, 7:18, 7:19,
7:21, 196:12

**log**
6:10, 6:12,
58:7, 58:22
**logan**
282:11
**logs**
58:20
**long**
9:14, 94:1,
406:15
**longer**
240:19
**look**
56:20, 56:22,
58:7, 112:2,
118:12, 120:22,
125:10, 136:17,
161:12, 161:13,
164:18, 164:19,
183:22, 184:5,
207:8, 241:13,
243:15, 246:5,
248:7, 274:1,
310:2, 338:11,
342:7, 343:9,
349:23, 350:1,
351:6, 351:9,
355:16, 366:19,
367:23, 371:5,
373:3, 374:11,
375:1, 375:3,
378:8, 412:8,
413:17, 414:1
**looked**
58:19, 102:16,
107:16, 110:9,
140:7, 160:17,
228:7, 241:24,
307:7
**looking**
36:21, 125:24,
237:14, 346:19,
350:8, 368:7,
372:14
**loretta**
314:7, 314:15,
316:16
**losing**
397:3

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    137

lot
115:6, 131:9,
287:23
lozada
33:5, 325:13,
326:8, 326:16,
328:22
luis
363:6, 364:20,
369:22, 376:16,
376:23, 378:14,
378:21, 379:2,
379:17, 379:19
lunch
82:13
lying
265:19, 328:22

**M**

m-a-l-l-o
307:18
m-a-r-l-o-n
311:9
m-e-n-a
337:11
m-o-n-t-a-n-e-z
318:14
m-u-n-i-z
314:22
made
65:18, 97:4,
109:10, 122:13,
126:5, 127:24,
149:23, 163:18,
166:24, 168:13,
172:17, 178:5,
196:12, 207:1,
232:14, 234:17,
242:16, 247:6,
283:18, 283:24,
346:16, 369:11,
371:8, 387:14,
394:22, 398:16,
399:3, 399:11,
400:3, 408:4,
415:8, 419:19
mail
267:7

maintain
99:21
majinowski
92:11
make
40:19, 40:20,
48:1, 52:24,
55:11, 69:17,
75:20, 77:8,
79:10, 105:2,
112:20, 128:14,
134:17, 139:1,
144:21, 164:13,
177:20, 181:1,
235:4, 250:18,
253:5, 292:17,
293:15, 293:21,
294:21, 295:18,
295:24, 296:15,
310:12, 327:23,
329:5, 342:6,
342:18, 353:4,
367:7, 370:15,
379:3, 387:5,
403:20, 420:3
makes
195:18, 214:1
making
32:15, 157:8,
235:4, 395:13
male
349:16, 373:6,
373:13, 406:12,
407:8
mallo
307:18
man
34:9, 35:11,
324:14
mandatory
249:16, 250:7
maniac
408:7, 408:9
manipulate
38:11, 105:11,
105:20, 106:4,
106:15, 111:21,
223:14, 229:13,

342:17, 395:12
manipulated
230:5, 255:5,
255:16, 259:16,
291:16, 376:22,
412:4
manipulating
349:1, 366:8
manipulation
297:7, 412:17
manner
224:21
manuel
311:5, 311:23,
313:8, 313:15,
313:21, 314:2,
314:23, 315:4,
315:5, 315:11,
316:1, 316:7,
316:17
manufactured
191:17, 192:10
many
52:24, 193:16,
336:21, 353:11
march
356:10
margaret
327:17, 327:23
mark
195:10, 205:23,
337:15, 404:11,
408:21, 409:4,
416:1
marked
6:8, 55:19,
56:17, 56:21,
58:2, 58:6,
112:3, 112:10,
116:20, 195:22,
196:1, 196:3,
206:2, 206:5,
246:6, 246:8,
337:18, 339:1,
370:10, 370:19,
372:1, 372:12
marks
45:2, 45:12,

156:24
marlo
154:7, 154:12
marlon
311:8
marrero
363:6, 364:20,
369:23, 375:18,
375:23, 376:16,
376:23, 378:14,
378:22, 379:2,
379:18, 379:19
masonette
381:1, 381:7,
382:16, 383:1,
383:9, 383:15,
383:21, 383:23,
384:5, 386:14,
386:19, 387:5,
387:14, 387:20,
388:11, 388:23,
389:8, 389:16,
390:2, 390:20,
391:4, 391:13,
391:22, 392:4,
392:12, 392:21,
393:10, 393:15,
393:23, 394:4,
394:13, 395:1,
395:15, 396:2,
397:11, 397:15,
397:22, 398:16,
399:3, 399:11,
399:16, 399:22,
400:3, 400:17,
401:10, 401:20,
402:4, 402:10
masonette's
393:4, 394:21,
395:13, 395:22,
402:18
matched
108:5, 108:19,
109:3, 109:12,
374:1
material
257:19, 329:11
materials
257:22

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                          138

math
9:16
matt
217:18, 221:8,
222:16, 224:11,
228:16, 231:1,
232:12, 233:16,
234:4, 234:15,
278:16
matter
7:3, 8:21,
30:8, 57:22,
120:7, 123:2,
153:3, 196:16,
197:6, 242:1,
311:4
matters
261:10, 334:21
matthew
4:11, 8:3,
213:9, 216:6,
229:24, 232:3,
238:2, 241:4,
244:9
mawr
357:5
may
25:10, 32:18,
33:13, 35:10,
36:1, 37:8,
39:10, 52:4,
52:8, 56:24,
58:9, 59:3,
59:17, 59:18,
60:2, 60:11,
60:23, 93:13,
93:19, 155:9,
246:10, 246:24,
247:6, 251:20,
280:14, 282:10,
282:19, 283:5,
283:17, 283:18,
283:23, 284:6,
286:9, 287:24,
318:18, 318:23,
324:15, 324:21,
325:11, 326:1,
326:11, 326:17,

352:23, 357:2,
381:3, 381:14,
381:22, 382:18,
384:9, 384:10,
386:6, 386:21,
391:23, 392:24,
393:5, 396:4,
420:5, 420:16
maybe
139:7, 283:17,
298:1, 305:15,
330:23, 337:21
mazur
3:11, 6:5,
7:20, 10:17,
282:3, 282:4,
282:8, 282:24,
283:3, 283:12,
283:21, 284:3,
284:21, 285:1,
285:4, 289:16,
289:23, 290:13,
291:21, 292:13,
294:11, 297:17,
297:23, 298:5,
299:1, 299:4,
299:8, 299:15,
299:22, 300:1,
300:8, 302:5,
305:1, 305:17,
305:19, 306:1,
306:17, 311:15,
312:17, 313:5,
317:9, 317:10,
318:12, 318:14,
318:17, 319:20,
320:3, 320:7,
320:10, 320:18,
321:1, 321:9,
321:19, 322:3,
322:10, 322:18,
323:2, 323:10,
323:18, 323:23,
324:8, 324:9,
327:22, 328:9,
329:24
mean
116:24, 194:8,

214:9, 235:22,
306:13, 372:1,
389:4
means
38:11, 42:8
meant
390:7
medium
373:8, 373:15,
406:18
meet
64:16, 65:1,
279:17, 330:15
meeting
80:1, 98:3,
100:23, 106:24,
119:1, 120:15,
128:1, 164:12,
191:4, 192:8,
207:13, 207:17,
208:8, 208:18,
208:21, 209:8,
210:22, 239:19,
279:23
melendez
286:8, 286:14,
286:19, 286:24,
287:7, 287:12,
287:17, 287:22,
288:8, 288:14,
289:9, 290:1
melendez's
288:19, 289:18
member
40:3, 120:24,
307:18, 311:18,
316:11, 340:21
members
121:11, 255:4,
255:15, 255:24,
256:9, 256:18,
257:7, 257:18,
258:7, 258:18,
259:5, 273:4,
331:24, 332:11,
332:17, 371:16,
407:18
memorialize
188:19

memorialized
31:8, 31:14,
119:1, 189:15,
191:19
memorize
101:2
memory
37:20
men
28:23, 30:4,
30:9, 30:19,
60:3, 60:12,
60:24, 85:12,
106:17, 130:9,
134:21, 175:12,
175:24, 176:10,
176:19, 177:2,
394:6, 394:14
mena
106:3, 337:6,
339:19, 340:2,
340:10, 341:8,
342:1, 342:9,
342:19, 343:19,
344:8, 344:17,
345:7, 345:14,
347:1, 347:10,
352:11, 352:24,
353:8, 353:20,
354:10, 354:20,
355:24
mention
414:12
mentioned
71:5, 102:6,
290:12
merely
122:14, 127:15,
169:16, 353:18
merit
260:14
merkez
404:14, 405:5,
405:11, 411:4,
415:20, 416:6
met
66:14, 67:9,
68:9, 78:18,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

139

90:23, 102:17
**method**
145:14, 156:11
**methodology**
87:23, 88:22
**methods**
39:3, 61:18,
144:6, 145:3,
145:15, 416:13
**mia**
231:9
**michael**
4:20, 7:24,
298:13, 300:10,
306:19, 307:1,
327:17, 327:24
**mid**
331:13
**might**
39:21, 70:10,
76:18, 109:24,
139:6, 148:17,
215:19, 264:3,
264:5, 264:13,
284:22, 365:18,
368:8
**millimeter**
87:12, 87:17,
87:18, 160:3,
200:16, 201:5,
392:15, 394:16,
396:3
**mind**
183:8
**mine**
372:6
**mingy**
12:21, 13:15,
13:24, 14:11,
14:15, 15:4,
18:7, 18:19,
22:3, 22:12,
51:13, 59:24,
60:9, 60:20,
62:24, 66:24,
94:23, 106:13,
150:21, 151:12,
151:20, 152:15,

152:21, 153:11,
153:21, 155:22,
157:10, 160:21,
161:4, 162:8,
164:2, 165:21,
166:5, 166:11,
166:15, 170:3,
170:14, 170:18,
171:1, 172:8,
173:12, 175:8,
175:20, 176:7,
177:7, 179:7,
180:13, 180:19,
230:2, 230:16,
329:19, 382:15,
384:5, 384:17,
398:3, 398:17,
399:17, 399:22,
400:4
**minimum**
48:2, 248:18,
249:4, 249:16,
250:7
**minor**
28:20, 85:9
**misconduct**
12:8, 13:4,
15:5, 15:8,
17:6, 17:7,
23:20, 66:22,
66:23, 172:23,
173:4, 173:7,
258:20, 259:7,
260:2, 260:4,
280:2, 415:3,
415:6, 415:7,
415:8
**misled**
225:9, 225:14
**missing**
231:9, 338:4
**misstates**
227:20
**molina**
349:15, 351:2,
351:13, 351:19,
352:2, 353:6
**molina's**
352:9

**moment**
32:3
**mondo**
86:24, 121:9,
122:3, 123:6,
124:9, 124:11,
124:13, 125:2,
217:4, 217:7,
218:10, 219:1
**money**
63:13, 66:8,
67:18, 68:1,
89:9, 202:4,
332:2, 332:11,
332:20, 361:19,
362:2, 386:20
**monica**
165:23, 290:6,
290:17, 290:21,
292:2, 296:17,
297:4
**montanez's**
89:22, 106:5,
107:3, 107:7,
108:6, 108:11,
108:19, 109:3,
109:12, 110:23,
111:6, 111:13,
111:19, 135:19,
136:17, 137:12,
229:6, 230:4
**month**
25:17, 254:5
**months**
52:24, 254:9
**montia**
384:6, 391:3,
392:13, 394:24,
395:11, 398:3,
398:18, 399:17,
399:22, 400:4
**montias**
382:14
**more**
51:3, 116:13,
139:12, 148:10,
170:22, 172:1,
214:6, 259:19,

302:1, 318:8,
319:12, 324:3,
324:4, 395:9
**morning**
7:15, 8:19,
24:3, 83:21,
86:18, 199:20,
201:6, 203:8,
203:15, 203:23,
282:4, 386:5,
387:23, 405:6,
405:14, 412:22,
413:9
**motion**
132:18
**motive**
48:20, 62:19,
63:1, 63:9,
63:20
**mouth**
236:7, 236:8
**move**
234:20, 236:7,
271:8, 272:3,
401:23, 403:15
**moved**
78:5
**moving**
298:23, 301:20,
305:14, 311:4,
316:21, 402:24
**much**
29:20, 30:8,
49:15, 93:20,
115:21, 249:24,
361:19, 367:4
**mug**
374:3
**mugshots**
366:20
**multiple**
43:12, 44:14
**muniz**
314:22, 315:4,
315:10, 315:13
**muniz's**
316:17
**munoz**
322:6, 337:21,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

140

339:18, 340:21,
341:7, 342:18,
343:3, 343:15,
344:1, 344:6,
344:9, 344:15,
344:22, 345:5,
345:13, 345:18,
345:24, 346:8,
347:14, 347:17,
347:23, 348:4,
348:7, 348:14,
348:20, 348:24,
349:3, 349:10,
349:19, 351:23,
352:11, 353:7,
353:18, 354:9,
354:17, 354:19,
355:7, 355:12,
355:17, 355:18,
355:23
**murdered**
24:2, 24:7,
77:18, 86:17,
105:14, 171:24,
345:14, 346:5,
356:16, 412:6
**murderer**
92:17
**murders**
34:20, 53:18,
53:21, 54:1,
62:13, 358:15,
363:5, 364:20,
381:2, 381:13,
381:21, 382:17,
384:1, 384:7,
384:8, 385:23,
386:6, 386:14,
388:12, 390:11,
391:6, 391:23,
395:16, 397:12,
399:5, 399:14,
399:18, 399:24,
400:7, 400:19,
401:13, 401:18,
401:20, 404:14,
404:15, 405:4,
405:5, 410:11,

411:3, 411:10,
412:12, 415:19,
416:5
**must**
264:3
**myself**
214:7, 282:3

---

**N**

**name**
7:15, 7:20,
8:20, 9:3,
24:18, 100:17,
114:2, 117:14,
117:15, 117:16,
117:20, 119:8,
150:15, 154:6,
165:15, 165:23,
190:2, 197:17,
211:21, 272:20,
292:8, 297:24,
298:3, 324:10,
340:23, 349:15,
351:1, 351:20,
354:24, 363:4,
363:6, 364:18,
385:11, 387:8,
393:1, 393:3
**named**
34:9, 35:11,
56:24, 214:24,
294:14
**namely**
63:11
**names**
218:10, 218:13,
218:15, 218:23,
219:1
**narrative**
62:11, 73:14,
79:3, 83:13,
96:3, 96:11,
118:14, 125:9,
125:11, 126:10,
126:11, 126:12,
126:20, 126:22,
127:4, 162:7,
164:2, 188:20,

390:8
**natural**
36:22, 174:19,
400:20
**navella**
310:18
**navella's**
310:11
**nd**
292:24, 293:7,
293:18, 387:12,
387:23, 388:4
**near**
40:15, 203:7,
357:4
**necessarily**
389:5
**necessary**
113:4, 120:18
**need**
80:15, 151:13,
151:21, 213:12,
306:14, 330:8,
330:9, 362:2
**needed**
89:9, 155:2,
208:17, 335:18,
344:23
**needs**
330:5
**negron**
404:13, 404:20,
410:17, 411:2,
411:9, 411:21,
412:7, 412:20,
413:7, 413:18,
414:2, 414:4,
414:22, 415:10,
415:18, 416:4,
416:11
**neighborhood**
109:24, 110:16,
135:3, 351:21
**neither**
18:24, 61:7,
71:10, 75:22,
92:10, 97:17,
111:4, 146:1,

