*Rios v. Guevara, et.al*
22 CV 3973

# EXHIBIT I

```
    STATE OF ILLINOIS )
                      )      SS.
 2  COUNTY OF C O O K )

 3              IN THE CIRCUIT COURT OF COOK COUNTY
                COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
    THE PEOPLE OF THE )
 5  STATE OF ILLINOIS )
                      )   No. 89-CR-16525
 6      VS            )
                      )   Before JUDGE THEMIS N. KARNEZIS
 7  JAIME RIOS        )
                         Fri., Nov. 30, 1990
 8                       9:30 a.m.

 9      Court convened pursuant to adjournment.

10      Present:

11              HONORABLE CECIL A. PARTEE,
                    State's Attorney of Cook County, by
12              Ms. Kay Hanlon and Mr. Anthony Carballo,
                    Assistant State's Attorneys,
13                  appeared for the People;

14              MR. RANDOLPH N. STONE,
                    Public Defender of Cook County,
15              Ms. Karen Shields and Mr. Jack Carey,
                    Assistant Public Defenders,
16                  appeared for the defendant.

17  - - - - - - - - - - - - - - - - - - - - - - - - -

18      THE CLERK:  People versus Jaime Rios.

19                  (Defendant enters.)

20      THE COURT:  Good morning, Mr. Rios.  You may go

21  over by counsel table.

22              Please bring in the jury.

23                  (Jury enters.)

24      THE COURT:  You may be seated, ladies and
```

339

PFP00046

1  gentlemen.  Good morning, ladies and gentlemen.

2      THE JURY:  Good morning.

3      THE COURT:  I believe we are ready to resume.

4  State.

5      MR. CARBALLO:  Your Honor, at this time we would

6  call Benjamin Carrero to the stand.

7      A SHERIFF:  Step right up here, sir.

8      THE COURT:  Please remain standing.  Raise your

9  right hand.

10                    (Witness sworn.)

11              MR. BENJAMIN CARRERO,

12  called as a witness on behalf of the People of the

13  State of Illinois, being first duly sworn, was

14  examined and testified as follows:

15              DIRECT EXAMINATION

16              By Mr. Carballo:

17      THE CLERK:  Please be seated.

18      THE COURT:  Have a seat, sir.

19      MR. CARBALLO:

20      Q.   Sir, could you speak up nice and loud and

21  state your full name?

22      A.   Benjamin Carrero.

23      Q.   Mr. Carrero, you are going to have to speak

24  a little louder than that so everyone can hear you.

2

PEP000457

340

1          A.    My name --

2          Q.    Spell your last name for the Court

3    Reporter.

4          A.    C-a-r-r-e-r-o.

5          Q.    Mr. Carrero, do you know Jaime Rios?

6          A.    Yes.

7          Q.    Do you see him in court here today?

8          A.    No.

9          Q.    Look around the courtroom and tell us if you

10   see him?

11         A.    That is him (indicating).

12         Q.    Could you describe something he is wearing?

13         A.    Gray, blue something.

14         MR. CARBALLO:   Indicating for the record the

15   defendant, Jaime Rios.

16         THE COURT:   Okay.

17         MR. CARBALLO:

18         Q.    Mr. Carrero, how long have you known Jaime

19   Rios?

20         A.    For about 4 years.

21         Q.    About 4 years?  Are you friends with the

22   defendant, Jaime Rios?

23         A.    Yeah.

24         Q.    In fact, you are good friends with Jaime

3

PFP000458

1    Rios, aren't you?

2        A.    (Nods head yes.)

3        Q.    Is that yes?  You are going to have to

4    answer yes or no.

5        A.    Yes.

6        Q.    Now, Mr. Carrero, are you a member of a

7    gang?

8        A.    Yeah.

9        Q.    What gang are you a member of?

10       A.    Latin Kings.

11       Q.    Latin Kings.  How long have you been a

12   member of the Latin Kings?

