**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAIME RIOS

      Plaintiff,

          vs.                Case No. 1:22-cv-03973

REYNALDO GUEVARA
MICHAEL MASON
JOANN HALVORSEN AS
SPECIAL REPRESENTATIVE FOR
ERNEST HALVORSEN, DECEASED
CITY OF CHICAGO


      Defendants.              JURY TRIAL DEMANDED


      Defendants.

## PLAINTIFF'S RESPONSES TO DEFENDANTS' MOTIONS IN LIMINE

Plaintiff, Jaime Rios, by and through his attorneys, Stephen L. Richards and Joshua S.M. Richards responds to the motions of limine filed by defendants. In support thereof, Jaime Rios states as follows:

## MOTION IN LIMINE NO: 1: MOTION TO BAR CERTIFICATE OF INNOCENCE

The defendants have moved to bar the certificate of innocence awarded to Jaimie Rios. Conversely, Jaime Rios has moved in limine to admit the certificate. Jaime Rios is right, and defendants are wrong. However, since the defendants have chosen to reserve their arguments for their response to Jaime Rios's affirmative motion, there is nothing to say at this point.

**MOTION IN LIMINE NO. 2: MOTION TO BAR ANY EVIDENCE OR ARGUMENT ABOUT SUGGESTIVENESS OR COERCION LEADING TO ANY IDENTIFICATIONS IN THIS CASE OR FAILURE TO INFORM PROSECUTORS OF SAME**

Tacking off *Blackmon v. Jones*, 2025 WL 869045 (7th Cir. 2025) as well as this court's partial grant of defendants' successive motion for summary judgment, defendants claim that Jaime Rios should be precluded from criticizing the identification procedures in this case or arguing that Reynaldo Guevara coerced Luis Huertas to make a false identification.

Defendants are wrong, and they are wrong for four reasons.

First, evidence that Reynaldo Guevara coerced or suggested a false identification remains relevant to the malicious prosecution claim, which *did* survive the successive motion for summary judgment. The defendants' argument is nothing more than an attempt to make an end run around that ruling, which, among other things, is the law of the case. If Guevara did not coerce or suggest the false identification, he had probable cause, which would defeat the claim for malicious prosecution; conversely if he did coerce or suggest the identification, knowing it was false, he did not have probable cause, and one element of malicious prosecution would have been proven.

Second, Guevara's actions, and the reliability of Huertas's identification remain relevant to the issue of whether Jaime Rios is actually guilty of the Morales murder, an issue which defendants seek to inject into the case at every turn. The issue of guilt or innocence does not affect liability, and Jaime Rios has no burden to prove his innocence, by a preponderance or otherwise. But as defendants never tire of pointing out, the jury can consider guilt or innocence on the question of damages. If defendants are free to argue that Jaime Rios is actually guilty, Jaime Rios is free to argue that he is actually innocent. Evidence that the identification was weak, unreliable, suggested or coerced goes to whether he is innocent and therefore the amount of damages to which Jaime Rios is entitled.

Third, defendants confuse the issue of whether the identification procedures were unconstitutional or could be the basis of Section 1983 liability with the completely separate issue of whether Jaime Rios was convicted because of imperfect, or even malicious police conduct. As the United States Supreme Court made clear in *Crane v. Kentucky*, 476 U.S. 683 (1986) a defendant who loses a motion to suppress a confession on constitutional grounds remains free to challenge the reliability of the same confession at trial. Similarly, Jaime Rios is free to argue that he is innocent of the Morales murder, and that the identification evidence at trial was unreliable.

Fourth, any weaknesses in the Huertas identification are relevant to the weight of the evidence against Jaime Rios at trial, an issue which is pertinent to whether there is a reasonable probability that he would still have been convicted absent the fabricated testimony of Benjamin Carrero and the suppression of Cristino Garcia's exculpatory evidence.

## MOTION IN LIMINE NO. 3: MOTION TO BAR ANY EVIDENCE OR ARGUMENT CONTRADICTING ADMISSIONS MADE DURING SUMMARY JUDGMENT PROCEEDINGS

Defendants argue that certain of Jaime Rios's responses to defendants' assertions of facts during summary judgment proceedings should be held to bar any evidence or argument which allegedly contradicts those "admissions." In the alternative, defendants appear to argue that these responses made during summary judgment proceedings should be admitted as evidence at trial. In either case, defendants' arguments are not well taken.

Defendants argue, as they have argued before, that certain of Jaime Rios's responses establish: (1) Rios committed the Morales murder, and (2) Luis Huertas correctly identified Jaime Rios as the shooter.

The first problem with this argument is that it has been made not once, but twice before, and has been rejected each time by this court. In their reply to the response to the motion for

summary judgment, defendants claimed that these "admissions" precluded Jaime Rios from arguing his innocence or from arguing that Reynaldo Guevara maliciously prosecuted Jaime Rios. (Dkt # 204, 10-12). The court denied the motion for summary judgment and held that the malicious prosecution claim survived. (Dkt # 215, 31-32)

Defendants recycled the argument in their successive motion for summary judgment and/or motion to reconsider. (Dkt # 227, 12-12). Again, the malicious prosecution claim survived, and defendants' arguments as to "admissions" were tacitly rejected. (Dkt # 243, 6).

