## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JAIME RIOS, | ) | |
| | ) | **Case No. 22 CV 3973** |
| Plaintiff, | ) | |
| | ) | **Judge Jeremy Daniel** |
| vs. | ) | |
| | ) | |
| REYNALDO GUEVARA, MICHAEL MASON, | ) | |
| ERNEST HALVORSEN, CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTIONS IN LIMINE

NOW COME Defendants, by and through their undersigned counsels, and responding to Plaintiff's Motions in Limine, state as follows:

**RESPONSE TO PLAINTIFF'S MOTION IN LIMINE #1: To Preclude The Prosecution From Introducing Plaintiff's Prior Convictions For Impeachment Under Fed. R. Evid. 609**

Plaintiff moves to bar evidence of his prior felony convictions under Fed. R. Evid. ("Rule") 609, that allows certain prior criminal convictions to be admitted to attack a witness's character for truthfulness. Fed. R. Evid. 609(a). Plaintiff has failed to meet the five-factor test set forth in *U.S. v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004) that bars admission of his prior convictions under Rule 609 and thus, Defendants can also use his prior convictions to attack his character for truthfulness. But Defendants have other bases to admit his prior convictions, which Plaintiff does not address. Defendants seek to admit Plaintiff's prior felony convictions because they are relevant to his liability and damages claims, and are proper evidence for impeachment. If a felony conviction is being used to impeach the witness for something other than his character for truthfulness, then Rule 609 is inapplicable and other rules of evidence govern. *See Serafinn v. Local 722, Int'l Bhd. of Teamsters*, 597 F.3d 908, 915 (7th Cir. 2010) (admission of misdemeanor conviction permissible for impeachment by contradiction and impaired ability to recall). Several Circuit Courts of Appeals follow this

reasoning. *See U.S. v. Tetioukhine*, 725 F.3d 1, 8-9 (1st Cir. 2013) (impeachment by contradiction); *U.S. v. Gilmore*, 553 F.3d 266, 271-73 (3rd Cir. 2009) (same); *U.S. v Troupe,* 307 F. App'x 715, 717 (4th Cir. 2008) (same); *U.S. v. Portillo*, 969 F.3d 144, 183-84 (5th Cir. 2020) (same).[1]

**A. Plaintiff's prior convictions.**

Other than his vacated November 30, 1990 murder conviction which forms the basis of this lawsuit, Plaintiff has two other valid felony convictions: he was convicted on September 6, 1990 of aggravated assault in the Circuit Court of Cook County for which he received a three-year sentence (Ex. A, Cert. Copy of Conviction, Case No. 89 CR 1405601); and he was convicted on July 12, 1995 for unlawful possession of contraband (marijuana) in a penal institution (Pontiac Correctional Center) in the Circuit Court of Livingston County for which he received a two-year sentence consecutive to his Cook County convictions for aggravated assault and murder. (Ex. B, Cert. Copy of Livingston Cnty., Ill. Order and Judgment on Sentence, Case No. 95 CF 127.) Plaintiff claims he was released from confinement on the aggravated assault conviction in 1990 (Plt's MIL #1 at 2), but offers *no evidentiary support* for that contention and it is certainly belied by the certified copy of the Livingston County conviction which states that it is consecutive to his Cook County convictions for aggravated assault and murder. (Ex. B.)

**B. Plaintiff's prior convictions for aggravated assault and possession of contraband in a penal institution should be admitted against him during his trial against Defendants for alleged violations of Plaintiff's fair trial rights.**

*First*, Plaintiff's aggravated assault conviction is relevant to his coerced confession claim, the primary claim against Defendants in the upcoming trial. Plaintiff claims his July 7, 1989 court-reported statement admitting his involvement in the gang-related shooting of Luis Morales on June 27, 1989

---

[1] See also, Committee Notes on Rules – 2006 Amendment to Rule 609. ("The limitations of Rule 609 are not applicable if a conviction is admitted for a purpose other than to prove the witness's character for untruthfulness. *See, e.g., United States v. Lopez*, 979 F.2d 1024 [, 1032-35](5th Cir. 1992).")

was coerced. Plaintiff maintains, now and at the time of his criminal trial, that he was no longer an active gang member at the time of Morales' murder and he was wrongfully coerced to state he was a gang member during his interrogation. He contends that he left the gang to be a family man because his girlfriend had just given birth to his son, who was born on May 18, 1989. (Ex. C, Plt. Dep. at 25:5-13, 47:1-24; Ex. D, Plt. Ans. to Def. Mason Irogs., Irog. Nos. 1 and 11; Ex. E, Plt. Crim. Trial Test, 11/30/1990 at 596-98.) But this assertion about Plaintiff's lack of gang involvement at the time of the Morales murder is squarely undermined by his conviction for aggravated assault.

The aggravated assault (the basis for his September 1990 conviction), in which Plaintiff shot a gun at a vehicle and its occupant three times, occurred on May 29, 1989 --ten days after the birth of his child that allegedly prompted him to leave the gang. (Ex. C at 58:5-20.) On June 5, 1989, after being identified by the victim of the aggravated assault, Plaintiff was arrested and specifically *admitted to the arresting officer that he was a member of the Latin Kings gang.* (*Id.* at 59:20-60:8.) Morales's murder occurred 22 days later. Plaintiff was out on bond for the aggravated assault charge when, on July 7, 1989, approximately a month after he admitted to being a Latin King in relation to the aggravated assault, his court-reported statement in the Morales murder records him admitting to be a Latin King. (Ex. C at 63:19-22; Ex. F, 7/7/89 Rios court-reported statement at 2.)

Based on these facts and their temporal proximity, the aggravated assault conviction is relevant to impeach Plaintiff by contradiction regarding his role in the Latin Kings at the time of Morales's murder. Impeachment by contradiction, a recognized impeachment method, *see U.S. v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996), is not limited by Rule 609's requirements to impeach for character for truthfulness. *See Serafinn,* 597 F.3d at 915; *see also, Lopez*, 979 F.2d at 1032-35. Because these events all occurred within weeks of the June 27 Morales shooting, they, and the resulting aggravated assault conviction, are highly probative of Plaintiff's active role in the gang at the time of his

confession and undermine his position that he was no longer a member of the Latin Kings or that he would have acted in such manner since he was no longer a gang member. Fed. R. Evid. 401, 402.

*Second*, and relatedly, Plaintiff denies he voluntarily pleaded guilty to the aggravated assault charge that resulted in his conviction. (Ex. C at 59:20-61:11.) The evidence, however, squarely shows that his guilty plea was made freely and of his own accord. (Ex. G, Tr. Change of Plea hearing, Case No. 89 CR 14056, 9/6/1990 at 6.) And what dooms Plaintiff here, is that a guilty plea is an admission under Illinois law. *See Wells v. Coker*, 707 F.3d 756, 763 (7th Cir. 2013). Thus, the guilty plea that served as the basis of his aggravated assault conviction is relevant and admissible because (1) it is an admission by a party opponent under Fed. R. Evid. 801(d)(2)(A) and (2) it can be used as impeachment evidence against Plaintiff under Fed. R. Evid. 801(d)(1)(A) as a prior inconsistent statement given Plaintiff has denied that it was a voluntary plea. Fed. R. Evid. 801(d)(1)(A) and (2)(A). Neither of these hearsay rules is bound by Rule 609's limitations and accordingly, his prior aggravated assault charge can be used against him.

*Third*, given Plaintiff was arrested and released on bond for the aggravated assault charge within weeks of his arrest for the Morales murder, it is probative of Plaintiff's prior experience with the criminal justice system, a relevant factor for the jury's consideration in assessing whether Plaintiff's confession was voluntary on the coerced confession claim. *See Dassey v. Dittman*, 877 F.3d 297, 304 (7th Cir. 2017) (*en banc*); *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997). Fed. R. Evid. 401, 402.

*Fourth*, the aggravated assault conviction is relevant to materiality, a requisite element of Plaintiff's *Brady* and fabrication claims. See 7th Cir. Civil Pattern Jury Instr. 7.14; *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (fabrication claim); *Anderson v. City of Rockford*, 932 F.3d 494, 504-05 (7th Cir. 2019) (*Brady* claim). Evidence is material if there is a reasonable likelihood the evidence affected the judgment of the jury, or a reasonable probability that the result in the criminal

proceeding would have been different had the evidence been disclosed. *Patrick,* 974 F.3d at 835 (explaining materiality for fabrication and *Brady* claims). Necessarily, "the effect that a particular piece of evidence is likely to have had on the outcome of a trial must be determined in light of the full context of the weight and credibility of all evidence actually presented at trial." *U.S. v. Morales*, 746 F.3d 310, 316 (7th Cir. 2014) quoting *U.S. v. Silva*, 71 F.3d 667, 670 (7th Cir. 1995); At the time of his November 1990 trial for the Morales murder, Plaintiff was indeed a convicted felon (Ex. C at 64:2-5.) – the aggravated assault conviction occurred a little over two months before the Morales trial began. (Ex. A.) Plaintiff testified in his own defense at trial and admitted during cross-examination that he was a convicted felon (the nature of the felony was not mentioned). (Ex. E at 624.) Thus, in light of the fact that Plaintiff's aggravated assault conviction (though not the nature of the crime) was among the evidence presented at trial, the prior conviction is relevant to the jury's assessment of the materiality element of his *Brady* and fabrication claims. Fed. R. Evid. 401, 402.

*Fifth*, both of Plaintiff's prior convictions are extremely relevant to damages. Plaintiff was in custody from July of 1989 until July 2008. Defendants assume Plaintiff will be seeking compensatory damages for his entire 19 years of imprisonment without subtracting for the time he received on both the aggravated assault and possession of marijuana in a penal institution convictions. But Plaintiff simply cannot receive damages for time in custody credited to valid and lawful sentences for convictions separate and apart from the Morales murder, which were not the result of Defendants' acts or omissions. *See Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017); *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013); *Ramos v. City of Chicago*, 716 F.3d 1013, 1019-20 (7th Cir. 2013); Op. & Order, *Day v. Boudreau*, No. 19 C 7286 (N.D. Ill. Dec. 18, 2025), ECF 295 at 35 (finding that a plaintiff cannot receive damages and therefore lacks standing to pursue an unlawful detention claim where the entire time in detention was due to a valid and lawful sentence). Accordingly, Defendants should be

able to introduce those prior convictions in order to rebut Plaintiff's position that he spent 19 years of imprisonment.

*Sixth*, Plaintiff's motion should also be denied on the sole basis he presented – attacking his character for truthfulness under Rule 609. He contends that application of the five-factor test set forth in *Montgomery* bars admission of his prior convictions under Rule 609, but Plaintiff's analysis is not as straightforward as he contends in his motion. As to the first factor, while aggravated assault and possession of marijuana in a correctional institution do not in and of themselves have impeachment value for veracity because they are not crimes of dishonesty, the aggravated assault conviction does have other impeachment value bearing on Plaintiff's credibility (as argued and highlighted above). Plaintiff's contention that the second factor favors exclusion because his prior convictions are significantly more than ten years old is also misplaced. Here that factor is not as persuasive because the convictions are much closer in time to the November 1990 Morales murder trial – on which Plaintiff's fair trial claims against Defendants are based – and thus, from that temporal perspective they are relevant and weigh in favor of admissibility. Indeed, most if not all the evidence the jury will hear involves events that occurred in 1989 and 1990. As to the third factor, Plaintiff does not contend possession of marijuana in a correctional institution is similar to his murder charge, but he does argue that the aggravated assault charge is similar to the murder charge. Plaintiff contends it is prejudicial to admit because it is a crime of violence and suggests that he has a propensity for violence and is therefore, guilty of the Morales murder. But while aggravated assault is a serious crime, it is not murder, and Plaintiff's analysis seems to imply that the underlying facts of the aggravated assault will be admitted. To restrict any prejudice, the details of the aggravated assault conviction can be limited to the crime charged, the date, and the disposition. *See Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992). Plaintiff concedes that the fourth and fifth factors, the importance of his testimony and the

6

centrality of the credibility issue, favor admissibility. Plaintiff, who bears the burden of proof at trial, will be the principal witness on liability and damages, and his credibility will be key.

