**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAIME RIOS | ) | |
| | ) | Case No. 22 CV 3973 |
| Plaintiff, | ) | |
| | ) | Hon. Jeremy C. Daniel |
| vs. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | JURY DEMAND |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION TO PRECLUDE THE TESTIMONY OF DR. JACK SCHAFER**

Defendants, by and through their undersigned counsel, and in response to Plaintiff's

Motion to Preclude the Testimony of Dr. Jack Schafer ("Dr. Schafer"), state:

**INTRODUCTION**

Rios has disclosed Dr. Melissa Russano, an experimental psychologist, as a false

confession expert to offer her opinions about the circumstances in which Rios confessed to the

Morales murder in July 1989. In her report, Russano identifies certain risk factors that are

indicative of false confessions and conducts a "reliability analysis," in which she compares Rios'

confession to the evidence and concludes that Rios' confession was a false (or as she says, an

unreliable) confession. Defendants have moved to bar Dr. Russano's opinions in their entirety.

(*See* Dkt. 254.) However, if she is allowed to testify, and to rebut her opinions, Defendants have

disclosed applied psychologist and former FBI Agent, Dr. Jack Schafer, to testify about the

psychology of interviews, interrogations and disputed confessions.

In his motion, Rios challenges Dr. Schafer's expertise on a number of grounds, contending

he "does not possess the qualifications to render most, if not all, of his opinions," that his

1

"methodology does not pass *Daubert*" and thus, he cannot offer criticisms of false confession research, that certain opinions lack a sufficient basis "either from professional literature or his own experience," and that the sum of his report—effectively culminating in an ultimate opinion that Rios' confession was truthful —"would invade the province of the jury." (*See generally* Dkt. 247, Pl.'s Motion to Disqualify.) As detailed below, each of these arguments should be rejected because Defendants have more than met their burden to support that Dr. Schafer's testimony is admissible and none of his opinions invade the province of the jury.

## LEGAL STANDARD

Fed. R. Evid. 702 permits a witness who is qualified as an expert by their "knowledge, skill, experience, training or education" to testify "if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." A proffered expert's opinion must "have a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).

## ARGUMENT

**I. Dr. Schafer is Qualified to Opine on Interview and Interrogation Dynamics and Disputed Confessions.**

Rios first argues that Dr. Schafer "does not possess the qualifications to render most, if not all, of his opinions." (Dkt. 247, Pl.'s Motion to Disqualify at 5.) He claims (1) that Dr. Schafer does not have a sufficient psychological background in the field of interviews, interrogations, and false confessions to offer his opinions, and (2) his practical experience as a former FBI agent is

insufficient to overcome the alleged lack of psychological experience. Defendants address these arguments in turn, below.

### A. Dr. Schafer is qualified as an expert by virtue of his extensive applied psychological background in the field of interviews, interrogations, and disputed confessions.

Dr. Schafer is a university professor, applied psychologist, intelligence consultant and former Special Agent with the FBI's Behavioral Analysis Program. (*Id.* at 1-2; Ex. 1, Schafer Expert Report at 10.) For the past 20 years (2006 to present), Dr. Schafer has been consulting and instructing Special Forces, Department of Defense officials, and law enforcement personnel in interviewing and interrogation, eliciting confessions, and deception. For the past 15 years (2011 to present), Dr. Schafer has also been teaching at Western Illinois University on courses related to interrogation, interviews, disputed confessions, and research methodology, as well as conducting social and psychological research in the same field. (Ex. 1, Schafer Expert Report at 10-13; Ex. 2, Schafer Declaration at 3.) And as explained in more detail in Section I(B) below, Dr. Schafer spent over 20 years as an FBI agent and personally conducted over a thousand interviews.

In addition to his professional experience, Dr. Schafer also possesses the academic credentials. He earned a Ph.D. in Psychology from Fielding Graduate University, a Master of Arts in Media Psychology from Fielding Graduate University, a Master of Arts in Clinical Psychology from Fielding Graduate University, a Master of Science in Criminal Justice from Western Illinois University, a Bachelor of Science in Business Administration from Elmhurst College, and a Bachelor of Science in Psychology from Western Illinois University. (Ex. 1, Attachment A, Schafer's C.V.)

