IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAIME RIOS

    Plaintiff,

        vs.                              Case No. 1:22-cv-03973

REYNALDO GUEVARA
MICHAEL MASON
JOANN HALVORSEN AS
SPECIAL REPRESENTATIVE FOR
ERNEST HALVORSEN, DECEASED
CITY OF CHICAGO

    Defendants.                      JURY TRIAL DEMANDED

    Defendants.

**SUPPLEMENTAL MEMORANDUM WITH RESPECT TO ADMISSION OF CERTIFICATE OF INNOCENCE**

    Plaintiff, Jaime Rios, by and through his attorneys, Stephen L. Richards and Joshua S.M. Richards respectfully files this supplemental memorandum with respect to admission of the certificate of innocence. In support thereof, Plaintiff states as follows:

**PROCEDURAL HISTORY**

    On December 22, 2025, Plaintiff filed combined motions in limine, which included a motion in limine to admit evidence of his granted petition for certificate of innocence. Dkt # 249, 4-6. Also On December 22, 2025, Defendants filed combined motions in limine, which included a motion to bar the certificate of innocence. Dkt # 248, 5.

    On December 30, 2025, Plaintiff filed a response to defendants' combined motions to

1

limine, which included a short response to the motion to bar the certificate of innocence. Dkt # 250, 1.

On January 5, 2026, the defendants filed a response to plaintiff's combined motions in limine, which included a response to the motion to admit the certificate of innocence. Dkt # 253, 7-19.

On January 8, 2026, this court granted a motion to reconsider in the case of *Jackson v. City of Chicago*, 20-cv-05886, and precluded the admission of a certificate of innocence in that case. *Jackson*, Dkt # 228, 1-3.

A motion for leave to file a supplemental memorandum with respect to the court's opinion in *Jackson v. City of Chicago*, 20-cv-05886 is currently pending.

## ARGUMENT

In *Jackson v. City of Chicago*, 20-cv-05886, Dkt # 228, 1-4, this court granted a motion to reconsider and precluded the admission of a certificate of innocence in that case.

With respect to this opinion, there are three salient points: (1) *Jackson* is distinguishable because in this case, unlike *Jackson*, there is a malicious prosecution claim, (2) in this case there are answers to the court's reasonable concerns about the probative value of the certificate of innocence and its possible prejudicial effect, (3) in this case, unlike in *Jackson*, the petition for certificate of innocence is relevant to damages.

The first point is the most important, of course. In *Jackson*, there was no malicious prosecution claim. As the court noted, a "certificate of innocence is relevant where a plaintiff must prove that a criminal prosecution had been terminated favorably in a manner indicative of innocence." Therefore, there can be no question that the certificate of innocence is relevant here.

2

The certificate of innocence bears directly on an element of a claim.

This court can, of course, weigh the probative value of the petition for certificate of innocence against its prejudicial effect. But in this case, the balance weighs in favor of admission, not against it.

With respect to the manner indicative of innocence, element, the probative value of the certificate of innocence claim in this case is very high.

After Jaime Rios filed his 2-1401 petition, the State contested it. and an evidentiary hearing began on August 1, 2022, with one witness, Benjamin Carrero, testifying. The hearing was commenced and continued when the Assistant States Attorney, Carol Rogala, experienced a personal emergency just after Carrero's testimony had concluded.

On August 9. 2022, the State dropped its opposition to the petition and a new trial was granted. On the same date, the State, again represented by Assistant States Attorney Rogala, nolled prossed the case. Although Jaime Rios demanded trial, there was no legal obstacle preventing the State from reinstating the case at any time. There is no statute of limitations for murder. In fact, the State could reinstate the prosecution even now.

With these facts in mind, the petition for certificate of innocence becomes critical.

The day after the nolle prosse, on August 9, 2022, the petition was filed. On December 15, 2022, the State, represented by Assistant States Attorney Christa Bowden, announced that it was not intervening to oppose the petition, a position which was reaffirmed on January 30, 2023.

On February 3, 2023, the trial court, after reviewing the petition and the trial record, granted the petition.

Obviously, the State's position with respect to the petition for certificate of innocence can be considered as a factor with respect to the jury's determination as to whether Jaime Rios's

3

conviction was terminated in a *manner indicative of innocence*. This is a question separate and distinct from whether Jaime Rios is innocent or guilty. At a minimum, the jury is entitled to know about the State's position regardless of whether the petition was actually granted.

Of course, it would be incongruous to tell the jury that the State did not intervene to oppose the petition without also telling them, and leaving them to speculate, as to whether the petition was actually granted.

