**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAIME RIOS, | ) | |
| | ) | **Case No. 22 CV 3973** |
| Plaintiff, | ) | |
| | ) | **Judge Jeremy Daniel** |
| vs. | ) | |
| | ) | |
| REYNALDO GUEVARA, MICHAEL MASON, | ) | |
| ERNEST HALVORSEN, CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR LEAVE TO FILE AMICUS BRIEF**

Plaintiff has filed a Motion for Leave to file an Amicus Brief from an Illinois state court proceeding in a different case. According to Plaintiff, this brief purports to describe experiences of other persons relating to their Certificates of Innocence. Plaintiff does not even attempt to describe how any of this applies to *his own* experience other than vaguely asserting that a COI is "relevant to damages because the difference between Jaime Rios's life before and after the grant of the certificate illustrates the extent of the reputational injury and pain and suffering Jaime Rios endured before his conviction was vacated and the certificate was granted." *See* Dckt. No. 274 at ¶ 6. As set forth below, the Amicus Brief at issue has nothing whatsoever to do with this case or the legal issues in this case and is, again, premised on attempting to convince this Court that a COI can be admitted to show factual innocence, which is absolutely verboten.

However, there is a larger problem for Plaintiff in attempting to pursue this as theory of damages and theory of admissibility of his COI: Plaintiff failed to disclose this theory at any point during the last 3+ years of litigation despite being required to do so. Under well-established law, this is fatal to Plaintiff pursuing this as a theory in this case, either in seeking such damages or using this as a basis to have his COI admitted into evidence.

Under Rule 26(a)(1)(A)(iii), Plaintiff is required to provide "[a] computation of each category of damages claimed by the disclosing party." *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). In his disclosures, Plaintiff supplied the following information under Rule 26(a)(1)(A)(iii):

Damages for wrongful incarceration: 6849 days in custody, at the rate of $6,000 per day = $41,094,000. *See* Ex. A.

Plaintiff did not list any reputational damages, any reference to any damages arising from him not having a COI, or even any damages arising after his release at all. *Id.* Indeed, to the contrary, he mathematically computed his claimed damages in this case using only the days he spent in actual custody. *Id.*

Moreover, in discovery, Defendants specifically asked Plaintiff to disclose the basis of his damages claims. *See* Ex. B at ¶ 3. Plaintiff answered as follows:

3. State in detail the nature of any physical, emotional or mental injuries, including their extent and duration, that you allege to have suffered as a result of Defendants' conduct as alleged in your Complaint, including but not limited to your arrest, prosecution, and incarceration.

ANSWER:

When I went to prison I missed my son and my mother. I lived in daily fear of being attacked in prison. I was mentally challenged. *Id.*

Indeed, even more specifically, Plaintiff was asked to disclose, quantify, and calculate "any other damage" he sought in this case and answered as follows:

2. Please state, list and itemize each item of expense, monetary loss or any other damage claimed by you in this action (other than lost income or wages as set forth in your answer to Interrogatory No. 1) and, with respect to each such item, provide the following:

a. the amount of each expense, monetary loss or damage claimed;
b. how said amount was computed and the basis of said computation;
c. identify the documents used in calculating each item of damage; and,
d. identify the individuals who will testify with respect to the item of damage.
ANSWER:

Lost wages:
a. $384,384
b. See Answer to Interrogatory 1, above:
c. PFP 004233-004255

        d. Jaime Rios

        Damages for wrongful incarceration:
        a. $41,094,000
        b. 6849 days in custody, at the rate of $6,000 per day
        c. Investigation continues.
        d. Jaime Rios, Keeper of Records, IDOC *Id.* at ¶ 2.

Once again, Plaintiff made no mention of any reputational harm, no mention of any damages arising from him not having a COI, and no mention of any damages even arising after his release from prison. *Id.* To the contrary, every single damage element and category disclosed by Plaintiff related solely to his time in prison. *Id.* At no point did Plaintiff disclose reputational damages, damages relating to not having a COI, or damages relating in any way to the post-release time period. *Id.*

      Because of these disclosures, Defendants did not (and could not) pursue any defenses to rebut such claims. Indeed, because the COI and its sequalae were not placed at issue by Plaintiff as part of his damages presentation, Plaintiff was not even asked questions about this at his deposition. Indeed, to the extent issues about Plaintiff adjustment to being free was touched upon at all during his deposition, Plaintiff claimed that he had no such issues. *See* Ex. C at 297:22-298:3. To wit:

