IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAIME RIOS

    Plaintiff,

        vs.                                  Case No. 1:22-cv-03973

REYNALDO GUEVARA
MICHAEL MASON
JOANN HALVORSEN AS
SPECIAL REPRESENTATIVE FOR
ERNEST HALVORSEN, DECEASED
CITY OF CHICAGO

    Defendants.                         JURY TRIAL DEMANDED

    Defendants.

**DEPOSITION DESIGNATIONS AND COUNTERDESIGNATONS – REYNALDO GUEVARA TRIAL TESTIMONY**

    Plaintiff, Jaime Rios, by and through his attorneys, Stephen L. Richards and Joshua S.M. Richards submits the attached deposition designations and counter-counter designations for the deposition of Luis Huertas. Plaintiff's designations are marked in orange and defendants' counter-designations are marked in yellow.

    Respectfully Submitted,

                                                               JAIME RIOS

                                                               By and through

                                                                /s/ Stephen L. Richards

2

By: Stephen L. Richards Attorney for Plaintiff
53 West Jackson
Suite 756
Chicago, IL 60604
773-817-6927
sricha5461@aol.com Attorney No: 6191946

```
           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                 COUNTY DEPARTMENT - CRIMINAL DIVISION


THE PEOPLE OF THE           )
STATE OF ILLINOIS,          )
                            ) NO. 89-16525
       -vs-                 ) CHARGE: MURDER
                            )
JAIME RIOS                  )
```

REPORT OF PROCEEDINGS had at the hearing of the above-entitled cause, before the Honorable Themis Karnezis, Judge of said court, on the 3rd day of April, 1990.

PRESENT:

    HON. CECIL PARTEE
        State's Attorney of Cook County, by
    MR. FRANK MAREK
        Assistant State's Attorney,
        on behalf of the People.

    MR. RANDOLPH STONE
        Public Defender of Cook County, by
    MR. JACK CAREY
        Assistant Public Defender,
        on behalf of the Defendant.

RENEE M. MASON, CSR, RPR
Official Court Reporter
084-002064

```
 1      A.   Yes.
 2      MR. CAREY:  No further questions at this time.
 3      THE COURT:  State?
 4      MR. MAREK:  No redirect.
 5      THE COURT:  Thank you very much, Ms. Riley.
 6           (Witness excused).
 7      MR. MAREK:  People would call Officer Guevara.
 8           (Witness duly sworn)
 9                 OFFICER GUEVARA
10  called as a witness herein, after having been first
11  duly sworn on his oath, was examined and testified
12  as follows:
13                 DIRECT EXAMINATION
14                 BY MR. MAREK:
15      Q.   Officer, would you state your name for
16  the record, please?
17      A.   Investigator Guevara, G-u-e-v-a-r-a, star
18  number 16345.
19      Q.   You're a Chicago police officer?
20      A.   Yes, I am.
21      Q.   You're assigned to gang crimes north?
22      A.   Yes, I was.
23      Q.   And what is your current assignment?
24      A.   Gang crimes north.
```

1   Q.   And officer, I want to direct your
2 attention back to July 6th of 1989, were you a
3 Chicago police officer assigned to gang crimes
4 north back on that date?
5   A.   Yes, I was.
6   Q.   And on that date, did you transport Mr.
7 Jaime Rios to area five violent crimes?
8   A.   Yes.
9   Q.   And Officer Guevara, did you at any time
10 question the defendant Jaime Rios about the
11 shooting death of Luis Morales?
12   A.   No, I did not.
13   Q.   And Detective or Officer Guevara, did you
14 at any time ever pull the hair of Mr. Jaime Rios?
15   A.   No, sir.
16   Q.   Did you at any time ever see Mr. Jaime
17 Rios' hair pulled by anyone in your presence?
18   A.   Not in my presence, sir, no.
19   Q.   Officer, did you ever threaten Mr. Rios
20 with the loss of any parental rights to any child
21 that he had?
22   A.   No, I did not.
23   Q.   Did anyone in your presence ever threaten
24 him with any loss of parental rights?

1    A.   Not in my presence.

2    Q.   Did anyone in your presence ever threaten
3  Ms. Diana Rodriguez with the loss of any parental
4  rights to her child?

