*Rios v. Guevara, et.al*
22 CV 3973

# EXHIBIT 2

```
 1        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT - CRIMINAL DIVISION
 2

 3   THE PEOPLE OF THE          )
     STATE OF ILLINOIS,         )
 4                              )  NO. 89-16525
            -vs-                )  CHARGE: MURDER
 5                              )
     JAIME RIOS                 )
 6

 7

 8        REPORT OF PROCEEDINGS had at the hearing of the

 9   above-entitled cause, before the Honorable Themis

10   Karnezis, Judge of said court, on the 3rd day of

11   April, 1990.

12

13   PRESENT:

14

15       HON. CECIL PARTEE
             State's Attorney of Cook County, by
16       MR. FRANK MAREK
             Assistant State's Attorney,
17           on behalf of the People.

18       MR. RANDOLPH STONE
             Public Defender of Cook County, by
19       MR. JACK CAREY
             Assistant Public Defender,
20           on behalf of the Defendant.

21   RENEE M. MASON, CSR, RPR
     Official Court Reporter
22   084-002064

23

24
```

1    A.   Yes.

2    MR. CAREY:   No further questions at this time.

3    THE COURT:   State?

4    MR. MAREK:   No redirect.

5    THE COURT:   Thank you very much, Ms. Riley.

6         (Witness excused).

7    MR. MAREK:   People would call Officer Guevara.

8         (Witness duly sworn)

9              OFFICER GUEVARA

10  called as a witness herein, after having been first
11  duly sworn on his oath, was examined and testified
12  as follows:

13              DIRECT EXAMINATION

14              BY MR. MAREK:

15    Q.   Officer, would you state your name for
16  the record, please?

17    A.   Investigator Guevara, G-u-e-v-a-r-a, star
18  number 16345.

19    Q.   You're a Chicago police officer?

20    A.   Yes, I am.

21    Q.   You're assigned to gang crimes north?

22    A.   Yes, I was.

23    Q.   And what is your current assignment?

24    A.   Gang crimes north.

1  Q. And officer, I want to direct your
2  attention back to July 6th of 1989, were you a
3  Chicago police officer assigned to gang crimes
4  north back on that date?
5  A. Yes, I was.
6  Q. And on that date, did you transport Mr.
7  Jaime Rios to area five violent crimes?
8  A. Yes.
9  Q. And Officer Guevara, did you at any time
10 question the defendant Jaime Rios about the
11 shooting death of Luis Morales?
12 A. No, I did not.
13 Q. And Detective or Officer Guevara, did you
14 at any time ever pull the hair of Mr. Jaime Rios?
15 A. No, sir.
16 Q. Did you at any time ever see Mr. Jaime
17 Rios' hair pulled by anyone in your presence?
18 A. Not in my presence, sir, no.
19 Q. Officer, did you ever threaten Mr. Rios
20 with the loss of any parental rights to any child
21 that he had?
22 A. No, I did not.
23 Q. Did anyone in your presence ever threaten
24 him with any loss of parental rights?

1     A.    Not in my presence.

2     Q.    Did anyone in your presence ever threaten
3  Ms. Diana Rodriguez with the loss of any parental
4  rights to her child?

5     A.    No, not in my presence.

6     Q.    Did you personally ever threaten Ms.
7  Diana Rodriguez with the loss of any parental
8  rights to her child?

9     A.    No, I did not.

10    MR. MAREK:  No further questions.

11    MR. CAREY:  Judge, the other day I asked to
12 reopen the motion to quash, and I would just be
13 asking at this time for the sake of time to just go
14 a little bit beyond the scope, just a couple
15 questions.

16    THE COURT:  Sure, go ahead.

17          CROSS-EXAMINATION

18          BY MR. CAREY:

19    Q.    Now, Officer Guevara, you brought Mr.
20 Rios in that night of the 6th of July, is that
21 right?

22    A.    Yes.

23    Q.    Around 10:00 o'clock?

24    A.    I don't remember the time.

1     Q.     Approximately 10:00 o'clock?

2     A.     Approximately, yes.

3     Q.     You continued to work on the case that
4  evening, is that correct?

5     A.     Yes, I did.

6     Q.     Went out looking for witnesses and so
7  forth?

8     A.     Looking for the other supposed offender.

9     Q.     And about how late did you work on this
10 case?

11    A.     I don't remember, but it was, appears to
12 be in the early morning hours.  I don't remember
13 exactly how late it was.

14    Q.     You came back and forth to area five.  At
15 a couple points, you were in the area five
16 headquarters?

17    A.     Couple occasions, yes.

18    Q.     And you saw Diana Rodriguez there, right?

19    A.     I don't remember seeing her, no, I don't.

20    Q.     Well, you know that a couple of your
21 brother officers brought her into area five
22 headquarters that night, is that right?

23    A.     Do I know?

24    Q.     Yes?

```
 1        A.   No, I don't.
 2        Q.   Did people tell you that they brought her
 3   in?
 4        MR. MAREK:  Objection.
 5        THE COURT:  He may answer.
 6        A.   No, I don't believe so.
 7   BY MR. CAREY:
 8        Q.   You never saw her there?
 9        A.   Not to my knowledge.
10        Q.   And so you don't -- was there a room next
11   to where Mr. Rios was being interviewed?
12        A.   There were several rooms.
13        Q.   Did you look in that room?
14        A.   No, I didn't.
15        Q.   So she could have been in there?
16        MR. MAREK:  I will object.
17        THE COURT:  Sustained.
18   BY MR. CAREY:
19        Q.   Did you talk at all to the officers who
20   assisted on the arrest that night?
21        MR. MAREK:  Judge --
22        MR. CAREY:  Vukonich, Zacharies, Guzman,
23   Longos, Healey.
24        MR. MAREK:  Judge, I will object.
```

