IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAIME RIOS

      Plaintiff,

      vs.                            Case No. 1:22-cv-03973

REYNALDO GUEVARA
MICHAEL MASON
JOANN HALVORSEN AS
SPECIAL REPRESENTATIVE FOR
ERNEST HALVORSEN, DECEASED
CITY OF CHICAGO

      Defendants.                    JURY TRIAL DEMANDED

      Defendants.

**STATEMENT OF ADDITIONAL QUESTIONS TO BE ASKED OF REYNALDO
GUEVARA WHEN HE APPEARS FOR TESTIMONY BY WEBEX**

Plaintiff, Jaime Rios, by and through his attorneys, Stephen L. Richards and Joshua S.M.
Richards submits the following statement of additional questions to be asked of Reynaldo
Guevara when he appears for testimony by Webex. These questions are additional to the
videotaped deposition questions which Jaime Rios has submitted as designations. The previous
questions will be repeated only as necessary to establish context.

1.  In the late nineteen eighties, you were a Chicago police gang specialist in the
    Humboldt Park neighborhood.

2.  During your patrols through the neighborhood, you often stopped people, particularly
    young Hispanic men you believed to be members of a gang.

3. It was your habit to ask these people to show you their gold chains, their jewelry, and the cash in their pockets.

4. You would tell these people that you were going to inventory these items and that they would have to come to the station to show receipts to get their property back.

5. Most of these people never came to the station.

6. You kept the money and the jewelry.

7. You were known in the neighborhood as a corrupt cop and a "thug."

8. Isn't it true that in the late 1980's it was common in the Puerto Rican community to wear an Indian Head ring?

9. Isn't it true that in the late 1980's you wore a Indian Head ring on your finger?

10. During this period you knew Jaime Rios as a member of the Latin Kings.

11. You also knew Jaime Rios's mother, Soccoro Rogers.

12. At one point, Soccoro Rogers confronted you about how you were treating people in the neighborhood.

13. You also knew another Latin King, the head of the Latin Kings in the neighborhood, Jose "Macho" Melendez.

14. At one point in the late nineteen eighties you confronted "Macho" Melendez on the street and threatened him because he had not done something for you.

15. Jose "Macho" Melendez was one of your informants.

16. Sometime after June 27, 1989, you became involved in the investigation of the murder of Luis Morales.

17. Although no one asked you to become involved in the investigation, you wrote in your arrest report on the case that you were assigned by your supervisor.

18. Why did you become involved in the investigation?

19. Isn't it true that you became involved in the investigation to protect your confidential informant Jose "Macho" Melendez?

20. On July 6, 1989, you went to a schoolyard in the neighborhood near 1440 north Leavitt with your partner, gang specialist Peter Gawrys.

21. Jaime Rios, and another gang member named "Little Mike" were hanging out.

22. You and Gawrys started taking pictures of Jaime Rios and "Little Mike."

23. You and Gawrys grabbed Little Mike and threw him into your car.

24. Jaime Rios said to you: "Do you want me too? You need me to go with you too?"

25. You said to Rios: "No, Rios. Get out of here."

26. What did you say to "Little Mike", in the car and what did he say to you?

27. You took "Little Mike" to a police station?

28. What did you say to "Little Mike," in the police station?

29. You knew "Little Mike"'s real name.

30. What is "Little Mike"'s real name?

31. Little Mike's picture was in a gang book kept at Area 5?

32. Isn't it true that no one you spoke with told you that they had witnessed the shooting?

33. Isn't it true that no one you spoke with told you that they knew for a fact that Jaime Rios had shot Luis Morales?

34. Nothing any informant said gave you probable cause to arrest Jaime Rios?

35. On July 6, 1989, you had conversations with defendants Mason and Halvorsen?

36. In those conversations, you agreed with Mason and Halvorsen that you would forcibly detain Jaime Rios?

3

37. In those conversations, you agreed with Mason and Halvorsen that you would take Jaime Rios to Area 5?

38. In those conversations, you agreed with Mason and Halvorsen that you would then falsely claim that Jamie Rios had come into the station voluntarily?

39. In those conversations, you agreed with Mason and Halvorsen that you would interrogate Jaime Rios using physical force

40. In those conversations, you agreed with Mason and Halvorsen that while interrogating Jaime Rios, you would threaten to take away Jamie Rios' children.

41. In those conversations, you agreed with Mason and Halvorsen that you would suggest to Jaime Rios that Jamie Rios only had to admit to being on the scene of the murder and that Jamie Rios would be let go.

42. During your interrogation of Jaime Rios you took a photograph of "Little Mike" out of the gangbook and showed it to Jaime Rios.

43. You and Mason agreed that the physical force used on Jaime Rios would consist of hair pulling or some other method which was less likely to leave a physical mark?

44. On July 6, 1989 and July 7, 1989, the conference room at Area 5 was equipped with a rolling white board that rotates.

45. Isn't it true that you hit Cristino Garcia with a flashlight or billy club, striking him by hitting a phone book that was placed flush with Cristino Garcia's head?

46. Isn't it true that you stuck Cristino Garcia in this manner because you believed this method would inflict pain without leaving a physical mark?

47. About one month after Garcia was released, you grabbed Garcia in the street, threw him against a wall, took a picture of him with a Polaroid camera, and told Garcia that

4

you would tell rival gang members to get him?

Respectfully Submitted,

JAIME RIOS

By and through

/s/ Stephen L. Richards

By: Stephen L. Richards Attorney
for Plaintiff
53 West Jackson
Suite 756
Chicago, IL 60604
773-817-6927
sricha5461@aol.com Attorney No:
6191946

5

## <u>CERTIFICATE OF SERVICE</u>

Stephen L. Richards certifies that on  January 30, 2026   he served the   **STATEMENT OF ADDITIONAL QUESTIONS TO BE ASKED OF REYNALDO GUEVARA WHEN HE APPEARS FOR TESTIMONY BY WEBEX**

through the ECF filing system.

*/s/ Stephen L. Richards*
By: Stephen L. Richards
Attorney for Plaintiff
53 W. Jackson, Suite 756
Chicago, IL 60604
(773) 817-6927
sricha5461@aol.com
Attorney No: 6191946

6