**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAIME RIOS, | ) | |
| | ) | **Case No. 22 CV 3973** |
| Plaintiff, | ) | |
| | ) | **Judge Jeremy Daniel** |
| vs. | ) | |
| | ) | |
| REYNALDO GUEVARA, MICHAEL MASON, | ) | |
| ERNEST HALVORSEN, CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION IN LIMINE TO**
**<u>INTRODUCE PRIOR TRIAL TESTIMONY OF JAVIER</u>**

Plaintiff should not be permitted to admit the prior testimony of Javier Torres at trial in this case. As this Court explained at the January 29, 2026 hearing, the only remaining basis to be addressed for admissibility of this evidence is under Fed. R. Evid. 804(b)(1). Plaintiff seeks to introduce this testimony for the purposes of proving his innocence, specifically, by introducing evidence that Javier Torres previously identified an individual named Jose "Macho" Melendez as the shooter and did not select Plaintiff out of a book of gang photos. *See* Dckt. No. 282-1 at 1-2. Plaintiff's Motion should be denied.

Contrary to Plaintiff's intended insinuation of this testimony, Torres *never* gave exculpating testimony regarding Plaintiff (nor even inculpating testimony of Melendez). Rather, Torres repeatedly admitted that he was not able to identify anyone from the night of the shooting because he did not get a good enough view of the persons. Dckt. No. 291 at 106:15-18 ("Q. Javier, when you say this guy pulled a pistol, were you able to see what this guy looked like? A. No."); 108:10-12 ("Q. Let me ask you this, Javier. Did you get a look at either of these guys? A. No."); *Id.* at 114:12-16 ("Q. You wanted the guy that shot your friend caught, didn't you? A. No. Q. No? A. Never seen him."). Torres consistently stated that he was lying when he stated that Macho was one of the persons

involved in the shooting. *Id.* at 109:11-18 ("Now, Javier, when you told the police that Macho was the shooter, why did you tell them that? A. Because me and him had, you know, we ain't get along. Q. Were you lying to the police when you told them that? A. Yes."). Indeed, it was not the *defense* who called Torres, it was the *prosecution* and they called Torres to impeach him with his lies not to establish Plaintiff's culpability. In other words, this was a "call and impeach" tactic not an attempt to either inculpate Plaintiff or exculpate Melendez. It was merely to neutralize a distraction point from the prosecution so they could focus on the actual evidence relied upon by the prosecution to convict Plaintiff.

The purposes for which Plaintiff seeks to admit the testimony of Torres are not remotely the same as what the prosecution was attempting to establish during Plaintiff's underlying criminal case. Indeed, they are the opposite. Plaintiff admits that the purpose for which he seeks to admit this evidence is to show that Melendez is the perpetrator (and, implicitly, that Plaintiff is not). None of that was at issue in Plaintiff's criminal case. The sole focus of the prosecution was providing that Plaintiff was guilty of murder (either directly as the shooter or under an accountability theory). The State was not attempting to prove (or disprove) whether Melendez was involved in the case in any way.

Federal Rule of Evidence 804(b)(1) provides that prior sworn testimony of an unavailable witness is admissible if: "(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). "Under Rule 804(b)(1), once a declarant has been deemed unavailable, his former testimony may be admitted into evidence, as long as the party against whom the testimony is admitted had an opportunity and a similar motive to develop the testimony." *United States v. Reed*, 227 F.3d 763, 767 (7th Cir.2000); *see also United States v.*

2

*Salerno*, 505 U.S. 321–22 (1992) (same). The similar motive "requirement operates to screen out those statements, which although made under oath, were not subject to the scrutiny of a party interested in thoroughly testing its validity." *United States v. Pizarro*, 717 F.2d 336, 349 (7th Cir.1983). "When considering whether this requirement has been met, courts look to the similarity of issues and the purpose for which testimony was given." *Reed*, 227 F.3d at 768. "Circumstances or factors which influence motive to develop testimony include '(1) the type of proceeding in which the testimony is given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties.' " *United States v. Feldman*, 761 F.2d 380, 385 (7th Cir.1985) (citation omitted).

The application of this rule in cases where a former criminal defendant seeks to use testimony from his own criminal trial against police officers in a subsequent civil trial has been addressed and rejected by a number of courts. *See Pursley v. City of Rockford,* 2024 WL 1050242, at *3 (N.D.Ill., 2024); *Andersen v. City,* 16 CV 1963, Dckt, No. 685 (November 17, 2020)(Kendall, J.)(attached hereto as Ex. A); *Hill v. City of Chicago*, 2011 WL 3876915, at *3 (N.D. Ill. 2011); *Butler v. Indianapolis Metro. Police Dep't*, 2009 WL 2092416, at *2, (S.D. Ind. 2009); *see also Hannah v. City of Overland*, 795 F.2d 1385, 1390–91 (8th Cir.1986)(deposition of witness taken during criminal prosecution could not be used against police officer in civil case; officer was not party to criminal prosecution and had no motive to cross-examine witness during deposition); Willis v. Mullins,, 2019 WL 1116200, *6 (E.D. Cal. 2019)("[T]estimony during a criminal trial does not meet the requirements of Rule 804(b)(1) when a party tries to use it in a Section 1983 civil case against police officers.").