161:5, 203:12,
203:19
**never**
68:1, 71:5,
90:23, 102:16,
109:17, 124:10,
124:22, 127:12,
163:18, 166:10,
172:17, 183:8,
211:4, 216:14,
218:1, 220:1,
222:22, 228:23,
238:9, 241:24,
245:11, 245:15,
256:21, 259:6,
260:3, 260:9,
291:22, 307:7,
314:1, 347:8,
347:22, 348:6,
368:20, 369:10,
369:21, 373:12,
374:12, 374:19,
374:24, 377:15,
377:17, 378:12,
416:9
**new**
3:7, 281:18
**next**
114:1, 233:17,
237:6, 301:17,
316:22, 318:9,
388:20, 403:15
**nickname**
102:1, 215:18,
393:2
**nicknamed**
307:18
**nicknames**
217:3, 217:5
**nieves**
363:7, 364:21
**night**
28:5, 84:6,
85:2, 86:5,
106:6, 106:18,
107:10, 110:3,
111:14, 223:7,
288:5, 288:10,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    141

290:6, 290:17,
344:6
**nine**
87:12, 87:16,
87:18, 160:2,
201:5, 249:17,
250:9, 392:15,
394:16, 396:3
**nine-year**
249:24, 253:7,
253:16
**nobody**
225:19
**noel**
282:10
**none**
60:12, 90:15,
275:7, 405:24
**nonetheless**
68:24, 120:15,
188:6, 342:15,
345:17, 359:3
**nor**
18:24, 20:7,
97:18, 111:4,
161:6, 168:20,
203:20, 395:3,
420:11
**north**
2:5, 3:13, 5:6,
7:6, 198:5,
199:1, 199:8,
201:6, 201:22,
203:7, 203:14,
203:23, 223:24,
233:11, 236:20,
237:2, 237:7,
237:8, 364:2,
368:23, 369:23,
384:8, 384:19,
384:24, 392:16,
393:14, 393:16,
394:6
**northern**
1:2
**notary**
2:13, 418:24
**noted**
299:15

**notes**
402:13, 402:16
**nothing**
15:7, 69:19,
90:16, 91:16,
302:7, 302:14,
303:19, 311:23,
325:2, 389:15,
401:12, 416:19,
416:20, 416:21,
416:23, 419:15
**notice**
2:11
**noting**
370:11
**notwithstanding**
33:22, 52:14,
243:19, 252:6,
342:12, 399:9,
411:7
**now**
7:12, 23:24,
26:15, 51:2,
51:22, 58:1,
64:13, 75:3,
76:18, 92:23,
98:2, 112:2,
113:9, 118:2,
118:23, 120:22,
141:17, 150:13,
173:18, 207:8,
211:18, 213:9,
214:21, 226:19,
230:14, 230:22,
236:18, 249:23,
298:23, 324:11,
337:5, 340:20,
346:17, 346:18,
349:9, 363:14,
373:2, 384:13,
397:10, 402:24
**nowhere**
203:7
**number**
7:4, 7:5, 57:3,
57:11, 57:22,
58:12, 59:5,
144:3, 192:18,

192:21, 193:4,
193:13, 193:23,
195:2, 196:17,
196:18, 227:15,
228:3, 332:8,
340:7, 372:14,
377:2, 398:7,
402:19
**numbers**
195:14, 207:9,
318:4, 350:9,
372:15
**numerous**
64:3

---

## O

**o'clock**
189:24, 220:23,
233:3, 392:23,
395:22
**o'shefsky**
404:11, 408:21,
408:23, 409:4,
409:15, 409:20,
410:9, 410:16,
416:1
**o'shefsky's**
415:7
**oath**
7:14, 186:10,
187:10, 217:19,
265:12, 265:14,
265:20, 270:13,
418:4
**objected**
338:10
**objectionable**
212:4, 324:7
**objections**
45:15, 47:10,
59:19, 195:7,
235:4, 249:18,
250:11, 253:17,
253:21, 264:24,
265:7, 265:15,
265:21, 266:4,
266:10, 266:16,
266:22, 267:3,

267:9, 267:15,
267:22, 268:5,
268:12, 269:5,
269:12, 269:20,
270:7, 270:18,
270:21, 271:12,
271:20, 272:8,
275:15, 276:9,
276:18, 277:2,
277:9, 277:17,
278:1, 283:20,
299:5, 301:19,
302:3, 305:24,
306:4, 311:11,
317:3, 318:16,
320:15, 320:22,
321:6, 321:16,
321:24, 322:7,
322:15, 322:23,
323:7, 323:15,
330:3, 333:5,
337:20, 338:1,
356:20, 361:15,
381:5, 382:1,
404:18
**obnoxious**
235:5, 235:6,
235:8
**observed**
44:12, 156:3,
332:9
**obstruction**
266:3
**obtain**
57:10, 132:4,
172:23, 182:20,
183:4, 220:2,
255:6, 291:15
**obtained**
28:7, 63:13,
84:18, 163:9,
219:4, 333:20
**obtaining**
145:3
**obviously**
307:14
**occasion**
54:20, 99:9

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

142

occasions
144:4, 332:8
occurred
24:13, 62:9,
89:15, 118:14,
119:1, 128:2,
132:5, 201:21,
333:3, 335:2,
335:10, 339:20,
340:2, 344:16,
352:4, 355:1,
356:10, 358:16,
363:17, 364:2,
379:5, 381:3,
381:14, 381:22,
382:18, 383:17,
383:22, 384:8,
384:9, 384:19,
386:7, 391:23,
398:19, 398:21,
405:6, 410:11
ochoa
292:16, 292:22,
293:5, 293:10,
293:16, 293:22
ochoa's
294:4
october
9:10, 311:9,
312:5, 312:10,
313:1, 349:14,
350:17
off
34:24, 37:20,
82:15, 131:11,
175:1, 281:23,
297:18, 297:19,
323:22, 380:18
offender
215:17, 239:18,
335:17, 342:6,
342:7, 347:24,
348:7, 369:11,
369:22, 373:6,
373:13, 373:19,
374:9, 374:20,
378:9, 379:12
offender's
374:12, 375:1,

375:3
offenders
73:7, 223:15,
226:4, 229:7,
239:18, 406:2,
407:7, 414:22
offense
166:17, 364:13
offer
66:8, 67:18,
68:1
offered
79:3, 81:15
offi
14:13
office
33:24, 64:15,
64:24, 65:11,
74:2, 80:3,
82:24, 98:4,
119:4, 189:5,
209:18, 210:1,
210:23, 237:13,
274:13, 331:12
officer
9:6, 9:9, 9:15,
21:2, 116:13,
156:21, 319:23,
385:20, 404:11,
406:10
officer's
114:2
officers
8:7, 15:3,
17:8, 17:19,
23:21, 66:23,
69:7, 280:3,
290:15, 382:12,
384:23, 385:10,
387:13
offices
2:2, 65:22,
68:7, 82:22,
191:4
official
254:17, 255:3,
255:14, 255:23,
256:8, 256:18,

257:7, 257:17,
258:7, 258:18,
259:5, 420:13
often
43:24, 142:3
oh
11:7, 212:22,
284:21, 350:8,
403:5
okay
9:2, 10:4,
10:8, 10:11,
10:15, 10:16,
11:5, 33:10,
37:22, 42:11,
56:9, 56:14,
82:8, 102:9,
112:20, 113:16,
131:8, 174:21,
196:20, 198:1,
206:9, 213:20,
236:18, 274:6,
274:24, 281:22,
285:1, 305:20,
317:9, 351:11,
372:10, 382:6,
402:1, 402:12,
404:6
old
349:16, 353:19
oldsmobile
405:23, 412:20,
413:8
omar
333:3, 333:6,
333:10, 333:12,
333:18, 333:19,
334:3, 335:3
once
31:3
one
10:12, 10:13,
48:10, 54:9,
54:20, 57:21,
61:18, 104:13,
104:21, 110:9,
140:5, 178:9,
181:4, 181:24,

202:3, 204:10,
210:7, 235:12,
242:17, 243:21,
249:5, 275:8,
283:23, 290:10,
297:18, 299:8,
300:2, 301:8,
316:10, 318:4,
318:8, 318:9,
324:1, 330:5,
330:8, 330:9,
337:8, 338:3,
341:14, 345:5,
370:12, 380:10,
395:9, 408:11
only
41:17, 47:6,
56:3, 99:22,
140:23, 141:7,
186:19, 226:3,
252:7, 304:19,
305:2, 318:3,
327:1, 327:7,
349:2, 369:2,
397:2, 407:7,
407:14
opened
160:2
operation
92:19, 115:15
opportunity
45:20, 74:9,
74:17, 248:8
opposed
350:8
opposing
40:3
oppressive
35:5, 53:12,
354:12, 365:22,
367:10, 403:12
oral
397:21, 400:4,
400:10, 400:16,
419:16
order
34:19, 38:4,
61:19, 62:10,

92:23, 99:2,
105:2, 109:4,
111:20, 113:5,
137:19, 138:4,
139:12, 148:11,
153:4, 176:11,
204:11, 232:15,
234:4, 251:12,
252:10, 253:4,
263:24, 269:10,
274:16, 275:2,
291:15, 304:20,
329:4, 329:13,
348:4, 352:22,
361:20, 362:2,
377:11, 382:24,
388:11, 389:17,
389:18, 402:7,
416:13
**original**
112:6
**originally**
340:1, 340:7,
384:13
**ortiz**
312:20, 313:1,
313:9
**other**
17:19, 51:5,
70:11, 91:7,
127:13, 130:9,
154:12, 173:6,
189:12, 270:13,
273:4, 275:1,
275:5, 278:21,
279:14, 282:15,
282:19, 290:11,
290:15, 291:24,
293:6, 293:11,
295:9, 295:14,
302:21, 376:9,
392:24, 393:23,
398:1, 420:3
**others**
32:11, 93:3,
148:18, 149:24,
390:9, 399:12
**otherwise**
78:6, 98:7,

150:16, 225:11,
264:5, 275:20,
279:6, 347:16,
351:22, 356:9
**out**
35:3, 48:22,
51:4, 93:20,
99:10, 108:10,
112:19, 121:4,
121:18, 123:6,
142:16, 148:20,
155:16, 159:17,
162:23, 179:20,
181:4, 195:15,
201:24, 202:1,
213:13, 214:23,
227:11, 237:14,
238:10, 239:16,
243:21, 308:1,
308:6, 308:10,
308:15, 308:21,
309:1, 326:17,
331:4, 331:18,
332:1, 332:12,
332:19, 336:23,
340:7, 344:24,
352:3, 352:16,
360:9, 376:6,
389:7, 396:18,
397:3
**outrageous**
234:22
**outside**
24:8, 46:4,
46:17, 95:10,
273:13, 323:24,
387:21, 405:11,
405:16, 405:17
**over**
65:21, 68:6,
126:1, 131:8,
131:14, 146:10,
167:17, 194:10,
219:12, 226:21,
253:3, 323:20,
334:21, 357:4,
363:23, 388:16,
388:20, 389:4,

408:8
**overly**
404:1
**own**
248:15, 270:2,
270:5, 294:4,
296:8, 296:22

---

**P**

**pacheco's**
12:10, 12:18,
13:6, 13:13,
23:2, 193:15,
195:6, 208:23
**page**
6:2, 113:1,
113:13, 113:19,
113:20, 118:12,
118:13, 120:23,
125:9, 125:14,
125:22, 126:11,
126:21, 127:23,
128:6, 128:15,
129:17, 131:11,
161:13, 164:19,
164:20, 165:4,
185:8, 197:14,
204:19, 207:9,
207:10, 207:11,
216:23, 241:13,
243:5, 320:3,
349:24, 350:2,
350:3, 350:7,
350:9, 350:12,
371:6, 371:22,
372:1, 372:2,
372:11, 372:15,
372:21, 372:23,
373:2, 373:4
**pages**
1:23, 161:15,
183:23, 196:19,
372:3, 372:7,
372:14, 418:7
**paid**
177:1, 334:3,
360:18, 361:20
**pandit**
190:3, 190:21,

191:3, 191:15
**paper**
338:11
**par**
234:22
**paragraph**
120:24
**paragraphs**
402:5
**park**
30:5, 115:9,
159:9, 223:23,
283:14, 287:23,
332:18, 358:9,
358:16, 359:24,
363:18, 365:19,
383:17
**parked**
89:17, 107:3,
107:7, 109:18,
202:6
**parking**
287:23
**part**
12:19, 13:14,
32:22, 51:22,
60:23, 63:8,
72:5, 87:22,
88:21, 90:7,
90:11, 93:24,
105:17, 117:8,
239:7, 275:13,
276:7, 291:3,
307:12, 312:11,
346:17
**participants**
345:6
**participate**
162:18, 333:2
**participated**
262:11
**particular**
62:6, 193:14,
408:24, 409:6
**particularly**
366:10
**parties**
146:3, 420:12

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

144

**partner**
12:20, 13:23,
18:2, 18:17,
21:8, 24:16,
165:9, 184:14,
220:24, 233:1,
292:6, 297:10,
298:8, 326:14,
409:20
**partners**
330:19
**party**
116:11, 139:7,
344:7, 346:9
**passenger**
394:2, 406:14,
406:17
**passing**
37:14
**past**
64:3, 217:9,
237:8, 265:12,
275:6, 377:2
**pawlniski**
383:21, 387:13
**pawlnisky**
382:13, 387:20
**pawn**
88:13, 89:8
**pay**
112:24, 180:7,
331:17, 362:2
**paying**
331:3, 361:1,
386:19
**payments**
387:6
**pending**
36:10, 41:8,
47:8, 54:2
**people**
34:24, 35:2,
37:15, 53:9,
92:18, 154:12,
159:4, 180:6,
182:1, 196:11,
196:16, 206:6,
242:18, 260:10,

302:6, 302:13,
331:4, 331:18,
332:18, 359:24,
366:10, 403:9,
405:16, 412:11
**perfectly**
402:6
**perhaps**
357:8
**period**
26:15, 131:4,
141:22, 143:6,
143:13, 144:4,
145:14, 247:18,
403:4
**perjury**
22:24, 265:6
**permitted**
46:2
**perpetrator**
311:18
**person**
11:10, 44:1,
56:24, 57:11,
92:3, 150:14,
156:24, 169:8,
169:9, 169:11,
177:21, 179:2,
181:24, 286:3,
286:4, 309:3,
309:14, 309:19,
327:1, 327:7,
333:13, 334:5,
336:22, 341:17,
343:9, 343:16,
347:1, 355:7,
365:19, 368:22,
376:24, 379:20
**personal**
160:23, 187:4,
203:20, 334:21
**persons**
202:2, 202:3,
217:9, 411:21
**persuade**
105:12, 229:14,
342:17, 348:13,
379:11, 413:6

**persuaded**
164:3, 343:14,
391:12
**persuasion**
412:18
**pertaining**
129:22
**pete**
72:22, 121:8,
122:2, 123:7,
124:8, 124:13,
125:1, 211:21,
215:1, 215:10,
215:18, 217:3,
217:6, 218:10,
219:1
**pete's**
123:5
**phone**
44:15, 44:24,
45:10, 222:3
**phonebook**
156:4, 156:5,
156:14, 156:23
**phonetic**
197:17, 222:13,
251:6, 273:1,
300:18, 305:9,
310:11, 339:20,
381:2, 382:13,
382:14, 404:12,
404:14, 404:17,
406:11
**photo**
133:6, 133:23,
169:1, 222:7,
222:23, 255:7,
284:15, 284:16,
285:5, 285:6,
285:11, 285:20,
286:19, 286:20,
286:23, 286:24,
287:4, 287:9,
287:17, 292:24,
293:7, 293:17,
294:15, 295:4,
295:10, 295:20,
303:2, 303:8,