13       A.    For about 5 years.

14       Q.    What is your rank in the Latin Kings?

15       A.    I ain't got no rank.

16       Q.    Are you a foot soldier?

17       A.    Yes.

18       Q.    Mr. Carrero, I want to direct your attention

19   to July the 9th of 1989.  At approximately 10:15 p.m.

20   some police officers came over to your house, is that

21   correct?

22       A.    Yes.

23       Q.    When the police officers came over to your

24   house they came over with a search warrant, is that

4

PFP000459

1   correct?

2      A.   Yes.

3      Q.   And the search warrant was for a gun, is

4   that right?

5      A.   Yes.

6      Q.   The police officers recovered a gun from

7   your house, didn't they?

8      A.   Yes.

9      MR. CAREY:  Judge, I am going to ask that, I am

10  going to object at this time and ask that the State

11  not --

12     THE COURT:  Sustained.

13     MR. CAREY:  Thank you.

14     THE COURT:  Proceed.

15     MR. CARBALLO:

16     Q.   Well, did the police officers recover a gun

17  from your house?

18     MR. CAREY:  Objection.

19     A.   Yeah.

20     THE COURT:  I am going to let it stand.  Pose

21  another question.

22     MR. CARBALLO:

23     Q.   Could you explain to the ladies and

24  gentlemen of the jury how the police officers

5

1  recovered that gun?

2  A.  They found it outside.

3  Q.  How did the gun get outside?

4  A.  Somebody threw it out the window.

5  Q.  Who through the gun out the window?

6  A.  Iris threw it out of the window.

7  Q.  I am sorry?

8  A.  Iris.

9  Q.  Iris?

10  A.  Yes.

11  Q.  That is Iris Mendez?

12  A.  Yeah.

13  Q.  What is your relationship to Iris Mendez?

14  A.  She is my girlfriend.

15  Q.  She is your girlfriend?

16  A.  (Nods head yes.)

17  Q.  Now, after the police officers recovered

18  this gun, by the way, this was a .32 calibre revolver,

19  is that correct?

20  A.  Yep.

21  Q.  After the police officers recovered the gun

22  after your girlfriend Iris threw it out the window you

23  went down to area 5 police station, is that correct?

24  A.  Yes.

6

PEP000461

1       Q.   Did you have a conversation at approximately

2  10:15 -- strike that.

3       Did you have a conversation that evening at

4  approximately 12:30 a.m. with some police officers?

5     A.   Yeah.

6     Q.   And that was at the police station at area

7  5?

8     A.   Yes.

9     Q.   And could you tell the ladies and gentlemen

10  of the jury what you told -- strike that.

11      How many police officers did you have a

12  conversation with?

13     A.   I don't know.  I don't remember.

14     Q.   Well, when you talked to the police in the

15  room were there two police officers in the room with

16  you?

17    MR. CAREY:  Objection, Judge.  Leading.

18    THE COURT:  Overruled.

19    MR. CARBALLO:

20     Q.   You can answer the question.

21     A.   I don't know how many cops were in there.

22     Q.   You spoke to the police officers at area 5,

23  is that correct?

24     A.   Yeah.

7

345

PFP000462

1          Q.    Could you tell the ladies and gentlemen what

2    you told the police?

3          MR. CAREY:   Objection.

4          THE COURT:   Basis?

5          MR. CAREY:   Hearsay.

6          THE COURT:   Sustained.

7          MR. CARBALLO:

8          Q.    Did the police officers ask you questions as

9    to where you got the gun?

10         MR. CAREY:   Objection.   Calls for hearsay

11   answer.

12         THE COURT:   Sustained.

13         MR. CARBALLO:   Judge, can we have a brief

14   sidebar.

15         THE COURT:   Sure.

16                        (The following proceedings

17                         were had out of the

18                         presence and hearing of

19                         the jury.)

20         MR. CARBALLO:   Judge, the testimony that I am

21   going to be eliciting from the witness is third party

22   admission made by the defendant.   The witness is going

23   to testify that the defendant made a, defendant gave

24   him the gun and made admission to him that he shot, he

8

PFP000463

1    had just shot somebody and asked the witness to told

2    the gun.