The definition of insanity is doing the same thing over and over again and expecting a different result. As defendants might say, this court's rulings rejecting this argument are the "law of the case" and cannot be further challenged at this point.

Apart from prior rulings, the argument that the summary judgment responses are binding judicial admissions is not well taken. With respect to his own innocence, Jaime Rios has consistently asserted his innocence at every turn – at his trial, in his deposition, and in his sworn certificate of innocence. Moreover, he repeatedly asserted his innocence during summary judgment proceedings.

If this court rules that the summary judgment responses, while not binding, should be introduced at trial, fairness would require that the jury be informed that, with respect to summary judgment proceedings this court ruled, for the most part, in favor of Jaime Rios. If defendants want the jury to know that information, Jaime Rios will be happy to have the summary judgment responses admitted.

Finally, in the alternative, and, in an excess of caution, Jaime Rios will, if necessary, move to amend his summary judgment responses.

**MOTION IN LIMINE NO. 4 MOTION TO BAR ANY EVIDENCE OR REFERENCE
TO ALLEGEDLY FALSE TESTIMONY OF ANY
DEFENDANT AT PLAINTIFF'S CRIMINAL TRIAL**

Defendants move to bar any evidence or argument referring to defendants' allegedly false
testimony at trial. This argument should be rejected.

Jaime Rios agrees that defendants Guevara, Mason, and Halvorsen cannot be held liable
for their testimony at trial or at pretrial motions. But that does not mean that their testimony is
not relevant.

The statements Guevara, Mason, and Halvorsen made during trial are statements of party-
opponents, which are admissible as substantive evidence under Federal Rule of Evidence 801(2)
and are also admissible to impeach their credibility at trial under Federal Rule of Evidence
801(d)(1). Although defendants fail to specify which testimony they are afraid of, some of that
testimony is obviously relevant and admissible.

For example, Guevara testified at the trial and at the motion to suppress that Jaime Rios
went with him to Area 5 voluntarily and was not under arrest. There are several flaws in that
testimony, which Jaime Rios will point out at trial. Jaime Rios has contradicted that testimony in
his own testimony at trial and at the motion to suppress. Guevara's testimony that Jaime Rios
went with him voluntarily is obviously relevant to the claims of malicious prosecution and
coercion. Jaime Rios is not seeking liability based upon Guevara's false testimony at trial and at
the motion, but based upon Guevara's malicious institution of proceedings against Jaime Rios,
beginning with his arrest, as well as upon his coercion of Jaime Rios's confession while Jaime
Rios was under arrest.

Similarly, Jaime Rios is claiming that Guevara fabricated the existence and/or information

provided by the confidential informants, and this court has ruled that this claim survives summary judgment. This court has also made clear that liability depends upon actions which Guevara took apart from his trial testimony, such as authoring a sworn false arrest report about the alleged confidential informants, as well as by informing prosecutors of this claim. Guevara's suppression testimony and trial testimony, while no basis for liability, support the argument that Guevara's police report was false, because Guevara gave confusing and contradictory testimony about the number of informants, when he spoke with them, and whether they were in fact confidential informants at all. These statements are admissible as admissions of a party opponent as well as for impeachment.

Apart from the introduction of Guevara, Mason, and Halvorsen's prior testimony as admissions or to impeach, the testimony is also admissible because it was relied upon by all four potential expert witnesses – Geoffrey Loftus, Melissa Russano, John Wixted, and John Schafer. Under Federal Rule of Evidence 703, experts may rely upon such materials even if the materials are not otherwise admissible.

## MOTION IN LIMINE NO. 5  -- MOTION TO BAR PRIOR EVIDENCE OR ARGUMENT CONCERNING PRIOR CLAIMS OF MISCONDUCT, CITIZEN COMPLAINTS, AND LAWSUITS, AND THE TESTIMONY OF PLAINTIFF'S PROFFERED FED. R. EVID. 404(B) WITNESSES AGAINST GUEVARA

As defendants note, Jaime Rios has provided detailed motions in limine with respect to his proffered 404(b) witnesses. However, defendants go beyond a possible response to these 404(b) witnesses to argue that Jaime Rios should be precluded from introducing evidence of prior claims of misconduct, complaints, discipline, or lawsuits involving Guevara.

Jaime Rios agrees with the general proposition that prior acts of misconduct not admissible

under 404(b), or are not otherwise admissible, should be excluded. However, certain specific allegations of misconduct by Guevara are admissible and deserve to be highlighted.

For example, Jaime Rios has testified at deposition that he knew Guevara from the Humboldt Park neighborhood and that Guevara had a reputation for illegally stopping people in the neighborhood, confiscating their jewelry and valuables, and falsely accusing them of crimes. Jaime Rios will also question Guevara about these allegations and expects that Guevara will take the fifth.

This testimony is admissible not necessarily for the truth of the matter asserted – to show that Guevara was a bad cop who committed unrelated crimes -- but to illuminate Jaime Rios's state of mind when he was arrested and questioned by Guevara and to explain why Rios believed that he had to make a false statement to avoid criminal charges.

A second, and related example, is Jaime Rios's testimony at deposition that Jaime Rios's mother was the only person in the neighborhood to confront Guevara about his bad behavior and that Jaime Rios believed Guevara carried a grudge against the Rios family because of that confrontation. Again, Jaime Rios expects to question Guevara about this incident and expects that Guevara will take the fifth.