Thus, on balance, the *Montgomery* factors do not favor exclusion of Plaintiff's prior convictions. Based on the specific facts and circumstances of this case (as argued above), their probative value substantially outweighs their prejudicial effect. Fed. R. Evid. 609(b)(1).[2] Finally, Plaintiff's reliance on *Coles v. City of Chicago*, 2005 WL 1785326 (N.D. Ill. July 22, 2005) (an altercation at a cocktail lounge) and *Earl v. Denny's, Inc.*, 2002 WL 31819021 (N.D. Ill. Dec. 13, 2002) (personal injury action under diversity jurisdiction) does not merit any weight, as the  specific facts and circumstances of this case differ entirely. Accordingly, Plaintiff's motion should be denied under Rule 609.

Based on the foregoing, Plaintiff's prior convictions are both probative and material for liability and damages at trial. Fed. R. Evid. 401, 402. Further, their significant probative value as outlined above is not substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusion of the issues. Fed. R. Evid. 403. Lastly, Plaintiff has not met his burden to bar such evidence under Rule 609. Therefore, Plaintiff's motion in limine should be denied.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MIL 2 / DEFENDANTS' MIL 1: Certificate of Innocence[3]**

Plaintiff seeks to admit Plaintiff's petition for a certificate of innocence (which includes Plaintiff's version of the summary of the evidence against him at his criminal trial, other evidence he claims shows his innocence, and legal arguments seeking to establish same), the "file stamped grant of the certificate of innocence" and the transcript of the certificate of innocence proceeding that includes the judge's ruling.

---

[2]  Pursuant to Fed. R. Evid. 609(b)(2), Defendants gave Plaintiff notice of their intent to use his convictions that were more than 10 years old by correspondence dated October 17, 2023.
[3] Plaintiff moves affirmatively to admit his COI into evidence. For purposes of efficiency, Defendants, in their Response herein, move to exclude Plaintiff's COI, rather than filing their own separate motion and cross-briefing. To be clear, Defendants seek affirmative relief to bar Plaintiff's COI for the reasons set forth in herein.

*See* Dckt. No. 249 at 4-6. This Motion must be denied and the Court must bar all evidence of Plaintiff's certificate of innocence (herein the "COI").

The COI should be barred for several reasons: (1) it is inadmissible hearsay not subject to admission through any applicable exception to the general rule barring hearsay; (2) it is irrelevant to the Plaintiff's claims for trial, in particular given that Defendants are willing to waive favorable termination as a required element for Plaintiff's Illinois law malicious prosecution claim; and (3) whatever *de minimus* probative value the COI may have is outweighed by the unfair prejudicial effect to Defendants' case and must be barred under Rule 403.

The COI was issued without any adversarial process and without any of the evidence that will be presented to the jury in this case. *See* Dckt. Nos. 249-1-249-3. Indeed, in granting this Petition, the criminal court judge noted the non-opposition of CCSAO and held that it was rendering its decision solely and exclusively upon the allegations in the Petition filed as a result. *See* Dckt. No. 249-3. No witnesses were called. *Id.* Plaintiff was not subject to examination or cross-examination. *Id.* No witnesses were subject to examination or cross-examination. *Id.* No documents were entered into evidence. *Id.* The evidence attached to the Petition did not even include the trial transcript including the sworn testimony on which Plaintiff was convicted. Rather, it consisted simply of three affidavits procured by Plaintiff's counsel (then Plaintiff's post-conviction counsel) including one from the eyewitness in this case (Luis Huertas) which the witness testified in this civil case was false. The Court did not even discuss any of the specifics of the evidence forming the basis for the grant of this Petition. *Id.* In all, the entirety of the Court's decision consists of a little over a single page of a court transcript reciting the requirements for entry of a COI. *Id.*

Its introduction of such a finding by another judge is blatant hearsay, severely prejudicial to Defendants, runs the risk of confusing the jury on its role in this matter, and usurps that role with respect to the issues in this case. It will also cause delay, as the circumstances surrounding the granting of the COI (*e.g.*, that it was granted based on a filing, no hearing was held, the Cook County State's Attorneys' decision

not to intervene, the fact that Defendants were prohibited from participating and presenting evidence, the purpose and limitations on use of the COI per statute, the considerations required by the issuing judge, and the standard by which the judge granted the COI in this matter (based on a prima facie showing)) will be interjected into the trial.

Moreover, contrary to Plaintiff's argument, the law is clear that the only *possible* relevance of COI in a subsequent civil case is if it is "directly relevant" to the favorable termination element of an Illinois law malicious prosecution claim in that the matter was resolved in a manner indicative of innocence. *Patrick v. City of Chicago*, 974 F.3d 824, 832 (7th Cir. 2020). Even assuming that the COI could be relevant to how Plaintiff's criminal case terminated (which Defendants do not concede), Defendants will agree to waive Plaintiff's favorable termination element against Defendant Guevara as to his Illinois malicious prosecution claim in lieu of admission of the COI as explained below. This will eliminate the inherent prejudice and confusion that will arise from its introduction (provided this is done in the fashion in which other courts have done by simply removing the element from the jury instructions). For all the reasons set forth herein, the COI should be barred.

## ARGUMENT

### I.    The COI Is Inadmissible Hearsay.

First, the COI and any declarations (or "findings") therein are out-of-court statements Plaintiff seeks to offer to prove the truth of the matter asserted. Fed. R. Evid. 801(c). This applies to the COI itself, but most certainly to the Petition (Plaintiff's own statements in support) and the statements contained in the court transcripts Plaintiff seeks to enter into evidence. The outcome of related civil proceedings is inadmissible as hearsay in subsequent proceedings involving different parties. *See Greycas, Inc. v. Proud,* 826 F.2d 1560, 1567 (7th Cir. 1987) ("[C]ivil judgments are said not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay."); *Fairley v. Andrews,* 423 F. Supp. 2d 800, 811–12 (N.D. Ill. 2006) (barring reference to outcome of prior litigation as

both hearsay and as unduly prejudicial). There is no exception to the hearsay rule that would allow its admission. *See Fields v. City of Chicago,* 2014 WL 12778835, at *4 (N.D. Ill. 2014)(holding the denial of a COI is inadmissible). Rule 803(8) allows admission of public records in a civil case if the record sets out "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8). However, this exception does not encompass judicial findings of fact, such as a decision to grant a COI. *See United States v. Jones,* 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper v. Snipes,* 7 F.3d 415, 417 (4th Cir. 1993); *Taylor v. City of Chicago,* 2012 WL 669063 (N.D. Ill. 2012)(a judge's finding of "no probable cause" does not qualify as a hearsay exception under Fed. R. Evid. 803(8)).

A petition for a COI is a separate civil proceeding under Illinois law. They are proceedings that not only allow hearsay, *People v. Fields,* 959 N.E.2d 1162, 1166 (Ill. App. Ct. 2011), but also limit judges to solely rely on the information Plaintiff presented in his petition when there is no intervention by the prosecution. Where the State does not take a position on the COI proceedings, the circuit court is forbidden to consider any evidence beyond the plaintiffs' petitions, including the criminal trial transcripts. *People v. Washington,* 2023 IL 127952 ¶¶ 51-56. One circuit court complained that with such constrictions, it was forced to "'rule on something in a vacuum and just a partial record and partial transcripts.'" *Id.* at ¶ 21 (quoting the trial court's ruling). Nonetheless, an Illinois criminal court is "not free to reject the petitioner's evidence" and cannot consider anything beyond what is submitted by the petitioner when the petition is not opposed. *Id.* at ¶ 56.

Nor does Rule 807 permit admission of the COI. Rule 807 provides that a hearsay statement is not excluded when each of two conditions are met: (1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts. Fed. R. Evid. 807(a). This exception is very narrow. *Dean v. Wexford Health Sources, Inc.,* 18 F.4th 214, 233 (7th Cir. 2021);

*Huff v. White Motor Corp.,* 609 F.2d 286, 291 (7th Cir. 1979) ("Congress 'intended that the residual hearsay exception[ ] will be used very rarely, and only in exceptional circumstances.'"); *Stolarczyk v. Senator International Freight Forwarding, LLC,* 376 F. Supp. 2d 834 (N.D. Ill. 2005)("In addition to the presumption of unreliability afforded to hearsay statements, Plaintiff also faces the Seventh Circuit's repeated 'emphasis on narrowly construing the residual provision.'"). Plaintiff's COI does not meet this exception. If Plaintiff would like to put on the actual evidence of his alleged innocence at this trial through competent witness testimony, etc., he is free to do so. But his COI is not a proper substitute for the actual evidence for the purposes of Rule 807.

## II. The COI Is Not Relevant To Plaintiff's Federal Claims, His Damages Claims, Or His Illinois State Law Malicious Prosecution Claim.

### A. The COI is not relevant to the claims against Defendants.

The COI should still be barred because it is not relevant. First, the COI is not relevant to Plaintiff's due process claims (fabrication or *Brady*) or his coerced confession claim against Defendants. *See, e.g. Blackmon*, 2025 WL 2848411, at 10-11 (barring COI where claims did not require favorable termination and rejecting admission of a COI to support damages claims under Rule 403). Second, the COI cannot be used to establish damages because, as set forth above, it is hearsay and cannot be used to establish factual innocence. Third, the COI is not admissible to establish the favorable termination element of the state law malicious prosecution claim against Defendant Guevara (the only remaining individual defendant against whom this claim remains). Under Illinois law, the favorable termination element of a malicious prosecution claim necessitates that Plaintiff prove the proceeding ended in a manner indicative of innocence. But the COI here is not probative of the circumstances of how or why the Plaintiff's criminal case ended. COIs are not issued as part of the criminal process and Plaintiff's COI was non-adversarial and incomplete given the selected information included by Plaintiff in his petition.

While it is true that COIs are not categorically inadmissible, the Seventh Circuit evaluated whether the trial court abused its discretion in allowing into evidence a COI obtained by plaintiff. *Patrick,* 974 F.3d at

832-33. The court held that the district court did not abuse its discretion in admitting the COI given that the trial court found the COI to have been "directly relevant" to the element. *Id.* The district court's rationale for admitting the COI was based on its determination that the certificate was probative of the favorable-termination element of the plaintiff's state law malicious prosecution claim, not to establish actual innocence or damages. *Id.* The Seventh Circuit further cautioned there are limitations to a COI's probative value, which apply here where there is a record of the rationale for the State's dismissal of the charges. *Patrick,* 974 F.3d at 832-33. Contrary to what Plaintiff will argue - *Patrick* did not hold and does not stand for the proposition that a COI can or should be admitted as substantive evidence in all cases. In addition, in *Patrick*, no hearsay argument was raised or decided either. *Id.* at 832.