Applying his psychological background and direct practical experience, Dr. Schafer has authored or co-authored several textbooks on interviewing and interrogation techniques, and

disputed statements or confessions. Namely, (i) *Advanced Interviewing Techniques: Proven techniques for police, military, and security personnel*[1], (ii) *The truth detector: An Ex FBI Agent's guide for getting people to reveal the truth*[2], and (iii) *Psychological narrative analysis: A professional method to detect deception in oral and written communications.*[3] (Ex. 1, Attachment A, Schafer's C.V.) Beyond that, he has authored several book chapters, including *Making ethical decisions: A practical model*[4], which deals with interviews, interrogations, and attempts to avoid false confessions. (*Id.*; Ex. 3, Jack Schafer Dep. at 78:11-80:9.) Finally, Dr. Schafer has written over 40 magazine and peer-reviewed journal articles on various topics, including the psychopathology of hate, ethics in law enforcement, civil rights, detecting deception, and the universal principles of criminal behavior. (Ex. 1, Schafer Expert Report at 12.) Many of those articles are in the field of disputed statements or confessions.[5]

Despite this, Rios claims Dr. Schafer is unqualified to critique the science of false confessions. (Dkt. 247, Pl.'s Motion to Disqualify at 7.) In support of his contention, he primarily relies on *Fulton v. Bartik*, where the Court barred a clinical psychologist's (Dr. Diana Goldstein) rebuttal opinions given an alleged lack of experience in the field of false confessions. *See generally,* 2025 WL 725213 (N.D. Ill. Feb. 7, 2025). Rios maintains that "Dr. Schafer's credentials in this field appear to be similar to the credentials of Dr. Diana Goldstein," (dkt. 247, Pl.'s Motion to Disqualify at 7) and cites the following from the *Fulton* decision:

> "[Dr. Goldstein's] research experiences do not appear to be pertinent to the science underlying false confessions. She has not published a peer-reviewed article or book

---

[1] JACK SCHAFER (4th ed. 2023).
[2] JACK SCHAFER & MARVIN KARLINS (2020).
[3] JACK SCHAFER (2nd ed. 2019).
[4] Jack Schafer, *in* POWERWEB POLICE (2003).
[5] Jack Schafer et al., *Verbal indicators of deception*, 17 JOURNAL OF FORENSIC SCIENCES AND CRIMINAL INVESTIGATION 1 (2023); Jack Schafer et al., *Detecting truthful and deceptive statements: An experiment on the Chinese language International*, SCIENTIFIC AND PRACTICAL CONFERENCE PROCEEDINGS, VLADIMIR CITY, RUSSIAN FEDERATION 95 (2021); Antonio J. DeCicco & John R. Schafer, *Grammatical differences between truthful and deceptive narratives*, 11 APPLIED PSYCHOLOGY IN CRIMINAL JUSTICE 76 (2015).

4

in any field, much less on social science research methodology, in more than twenty
years. Her active research activities appear to be on unrelated topics of psychiatric
and psychological disorders and testing."

*Id.* at *3. Rios goes on to state that "similarly all of Dr. Schafer's peer-reviewed publications involve other topics, not false confessions, interrogations, or experimental research on false confessions." (Dkt. 247, Pl.'s Motion to Disqualify at 8.) But as set forth above and in more detail below, Rios' position is plainly incorrect, as evidenced by both Dr. Schafer's background and education in applied psychology and history of publications in the social science field of interviews, interrogations and disputed confessions.