Therefore, on the probative side of the ledger, the case for admitting the proceedings on the petition for certificate of innocence, including evidence of whether the petition was granted, is very strong.

On the prejudicial side of the ledger, the court's concerns, as expressed in *Jackson*, deserve to be addressed.

With respect to prejudicial effect, the court expressed three concerns: (1) that a certificate of innocence does not really reflect a factual finding arising from the "crucible of the adversarial process," (2) that the evidence presented to the court and the evidence presented to a subsequent jury might not be the same, and (3) that the jurors might be tempted to give conclusive weight to the certificate of innocence merely because it reflects a formal judicial finding. Dkt # 228, 2.

In this particular case, these concerns are largely misplaced.

With respect to whether the factual finding arose from the "crucible of the adversarial process," the court's concern may reflect a slight misunderstanding of the process by which petitions for certificate of innocence are granted or denied. Even where the State does not intervene, the court has an obligation to make a finding as to whether innocence has been proved by a preponderance of the evidence before granting the petition, and the petitioner must meet that burden of proof:

4

> "Thus, under the plain language of the statue, regardless of the State's participation, the petitioner bears the burden of proving by a preponderance of the evidence that he is innocent of the crimes charged. Accordingly, to succeed on his petition, the petitioner was required to show not only that he could be innocent of the crimes charged, but rather that it is "more probably true than not" that he was innocent of those crimes."

*People v. Dukes*, 2025 IL App (1st) 242185-U, ¶ 47.

In other words, although a COI is a civil proceeding, there is no such thing as a default judgment. And circuit court judges, including Judge Reddick, have in fact denied petitions in cases where the State did not intervene. See, e.g., *People v. Washington*, 2023 IL 127952, , ¶ 54 (state did not participate in the certificate of innocence proceedings in the trial or appellate court; but court denied petition); *People v. Hood*, 2021 IL App (1st) 162964, ¶ 13 (state did not participate in evidentiary hearing on petition for certificate of innocence and court denied petition); *People v. Dukes*, 2025 IL App (1st) 242185-U, , ¶¶ 51-60 (affirming Judge Reddick's denial of petition where State did not intervene).

To the extent that the court remains concerned about prejudicial effect, that effect can be remedied by several measures short of excluding the COI altogether.

One, of course, is a jury instruction, such as that tendered in the case of *Harris v. City of Chi.*, No. 14 C 4391, at *8 (N.D. Ill. May 11, 2018) which is Plaintiff's Proposed Instruction No. 27. The defendants have agreed that if the COI is admitted, this instruction should be given. Dkt # 252, 72. The instruction clearly warns the jury not to let the granted COI overwhelm its consideration of whether defendants have in fact committed misconduct and to decide that issue based upon the evidence in this case alone.

This instruction could perhaps be improved by explicitly telling the jury that the COI *can* be considered with respect to manner indicative of innocence, damages, and mitigation of

5

damages. But there is no reason to believe that a jury will disregard that instruction, just as there is no reason to believe that a jury will, if properly instructed (See Dkt # 252, Plaintiff's Proposed Instruction No. 40) reject the defendants' attempts to distract from the civil rights issues by continually pounding the drum of Jaime Rios's supposed guilt.

The other measure is to allow defendants to introduce any evidence that they choose to weaken the effect of the COI, such as evidence that it was uncontested, that there was no evidentiary hearing, and that the trial judge was limited to consideration of the trial record, the sworn petition, and the affidavits of Garcia, Carrero, and Huertas. As can be seen from defendants' responses to the 404(b) material, defendants are not adverse to mini-trials, even mini-trials which, they threaten, will lengthen the trial by weeks. The naming of ASAs Carol Rogala and Christa Bowden as potential witnesses shows that the defendants are actively preparing for that possibility.

The defendants are so desperate to eliminate the COI, that they say that they would "consider" stipulating to the manner indicative of innocence element of the prosecution so long as the COI is barred and the element is removed from the jury's consideration altogether. This suggestion is not well taken.

It is well settled, of course, that, except in unusual circumstances, no party can be compelled to accept a stipulation. See *Old Chief v. United States*, 519 U.S. 172, 186-92 (1997).

Defendants can suggest a stipulation until the cows come home, but Jaime Rios will not agree.

Requiring a plaintiff to stipulate to the favorable termination element in a malicious prosecution case would be the equivalent of requiring the prosecution to stipulate to cause or fact of death in a murder prosecution. If a criminal defendant agrees that the victim died from a bullet wound, but denies pulling the trigger, should the jury not be told that the victim died? And just

6

because these defendants agree that the prosecution ended in a "manner indicative of innocence" (an agreement which makes a mockery of their claim that Jaime Rios is guilty) why should that fact be hidden from the jury? Just as the end result of a murder is death, the end result of a malicious prosecution is that the person maliciously prosecuted is eventually exonerated.