        Q. Have you had any problems adjusting to life outside of prison since you've been released?
        A. No, sir.

        Q. Any problems that you have either in
        your daily activities of life?
        A.  No, sir. *Id.*

      The law in the Seventh Circuit is clear and unambiguous: failure to disclose a category of damages in initial Rule 26(a) disclosures or in an interrogatory responses bars a plaintiff from pursuing such damages at trial. *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 94 F.4th 588 (7th Cir. 2024)(affirming exclusion of categories of damages that the plaintiff had failed to include in his Fed. R. Civ. P. 26(a)(1)(A)(iii) disclosures; "Rule 26 places the onus on a plaintiff to provide (1) a top-line computation of its claimed damages; and (2) specific categories of damages."); *Moran v. Calumet City*, 54 F.4th 483, 499 (7th Cir. 2022)(court properly refused to address theory because Plaintiff failed to

list in interrogatories); *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 279–80, n. 7 (5th Cir.2009) (limiting categories of damages available to party who failed to provide some damage computations but emphasizing that outright dismissal of claims was not appropriate); *Pittsfield Development, LLC v. City of Chicago*, 2021 WL 8314423, at *7–8 (N.D.Ill. 2021)(barring undisclosed damages categories because of failure to disclose); *Bartlett v. NIBCO Inc.*, 2011 WL 1042324, at *2–3 (N.D.Ind. 2011)(barring undisclosed damages categories at trial; "Because Bartlett did not allege a right to relief in the form of compensatory damages, her corresponding failure to disclose an intent to seek such damages during discovery means that NIBCO would be prejudiced were she permitting to pursue this relief at trial.."); *Pittsfield Development, LLC v. City of Chicago*, 2021 WL 8314423, at *7–8 (N.D.Ill. 2021)(same); *Harasim v. Kuchar*, 702 F.Supp. 178, 183 (N.D.Ill., 1988)(affirming exclusion of reputational damages because of failure to disclose).

This precise issue where a party offers vague and incomplete damages information in discovery and then attempts to modify their theories on the eve of trial was addressed by the Seventh Circuit quite recently in *Chicago Joe's Tea Room, LLC*. In rejecting a similar such attempt as attempted here, the Court explained:

> Rule 26(e) imposes a duty on parties to supplement discovery responses. The rule is "intended to ensure prompt disclosure of new information, not to allow parties to spring late surprises on their opponents under the guise of a 'supplement' to earlier disclosures." "In other words, the duty to supplement cannot be transformed into a right to ambush just before trial." Tolerating such tactics would serve only to add to the length, complexity, and expense of litigation.…Rule 26 places the onus on a plaintiff to provide (1) a top-line computation of its claimed damages; and (2) specific categories of damages. Chicago Joe's theory seeks to turn its "duty to supplement [its] initial damages disclosures into an opportunity and even a right to hold back [its] real damages theories and computations until nearly the eve of trial." That is not a sound use of the rule. *Id.,* 94 F. 4th at 605 *quoting Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929, 935–36 (S.D. Ind. 2009).

Indeed, this Court addressed an almost identical issue just several months ago in *Gwinn v. City of Chicago, et al.,*, 2025 WL 4071457, at *1 (N.D.Ill., 2025)(Daniel, J.). In that case, defendants sought to exclude damages categories at trial that the plaintiff had failed to include in his Fed. R. Civ. P.

26(a)(1)(A)(iii) disclosures. *Id.* There, the plaintiff alleged that defendants could have deposed the plaintiff but elected not to do so to explore his damages claims, argued that the damages at issue were part of pre-suit settlement communications, and argued that he did disclose the damages at issue after discovery had closed. *Id.* This Court rejected each of these contentions and explained:

> Rule 26(a)(1)(A)(iii) requires the parties to provide "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). There is no dispute that the plaintiff did not provide that computation in his initial disclosures. The plaintiff's claim that its notice of election filed on April 18, 2025, satisfied its disclosure obligations fails because fact discovery closed in February 2024. The notion that disclosure after the close of fact discovery and after the Court had ruled on the parties' motions for summary judgment satisfied a discovery obligation fails. *Id.*

The Court further explained:

> With two weeks to trial, there is no time to cure the prejudice without delaying trial. While there is no evidence of bad faith or willfulness on the plaintiff's part, the plaintiff must nonetheless bear the brunt of its failure to disclose. Accordingly, the plaintiffs cannot introduce damages-related evidence that was in its control that the plaintiff failed to disclose during discovery. This includes the plaintiff's testimony on matters related to damages that the plaintiff failed to disclose. The defendants are correct; there was no reason to seek the plaintiff's deposition testimony concerning damages when the plaintiff failed to disclose any damages computations. *Id.* at *2.

Judge McShain came to the same conclusion in *Pittsfield Development, LLC v. City of Chicago*, 2021 WL 8314423, at *7–8 (N.D.Ill. 2021), where a plaintiff attempted to interject previously undisclosed damages theories several months after the close of fact discovery. Judge McShain explained:

> The Court finds that Development's belated damages computation and failure to sufficiently identify the purportedly supporting documentation inflict undue prejudice and surprise upon the City. The City has not had a fair opportunity to investigate and attempt to counter, including through expert reports, Development's damages figures as described in its contention interrogatory response. Even if reopening discovery to allow the City to depose Mr. Danial regarding his damages calculations could enable the City to get to the bottom of Development's belated damages computation, the City would need to expend significant resources to defend against these computations, including seeking leave to reopen discovery…Moreover, to the extent that Development suggests that the belated damages disclosure was harmless (or justified) because the City could or should have questioned Mr. Danial regarding its damages, this argument fails. The onus was not on the City to seek out a damages computation. Rule 26(a) requires a party to provide a computation of any category

of damages sought "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1)(A)...It was not the City's burden to pursue a damages computation via deposition testimony.