5    A.   No, not in my presence.

6    Q.   Did you personally ever threaten Ms.
7  Diana Rodriguez with the loss of any parental
8  rights to her child?

9    A.   No, I did not.

10   MR. MAREK:  No further questions.

11   MR. CAREY:  Judge, the other day I asked to
12 reopen the motion to quash, and I would just be
13 asking at this time for the sake of time to just go
14 a little bit beyond the scope, just a couple
15 questions.

16   THE COURT:  Sure, go ahead.

17           CROSS-EXAMINATION
18           BY MR. CAREY:

19   Q.   Now, Officer Guevara, you brought Mr.
20 Rios in that night of the 6th of July, is that
21 right?

22   A.   Yes.

23   Q.   Around 10:00 o'clock?

24   A.   I don't remember the time.

233

```
 1        Q.    Approximately 10:00 o'clock?
 2        A.    Approximately, yes.
 3        Q.    You continued to work on the case that
 4   evening, is that correct?
 5        A.    Yes, I did.
 6        Q.    Went out looking for witnesses and so
 7   forth?
 8        A.    Looking for the other supposed offender.
 9        Q.    And about how late did you work on this
10   case?
11        A.    I don't remember, but it was, appears to
12   be in the early morning hours.  I don't remember
13   exactly how late it was.
14        Q.    You came back and forth to area five.  At
15   a couple points, you were in the area five
16   headquarters?
17        A.    Couple occasions, yes.
18        Q.    And you saw Diana Rodriguez there, right?
19        A.    I don't remember seeing her, no, I don't.
20        Q.    Well, you know that a couple of your
21   brother officers brought her into area five
22   headquarters that night, is that right?
23        A.    Do I know?
24        Q.    Yes?
```

1   A.  No, I don't.

2   Q.  Did people tell you that they brought her
3   in?

4       MR. MAREK:  Objection.

5       THE COURT:  He may answer.

6   A.  No, I don't believe so.

7   BY MR. CAREY:

8   Q.  You never saw her there?

9   A.  Not to my knowledge.

10  Q.  And so you don't -- was there a room next
11  to where Mr. Rios was being interviewed?

12  A.  There were several rooms.

13  Q.  Did you look in that room?

14  A.  No, I didn't.

15  Q.  So she could have been in there?

16      MR. MAREK:  I will object.

17      THE COURT:  Sustained.

18  BY MR. CAREY:

19  Q.  Did you talk at all to the officers who
20  assisted on the arrest that night?

21      MR. MAREK:  Judge --

22      MR. CAREY:  Vukonich, Zacharies, Guzman,
23  Longos, Healey.

24      MR. MAREK:  Judge, I will object.

1      THE COURT:  The question was did he talk to
2 these people on that night?
3      MR. CAREY:  Mm-hmm.
4      THE COURT:  You may answer.
5      A.  I believe I had some conversations with
6 them.
7 BY MR. CAREY:
8      Q.  None of those people told you that they
9 brought in Diana Rodriguez?
10     A.  No.
11     Q.  All right.  Now, it was just you and your
12 partner when you picked up Jaime Rios, is that
13 right?
14     A.  I believe so.
15     Q.  There wasn't -- Vukonich and Zacharies
16 wasn't out there?
17     MR. MAREK:  Judge, objection, this was covered
18 before.  I thought the only thing he was going to
19 reopen for was who signed the arrest report.
20     THE COURT:  Yeah, wasn't that it?
21     MR. CAREY:  Well --
22     MR. MAREK:  We have litigated it.
23     THE COURT:  Wasn't that it, Mr. Carey?  I
24 couldn't remember that.