235

```
 1       THE COURT:  The question was did he talk to
 2  these people on that night?
 3       MR. CAREY:  Mm-hmm.
 4       THE COURT:  You may answer.
 5       A.   I believe I had some conversations with
 6  them.
 7  BY MR. CAREY:
 8       Q.   None of those people told you that they
 9  brought in Diana Rodriguez?
10       A.   No.
11       Q.   All right.  Now, it was just you and your
12  partner when you picked up Jaime Rios, is that
13  right?
14       A.   I believe so.
15       Q.   There wasn't -- Vukonich and Zacharies
16  wasn't out there?
17       MR. MAREK:  Judge, objection, this was covered
18  before.  I thought the only thing he was going to
19  reopen for was who signed the arrest report.
20       THE COURT:  Yeah, wasn't that it?
21       MR. CAREY:  Well --
22       MR. MAREK:  We have litigated it.
23       THE COURT:  Wasn't that it, Mr. Carey?  I
24  couldn't remember that.
```

1    MR. CAREY: The great tradition of the legal
2 profession, Judge.
3    THE COURT: You have expanded the area.
4    MR. CAREY: Yes.
5    THE COURT: Well, let's get to it.
6 BY MR. CAREY:
7    Q. Now, you were the -- you arrested Jaime
8 Rios, didn't you?
9    A. Yes.
10   Q. And you arrested him at area five?
11   A. He was arrested at area five.
12   Q. Well, you arrested him there, didn't you?
13   A. I made out the arrest report, yes.
14   Q. And you signed the arrest report?
15   A. Yes.
16   Q. You and your partner Gawrys?
17   A. Correct.
18   Q. And that was because you brought him in,
19 right?
20   A. That is correct.
21   Q. And you also said that there were other
22 officers who assisted in the arrest, is that right?
23   A. Other officers assisted in the
24 investigation, yes.

1   Q. Well, your report says the arresting
2   officers were Vukonich, Zacharies, Guzman, Longos,
3   Halvorson and Mason?
4   A. That's correct.
5   Q. Along with yourself and your partner?
6   A. That's correct.
7   Q. That is a total of eight?
8   A. Correct.
9   Q. And other than Halvorson and Mason, those
10  other people were out on the scene at Mr. Rios'
11  home, is that correct?
12  A. They might have been there.
13  Q. You don't know?
14  A. But I can't say for sure.
15  Q. You didn't see them there?
16  A. They might have been there.
17  Q. The question was, did you see them there?
18  A. Like I said, I don't remember. They
19  might have been there.
20  Q. Well, you put them in your report?
21  A. Yes, I did.
22  MR. MAREK: It's argumentative and again
23  beyond the scope.
24  THE COURT: Sustained.

1          MR. CAREY:  No further questions, Judge.
2          THE COURT:  Thank you.
3                   REDIRECT EXAMINATION
4                   BY MR. MAREK:
5     Q.   Did it take eight police officers to
6  arrest Mr. Rios?
7     A.   No, it didn't.
8     Q.   You did not formally place him under
9  arrest, is that correct?
10    A.   No.
11    Q.   You were put on -- you did the arrest
12 report because you had been the person who took him
13 into area five originally?
14    A.   That is correct.
15         MR. MAREK:  Nothing further.
16                  RECROSS-EXAMINATION
17                  BY MR. CAREY:
18    Q.   Well, you assisted in the arrest in that
19 you questioned Mr. Rios later then too, didn't you?
20    A.   No, I did not question him.
21    Q.   Didn't you tell him he could lose his
22 newborn baby?
23    A.   No, that is not true.
24    Q.   You knew his wife was out there with the

PFP001162                    239
                              E32

```
 1  baby that night, didn't you?
 2      A.   I --
 3      MR. MAREK:  Objection beyond the scope.
 4      THE COURT:  He may answer that question.
 5  BY MR. CAREY:
 6      Q.   On the street?
 7      A.   On the street?
 8      Q.   Yes.
 9      A.   I believe she was on the street, yes.
10      Q.   So you did she her that night?
11      A.   Yes.
12      Q.   With the baby?
13      A.   I don't know if she had the baby, but I
14  did see her on the street.
15      Q.   And did you -- you talked with Mr. Rios
16  on the way to the area five headquarters, didn't
17  you?
18      A.   No, I didn't.
19      Q.   Nothing was said in the car?
20      A.   Nothing was said in the car.
21      Q.   It's about a 20, 30 minute drive?
22      THE COURT:  I know we went through that a long
23  time ago.
24      MR. MAREK:  Yes, object.
```

```
 1          THE COURT:  Sustained.  Objection sustained.
 2          MR. CAREY:  No further questions.
 3          THE COURT:  State?
 4          MR. MAREK:  Nothing further.
 5          THE COURT:  Thanks very much, Investigator.
 6   You may step down.
 7               (Witness excused).
 8          THE COURT:  State?
 9          MR. MAREK:  Judge, at this time I believe we
10   can proceed by stipulation.
11          THE COURT:  Okay.
12          MR. MAREK:  It will be stipulated between the
13   parties that if Officers Gawrys and Vukonich were
14   called, each would testify that they did not
15   participate in the questioning of Jaime Rios on
16   either July 6 or July 7, 1989; and that they never
17   personally pulled Mr. Rios' hair or threatened him
18   with the loss of any parental rights, nor did
19   anybody in their presence.
20          MR. CAREY:  I would stipulate that that would
21   be the testimony.
22          THE COURT:  Sure.
23          MR. MAREK:  With that, your Honor, we will
24   rest on the motion.
```