In rejecting these attempts, these courts have generally relied upon the differing motives of prosecutors in such cases to prove a crime happened as opposed to proving or defending against police misconduct and that prosecutors have immunity from financial consequences of their

conduct (unlike police officers) which can create more powerful motives by police to impeach or bolster witness testimony. *Id.*

As explained by Chief Judge Kendall in granting such a motion in another reversed conviction case:

> During that criminal trial, the motivation of the ASA is to present evidence to prove his case beyond a reasonable doubt. He is not in a position to be thinking of defending an officer witness in as a future defendant in a wrongful conviction case. Also, the motive of an ASA in directing or cross−examining a witness is entirely different than defending that witness in a civil rights case. The ASA is concerned with presenting the building blocks of his case to establish guilt. The civil defense attorney is concerned with showing that the officer's actions were appropriate, legal, constitutional and fair under the circumstances. The civil defense attorney must have a much broader understanding of the actions of the officer in terms of civil liability which is not at all the focus of the ASA in the criminal trial. *See* Ex. A.

These cases clearly support denying Plaintiff's motion.

First, Plaintiff concedes in his motion that Torres' testimony "ha[s] nothing to do with potential claims against Mason, Halvorsen, or Guevara" and that Plaintiff seeks to introduce this evidence for civil damages purposes. Dckt. No. 282-1 at 4; *see also id.* at 2 ("Torres' testimony relates principally to Jaime Rios's guilt or innocence as it relates to damages and is only tangentially related to the civil rights claims against Guevara, Mason, and Halvorsen."). This, in and of itself, is precisely why this evidence must *not* be admitted. *See Feldman*, 761 F.2d at 385 (Fed.R.Evid. 804(b)(1) requires that 'must have had a 'similar motive to develop the testimony by direct, cross, or redirect examination.' In determining whether a party had such a motive, a court must evaluate not only the similarity of the issues, but also the purpose for which the testimony is given."); *Hill*, 2011 WL 3876915 at *2-3 ("The similar motive 'requirement operates to screen out those statements, which although made under oath, were not subject to the scrutiny of a party interested in thoroughly testing its validity.'…[A] prosecutor's motive in securing just result differs from a civil attorney's motive when representing a defendant in a civil rights lawsuit.").

Second, even had Plaintiff not conceded that the motives and purposes in the two proceedings were entirely different, the motive to develop the Torres testimony is not remotely similar to that at issue here. Recall, it was not the defense that called Torres to testify but the prosecution and they called Torres for the sole purpose of impeaching him. They did not call Torres or introduce evidence to attempt to affirmatively show that Melendez was not the real killer, but rather to show that he tried to sidetrack the investigation with improper motives. Had the prosecution truly been interested in affirmatively proving the innocence of Melendez, they would have introduced other testimony on Melendez's alibi and other such evidence. They did not. And the reason they did not is because the focus of the prosecution was *convicting Plaintiff* not *exonerating Melendez*.

The closest analogue is *Pursley* and, in fact, *Pursley* presents a nearly identical "call and impeach" strategy that the Court held was not sufficient to establish similarity in motive. There, the Court rejected reliance on such testimony by a plaintiff where Plaintiff wanted to read in criminal trial testimony of a witness who had originally claimed that the plaintiff committed a murder and then told a different story at the criminal trial. *Id.,* 2024 WL 1050242, at *3-4. The Court explained:

> Cross examination of witnesses requires discretion and judgment. Sometimes, poking a few critical holes in a witness' testimony makes more sense than fully obliterating a witness. And sometimes adverse witnesses have helpful testimony, too. So, counsel must make judgment calls on whether eliciting the favorable testimony is more important than impeaching the stuffing out of those types of witnesses.
>
> This difference in motive can be seen in this case. The prosecution at Pursley's criminal trial wanted Crabtree to testify that Pursley committed the murder and to impeach her when she told a different story. Its goal wasn't to defend against allegations of fabrication and coercion by the police officers.

Plaintiff wants to do precisely what *Pursley* said cannot be done, use the prosecution's "call and impeach" tactics to try to backdoor in an out of court statement suggesting the innocence of the plaintiff. Indeed, this case is even more persuasive because Torres cannot even give exculpating

testimony. Rather, he admitted he could not see the perpetrators either way and that he had lied when he said otherwise out of court.