304:2, 304:6,
308:1, 308:6,
309:7, 309:12,
309:14, 309:20,
315:4, 375:17,
376:5, 376:9,
376:17, 378:16,
409:16, 409:24,
410:10
**photograph**
101:23, 102:14,
110:7, 222:7,
301:12, 303:13,
326:10, 374:1,
376:1, 376:7
**photographic**
291:16
**photographs**
69:1, 69:6,
70:3, 71:19,
133:24, 134:12,
160:15, 220:2,
220:10, 220:17,
222:6, 223:3,
409:13, 413:6
**photos**
68:18, 69:17,
70:3, 72:20,
133:7, 169:2,
169:17, 219:6,
219:14, 307:11,
371:16, 411:11,
412:9, 414:4,
414:13
**phrase**
97:11
**physical**
19:7, 21:21,
39:2, 43:2,
46:20, 50:2,
145:7, 156:12,
163:7, 164:4,
173:6, 186:22,
247:16, 248:2,
388:21, 390:21
**physically**
38:24, 47:9,
142:19, 143:17,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

145

pick
179:20, 181:4,
243:21, 284:10,
286:14, 292:18,
293:17, 293:23,
294:22, 295:20,
296:2, 307:24,
308:5, 308:10,
308:15, 308:16,
308:21, 309:1,
309:2, 309:13,
309:19, 326:17,
344:24
picked
107:1
picture
287:3, 410:16
pistol
72:22, 121:8,
122:2, 123:5,
123:7, 124:8,
124:13, 125:1,
200:17, 211:21,
214:24, 215:9,
215:18, 217:3,
217:5, 218:10,
219:1, 392:15
placard
376:8, 376:10
place
156:4, 171:4,
191:4, 210:22,
224:2, 237:4,
238:11, 238:15,
328:17, 397:16,
408:14, 418:8,
419:20
placed
48:23, 49:6,
98:6, 122:12,
233:10, 317:19,
318:1, 326:22,
327:15
placing
327:6
plaintiff
1:5, 1:11, 3:3,

3:10, 7:22,
8:21, 143:3,
143:11, 143:12,
143:17, 144:12,
144:18, 403:20,
419:9
plaintiff's
398:8
plaintiffs
57:21, 95:7,
98:19, 99:4,
99:11, 99:23,
120:7, 120:19,
123:1, 129:11,
134:13, 139:13,
153:3, 153:6,
154:20, 155:3,
169:17, 172:9,
190:12, 197:6,
218:16, 242:1,
244:20, 269:11,
270:14, 270:20,
271:7, 276:16,
276:24, 278:10,
278:17
plan
51:22, 60:23,
61:11, 61:20,
63:8, 65:9,
66:3, 90:7,
105:17, 132:19,
137:19, 148:19
planet
7:10
plausible
49:16, 170:23
plausibly
348:5
play
151:21, 151:23
played
38:15, 38:17,
142:3, 142:9,
142:10, 142:16
playing
123:7
plea
151:23

plead
271:6
please
9:2, 10:19,
82:5, 112:15,
161:12, 195:10
pled
254:5
pllc
3:5
plus
270:18
point
9:24, 10:22,
24:6, 36:9,
43:1, 46:10,
51:2, 54:9,
82:4, 108:9,
112:19, 127:2,
129:11, 131:20,
131:21, 133:22,
139:7, 147:5,
149:9, 157:13,
172:22, 189:11,
227:11, 246:21,
248:15, 249:2,
270:12, 271:3,
278:22, 281:3,
333:18, 356:19,
403:14
pointed
108:10, 144:20,
195:15, 227:17,
237:9, 238:10,
287:3
pointing
228:6, 287:9,
394:15
points
98:18
poked
80:4
poking
80:14
polaroid
134:12, 169:2,
169:17, 326:9,
409:16, 409:24,

411:11, 414:3,
414:13
police
9:5, 9:9, 9:12,
9:15, 9:19,
17:8, 31:13,
34:18, 37:11,
45:9, 53:20,
110:13, 113:11,
114:15, 115:13,
116:4, 116:12,
117:20, 118:2,
118:8, 118:23,
119:9, 119:15,
122:12, 122:24,
123:20, 124:4,
124:16, 128:15,
128:24, 129:9,
129:16, 130:15,
135:11, 137:11,
138:2, 149:17,
150:5, 164:11,
164:21, 171:18,
194:1, 194:14,
195:1, 204:21,
205:5, 219:5,
254:18, 255:4,
255:16, 256:1,
256:2, 256:10,
256:11, 256:19,
257:8, 257:19,
258:8, 258:19,
259:6, 259:20,
263:4, 274:17,
275:2, 290:15,
291:2, 310:11,
325:14, 325:21,
329:3, 329:12,
339:2, 346:17,
346:22, 365:1,
370:6, 370:22,
371:6, 371:22,
386:5, 396:16,
397:20, 398:6,
398:15, 400:12,
406:10, 407:6
policing
114:24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

146

policy
254:17, 255:3,
255:14, 255:23,
256:9, 256:18,
257:7, 257:17,
258:7, 258:18,
259:5
ponytail
324:17, 324:21
poorly
208:19
population
65:21
portions
402:15
pose
305:15
positioned
95:9
positively
135:11
possessed
19:24
possible
49:15, 360:4,
403:3, 403:6,
403:7
post
299:12, 317:5
potentially
403:24
potomac
355:2
powers
354:8
practice
234:3, 254:17,
255:4, 255:15,
255:24, 256:9,
256:18, 257:7,
257:18, 258:7,
258:18, 259:5
practiced
50:16, 185:20,
217:17, 221:7,
232:13, 238:1,
244:8
practicing
222:14

preceding
131:5
preparation
222:14, 222:15,
241:3
prepare
31:7, 31:14,
149:17, 149:22,
158:13
prepared
116:21, 138:2,
146:13, 164:22,
166:23, 185:5,
221:6, 224:9,
228:16, 277:13,
346:17, 350:20,
370:5, 370:23,
396:20, 399:15
prepped
216:5
presence
46:3, 46:4,
69:7, 101:17,
153:21, 171:16,
315:3, 315:10
present
5:10, 23:19,
41:23, 76:13,
76:19, 77:2,
77:6, 77:17,
78:3, 79:5,
94:17, 129:11,
155:14, 155:21,
157:10, 161:23,
162:16, 190:1,
190:8, 197:20,
198:14, 198:24,
199:7, 199:19,
207:17, 207:22,
208:8, 208:18,
208:21, 221:15,
319:23, 333:11
presented
251:12
presently
346:19
pressure
296:22

presumably
306:15
pretend
21:11
pretextual
409:21
pretrial
250:19, 251:13,
251:24, 252:8,
252:11, 253:4
pretty
212:13
prevent
289:24
previous
341:8
previously
55:19, 56:17,
58:2, 84:19,
112:3, 112:10,
114:22, 177:1,
184:6, 185:16,
227:18, 228:7,
246:6, 299:6,
348:6, 363:10,
381:6, 387:15,
404:20, 409:12
primarily
25:4
prior
27:6, 27:14,
27:22, 85:2,
111:18, 170:14,
170:19, 176:21,
178:19, 179:3,
181:17, 181:22,
185:12, 186:4,
188:17, 192:8,
198:2, 206:15,
208:22, 216:6,
221:8, 222:16,
223:16, 224:11,
226:10, 228:17,
228:18, 230:22,
232:11, 238:3,
244:9, 248:15,
271:5, 277:23,
340:23, 341:21,

354:16, 414:13
prison
36:22, 254:12,
254:19
priv
261:10
privilege
261:12, 261:14,
264:17, 275:16,
275:18, 279:4
probable
15:21, 16:3,
105:1, 140:15,
146:8, 146:14,
182:21, 302:20,
397:14
probably
55:7, 285:11,
323:19
problem
82:10, 148:5,
301:24
problems
148:4, 294:5,
296:8, 296:22
procedure
286:2
proceeding
251:6, 251:7,
270:14, 271:4,
317:6
proceedings
417:3
process
12:11, 12:19,
94:13
produce
338:19
produced
11:22, 196:10,
338:7, 338:9,
338:17, 370:15
product
192:8
professional
235:23, 236:1,
236:4
progress
18:12, 31:8,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    147

promised
303:24
promised
47:7, 248:19
promises
46:21, 157:8,
163:8, 164:4,
186:23
promotion
260:15
prompted
67:6
prompting
136:9
pronounce
298:1
proof
104:16, 239:20
proper
282:16
proposed
81:13, 252:9
prosecuted
15:15, 264:13,
415:19
prosecuting
377:18
prosecution
15:16, 103:20,
139:21, 189:4,
197:5, 207:15,
210:1, 230:24,
231:10, 264:4,
264:22, 265:5,
265:11, 265:19,
266:2, 266:8,
266:14, 266:20,
267:2, 267:7,
267:13, 267:19
prosecutor's
210:23
prosecutors
256:22, 257:22,
291:9, 378:5,
378:13, 416:10
prosecutors's
209:18
protect
92:3, 92:17,

92:19, 280:8
protected
13:6, 13:13
protecting
234:24, 235:1,
235:3
protection
78:7, 386:20,
387:5
protects
11:1
prove
233:20
provide
50:18, 60:14,
148:17, 158:5,
206:10, 271:9,
279:24, 280:18,
319:1, 407:1,
410:9
provided
27:20, 62:7,
63:10, 63:18,
160:14, 200:23,
202:12, 205:14,
205:18, 218:12,
222:12, 223:2,
223:12, 224:23,
224:24, 225:10,
225:15, 238:1,
244:17, 245:18,
271:10, 289:4,
292:8, 301:8,
353:6, 395:23,
407:14
providing
205:17, 236:23
provision
246:16
psychological
21:21
public
2:13, 418:24
pulled
48:22, 158:22,
357:3, 405:15
punt
373:3

purported
114:4, 288:19,
288:24
purportedly
166:24, 167:8,
168:13, 172:14,
346:16, 369:17,
371:8
purporting
184:24, 227:21
purports
112:11, 161:15,
164:21, 184:8
purpose
21:7, 21:8,
69:15, 81:4,
107:6, 204:4,
409:24
purposes
196:2
pursuant
2:11, 254:16,
255:3, 255:14,
255:23, 256:8,
256:17, 257:6,
257:17, 258:6,
258:17, 258:21,
259:4, 403:21,
419:24
pushed
80:4
put
48:12, 108:9,
110:6, 127:2,
132:18, 236:9,
241:13, 254:18,
376:4, 398:4

              Q

quarters
78:6, 98:7
question
10:19, 32:9,
113:6, 144:3,
196:6, 197:16,
197:18, 198:12,
200:13, 204:19,
214:13, 214:17,

214:18, 233:16,
235:15, 235:17,
235:20, 236:2,
236:13, 236:19,
237:5, 261:13,
274:5, 285:2,
285:3, 297:23,
301:18, 305:15,
305:20, 306:2,
306:6, 306:13,
306:14, 324:11,
351:6
questioned
215:8, 222:1,
222:2, 222:3,
298:13, 300:10,
300:18, 301:1,
383:24
questioning
8:22, 138:24,
316:22, 356:21,
363:9, 385:22,
403:2, 404:19
questions
54:4, 71:12,
102:6, 200:9,
200:19, 261:19,
262:2, 262:10,
262:18, 263:3,
263:19, 272:2,
274:3, 282:5,
282:14, 282:15,
282:19, 283:20,
306:16, 311:11,
324:2, 330:4,
333:6, 337:20,
381:7, 402:3,
403:16, 403:18,
404:4, 416:22,
419:19
quiet
236:15

              R

r-o-o-k
312:12
r-o-s-e-n-d-o
316:23

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

148

| | | | |
|---|---|---|---|
| r-u-v-a-l-c-a-b-a | re-read | reassert | 402:2, 402:8, |
| 33:11, 324:13 | 37:20 | 299:3, 356:19, | 403:1, 403:17, |
| **radio** | **re-reading** | 363:8 | 419:18 |
| 202:4 | 402:4 | **reassurances** | **recorded** |
| **raise** | **reaching** | 77:15 | 347:18 |
| 283:23 | 14:1 | **reassure** | **records** |
| **raised** | **read** | 76:23 | 6:10, 6:12, |
| 71:6, 71:12 | 124:23, 131:10, | **reassured** | 57:2, 58:8, |
| **ran** | 227:21, 248:8, | 77:7, 345:22 | 58:20, 204:21, |
| 202:8 | 268:20, 285:1, | **recalled** | 205:5 |
| **randomly** | 285:3, 364:13, | 28:20 | **recounted** |
| 358:14 | 365:1, 365:15, | **receive** | 28:5 |
| **randoms** | 402:13, 420:2, | 334:2 | **recovered** |
| 320:4 | 420:8 | **received** | 108:20 |
| **rank** | **reading** | 48:2, 219:1, | **red** |
| 9:18 | 420:4 | 230:15, 260:14, | 406:16 |
| **rankins's** | **ready** | 278:21, 291:23 | **reduced** |
| 156:5, 173:13, | 390:3, 390:7 | **recently** | 419:11 |
| 186:18, 187:8, | **real** | 317:5 | **referenced** |
| 188:16 | 253:15, 335:17, | **recess** | 402:19 |
| **rat** | 393:3 | 82:17, 175:3, | **referred** |
| 50:1, 93:19 | **reality** | 281:24, 297:20, | 419:21 |
| **rather** | 226:7 | 380:20 | **referring** |
| 30:20, 45:24, | **realize** | **recognize** | 117:2 |
| 134:4, 134:16, | 270:11, 271:2, | 135:5, 367:24 | **reflect** |
| 166:15, 199:12, | 372:23 | **recognized** | 208:19 |
| 199:14, 216:16, | **realized** | 104:13, 121:7, | **reflected** |
| 218:3, 218:11, | 55:6, 248:17, | 121:9, 122:1, | 58:21, 59:5, |
| 223:2, 229:5, | 397:14 | 123:4, 123:5, | 146:14, 149:23, |
| 323:22, 372:14, | **really** | 220:19, 237:9, | 251:13, 350:24, |
| 375:2 | 42:20, 56:5, | 352:3, 368:16, | 365:2 |
| **ray** | 76:17, 116:3, | 369:3, 370:5, | **reflections** |
| 33:5, 142:10, | 214:2, 214:11 | 377:23 | 128:17 |
| 184:21, 184:24, | **reason** | **recollection** | **reflects** |
| 325:12, 326:8, | 19:23, 44:23, | 242:10 | 114:2 |
| 326:15, 328:22 | 48:22, 52:9, | **record** | **refuse** |
| **rd** | 86:15, 104:23, | 6:18, 9:3, | 272:1 |
| 192:18, 192:21, | 119:18, 153:22, | 32:15, 42:8, | **refused** |
| 193:4, 193:13, | 157:19, 168:8, | 56:12, 82:15, | 42:15, 76:12, |
| 193:23, 194:2, | 287:8, 306:24, | 82:18, 112:23, | 77:17, 81:12 |
| 194:15, 195:2, | 314:2, 344:14, | 175:1, 175:4, | **regal** |
| 251:4, 251:22, | 345:13, 358:22, | 196:7, 196:14, | 123:4, 135:12, |
| 254:6, 282:10, | 399:2, 420:9 | 281:23, 282:1, | 226:22 |
| 293:1, 293:12, | **reasonable** | 297:18, 297:19, | **regard** |
| 293:24, 391:20, | 264:3 | 297:21, 311:10, | 23:24, 274:18, |
| 395:21 | **reasons** | 317:2, 323:22, | 274:20, 290:11, |
| **re-deposing** | 102:5, 104:22, | 370:12, 380:18, | 333:6, 381:6, |
| 402:9 | 363:10 | 380:21, 381:24, | 382:1, 404:19 |