3        MS. SHIELDS:  We'd object to it.  It is still

4    hearsay.  We only asked questions about where he got

5    the gun and what happened.  That is a different

6    situation.

7        THE COURT:  Yeah.  Rephrase it.

8        MR. CARBALLO:  Okay.

9        MR. CAREY:  There is also the problem with the

10   foundation for a third party confession.  I haven't

11   heard any of that.

12       THE COURT:  Well, that is because he keeps saying

13   I don't know.

14       MS. HANLON:  Right.

15                    (End sidebar.)

16       MR. CARBALLO:

17       Q.   I want to direct your attention to June the

18   27th of 1990.  At approximately 12:30 a.m. Did you see

19   the defendant, Jaime Rios?

20       A.   Yeah.

21       Q.   You are going to have to speak up louder.

22       THE COURT:  Sir.  Sir, I will tell you what.

23   There is a little microphone up ahead of you there.

24       A.   That is all right.

PEP000464     347

1      THE COURT:  Okay.  Just sit up straight.  Take

2   your hand away from your mouth and speak up so

3   everybody can hear you.  Okay?  Thank you.

4          Go ahead.

5      MR. CARBALLO:

6      Q.   Did you see the defendant, Jaime Rios, on

7   June the 27th of 1989 at approximately 12:30 a.m. or

8   actually June 28th, going into the morning of the 28th

9   at 12:30 a.m.?

10     A.   Yeah.

11     Q.   Where did you see him at?

12     A.   My house.

13     Q.   At your house.  Where is your house

14  located?

15     A.   403 North Lincoln Park.

16     Q.   Where were you when you saw the defendant,

17  Jaime Rios, at your house.  Where at your house were

18  you?

19     A.   In front.

20     Q.   And when the defendant was, when you saw the

21  defendant at your house out in front what did he do?

22     A.   Nothing.  He just gave me the gun.  That is

23  it.

24     Q.   He gave you a gun?

        10                    PFP000465    348

1      A.   (Nods head yes.)

2      Q.   What did he say to you at that time?

3      A.   No.  Nothing.

4      Q.   Did he say anything to you at that time?

5      A.   No.

6      Q.   Sir, I want to direct your attention now to

7 the night of July the 9th of 1989 after the police

8 officers recovered a gun from your house which you

9 previously testified to.

10        You testified that you had a conversation

11 with some police officers, is that correct?

12      A.   Yeah.

13      Q.   That was at area 5?

14      A.   Yeah.

15      Q.   When you had a conversation with the --

16 strike that.

17        When the defendant, Jaime Rios, gave you the

18 gun where did he take the gun from?

19      A.   His hands.

20      Q.   So, he was just coming down the street with

21 a gun in his hands?

22      A.   No.  I don't know where he got it from.

23      Q.   When you talked to the police officers at

24 area 5 on July the 9th of 1989 do you remember telling

11

349

1    -- you told the police officers that Jaime Rios stated

2    to you after taking the handgun from his waistband and

3    handing it to you to, hold this for me.  I just shot

4    somebody.  I will be back?

5         MR. CAREY:  Judge.

6         A.   No.

7         MR. CAREY:  Objection.

8         THE COURT:  Overruled.

9         MR. CARBALLO:

10        Q.   Do you remember telling the police that?

11        A.   No.

12        Q.   Sir, I want to direct your attention to the

13   next day, July the 10th of 1989.  You appeared before

14   the Cook County Grand Jury, didn't you?

15        A.   Yeah.

16        Q.   I didn't hear that answer.

17        A.   Yes.

18        Q.   That was in this building here at 26th and

19   California, is that correct?

20        A.   Yeah.

21        Q.   When you appeared before the Cook County

22   Grand Jury you appeared, there was a court reporter

23   present much like the court reporter who is sitting in

24   front of you right now, is that correct?

PFP000467      350

1      A.    Yeah.

2      Q.    And there were also grand jurors, people who

3  were present much like the ladies and gentlemen of the

4  jury here today, is that correct?