This testimony will at least be admissible with respect to Jaime Rios's state of mind during the interrogation, apart from the truth of the matter asserted. And it may also be admissible as substantive evidence bearing upon Guevara's malice in instituting false charges against Jaime Rios.

A third example along the same lines is Luis Huertas's statement in his affidavit that he knew Guevara was a "dirty cop" who put cases on people. This statement is relevant to show why Huertas may have falsely identified Jaime Rios, apart from the truth of the matter asserted. And

despite the grant of summary judgment as to the Huertas suggestive identification and coercion claims, this evidence is still relevant to the malicious prosecution claim and to the general question of whether Jaime Rios is actually guilty of the Morales murder.

Another example, contained within the 404(b) proffer as to Jose Maysonet, is the evidence that Guevara took payoffs from Maysonet in order to allow Maysonet to sell drugs. This evidence is relevant to show the relationship between Maysonet and Guevara and to provide a possible motive for Guevara to beat Maysonet and falsely accuse him of murder.

Yet another example is Cristino Garcia's testimony that after the beating by Guevara, Guevara stopped Garcia on the street on two occasions, took his picture, and threatened him. This testimony is admissible on the issue of whether Garcia's testimony could have been discovered by the exercise of reasonable diligence on the part of the defense.

**MOTION IN LIMINE NO. 7 – MOTION TO BAR EVIDENCE OF FIFTH AMEND-MENT INVOCATION, OR IN THE ALTERNATIVE, TO BAR LIVE ELICITATION OF FIFTH AMENDMENT INVOCATION OF DEFENDANT GUEVARA AND/OR LIMIT THE NUMBER AND NATURE OF QUESTIONS DESIGNED TO ELICIT SUCH INVOCATION**

Defendants move in limine to bar or limit any evidence or argument concerning Reynaldo Guevara's invocation of his fifth amendment rights. Almost all of defendants' arguments had been anticipated or refuted in Jaime Rios's positive motion in limine to introduce such evidence, which is incorporated by reference here. But the following additional comments are in order.

**I. Allowing Evidence of Defendant Guevara's Fifth Amendment Invocation at Trial Would Impose Too High of an Economic Consequence on Defendant Guevara to Satisfy Constitutional Muster.**

In his motion in limine, Jaime Rios has largely anticipated the argument that forcing Guevara to invoke the fifth amendment would impose too high an economic cost and is therefore

unconstitutional. But some points need to be made in addition.

First, as Guevara suggests, Jaime Rios is not adverse to allowing Guevara to waive his fifth amendment right for the purpose of telling the jury that he is "81 years old, unemployed, and living essentially on a fixed income." Jaime Rios is also not adverse to having Guevara give this testimony by zoom, should he choose not to attend the trial, or by a stipulation. Although it could be argued that Guevara has waived any economic argument against punitive damages by his blanket assertion of the fifth amendment during discovery, this is not an argument that Jaime Rios intends to make.

Second, it is Guevara's choice, and his alone, whether he wants the jury to know about the possibility that he will be subjected to the multiple punitive damages awards for the forty cases in which he is being sued. Not to be unnecessarily cruel, Guevara might have thought of those consequences before he embarked upon his mad career of torturing suspects, threatening witnesses, and putting innocent men and women in prison. And that is precisely the point of punitive damages – they impose painful costs upon defendants who willfully violate the constitutional rights of their fellow citizens.

Third, Guevara exaggerates the cost of his invocation. Guevara is free to declare bankruptcy. Garnishment of his pension will be limited to ten percent of his current income. As Guevara helpfully points out, the loss of only 7.6 percent of one's income is not costly enough to violate the fifth amendment. *Chan v. City of Chicago*, 916 F. Supp. 804, 808 (N.D. Ill. 1996), *aff'd sub nom. Chan v. Wodnicki*, 123 F.3d 1005 (7th Cir. 1997). Charles Dickens is dead ,Debtor's prisons no longer exist.

This argument cannot be taken seriously. It should be rejected by this court.

**I. In the Alternative, this Court Should Only Permit Evidence of Defendant Guevara's Fifth Amendment Invocation to be Introduced Through Court Instruction or Limited Pre-Screened Questions Vetted by this Court.**

Again, defendants' arguments for this point have largely been anticipated. The only civil case cited for this point, *Evans v. City of Chicago*, 513 F.3d 735, 741 (7th Cir. 2008), has been thoroughly discussed, and distinguished, in Jaime Rios's combined motions in limine. To the extent that defendant says anything new, the following comments are in order.

Defendants cite criminal cases, correctly, for the proposition that in those cases it is improper to call a witness for the purpose of having a witness take the fifth. But those cases cannot apply here, simply because the rule in criminal cases is that neither the State nor the defense can make an inference from an invocation of the fifth and the rule in civil cases is that either party can make such an inference.

Lastly, defendants argue that the court should adopt some procedure – any procedure -- which limits the manner and scope of the live invocation. Obviously, the court has discretion to control the manner and mode of examining witnesses; equally obviously, Jaime Rios has an interest in conducting his case in the manner he sees fit.

A civil trial is not a play. There is no script. It is not the usual practice to limit the parties to pre-screened questions and to have the witnesses give rehearsed answers. As Jaime Rios pointed out in his motion in limine on this topic, Guevara's demeanor while invoking the fifth may provide important information for the jury, information Jaime Rios is entitled to elicit.