In this regard, Plaintiff's suggestion that "[t]he leading cases of *Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 745 (N.D. Ill. 2015) and *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 11887787, (N.D. Ill. Mar. 29, 2017) establish that the Cook County Circuit's grant of Jaime Rios's petition for certificate of innocence is admissible" misstates the law. Both of these cases were decided prior to the Seventh Circuit decision in *Patrick*. While it is true that the Seventh Circuit held in *Patrick* that a COI may be admissible merely to establish the procedural requirement of a termination indicative of innocence for a state court malicious prosecution claim, the *Patrick* Court held this was essentially the limits of admissibility and also raised serious potential problems under Rule 403. *Patrick,* 974 F.3d at 832-33. *Patrick* neither stated nor implied that it could be used to bolster a factual claim of innocence much less could be used to show "damages" based thereon. *Id.* Indeed, the *Patrick* panel appeared to firmly reject such usage. *See* Ex. _H at 17:10 to 17:16 ("Because of course, using the certificate of innocence to establish the favorable termination element or his claim is one thing, using it to establish if he actually was innocent would be problematic. And we need to assure ourselves from the record that you were not attempting to use the certificate to prove to the jury that he was in fact innocent."); *id.* at 4:3-4:15 ("How was this evidence used in the plaintiff's theory of the case? The transcript of the motion in limine hearing where this issue was discussed, the judge was

focusing on what the certificate of innocence says about the state's attorney's position whether the plaintiff was guilty or innocent, which is not admissible. It doesn't matter what the state's attorney thinks in a civil trial. And that kind of testimony would be improper because the jury has to draw its own conclusion in this civil case."); *id.* at 15:12-15:17 ("My questions at the top of your opponent's argument about how this evidence was used in this case certainly gets at this point. It's irrelevant and inadmissible what was in the head of the state's attorney. And the state's – You know, you can't use this as some sort of opinion testimony about guilt or innocence.").

### B. Defendants are willing to waive the favorable termination element.

Even assuming the COI were admissible as a hearsay exception and as probative of the favorable termination element under Illinois law, Defendants are willing to waive the "indicative of innocence" element of the malicious prosecution claim against Defendant Guevara, thus rendering the COI irrelevant. To be clear, Defendants are not stipulating that Plaintiff's criminal case ended in a manner indicative of innocence such that the jury should be told as much, or that the COI proves favorable termination, or that the jury should hear any evidence about the COI petition, the hearing, or be presented with the COI. Rather, Defendants propose eliminating the favorable termination element from the trial altogether and, instead, instructing the jury that Plaintiff must prove only four elements to establish liability on the part of Defendant Guevara for his state law malicious prosecution claim: commenced/continued the criminal proceeding, probable cause, malice, and damages. Following this procedure would eliminate the highly prejudicial and misleading effect of the COI, avoid the unnecessary mini-trial about the postconviction proceedings, and likely substantially shorten the trial. *See Brown v. City of Chicago*, 19 CV 4082, 2024 WL 5438519, at *16 (N.D. Ill. July 30, 2024) (barring the COI, including on the grounds that it would make an already complex trial, more confusing because "If Plaintiff can introduce the COI, Defendants will be able to attack it, lengthening the proceedings on a side issue."). Defendants' willingness to waive this element eliminates the probative value of the COI. (*See* Ex. I, *Walker v. White et al.*, 16-cv-7024, transcript

of March 2, 2023 hearing, in which Judge Manish S. Shah found the probative value of the COI "very low . . . near zero in light of the defense stipulation." at 39:22-40:40:24). With this approach, Plaintiff gains not having to prove an otherwise disputed element of his malicious prosecution claim and loses nothing. Plaintiff may object to this approach, but the only reason Plaintiff would do this would be so that the COI can be admitted to unfairly prejudice the Defendants, with the hope that the jury confuses the COI as evidence of Plaintiff's actual innocence.

## III.   The COI Must Be Barred Under Rule 403

If admitted, the COI would cause irreparable harm to Defendants.  Plaintiff will undoubtedly use it as a sword against Defendants by arguing that a court has already found Plaintiff innocent and that, since Plaintiff is innocent, each of the Defendants must have engaged in the misconduct Plaintiff alleges. In so arguing, Plaintiff would hope the jury would give the COI the *res judicata* effect that Illinois law expressly forbids. No matter what instruction the Court could craft, the jury will ignore any reasoned analysis regarding the evidence that relates to the actual claims in this case. Admission of the COI would deprive the Defendants of a fair trial and is the very definition of unfair prejudice that Rule 403 is designed to avoid.

Under Federal Rule of Evidence 403, relevant evidence may be excluded if the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. Here, again, the only potential justification Plaintiff can offer for the COI is that it may be relevant to the favorable termination element of the state law malicious prosecution claim against Defendant Guevara. However, as demonstrated above, the COI is not relevant to that element and even if it was, the slight relevance is substantially outweighed by the unfair prejudice it poses to the Defendants and results in very clear confusion of the issues.

*Patrick* does not prohibit this Court from excluding the COI and does not create a bright-line rule that all COIs must be admitted at trial. 974 F.3d at 832. Rather, this Court is entitled to weigh the issues and

make its own determination under Rule 403. The *Patrick* court recognized the real possibility of prejudice in admitting a COI and it "carries a risk of unfair prejudice if misunderstood." *Id.* "The defendants were understandably concerned that jurors may be tempted to give conclusive weight to the [COI] merely because it reflects a judicial finding. There is also a possibility that introducing a [COI] as evidence … may risk confusing the issues." *Id.* As the *Patrick* court cautioned, there is a an exceedingly strong probability that Smith's COI will mislead the jury into believing his factual innocence has already been determined, and thus the Defendants are at fault or the COI had any bearing on the officers' conduct. Therefore, admitting the COI could cause the jury to decide the case on an improper basis: the belief that Plaintiff has already been judged innocent and Defendants must have engaged in the misconduct alleged. Consequently, admission of the COI will encourage the jury to decide the case on this improper basis rather than the actual evidence presented during the trial.

Plaintiff's guilt and the actions of the Defendants are factual issues for the jury to decide and should not be determined by a court from a different proceeding for a different purpose. The unfair prejudicial effect of admitting the COI is clear. The presumptive reason why Plaintiff seeks to admit the COI is to improperly argue that the COI is evidence of innocence. It is no secret that the COI creates a significant risk that the jury will reach the same conclusion, despite it being based on an order that was issued without any substantive hearing or analysis. Especially in this case, when the evidence (or lack thereof) and argument that was presented during the postconviction and COI proceedings differs from the evidence adduced here.

Again, the only arguable relevance of the COI relates to one element of the malicious prosecution claim under Illinois law (favorable termination). *See Patrick*, 974 F.3d at 833; *Brown*, 2024 WL 5438519, at *15 (holding COI not relevant to due process claims or to "complete the story" and barring use of COI to support damages claims under Rule 403).

The COI statute expressly provides that "[t]he decision to grant or deny a certificate of innocence

shall be binding only with respect to claims filed in the Court of Claims and shall not have a *res judicata* effect on any other proceedings." § 5/2-702(j). Plaintiff's COI was granted solely on the filing of his petition. There was no evidentiary hearing, and the State's Attorney's Office did not contest it. In that regard, the state court judge did not even make a ruling based on the preponderance of the evidence; it merely found Plaintiff made out a *prima facie* case which, because the CCSAO elected not to respond, was sufficient to grant the Petition. Pl. MIL No. 2., Ex. 4 (Transcript) at 3-4. Moreover, none of the Defendant Officers, or the City in any capacity, were parties to the COI proceeding and, by law, were deprived of an opportunity to intervene, contest Plaintiff's assertions, submit evidence of Plaintiff's guilt, or argue against his innocence. § 5/2-702 (permitting only the Attorney General and State's Attorney to intervene). Accordingly, the COI does not "reflect a factual finding arising from the crucible of the adversarial process, which our legal system regards as the best means of discovering the truth." *Patrick*, 974 F.3d at 833. Another factfinder's findings, based on limited and one-sided evidence, pursuant to a process designed for an entirely different purpose, carries little probative weight on issues that this jury will need to decide for itself. Moreover, even with respect to the "termination in favor" element of Plaintiff's malicious prosecution claim, the COI itself, granted well after the State abandoned its case and the State court vacated the conviction, is of little relevance to whether the termination of Plaintiff's *criminal* proceedings was indicative of innocence. *See* Ex. I (*Walker v. White et al.,* 16-cv-7024, transcript of March 2, 2023 hearing) at 41:2-41:5 (the "certificate of innocence is really of no probative value to the manner of termination of plaintiff's case").

In contrast to the limited probative value, the risk of unfair prejudice, jury confusion, and delay is substantial. Even where a COI is relevant: "a certificate of innocence carries a risk of unfair prejudice if misunderstood." *Patrick*, 974 F.3d at 833. Here, Plaintiff seeks to use the COI petition, order, and transcript as a sword against Defendants to argue that a court has already found Plaintiff innocent and that, since Plaintiff is innocent, Defendants must have fabricated or suppressed evidence or otherwise

engaged in the alleged misconduct leading to his conviction. The COI would be given the the *res judicata*

effect that Illinois law expressly forbids. *See Blackmon v. City of Chicago*, 2025 WL 2848411, at *11 (N.D. Ill.

2025) ("Weighed against the risk that the jury will inevitably credit the COI in an impermissible way,

including as having a *res judicata* effect, unfair prejudice tips in favor of exclusion"). Indeed, Plaintiff's

counsel admits as much as he recently stated in open court that the COI carries weight because it was

issued by a judge. No matter what instruction the Court could craft, the jury will ignore any reasoned

analysis regarding the evidence that relates to the actual claims in this case. Admission of the COI would

deprive the Defendants of a fair trial and is the very definition of unfair prejudice that Rule 403 (and the

COI statute itself) is designed to avoid. *Brown,* 2024 WL 5438519, *15-16.

In addition to the incurable prejudice, admitting the COI will also cause delay and confusion.

Recently, in *Blackmon v. City of Chicago*, the Court in excluding a COI stated:

> Admission of the COI would necessarily entail evidence and testimony about the certificate of
> innocence process, who participated in that process, and the considerations required by the judge
> who issued it. In response, Defendants would surely seek to establish that they had no ability to
> challenge whether the COI should issue. If Plaintiff can introduce the COI, Defendants will be
> able to substantively attack it, lengthening the proceedings on a side issue. This trial will already
> be a complex one, and the court intends to focus the jury's attention on the questions it must
> decide. Mixing in questions of why a state court granted a COI on state-law grounds adds much
> potential confusion. Broaching the topic of the COI raises new disputes and complexities that are
> unnecessary to decide the claims before the jury. These considerations substantially outweigh the
> COI's probative value.

*Blackmon*, 2025 WL 2848411, at *11. The same holds true here. Plaintiff claims he is innocent of the

murder of Luis Morales, and wants to point to the COI as evidence of his innocence, ensuring credibility

cannot be tested because, in his view, the COI forecloses any dispute as toe the truth of his claim of

innocence. That usurps the jury's function here and gives total deference to the COI without any

examination of the merits of his claim (which, again, were not even reached in the COI proceeding because

it was based on a *prima facie* showing). If allowed, Defendants will necessarily have to introduce evidence

establishing why the COI should not be substituted for the jury's own evaluation of the evidence.

In *Walker v. White,* No. 16 C 7024 (N.D. Ill.), Judge Shah held that a COI was inadmissible even

with a remaining malicious prosecution claim because of the probability that the COI could be used to suggest actual innocence. Ex. I at 40:18-20 ("[I]t would be hearsay to offer the [COI] as evidence of actual innocence and the truth of innocence"). In granting a motion to bar the COI, Judge Shah also noted that its admission would open the door to the use of judicial findings for the truth of the matter, explaining that "[t]here is no res judicata or preclusive effect of a [COI]...and it would be hearsay to offer the [COI] as evidence of actual innocence and the truth of innocence." *Id.* at 40:12-20. Yet, this is exactly what Plaintiff intends to use the COI for, as he will declare to the jury that the COI establishes that his statement to police was false, that he was coerced, and he is factually innocent. Plaintiff should not be permitted to support that claim with his COI because, as Judge Shah explained, it is improper to use judicial findings for the truth of the matter where there is no *res judicata* or preclusive effect of the order granting the COI. Accordingly, exclusion of the COI was the best way to prevent jurors from using it for an improper purpose. *Id.* at 95:8-95:17.