*First*, Dr. Schafer's educational and scientific background is drastically different from Dr. Goldstein's qualifications. Dr. Goldstein was a clinical psychologist (with a board certification and focus in neuropsychology). *See Fulton*, 2025 WL 725213 at *3. Although Dr. Schafer similarly received a Ph.D. in psychology—his focus was on an entirely different area from Dr. Goldstein—authoring his dissertation in the field of disputed confessions. (Ex. 3, Jack Schafer Dep. at 15:4-24.) Additionally, Dr. Schafer has been a professor at Western Illinois for the past 15 years, where he teaches classes on interrogations, interviews, and disputed confessions in the School of Law Enforcement and Justice Administration. (Ex. 1, Attachment A, Schafer's C.V.). Furthermore, he has extensive experience instructing the Department of Defense, law enforcement, and civilian personnel in interviewing, interrogating, eliciting statements, and identifying deception. As he clearly explained in his deposition when questioned about his specific background as a psychologist, Dr. Schafer stated that he is "well familiar with the false confession research" and "I am . . . an applied psychologist. I take what I've learned through my experiences as a behavioral analyst in conducting several thousand interviews, and what I do is apply that in real time, with

5

real people, with real suspects." (Ex. 3, Jack Schafer Dep. at 163:14-20.) Dr. Schafer plainly has the requisite knowledge, experience, and scientific background in the field of psychology.

*Second*, and as set forth in detail above, Dr. Schafer has authored several textbooks, book chapters, and scholarly articles in the field of interviews, interrogations, and disputed confessions. When asked directly in his deposition whether his publication on Advanced Interviewing Techniques (4th Edition) addressed issues of false confessions, Dr. Schafer plainly stated: "Yes . . . I put the techniques to avoid false confessions in that book and in great detail." (Ex. 3, Jack Schafer Dep. at 159:21-23.) Additionally, Rios simply ignores that this specific publication is titled and dedicated to advanced interviewing and interrogation techniques, along with the fact that he has published several other textbooks in this field. (See, Ex. 2, Schafer Decl. at 3.) Finally, Rios misses that Dr. Schafer has authored several scholarly articles on interrogations, interviews, and confessions that were peer reviewed – including his dissertation that focused on truthful and deceitful statements – which Rios was made aware of during Dr. Schafer's deposition. (Ex. 2, Schafer Decl. at 3-4; Ex. 3, Jack Schafer Dep. at 15:4-14.)

Given Dr. Schafer's extensive applied psychological background, along with his experience teaching, training, and authorship, Rios cannot seriously make a similar argument about Dr. Schafer as the *Fulton* Court did with Dr. Goldstein, and there is no basis to bar Dr. Schafer's opinions for a lack of psychological background in the field of interviews, interrogations, and disputed confessions.

**B. Dr. Schafer is also qualified as an expert by virtue of his extensive law enforcement, interviewing, and interrogation experience.**

In further support of his attack on Dr. Schafer's qualifications, Rios notes that he "anticipates that defendants will argue that what Dr. Schafer lacks in professional qualifications he makes up for by his practical experience in interrogating criminal suspects." (Dkt. 247, Pl.'s

Motion to Disqualify at 6-7.) But Dr. Schafer does not lack professional qualifications, as set forth above, and his unparalleled law enforcement and interrogation experience only serves as further evidence of his false confession and interrogation expertise. Rios is wrong and his arguments are meritless.

Dr. Schafer has "conducted over a thousand interviews and interrogations of witnesses and suspects" as a Special Agent in the FBI's Behavioral Analysis Program, developed "interviewing strategies" in an effort to apprehend domestic and foreign spies, and investigated and interviewed "numerous police officers and witnesses involved in use of force allegations." (Ex. 1, Schafer Expert Report at 11.) Most notably, Dr. Schafer "interviewed hundreds of white supremacists and witnesses" during an FBI investigation of the Nazi Low Riders—many of whom confessed. (*Id.* at 11-12.) Throughout these professional endeavors, Dr. Schafer continued to refine his understanding of interrogations, interview techniques, and indicia of truth and deception in the admissions or denials provided by suspects. (*Id.* at 12.)