As the United States Supreme Court explained in *Old Chief*:

"The "fair and legitimate weight" of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness. Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once; the account of a shooting that establishes capacity and causation may tell just as much about the triggerman's motive and intent. Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them. Jury duty is usually unsought and sometimes resisted, and it may be as difficult for one juror suddenly to face the findings that can send another human being to prison, as it is for another to hold out conscientiously for acquittal. When a juror's duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract **654 statements ever could, not just to prove a fact but to establish its human significance, *188 and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault. Cf. *United States v. Gilliam*, 994 F.2d 97, 100–102 (CA2), cert. denied, 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993).

But there is something even more to the prosecution's interest in resisting efforts to replace the evidence of its choice with admissions and stipulations, for beyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. Some such demands they bring with them to the courthouse, assuming, for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence. A prosecutor who fails to produce one, or some good reason for his failure, has something to be concerned about. "If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a

7

negative inference against that party." Saltzburg, A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence, 66 Calif. L.Rev. 1011, 1019 (1978) (footnotes omitted).9 Expectations may also arise in *189 jurors' minds simply from the experience of a trial itself. The use of witnesses to describe a train of events naturally related can raise the prospect of learning about every ingredient of that natural sequence the same way. If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, "never mind what's behind the door," and jurors may well wonder what they are being kept from knowing. A party seemingly responsible for cloaking something has reason for apprehension, and the prosecution with its burden of proof may prudently demur at a defense request to interrupt the flow of evidence telling the story in the usual way.

In sum, the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best."

*Old Chief*, 519 U.S. at 187–89.

Lastly, as to damages. As in virtually any section 1983 wrongful conviction case, the granted COI is relevant to damages to rebut the defendants' claim that Jaime Rios is actually guilty, as well as to "keep the jury's focus on the materiality issue as opposed to [plaintiff's] actual guilt or innocence." *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 11887787, at *2 (N.D. Ill. Mar. 29, 2017). And it should be noted that defendants are free to argue that Jaime Rios is really guilty because a jury found him guilty. If the defendants can argue that Jaime Rios is really guilty because a jury found him guilty, why should Jaime Rios be precluded from arguing that he is not guilty because a judge found him innocent? In both cases, either side is free to argue that the prior fact finders considered different evidence than the evidence available to this jury.

But the granted COI is also relevant to damages in a much more case specific sense. One aspect of Jaime Rios's damages, even after his release from prison, was the pain and suffering he

8

endured knowing that some of his friends and relatives, as well as the general public and potential employers, believed him to be a murderer. The difference between his reputation and life prospects before the grant of the COI and after the grant of the COI demonstrates the extent of these damages.

To take just one aspect of this emotional injury, Jaime Rios will testify that his relationship with his son, Jaime Rios, Jr. changed dramatically after the certificate of innocence was granted. Separated from his son and his son's mother during the long years of incarceration, Jaime Rios had very limited contact with Jaime Rios, Jr. until after Jaime Rios, Sr.'s release. Even after Jaime's release, his son's doubts as to Jaime Rios's innocence prevented Jaime from having a normal father-son relationship.

Jaime Rios will testify that all that changed after the certificate of innocence was granted. Jaime Rios and his son now have a normal father son relationship.

The COI also relates to mitigation of damages. The defendants have tendered an instruction, their proposed instruction No. 23, which states: 'If you find in favor of Plaintiff on his claims, you are to consider that an injured person must exercise ordinary care to mitigate his damages. Damages caused by a failure to exercise such care cannot be recovered." Dkt # 252, 114. Jaime Rios's efforts to secure a certificate of innocence show that he exercised ordinary care to mitigate his damages.

Respectfully Submitted,

/s/ Stephen L. Richards

By: Stephen L. Richards
Attorney for Plaintiff
53 W. Jackson, Suite 756
Chicago, IL 60604
(773) 817-6927
sricha5461@aol.com
Attorney No: 6191946

## CERTIFICATE OF SERVICE

Stephen L. Richards certifies that on **January 18, 2026** he served the **SUPPLEMENTAL MEMORANDUM WITH RESPECT TO ADMISSION OF CERTIFICATE OF INNOCENCE**

by email to counsel for all defendants.

*/s/ Stephen L. Richards*
By: Stephen L. Richards
Attorney for Plaintiff
53 W. Jackson, Suite 756
Chicago, IL 60604
(773) 817-6927
sricha5461@aol.com
Attorney No: 6191946