The untimeliness of Plaintiff's disclosure of these previously undisclosed damages categories are far more egregious than in any of the above cases. The parties are *one-week* away from trial. Plaintiff has never officially even disclosed these damages in his discovery responses or his 26(a) disclosures and, as noted above, he gave sworn testimony at his deposition that appears to directly contradict the existence of these damages. The extent of the "disclosure" of these damages is also only vague references to adjustment difficulties in a motion that provides no specific information whatsoever.

Plaintiff provides no explanation for what any of this means. In whose eyes was his reputation harmed? What is the evidence of this? How did Plaintiff come to the conclusion that the lack of a COI caused reputational harm and the granting of it alleviated it? Did Plaintiff have trouble finding employment? If so, what lead Plaintiff to the conclusion that his lack of a COI was the source? Who are these potential employers and what did they say about this? Did family members ostracize him? Which ones and when? What is the evidence that the lack of a COI was the source? The substantiation and basis of these damages remains a complete mystery.

Had any of this been placed at issue in this case, Defendants would have subpoenaed these persons for depositions and sought document discovery on these issues. It is too late for all of that now. Plaintiff made an election in this case on what he wanted to seek in recovery. He stood on this election for over three years and must live with it now.

The tardiness of this disclosure not only prejudices Defendants in their damages case. The obvious intent behind all of this is a blatant attempt to concoct a never-before-alleged theory to try to convince this Court to admit an exceptionally prejudicial piece of evidence, the COI, so that Plaintiff can attempt to flaunt this before the jury as evidence of factual innocence. It is clear as day that this is what is afoot with this theory. As stated in Defendants' filings relating to the COI, there is no purpose in admitting the COI under the circumstances of this case and serious and irremediable risks of harm

and undue prejudice to Defendants. This is obvious gamesmanship by Plaintiff and it should not be tolerated by this Court.

Second, the materials attached by Plaintiff have no demonstrable relevance to any issues in this case. The Amicus Brief attached is from a state court proceeding before the Illinois Supreme Court in *People v. Reed*. *See* Dckt. No. 274-1. That case addressed the purely legal issue of whether a petitioner for a COI must establish his innocence to all charges placed against them in the underlying criminal proceeding including those that were dismissed prior to the criminal trial via a *nolle prosequii*. *See People v. Reed*, 2025 WL 2981951, at *1 (Ill. 2025). The Amici were seeking to have the Illinois Supreme Court modify this rule to entitle a COI petitioner to only be required to prove innocence to the crime of conviction. *See* Dckt. No.274-1. No part of *Reed* addressed any issue regarding the viability of a claim for reputational damages in a subsequent civil suit by a COI petitioner. *Reed*, 2025 WL 2981951. And, for whatever its worth, the Illinois Supreme Court rejected the arguments made by Amici and affirmed the "all charges" rule. *Id.*

Finally, the relevance of the COI under Plaintiff's theory still relies upon the entirely forbidden inference of factual innocence. *See* Dckt. No. 274 at ¶ 6. While Plaintiff remains incredibly vague on this theory, the crux of it still appears to be "I suffered harm because I was believed to be a murderer and the COI said I was not a murderer." Again, this is precisely the inference that is *not* allowed. This is exactly what the *Patrick* panel said at oral argument was not allowed. *See* Dckt. No. 253-3 at 17:10 to 17:16 ("Because of course, using the certificate of innocence to establish the favorable termination element or his claim is one thing, using it to establish if he actually was innocent would be problematic. And we need to assure ourselves from the record that you were not attempting to use the certificate to prove to the jury that he was in fact innocent."). And, even before *Patrick*, usage of civil judgments in other cases are not usable as proof of facts in subsequent litigation. *See* Dckt. No. 253-3 (Transcript of Rulings on Motions in Limine in *Walker v. White,* 16 CV 7024, March 2, 2023)at 39:15-18 ("[A]s to

damages, the judge's statement that he is finding Mr. Walker innocent by a preponderance would be offered for the truth of factual innocence, and my view is that that would be prohibited hearsay."); *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1567 (7th Cir. 1987) ("[C]ivil judgments are said not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay."); *Fairley v. Andrews,* 423 F. Supp. 2d 800, 811–12 (N.D. Ill. 2006) (barring reference to outcome of prior litigation as both hearsay and as unduly prejudicial).

WHEREFORE Defendants pray this Court reject Plaintiff's previously undisclosed damages theory as the basis to admit his Certificate of Innocence, bar the Certificate of Innocence and for whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:     /s/ Timothy P. Scahill
             *Special Assistant Corporation Counsel*

Steven B. Borkan
Timothy P. Scahill
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
*Attorneys for Reynaldo Guevara*

/s/Caroline P. Golden
CAROLINE P. GOLDEN, Atty No. 6270259 Special Assistant Corporation Counsel One of the Attorneys for Defendant Michael Mason and Joann Halvorsen, special representative for Ernest Halvorsen, deceased

/s/ Eileen E. Rosen
EILEEN E. ROSEN Special Assistant Corporation Counsel One of the Attorneys for Defendant City of Chicago