1    MR. CAREY:  The great tradition of the legal
2  profession, Judge.
3    THE COURT:  You have expanded the area.
4    MR. CAREY:  Yes.
5    THE COURT:  Well, let's get to it.
6  BY MR. CAREY:
7    Q.   Now, you were the -- you arrested Jaime
8  Rios, didn't you?
9    A.   Yes.
10   Q.   And you arrested him at area five?
11   A.   He was arrested at area five.
12   Q.   Well, you arrested him there, didn't you?
13   A.   I made out the arrest report, yes.
14   Q.   And you signed the arrest report?
15   A.   Yes.
16   Q.   You and your partner Gawrys?
17   A.   Correct.
18   Q.   And that was because you brought him in,
19  right?
20   A.   That is correct.
21   Q.   And you also said that there were other
22  officers who assisted in the arrest, is that right?
23   A.   Other officers assisted in the
24  investigation, yes.

```
 1      Q.   Well, your report says the arresting
 2 officers were Vukonich, Zacharies, Guzman, Longos,
 3 Halvorson and Mason?
 4      A.   That's correct.
 5      Q.   Along with yourself and your partner?
 6      A.   That's correct.
 7      Q.   That is a total of eight?
 8      A.   Correct.
 9      Q.   And other than Halvorson and Mason, those
10 other people were out on the scene at Mr. Rios'
11 home, is that correct?
12      A.   They might have been there.
13      Q.   You don't know?
14      A.   But I can't say for sure.
15      Q.   You didn't see them there?
16      A.   They might have been there.
17      Q.   The question was, did you see them there?
18      A.   Like I said, I don't remember.  They
19 might have been there.
20      Q.   Well, you put them in your report?
21      A.   Yes, I did.
22      MR. MAREK:  It's argumentative and again
23 beyond the scope.
24      THE COURT:  Sustained.
```

1        MR. CAREY:  No further questions, Judge.
2        THE COURT:  Thank you.
3                REDIRECT EXAMINATION
4                BY MR. MAREK:
5    Q.   Did it take eight police officers to
6  arrest Mr. Rios?
7    A.   No, it didn't.
8    Q.   You did not formally place him under
9  arrest, is that correct?
10   A.   No.
11   Q.   You were put on -- you did the arrest
12 report because you had been the person who took him
13 into area five originally?
14   A.   That is correct.
15       MR. MAREK:  Nothing further.
16               RECROSS-EXAMINATION
17               BY MR. CAREY:
18   Q.   Well, you assisted in the arrest in that
19 you questioned Mr. Rios later then too, didn't you?
20   A.   No, I did not question him.
21   Q.   Didn't you tell him he could lose his
22 newborn baby?
23   A.   No, that is not true.
24   Q.   You knew his wife was out there with the

1  baby that night, didn't you?
2     A.   I --
3     MR. MAREK:   Objection beyond the scope.
4     THE COURT:   He may answer that question.
5  BY MR. CAREY:
6     Q.   On the street?
7     A.   On the street?
8     Q.   Yes.
9     A.   I believe she was on the street, yes.
10    Q.   So you did she her that night?
11    A.   Yes.
12    Q.   With the baby?
13    A.   I don't know if she had the baby, but I
14 did see her on the street.
15    Q.   And did you -- you talked with Mr. Rios
16 on the way to the area five headquarters, didn't
17 you?
18    A.   No, I didn't.
19    Q.   Nothing was said in the car?
20    A.   Nothing was said in the car.
21    Q.   It's about a 20, 30 minute drive?
22    THE COURT:   I know we went through that a long
23 time ago.
24    MR. MAREK:   Yes, object.

1      THE COURT: Sustained. Objection sustained.
2      MR. CAREY: No further questions.
3      THE COURT: State?
4      MR. MAREK: Nothing further.
5      THE COURT: Thanks very much, Investigator.
6  You may step down.
7           (Witness excused).
8      THE COURT: State?
9      MR. MAREK: Judge, at this time I believe we
10 can proceed by stipulation.
11     THE COURT: Okay.
12     MR. MAREK: It will be stipulated between the
13 parties that if Officers Gawrys and Vukonich were
14 called, each would testify that they did not
15 participate in the questioning of Jaime Rios on
16 either July 6 or July 7, 1989; and that they never
17 personally pulled Mr. Rios' hair or threatened him
18 with the loss of any parental rights, nor did
19 anybody in their presence.
20     MR. CAREY: I would stipulate that that would
21 be the testimony.
22     THE COURT: Sure.
23     MR. MAREK: With that, your Honor, we will
24 rest on the motion.

## CERTIFICATE OF SERVICE

Stephen L. Richards certifies that on January 27, 2026 he served the **MOTION IN LIMINE TO ADMIT EVIDENCE OF DEFENDANT REYNALDO GUEVARA'S PATTERN AND PRACTICE OF MISCONDUCT ON THE ISSUE OF GUILT/INNOCENCE AS IT RELATES TO DAMAGES**

through the ECF filing system.

>*/s/ Stephen L. Richards*
>By: Stephen L. Richards
>Attorney for Plaintiff
>53 W. Jackson, Suite 756
>Chicago, IL 60604
>(773) 817-6927
>sricha5461@aol.com
>Attorney No: 6191946

3