Moreover, in *Hill*, plaintiff in a civil rights case against defendant police officers sought to admit prior testimony of an unavailable criminal co-defendant of a plaintiff under far more compelling circumstances than this case, specifically, testimony given at a prior criminal trial by a deceased co-defendant. *Hill*, 2011 WL 3876915 at *2. Defendants moved in limine to bar such testimony and argued that the state's attorneys did not share a similar motive to develop the underlying testimony as the defendant officers and, thus, that the prior testimony was inadmissible. *Id.* Judge St. Eve agreed and barred the testimony. *Id.* Judge St. Eve noted:

> Young's criminal trial testimony does not fulfill the second and third *Feldman* factors. First, Defendant Officers in this civil litigation were not parties to the criminal proceedings against Young. Instead, the Cook County State's Attorneys Office prosecuted Young at his criminal trial and "[i]t is well-settled that strategies for civil and criminal trials may differ greatly." Indeed, prosecutors in criminal cases are not ordinary parties to a lawsuit, but represent the sovereign, in this case—the People of the State of Illinois. Thus, a prosecutor's motive in securing just result differs from a civil attorney's motive when representing a defendant in a civil rights lawsuit. To clarify, as then-United States District Court Judge David Hamilton articulated in a civil rights case against the Indianapolis Metropolitan Police Department:
>
> > Prosecutors in criminal trials (as well as in depositions) usually have their hands full trying to protect the public and secure a just result in the criminal prosecution. Under [plaintiff's] theory here, those busy prosecutors would also need to think and act as surrogate defense counsel for future civil rights lawsuits against officers who are not their clients. Second, the motive of a prosecutor to cross-examine a witness is different than the motive of a defendant in a later-filed civil rights lawsuit in relation to the potential penalties or financial stakes involved. *See id.* As Judge Hamilton explained:
> >
> > > The police officer faces the prospect of personal liability, particularly for punitive damages, which may not be the subject of any indemnity agreement with the local government, as well as the prospect of harm to professional reputation that may result if a court or jury finds a violation of constitutional rights. The police officer has powerful financial and professional motives to pursue the reasons for the complaining witness's change of story and to attack the witness's

6

> credibility. The city has similar financial and reputational motives. Those differences between the prosecutor's and the police officer's and city's motives weigh heavily against using Rule 804(b)(1) to allow plaintiff ... to use in his civil trial the deposition of [his girlfriend] in the criminal prosecution.
>
> Judge Hamilton's opinion in *Butler* is persuasive and consistent with Seventh Circuit precedent...Because the Assistant State's Attorneys who prosecuted Young did not have a similar motive to develop Young's testimony as the Defendant Officers in the present matter, the Court grants Defendant Officers' motion under Rule 804(b)(1). *Id.* at *3-4.

This case is notable because even though the state sought to criminally convict the unavailable witness for the same crime as the plaintiff in a joint prosecution, the Court still held that differences in motive were apparent because of the nature of the proceedings. *Id.* Here, again, the prosecution was not attempting to exonerate Melendez but convict Plaintiff. Therefore, the prosecution's interest in developing this testimony is diametrically opposed to the issues for which Plaintiff seeks to introduce it here.

Finally, Torres' testimony regarding identifying Plaintiff out of court to the police, admitting he lied to the police, and then testifying later in court that his prior statement was not true was not even admissible itself as evidence of Melendez's guilt (and, by extension, Plaintiff's innocence) under Illinois law. Had Torres actually identified Plaintiff in court, this would be a different situation. However, the thrust of the testimony that Plaintiff seeks to introduce via this testimony is Torres' out of court inculpation of Melendez (i.e. Plaintiff wants to try to prove Melendez was the murderer and not Plaintiff). A retracted out of court inculpating statement of a witness is not admissible as substantive evidence at trial under Illinois law. *See People v. Simpson*, 2015 IL 116512 (Ill. 2015). In other words, under Illinois law (which applied to the testimony sought to be admitted), Torres was not even permitted to give testimony about his inculpation of Melendez for substantive purposes. Accordingly, the suggestion that Plaintiff in this case can attempt to use this same

evidence for a purpose which was explicitly forbidden in the underlying proceeding also proves conclusively that the *Feldman* factors could never be satisfied in this case.

WHEREFORE Defendants pray this Court deny Plaintiff's Motion and bar the reading of the prior testimony of Javier Torres and for whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:     /s/ Timothy P. Scahill
        *Special Assistant Corporation Counsel*

Steven B. Borkan
Timothy P. Scahill
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
*Attorneys for Reynaldo Guevara*


/s/Caroline P. Golden
CAROLINE P. GOLDEN, Atty No. 6270259 Special Assistant Corporation Counsel One of the Attorneys for Defendant Michael Mason and Joann Halvorsen, special representative for Ernest Halvorsen, deceased

/s/ Eileen E. Rosen
EILEEN E. ROSEN Special Assistant Corporation Counsel One of the Attorneys for Defendant City of Chicago