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

149

regarding
102:6, 126:6,
136:8, 149:18,
163:19, 165:21,
167:17, 210:21,
211:5, 215:9,
216:17, 240:14,
262:18, 271:9,
273:22, 275:11,
297:6, 298:14,
300:11, 300:19,
301:2, 305:14
regret
245:21
regularly
18:11
regurgitate
81:17
regurgitating
127:15, 205:13,
218:14
reiterate
21:10
related
28:8, 92:10,
102:7, 194:14,
294:4, 296:7,
296:21, 387:7
relatedly
413:4
relating
277:22
relationship
26:3, 26:11,
331:2
relayed
28:19
relaying
87:7
release
149:2, 334:4,
335:3, 386:2
released
147:22, 148:2,
333:19, 335:17,
411:19
relied
104:22, 272:3,

272:4
rely
139:14, 271:16
relying
146:19
remain
11:4, 119:16
remember
56:6, 200:18,
224:5, 233:22,
237:16, 272:24,
273:2, 273:3,
283:19, 357:8,
357:11
remind
402:17
reminded
49:22
reminds
301:18
removed
49:7, 193:22,
193:24, 194:7,
194:13, 194:24
repeat
83:14, 95:23,
102:4, 169:19,
218:3, 306:4,
311:11, 390:7
repeated
122:15, 415:17
repeatedly
143:3, 143:12,
260:3
repeating
218:14
rephrase
117:4
report
6:14, 6:22,
6:24, 110:14,
113:11, 116:20,
117:7, 117:9,
117:13, 118:2,
118:8, 118:13,
118:23, 119:9,
119:15, 121:3,
121:13, 121:17,

121:24, 122:12,
122:24, 123:20,
124:5, 124:16,
126:23, 127:3,
127:12, 128:15,
128:16, 128:24,
129:10, 129:17,
130:15, 132:11,
132:12, 133:3,
133:4, 133:17,
135:2, 135:11,
136:7, 136:15,
136:16, 137:1,
137:10, 137:11,
138:3, 141:3,
146:14, 164:11,
164:22, 165:2,
165:15, 165:19,
166:22, 167:8,
167:16, 167:19,
168:4, 168:5,
168:12, 170:11,
170:12, 170:18,
172:14, 172:22,
173:3, 173:5,
184:8, 184:17,
185:5, 192:2,
192:4, 288:13,
288:18, 288:23,
303:24, 339:2,
346:17, 346:22,
347:7, 349:18,
349:24, 350:16,
350:19, 364:14,
365:1, 365:16,
370:6, 370:20,
370:22, 371:6,
371:23, 375:12,
397:20, 398:5,
398:15, 399:15,
400:12
reported
1:24, 86:4,
120:15, 122:23,
127:12, 130:5,
135:1, 135:10,
141:3, 166:3,
168:24, 169:6,

230:16, 347:13,
365:8, 371:23,
373:5, 374:8,
399:15, 399:21,
419:10
reporter
2:12, 7:9,
7:13, 298:2,
364:8, 419:5,
420:14, 420:22
reporting
346:23
reports
11:20, 31:8,
31:13, 52:3,
60:10, 60:22,
114:15, 115:13,
116:4, 116:12,
117:20, 149:17,
150:5, 194:1,
194:14, 195:1,
205:5, 256:2,
256:11, 291:3,
310:11, 329:3,
329:12, 350:11,
398:6
represent
7:17, 8:20,
196:14, 206:8,
334:20, 339:1,
370:14
representation
333:20
representations
21:1, 42:14
represented
78:4, 275:6,
289:9
representing
7:21, 122:13,
377:19
requested
57:1, 58:10,
59:4, 59:16,
285:3
reserve
416:24
respect
246:18, 335:1

Transcript of Ernest Halvorsen
Conducted on April 20, 2018 150

responded
201:23, 357:22,
358:2
responding
373:19
response
198:11
responsible
21:13, 92:3,
114:14, 116:11,
178:19, 179:3,
182:1, 223:4,
238:23, 334:5,
340:9, 341:9,
343:10, 344:23,
346:9, 354:10,
354:19, 355:19,
358:23, 411:21,
412:8
rest
113:7
result
17:6, 30:16,
34:6, 231:16,
247:15, 390:16,
397:19, 415:3,
415:5, 415:23
resulted
343:17, 344:17,
400:19
retaliating
408:7
retaliation
408:13
retire
9:11, 9:18
retrieved
396:2
retroactively
301:20
return
145:5
returned
49:8, 237:12
revealed
50:3, 166:4
revealing
192:6

review
113:3, 185:14
reyna
361:6, 361:14,
361:20, 361:24,
362:2
reynaldo
1:7, 1:13,
3:17, 18:3,
57:1, 58:10,
69:8, 165:8,
184:14, 247:17,
248:2, 292:6,
294:13, 322:5,
326:15, 337:21,
339:18, 340:21,
342:18, 343:15,
345:24, 347:17,
348:14, 348:20,
351:23, 355:7,
356:7
rfc-serrano
56:19, 58:3,
112:5, 112:14
richard
4:22, 289:10,
331:2, 331:11,
333:20
richmond
33:5, 325:13,
326:2, 326:4,
326:9, 326:16,
328:11, 328:16,
328:18, 328:22
rick
5:10, 7:11,
360:9, 361:24,
362:11
rico
154:7, 154:12,
266:9
ridiculous
235:22
riding
123:3
right-hand
59:6, 197:15
righted
35:3

rip
350:12
rivera
311:6, 311:12,
311:23, 313:15,
313:22, 314:3,
314:8, 314:16,
314:23, 315:4,
315:5, 315:11,
316:1, 316:7,
316:17, 363:5,
363:16, 364:19,
367:1, 377:1,
379:10, 379:21,
380:4
rivera's
313:8, 377:18
road
195:13
rob
84:14, 86:4,
86:24, 88:16,
249:5
robberies
36:17, 36:23,
48:3, 249:6
robbery
36:16, 41:9,
41:16, 62:20,
63:1, 72:5,
124:7, 124:24,
154:22, 157:21,
247:20, 248:16,
249:7, 250:8,
254:11
robert
32:24, 35:10,
39:11, 41:2,
41:17, 42:16,
47:19, 48:5,
50:12, 50:20,
93:13, 99:22,
120:3, 210:11,
324:2, 324:20,
325:2, 325:7,
325:14, 409:7,
411:1, 411:20
roberto
404:12

rock
5:5, 273:18,
273:22
rodrigo
10:1, 10:24,
12:5, 14:3,
14:20, 16:6,
16:12, 16:17,
16:23, 17:9,
17:21, 18:1,
18:23, 19:19,
20:1, 20:9,
20:21, 24:2,
26:19, 27:5,
28:6, 29:13,
30:17, 30:20,
31:16, 52:1,
52:11, 57:14,
60:5, 60:24,
61:9, 62:13,
62:19, 63:20,
69:6, 74:22,
77:18, 85:10,
91:17, 91:23,
92:9, 92:18,
93:5, 105:14,
111:7, 111:15,
112:12, 127:14,
129:13, 137:21,
138:18, 139:22,
140:17, 143:4,
146:4, 147:15,
148:13, 150:1,
150:7, 150:23,
153:6, 154:21,
155:4, 155:10,
162:16, 162:18,
163:20, 167:10,
168:3, 168:11,
168:19, 172:10,
173:14, 186:12,
187:5, 187:17,
188:2, 188:10,
198:4, 200:5,
201:23, 202:9,
202:10, 204:12,
211:22, 215:21,
217:2, 218:2,

218:4, 231:20,
237:11, 238:11,
238:15, 238:23,
239:18, 245:5,
247:1, 281:14,
296:1, 320:21
**rodriguez**
284:5, 284:10,
284:15, 285:6,
285:10, 285:15,
285:20, 286:2,
294:14, 294:20,
295:2, 295:8,
295:13, 295:19,
356:8, 356:14,
356:18, 356:21,
357:4, 357:9,
357:17, 357:22,
358:2, 358:23,
359:5, 362:9,
362:18, 364:18,
365:2, 365:8,
365:17, 366:2,
366:18, 367:15,
367:22, 368:15,
368:20, 369:17,
369:21, 370:3,
371:7, 371:15,
373:5, 373:12,
374:9, 374:19,
375:10, 375:17,
377:21, 404:15,
405:5, 405:11,
408:3, 411:3,
415:20, 416:5
**rodriguez's**
288:24, 296:7,
377:16, 378:7
**roland**
383:20
**role**
38:15, 38:17,
151:22
**rolled**
43:18, 43:24
**roman**
165:24, 290:6,
290:17, 290:21,

290:22, 291:3,
291:7, 291:13,
292:2, 296:17,
297:5
**romantic**
26:11
**rook**
312:11, 312:21
**room**
46:11, 46:17,
95:8, 95:10,
142:18, 143:19,
145:6, 155:15,
387:21, 389:7
**roosevelt**
40:15
**rosa**
395:23, 401:1
**rosen**
273:21
**rosendo**
292:16, 292:22,
293:5, 293:10,
293:15, 293:21,
294:4, 316:22,
317:12, 317:20,
318:2
**roughly**
396:3
**routine**
25:8, 142:9
**routinely**
292:6, 331:24,
358:7
**rubber**
195:13
**rue**
177:13
**rule**
212:15, 419:24
**rules**
234:14, 403:21,
419:24
**rumors**
211:20, 212:23,
213:11, 214:24
**run**
202:5, 320:8

**runner**
159:5
**russell**
299:16
**russell's**
320:7
**ruvalcaba**
32:6, 32:19,
32:22, 33:7,
33:10, 34:8,
35:17, 39:12,
39:23, 41:3,
41:10, 41:18,
50:12, 210:12,
324:12, 324:15,
325:3, 325:7,
328:5, 329:4,
329:12, 329:15,
329:20
**ruvalcaba's**
41:3

---
**S**
---

**s**
331:5, 331:13
**s-a-l**
312:20
**s-a-l-v-a-d-o-r**
324:12
**s-a-n-t-i-a-g-o**
321:22
**s-a-n-t-o-s**
321:4
**safety**
119:16
**said**
25:10, 42:2,
95:11, 96:19,
114:22, 131:7,
158:23, 159:11,
159:24, 160:1,
165:2, 184:2,
204:22, 283:18,
301:21, 302:2,
302:7, 302:14,
306:11, 316:10,
357:17, 369:17,
369:18, 369:24,

372:11, 379:2,
419:13, 419:20
**sal**
312:19, 313:1,
313:9
**sally**
33:16
**salvador**
32:5, 32:19,
324:12, 324:15
**same**
30:10, 45:15,
47:10, 59:19,
102:5, 107:22,
109:19, 160:11,
193:18, 195:7,
223:22, 249:8,
249:18, 250:11,
253:10, 253:17,
253:20, 264:24,
265:7, 265:15,
265:21, 266:4,
266:10, 266:16,
266:22, 267:3,
267:9, 267:15,
267:22, 268:5,
268:12, 269:5,
269:12, 269:20,
270:7, 270:18,
270:21, 271:12,
271:20, 272:8,
275:15, 276:9,
276:18, 277:2,
277:9, 277:17,
278:1, 283:9,
290:10, 299:3,
305:23, 309:19,
318:16, 320:15,
320:22, 321:6,
321:16, 321:24,
322:7, 322:15,
322:23, 323:7,
323:15, 330:3,
333:5, 338:1,
351:7, 361:15,
372:4, 373:2,
381:5, 382:1,
402:11, 404:18

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    152

sanchez
307:5, 307:11,
307:24, 308:5,
308:10, 308:15,
308:21, 309:1,
309:7, 309:12,
309:19, 309:24,
387:8
santiago
321:22, 387:8
santos
321:3
sat
36:5, 123:7,
206:16
satisfy
104:15
saw
11:17, 43:11,
43:16, 88:10,
106:6, 106:17,
107:9, 133:9,
134:18, 137:4,
155:3, 177:22,
178:10, 180:8,
181:5, 217:5,
226:22, 227:9,
228:4, 229:16,
230:6, 368:22,
394:14
say
40:13, 76:12,
87:11, 87:16,
89:7, 96:4,
96:12, 96:18,
97:3, 97:11,
107:22, 117:1,
130:2, 159:4,
159:9, 159:16,
159:22, 160:9,
162:24, 183:24,
194:7, 209:7,
212:22, 216:17,
247:14, 305:18,
306:5, 330:1,
330:2, 330:23,
372:1, 379:17,
402:1, 418:4

sayez
404:16, 405:13,
407:5, 408:4,
413:6, 413:16,
413:24, 414:11,
414:19, 415:8,
416:2, 416:14
saying
79:4, 97:10,
357:22, 358:2
says
113:21, 213:19,
372:21
scams
140:8
scene
68:18, 69:16,
70:3, 71:20,
87:19, 89:17,
108:5, 108:21,
109:4, 109:13,
137:15, 171:23,
199:7, 199:20,
203:22, 229:9
scheme
98:19, 99:3,
99:21
school
40:15
scooby
340:23, 347:16,
351:22, 352:5
script
131:14
seasoned
212:13
seat
394:2, 406:17
seated
155:16
second
10:6, 53:22,
102:3, 105:7,
120:23, 173:21,
215:17, 275:8,
281:17, 297:17,
297:18, 298:20,
371:5

seconds
10:10
section
323:19
secure
173:7, 200:3,
239:8, 244:19,
377:11, 382:24,
383:3, 389:17,
389:19, 416:14
secured
186:18, 188:6,
188:15, 334:3,
335:3, 349:9,
390:20, 416:2
securing
173:18, 174:6,
204:5, 204:9
see
58:9, 109:19,
110:8, 113:14,
114:1, 114:5,
121:12, 131:15,
135:4, 161:18,
164:23, 171:11,
185:9, 197:15,
197:21, 236:9,
246:20, 247:2,
247:20, 298:16,
300:21, 307:6,
315:20, 325:14,
325:20, 326:2,
327:9, 350:18,
367:16, 367:24,
384:9
seeing
84:12
seek
271:4
seen
15:16, 72:20,
84:5, 107:17,
109:5, 109:19,
110:2, 110:10,
111:22, 152:1,
168:20, 175:12,
175:24, 176:10,
176:20, 223:15,

231:19, 246:11,
283:14, 344:6,
349:19, 351:15,
374:12, 379:20
select
177:15, 178:6,
178:8, 179:14,
293:5, 293:10,
295:8, 295:13,
304:6
selected
309:19
sell
88:13
selling
154:1, 332:13
semi-automatic
200:17
sense
195:19, 408:4
sentence
36:21, 48:2,
249:4, 249:14,
249:15, 249:17,
249:24, 250:7,
253:6, 253:8,
253:16, 400:20
sentencing
248:16, 251:3,
251:6, 251:7,
251:11, 251:22,
252:10
separate
36:16, 140:6,
154:7
separately
157:21
september
251:4, 251:22,
254:6, 307:13,
308:11, 308:16,
309:2, 309:21,
312:5, 312:10,
312:12, 339:21,
340:2, 340:23,
341:13, 341:22,
342:9, 343:2,
343:17, 344:16,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

153

351:15, 355:1,
405:7, 405:14,
407:1, 412:22,
413:10, 414:23
**sergeant**
12:21, 13:24,
14:10, 14:15,
15:4, 18:7,
18:18, 22:2,
22:12, 51:13,
60:9, 60:20,
62:24, 66:24,
94:23, 106:13,
150:21, 151:12,
152:15, 153:11,
155:21, 160:21,
162:8, 164:1,
165:20, 166:5,
166:11, 166:15,
170:3, 170:13,
173:12, 175:8,
175:20, 176:7,
177:7, 180:13,
180:19, 230:2,
230:16, 339:14,
340:14, 341:6,
384:5, 384:16,
384:17, 397:14,
398:3, 416:2
**sergeants**
382:15
**serious**
409:12
**serrano's**
150:6, 174:1
**serve**
250:8
**served**
120:12, 253:14,
398:8
**set**
403:15
**sets**
114:24
**seven**
408:15
**seventh**
336:8