5      A.    Yeah.

6      Q.    And there was an Assistant State's Attorney,

7  a black Assistant State's Attorney by the name of

8  Roger Kemp also present, is that correct?

9      A.    I don't know.

10      Q.    Well, there was a State's Attorney who was

11  asking you questions, isn't that correct?

12      A.    Yeah.

13      Q.    Before you testified before the grand jury

14  on July the 10th of 1989 you were asked to raise your

15  right hand and you took an oath, didn't you?

16      A.    Yeah.

17      Q.    And that is the same oath that you took here

18  today, isn't that true?

19      A.    Yes, sir.

20      Q.    And you were asked a series of questions

21  before the grand jury, weren't you?

22      A.    Yeah.

23      Q.    You gave answers to those questions, didn't

24  you?

13

351

1   A. Yeah.

2   Q. Do you remember being asked the following

3 questions and giving the following answers?

4     Question, do you remember where you were on

5 June the 28th of 1989 at about 12:30 a.m.?

6     Answer, yes.

7     Question, Where were you at at that time?

8     Answer, in front of my porch.

9     Do you remember being asked those questions

10 and giving those answers?

11   A. Yeah.

12   Q. Do you remember being asked this question

13 and giving this answer?

14     Did you see Jaime Rios at about 12:30 a.m.?

15     Answer, yes.

16   A. Yeah.

17   Q. Do you remember being asked, you were asked

18 this question and you gave this answer, didn't you?

19     Question, what did he do when he came up to

20 your porch?

21     Answer, he said here.  He handed me the gun

22 from under his pants.

23     Do you remember being asked that question

24 and giving that answer?  You gave that answer -- you

14

PEP000____ 352

1   were asked that question and you gave that answer,

2   didn't you?

3        A.   I did what?  Say it over.

4        Q.   You were asked that question before the

5   grand jury and you gave that answer, didn't you?

6        A.   Yeah.  He just got it like this

7   (indicating), like this and took it out like this.

8        Q.   Do you understand my question?

9        A.   Yeah.  I know.

10       Q.   You were asked this question?

11       A.   Yes.  Yes.  Yes.  Yes.

12       Q.   Okay.  Do you remember being asked these

13  questions and giving these answers?

14            Question, indicating the waistband?

15            Answer, yes.

16            Question, okay.

17            Answer, and he told me to hold it because he

18  had did something.

19            Question, what had he just done?

20            Answer, yes.  He had shot somebody.  That is

21  all.

22            You were asked those questions and you gave

23  those answers, didn't you, before the grand jury?

24       A.   No.  Nope.  No, I didn't.

15

1    Q.   You weren't asked those questions and you

2  didn't --

3    A.   Just gave me the gun and that is it.

4    Q.   You were asked these questions and you gave

5  those answers, didn't you?

6    A.   No, I didn't.  That last one you said was

7  wrong.

8    Q.   You were also asked this question and you

9  gave this answer.

10         Question, do you remember what the gun

11  looked like to you?

12         Answer, it was black.  It was a .38.

13    A.   No.  It wasn't no .38.  It was a .32.

14    Q.   That is the question you were asked and that

15  is the answer you gave, isn't it?

16    A.   No.

17    Q.   Mr. Carrero, I want to ask you something.

18  How did you get down to court here today?

19    A.   What?

20    Q.   How did you get down to court here today?

21    A.   He (indicating) brought me to court today.

22    Q.   Who brought you here?

23    A.   Him (indicating).

24    Q.   When you say he, could you point to the

16

1    person who drove you here to court today?

2                    (Attorney Carey raises hand.)

3        THE COURT:  Indicating Mr. Carey.

4        MR. CARBALLO:

5        Q.   That was nice, wasn't it?  That was nice of

6    him, wasn't it, to give you a ride down to court?

7        A.   What is you trying to say, that he talked to

8    me or something?

9        Q.   Well, you talked to Mr. Carry on your way

10   down to court, didn't you, today?