Defendants also seek to move in limine to prevent questioning on specific topics. To the extent that they are arguing that specific topics are precluded by this court's ruling on summary judgment, this request, for the reasons given in the response to motion in limine number two,

should be rejected.

## MIL 8. MOTION TO BAR ANY ATTEMPT TO ELICIT A FIFTH AMENDMENT INVOCATION FROM DEFENDANT GUEVARA WITHOUT FIRST ESTABLISHING THE EXISTENCE OF SUCH FACTS THROUGH INDEPENDENT EVIDENCE

Defendants move in limine to bar any attempt to elicit a fifth amendment invocation from Reynaldo Guevara without introducing independent admissible substantive evidence on the subject matter, before or after the invocation.

As an initial matter, Jaime Rios does not anticipate that Guevara will be asked substantive questions which are not supported by other evidence or reasonable inferences from other evidence. But to the extent that defendants are asking the court to establish a bright line rule that every invocation must be supported by independent evidence, that argument should be rejected.

Defendants fail to cite any cases for the proposition that, at trial, a plaintiff cannot prove his case based solely upon the inference drawn from an invocation of the fifth amendment. There are of course cases which say that judgment on the pleadings or summary judgment against a non-moving party cannot be entered based solely upon a fifth amendment invocation. See, e.g. *National Acceptance v. Bathalter*, 705 F.2d 924, 932 (7th Cir. 1983). But that is because on summary judgment, the facts are to be construed against the moving party, and the moving party has the burden of establishing that there is no contested issue of material fact.

At trial, however, Jaime Rios does not have the burden of establishing that there is no contested issue of material fact; all he has to do is persuade the jury that he has proved the necessary material facts by a preponderance of the evidence. Since Guevara's assertion of the fifth amendment has blocked discovery of material facts he is in a poor position to argue that his invocations, standing alone, cannot be used to establish those material facts which make him liable.

Jaime Rios has no intention or interest in asking questions that are not rooted in the evidence presented at trial (of the "did you kill President Kennedy" variety), because to do so would stupidly create the appearance of gamesmanship or trickery, and thus water down any benefit Jaime Rios hopes to gain from Guevara's invocation of the fifth before the jury. There is no reason to depart from the standard rules of trial just because Guevara elects to assert privileges rather than provide substantive answers to some or all questions.

Defendants motion should be denied.

### MIL 9. MOTION TO BAR ANY ATTEMPT TO ELICIT A FIFTH AMENDMENT INVOCATION FROM DEFENDANT GUEVARA ON MATTERS ALREADY ADJUDICATED AGAINST PLAINTIFF ON SUMMARY JUDGMENT

The defendants argue, based upon this court's ruling on the successive motion for summary judgment, that Jaime Rios should be barred from any attempt to elicit a fifth amendment invocation from Guevara with respect to whether he suggested or coerced Luis Huertas's invocation of the fifth amendment or that the identification by Luis Huertas was false or fabricated.

For the reasons given in response to Defendants' Motion in Limine No. 2, this argument is not well taken. Guevara's conduct with respect to Huertas and the truth of falsity of Huertas's identification remain relevant to the claim of malicious prosecution, as well as to issue of whether Jaime Rios is guilty or innocent of the Morales murder. These issues are also relevant to the opinions of the experts. This motion should be denied.

## MIL 10. MOTION TO BAR ANY EVIDENCE, ARGUMENT OR INQUIRY RELATING TO ANY JUDICIAL COMMENTARY ON THE CREDIBILITY OF DEFENDANT GUEVARA OR OTHER MATTERS RELATING TO OTHER CASES INVOLVING DEFENDANT GUEVARA

Defendants argue that any reference to judicial commentary upon Reynaldo Guevara's credibility should be barred. This motion should be denied.

Although judicial commentary upon Guevara's career is legion, the two most pertinent instances are Cook County Circuit Judge James Obbish's 2013 decision regarding Guevara's credibility in granting the post-conviction petition in the Solache-Reyes case and Cook County Circuit Court Judge Erica Reddick's decision granting Jaime Rios's petition for certificate of innocence.

Judge Obbish's statements about Guevara's credibility are admissible as bearing upon one possible explanation for Guevara's invocation of the fifth amendment. As matters stand, defendants are free to advance any explanation of this invocation that they wish, including that Guevara is simply worried about the possibility of losing all of his money in multiple lawsuits.

The Judge Obbish finding provides an alternative, and more plausible, explanation of Guevara's invocation: that after this finding Guevara legitimately fears he may be (as he should be) prosecuted for perjury. The Obbish finding is not admissible for the truth of the matter asserted, but for its effect on Guevara's mental state.

Judge Reddick's finding is relevant to explain the grant of the certificate of innocence and to rebut any argument that the grant was a mere formality or an ineluctable consequence of the grant of the 2-1401 petition and the State's decision to nolle prosse the case.

Therefore, with respect to these two judicial findings, the defendants' motion in limine should be denied.

**MIL 11. MOTION TO BAR IMPUTING ANY INFERENCE FROM GUEVARA'S ASSERTION OF THE FIFTH AMENDMENT TO DEFENDANTS HALVORSEN AND MASON**

Jaime Rios agrees with this motion.