Finally, the Seventh Circuit has been clear that evidence of specific judicial reasoning for disposing of a criminal case is inadmissible. A judge's second-hand prior fact and credibility determinations are "irrelevant to an adjudication of a civil rights claim." *Schultz v. Thomas,* 832 F.2d 108, 111 (7th Cir. 1987)(reversing judgment on jury verdict because allowing state court judge's findings and credibility determinations into evidence was reversible error); *Fisher v. Krajewski,* 873 F.2d 1057, 1063-64 (7th Cir.1989)(affirming exclusion of evidence of judge's determination in prior case where it was based on credibility determination of prior judge).

## CONCLUSION

In sum, the COI is inadmissible hearsay that has very little probative value in this case. It has no probative value where the Plaintiff is not required to prove that his prosecution terminated in his favor in a manner indicative of innocence, and Defendants are willing to waive that element and remove it from the jury instructions, as occurred in *Walker.* On the other side of the equation, the COI is severely and

unduly prejudicial to Defendants, will confuse the issues, and will mislead the jury. Accordingly, it must be excluded from evidence.

WHEREFORE Defendants pray this Court enter an order in limine consistent with the above and for any other relief this Court deems fit.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 3: Motion to Elicit Fifth Amendment Invocation at Trial.

Plaintiff's Motion in Limine No. 3 seeks to affirmatively admit evidence of Guevara's Fifth Amendment invocation in this case. *See* Dckt. No. 249 at Mot. Lim. 3. Moreover, Plaintiff insists he should also be allowed to call Guevara live and in person at trial to draw such invocation, attempt to draw an invocation from Guevara on matters for which he has produced no other independent evidence, and inquire of Guevara about matters which Guevara won on summary judgment (and Plaintiff lost). *Id.* This Motion must be denied.

First, as far as trial attendance is concerned, Guevara, as civil defendant, has no obligation to personally attend trial nor is there any legal basis to compel him to do so. Guevara lives out of state in Texas, is over 80 years old, and is well outside any subpoena power to compel him to attend proceeding in Chicago. *See* Fed. R. Civ. P. 45(c)(1). If permitted to introduce evidence of Guevara's Fifth Amendment invocation, Plaintiff has a plethora of options including by jury instruction (as has been adopted in other like cases), via reading/playing portions of his videotaped deposition like any other unavailable witness, or by seeking leave of court to allow remote testimony. Plaintiff has cited no basis allowing him to summon an octogenarian litigant from across the country for the purpose of forcing him to invoke his Constitutional Rights live in court.

Second, Plaintiff is correct that Guevara contends that evidence of his Fifth Amendment invocation should be barred. While Defendant Guevara is, of course, aware that courts have allowed evidence of a civil defendant's invocation of his Fifth Amendment Rights and its attendant permissive negative inference, the peculiar circumstances of this case and the litigation facing Defendant Guevara

render evidence of his Fifth Amendment invocation too costly to pass Constitutional muster.

As this Court is aware, Defendant Guevara is currently the subject of approximately nearly 40 separate civil cases pending in this District. *See Reyes v. Guevara,* 18-cv-01028; *Solache v. Guevara,* 18-cv-02312; *Almodovar, Jr. v. Guevara,* 18-cv-02341; *Maysonet, Jr. v. Guevara,* 18-cv-02342; *Negron v. Guevara,* 18-cv-02701; *Gomez v. Guevara,* 18-cv-03335; *Rodriguez v. Guevara,* 18-cv-07951; *Bouto v. Guevara,* 19-cv-02441; *Iglesias v. Guevara,* 19-cv-06508; *Johnson v. Guevara,* 20-cv-04156; *Rios v. Guevara,* 22-cv-03973; *Rodriguez v. Guevara,* 22-cv-06141; *Gonzalez v. Guevara,* 22-cv-06496; *Flores v. Guevara,* 23-cv-01736; *Hernandez v. Guevara,* 23-cv-01737; *Lugo v. Guevara,* 23-cv-01738; *Davila v. Guevara,* 23-cv-01739; *Abrego v. Guevara,* 23-cv-01740; *Gecht v. Guevara,* 23-cv-01742; *Rivera v. Guevara,* 23-cv-01743; *Mendoza v. Guevara,* 23-cv-02441; *Diaz v. Guevara,* 23-cv-02575; *Munoz v. Guevara,* 23-cv-03210; *Cruz v. Guevara,* 23-cv-04268; *Kwil v. Guevara,* 23-cv-04279; *Mulero v. Guevara,* 23-cv-04795; *Gonzalez v. Guevara,* 23-cv-14281; *Cain v. Guevara,* 23-cv-14282; *Andino v. Guevara,* 23-cv-14283; *Santiago v. Guevara,* 23-cv-14284; *Hernandez v. Guevara,* 23-cv-15375; *Robinson v. Guevara,* 24-cv-05954; *Soto v. Guevara,* 24-CV-10869; *Ortiz v. Guevara,* 24-CV-11057; *Rosario v. Guevara,* 24-CV-11278; *Ayala v. Guevara,* 24 -CV- 12800; *T. Gonzalez v. Guevara,* 25 cv 000566. Each and every one of these cases involves persons who were previously convicted of serious criminal offenses, served years (sometimes decades) in prison, had their convictions vacated and who now are suing Defendant Guevara for a variety of alleged misconduct. *Id.* Each and every one of these cases also seeks to impose punitive damages on Defendant Guevara which would be the personal financial responsibility of Defendant Guevara in each case.

Defendant Guevara is currently 81 years old, unemployed, and living essentially on a fixed income. Suffice it to say, the economic consequences of each of these cases to Defendant Guevara personally (and the combined weight of all of them) would have serious and dire economic consequences on him. While Defendant Guevara could, in theory, introduce evidence of his economic circumstances to attempt to mitigate any punitive damage award in a particular case, this itself is fraught with practical problems given

the weight of the litigation against Defendant Guevara. Specifically, in order to accurately reflect to the jury the weight of the economic issues facing him in a particular case, Defendant Guevara would in essence be forced to display to the jury the number of pending lawsuits and their possible economic consequences to him. In other words, in order to attempt to mitigate the dire economic consequences in any individual case, Defendant Guevara would be faced with a classic Catch-22 of equally serious negative economic consequences. The firms that have sued Defendant Guevara have also not shied away from using his invocation as a cudgel in this litigation. In essentially every case in which Defendant Guevara is deposed (and he is deposed in every case), the questioning attorneys use the opportunity to ask Defendant Guevara about wide-ranging matters in other litigation to trigger this elicitation. Indeed, the portion of the deposition of Defendant Guevara inquiring as to his alleged conduct in other cases often constitutes the majority of the deposition.

The Supreme Court has held explicitly that the Fifth Amendment protects a person's right "to remain silent unless [the concerned party] chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Spevack v. Klein,* 385 U.S. 511, 514 (1967) *quoting Malloy v. Hogan,* 378 U.S. 1, 8 (1964)). A "penalty" was described as "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Id.* 385 U.S. at 515 *citing Griffin v. California,* 380 U.S. 609, 614 (1965). Into that category the Court has placed sanctions with serious economic consequences. *See Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)(architects may not be forced to choose between loss of state contracts and self-incrimination); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 392 U.S. 280 (1968) (public employees may not be forced to chose between discharge from employment and self-incrimination); *Gardner v. Broderick,* 392 U.S. 273 (1968)(same) (public employees may not be forced to choose between termination from employment and self-incrimination); *Spevack,* 385 U.S. 511 (attorney may not be disbarred for exercising the privilege); *Garrity v. New Jersey,* 385 U.S. 493 (1967) (testimony compelled by threatened loss of employment cannot be used in subsequent criminal prosecution); *see also*

*National Acceptance Co. v. Bathalter,* 705 F.2d 924, 927–28 (7th Cir.1983)($8.6 million default judgment was too high of a consequence for Fifth Amendment invocation); *cf. Chan v. City of Chicago,* 916 F.Supp. 804, 808 (N.D.Ill.,1996)(loss of only 7.6% of one's income not costly enough to violate Fifth Amendment). As stated succinctly by the Supreme Court in *Lefkowitz,* "[a] waiver secured under threat of substantial economic sanction cannot be termed voluntary." *Id.,* 414 U.S. at 82–83.

In sum, while it is true that courts have allowed a Fifth Amendment invocation to be used against a litigant in a civil case, the law is clear that this is a fact specific inquiry that must take into account the specific facts and prejudice of the case to determine whether the invocation will impose too high a cost on using one's Constitutional rights. Given the nature of the litigation against Defendant Guevara, this is such a case. This Court should bar evidence of Defendant Guevara's Fifth Amendment invocation at trial.

Third, Plaintiff's insistence that he has an absolute right to make Guevara invoke his Fifth Amendment Rights in front of the jury (either live and in person or remotely)(*see* Dckt. No. 249 at 6) is just dead wrong. The first clue is that Plaintiff needed to stretch back nearly 60 years and cite a Massachusetts state law case for this proposition. *See* Dckt. No. 249 at 6 *citing Kaye v. Newhall,* 356 Mass. 300, 305, 249 N.E.2d 583, 586 (1969). This is just simply incorrect.

Permitting a jury to hear evidence of a civil litigant's invocation of his Fifth Amendment Rights is a delicate balancing act which requires a court to carefully consider the inherent cost that may inure to a person for invoking the rights afforded them as citizens under the United States Constitution. *See Spevack,* 385 U.S. at 514. The manner in which a Fifth Amendment invocation is introduced in a civil proceeding must "carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *S.E.C. v. Graystone Nash, Inc.,* 25 F.3d 187, 192 (3d Cir. 1994). To this end, in order to protect invoking litigants from unduly prejudicial attempts at theatricality inherent to a live

invocation, courts have ordered such evidence to be presented solely through instruction rather than live testimony. *See e.g. Evans v. City of Chicago,* 513 F.3d 735, 741 (7th Cir. 2008)(trial court properly barred plaintiff from eliciting Fifth Amendment invocation live at trial and ordered that such invocation be presented via instruction); *see also Thompson v. City of Chicago, et. al,* No. 07 CV 01130, Dkt. 378 at p. 26 (instructing the jury that "[t]he parties have stipulated that, prior to trial, each of the Defendants [ . . . ] were asked questions under oath. The parties have also stipulated that each of the Defendants [. . .] asserted his Fifth Amendment privilege not to testify in response to those questions. You may, but are not required to, infer from each of the Defendants[' . . .] assertion of his Fifth Amendment privilege that his testimony in response to those questions would have been adverse to him.").

Indeed, presenting evidence in this way is fully consistent with how Fifth Amendment invocations are ordinarily handled in the courts. It has been repeatedly held that it is improper for a party to call a witness whom it has reason to believe will invoke his Fifth Amendment privilege before the jury. *See U.S. v. Mabrook,* 301 F.3d 503, 507 (7th Cir. 2002) ("Mabrook wanted Paneras to take the stand for the purpose of asserting his privilege and that is impermissible."); *U.S. v. Foster,* 478 F.2d 1001, 1004 (7th Cir. 1973) (reversible error occurs where a party calls a witness to invoke the Fifth Amendment with the result that an inference unfavorable to the defendant is planted in the minds of the jurors); *People v. Human,* 331 Ill. App. 3d 809, 819-820 (1st Dist. 2002); *People v. Izquierdo,* 262 Ill. App. 3d 558 (4th Dist. 1994). Stated differently, it is proper to bar such a witness from testifying where the witness has indicated that, if called to testify, he will invoke the Fifth Amendment.

Third, Plaintiff is also correct that Guevara contends that examination of a litigant who intends to invoke his Fifth Amendment Rights can (and should) be closely limited and constrained by the courts to avoid the insidious practice of a cross-examining attorney embedding testimony within the content of his questions which are designed to mimic evidence.