A rebuttal expert need not have the same experience or qualifications of the expert whom he or she rebuts. In *Taylor v. City of Chicago*, the court admitted the defendant's false confession rebuttal expert when, "[a]lthough he [did] not perform the type of empirical research that inform[ed] Dr. Leo's analysis, [he had] extensive education in the field of psychiatry" and "completed substantial field work reviewing the confessions of inmates awaiting trial, which informs his opinions about the indicia of false confessions." 2021 WL 12242781, *8 (N.D. Ill. Dec. 1, 2021). Similarly, in *Chatman v. City of Chicago*, the court allowed defendants' rebuttal expert (rebutting Dr. Russano) when that expert had academic expertise in "a similar field" to Dr. Russano (psychology vs. psychiatry), several years of experience "evaluating criminal defendants' confessions through his work in the corrections psychiatry unit," had "taught, lectured, and

presented on the study of false confessions, and [] testified as an expert witness on this topic in a number of cases." 2018 WL 11426158, *3 (N.D. Ill. Oct. 30, 2018).

Taylor and Chatman demonstrate that experts with a combination of extensive academic training and field experience unquestionably survive Daubert scrutiny. Like the experts in those cases, Dr. Schafer combines and applies substantial relevant academic training—master's degrees in Clinical Psychology, Media Psychology, Criminal Justice, and a Ph.D. in Psychology—with decades of experience investigating, interviewing, and interrogating suspects and witnesses. And "while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically permits the admission of testimony by experts *whose knowledge is based on experience*." *Trustees of Chicago Painters & Decorators Pension, Health & Welfare v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787–88 (7th Cir. 2007) (emphasis added) (quoting *United States v. Parra,* 402 F.3d 752, 758 (7th Cir. 2005). Dr. Schafer's curriculum vitae bursts at the proverbial seams with practical interrogation and confession experience.

Rios' other cited point of expert comparison—Dr. Paul Cassell, a lawyer, prosecutor, federal judge, and law professor barred from offering testimony on false confessions in *Harris v. City of Chicago*—is unavailing. 2017 WL 3142755 (N.D. Ill. July 25, 2017); (Dkt. 247, Pl.'s Motion to Disqualify at 8.) Rios highlights the difference himself, admitting that Dr. Cassell was "not a social scientist." (Dkt. 247, Pl.'s Motion to Disqualify at 8) But Dr. Schafer, as already noted, is a highly credentialed and trained applied psychologist. In *Harris*, Dr. Cassell's extensive legal experience could not compensate for his lack of social science expertise. Fortunately, Dr. Schafer lacks no such expertise or training.

For this Court, Dr. Schafer offers an easy answer to the qualification question: while his academic or experiential qualifications alone could provide a sufficient basis to admit his opinions under Rule 702, his combination of both provides ample justification to admit his opinions on false confessions and the irreconcilable weaknesses of the research supporting it. Accordingly, this Court should qualify Dr. Schafer as an expert with sufficient knowledge and expertise to testify on areas of interviews, interrogations, and disputed confessions.

## II. It is Well Established that Dr. Schafer is Permitted to Criticize Russano's Methodology.

Rios claims Dr. Schafer's critiques of the social science behind false confessions should be barred under Rule 702. But Rios, again primarily relying on the *Fulton* decision, misconstrues that holding, flatly ignores a host of other courts that permit these exact criticisms on the social science behind false confessions, and fails to accept the law related to expert rebuttal testimony. 2025 WL 725213, *5. It is well established that such rebuttal testimony is permitted when courts are presented with experts, such as Dr. Schafer, that are qualified in the field of interrogations and disputed confessions and who can reliably explain the flaws in false confession science. *See Taylor*, 2021 WL 12242781, *8 (holding that defense expert may properly critique the body of scientific data and methodology underlying plaintiff's expert's false confession opinions). Accordingly, as is routine in this district, Dr. Schafer should be permitted to offer his rebuttal opinions on the flaws of false confession research.

As set forth above in Section I and incorporated herein, Dr. Schafer is undoubtedly qualified to offer expert opinions on interrogations and disputed confessions, and particularly criticisms of false confession research. In his expert report, Dr. Schafer articulates the problems with the social science behind false confessions and opines that false confession research is inconclusive because fundamentally "[n]o controlled study has accurately measured the efficacy