**several**
340:17
**shaky**
176:11, 240:6
**shape**
79:12, 277:14
**shared**
18:11, 256:21,
396:2
**she**
26:19, 27:4,
27:20, 28:6,
28:20, 50:19,
106:4, 106:6,
106:17, 107:9,
107:17, 107:21,
109:5, 109:19,
109:24, 110:2,
110:9, 110:10,
111:22, 130:5,
133:7, 133:9,
134:18, 135:4,
135:11, 137:3,
175:12, 175:24,
176:10, 176:20,
176:24, 177:1,
177:2, 177:3,
177:15, 177:22,
178:6, 178:7,
178:10, 179:14,
180:6, 180:7,
180:8, 181:4,
181:5, 181:10,
213:18, 223:15,
226:9, 227:8,
227:9, 227:11,
227:17, 228:6,
229:16, 242:8,
242:10, 242:15,
243:13, 243:15,
243:20, 244:2,
324:4, 355:6,
355:12, 365:8,
365:9, 367:15,
367:24, 368:6,
368:8, 368:16,
368:22, 369:2,
369:10, 370:5,

373:18, 374:11,
374:24, 375:2,
377:22, 378:8,
395:24, 396:1,
396:9, 397:2,
412:8, 412:10
**shift**
388:3
**shirt**
326:24, 327:2,
327:8
**shoot**
290:21
**shooter**
285:17, 285:17,
285:22, 287:14,
287:19, 288:4,
288:9, 292:18,
292:24, 294:22,
295:4, 300:12,
301:3, 303:3,
303:8, 307:7,
310:1, 315:18,
315:20, 342:15,
342:19, 348:14,
349:4, 355:23,
365:10, 367:16,
369:18, 375:24,
376:19, 379:19,
391:14
**shooter's**
288:15, 307:6,
327:10
**shooting**
19:1, 40:14,
165:22, 192:18,
193:12, 193:17,
286:4, 290:5,
290:16, 290:22,
292:2, 296:17,
341:10, 343:10,
343:16, 344:16,
349:19, 351:15,
352:4, 352:18,
354:20, 355:1,
355:8, 365:3,
365:4, 365:7,
365:9, 368:22,

371:14, 378:23,
379:4, 383:17,
383:22, 405:15,
407:6, 408:12,
411:22, 414:23
**shop**
88:13, 89:9
**short**
174:22
**shorthand**
2:12, 419:5,
420:14, 420:22
**shortly**
24:19, 131:1,
365:3, 386:12
**shorty**
351:20, 352:3,
352:17, 352:22
**shot**
72:4, 202:9,
298:16, 324:14,
341:18, 341:24,
342:8, 345:13,
346:5, 347:1,
347:9, 369:22,
376:24, 379:20,
412:21, 413:8
**shots**
315:19, 394:14
**should**
50:10, 55:7,
113:2, 177:15,
178:6, 178:8,
179:14, 181:4,
268:10, 277:15,
284:10, 286:14,
305:18, 378:15,
379:11, 408:22,
412:8
**show**
68:24, 133:23,
197:18, 198:4,
198:12, 198:23,
200:10, 200:14,
201:3, 201:21,
219:15, 222:7,
237:3, 350:15,
376:16, 410:1

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

154

showed
68:18, 69:5,
101:23, 102:14,
133:5, 134:12,
169:16, 199:6,
220:9, 284:4,
284:9, 284:14,
286:8, 286:13,
286:18, 287:22,
293:17, 293:23,
295:21, 296:2,
301:11, 303:12,
304:7, 309:6,
309:11, 315:3,
371:15, 375:24,
377:21, 414:3
showing
69:16, 71:19,
72:19, 181:23,
301:23
shown
169:1, 414:12
sic
74:1
side
108:12, 159:23,
359:24
sidley
279:11, 279:18,
281:4, 281:9
sierra
282:9, 283:7,
283:14, 283:16,
284:5, 285:10,
286:9, 287:3,
288:20, 289:1
sierra's
284:16, 285:6,
286:20, 286:24,
289:5, 289:8,
289:18, 290:1
sign
165:14, 189:17,
396:17, 420:2,
420:8
signature
11:21, 113:13,
113:20, 114:4,

165:3, 165:8,
184:12, 184:22,
184:23, 185:1,
339:3, 350:17,
370:20, 416:24,
419:22, 420:9,
420:13
signature-emhzk
420:18
signed
117:15, 117:19,
163:10, 165:15,
192:7, 251:13,
350:21, 397:1,
397:2, 420:6
signing
185:16, 420:4
silence
258:21
silent
11:4
similar
107:23, 192:17
similarities
193:16
simple
36:16
simply
277:6
simpson
357:9, 357:18
since
119:17, 166:16,
338:10, 341:8,
372:11, 404:2
single
306:6, 309:7,
309:12
sit
263:11
situations
299:14
six
249:4, 250:9,
394:14
six-year
248:18, 249:4,
249:14, 253:6

skill
114:23
skills
115:13, 398:5
skinny
44:14, 406:18
slapped
143:3
slapping
143:10, 143:12,
143:18
sloppy
53:8
slowly
237:7
small
27:13, 43:18,
43:23
smart
359:23
snake
102:1
snitch
50:1, 93:12,
93:19, 100:7,
140:5
so-called
340:22, 376:5
sole
409:24
solely
139:14
solita
190:2, 190:21,
191:3
solve
354:1, 354:3
some
9:24, 10:22,
24:6, 28:7,
37:14, 38:8,
51:2, 63:13,
85:9, 88:13,
89:22, 111:19,
148:17, 198:1,
226:13, 227:8,
236:19, 248:15,
249:2, 270:12,

282:5, 299:12,
324:2, 352:23,
393:14, 400:6,
408:2
somehow
137:13
someone
40:14, 54:22,
66:22, 115:6,
115:12, 181:9,
212:23, 225:19,
235:8, 293:6,
293:11, 295:9,
295:14, 340:21,
369:2, 370:4
something
29:5, 209:12,
212:14
sometime
123:21, 333:4
sometimes
35:2, 143:18
somewhat
26:3
somewhere
368:17
son
44:9
sonia
354:24, 355:5,
355:22
sorry
42:10, 54:14,
115:16, 136:20,
152:19, 177:10,
192:21, 196:2,
268:20, 283:17,
284:21, 285:2,
292:15, 302:13,
305:23, 306:12,
350:2, 350:4,
350:5, 363:21,
364:8, 379:22,
384:10, 385:14
sort
30:10, 54:15,
103:19, 115:14,
231:9, 359:16

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    155

soto
272:19
sotos
3:19, 273:4,
273:5, 273:13
sought
279:12
sound
236:6
south
4:6
spanish
25:11, 224:1,
227:7, 312:4,
312:9, 316:11,
366:11, 366:20,
366:24, 367:4,
367:7, 367:23,
368:7, 370:4,
371:16, 374:2,
377:21, 380:10
spanish-speaking
25:3, 25:5,
366:3
speak
42:1, 246:23,
272:12, 272:19,
273:12, 273:17,
273:21, 274:8,
274:11, 274:15,
275:1, 365:17
speakers
366:11
speaking
25:11, 30:17,
116:24, 212:20,
235:12, 273:3
special
354:8
specific
283:22, 324:4
specifically
15:3, 19:17,
22:16, 23:24,
27:4, 41:13,
44:19, 56:22,
65:8, 115:8,
178:23, 181:14,

201:5, 279:18,
317:7, 348:12,
349:1, 392:11,
398:14, 401:19
speculation
17:12, 21:15,
43:6, 140:10,
146:24, 157:3,
170:6, 190:16,
193:8, 194:20,
209:2, 212:7,
213:2, 232:20,
234:9, 239:22,
244:22, 248:22,
252:2, 252:21,
253:22, 270:19,
312:14, 319:15
speeches
235:11
spell
298:1, 298:13,
324:11, 337:8
spend
403:8
spent
252:10, 396:15
spitzer
182:6, 182:13,
182:18, 183:2,
183:5
spoke
24:17, 65:8,
94:23, 151:11,
302:7, 302:14
spontaneously
227:17
spot
121:5, 121:19,
309:3
springfield
159:12, 198:5,
199:1, 199:8,
201:7, 201:22,
203:8, 203:14,
203:23, 233:12,
236:21, 237:2,
237:7, 237:8
square
282:11

ss
419:2
st
291:23
stamp
56:12, 56:18,
58:3, 112:16,
113:11, 117:8,
172:16, 184:7,
196:7, 338:4,
338:6
stamped
112:13, 370:13
stamps
206:8, 338:16,
338:20
stand
216:7, 217:18,
221:8, 222:16,
224:11, 228:18,
230:22, 232:12,
238:3, 244:9
standing
97:12, 102:4,
282:22, 283:19,
283:24, 290:10,
299:5, 301:19,
302:3, 305:24,
306:4, 306:7,
306:9, 306:10,
306:15, 311:11,
317:2, 318:16,
320:15, 320:22,
321:6, 330:3,
333:5, 337:20,
338:1, 356:20,
363:8, 381:5,
382:1, 404:18,
405:16
star
113:22, 114:3,
339:4, 339:10
start
126:1, 131:8,
146:10, 167:17,
194:10, 207:11,
220:11, 363:23,
408:8

started
18:22, 237:6,
368:7, 405:15
starting
350:7, 388:3
state
2:13, 9:2,
37:17, 79:18,
87:5, 112:18,
112:22, 138:3,
194:3, 194:17,
206:6, 239:19,
256:22, 257:21,
257:23, 264:22,
277:1, 377:15,
377:17, 378:4,
378:13, 396:9,
396:10, 402:8,
416:10, 419:1,
419:6
stated
124:8, 125:2,
209:16, 210:5,
311:17, 346:24,
347:9, 363:10,
381:6, 392:22,
393:15, 395:24,
404:21
statement
50:11, 50:17,
50:19, 70:6,
83:9, 90:11,
95:22, 97:7,
104:14, 104:24,
109:10, 110:18,
121:12, 123:10,
123:20, 124:4,
124:15, 125:22,
126:3, 128:22,
129:17, 129:21,
130:14, 133:16,
139:2, 145:8,
158:6, 158:14,
161:16, 161:18,
161:23, 162:5,
162:6, 162:15,
162:23, 163:3,
163:10, 166:23,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                      156

173:19, 174:6,
185:14, 185:15,
186:3, 186:20,
187:9, 188:17,
188:20, 189:16,
189:24, 190:9,
190:11, 190:22,
191:8, 191:20,
192:6, 192:11,
217:1, 218:2,
218:3, 218:15,
221:1, 226:14,
232:14, 235:23,
238:20, 247:6,
247:8, 248:9,
347:5, 347:8,
347:21, 347:22,
348:3, 352:9,
353:5, 369:16,
371:7, 373:24,
374:18, 378:7,
388:22, 389:17,
390:19, 394:22,
395:14, 395:23,
396:17, 397:1,
397:3, 398:15,
400:4, 400:10,
400:13, 400:24,
403:11
**statements**
70:12, 88:1,
88:2, 88:24,
89:1, 96:12,
96:18, 97:3,
97:5, 97:11,
101:3, 105:21,
122:7, 122:11,
122:14, 124:22,
127:24, 128:5,
128:7, 128:14,
136:6, 136:9,
138:4, 139:15,
146:20, 148:4,
148:17, 149:24,
162:14, 163:19,
167:6, 167:15,
167:18, 167:20,
168:5, 168:12,

172:17, 172:24,
173:8, 186:9,
187:22, 187:23,
204:22, 205:11,
207:1, 234:16,
272:5, 279:24,
280:19, 281:11,
366:9, 375:10,
375:11, 383:1,
397:20, 397:21,
398:7, 398:17,
399:4, 399:11,
400:16
**states**
1:1
**stating**
288:14
**station**
28:16, 28:21,
29:5, 63:19,
84:5, 84:13,
84:19, 85:1,
85:10, 106:6,
106:17, 107:9,
107:17, 109:6,
109:20, 110:2,
110:10, 111:14,
111:23, 129:23,
130:2, 130:3,
130:6, 130:16,
132:4, 133:9,
134:6, 134:18,
134:19, 135:5,
135:14, 135:20,
137:4, 147:13,
175:12, 176:1,
176:10, 176:20,
177:22, 178:10,
180:7, 181:5,
223:6, 223:16,
223:23, 224:3,
224:23, 226:4,
226:10, 227:9,
229:2, 229:16,
230:6, 242:12,
242:18, 243:14,
243:23, 325:14,
325:21, 396:16,

407:6
**stay**
94:5, 125:23,
323:21
**stayed**
159:18
**stenographically**
419:10
**step**
27:13
**steps**
12:2, 31:14,
204:10
**steve**
313:14, 316:6
**steven**
314:14, 314:21
**stewart**
279:19, 280:1,
280:13
**still**
42:15, 77:16
**stolen**
88:15
**stomach**
155:22
**stood**
124:12, 251:5,
376:6
**stoolie**
50:1
**stoop**
405:17
**stop**
15:7, 45:20,
46:1, 74:9,
74:17, 97:9,
97:19, 125:15,
157:15, 232:2,
389:15
**stopped**
28:15, 202:2,
387:5
**stopping**
28:15, 174:19
**store**
349:17
**stories**
80:12, 81:13,

199:17, 205:13
**story**
66:7, 72:11,
81:16, 83:3,
85:19, 85:20,
92:24, 94:13,
95:6, 105:21,
122:15, 127:15,
132:22, 151:6,
157:23, 169:18,
171:2, 171:10,
172:1, 173:13,
189:14, 191:18,
283:13, 296:15,
390:8, 391:4
**straight**
389:6
**street**
2:5, 3:6, 3:13,
3:20, 4:6, 5:6,
7:7, 72:21,
73:5, 107:8,
109:18, 121:1,
202:7, 211:20,
212:23, 213:12,
214:24, 219:12,
340:22, 352:4,
368:17, 405:12,
412:12
**streets**
34:24, 50:3,
115:7, 227:8,
227:15, 228:3,
254:4, 332:17,
343:15, 344:2,
348:21
**strike**
14:13, 20:15,
40:10, 43:11,
43:17, 45:1,
55:8, 59:14,
67:16, 90:21,
101:4, 104:22,
105:8, 114:12,
120:13, 125:23,
141:19, 146:11,
152:19, 156:5,
167:17, 170:23,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    157

173:4, 187:22,
190:23, 192:3,
193:23, 194:10,
199:13, 218:23,
225:11, 234:20,
243:1, 333:13,
345:7, 355:15,
360:17, 363:14,
363:21, 371:9,
377:16, 381:19,
383:12, 384:15,
388:19, 395:8,
395:9, 408:8,
415:4
**striking**
46:16
**string**
48:3
**stripes**
158:22, 159:10,
159:17, 159:23,
159:24, 160:9,
169:10
**stupid**
44:9
**subject**
54:1
**subjects**
263:10, 316:21
**submitted**
118:3, 118:8,
418:11, 418:12
**subpoenaed**
194:3, 194:17,
195:5
**subscribed**
418:19
**substance**
71:21, 174:12
**successful**
158:5, 366:8
**successfully**
148:11, 163:8
**such**
292:9, 310:18,
332:12, 362:1,
420:7
**suffered**
37:15, 248:1