11       A.   No.

12       Q.   When he gave you a ride, came and picked you

13   up this morning?  You are going to have to answer

14   because --

15       A.   No, he didn't.

16       Q.   (Continuing) -- Because the Court Reporter

17   has to take it down.

18       A.   No.  He didn't talk to me.  I didn't talk to

19   him either.

20       MR. CARBALLO:  I have no further questions.

21       THE COURT:  Cross.

22                    CROSS-EXAMINATION

23                    By Mr. Carey:

24       Q.   When I picked you up and your wife, right,

17

1  or your girlfriend?

2       A.   Yes.

3       Q.   Did I ask you any questions?

4       A.   No.

5       Q.   Did I tell you anything about what to say

6  here in court?

7       A.   Nope.

8       Q.   Did I discuss anything about what is going

9  to happen between you and the State's Attorney?

10      A.   No.

11      Q.   I told you that if you had a subpoena, you

12 had to come down here, right?

13      A.   Yeah.

14      Q.   That is all I said, is that right?

15      A.   Yeah.

16      Q.   I didn't say one thing about what you should

17 say on the stand, did I?

18      A.   No.

19      Q.   Thank you.

20           Now, the State talked to you before about

21 this, the night that he came over with this gun.  And

22 he said that was the 28th of June.  Who told you it

23 was the 28th of June?

24      A.   What?

18

356

1      Q.   The police tell you it was the 28th of

2  June?

3      A.   Yeah.

4      Q.   It wasn't your birthday on the 28th of June,

5  was it?

6      A.   Yeah.  That was my birthday.

7      Q.   That was your birthday?

8      A.   Yeah.

9      Q.   How old were you on the 28th?

10     A.   Let's see.  17.

11     Q.   Well, you were 17 on June --

12     A.   No, 18.  18.

13     Q.   Of '89?

14     A.   Yeah.

15     Q.   Now, had you been celebrating that day?

16    MS. HANLON:  Objection.

17     A.   No.

18    THE COURT:  I will let the answer stand.

19    MR. CAREY:

20     Q.   Now, the police came with a warrant, is that

21  right?

22     A.   Yes.

23     Q.   And about how many police came to your

24  house?

19

PFP000474  357

1      A.   A lots.

2      Q.   Okay.  Did they knock on the door and say,

3  Ben, we'd like to search your house?

4      A.   Nope.

5      Q.   How did they serve this warrant?

6      A.   My mother just told me the police is

7  outside. I walked outside.  I seen the officer coming

8  with a shotgun and just drag me upstairs.

9      Q.   Then your wife or your girlfriend thre the

10  gun out the window, is that right?

11      A.   Yeah.

12      Q.   What kind of gun was it?

13      A.   That was a .32.

14      Q.   Now, when the police took you into area 5

15  how did they treat you?

16      A.   Mean.

17      Q.   Well, did they ask you questions about what

18  happened?

19      A.   Yeah.

20      Q.   And did you tell them you didn't know

21  anything about it?

22      A.   I don't know anything.

23      Q.   What did they tell you when you told them

24  you didn't know anything?

PFP000475

358

1   A. That they were going to lock me up and they

2 going to take my kid away, too.

3   MR. CAREY: No further questions.

4   MR. CARBALLO: I don't have any further

5 questions, Judge.

6   THE COURT: Thank you, sir. You may step down.

7 Call the next.

8   A. I go back?

9   THE COURT: Step right back there. Yes, sir.

10 Thank you.

11       (Witness excused.)

12   MR. CARBALLO: At this time we would call

13 Detective Mason.

14   THE COURT: Stand right there, sir. Raise your

15 right hand.

16       (Witness sworn.)

17     DET. MICHAEL MASON,

18 called as a witness on behalf of the People of the

19 State of Illinois, being first duly sworn, was

20 examined and testified as follows:

21     DIRECT EXAMINATION

22     By Mr. Carballo:

23   THE COURT: Be seated, please.

24   MR. CARBALLO:

21    PFP000476  359