**MIL 12. MOTION TO BAR EVIDENCE OR ARGUMENT RELATED TO HALVORSEN'S DISAVOWED FIFTH AMENDMENT INVOCATION IN UNRELATED LITIGATION**

Jaime Rios agrees with this motion.

**MIL 13. MOTION TO BAR ANY TESTIMONY BY CRIMINAL DEFENSE ATTORNEYS OR OTHER WITNESSES SPECULATING ON THE OUTCOME OF CRIMINAL TRIAL**

Defendants move to bar testimony by criminal defense attorneys or other witnesses speculating on the outcome of the criminal trial.

Jaime Rios agrees that criminal defense attorneys in general, or Karen Shields in particular, should be precluded from testifying as to whether, absent Brady violations and coercion, there was a reasonable probability of a different outcome of the criminal trial. The same principle should apply to prosecutors or former prosecutors who may have opinions on these matters.

However, Karen Shields should be permitted to testify to her perception of the weight or quality of the case against Jaime Rios with respect to the issue of whether she could have discovered the exculpatory evidence by the exercise of reasonable diligence. In this connection, it should be noted that Shields testified at her deposition as to the constraints upon interviews with prosecution witnesses which existed in 1990 at the time of trial and which may no longer exist. This evidence is the direct counterpart of evidence which defendants may adduce as to the feasibility of recording or different police procedures as of 1989 or 1990.

**MIL 14. MOTION TO BAR ANY TESTIMONY REGARDING RIOS'S FRIENDS AND FAMILY'S PERSONAL**
**FEELINGS, EMOTIONAL STATUS, AND/OR SUFFERING AFTER PLAINTIFF'S ARREST**

Defendants move in limine to preclude Jaime Rios from introducing "any testimony or evidence regarding personal feelings, emotional status, or suffering of Rios's family members or friends for his arrest, prosecution, conviction and/or incarceration." This motion should be denied.

As John Donne wrote:

"No man is an island,

Entire of itself.

Each is a piece of the continent,

A part of the main.

If a clod be washed away by the sea,

Europe is the less.

As well as if a promontory were.

As well as if a manor of thine own

Or of thine friend's were.

Each man's death diminishes me,

For I am involved in mankind.

Therefore, send not to know

For whom the bell tolls,

It tolls for thee."

Jaime Rios's suffering during his incarceration was inextricably linked with his

perception of the suffering of his friends and family, including his girlfriend and infant child, from whom he was separated, and with whom he would never again be reunited. Jaime Rios should not be prevented from telling the jury what Rios knew about the trials and tribulations of the family and how that knowledge increased his own distress.

The one case cited by the defendants, *Gray v. City of Chicago*, No. 1:18-CV-02624, 2023 WL 7092992, at *15 (N.D. Ill. May 8, 2023) is not apropos. In *Gray* family members of the plaintiff were not allowed to testify to their own suffering caused by plaintiff's incarceration but were allowed to testify to their own perception that plaintiff suffered while incarcerated. Here, Jaime Rios has not listed any family members to testify to their own distress. But Jaime Rios cannot and should not be precluded from testifying that his perception of their distress and his lack of ability to help them increased his own suffering. This kind of testimony was not at issue in *Gray*.

### MIL 15. MOTION TO BAR EVIDENCE OR ARGUMENT REGARDING ANY ALLEGED ABUSE OR ILLEGAL CONDITIONS OF CONFINEMENT EXPERIENCED OR WITNESSED BY PLAINTIFF WHILE INCARCERATED

The defendants move to bar evidence or argument regarding any alleged "abuse" or "illegal" conditions of confinement. Jaime Rios is unable to respond to this argument because he is not sure of what it means.

Jaime Rios will not testify or allege that his prison conditions were "illegal," whatever that means, or that there some independent violations of his constitutional rights while he was in prison. Had there been such a violation, Jaime Rios would have had to exhaust his administrative remedies in order to file a separate lawsuit. He did not do so.

As to "abuse," this term is so vague as to be without meaning. Jaime Rios did identify specific deprivations in his answers to interrogatories and in his deposition answers. If he adds more detail in his trial testimony, he can always be impeached with any inconsistencies based upon his prior statements. But to limit his testimony to the questions defendants chose to ask at his deposition is uncalled for.

Therefore, this motion should be denied.

### MIL 16. MOTION TO BAR ANY ARGUMENT OR QUESTIONING REGARDING THE FAILURE TO RECORD INTERROGATIONS, WITNESS STATEMENTS OR IDENTIFICATION PROCEDURES

Defendants move in limine to bar Jaime Rios from arguing defendants should have video or audio-recorded any witness questioning, including his own interrogation, lineups, or witness interviews. And although defendants do not say so, they are also apparently arguing that Jaime Rios should be prevented from introducing evidence that interviews and identifications were not recorded. This argument should be rejected.

It is true that Illinois did not mandate recording of statements before 2003 and did not mandate recording of identification procedures before 2015. Jaime Rios will certainly not argue that defendants acted illegally or improperly by failing to record any statements.