The potential for abuse in allowing a live "free for all" cross-examination done with the knowledge

that a witness will invoke across the board as to all matters relating to his work as a police officer is obvious. As noted by one judge, since "the supposed probative value is derived entirely from the questions put by counsel [. . .] this practice inevitably invites jurors to give evidentiary weight to questions rather than answers. [I]t leaves the examiner free, once having determined that the privilege will be invoked, to pose those questions which are most damaging to the adversary, safe from any contradiction by the witness no matter what the actual facts." *Brink's Inc. v. City of New York,* 717 F.2d 700, 715-16 (2d Cir. 1983) (Winter, J., dissenting); *see also Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1264 (9th Cir. 2000) (in minor sex abuse case, trial court properly barred questions about whether invoking defendant had underwent scientific penile testing to assess arousal by images of minors because plaintiff had no evidence this occurred and attempted to create evidence within questions).

At minimum, this Court should limit the number and scope of questions posed to Defendant Guevara to a pre-set limited series of questions pre-screened by this Court. Under Fed. R. Evid. 611(a), this Court has the discretion and duty "to exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). In this case, there is an extreme risk of Defendant Guevara's examination devolving into harassment and prejudice. The subject matter for which Plaintiff can even arguably seek to elicit a Fifth Amendment invocation is limited both by this Court's summary judgment ruling (which negated several material elements of the claims in this case) as well as by the requirement that any Fifth Amendment invocation be supported by the admission of separate independent evidence on every point for which an invocation is sought to be elicited. Moreover, again, counsel routinely use Defendant Guevara's Fifth Amendment invocation to attempt to craft their own factual narrative through wide-ranging and argumentative questions untethered to supportive evidence on both the issues in this case as well as claims and allegations made against Defendant Guevara in other cases. This is not only

inappropriate on its face but, with respect to the facts of other cases, also is well-beyond the scope of Fed. R. Evid. 403 and 404 and the discovery answers and disclosures in this case.

Fourth, if Plaintiff is permitted to elicit a Fifth Amendment invocation from Guevara, Plaintiff must be barred from eliciting an invocation on any topics for which Plaintiff has not established independent proof thereof by other competent and admissible evidence at trial. The law on this topic is clear and unambiguous.

While it is true that a litigant's invocation of his Fifth Amendment Rights may carry a permissive adverse inference at trial, it is equally well-established that the invocation of one's Fifth Amendment Rights may never be used standing alone as evidence to establish any fact at trial; rather, before applying any adverse inference to a litigant's invocation, the opposing party must establish the existence of the facts forming the basis for such invocation by other independent evidence. *See LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995)("[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden…("[T]he defendant's silence be weighed in light of other evidence rather than leading directly and without more to the conclusion of guilt or liability…[A]lthough 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them', an analysis of that evidence is nonetheless required…"); *National Acceptance Co. of Am. v. Bathalter,* 705 F.2d 924 (7th Cir. 1983)("We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment or at trial."); *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 675 (5th Cir. 1999)(adverse inference alone cannot be used to establish existence of fact); *Avirgan v. Hull,* 932 F.2d 1572, 1580 (11th Cir. 1991)(same); *Wrice v. Burge,* 2020 WL 419419, *2 (N.D.Ill. 2020)(same); *Rivera v. Guevara,* 2018 WL 11468922, *1 (N.D.Ill. 2018)("Here permissive means that '[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden…Under

*Baxter, LaSalle Bank,* and a host of district court cases in this circuit, defendants' motions for summary judgment cannot be denied solely because Guevara has exercised his Fifth Amendment right to remain silent any more than the question of liability for damages could be sent to the jury on that basis alone. Instead, Rivera must identify additional evidence that would permit the jury to impose liability."); *Kluppelberg v. Burge,* 2017 WL 3142757, *4 (N.D. Ill. 2017)("When a defendant has invoked his Fifth Amendment right against self-incrimination, as Burge has consistently done during this case, adverse factual inferences may be drawn from the choice to remain silent. At the same time, a plaintiff may not rest solely on the defendant's assertion of privilege to establish liability based on refusal to answer a complaint or to testify at a disciplinary hearing if there is no other evidence supporting liability."); *Ruiz-Cortez v. City of Chicago,* 2016 WL 6270768, *7 (N.D.Ill. 2016)("[S]ilence, and adverse inferences drawn from it, cannot be the sole basis for finding liability."); *Logan v. City of Chi.,* 891 F. Supp. 2d 897, 901 (N.D. Ill. 2012)(same); *Cincinnati Ins. Co. v. Greene,* 2012 WL 3202962 at *3 (N.D. Ind. 2012)(before an adverse inference may be drawn, "there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege."); *Barker v. International Union of Operating Engineers Local 150,* 2011 WL 6338800, *6 (N.D.Ill. 2011)("[A]n adverse inference based on silence pursuant to the assertion of the Fifth Amendment privilege is insufficient by itself…"); *McArdle v. Peoria School Dist. No. 150,* 833 F.Supp.2d 1020, 1030 (C.D.Ill. 2011)(same); *Thompson v. City of Chi.,* 2009 WL 674353, *3 (N.D.Ill. 2009); *Hawkins v. St. Clair Cty.,* 2009 WL 559373, *5 (S.D. Ill. 2009); *Cho v. Holland,* 2006 WL 2859453, *6 (N.D. Ill. 2006); *Evans v. City of Chicago,* 2006 WL 463041, *6 (N.D. Ill. 2006); *FTC v. Consumer Alliance, Inc.,* 2003 WL 22287364, at *3–4 (N.D. Ill. 2003).

In fact, the Seventh Circuit in *Seguban* held that doing otherwise would not only be improper but, indeed, unconstitutional. *Id.* at 391-92 (noting that using Fifth Amendment invocation as affirmative evidence "without regard to the other evidence" supporting the existence of the facts sought to be established "exceeds constitutional bounds.") *citing Baxter,* 425 U.S. at 318; *U.S. v. White,* 589 F.2d 1283

(5th Cir. 1979).

On this point, Plaintiff concedes the above authorities but bizarrely claims that this law only applies to summary judgment. According to Plaintiff:

> The short answer to this argument is that no case supports the proposition that a plaintiff cannot meet his burden of proof based upon a defendant's invocation alone. There is case law supporting the proposition that judgment on the pleadings, or summary judgment against a nonmoving party, cannot be granted based solely upon the invocation of the fifth amendment. But no case applies this proposition to a judgment at trial. *See* Dckt. No. 249 at 13.

This argument is directly contrary to the authorities cited above. The law does not allow judgment to be entered based on the simple exercise of one's constitutional rights. Plaintiff is just wrong that the above authorities only apply in the context of summary judgment proceedings or judgments on the pleadings. *National Acceptance Co. of America*, 705 F.2d at 932 ("We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment **or at trial**.")(emphasis added). Indeed, the seminal case on this matter from the Supreme Court on this matter arose in the context of a trial and held that the adverse inference alone is not sufficient for a finding of liability. *See Baxter v. Palmigiano*, 425 U.S. 308, 316-20 (1976). Plaintiff's suggestion that the "independent corroboration rule" that applies at summary judgment/judgment on the pleadings (which are designed to determine whether there should even be a trial in the first place) somehow disappears at trial is unsupported by any authority.

Plaintiff's theory completely ignores the standards set forth in the Federal Rules of Civil Procedure. There is no evidentiary difference between a court entering summary judgment for a defendant when there is no evidence to support certain claims and entering a directed verdict for this same defendant at trial when the same dearth of evidence reveals itself there. *See Celotex,* 417 U.S. at 323 *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)("[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."). Plaintiff's arguments to the contrary are meritless.

In the alternative to his unsupported position, Plaintiff argues that "[e]ven if such a rule existed, it cannot and should not be applied to prevent Jaime Rios from presenting his proof in the order and in the manner he chooses" and that "Jaime Rios believes there will be independent evidence to support all of the questions he asked Guevara at his deposition and will ask at trial." *See* Dckt. No. 249 at 13-14. Plaintiff's belief there will be independent evidence is not sufficient. There must be independent admissible evidence. However, in the event Plaintiff seeks to elicit testimony from Guevara (or anyone else) on matters either relating to Plaintiff's own case or on any alleged "other bad acts" and fails to support that contention with other independent and admissible witness testimony or documentary evidence, this would almost certainly result in either a mistrial, new trial or reversal of any adverse judgment. *See United States v. Abair*, 746 F.3d 260, 265 (7th Cir. 2014)(repeated questions lacking good faith basis that related to credibility of party required new trial); *United States v. Harris*, 542 F.2d 1283, 1307 (7th Cir. 1976)("It is improper conduct for the Government to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth."); *United States v. Bohle*, 445 F.2d 54, 74 (7th Cir. 1971)("Bearing in mind that attorneys are officers of the court, we would be, not only of the hope, but of the opinion, that the occasion of putting the prejudicial content before a jury with no intent to make use of the foundation thus laid would be indeed minimal. Nevertheless, the difficult question remains as to how the duty is to be enforced in the rare case to the contrary. In civil litigation and in the case of the prosecution in a criminal case, the duty to follow up foundation with evidence is breached at the risk of reversal of any tainted victory."); *United States v. Elizondo*, 920 F.2d 1308, 1312 (7th Cir. 1990)(reversed and remanded for a new trial when prosecution insinuated that a key witness had come upon an accident report for an accident by illicit means despite having no basis for such insinuation; "when, as in this case, the prosecution asks damning questions that go to a central issue in the case, these questions must be supported by evidence available or inferable from the trial record."); *United States v. Wolf*, 787 F.2d 1094, 1099 (7th Cir.

1986)(questions that insinuated opposing party had engaged in illicit acts despite there being no evidence of this required new trial); *Rojas v. Town of Cicero*, 2011 WL 6753992, at *3 (N.D. Ill. 2011)(vacating plaintiff's verdict and ordering new trial on a civil rights claim for, among other things, asking questions of a key witness for which no good faith basis existed).

Finally, Plaintiff (again correctly) states that Guevara seeks to bar him from attempting to elicit any Fifth Amendment invocation from Guevara on any matters on which Plaintiff lost at summary judgment. *See* Dckt. No. 249 at 7 ("Jaime Rios anticipates that Reynaldo Guevara will argue, as he has in other cases…[that] Jaime Rios should be barred from asking Guevara questions about matters which were adjudicated against Jaime Rios on summary judgment."). Plaintiff claims this argument "should be rejected" but then promptly fails to even address this issue in any way, shape, or form. *See* Dckt. No. 249 at 6-14. This is alone enough to deny Plaintiff's argument. But, of course, Plaintiff is just wrong. In addition to the fact that a Fifth Amendment invocation cannot be the sole source of evidence to support any point, the law is crystal clear that matters that have already been adjudicated against a litigant are never permissible subjects for trial evidence. *See* Dckt. No. 248 at 1-5 (Defendant's Motion in Limine to bar any evidence or arguments contradicting matters adjudicated against Plaintiff at summary judgment).

WHEREFORE Defendants pray this Court enter an order in limine consistent with the above and for any other relief this Court deems fit.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE NOS. 4, 6-11: 404(b) Witnesses MIL 5.[4]

Plaintiff's Motions in Limine Nos. 4 and 6-11 seek to affirmatively admit the testimony of seven persons purportedly as evidence under Fed. R. Evid. 404(b): Jose Maysonet (Pl.'s Mot. Lim. No. 4), Jose E. Melendez (Pl.'s Mot. Lim. No. 6), Adriana Mejia (Pl.'s Mot. Lim. No. 7), Evelyn Diaz (Pl.'s Mot. Lim.

---

[4] Plaintiff moves affirmatively to admit his 404(b) witnesses. For purposes of efficiency, Defendants, in their Response herein, move to exclude Plaintiff's these witnesses, rather than filing their own separate motion and cross-briefing. To be clear, Defendants seek affirmative relief to bar the testimony of Jose Maysonet, Jose Melendez, Ariana Mejia, Evelyn Diaz, Gloria Bordoy Ortiz, William Dorsch, and Arturo Reyes, and Gabriel Solache for the reasons set forth in herein.