of police interrogations techniques on criminal suspects." (Ex. 1, Schafer Expert Report at 22.) In order to do so, "researchers would have to entice participants to commit actual crimes and then have them undergo police interrogations," which is obviously prohibitive on ethical grounds. (*Id.*) Thus, "alternative research methods" were established "to collect data on police interrogation practices." (*Id.*) But according to Dr. Schafer, this alternative research is flawed, and he expounds in his report on the bases and reasons why there is no reliable "methodology supported by empirical scientific research [that] can determine if any given confession is a coerced compliant confession." (*Id.* at 22-31.) Dr. Schafer concludes, while accepting research that coerced confessions can occur, that false confession science has yet to (1) identify specific interrogation techniques that will necessarily lead to coerced confessions or (2) be "able to determine the rate increase a specific interrogation technique is likely to cause a false confession." (*Id.* at 31.) While Rios seeks to bar these unfavorable criticisms, this is the precise type of testimony that courts routinely permit in coerced confession cases. *See Brown v. City of Chicago*, 2023 WL 2561728, *16 (N.D. Ill. Mar. 17, 2023) (permitting defense expert to offer his critiques of Dr. Leo's false confession methodology at trial).

Rios' precise arguments were rejected in *Olson v. Gomez*, 2024 WL 3455066, *15 (N.D. Ill. July 18, 2024). In *Olson*, the court allowed the defense expert to criticize the methodology behind plaintiff's false confession expert's opinions. After determining that the defense expert had the requisite knowledge and expertise, the court determined that it "will not preclude [him] from offering his opinion that [Rios' false confession expert's] opinions are without merit." Moreover, the court highlighted the nonsensicality of the request—noting "[t]his is an ordinary and non-controversial purpose of rebuttal expert testimony." *Id*. (citing *Onvi, Inc. v. Radius Project Dev., Inc.*, 2022 WL 22647297, *2 (N.D. Ill. Sept. 19, 2022)) ("[A]n expert witness 'may criticize the

methods, calculations, and conclusions offered by the opposing side's expert.'") (internal citations omitted). *See also Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 2017 WL 2178504, at *10 (N.D. Ill. May 16, 2017) (noting distinction between impermissible drawing of legal conclusions as contrasted with permissible criticism of an expert's "methodology, factual assumptions, and conclusions."); *In re Cessna 208 Series Aircraft Prod. Liability Litigation*, 2009 WL 1649773, at *1 (D. Kan. 2009) (collecting cases and holding it "proper rebuttal" for an expert to "critique the methodology and scientific principles which plaintiff's experts use to arrive at their conclusions.").

In order to rebut this routinely permissible testimony, Rios directs this Court to *Fulton*, contending it "rejected a similar critique of the [false confession] science in no uncertain terms." (Dkt. 247, Pl.'s Motion to Disqualify at 9.) Rios, however, cherry picks and misconstrues the holding. *Fulton* is easily distinguishable because the court completely barred Dr. Goldstein (the rebuttal expert) on the basis that (1) she lacked the necessary qualifications in the field of false confessions in order to opine on the methodological flaws; (2) could not provide evidentiary support for her critiques on false confession research; and (3) stepped into the role of the court by addressing the legal admissibility of the false science research as opposed to offering opinions that "question the 'scientific reliability of Dr. Leo's research and opinions.'" *See Fulton*, 2025 WL 725213 at *6. Unlike the expert in *Fulton*, Dr. Schafer squarely meets (in fact, far surpasses) all the necessary requirements to offer rebuttal testimony.

*First*, Dr. Schafer has the requisite background, experience, and qualifications in the field of disputed confessions. *Second*, he specifically explains and provides the necessary support for why there are methodological flaws in the false confession studies that prevent experts from determining whether certain factors could lead to a false confession. (Ex. 1, Schafer Expert Report

at 22-31) (addressing specific critiques of Russano research paper (and other studies.)) *Third*, while accepting that "research affirms coerced compliant confessions do occur" (*id.* at 31), Dr. Schafer is not usurping the Court's role and addressing the admissibility of Dr. Russano's false confession opinions but rather, is solely assisting the trier of fact by illustrating the methodological flaws in false confession opinions, just as permitted in *Olson*.