**sufficiently**
196:22
**suggest**
20:7, 21:11,
52:15, 179:13,
283:6, 301:9
**suggested**
177:14, 178:6,
181:3, 199:18,
230:4, 378:15
**suggesting**
257:9, 399:13
**suggestion**
60:3
**suggestive**
177:8, 179:8,
317:21, 318:3,
327:16, 376:17
**suite**
3:6, 3:20, 4:7,
5:6
**sum**
71:21, 174:11
**summarized**
166:23
**summary**
371:7
**summer**
296:24
**supervising**
397:13, 416:1
**supervisor**
12:21, 18:6,
18:18, 33:15,
33:23, 51:12,
150:20, 151:11,
230:2, 339:13
**supplemental**
6:14, 6:24,
113:10, 116:20,
117:7, 117:9,
118:13, 119:9,
122:23, 124:16,
126:23, 127:3,
127:12, 128:24,
133:4, 133:17,
135:1, 136:7,
136:16, 136:24,

164:11, 164:21,
165:15, 167:7,
167:16, 170:12,
172:13, 184:8,
184:17, 185:4,
192:2, 192:4,
339:2, 347:7,
350:16, 350:19,
370:20, 370:22,
375:12, 398:6,
399:15, 400:12
**supplementary**
6:22, 170:11,
170:17
**supplied**
217:2
**supposedly**
75:15, 88:14,
160:2
**supreme**
420:1
**sure**
10:7, 10:20,
48:1, 53:1,
55:12, 56:14,
77:8, 82:10,
117:2, 117:3,
144:21, 174:24,
282:24, 283:21,
284:21, 297:24,
299:4, 338:18,
364:10, 367:7,
370:15
**surrea**
251:5, 251:12
**susceptible**
319:12
**suspect**
156:22, 262:20,
292:8, 298:21,
299:20, 302:20,
305:16, 306:24,
311:5, 314:2,
318:9, 320:5,
325:20, 326:23,
327:11, 337:22
**suspects**
34:20, 39:1,

45:11, 156:13,
257:9, 257:20
**suspicious**
103:7, 140:5
**sworn**
8:12, 8:15,
418:4, 418:19,
419:14
**symptoms**
37:15, 38:5,
38:10

| T |
| --- |

**t-r-a-n**
315:16
**t-shirt**
357:10, 365:11,
367:17, 374:10,
374:20, 375:4
**tactic**
34:17, 38:23
**tactics**
47:17, 48:11,
259:15
**tag**
142:3
**take**
10:6, 10:9,
50:11, 50:19,
61:20, 82:5,
82:9, 125:10,
174:22, 190:22,
202:4, 248:6,
248:8, 253:7,
281:21, 320:8,
351:8, 352:21,
380:16, 390:19,
413:17
**taken**
7:2, 63:3,
82:17, 108:18,
109:2, 161:16,
175:3, 224:2,
230:3, 281:24,
297:20, 380:20,
396:11, 408:14,
418:6, 418:8,
419:9

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

158

| | | | |
|---|---|---|---|
| **taking** | 49:5, 50:10, | 231:19, 232:14, | 289:18, 297:5, |
| 7:17, 82:12, | 66:22, 80:12, | 234:16, 269:19, | 377:10, 418:10 |
| 190:8, 216:7, | 89:13, 112:23, | 278:12, 278:18, | **th** |
| 221:8, 222:16, | 151:5, 157:14, | 401:2 | 7:8, 32:18, |
| 224:11, 228:17, | 158:21, 163:17, | **testifying** | 33:13, 35:10, |
| 228:18, 230:22, | 163:24, 172:1, | 22:24, 186:20, | 36:1, 37:8, |
| 232:11, 238:3, | 179:19, 181:8, | 221:9, 224:5, | 39:10, 56:24, |
| 244:9, 252:16, | 191:14, 196:6, | 245:22, 290:1, | 58:9, 59:3, |
| 409:24 | 265:13, 274:4, | 294:6, 296:9, | 150:14, 152:9, |
| **talk** | 281:3, 281:8, | 296:23 | 161:17, 164:22, |
| 49:15, 99:19, | 300:12, 301:3, | **testimony** | 170:4, 172:15, |
| 210:1, 323:24 | 328:4, 348:12, | 23:9, 23:11, | 174:5, 176:21, |
| **talked** | 372:16, 378:4, | 67:19, 151:15, | 177:10, 177:16, |
| 151:19, 160:10, | 419:14 | 185:21, 187:10, | 177:22, 178:20, |
| 195:13 | **telling** | 187:23, 188:7, | 179:4, 180:21, |
| **talking** | 72:20, 73:4, | 188:16, 196:15, | 180:22, 188:23, |
| 35:10, 124:6, | 80:14, 171:10, | 197:3, 197:10, | 189:12, 189:24, |
| 124:24, 130:3, | 233:19, 308:16, | 198:19, 200:3, | 190:23, 191:20, |
| 131:17, 284:23, | 309:2, 396:8 | 200:22, 200:24, | 192:7, 207:15, |
| 394:7 | **tendered** | 202:12, 202:16, | 219:12, 230:15, |
| **tall** | 150:5 | 202:17, 202:20, | 233:6, 241:14, |
| 406:13 | **territory** | 204:3, 205:18, | 246:10, 247:6, |
| **tammy** | 385:1 | 205:19, 206:11, | 251:20, 280:14, |
| 4:4, 8:9 | **testified** | 206:16, 206:18, | 284:6, 286:9, |
| **tan** | 8:15, 152:22, | 208:3, 208:4, | 287:24, 294:16, |
| 28:22, 85:12, | 153:3, 154:13, | 211:4, 214:23, | 294:23, 295:5, |
| 130:10, 134:21, | 198:11, 204:20, | 215:24, 216:1, | 295:10, 295:15, |
| 137:3 | 205:4, 205:9, | 216:5, 217:12, | 295:21, 296:3, |
| **tan-colored** | 209:23, 210:19, | 217:13, 217:16, | 296:13, 303:24, |
| 123:3 | 211:18, 211:19, | 219:22, 221:5, | 318:18, 318:23, |
| **target** | 215:15, 216:23, | 221:6, 222:12, | 324:15, 324:21, |
| 32:23, 84:14 | 217:19, 218:22, | 224:8, 224:9, | 325:11, 326:1, |
| **tattoo** | 218:24, 219:11, | 228:8, 228:11, | 326:11, 326:17, |
| 304:16, 304:21 | 220:16, 220:22, | 228:15, 229:14, | 340:23, 341:13, |
| **team** | 221:22, 223:22, | 230:23, 233:23, | 341:22, 343:2, |
| 142:3 | 226:19, 227:4, | 237:17, 237:20, | 350:17, 356:10, |
| **teenage** | 227:14, 228:2, | 237:24, 238:1, | 357:2, 364:7, |
| 364:18 | 230:14, 232:24, | 239:5, 240:13, | 370:6, 371:9, |
| **teens** | 233:9, 237:12, | 241:5, 242:21, | 375:13, 381:3, |
| 406:19 | 241:4, 241:12, | 244:4, 244:7, | 381:14, 381:22, |
| **telephone** | 242:15, 243:3, | 244:16, 245:12, | 382:19, 384:9, |
| 43:19, 43:24, | 244:2, 245:2, | 245:17, 246:18, | 384:10, 386:6, |
| 221:23, 222:1, | 278:10 | 247:7, 247:15, | 386:21, 387:20, |
| 389:9 | **testify** | 255:17, 263:12, | 391:23, 392:24, |
| **tell** | 66:9, 68:2, | 264:4, 264:14, | 393:5, 396:4, |
| 11:5, 11:10, | 155:2, 185:7, | 270:12, 270:15, | 398:18, 399:5, |
| 12:2, 27:4, | 186:2, 206:23, | 271:4, 271:8, | 399:16, 400:11, |
| 47:16, 48:21, | 212:2, 224:21, | 271:9, 289:4, | 419:7 |

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

159

**than**
9:17, 30:20,
45:24, 120:5,
134:16, 234:15,
259:19, 293:6,
295:9, 302:1,
323:22, 354:1,
372:14
**thank**
131:22, 214:4,
317:1, 318:15,
337:12
**thanks**
82:7, 299:23
**that's**
7:16, 10:17,
32:9, 40:4,
42:11, 54:2,
56:2, 82:14,
102:7, 113:16,
117:7, 131:21,
156:24, 185:8,
198:7, 198:14,
200:12, 234:21,
235:7, 235:18,
282:16, 299:11,
299:17, 323:23,
329:24, 339:2,
358:6, 372:1,
372:20, 372:22,
383:13, 402:6
**their**
15:17, 23:11,
39:3, 52:16,
89:9, 99:18,
126:6, 129:12,
182:22, 188:3,
193:6, 206:16,
245:18, 245:24,
257:21, 258:20,
268:19, 269:4,
280:21, 291:10,
318:5, 331:4,
332:1, 332:18,
336:23, 383:3,
413:9
**them**
15:21, 22:18,

35:2, 53:19,
61:22, 73:8,
87:6, 88:1,
124:6, 124:23,
153:24, 158:24,
176:12, 177:3,
180:8, 182:20,
183:5, 183:15,
205:14, 219:6,
219:14, 219:15,
220:3, 240:14,
243:16, 246:20,
304:7, 318:3,
327:24, 350:9,
350:12, 383:3,
385:21, 394:7,
394:16, 411:11,
412:11, 413:17,
414:12, 414:13
**themselves**
7:13, 95:9,
190:10
**then**
39:1, 43:2,
56:12, 64:6,
70:5, 73:15,
83:3, 90:10,
96:17, 108:3,
122:11, 126:22,
145:2, 156:14,
159:10, 159:11,
167:19, 190:11,
219:14, 220:23,
221:23, 222:4,
233:15, 235:17,
237:6, 238:21,
246:21, 302:3,
306:12, 315:12,
323:19, 340:15,
350:21, 375:16,
394:14, 402:5,
419:16, 420:7
**theorized**
408:9
**theory**
101:14, 408:6
**there**
15:20, 19:6,

21:11, 52:15,
60:2, 63:2,
80:20, 85:9,
109:11, 117:15,
125:10, 125:15,
125:21, 130:9,
131:15, 140:14,
165:16, 168:8,
182:21, 183:24,
193:12, 209:7,
214:13, 214:15,
226:13, 226:24,
239:15, 239:16,
263:10, 278:11,
298:2, 318:8,
332:8, 364:17,
371:6, 397:14,
402:15, 409:13,
411:7
**there's**
324:6, 403:19
**thereafter**
246:22, 419:10
**therefore**
57:13, 408:12,
409:14
**thereof**
420:4
**these**
58:18, 77:24,
81:12, 121:10,
122:6, 122:11,
122:13, 124:22,
128:14, 137:18,
138:3, 139:12,
154:11, 172:23,
173:7, 219:1,
220:2, 222:5,
274:2, 283:20,
301:22, 324:4,
325:15, 326:10,
403:18, 413:5
**they**
25:11, 27:14,
28:15, 30:10,
37:15, 53:1,
53:20, 55:12,
77:8, 78:19,

84:5, 84:13,
86:4, 86:11,
86:23, 87:1,
87:6, 88:12,
88:15, 89:9,
95:10, 121:10,
124:7, 124:24,
130:6, 130:7,
145:16, 153:24,
154:13, 158:23,
159:11, 160:10,
160:17, 190:9,
202:4, 208:21,
223:5, 246:24,
253:5, 254:20,
258:9, 259:18,
260:10, 276:22,
277:6, 324:3,
328:23, 332:19,
334:14, 340:9,
353:13, 360:1,
386:4, 393:3,
393:13, 394:3,
414:21
**they're**
372:4
**thin**
373:8, 406:13,
406:15
**thing**
143:20, 160:11
**things**
56:4, 96:19,
324:4, 332:12
**think**
56:11, 82:12,
131:19, 131:22,
175:14, 195:18,
196:21, 214:6,
272:22, 282:15,
298:3, 299:21,
301:24, 311:5
**third**
81:16, 100:6,
146:3
**thomas**
282:9
**those**
14:12, 36:23,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

160

38:10, 42:13,
52:18, 60:3,
60:24, 61:11,
62:10, 77:15,
85:17, 88:2,
89:1, 96:19,
97:4, 111:20,
133:9, 134:21,
150:5, 167:19,
191:4, 200:18,
200:19, 201:10,
217:8, 218:13,
218:14, 218:23,
219:13, 223:4,
223:15, 275:12,
282:20, 282:21,
299:14, 330:4,
375:11, 400:16,
401:17, 401:18,
402:2, 402:11,
407:13, 411:10,
414:3, 415:16,
415:23
**though**
32:24, 69:19,
75:21, 117:13,
163:10, 182:21,
232:16, 420:6
**thought**
338:11, 408:1
**threatened**
157:21, 396:8
**threats**
157:8, 186:21,
247:16, 294:3,
296:6, 296:20
**three**
18:10, 28:22,
30:19, 36:16,
52:18, 60:3,
60:24, 61:12,
85:11, 101:3,
121:10, 124:6,
124:23, 130:9,
134:12, 134:21,
139:12, 140:6,
176:19, 202:2,
217:3, 219:4,

220:2, 222:5,
223:2, 249:5,
259:19, 283:15,
405:23, 406:12,
407:7
**three-and-a-half**
253:15
**through**
15:16, 25:4,
37:10, 37:16,
112:5, 112:14,
113:7, 113:12,
117:8, 125:22,
161:15, 162:6,
163:7, 164:4,
164:19, 164:20,
172:16, 183:23,
183:24, 184:1,
184:7, 186:21,
202:9, 204:21,
205:5, 205:10,
206:9, 262:21,
320:8, 366:19,
367:23, 368:7,
373:7, 390:20,
412:17, 418:7,
419:11
**throughout**
94:5
**thus**
408:4
**till**
17:17
**time**
7:9, 26:15,
53:1, 53:21,
55:12, 61:9,
79:5, 80:18,
86:6, 140:24,
173:21, 174:12,
195:14, 197:20,
198:14, 200:16,
231:10, 247:18,
250:19, 251:14,
252:19, 253:4,
253:15, 278:22,
289:8, 297:14,
306:11, 336:2,

351:7, 351:9,
352:18, 356:15,
359:16, 372:5,
372:11, 378:22,
395:9, 403:4,
404:5, 418:8,
419:20
**times**
43:12, 44:14,
53:8, 53:9,
64:3, 202:10,
259:19, 336:21,
402:17
**timing**
131:17
**timothy**
22:17, 150:15,
152:9, 161:16,
162:8, 163:9,
164:3, 165:21,
166:24, 168:13,
168:18, 169:1,
169:7, 172:18,
172:24, 174:7,
185:6, 185:13,
185:21, 186:1,
186:9, 187:3,
187:8, 187:14,
188:15, 202:24,
230:17, 231:1,
233:4, 233:18,
236:21, 238:20,
241:15, 281:11
**tino**
393:2, 393:13,
393:17, 394:3,
394:5, 396:1
**titled**
320:3
**today**
7:8, 7:18, 8:8,
8:23, 82:13,
204:21, 263:11,
264:5, 264:14,
269:1, 270:15,
271:9, 272:6,
273:23, 282:6,
404:4

**together**
67:14, 110:7,
114:16, 241:14,
348:18, 353:4,
356:7, 376:5,
391:2
**tom**
192:19, 192:22
**tony**
363:4, 368:17,
368:21, 374:1,
375:17, 376:1,
376:23, 377:19,
378:14, 379:11,
379:18, 380:3,
380:9
**too**
27:13, 29:20,
124:14, 133:15,
195:20, 205:9,
228:11, 374:19
**took**
12:2, 26:19,
27:14, 31:15,
35:2, 61:10,
62:6, 122:12,
137:18, 153:13,
191:4, 204:11,
210:22, 217:18,
228:23, 229:5,
237:4, 238:11,
238:15, 375:17,
411:10
**tool**
45:11
**top**
373:4
**torrence**
381:3, 381:14,
381:22, 382:18,
384:20, 390:11,
391:7, 391:14
**towards**
112:17
**tracking**
350:4
**tran**
315:16, 315:24,