But it is equally true that in 1989, nothing prevented defendants from recording anything they wanted to record. In fact, in a number of instances before that date, police did record statements of defendants. See, e.g., *People v. Williams*, 109 Ill. 2d 327, 337 (1985)(defendant denied due process when trial court refused to allow defendant to play audiotape of his statements to the police, where police); *People v. Edens*, 174 Ill. App. 3d 1033, 1037 (1st Dist. 1988)(in Chicago case, a tape recording was made of an interview with defendant's accomplice).

17

The failure to record statements and identifications is certainly relevant for at least three reasons.

First, with respect to the claim that Jaime Rios's statements were unconstitutionally coerced, a recording of the entire interrogation would have certainly been relevant to establish how he was interrogated, how he appeared during the interrogation, and whether he or Mason is telling the truth about whether he was threatened or assaulted. The failure to record the interview is therefore relevant to Mason's credibility. Mason should be asked whether he recorded the interview and why he did not. In response, Mason will be free to testify as to why he did not record the interview and to establish, if he so chooses, that Chicago police did not, as a matter of practice or policy, record interviews.

Second, to the extent that defendants seek to argue that Jaime Rios's damages should be reduced because he is really guilty, the failure to record his alleged statements, as well as the Huertas lineup, is relevant to the weight and quality of the evidence against him.

Third, the failure to record the interview is relevant to the expert opinions of Dr. Russano and Dr. Loftus. Dr. Russano will testify that recording of an interview is important to establish the likelihood of a false confession. Dr. Loftus will testify to studies which show that the institution of the 2015 reforms, including mandatory recording, reduced the incidence of lineup identifications, and which therefore strongly suggest that the Huertas lineup identification is suspect. Both opinions are relevant to the weight of the evidence against Jaime Rios and bear upon the question of whether he is in fact guilty.

Therefore, this motion should be denied.

## MIL 17. MOTION TO BAR ANY EVIDENCE OR ARGUMENT CONCERNING SUFFICIENCY OF INVESTIGATION

Defendants argue that Jaime Rios should be barred from introducing any evidence that the

Morales investigation was "insufficient, incomplete, inadequate, or otherwise unsatisfactory." This argument should be rejected.

It is true, and Jaime Rios does not contest, that he had no constitutional right to a more complete or more satisfactory investigation. But that is not the point. To the extent that defendants are arguing that Jaime Rios's damages should be reduced because he is actually guilty, evidence that the investigation was "insufficient, incomplete, inadequate, or otherwise unsatisfactory," has obvious bearing upon the weight and quality of the evidence against him and whether he was wrongfully convicted. The defendants cannot simultaneously seek to reduce damages on the basis of guilt and exclude evidence of innocence.

This motion should be denied.

### MIL 18. MOTION TO BAR CHICAGO POLICE DEPARTMENT POLICY OR PRACTICE VIOLATIONS BY DEFENDANT OFFICERS

Defendants are correct that in the absence of evidence as to Chicago police department procedures or policies, or a *Monell* claim, there is no reason to argue or imply that defendants violated such procedures.

Nonetheless, evidence as to Chicago police policies or procedures is potentially relevant, for two reasons.

First, defendants may choose to defend their conduct in this case by citing Chicago police policies or procedures which were in place in 1989. To the extent they do so, they will open the door to cross-examination as to those policies and procedures. And even though neither side has tendered such policies or procedures in discovery, their use for impeachment purposes is permissible.

Second, such policies and procedures are relevant to the opinions of Dr. Russano and Dr. Loftus, both of whom will testify that post-1989 reforms have reduced the dangers of false

confessions and mistaken identifications. Their opinions, in turn, are relevant to the question of whether Jaime Rios is guilty or innocent.

This motion should be denied.

## MIL 19. MOTION TO BAR GENERAL EVIDENCE OR ARGUMENT REGARDING ALLEGED CODE OF SILENCE

Defendants argue that Jaime Rios should be precluded from arguing that there is a "code of silence" or widespread cover-ups of police misconduct. Jaime Rios agrees as to the general principle, but with the following caveats.

First, Jaime Rios must be permitted to cross-examine defendant Mason about why he felt confident about physically abusing Jaime Rios in the presence of other officers, including Guevara or Halvorsen, without fear that they would report him. Since Jaime Rios is permitted to introduce evidence of a conspiracy between Mason, Guevara, and Halvorsen, the secrecy and silence employed by the conspirators is certainly relevant.

Second, with respect to the witness Aubrey O'Quinn, who is claiming no memory of any events, including his interactions with defendant Guevara, cross-examination as to a motive or bias not to testify against a fellow officer is certainly a permissible line of inquiry.

## MIL 20. MOTION TO BAR PLAINTIFF'S FALSE CONFESSION EXPERT MELISSA RUSSANO

Jaime Rios incorporates by reference his motion in limine to admit Dr. Russano's testimony.

**MIL 21. MOTION TO BAR PRIOR EVIDENCE OR ARGUMENT CONCERNING PRIOR CLAIMS OF MISCONDUCT, CITIZEN COMPLAINTS, AND LAWSUITS AGAINST HALVORSEN, MASON AND NON-PARTY CPD WITNESSES**

Defendants argue that any citizen complaints, prior disciplinary matters, lawsuits, or other allegations of misconduct against Defendants Mason, Halvorsen, or against any non-party CPD Officer should be barred. Plaintiff agrees.

**MIL 22. MOTION TO BAR REFERENCES TO HIGHLY PUBLICIZED CASES OF POLICE MISCONDUCT**

Jaime Rios agrees that he will not mention highly publicized cases of police misconduct, but with the following caveats.