No. 8), Gloria Ortiz Bordoy (Pl.'s Mot. Lim. No. 9), William Dorsch (Pl.'s Mot. Lim. No. 10), Gabriel Solache (Pl.'s Mot. Lim. No. 11)[5], and Arturo Reyes.[6] *See* Dckt. No. 249 at 14-41.

Plaintiff's motion evinces a profound misunderstanding of Rule 404(b) and what this Rule permits. Indeed, the arguments made by Plaintiff actually support the *exclusion* of such evidence rather than its admission. His argument hinges entirely on propensity. Plaintiff then re-packages these rather obvious propensity arguments by attaching labels such as motive, identity, and modus operandi with paper-thin explanations to attempt to fit this within the constraints of Rule 404(b). As explained further below, this is precisely what is not allowed under Rule 404 and Seventh Circuit precedent.

Moreover, even were there some basis to circumvent the preclusions of *Gomez* and Fed. R. Evid. 404(a), all this evidence is excludable under Fed. R. Evid. 403. Indeed, allowing such evidence would not only be highly confusing and exceedingly prejudicial but would extend the length of this trial by weeks. Plaintiff's Motions should be denied and this evidence excluded.

## I. Permitting Plaintiff To Present Fed. R. Evid. 404(b) Evidence Would Extend This Trial For Weeks And Would Be Exceptionally Confusing.

At the outset, while it is pellucidly clear that none of the witnesses at issue fit with the constraints of Rule 404 and Seventh Circuit precedent, this Court need not even reach this issue because this evidence

---

[5] Plaintiff states that Solache's testimony could be used against Defendant Halvorsen. Dkt 249 at 40. However, Solache makes no accusations against Halvorsen. Plaintiff cites none. *Id.* at 40-41. When deposed in his civil suit, Solache claimed he only spoke with two Detectives, an unidentified Hispanic male officer, and Detective Guevara. Solache claimed he saw the unidentified male officer only once, when the officer told Solache, in Spanish, that he was being accused of a murder that occurred on June 28, 1998. (Dckt. No. 249-12, Solache Dep. Tr., Vol. 2, 294:12-295:4, 297:4-24, 298:8-299:1, 302:24-303:10, 328:2-329: 11.) There is no evidence that Solache ever had any contact with Halvorsen and therefore he is incapable of providing any evidence against Halvorsen. Solache's testimony therefore is not admissible against Halvorsen.

[6] Plaintiff's motion (Dkt. 249) sought to introduce Fed. R. Evid. 404(b) testimony of Timothy Duane Rankins. However, on December 29, 2025, Plaintiff's counsel agreed to remove Rankins as a witness. Plaintiff however states that he now seeks to use Arturo DeLeon-Reyes. Reyes was a criminal co-defendant of both Adriana Mejia and Gabriel Solache. In his motion, Plaintiff formally withdrew Reyes (as well as others) as a putative Rule 404(b) witness. *See* Dckt. No. 249 at 14 ("Anticipating that Reynaldo Guevara, as he has done in previous cases, will move in limine to bar all 404(b) evidence with respect to Reynaldo Guevara (See Johnson v. Guevara, 1:20-cv-04156, Dkt # 402, 48-59), Jaime Rios moves to admit Jose Maysonet's testimony. Jaime Rios formally withdraws from the will call list all 404(b) witnesses not listed in this motion.").While Plaintiff has not explained what he seeks to elicit from Reyes, Plaintiff's discovery answers allege that Reyes will testify as to Guevara supposedly "[s]lapping Reyes in the face and coercing him to sign a false confession to a murder he did not commit." *See* Ex. A at ¶13 ,pp.28-29.

fails under Rule 403. Not only would permitting this parade of "other bad acts" evidence be unduly prejudicial, it would extend the length of this trial by many weeks and this evidentiary presentation would, in fact, dwarf the evidence presented on the actual claims in this case. This case can be reasonably completed in two weeks. Adding in six other instances of alleged misconduct of Guevara from extensive investigations on other murder cases will add weeks (and possibly months) to this trial.

Plaintiff seeks to call seven witnesses in this case as putative Rule 404(b) "other bad acts" witnesses against Guevara. These witnesses include a plaintiff from another federal civil case set for four-week-long trial later this year (Gabriel Solache) as well as his criminal co-defendant Adriana Mejia (who remains convicted and incarcerated for the underlying crimes at issue) to present evidence. *See Solache v. Guevara, et al*, 18 CV 2312, Dckt. No. 639. The third co-defendant, Arturo DeLeon- Reyes, who is the plaintiff in the companion sui of *DeLeon-Reyes v. Guevara,* 18 CV 1028, Dckt. No. 821 was formally withdrawn by Plaintiff in his motion. After filing his motion, as stated  above, Plaintiff is now stating he does plan to call Reyes. Defendants maintain that he has waived his ability to do so.

Plaintiff also seeks to call Jose Maysonet, who recently settled his lawsuit against Guevara and whose trial, prior to that, was set for four weeks to proceed in August 2025. *See Maysonet v. Guevara, et al.*, 18 CV 2342, Dckt. No. 395. Additionally, Plaintiff seeks to call four individuals who were witnesses (not suspects) in *four other* separate police investigations who allege mistreatment by police (Jose E. Melendez, Evelyn Diaz, Gloria Ortiz Bordoy, and William Dorsch). Three of these witnesses (Melendez, Diaz, and Bordoy) do not even implicate Guevara as the person who supposedly mistreated them; rather, they only reference the person at issue to be a Hispanic police officer.

Like all evidence, Rule 404(b) evidence is not a one-way street. While Plaintiff is calling these witnesses to make allegations against Guevara, Guevara is entitled to call their own rebuttal and impeachment witnesses and introduce other evidence to contradict the witnesses' claims.

Plaintiff seeks financially ruinous punitive damages against Guevara and untold millions of dollars

to be paid by the taxpayers of the City of Chicago and, thus, defense counsel will be ethically bound to fight these allegations of unrelated bad acts with every tool at their disposal. This will include calling non-party police officers, numerous assistant state's attorneys, criminal defense attorneys and numerous third-party witnesses as witnesses to rebut the claims of these putative Rule 404(b) witnesses. This will also include the introduction of reams of documentary evidence relating to the claims of these alleged 404(b) witnesses including court transcripts, court-reported statements, handwritten statements, post-conviction filings, etc.

To this end, for his putative Rule 404(b) evidence, Plaintiff has chosen to attempt to interject alleged misconduct by Guevara in some of the most complex, fact-intensive cases imaginable which include numerous criminal co-defendants (and co-plaintiffs), numerous criminal prosecutions and post-conviction proceedings, and tens of thousands upon tens of thousands of pages of relevant documentation.

For example, Maysonet's case involved a double-murder involving three other criminal co-defendants (one of whom also has a pending federal civil rights suit against Guevara) and spawned many thousands of pages of briefs and exhibits before it was resolved late last year. *See Maysonet v. Guevara*, 18 CV 2342, Dckt. Nos. 1, 353-65, 367-68, 408-28, 434-79. In order to rebut Maysonet's claims, Guevara will likely, at minimum, need to call the following witnesses to impeach and rebut any testimony by Maysonet:

- ASA Frank DiFranco: Present for Maysonet's court-reported confession and will testify to contents thereof, lack of Guevara's involvement, and absence of any indicia of mistreatment. Also present at scene of shooting where Maysonet walked through and explained his involvement.
- ASA Jennifer Borowitz: will testify as to interview and observations of Maysonet at police station.
- Cook County Court Reporter Szybist: will testify to veracity of court reported statement and observations of Maysonet's condition at time of statement.
- Alfredo Gonzalez: criminal co-defendant of Maysonet who provided a court-reported statement implicating himself and Maysonet in murders.
- Cook County Court Reporter Janet Lupa: Took court-reported statement from Alfredo Gonzalez and will testify as to accuracy of same and observations during.
- Justino Cruz: criminal co-defendant of Maysonet who provided court-reported statement implicating himself and Maysonet in murders, who plead guilty to same, testified in open court as to his own and others guilt to murders, and who has an intact conviction for same under accountability theory involving Maysonet.

- Felony Review ASA Perkaus: Approved murder charges against Justino Cruz after interviewing him and preparing a handwritten statement that he signed.
- Detective Schak: Interviewed Justino Cruz and obtained confession to his and Maysonet's involvement in murders.
- Det. Roland Paulnitsky: Interviewed Maysonet prior to Guevara and was also present at scene of shooting where Maysonet walked through and explained his involvement.
- Det. Fernando Montilla: interviewed Maysonet month before Guevara ever involved in investigation and obtained inculpatory statement from him regarding his involvement in murders, present for Maysonet's court reported confession and will testify to contents thereof, lack of Guevara's involvement, and absence of any indicia of mistreatment. Also present at scene of shooting where Maysonet walked through and explained his involvement.
- Sgt. Edward Mingey: interviewed Maysonet month before Guevara was ever involved in investigation and obtained inculpatory statement from him regarding his involvement in murders
- Rosa Bello: Maysonet's girlfriend, will testify about veracity of her own and Maysonet's inculpatory statement made to police.
- Judge Loretta Hall Morgan: Judge overseeing Maysonet's motion to suppress who found claims of mistreatment non-credible.

Guevara will also seek to introduce evidence in the form of written statements of some of these witnesses, criminal trial transcripts, court filings, photos, and numerous other pieces of evidence contradicting the claims of Maysonet.

If Reyes, Solache, and Mejia testify, the body of relevant impeachment/rebuttal evidence is even more extensive. The criminal case against them is one of the most notorious and gruesome double murder cases in Chicago history. Reyes, Solache, and Mejia stalked and murdered a young couple and kidnapped their newborn child and three-year-old toddler. Mejia not only remains convicted of this horrific crime but insists to this day that both Reyes and Solache were very much involved in these crimes. *See Reyes v. Guevara,* 18 CV 1028, Dckt. No. 726 at ¶¶ 93, 97-98. The Cook County State's Attorney's Office took the extraordinary step when vacating their convictions to ensure that it was clear to the Court that they were factually guilty. *See id.* at ¶ 233. The investigation resulting in the convictions of Reyes/Solache/Mejia involves dozens upon dozens of witnesses, numerous criminal prosecutions, and tens of thousands of pages of relevant information (e.g. court transcripts, witness statements, depositions, police and prosecution files, post-conviction files, etc.). Complicating matters even further, many of the relevant witnesses do not speak English and will require translating services which will multiply judicial time even

further in presenting this evidence. Reyes and Solache themselves speak Spanish and have been deported to Mexico and are not permitted to return to the United States. Thus, any testimony from them will need to be remote and involve translation services which, again, will greatly expand the time needed to complete this witness testimony. Suffice it to say, interjecting the allegation in this case into the present case would quickly eclipse the matter to be tried here, would be exceptionally confusing and time-consuming, and would be highly prejudicial.

For the claims of Melendez, Diaz, and Bordoy, in addition to the inevitable evidentiary presentation for the underlying criminal investigations (which will also include scores of states attorneys, non-defendant police officers, third party witnesses, criminal co-defendants/arrestees, etc.), their testimony is irrelevant. There is no evidence that these persons *were actually accusing Guevara of misconduct*. While Plaintiff brazenly misrepresents that these persons claim to have been mistreated by *Guevara* (*see* Dckt. No. 249 at 32, 36-37, 38), none of them has actually said so. *See* Dckt. Nos. 249-7, 249-9, 249-10. Rather, these persons merely describe having been mistreated by some unknown Hispanic police officer. *Id.* Thus, in addition to judicial and jury time being wasted by rebutting and impeaching the veracity of these person's statements, additional time will need to be wasted addressing whether the person at issue was even Guevara in the first place (a necessary causal link that Plaintiff has not even bothered to mention how he intends to meet at trial).

Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403. To this end, the courts, in applying Rule 403, have repeatedly expressed concern that permitting the introduction of "other bad acts" evidence at trial often runs afoul of Rule 403 because of the waste of jury and judicial time by delving into unrelated incidents, the spawning of mini-trials (which are not only wasteful in time but also exceedingly confusing), and of course, the inherent prejudice involved in allowing

such evidence to be flaunted before the jury in a case involving a different discrete set of facts. *See Duran v. Town of Cicero,* 653 F.3d 632, 645 (7th Cir.2011) (upholding exclusion of evidence of misconduct complaints against officer in excessive-force case because introduction "risked creating a sideshow and sending the trial off track"); *Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (noting "potential for confusing or even misleading the jury by engaging in a series of mini-trials" by admitting evidence of prior allegations against defendant); *Kaufman v. City of Chicago*, 2021 WL 1885985, at *6 (N.D. Ill. 2021) (barring other bad acts evidence because "putting witnesses on the stand to discuss unsubstantiated events from many years ago will lead to 'distracting and time consuming mini-trials regarding the merits of these other allegations.'"); *Harris v. City of Chicago*, 2017 WL 11887798, at *4 (N.D. Ill. 2017) (barring Rule 404(b) evidence in reversed-conviction case because such evidence "has a significant potential to mislead the jury into attempting to decide those cases" and "could lead to distracting and time consuming mini-trials regarding the merits of these other allegations."); *Goldberg v. 401 North Wabash Venture LLC*, 2013 WL 1499043, at *3 (N.D. Ill. 2013) (barring Rule 404(b) evidence under Rule 403 because "[t]he introduction of such evidence would consist of several mini-trials…"); *Patterson v. City of Chicago*, 2017 WL 770991, at *4 (N.D. Ill. 2017) ("Any reference to the three lawsuits has a significant potential to mislead the jury into attempting to decide those cases. Additionally, it could lead to distracting and time consuming mini-trials regarding the merits of these other allegations."); *Sughayyer v. City of Chicago*, 2011 WL 2200366, at *6 (N.D. Ill. 2011) ("Allowing such [Rule 404(b)] evidence…would result in five mini-trials within the trial that would potentially confuse the jury."); *Hill v. City of Chicago*, 2011 WL 3840336, at *11 (N.D. Ill. 2011) (excluding 404(b) evidence that had "the potential to confuse or mislead the jury and cause undue delay, especially because introduction of such evidence would consist of multiple mini-trials of the facts surrounding these interrogations.").

Indeed, while the court in *Reyes/Solache* has yet to determine whether Rule 404(b) evidence will be allowed in that case at trial, the court there already expressed grave concern about the expansion of trial

time and juror confusion. *See DeLeon-Reyes v. Guevara*, 2020 WL 1429521, at *6 (N.D. Ill. 2020). To wit:

> [E]vidence under Rule 404(b) could sidetrack the trial into time-consuming, confusing mini-trials about whether the alleged bad acts of these officers on other individuals actually occurred. Proving a coerced confession or a fabrication of evidence is no easy task—and each one of these allegations will likely be vigorously contested by defendants. Each time a new "other act" evidence is introduced, assuming it satisfies *Gomez*, the length and complexity of the trial is increased, as well as the risk of jury confusion.

Moreover, as referenced above, the underlying police investigations in all the above cases involved numerous police officers who are not parties to this case being allegedly involved or complicit in the underlying alleged misconduct. Even worse, again, three of the witnesses at issue do not even identify anyone in particular who is alleged to have engaged in misconduct. This too renders this evidence inadmissible under Fed. R. Evid. 403. *See Hill v. City of Chicago*, 2011 WL 3840336, at *5 (N.D. Ill. 2011) ("Hill seeks to introduce evidence concerning other police officers who allegedly coerced Curtis Milsap's confession based on the officers' similar methods of interrogation. Hill admits, however, that neither Officers Boudreau nor Halloran had any involvement in Milsap's interrogation. Because Milsap's interrogation did not involve either of the officers in this case and there is no pending claim against the City pursuant to *Monell* . . . the evidence surrounding Milsap's confession is not relevant under the circumstances. In other words, actions taken by these other officers are not relevant to Defendant Officer Boudreau's or Halloran's plan and preparation.").

Finally, Rule 404(b) evidence, even if otherwise appropriate (which it is not), is of highly dubious necessity in this case. Adding weeks to this trial by also allowing six unrelated acts of misconduct would seriously run afoul of Rule 403 even were there some propensity-free chain of reasoning for these instances (which there is not). This Court should not allow such a farcical and highly prejudicial and confusing spectacle to occur. This will turn what should be a simple two-week trial into a multi-month "three-ring-circus."

## II. Plaintiff Has Not Established A Propensity Free Chain Of Reasoning For Admission Of Any Rule 404(b) Evidence.

Even were Plaintiff's attempt to interject six separate mini-trials into this case permissible under Rule 403, the bases on which Plaintiff seeks to introduce such evidence blatantly violates Rule 404(a) and is not consistent with either Rule 404(b) or the Seventh Circuit's narrowing of the admissibility of such evidence in *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014).

First, without exception, every single alleged "other bad act" at issue is unabashedly an attempt to prove that Guevara must have committed misconduct toward Plaintiff (or one of his witnesses) because Guevara is alleged to have done supposedly similar things to other people at other times. *See* Dckt. No. 249 at 19-29 (for claims of Maysonet arguing that Guevara's "pattern and practice of framing innocent people for crimes that they did not commit certainly bears on motive and intent" and that "[w]here parties have engaged in similar acts of misconduct, those other acts are admissible to prove it was them this time as well); *id.* at 31-32 (for claims of Melendez, claiming that because some Hispanic police officer abused Melendez that such evidence is admissible to prove that Guevara must have abused one of Plaintiff's witnesses as well); *id.* at 33-34 (for claims of Mejia, attempting to prove that Guevara stood by while Mason abused Rios because Guevara supposedly abused Mejia); *id.* at 36-37 (claiming that "Guevara's interactions with Evelyn Diaz closely resemble his interactions with Rios, Carrero, and Huertas."); *id.* at 38 ("Guevara's interactions with Gloria Bordoy closely resemble his interactions with Rios, Carrero, and Huertas."); *id.* at 39 ("Guevara's conduct with respect to Huertas was identical to his conduct with respect to the unnamed witness in the case Dorsch testified about.").

Plaintiff *admits* he seeks to prove the validity of his claims by proving that Guevara did similar things to other people at other times. *Id.* Instead of attempting to establish a propensity free chain of reasoning, Plaintiff merely attaches labels to what he calls "similar" misconduct and declares that such evidence is admissible to prove things such as "identity," "intent," "motive," or some other such label included in Rule 404(b). *See* Dckt. No. 249 at 22–25 ("[Guevara's] pattern and practice of framing innocent people for crimes that they did not commit certainly bears on motive and intent."); *id.* ("Evidence that in

other instances, Guevara used tactics similar to, and, in one instance, nearly identical, to those employed here is relevant for this non-propensity purpose. Guevara's treatment of Maysonet is most relevant to prove identity, motive, intent, opportunity, preparation, and plan with respect to the counts of the complaint involving Cristino Garcia."); *id.* ("[T]he Maysonet evidence shows that Guevara, as in the Maysonet case, intended to extract a false confession from Garcia, and was not simply engaging in sadistic brutality for no purpose."); *id.* at 32 ("Although the beating of Melendez is not identical to the beatings of Jaime Rios and Cristino Garcia, it is sufficiently similar to be relevant on the issues of identity, motive, intent, opportunity, preparation, and plan."); *id.* at 34 ("[T]he Mejia torture also goes to motive, intent, opportunity, preparation, and plan. The torture of Mejia strongly suggests that Guevara beat Garcia and condoned the torture of Rios for a purpose: to extract a confession, and not out of mere sadism. The site of the torture, a police station interrogation room, goes to opportunity, preparation, and plan."); *id.* at 37 ("Since Guevara is apparently denying that he was the person who coerced Rios, Carrero, and Huertas, Diaz's testimony is relevant to identity. And since the coercion took place at a police station (apparently Area 5) it is also relevant to opportunity, preparation, and plan. Finally, and particularly as to the malicious prosecution count, his conduct towards Diaz is relevant to prove malice, based upon his intent to wrongfully convict another suspect by using nefarious methods."); *id.* at 39 ("The Dorsch incident is relevant to establish Guevara's identity as the person who first interacted with Huertas, an identify he apparently disputes, and is relevant to establish his motive and intent to initiate a false prosecution against Jaime Rios."). This is simply not allowed.

The strict preclusion against allowing other bad acts evidence to establish some generalized (or specific) propensity of a person to engage in bad conduct is well established. Fed. R. Evid. 404(a) explicitly provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See* Fed. R. Evid.. 404(a). Fed. R. Evid. 404(b)(1) similarly specifies that "[e]vidence of any other crime, wrong, or act is not

admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See* Fed. R. Evid. 404(b)(1). "The purpose of Rule 404(b) is to exclude a type of evidence – evidence that the defendant had previously engaged in a broadly similar [wrongful] activity – which has some probative value but the admission of which would tend as a practical matter to deprive a person" of a fair trial." *United States v. Wright,* 901 F. 2d 68, 70 (7th Cir. 1990). As noted by the Seventh Circuit, in the past, other acts evidence has been too readily admitted where the proponent named a non-propensity purpose which may be applicable, without consideration of the "legitimacy of the purpose for which the evidence is to be used and the need for it." *United States v. Gomez,* 763 F.3d 845, 853 (7th Cir. 2014) (*en banc*). The standard adopted in *Gomez* abandoned the previous multi-factor analysis in favor of a rules-based approach. *Id.* "To overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *Gomez,* 763 F.3d at 860.

"[R]elevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Gomez,* 763 F.3d at 860 *citing United States v. Miller,* 673 F.3d 688, 696 (7th Cir. 2012)). In this regard, it is not enough that evidence of the other act merely be "connected to the defendant's knowledge, intent, or identity (or some other plausible non-propensity purpose)[.]" *Gomez,* 763 F.3d at 855 (7th Cir. 2014). As such, a proponent of Rule 404(b) evidence cannot "simply [ ] point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. Rather, the proponent must establish the relevance to a permitted purpose under Rule 404(b)(2) "through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Id.* at 860.

Whether other acts are relevant to a non-propensity purpose is a two-part inquiry: 1) the court determines whether and to what extent the proposed purpose is at issue; and 2) the court must determine whether the other acts evidence is actually relevant, in that it is probative of the stated purpose and does not rely on a propensity inference to establish relevance. *Miller,* 673 F.3d at 697-98. "If evidence is not direct evidence of the [tort] itself, it is usually propensity…" *United States v. Gorman,* 613 F.3d 711, 718 (7th Cir. 2010). "Unless there is a persuasive and specific answer to the question, 'How does this evidence prove [the identified purpose]?' then the real answer is almost certainly that the evidence is probative only of propensity." *Miller,* 673 F. 3d at 699.