Rios' reliance on *Chatman*, 2018 WL 11426158, *4 and *Brown*, 2023 WL 2561728, *16, similarly misses the mark. In *Chatman*, the defendant's rebuttal expert was specifically permitted to "offer his critiques of Dr. Russano's methodology at trial." *Chatman*, 2018 WL 11426158, *4. For example, to offer rebuttal opinions that "the jury should not give much weight to Dr. Russano's opinions because her research does not adequately simulate actual situations." *Id.* The same was true in *Brown*, where the Court adopted the same approach by Judge Lee in *Chatman*. 2023 WL 2561728, *16. In both cases, although the defense expert was not allowed to call the entire field "hogwash," he was allowed to criticize the methodology behind the plaintiff's false confession expert. And that is precisely what Dr. Schafer intends to do (and is entirely necessary for) here: to explain to the jury the flaws in Rios' expert's methodology. Accordingly, this Court should follow the well-established law that permits Dr. Schafer to offer his rebuttal criticisms of false confession research.

## III. Dr. Schafer's Opinions Related to Tactics Suspects Employ Inside the Interrogation Room Are Based on His Qualifications, Knowledge and Experience.

Rios also argues that Dr. Schafer's opinions on innocent-presumptive responses, false evidence ploys, truth overlays, and minimization—tactics employed by guilty suspects during an interrogation room—are not based on any "evidence … either from professional literature or [Schafer's] own experience," and "they are personal opinions or common sense observations

which do not pass *Daubert*." (Dkt. 247, Pl.'s Motion to Disqualify at 10.) Yet again, Rios is incorrect.

Initially, Dr. Schafer's report plainly states that his opinions are "based on the application of reliable principles and methods . . . acquired through his specialized knowledge in the field of interrogation techniques and disputed confessions." (Ex. 1, Schafer Expert Report at 2.) This specialized knowledge and experience is evidenced, as set forth in Sections I (A) & (B), by Dr. Schafer's applied psychology education, numerous publications, teaching experience, and field work as an FBI agent. Both the breadth and depth of these experiences and publications are more than sufficient evidence to support that Dr. Schafer has the qualifications necessary to explain the techniques that suspects and interviewees use to withhold information and avoid culpability.

Additionally, Rios had a full and complete opportunity to depose Dr. Schafer and elicit the bases for these opinions but notably declined to ask Dr. Schafer about the relied-upon materials for his minimization, innocence-presumptive approaches, truth overlays, or false evidence ploy technique opinions. (*See generally* Ex. 3, Jack Schafer Dep. at 5:18-153:9.) Nonetheless, and out of an abundance of extreme caution, Dr. Schafer has provided a declaration to clarify the academic literature that supports these opinions and notes that these references were already included at the end of his expert report. (Ex. 2, Schafer Declaration.) The declaration fully clarifies the literature relied upon and combined with Schafer's decades of interview and interrogation experience, his opinions on this topic are plainly reliable and based on sound methodology. (*See id.*)

**IV.    Dr. Schafer Is Not Providing Ultimate Opinions on Whether Rios' Confession Was Truthful.**

In further attempting to bar Dr. Schafer's opinions on innocent-presumptive responses, false evidence ploys, truth overlays, and minimization, Rios contends—with little to no argument—that "Schafer is describing false confessions, not true ones. He is simply attributing

13

false confessions to the decisions made by guilty suspects rather than by investigators." (Dkt. 247, Pl.'s Motion to Disqualify at 11.) But Rios' position on this point is unclear, makes little sense, and therefore, is forfeited as underdeveloped. *See, e.g.*, *Gentleman v. Massachusetts Higher Educ. Assistance Corp.*, 272 F. Supp. 3d 1054, 1070 (N.D. Ill. 2017) ("It is well-settled that undeveloped and perfunctory arguments are forfeited"); *City of Chicago v. Equte LLC*, 693 F. Supp. 3d 879, 889 (N.D. Ill. 2023) (plaintiff's argument was so underdeveloped and threadbare that the court considered it waived.)

Rios also states that Dr. Schafer's opinions amount to a suggestion of Rios' ultimate guilt and "his opinion as to Rios' guilt would invade the province of the jury." (Dkt. 247, Pl.'s Motion to Disqualify at 11.) If that is the crux of Rios' argument, Defendants can assure this Court that they will not elicit from Dr. Schafer an opinion on whether Rios' confession is truthful. Dr. Schafer's opinions and proposed testimony on the dynamics inside an interrogation room, and what tactics guilty suspects employ (innocent-presumptive responses, false evidence ploys, truth overlays, and minimization) to avoid providing incriminating information are not opinions on truthfulness.