316:6, 316:16
**transcript**
6:16, 6:18,
196:15, 235:7,
418:5, 418:10,
420:3, 420:5,
420:8
**transcription**
419:12
**transferred**
189:3
**transpired**
27:21, 49:24
**traumatized**
412:5
**trial**
120:18, 193:6,
205:19, 206:11,
231:3, 239:6,
244:17, 245:3,
245:18, 269:19,
270:13, 278:11,
278:17, 289:5,
289:8, 289:18,
290:1, 297:3,
297:12, 313:8,
328:12, 361:13,
377:11, 400:18,
401:3, 403:23
**trials**
23:2, 23:9,
206:16, 258:9
**trick**
196:6, 229:15
**tricked**
376:22
**tried**
26:10, 53:9,
53:17, 66:8,
67:18, 68:1,
76:23, 78:16,
86:24, 154:5
**trier**
212:22, 224:22,
225:8, 225:14,
225:17, 232:4,
234:6, 239:14,
241:5

**trouble**
331:5, 331:18,
332:1, 332:12,
332:19, 336:24
**trunk**
227:1
**trust**
42:20, 76:17
**truth**
329:13, 419:14,
419:15
**truthful**
64:4, 70:10,
70:12, 128:16,
247:7, 247:8
**truthfully**
164:14
**try**
39:3, 110:1,
144:4, 171:2,
196:5, 229:1,
234:4, 250:18,
352:16
**trying**
80:11, 195:14,
303:14, 327:10,
351:5, 372:17,
372:18
**turn**
76:18, 112:15,
127:22, 304:15,
304:20, 305:3
**turned**
379:4
**two**
154:6, 207:23,
252:19, 275:6,
318:8, 350:10,
350:11, 363:6,
385:10, 392:24,
393:13, 394:6,
394:14, 403:8,
412:6, 414:22
**type**
85:9, 90:4,
110:7, 172:23,
200:15, 218:1,
259:7, 408:2

**typed**
117:15
**types**
110:8
**typewriting**
419:11
**typewritten**
113:21

**U**

**ultimately**
191:9, 191:19,
386:2
**unable**
137:3, 176:19,
177:20, 180:1,
335:24, 340:8,
341:9, 341:23,
342:14, 354:2,
365:9
**unaware**
190:23
**unconstitutional-
ly**
259:14
**under**
186:10, 187:10,
206:24, 217:19,
265:12, 265:13,
265:20, 270:13,
408:6
**underlying**
102:8
**underneath**
113:20
**undersigned**
420:10
**understand**
8:24, 32:12,
113:5, 209:8,
260:22, 264:2,
271:11, 272:7,
306:7
**understanding**
30:3, 38:9
**understood**
306:10
**unduly**
317:20, 318:2

**unfair**
327:9
**unfairly**
327:24
**unique**
88:23
**unit**
64:16, 64:24,
65:10, 68:6,
68:16, 74:2,
80:2, 82:23,
98:4, 100:24,
101:2, 119:3,
120:16, 189:4,
207:15, 209:18,
220:5, 220:12,
221:15
**united**
1:1
**unknown**
340:22
**unlawful**
398:9
**unless**
402:13
**unrelated**
165:22, 383:11,
383:12, 383:16
**unspoken**
30:3
**unsuccessful**
145:3, 359:14
**unsuccessfully**
88:15
**until**
71:6, 86:12,
386:21
**untrue**
118:7, 121:24
**upon**
269:18, 272:3,
272:4, 419:16
**upper**
59:6
**us"**
207:24
**use**
34:8, 34:17,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

162

35:16, 39:3,
39:22, 43:2,
44:24, 45:10,
51:3, 54:3,
62:24, 80:21,
97:11, 100:5,
100:15, 120:6,
120:17, 139:20,
145:7, 166:18,
186:22, 207:9,
324:10, 365:18,
389:18, 413:5
**used**
21:20, 38:10,
45:13, 47:18,
48:13, 50:20,
56:4, 61:19,
62:10, 62:11,
63:10, 63:17,
72:10, 74:20,
80:19, 81:1,
81:2, 110:24,
111:20, 120:3,
139:23, 140:6,
146:20, 148:19,
156:12, 172:22,
173:4, 173:6,
190:11, 218:16,
226:11, 244:18,
257:23, 259:14,
281:12, 294:3,
296:6, 296:20,
312:19, 317:7,
383:2, 388:21,
400:18, 401:2,
410:1, 420:5
**using**
75:15, 87:23,
144:6, 156:12,
156:13, 156:22,
282:14, 282:18,
299:13, 317:3
**usual**
302:1
**usually**
116:9, 195:15
**utilize**
70:5, 85:18,

90:10, 94:24
**utilized**
132:20, 416:12
**utilizing**
70:9

---
**V**
---

**v-a-l-a-s-c-o**
300:19
**v-e-l-e-z**
306:20
**v-i-l-l-a-r-d-i--
t-a**
313:14
**v-i-r-g-i-l-i-o**
314:22
**valasco**
300:18, 301:1,
301:13, 303:6,
303:14, 304:1,
304:5, 304:11,
305:4
**value**
306:3
**van**
24:7, 72:4,
202:6, 202:7,
202:9
**vargas's**
16:6, 17:9,
27:23, 52:16,
61:9, 63:12,
79:6, 222:5
**various**
98:17, 332:12
**vehicle**
288:15, 406:3
**velez**
306:20, 307:1,
307:12, 307:19
**vera**
385:12, 385:20,
386:3
**veracity**
88:3, 89:2,
226:13
**veras**
53:18

**versus**
196:16, 206:7
**very**
37:17, 177:1,
195:16, 207:10,
226:8, 240:6,
402:11
**vicente's**
20:24, 42:1,
70:12, 105:21,
132:21, 139:15,
148:3, 151:15,
188:19, 240:13,
247:5, 248:15,
251:3, 251:21,
296:21
**victim**
25:10, 63:3,
72:4, 86:24,
105:11, 131:1,
131:7, 131:19,
237:11, 320:6,
351:14, 366:3,
411:12, 412:5
**victim's**
24:17, 132:6
**victims**
64:5, 366:11,
407:15, 408:6,
408:10
**video**
7:1, 236:9,
417:2
**videographer**
5:10, 7:1,
7:10, 82:15,
82:18, 175:1,
175:4, 281:23,
282:1, 297:19,
297:21, 380:18,
380:21, 417:1
**vienna**
336:8
**view**
107:7, 222:23,
243:8, 307:11,
309:21, 326:9,
345:7, 354:17,

411:13, 414:20
**viewed**
107:15, 115:12,
177:9, 179:9,
181:11, 241:15,
242:8, 242:15,
304:11, 309:8,
309:13, 325:15,
325:22, 326:4,
326:11, 345:12
**viewing**
178:20, 179:4,
181:17, 181:22,
414:13
**villardita**
313:13, 314:13,
314:20, 316:5
**vincent**
98:6
**violated**
12:9, 12:17,
13:5, 13:12,
15:5, 276:17,
277:1
**violation**
267:20
**violations**
266:9, 266:15,
268:18, 269:3
**violence**
43:2, 157:9,
186:22, 186:23
**violent**
237:13
**virgilio**
314:21, 315:3,
315:10, 316:16
**virtue**
376:6
**visible**
45:2
**visiting**
54:22
**voice**
284:19
**voluntarily**
164:14, 303:2,
303:7, 329:5

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

163

**vomit**
320:7
**vs**
1:6, 1:12, 7:5
**vulnerable**
37:17

**W**

**wacker**
4:14
**wade**
311:9, 311:17,
311:23, 313:15,
313:19, 313:22,
314:3, 314:8,
314:16, 314:23,
315:12, 315:13,
315:18, 316:1,
316:7, 316:12
**wait**
159:18, 292:15
**waited**
86:12, 394:4
**waiting**
214:17, 236:14,
393:14
**waived**
419:23, 420:9
**walked**
43:23, 201:24,
202:1
**want**
10:6, 71:22,
82:5, 139:14,
139:20, 159:4,
195:11, 235:4,
236:8, 241:13,
246:15, 306:1,
330:22, 351:8,
372:10, 380:16,
404:7
**wanted**
27:13, 30:19,
34:2, 35:1,
35:16, 39:11,
55:11, 66:7,
73:8, 75:5,
75:13, 75:19,

76:3, 76:6,
81:16, 81:23,
83:14, 84:2,
84:10, 95:23,
99:10, 100:15,
101:15, 138:23,
139:5, 139:11,
148:10, 151:22,
153:22, 157:23,
158:23, 169:19,
172:9, 190:10,
211:12, 214:22,
216:17, 223:14,
233:18, 236:22,
239:7, 325:6,
327:17, 356:17,
386:13, 396:10,
402:7, 409:6
**wanting**
232:3
**wants**
404:8
**war**
312:5, 312:10,
408:3, 408:11
**warrant**
182:20
**warrants**
182:6, 183:4,
183:6
**washtenaw**
364:2, 368:23,
369:23
**wasn't**
29:20, 103:16,
104:21, 202:17,
208:4, 208:7,
216:7, 231:18,
237:21, 249:15,
250:19, 351:22,
355:12, 362:10,
380:9, 389:5
**watching**
412:6
**way**
16:6, 20:8,
30:3, 33:11,
62:5, 72:20,

79:12, 82:11,
93:14, 96:2,
105:20, 106:4,
142:16, 161:7,
176:21, 191:1,
277:14, 301:16,
330:1, 331:4,
332:1, 332:19,
336:23, 372:12,
403:2
**we'll**
56:1, 56:12,
56:18, 82:12,
105:7, 207:11,
320:8, 402:21,
416:23
**we're**
131:16, 235:10,
235:18, 373:2,
403:23, 404:3
**we've**
290:11
**weapon**
78:20, 79:19,
396:3
**wearing**
326:24, 327:1,
327:8, 357:9
**weeks**
340:17
**welcome**
214:5
**well**
11:2, 32:10,
45:8, 53:16,
55:24, 56:3,
93:13, 93:19,
101:4, 117:14,
131:16, 147:5,
157:8, 170:23,
195:12, 195:16,
198:1, 212:3,
212:12, 224:8,
228:2, 249:5,
253:22, 271:2,
273:9, 282:19,
306:12, 331:17,
338:13, 360:8,

372:18, 372:19,
392:13, 393:24,
396:24, 398:3,
402:21, 403:8,
403:17, 404:3
**wendt**
4:4, 8:9
**went**
37:16, 89:8,
101:24, 124:9,
125:2, 173:20,
174:1, 219:4,
219:12, 220:1,
220:22, 227:4,
227:6, 232:24,
237:14, 247:14,
340:22, 360:9,
393:2
**weren't**
53:1, 55:12,
66:20, 334:14,
337:6, 386:18
**west**
4:14, 110:16,
135:3, 226:21,
233:2, 355:2,
359:24, 363:17,
405:12
**what**
9:18, 25:10,
26:18, 27:21,
31:2, 31:13,
49:24, 50:9,
50:17, 55:18,
56:6, 56:10,
58:1, 71:22,
90:4, 102:16,
108:11, 112:3,
112:9, 117:2,
124:11, 128:17,
160:17, 185:21,
192:21, 196:1,
196:3, 200:14,
201:20, 213:18,
214:3, 214:9,
216:16, 217:1,
233:17, 233:18,
235:7, 235:13,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    164

235:21, 235:22,
237:5, 240:14,
264:12, 270:20,
272:12, 272:23,
275:5, 275:12,
276:6, 300:3,
300:4, 306:3,
324:7, 338:24,
348:12, 350:15,
351:5, 352:21,
354:8, 354:18,
357:18, 357:22,
359:23, 372:9,
379:17, 396:9
**what's**
56:16, 56:21,
58:6, 184:6,
206:5, 235:6,
246:6, 246:7,
272:20, 299:19,
370:19
**whatever**
153:13, 360:24,
382:6, 418:7
**whatsoever**
31:8, 52:15,
60:4, 63:2,
111:5, 111:12,
187:15, 301:9,
302:16, 410:16
**when**
9:8, 9:11,
11:17, 18:22,
37:15, 41:23,
50:19, 71:12,
75:14, 77:6,
77:18, 80:24,
81:1, 83:8,
87:6, 88:11,
88:15, 95:21,
110:13, 112:24,
113:1, 116:9,
116:19, 117:1,
121:16, 121:23,
122:14, 129:9,
129:11, 130:2,
132:6, 135:17,
140:17, 155:7,

155:15, 155:21,
156:12, 156:21,
168:4, 168:11,
169:18, 180:8,
194:7, 209:16,
214:1, 215:16,
220:4, 242:8,
244:2, 250:6,
268:2, 274:4,
278:10, 292:8,
298:12, 300:9,
300:17, 300:24,
307:10, 313:8,
315:19, 319:6,
328:22, 330:14,
330:18, 333:11,
343:7, 346:7,
352:4, 353:19,
357:10, 357:16,
360:1, 364:12,
371:24, 379:4,
379:19, 386:6,
394:3, 398:18,
403:8, 405:14,
415:17
**whenever**
174:18, 351:9
**where**
28:7, 28:21,
32:14, 35:1,
38:23, 64:3,
65:20, 85:10,
95:10, 107:3,
114:15, 130:4,
145:6, 171:24,
192:9, 195:12,
237:4, 238:10,
238:14, 297:13,
326:23, 331:17,
332:9, 344:7,
354:2, 372:2
**whereas**
376:9
**whereby**
254:17, 255:4,
255:15, 255:24,
256:9, 256:18,
257:7, 257:18,

258:7, 258:18,
259:5
**whether**
107:22, 191:2,
215:19, 216:14,
276:15, 276:23,
278:12, 297:12,
352:17, 352:23,
355:6, 365:18
**which**
26:16, 30:9,
60:13, 83:10,
90:16, 92:10,
96:3, 102:24,
110:9, 110:14,
112:11, 112:16,
125:22, 126:4,
162:15, 167:8,
172:15, 187:24,
191:5, 196:5,
202:6, 204:20,
206:24, 230:16,
246:8, 246:17,
250:19, 251:14,
254:11, 262:11,
263:11, 304:1,
324:11, 327:7,
345:5, 358:14,
367:4, 369:16,
371:14, 376:5,
395:24, 400:5,
405:22, 408:3,
408:22, 414:21
**while**
37:10, 38:16,
46:16, 68:15,
71:18, 72:18,
80:11, 81:3,
82:22, 84:3,
89:15, 95:5,
97:2, 98:14,
99:1, 142:10,
143:4, 155:17,
155:23, 156:6,
156:22, 157:7,
158:13, 159:17,
210:10, 246:18,
249:6, 287:9,

290:21, 303:20,
333:10, 383:23,
394:5, 409:22
**white**
373:6, 373:13,
374:10, 374:20,
376:8
**who**
25:3, 25:4,
34:9, 34:18,
35:11, 50:11,
53:9, 55:11,
90:3, 91:22,
92:3, 101:24,
104:3, 104:13,
115:6, 115:13,
134:5, 134:19,
147:11, 147:12,
151:24, 160:17,
165:8, 178:18,
179:20, 205:12,
207:21, 208:8,
208:17, 211:11,
215:17, 223:6,
234:13, 239:16,
242:11, 243:14,
243:22, 279:12,
280:15, 284:10,
286:4, 286:14,
293:17, 293:23,
298:16, 300:21,
304:6, 307:19,
310:1, 313:9,
317:4, 324:14,
333:13, 336:14,
336:22, 340:8,
340:9, 340:21,
340:22, 341:9,
341:18, 341:23,
342:8, 343:9,
343:16, 344:1,
346:24, 347:1,
347:9, 347:17,
349:16, 351:14,
352:22, 355:7,
364:19, 366:10,
369:22, 375:19,
375:24, 376:24,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                    165