This bar should not prevent Jaime Rios from arguing that, in general, jurors can use their own life experience and common sense to conclude that it is possible for police officers, like other human beings, to lie, to cheat, and to assault others. He should also be able to argue that it is possible for police officers to falsely accuse suspects and to frame them for crimes they did not commit. These are the allegations of the complaint. And any potential juror who cannot concede the possibility of police misconduct should not sit on the jury.

Second, the opinions of Dr. Russano and Dr. Loftus depend, in part, on research into cases of false convictions and wrongful identifications, some of which were highly publicized. To the extent that experts in their field can rely upon such data they are entitled to testify to it, even if the data is not independently admissible. In particular, Dr. Russano's opinion that false confessions exist, and that the rate of false confessions may be very high, will be based in part upon such cases.

**MIL 23. MOTION TO BAR PLAINTIFF FROM ARGUING OR REFERRING TO "CONSTITUTIONAL RIGHTS" AS A CATEGORY OF DAMAGES**

Defendants argue that Jaime Rios should be barred from arguing or introducing any evidence that violation of constitutional rights as a separate category of damages. While in general

Jaime Rios has no objection to this motion, the following caveats are in order.

First, Jaime Rios should be permitted to argue that he deserves damages for violations of his constitutional rights which caused specific injuries, such as incarceration or lost wages. Section 1983 was obviously intended to provide a remedy for violations of those rights which cause injury.

Second, Jaime Rios should be permitted to argue the importance of the constitutional rights protected by section 1983 and to urge the jury to fearlessly uphold the law. In this context, the history, purpose, and nature of the rights protected by section 1983 are pertinent, and the subject of proper argument by Jaime Rios.

## MIL 24. MOTION TO BAR ANY "GOLDEN RULE" ARGUMENTS

The defendants move in limine to bar Jaime Rios from using what defendants call "golden rule" arguments. To the extent that Jaime Rios can understand what defendants mean, this argument should be rejected.

Defendants cite two criminal cases, *United States v. Roman*, 492 F.3d 803, 805 (7th Cir. 2007) and *United States v. Teslim,* 869 F.2d 316, 328 (7th Cir.1989) for the proposition that in a criminal case the defendant cannot ask the jurors to imagine themselves in the defendant's "shoes," just as the government cannot ask jurors to put themselves in the victim's "shoes."

This principle has no application in a civil case. In a criminal case, the jurors are only asked to determine criminal liability; they are not called upon to set a punishment. In such a case the jurors have no call to imagine how bad punishment for a defendant would be or how much a victim has suffered. In a civil case, on the other hand, the jury has to decide both liability and damages.

As the jurors are instructed, there is no set measure for calculating damages. In the absence of any set measure or calculus, the jurors are and should be free to assess the value of

freedom or the psychic cost of imprisonment based upon their own common sense and experiences in life. And Jaime Rios will ask them to do no more than that.

This case cannot,  and should not,  be sanitized. Jaime Rios, an innocent man, was deprived of 17 years of freedom when his civil rights were egregiously violated. He should be free to urge jurors to assess an appropriate amount of damages based on those facts.

The defendants' motion in limine should be denied.

## MOTION IN LIMINE NO. 25: MOTION TO ADMIT FELONY CONVICTIONS OF PLAINTIFF'S WITNESSES BENJAMIN CARRERO, CRISTINO GARCIA, AND LAMONT BURR

With certain possible exceptions noted below, the prior felony convictions of Benjamin Carrero, Cristino Garcia, and Lamont Burr should be excluded.

Federal Rule of Evidence 609 provides:

> "(a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.
> (b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."

Almost all of the convictions at issue are more than ten years old, and in many instances,

much older than that. Since more than 10 years have passed since the release from confinement on these cases, these convictions cannot be admitted for impeachment unless the "probative value, supported by specific facts and circumstances, substantially outweighs" their "prejudicial effect." In this case, the probative value of these convictions does not substantially outweigh their prejudicial effect and the convictions should be excluded.

With respect to the felony convictions of Carrero, Garcia, and Burr, virtually all of the felony convictions are over ten years old, and some are much, much older. Therefore, absent specific facts and circumstances which demonstrate that the probative value of these convictions *substantially* outweighs their prejudicial effect, these convictions must be excluded. As for the few convictions within the ten year rule, their prejudicial effect outweighs any probative value.

The Seventh Circuit provides the following balancing test for comparing the prejudicial effect of a prior conviction under Rule 609: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the testimony; and, (5) the centrality of the credibility issue. *U.S. v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004). Even if the various convictions were less than ten years old, application of the *Montgomery* test would almost certainly preclude their admission.

prejudicial effect.

**Benjamin Carrero**

Defendants argue for the admission of four convictions of Benjamin Carrero – murder, armed robbery, and burglary (convicted 1994, released 2008) and felony possession of a controlled substance (convicted 2011, released 2012). Both are obviously beyond the ten year

limit.

With respect to "facts and circumstances" defendants argue as to the first three convictions that Carrero's encounters with Jaime Rios in the IDOC where they discussed Rios's case on at least one occasion heighten the probative value of the conviction.