Applying these concepts to civil cases in general (and police misconduct litigation in particular), the courts have routinely excluded putative 404(b) evidence seeking to admit evidence that other persons had been subjected to other acts of misconduct by defendant officers because of the lack of a propensity-free chain of reasoning in admitting such evidence for a proper purpose. *See Harris v. City of Chicago,* 2018 WL 2183992, at *15–17 (N.D.Ill. 2018)(barring evidence of other allegations of evidence fabrication and coercing confessions by defendant officer); *Kaufman v. City of Chicago,* 2021 WL 1885985, at *5 (N.D. Ill. 2021) (barring evidence of an officer's prior insubordination because it was being offered so that the jury would infer that the officer "engaged in misconduct on the night in question because he has allegedly done so on other occasions."); *Patterson v. City of Chicago,* 2017 WL 770991, at *4 (N.D.Ill., 2017)("Patterson's modus operandi argument is a thinly veiled attempt to do precisely what Rule 404(b) forbids: ask the jury to make an inference that because the defendants committed battery or falsified police reports in the past (which may or may not be true), they did the same thing on the day in question in this lawsuit."); *Abdelal v. City of Chicago,* 2017 WL 1196977, at *6-7 (N.D. Ill. 2017)(rejecting argument that subsequent allegation of police misconduct was probative of plan or knowledge in earlier incident); *Gonzalez v. Olson,* 2015 WL 3671641, at *21-25 (N.D. Ill. 2015)(granting motion in limine to bar a plaintiff's proposed 404(b) witnesses who would testify about a defendant police officer's prior bad acts involving

an alleged "drop gun" scheme); *Scott v. Wilkie,* 2020 WL 1701881, at \*5–6 (N.D.Ill. 2020)("Scott's 'other acts' evidence runs the gamut from suggestions of discriminatory and/or retaliatory failure to promote as here, to allegedly race-based disciplinary disparities and investigations concerning sexual harassment. Setting aside for the moment the numerous ways in which the facts and circumstances of these allegations are different, the Court notes that the sheer number of complaints is not evidence of wrongdoing, as not all claims have merit."); *see also Treece v. Hochstetler*, 213 F.3d 360, 363-64 (7th Cir. 2000); *Moriconi v. Koester,* 659 Fed.Appx. 892, 894–95 (7th Cir. 2016)(affirming barring evidence that defendant officer had improperly tased other persons because such evidence was pure propensity evidence and not relevant to intent); *Caldwell v. City of Chicago*, 2010 WL 380696, \*3 (N.D. Ill. 2010) (barring evidence of unrelated police misconduct); *Moore v. City of Chicago*, 2008 WL 4549137, \*5 (N.D. Ill. 2008)(same). Indeed, just last year, the Seventh Circuit held that the exclusion of evidence regarding the existence of lawsuits against the defendant officer making other similar allegations of misconduct was properly excluded under Rule 404(b). *Jackson v. Esser,* 105 F.4th 948, 963–64 (7th Cir. 2024)(trial court properly barred evidence of prior lawsuits and misconduct allegations against defendant officer because it would constitute propensity evidence).

Plaintiff's rote recitation of labels contained within Rule 404(b) and insistence that the "similar bad acts" evidence is admissible has been specifically rejected by the court. For instance, in *Harris*, another reversed-conviction case, the plaintiff attempted to prove that defendants coerced and fabricated her confession by introducing other instances where the defendants had allegedly done so and claimed this was admissible as "plan, opportunity, motive, modus operandi, or state of mind." *Harris,* 2018 WL 2183992, at \*15–17. Then district court judge (now Seventh Circuit judge) St. Eve rejected this rote labeling as a blatant attempt to backdoor propensity evidence. *Id.* ("Plaintiff does not connect evidence of Defendant Bartik's plan, opportunity, motive, modus operandi, or state of mind to the witnesses' testimony without the propensity inference that Defendant Bartik's alleged misconduct in the past shows

that he coerced and fabricated Plaintiff's confession in this matter.").

Second, Plaintiff's repeated claim that "identity" or "modus operandi" is a basis to backdoor in blatant propensity evidence badly misunderstands the law. The identity/modus operandi category of evidence under Rule 404(b) is not carte blanche for a plaintiff to introduce evidence of other bad acts simply when a defendant denies having committed misconduct; rather, this category applies only when a defendant attempts to defend himself by claiming that the plaintiff has mistaken him for someone else who has committed the misconduct at issue. *Hill*, 2011 WL 3840336, at *3 ("In the present lawsuit, identity is not at issue because Defendant Officers do not assert the defense that Hill has mistaken them for other officers. Moreover, Hill gives no other cogent reason why the Court should allow this evidence under his modus operandi theory. Indeed, Hill's modus operandi argument appears to be a disguised propensity argument."); *United States v. Connelly*, 874 F.2d 412, 417 n.7 (7th Cir.1989)("Rule 404(b) does not specifically enumerate 'modus operandi' proof as an exception for similar act evidence but this court has approved the introduction of modus operandi evidence under the 'identity' exception to Rule 404(b)"); *Treece*, 213 F.3d at 363 ("[i]f defined broadly enough, modus operandi evidence becomes nothing more than the character evidence that Rule 404(b) prohibits"). Neither Guevara nor anyone other defendant is claiming that Plaintiff mistook them for some other police officer who mistreated Plaintiff; rather, they claim he was not mistreated at all. This exception does not even apply on its face.

Third, Plaintiff's repeated reliance on the "intent" category cited in Rule 404(b) as a basis to allow in other similar bad acts is similarly unavailing. This category does not apply to bolster claims of outright denial of misconduct but, rather, to claims where a (most commonly criminal) defendant seeks to claim they lacked the *mens rea* (i.e. intent) to commit an underlying specific intent crime. *See United States v. Chapman*, 765 F.3d 720, 726 (7th Cir. 2014) (evidence of 2006 conviction for heroin trafficking should not have been admitted to show defendant possessed heroin with intent to distribute in 2010); *United States v. Stacy*, 769 F.3d 969, 974 (7th Cir. 2014) (evidence of 2008 arrest for possession of meth should not have

been admitted to show defendant intended to use pseudoephedrine pills collected from 2010 through 2012 to make meth). Indeed, this is a category of admissibility that *Gomez* explicitly held is essentially *never* a basis to admit other bad acts unless a litigant (again, usually a criminal defendant) contests specific intent in specific intent crimes (as opposed to a general denial of liability). *Gomez*, 763 F.3d at 858–59. The Court explained:

> Our circuit also requires special caution when other-act evidence is offered to prove intent, which though a permissible non-propensity purpose is nonetheless "most likely to blend with improper propensity uses." In cases involving general-intent crimes—e.g., drug-distribution offenses (as distinct from drug conspiracies or possession of drugs with intent to distribute)—we have adopted a rule that other-act evidence is not admissible to show intent unless the defendant puts intent "at issue" beyond a general denial of guilt…To summarize then, when intent is not "at issue"—when the defendant is charged with a general-intent crime and does not meaningfully dispute intent—other-act evidence is not admissible to prove intent because its probative value will always be substantially outweighed by the risk of unfair prejudice. In contrast, when intent is "at issue"—in cases involving specific-intent crimes or because the defendant makes it an issue in a case involving a general-intent crime—other-act evidence may be admissible to prove intent, but it must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice. And again, the degree to which the non-propensity issue actually is contested may have a bearing on the probative value of the other-act evidence. *Id.*

Fourth, the overwhelming majority of Plaintiff's putative Rule 404(b) evidence consists of allegations of other persons claiming that Guevara physically abused them. *See* Dckt. No. 249 at 19-21 (claims of Maysonet); *id.* at 31 (claims of Melendez); *id.* at 33 (claims of Mejia); *id.* at 40-41 (claims of Solache); Ex. A (Plaintiff's discovery answers regarding summary of allegations of Reyes). However, it is undisputed that Guevara never abused Rios in any way. *See* Dckt. No. 194 at ¶ 26 (admitting that Plaintiff claims only that Defendant Mason struck him). Given this, the law is clear that Plaintiff cannot introduce this evidence even were the other legal requirements satisfied, this type of evidence is not admissible. *See Hill*, 2011 WL 3840336, at *6 ("[B]ecause Hill concedes that Defendant Officer Halloran did not touch him, evidence that Officer Halloran physically abused Gomez is both irrelevant and unfairly prejudicial. In other words, there is a real danger that evidence of Officer Halloran's interrogation of Gomez would induce the jury to decide this case based on Defendant Halloran's

conduct in connection with Gomez—not Hill. The Court therefore grants Defendant Officers' Rule 404(b) motion in this respect.").

Fifth, as referenced above in Part I, three of the witnesses proffered by Plaintiff (Melendez, Diaz, and Bordoy) do not even implicate Guevara at all in any misconduct; rather, they vaguely describe various mistreatment by some unnamed Hispanic police officer. *See* Dckt. Nos. 249-7, 249-9, 249-10. Even if otherwise permissible, Rule 404(b) requires that the evidence of such acts be "sufficient to support a jury finding that the defendant committed the similar act." *Gomez*, 763 F.3d at 854 (explaining that other-act evidence may not be admitted unless the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed); *Treece*, 213 F.3d at 363. Vague claims lodged against some unnamed "Hispanic" police officer (of which there are thousands who have been employed by the Chicago Police Department) comes nowhere even close to satisfying that standard. *See Kaufman v. City of Chicago*, 2021 WL 1885985, at *6 (N.D.Ill., 2021)("Memories fade over time and putting witnesses on the stand to discuss unsubstantiated events from many years ago will lead to 'distracting and time consuming mini-trials regarding the merits of these other allegations.'"); *Patterson*, 2017 WL 770991, at *4 (unsubstantiated allegations insufficient for admissibility under Rule 404(b)); *Jones v. Police Officer Omarlo Phillips*, 2017 WL 1292376, at *1 (E.D.Wis., 2017)("[E]vidence of prior conduct is narrowly circumscribed under the Federal Rules of Evidence. *See* Fed. R. Evid. 404 (b). And for good reason. Hearsay statements of unsubstantiated reports of misconduct are not sufficiently reliable to be presented to a jury.").

Finally, with respect to the allegations of Dorsch, the allegations of misconduct consist entirely of allegations of suggestive identification tactics allegedly employed by Guevara. *See* Dckt. No. 249 at 38-41. In addition to the above infirmities, there are no longer claims arising from the alleged use of suggestive identification tactics because Guevara obtained summary judgment on them *See* Dckt. No. 243. It is axiomatic that Plaintiff cannot introduce Rule 404(b) evidence to attempt to establish claims that he has

already lost.

The only case cited by Plaintiff in support of admission of the Rule 404(b) testimony as "motive, intent, opportunity, preparation and plan" evidence in a civil case is *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993). *See* Dckt. No. 249 at 14-41. *Wilson* is not helpful to Plaintiff in the slightest. *Wilson* is a pre-*Gomez* case which did not even attempt to satisfy the current operant analysis in the Seventh Circuit. *Wilson*, 6 F. 3d at 1238. Rather, *Wilson* applied a standard which has now been explicitly rejected, specifically, simply referencing a permitted category under Rule 404(b) without establishing a propensity free chain of reasoning. *Id.* Nor did *Wilson* involve generalized attempts to introduce other instances of similar bad acts to prove acts in conformity. Rather, *Wilson* involved an idiosyncratic body of evidence which sought to prove that a defendant had used a peculiar electroshock device against a suspect nine days before the plaintiff was interrogated and that such defendant had denied ever having used such a device under oath. *Id.* Nothing even close to that is present here. Plaintiff offers nothing but generalized claims of abusive or coercive conduct divorced from this case by years.

Plaintiff is attempting to do precisely what the Seventh Circuit held in *Gomez* that he cannot do. This case should proceed on its merits and be confined to the facts and allegations of this case and this case only. Interjecting clear propensity evidence in this case will not only be wasteful of both jury and judicial time but would likely taint the validity of any adverse verdict against Guevara and other Defendants. Plaintiff's Motions in Limine No. 4 and 6-11 should be denied and all evidence of any putative "other bad acts" of Guevara or other Defendants should be barred in their entirety.

WHEREFORE Defendants pray this Court enter an order in limine consistent with the above and for any other relief this Court deems fit.

Respectfully submitted,

/s/Timothy P. Scahill
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant Guevara*

/s/Caroline P. Golden
CAROLINE P. GOLDEN, Atty No. 6270259
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant Michael Mason
and Joann Halvorsen, special representative for Ernest Halvorsen,
deceased*

/s/ Eileen E. Rosen
EILEEN E. ROSEN
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant City of Chicago*