Furthermore, Defendants have moved to bar Dr. Russano's opinions in their entirety and in the alternative, requested that her testimony be carefully limited to only discussing the risk factors in an interrogation that could potentially lead to a false confession. (*See* Dkt. 254, Response to Motion to Admit Russano.) But if Dr. Russano is ultimately entitled to opine on the factors that she believes exist in the interrogation room that could lead an innocent suspect to falsely confess, then Dr. Schafer should certainly be entitled to present his expert opinions from the alternate perspective of a police officer questioning a guilty suspect – namely, that suspects employ innocent-presumptive responses, false evidence ploys, truth overlays, and minimization tactics to

14

avoid providing overly incriminating statements. Dr. Schafer's rebuttal opinions will enable to the jury to properly weigh Dr. Russano's testimony. Otherwise, the jury would be precluded from making an informed decision on whether or not Defendants knowingly coerced Rios in violation of his Fifth Amendment right against self-incrimination, which is obviously disputed. Accordingly, Dr. Schafer should not be barred from testifying to his opinions on innocent-presumptive responses, false evidence ploys, truth overlays, and minimization.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court deny Plaintiff's Motion to Preclude the Opinion Testimony of Dr. Jack Schafer.

DATED:  January 9, 2026                              Respectfully submitted,

/s/Eileen E. Rosen                                   /s/ Jeffrey R. Kivetz
EILEEN E. ROSEN                                      JEFFREY R. KIVETZ
*Special Assistant Corporation Counsel*              *Special Assistant Corporation Counsel*
*for City of Chicago*                                James G. Sotos
Eileen E. Rosen                                      Caroline P. Golden
Catherine M. Barber                                  Joseph M. Polick
Theresa B. Carney                                    Josh M. Engquist
Austin G. Rahe                                       Jeffrey R. Kivetz
Rock Fusco & Connelly, LLC                           THE SOTOS LAW FIRM, P.C.
333 West Wacker, 19th FL                             141 W. Jackson Blvd. – Suite 1240A
Chicago, IL 60606                                    Chicago, IL  60604
(312)494-1000                                        (630) 735-3000
erosen@rfclaw.com                                    jkivetz@jsotoslaw.com
                                                     *One of the Attorneys for Detective Mason*
                                                     *and Joann Halvorsen, Special*
                                                     *Representative for Ernest Halvorsen,*
                                                     *deceased*

/s/Timothy P. Scahill
TIMOTHY P. SCAHILL
*Special Assistant Corporation Counsel*
Steven B. Borkan
Timothy P. Scahill
Borkan & Schahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
tscahill@borkanscahill.com
*One of the Attorneys for Reynaldo Guevara*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on January 9, 2026, I electronically filed the foregoing **Defendants' Response to Plaintiff's Motion to Preclude The Testimony of Dr. Jack Schafer,** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

<u>***Attorneys for Plaintiff:***</u>
Stephen L. Richards
Joshua Richards
53 West Jackson Suite 756
Chicago, IL 60604
Tel: (773) 817-6927
sricha5461@aol.com
jsrichardscriminallaw@outlook.com

<u>**Attorneys for Reynaldo Guevara**</u>
Timothy P. Scahill
Steven B. Borkan
Michael J. Schalka
Borkan & Schahill, Ltd.
20 South Clark St., Suite 1700
Chicago, IL 60603
(312)580-1030
tscahill@borkanscahill.com

<u>**Attorneys for City of Chicago**</u>
Eileen E. Rosen
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Rock Fusco & Connelly, LLC
333 West Wacker Drive
Chicago, IL 60606
(312)970-3474
ersoen@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com
arahe@rfclaw.com

/s/Jeffrey R. Kivetz
JEFFREY R. KIVETZ
*One of the Attorneys for Defendants*
*Halvorsen and Mason*

17