377:17, 377:19,
378:15, 379:20,
385:10, 393:2,
402:24, 406:1,
407:18, 410:10,
411:19, 412:4,
412:11
**whole**
94:13, 109:11,
281:18, 419:14
**whom**
262:20, 295:20,
296:2
**whose**
59:5, 346:4,
387:8, 393:2
**why**
40:4, 48:14,
49:7, 55:21,
119:18, 171:2,
174:21, 234:24,
235:14, 235:16,
235:18, 235:23,
235:24, 236:3,
261:6, 268:9,
277:14, 281:21,
298:22, 348:5,
380:2, 403:14
**wife**
24:18, 86:6,
132:6, 221:24
**wild**
85:8
**wilda**
24:18, 25:2,
26:4, 26:11,
27:12, 28:4,
28:13, 29:8,
30:18, 62:7,
63:11, 84:19,
84:24, 105:12,
106:15, 107:2,
107:6, 107:14,
107:20, 109:16,
109:23, 110:15,
129:18, 129:22,
130:14, 175:10,
175:22, 176:8,

176:18, 177:9,
177:14, 177:19,
178:5, 178:24,
179:10, 179:14,
179:19, 179:24,
180:5, 180:13,
180:20, 181:2,
181:8, 181:15,
221:24, 224:22,
227:5, 227:6,
228:5, 228:23,
229:5, 241:15,
242:8, 243:8,
243:12
**wiley**
53:18, 53:24,
381:3, 381:14,
381:22, 382:18,
384:1, 384:7,
384:20, 385:23,
386:14, 388:13,
390:11, 391:7,
391:15, 391:22,
395:2, 395:16,
397:12, 399:5,
399:14, 399:24,
400:7, 400:20,
401:12
**will**
7:12, 7:17,
10:9, 37:20,
56:4, 113:6,
117:4, 183:23,
196:5, 196:14,
196:21, 206:7,
214:15, 236:7,
270:14, 271:7,
272:3, 274:4,
275:18, 283:24,
299:3, 306:15,
311:10, 317:1,
324:10, 330:2,
370:15, 402:8,
420:7
**william**
404:13, 410:17,
411:2, 411:21
**williams**
1:24, 2:12,

7:10, 419:4,
420:21
**willing**
40:3, 263:12
**window**
202:9
**wish**
270:12, 271:3
**withdrawal**
37:10, 37:16,
38:5, 38:10
**withheld**
291:8, 310:16,
329:10
**withhold**
329:13
**within**
254:9, 365:7,
403:3, 420:3,
420:11
**without**
136:9, 183:6,
214:3, 301:22,
319:22
**witnessed**
75:13, 75:22,
76:4, 77:10,
143:10, 162:17,
168:19, 173:13,
354:24, 364:19,
365:9
**witnessernest**
6:2
**witnesses**
34:19, 35:1,
38:16, 39:1,
45:1, 64:5,
88:2, 201:14,
202:23, 204:22,
205:11, 205:12,
257:23, 291:15,
297:7, 324:16,
325:15, 325:20,
325:22, 326:10,
327:9, 329:5,
329:14, 405:24,
407:15, 414:3
**woman**
24:18, 25:3,

165:23, 354:23,
366:4
**women**
366:10
**won**
357:18, 357:22
**word**
72:21, 73:5
**words**
40:20, 80:15
**work**
29:20, 37:20,
101:2, 131:9,
145:16, 148:20,
195:15, 201:24,
220:23, 349:17,
398:5
**worked**
114:16, 329:19
**world**
214:9
**would've**
124:10
**wouldn't**
45:1, 151:5,
196:9, 403:3
**wrapped**
365:11, 367:18
**write**
116:3, 162:23
**writer**
115:21
**writing**
97:6, 115:13,
398:5
**written**
396:18
**wrong**
124:10, 125:3,
363:22, 370:16,
372:13, 372:17
**wrongful**
15:17, 23:12,
204:12, 239:8,
244:19, 245:16,
245:24, 280:8,
377:12, 383:3,
389:19

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

166

**wrongfully**
190:12, 235:9,
337:23, 416:4
**wrongly**
305:18
**wrote**
56:8, 56:10,
121:2, 129:9,
170:10, 170:12,
252:9, 288:13,
288:18, 288:23,
346:22

**Y**

**y-b-a-r-r-a**
298:14
**ybarra**
298:13, 298:21,
299:20, 299:24,
300:10, 300:14,
301:5, 301:12,
303:1, 303:13,
304:1, 304:6,
304:11, 305:4
**yeah**
56:1, 82:14,
125:15, 131:21,
174:20, 174:24,
194:9, 253:20,
281:20, 337:10
**year**
245:24
**year-old**
348:20
**years**
9:17, 235:8,
249:17, 250:9,
250:10, 252:19,
253:15, 254:11,
275:6, 349:16,
353:19
**yelling**
124:13
**yes**
9:1, 10:3,
42:10, 112:7,
113:15, 125:16,
174:17, 180:22,

214:8, 234:21,
270:17, 299:1,
299:8, 305:17,
318:12, 318:14,
330:11, 337:23,
380:17
**yesenia**
364:18, 365:8,
365:17, 366:2,
367:14, 368:20,
369:17, 369:21,
371:7
**yet**
100:6, 173:11,
344:21, 402:8
**york**
3:7
**you'd**
350:13
**you'll**
197:15, 371:5
**you're**
71:21, 117:2,
174:12, 214:5,
227:21, 235:12,
279:3, 282:18,
284:23, 301:22,
346:18, 351:10
**you've**
58:19, 213:21,
214:18, 262:20,
402:10
**young**
364:17, 366:2,
366:4, 366:9,
366:10, 368:6,
405:16, 412:4
**yours**
34:17, 210:13
**yourself**
25:19, 32:11,
42:15, 45:10,
53:8, 54:10,
75:4, 76:23,
81:13, 93:2,
101:14, 102:23,
104:11, 115:12,
123:11, 126:13,

127:5, 127:16,
129:1, 141:10,
152:15, 161:24,
163:4, 166:24,
174:1, 184:9,
184:18, 190:1,
201:11, 207:22,
225:7, 261:8,
264:2, 268:4,
268:11, 269:1,
269:17, 270:2,
270:5, 272:14,
273:10, 273:15,
352:10, 366:18,
367:22, 384:14,
391:2, 396:8,
416:12
**youth**
319:23

**Z**

**zip**
235:13, 235:16,
235:19, 235:22

**$**

**$20,000**
334:2, 360:19,
360:23
**$200**
98:17
**$300**
98:17

**0**

**00**
86:12, 121:6
**000222**
56:19
**000226**
58:4
**004443**
420:23
**01**
6:16
**018247**
192:19, 192:22,
193:4, 193:13,

194:2, 194:15,
195:2
**04985**
206:8
**05**
175:2
**05100**
206:9
**07**
6:16
**08**
282:2
**084**
420:23

**1**

**1**
175:2, 175:5
**1,132**
251:23, 252:7
**1,476**
252:10
**10**
1:19, 7:9,
170:4, 373:7,
373:14
**100**
4:7
**1000**
3:6, 5:8
**101**
387:21
**11**
82:16, 82:19,
150:14, 152:9,
161:17, 174:5,
176:21, 177:10,
177:16, 177:22,
178:20, 179:4,
180:21, 180:22,
230:15, 233:6,
241:14, 303:24,
357:2, 392:23,
396:3
**11238**
3:7
**12**
392:23

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

167

**1215**
364:2, 368:23,
369:23
**13**
207:16, 318:18,
318:23, 388:17,
388:20, 389:5,
389:24
**1320**
392:16
**1390**
398:20
**14**
1:19, 7:9,
32:18, 33:13,
35:10, 36:1,
37:8, 39:10,
164:22, 172:15,
251:20, 280:14,
324:15, 324:21,
325:11, 326:1,
326:11, 326:17,
350:17
**148**
112:5, 112:14
**15**
398:18, 399:5
**150**
3:20
**15871**
196:18
**16**
9:13, 348:20,
353:19
**164**
6:14
**17**
1:6, 1:12, 7:4,
7:6, 356:10
**18**
1:18, 7:8,
373:7, 373:14,
418:6, 419:7
**182444**
1:22
**1838**
198:5, 199:1,
199:8, 201:6,

201:22, 203:7,
203:14, 203:23,
237:8
**1850**
3:8
**19**
59:18, 175:5
**195**
6:16
**1972**
9:10
**1980**
330:23, 333:4,
334:7, 336:16,
353:12
**1984**
135:12, 226:22
**1985**
337:5, 339:21,
340:3, 340:24,
341:22, 342:9,
343:2, 343:17,
344:16, 350:17,
351:16, 355:1
**1988**
330:23
**1989**
311:9, 311:22,
312:5, 312:10,
312:12, 313:1,
341:14, 349:14
**199**
141:19
**1990**
353:12, 358:8,
381:4, 381:15,
381:23, 382:19,
383:10, 383:15,
383:22, 384:4,
384:10, 386:6,
386:21, 387:12,
387:23, 388:4,
391:21, 391:24,
392:24, 393:5,
395:21, 396:4,
398:18, 398:21,
399:6, 399:16,
399:23, 400:5,

400:11
**1991**
356:10, 357:2
**1992**
306:20, 307:17,
308:11, 309:2,
309:21, 318:19,
318:24, 319:7
**1994**
405:7, 405:14,
407:2, 412:22,
413:10, 414:23
**1995**
220:5, 282:10,
283:6, 284:6,
286:10, 287:24,
298:8, 298:14,
300:10, 300:19,
301:1, 302:7,
302:14, 302:22,
303:24, 304:7,
304:11
**1996**
251:4, 251:23,
254:6
**1997**
317:15
**1998**
364:7, 370:6,
371:9, 371:10,
375:13
**1st**
197:10, 202:13,
296:14, 399:23,
400:5, 405:7,
405:14, 407:1,
412:22, 413:10,
414:23

---

**2**

**2**
281:23
**20**
1:18, 7:8,
56:24, 254:11,
384:9, 386:21,
391:23, 406:19,
418:6, 419:7

**200**
98:17, 105:8
**2004**
246:10, 247:6
**2010**
9:13
**2013**
279:12
**2018**
1:18, 7:8,
418:6, 418:21,
419:7, 420:16
**206**
4:6, 6:18
**20692**
113:22
**207**
419:24
**20861**
114:3
**21**
291:23
**22**
82:16, 292:24,
293:7, 293:18,
373:7, 373:14,
387:12, 387:23,
388:4
**2200**
5:6
**23**
9:10, 235:8,
245:24, 251:4,
251:22, 254:6,
282:10, 293:1,
293:12, 293:24,
297:19, 297:22,
391:20, 395:21
**24**
27:5, 27:14,
27:22, 58:9,
59:3, 131:4,
141:22, 143:6,
143:13, 144:4,
145:14, 158:12,
283:5, 294:16,
294:23, 295:5,
295:10, 295:15,

Transcript of Ernest Halvorsen
Conducted on April 20, 2018                                  168

295:21, 296:3,
354:1, 364:7,
381:3, 381:14,
381:22, 382:19,
392:24, 396:4,
396:16, 399:16,
400:11
**243**
2:8, 3:15
**246**
6:20
**25**
296:13, 371:9,
384:10, 386:6,
393:5
**26**
219:12, 246:10,
247:6, 341:13,
341:22, 343:2,
387:20
**2647**
363:17
**27**
340:23, 370:6,
371:9
**28**
188:23, 189:12,
189:24, 190:23,
191:20, 192:7,
375:13, 391:21
**282**
6:5
**2869**
1:12, 7:6
**2nd**
64:13, 65:2,
68:17, 74:3,
82:22, 84:24,
85:6, 95:21,
98:2, 100:23,
103:15, 105:8,
105:9, 107:1,
118:3, 118:9,
118:20, 119:2,
122:8, 128:2,
128:17, 130:15,
133:4, 141:3,
189:15, 191:5,

191:18, 192:9,
207:14, 210:23,
220:5, 220:12,
221:15, 298:14,
300:10

**3**

**3**
282:2, 297:19,
297:22
**30**
10:10, 121:6,
198:6, 199:1,
201:22, 202:1,
284:6, 286:9,
287:24, 392:23,
396:3, 417:2,
417:4, 420:3
**300**
253:3
**311**
2:5, 3:13, 7:6
**312**
2:8, 3:15, 4:9,
4:16, 4:24, 5:8
**321**
5:6
**330**
6:6
**3300**
3:22
**336**
196:17
**337**
6:22
**35**
161:17
**36**
82:19
**370**
6:24
**38**
9:17
**3900**
110:16, 135:3,
226:21, 227:16,
228:4
**3920**
405:12

**3939**
4:16
**3rd**
2:6, 3:13,
184:9, 192:5,
383:10, 383:15,
383:22, 384:4,
387:16, 398:20,
398:21

**4**

**4**
380:19, 380:22
**404**
403:22
**415**
418:7
**420**
1:23
**4218**
355:2
**422**
3:6
**4366**
4:24
**45**
380:19
**4560**
1:6, 7:4
**4588**
339:10
**46**
349:16
**494**
5:8
**4th**
130:4, 132:5,
133:10, 168:21,
180:9, 229:17,
230:7, 349:14

**5**

**5**
34:10, 35:12,
86:12, 198:6,
199:1, 201:22,
202:1, 373:7,
373:14, 417:2,

**417:4**
417:4
**5'7**
373:7, 373:14
**500**
4:22
**5100**
206:9
**53**
183:24, 184:1,
184:3, 184:7,
184:13, 380:22
**54**
183:23, 184:2,
185:8
**55**
183:23, 184:1
**550**
3:20
**5555**
233:2
**56**
6:10
**57**
281:23
**58**
6:12
**59**
184:7
**5900**
2:8, 3:15
**5th**
23:18, 24:3,
60:13, 61:10,
83:22, 86:18,
91:1, 121:4,
121:20, 136:2,
166:6, 198:6,
199:2, 199:8,
199:20, 201:6,
203:8, 203:15,
203:24, 223:17,
246:21

**6**

**60143**
3:21
**603**
4:24

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

169

**6036**
339:4
**60601**
4:15
**60602**
4:23
**60607**
2:7, 3:14
**60654**
5:7
**60661**
4:8
**630**
3:22
**655**
4:9
**68**
164:19, 164:20,
165:4, 172:16
**6th**
118:15, 118:19,
123:21, 135:4,
226:20

---
7
---

**718**
3:8
**72**
164:19, 164:20,
172:16
**735**
3:22
**736499**
57:3, 57:11,
57:22
**7660**
4:9
**77**
4:14
**782**
4:16
**7th**
290:6, 290:17

---
8
---

**8**
121:6
**80**
207:11, 331:5,

331:13
**81**
161:14, 161:15,
162:6
**83**
216:23
**85**
161:15, 162:6
**874175**
58:12, 59:7
**875**
3:8
**8th**
138:10, 138:17,
140:18, 141:1,
141:8, 141:18,
141:21, 142:17,
147:7, 147:15,
149:19, 307:13,
308:11, 308:16,
309:2, 309:21,
339:21, 340:2,
342:9, 343:17,
344:16, 351:15,
355:1, 420:15

---
9
---

**9**
121:6, 391:21
**93**
6:16, 59:18,
196:18
**95**
241:13
**96**
112:16, 113:12,
113:13, 113:20,
117:8
**97**
120:23, 125:9,
125:14, 125:22,
125:24, 126:3,
126:11, 126:21,
128:16, 243:5
**98**
125:22, 127:23,
128:6, 128:16,
129:17

**99**
113:12, 117:8,
118:13
**9th**
147:23, 148:3,
149:3, 179:10,
179:16, 179:21,
180:2, 180:15,
181:3, 181:11,
181:17, 181:22,
243:1, 243:4,
300:19, 301:1,
302:7, 302:14