This argument is without merit. Defendants can cross-examine Carrero and Rios about any conversations without revealing that these occurred while Carrero was incarcerated. Even if the court believes that it is necessary to disclose that Carrero was incarcerated, the crime for which he was incarcerated and the length of his sentence are irrelevant. Moreover, as defendants acknowledge, the nature of the crimes for which Carrero was convicted are  extremely prejudicial and are not probative of honesty.

The Seventh Circuit has found that crimes that involve dishonesty or fraud, have a higher impeachment value than other crimes. *Montgomery*, 390 F.3d at 1015 (finding the defendant's prior convictions, which did not speak to his truthfulness, did not have a high impeachment value and favored exclusion); *U.S. v. Nurudin*, 8 F.3d 1187, 1192 (7th Cir. 1993) (finding a prior conviction did not involve dishonesty or fraud, so the first factor weighed in favor of exclusion); *U.S. v. Causey*, 9 F.3d 1341, 1344 (7th Cir. 1993) (stating crimes that do not involve dishonesty have a low impeachment value and favor exclusion). With respect to all of Carrero's convictions, particularly the murder and the possession, the first factor weighs heavily against admission.

The point in time of the convictions and Carrero's  subsequent history also weigh heavily against admission. 18 years have passed since Carrero's release on the murder conviction and 15 years have passed since his release on the possession conviction. Since that last conviction, Carrero has lived a blameless life.

Defendants argue that Carrero's credibility is critical because there is a credibility contest between Guevara and Carrero as to whether Guevara coerced Carrero. That argument has no merit. So long as Guevara takes the fifth, there is no credibility contest: both Guevara's invocation and Carrero's testimony will establish the constitutional violation.

Therefore, all of Carrero's convictions should be excluded.

**Cristino Garcia**

With respect to Cristino Garcia's convictions, defendants concede that all but one of these convictions are beyond the ten year limit, but claim that their "probative value, supported by specific facts and circumstances, substantially outweighs" their prejudicial effect.

Defendants advance two arguments for "specific facts and circumstances." The first is that Cristino Garcia's drug convictions are particularly probative because they demonstrate that in 1989 he was a drug user, a fact which bears upon his ability to remember and recall details of his alibi and his interactions with Guevara.

This point is not well taken. As defendants point out, Garcia has already admitted at deposition that in June and July of 1989, he was drinking beer, using marijuana, and had a bad cocaine habit. Given this evidence, the probative value of the convictions for drug possession which are older than ten years is virtually nil.

With respect to Cristino Garcia's 1991 possession conviction, defendants argue that this conviction bears upon Garcia's "purported ability to attend and testify at Plaintiff's criminal trial." On its face, this is not an argument for the admission of the 1991 conviction under Rule 609, since the conviction occurred after Jaime Rios's trial, and not before. But the fact that at the time of the November 1990 criminal trial, Garcia had a pending case and a bond forfeiture warrant had been issued for him is relevant, and Jaime Rios will seek to admit evidence of the

warrant.

With respect to the *Brady* claim, Jaime Rios is obliged to prove that his attorneys could not have discovered Cristino Garcia's exculpatory evidence by the exercise of reasonable diligence. If Garcia was in the wind, the likelihood that his testimony could have been discovered by the exercise of reasonable  diligence is diminished. And while defendants are free to argue that Garcia would have asserted the fifth amendment at trial because of his pending case, this argument would not be well taken. Garcia's testimony as to Guevara's conduct would not have implicated Garcia as to charge of possession of drugs, and he could not have asserted the fifth amendment as to that charge. Whether he would have asserted the fifth amendment with respect to the murder because of Guevara's threats is a separate question, which is unrelated to the possession charge.

The only two of Garcia's convictions which are even conceivably admissible are the two 2021 convictions for possession of a controlled substance. But even those two convictions should be excluded. Neither of the convictions is a conviction for a crime of dishonesty,  both convictions are five years old, and Garcia has lived a blameless life since 2021. Since Guevara is taking the fifth, there is no credibility contest to be resolved.

**Lamont Burr**

Lamont Barr has eight felony convictions. All but one are older than the ten year limit, none of them is for a crime of dishonesty, most are extremely old, and Burr's credibility is hardly central to the case, because no witness contradicts his testimony. Only his last conviction, a 2017 conviction for armed habitual criminal  is even potentially admissible. If this conviction is admitted, Jaime Rios asks that it be admitted as an unnamed felony in order to minimize its prejudicial impact.

**MIL 26. MOTION TO EXCLUDE THE CITY OF CHICAGO ON THE VERDICT FORM, JURY INSTRUCTIONS AND CASE CAPTION**

The defendants argue, without citation to authority, that the City of Chicago should be excluded from the verdict form. This argument has no merit. The City of Chicago is a defendant in this action. To pretend to the jury that the City of Chicago is not a party would be deceptive and unjust. Therefore, this motion should be denied.

**CERTIFICATE OF SERVICE**

Stephen L. Richards certifies that on  December  30, 2025,   he served   **PLAINTIFF'S RESPONSES TO DEFENDANTS' MOTIONS IN LIMINE**

through the ECF filing system.

*/s/ Stephen L. Richards*
By: Stephen L. Richards
Attorney for Plaintiff
53 W. Jackson, Suite 756
Chicago, IL 60604
(773) 817-6927
sricha5461@aol.com
Attorney No: 6191946