*Rios v. Guevara, et.al*
22 CV 3973

# EXHIBIT 8

```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   JAIME RIOS,                    )
                                    )
 4               Plaintiff,         )
                                    )
 5           vs.                    )    No. 22-CV-03973
                                    )
 6   REYNALDO GUEVARA, MICHAEL      )
     MASON, JOANN HALVORSEN,        )
 7   as Special Representative      )
     for Ernest Halvorsen,          )
 8   Deceased, BARBARA RILEY,       )
     the CITY OF CHICAGO, and       )
 9   COOK COUNTY,                   )
                                    )
10               Defendants.        )

11           The deposition of JANET LUPA, taken

12   pursuant to the Federal Rules of Civil Procedure,

13   before Kathleen A. Hillgard, Certified Shorthand

14   Reporter No. 084-004093, viz Zoom, on Monday,

15   September 25th, 2023, commencing at 12:33 p.m.

16   pursuant to notice and subpoena.

17       APPEARANCES:

18           LAW OFFICE OF STEPHEN L. RICHARDS, by
             MR. JOSHUA RICHARDS
19           (53 West Jackson Boulevard, Suite 756
              Chicago, Illinois  60604
20            773.817.6927
              Jsrichardscriminallaw@outlook.com)
21              appeared on behalf of the plaintiff;

22

23

24
```

```
 1        APPEARANCES:  (Cont'd)

 2            LEINENWEBER BARONI & DAFFADA, LLC, by
              MR. MICHAEL J. SCHALKA
 3            (120 North LaSalle Street, Suite 2000
               Chicago, Illinois  60602
 4             847.241.4091
               MJS@ilesq.com)
 5                appeared on behalf of the defendant
                  Reynaldo Guevara;
 6
              THE SOTOS LAW FIRM, PC, by
 7            MR. JOSH ENGQUIST
              (141 West Jackson Boulevard, Suite 1240A
 8             Chicago, Illinois  60604
               630.735.3300
 9             Jengquist@jsotoslaw.com)
                  appeared on behalf of the defendants
10                Michael Mason, Joann Halvorsen, as
                  Special Representative for Ernest
11                Halvorsen, Deceased;

12            ROCK FUSCO & CONNELLY, LLC, by
              MS. THERESA CARNEY
13            (333 West Wacker Drive, 19th Floor
               Chicago, Illinois  60606
14             312.494.1000
               Tcarney@rfclaw.com)
15                appeared on behalf of the defendant
                  City of Chicago.
16

17                    *   *   *   *   *   *

18

19

20

21

22

23

24
```

JANET LUPA, 09/25/2023                                         Page 3

```
 1                    I N D E X

 2
     Witness:                              Page
 3
          JANET LUPA
 4
               Examination by:
 5
                    Mr. Engquist.................    4
 6                  Mr. Richards.................   18
                    Mr. Engquist.................   20
 7                  Mr. Richards.................   21

 8

 9

10

11

12

13

14

15                    E X H I B I T S

16
      No.   Description               Marked/Referenced
17
        1  Rios Statement.........................   12
18      2  Photos of Rios.........................   16

19
               (Exhibits attached/scanned.)
20

21

22                       - - -

23

24
```

JANET LUPA, 09/25/2023                                      Page 4

```
 1                   (Witness sworn.)
 2          MR. ENGQUIST:  Ma'am, could you state your
 3   name and spell your last name just for the record.
 4          THE WITNESS:  Janet Lupa, L-u-p-a.
 5          MR. ENGQUIST:  Okay.  Let the record reflect
 6   this is the deposition of Ms. Lupa, taken pursuant
 7   to notice and subpoena.
 8                     JANET LUPA
 9   called as a witness herein, having been first duly
10   sworn, was examined and testified as follows:
11                     EXAMINATION
12   BY MR. ENGQUIST:
13          Q.    Ms. Lupa, I -- I know you're familiar
14   with the idea of a court-reported statement, or at
15   least a deposition in some respects, but let me go
16   through a few of the ground rules.  Okay?
17          A.    Yes.
18          Q.    Okay.  First and foremost, your answers
19   have to be oral; they have to be out loud.  All
20   right?
21          A.    Yes.
22          Q.    Nodding of the head, shrugging of the
23   shoulders, things of that nature don't come across
24   very clearly.  So for the court reporter's sake,
```

Urlaub Bowen & Associates, Inc.   312-781-9586

```
 1  we'll probably ask is that a yes or a no.  All right?
 2        A.    Yes.
 3        Q.    Also, as you probably remember, a court
 4  reporter can only take down one voice at a time.
 5  So I'll do my best not to speak over your answers.
 6  If you do your best to try not to speak over my
 7  questions, I think this will run pretty smoothly.
 8  All right?
 9        A.    All right.
10        Q.    I don't expect this to go that long.
11  However, it doesn't matter how long it really
12  takes, this is not an endurance contest.  If,
13  Ms. Lupa, you need to take a break for any reason,
14  you let us know and we'll take a break.
15              The only thing that we ask is that
16  if a question's pending, you answer it before we
17  take the break.
18        A.    Okay.
19        Q.    Also, you're entitled to a question you
20  understand before you answer.  So if you don't
21  understand the question because we're speaking too
22  fast, it's unclear to you, or we're making no sense
23  with our questions, just let us know and we'll do
24  our best to repeat it, rephrase it, slow down, or
```

```
 1   whatever we need to do so you understand the

 2   question.  Okay?

 3        A.    Okay.

 4        Q.    If you answer a question, we're going

 5   to assume you understood it; is that fair?

 6        A.    That's fair.

 7        Q.    Okay.  Ms. Lupa, I know prior to

 8   today's deposition I sent you a copy of the court-

 9   reported statement taken on July 7th, 1989, and a

10   copy of the photograph that was attached.

11                  Did you have a chance to review

12   those?

13        A.    I did today.  I could not find it, so I

14   had Tonet send me a copy.

15        Q.    Okay.  Did you review anything else in

16   preparation for your deposition today?

17        A.    No.

18        Q.    And just so we're clear, we are on Zoom

19   right now, so we can't -- we're not sitting across

20   from each other.

21                  Do you have anything else in front

22   of you other than the iPad that you're speaking

23   over?

24        A.    No.
```

```
 1        Q.    Okay.  If you do look at anything else,
 2   documents or otherwise, just let us know just so we
 3   have a -- we're aware what you're looking at before
 4   you answer the questions.  Okay?
 5        A.    Okay.
 6        Q.    Ms. Lupa, after reviewing the
 7   transcript of the statement taken on July 7th,
 8   1989 -- and just for everyone's edification here,
 9   it was initially Bates stamped JGS Rios 140
10   through -- let me see, 151, and the photograph was
11   marked JGS Rios 178 through 180.
12                   After looking at those two items,
13   Ms. Lupa, did it refresh your recollection at all
14   about this court-reported statement?
15        A.    No.
16        Q.    Okay.  Now, I know it took place back
17   in 1989, but if you can, can you give me an idea of
18   what your -- what was your employment back in 1989?
19        A.    What was my appointment?
20        Q.    Employment, your job.
21        A.    I'm sorry.  I was a certified shorthand
22   reporter.
23        Q.    Okay.  And how many years did you work
24   as a certified shorthand reporter?
```

```
 1        A.    Probably 25 years.
 2        Q.    Okay.  And what's the year to year
 3   roughly on that?
 4        A.    '75 through '02.
 5        Q.    Okay.  And back in 1989, is it correct
 6   that you worked directly for Cook County?
 7        A.    Yes, that is correct.
 8        Q.    Okay.  And did you -- were you
 9   specifically working for the Cook County State's
10   Attorney's Office back in July of 1989?
11        A.    Yes, I was.
12        Q.    Okay.  And what were your duties back
13   in July of 1989 when you were working for the Cook
14   County State's Attorney's Office?
15        A.    Well, we took depositions for the
16   felony unit.  We were on call for homicides or
17   anything that happens at night where we had to go
18   out to the station.  And we just did what court
19   reporters do, which is make a legal record of
20   anything.
21        Q.    Okay.  Now, before I -- I'll pull up
22   the exhibit and I'll share the exhibit with you so
23   you can look at it as well.
24              Can you give me an example of when
```

1    you -- when you were called out to the police, are

2    you talking about being called out to like a

3    detective area to take a court-reported statement?

4    Is that what you're talking about as one of your

5    job duties?

6          A.    Yes.  That is correct.

7          Q.    Okay.  And you said you were on call

8    for that?

9          A.    Yes.

10         Q.    And if you recall, how -- during the

11   years you were working for the Cook County State's

12   Attorney's Office, do you recall how many or

13   approximately how many court-reported statements

14   you took at a police station?

15         A.    Hundreds.

16         Q.    Okay.  And did you have a certain

17   standard practice in how you went about responding

18   to a call for your services to go to a police

19   station for the Cook County State's Attorney's

20   Office?

21         A.    Yes.

22         Q.    And what was that standard practice,

23   ma'am?

24         A.    Well, as soon as I was called out, I

```
 1   would get to the station.  I would take down the

 2   names of the person giving the deposition and

 3   certain information.  Then I would be called into

 4   the room, the interview room, and I would take down

 5   the statement.

 6                   After that, I would type it up.  I

 7   would come out and I would type it up.  And I would

 8   hand it to the state's attorney once it was done.

 9   He would take it into the interview room and go

10   over it with the detective who was there and the

11   deponent.

12                   And then after that was done, I

13   would go in.  I would take a picture of the

14   deponent and then I would put my sticker on the

15   back to show what time I took the picture, and then

16   I would make a couple copies.  I would take the

17   original back to 26th and California into the

18   office.

19        Q.    Okay.  When you said you would take

20   down the statement in the room with the state's

21   attorney, detective usually was present, and the

22   person giving the statement, would you do that --

23   how would you do that?

24        A.    I would always set up between the
```

1   person asking the questions and the person

2   answering the questions.

3          Q.    Okay.  And you'd use like a -- I guess

4   it's a stenographer machine?

5          A.    It's a Stenograph.

6          Q.    Okay.

7          A.    Yeah.  Probably what she's using, the

8   same one.

9          Q.    Okay.  And then you said -- just to be

10  clear.  After the statement was complete, then you

11  said you would leave the room and type it up.

12  Where would you type that up?

13         A.    Usually it could be in the bullpen; it

14  could be in someone's office.  It's wherever I

15  could set up my typewriter.

16         Q.    Okay.  So you would just leave the

17  interview room or wherever the statement was taken

18  to a different location just to type up what you

19  had already recorded on your Stenograph machine?

20         A.    That's correct.

21         Q.    All right.  So let me -- and I know you

22  don't have a memory of this after reviewing it, but

23  I still want to show it to you so we can walk

24  through the exhibits.  All right?

```
 1      A.    Sure.
 2      Q.    So let me show you what's been marked
 3 as Exhibit Number 1.
 4            Do you see this here, ma'am?
 5      A.    Yeah.
 6      Q.    Okay.  This is what I referred to
 7 initially before as Exhibit Number 1.  It's a
 8 photograph -- a series of photographs of the
 9 statement that was taken.
10            If you look at the very beginning
11 of it, it says, Statement of Jaime Rios taken
12 in an interview room at Area 5 Violent Crimes,
13 Chicago Police Department, 5555 West Grand Avenue,
14 Chicago, Illinois -- Chicago, Cook County,
15 Illinois, on Friday, June 7th, 1989, at the hour
16 of 4:39 o'clock a.m.
17            And then you have present for -- it
18 says, Present:  Ms. Barbara Riley, assistant
19 state's attorney; Detective Michael Mason, Star
20 Number 12972, Area 5, Violent Crimes; Reported by
21 Janet K. Lupa, Book Number 8907-7.
22            Okay.  And I'm assuming that --
23      A.    By the way, I'm sorry to interrupt,
24 but you did say June 7th and it was actually
```

1   July 7th.

2         Q.    I'm sorry.  I did misspeak if I said

3   that.  Thank you for correcting me.

4               Based off what you see here, would

5   that have been you, the Janet K. Lupa who took this

6   statement?

7         A.    Yes.

8         Q.    Okay.  And would this be the format you

9   would do when you would type up the statement

10  outside of the interview room?

11        A.    Yes.

12        Q.    Okay.  Let's go down.  And I don't need

13  to go through the -- the specifics of it, but at

14  the bottom of page 1, there are three sets of

15  initials.  Do you see that there?

16        A.    Yes.

17        Q.    Okay.

18        A.    Yes.

19        Q.    Are any of these initials yours?

20        A.    No.

21        Q.    Okay.  And do you know why there's

22  initials at the bottom of page 1?

23        A.    Yes.  They usually do that to show that

24  they have finished the page, the --

1      Q.    When you say "they," are you talking

2  about the different participants in the statement?

3      A.    Correct.

4      Q.    Okay.  On page 2 of that exhibit, once

5  again, those are the same -- when you see the

6  markings at the bottom, that would be consistent

7  with what your normal practice was, that someone

8  would initial the bottom of the participants in the

9  statement; is that correct?

10      A.    Yes.

11      Q.    Okay.  At the very bottom, we have here

12  witness signature -- a witness's signature and we

13  have Jamie Rios, Barbara Riley, and Mike Mason.

14              Is this the standard format when you

15  did your statements, when you typed up the court-

16  reported statements, that you have signature spots

17  for all the participants in the statement?

18      A.    Yes.

19      Q.    Okay.  Was it your standard practice

20  that you yourself did not sign the statement?

21      A.    Yes.

22      Q.    Okay.  By reviewing Exhibit Number 1,

23  can you confirm that this was in fact the statement

24  that you took on July 7th, 1989 at 4:30 a.m. at

```
 1   Area 5, Violent Crimes?
 2        A.    Yes.
 3        Q.    Okay.  And to know the names of the
 4   participants in the statement, including the person
 5   giving the statement and the witnesses to the
 6   statement, where did you get that information from?
 7        A.    Well, the state's attorney usually
 8   gives me the name of the deponent and the name of
 9   the fatal shooting of, in this case, Morales, and
10   then Michael Mason was a detective there.
11        Q.    Okay.  Did you know Michael Mason?
12        A.    From working with him.
13        Q.    Okay.  Would you consider yourself
14   friends with Michael Mason now?
15        A.    No.
16        Q.    Did you consider him a friend back then
17   in 1989?
18        A.    No.
19        Q.    Okay.  So it's fair to say he was just
20   a person you recognized the name, maybe recognized
21   the face, as someone you dealt with when you came
22   to take court-reported statements?
23        A.    That is correct.
24        Q.    Okay.  Let me show you what I've marked
```

1   as Exhibit Number 2.

2            Okay.  Can you see that, ma'am?

3        A.    Yes.

4        Q.    Okay.  It's a -- the first page there

5   is a photograph and it's also -- it's marked as a

6   People's exhibit in the criminal case.

7            Does that picture ring a bell as to

8   what Jaime Rios looked like back in 1989?

9        A.    No.

10       Q.    Okay.  There's a closeup of it.  Then

11  after the first page is where we have the backside

12  here.  It says, Picture taken by J. Lupa, A-5,

13  7-7-89 at 6:10 a.m., Witnesses, and then there's

14  three signatures, Barbara Riley, Detective Michael

15  Mason, and Jaime Rios.

16           Is any of that handwriting yours,

17  ma'am?

18       A.    That is all mine except for the

19  signatures.

20       Q.    Okay.  And when you put the time on

21  that picture, was that the time you were actually

22  taking the photograph?

23       A.    Yes.

24       Q.    Okay.  And then would you have the

1  people who are in the room sign the back of the

2  photograph?

3         A.    Yes.

4         Q.    Okay.  So based off your practice,

5  ma'am, this photograph with the sticker on the

6  back, going back to page 1, is this how Mr. Rios

7  appeared at 6:10 a.m. on the night he gave his

8  statement?

9         A.    Yes.  That is the picture I took.

10        Q.    Okay.  This may sound like a silly

11 question, but, ma'am, would you ever type up a

12 statement for a person if the person did not

13 actually speak those words and gave that statement?

14        A.    What?

15        Q.    I'm sorry.  I'm trying -- would you

16 ever type up a statement like this without actually

17 being present for the person giving that statement?

18        A.    Of course not.  I ...

19        Q.    I just had to ask the question, ma'am.

20              Do you recall Barbara Riley?

21        A.    No.

22        MR. ENGQUIST:  All right.  Actually, I think

23 that's all I have.  I'm just going to take a quick

24 break.  I want to talk to my co-defense counsels,

```
 1   make sure I don't have anything to clean up, and
 2   then I'll pass the torch.
 3          THE WITNESS:  Okay.
 4          MR. ENGQUIST:  Just a couple-minute break.
 5                    (Recess taken.)
 6          MR. ENGQUIST:  Okay.  That's all I have for
 7   today, Ms. Lupa.  I appreciate it.
 8               Mr. Schalka, Ms. Carney, do you have
 9   anything?
10          MS. CARNEY:  The City doesn't have any
11   questions.  Thank you, Ms. Lupa.
12          THE WITNESS:  Thank you.
13          MR. SCHALKA:  I don't have any questions
14   either.
15          MR. ENGQUIST:  Mr. Richards, do you have any?
16          MR. RICHARDS:  Just a few.
17                    EXAMINATION
18   BY MR. RICHARDS:
19          Q.    Back in 1989 when you would go to these
20   station visits, did you wear any sort of ID badge?
21          A.    No.
22          Q.    When you went to these station visits,
23   were you dressed in professional attire?
24          A.    Not at 4:30 in the morning.
```

1      Q.    What would be your typical dress when

2   taking one of these court-reported statements?

3      A.    Jeans, a shirt.

4      Q.    When you took one of these court --

5   when you took these court-reported statements, did

6   you sort of do it like a deposition where you swear

7   in the witness?

8      A.    No.

9      Q.    And when you said when you arrived --

10  and just to be clear, the people on that first page

11  of the exhibit of that recorded statement where it

12  says basically the people who were there, those are

13  people who are just inside the room, correct?  It's

14  not like everyone at the station house.

15     A.    Correct.

16     Q.    Did you make any notes of -- in 1989

17  would you make any notes as to who else was at the

18  station house or who else was involved in the case?

19     A.    No.

20     Q.    And did you use a tape recorder to also

21  record the statement or did you just use your

22  stenography device?

23     A.    Just my stenography device, my court

24  reporting machine.

```
 1        Q.    And I believe -- and in 1989, the --
 2   those machines didn't have extra features like a
 3   recorder built in?
 4        A.    No.
 5        MR. RICHARDS:  Nothing further.
 6        MR. ENGQUIST:  Couple quick followup, Ms. Lupa.
 7                  FURTHER EXAMINATION
 8   BY MR. ENGQUIST:
 9        Q.    When you were in this room, based on
10   what you've seen here, when you were taking the
11   statement you said you were sitting in between the
12   person asking the questions and THE person giving
13   the answers; is that correct?
14        A.    That's correct.
15        Q.    Okay.  And when you were sitting there,
16   even if you weren't in professional attire at 4:30
17   in the morning, you would have your Stenograph
18   machine directly in front of as you were typing,
19   correct?
20        A.    Correct.
21        Q.    Okay.  In plain view of the person
22   answering the questions, correct?
23        A.    Correct.
24        Q.    And when you went through this and
```

1  typed up the statement, you were typing up word for

2  word what was said in that room, correct?

3       A.    Correct.

4       Q.    You wouldn't make any edits or

5  corrections or changes on anyone's behest when you

6  were typing this up, would you?

7       A.    No.

8       MR. ENGQUIST:  Okay.  That's all I have.

9            Ms. Carney?  Mr. Schalka?

10      MS. CARNEY:  Still nothing from me.

11      MR. ENGQUIST:  Mr. Richards?

12      MR. RICHARDS:  Just a few quick follow-ups

13  based on that.

14                FURTHER EXAMINATION

15  BY MR. RICHARDS:

16      Q.    So the -- was the stenography machine

17  usually in plain view of the person?

18      A.    Yes.

19      Q.    And was it your practice -- how did you

20  introduce yourself, if you did?

21      A.    I didn't.

22      MR. RICHARDS:  Nothing further.

23      MR. ENGQUIST:  Nothing based off that for me.

24            Ms. Carney?

```
 1        MS. CARNEY:  Still nothing.

 2        MR. ENGQUIST:  Mr. Schalka?

 3        MR. SCHALKA:  Nothing from me.

 4        MR. ENGQUIST:  Okay.  Then I think we're all

 5   done.

 6                  Before we get off the record,

 7   Ms. Lupa, your options now are to waive or reserve.

 8   If you need me to explain that I will, but it's up

 9   to you if you want to waive your signature or

10   reserve your signature.

11        THE WITNESS:  I will waive my signature.

12        MR. ENGQUIST:  Thank you very much, Ms. Lupa.

13   I appreciate your time in this.

14                  And when it does get typed up, if

15   you want a copy sent to you, I'll be happy to send

16   it to you.

17        THE WITNESS:  No.

18        MR. ENGQUIST:  Okay.  That's fine too.  Thank

19   you so much, Ms. Lupa.

20                      (The proceedings adjourned at

21                       12:54 p.m.)

22

23

24
```

REPORTER'S CERTIFICATE

I, Kathleen A. Hillgard, do hereby certify that JANET LUPA was duly sworn to testify the whole truth, that the foregoing deposition was recorded stenographically by us and was reduced to computerized transcript under my direction, and that said deposition constitutes a true record of the testimony given by said witness.

I further certify that the reading and signing of the deposition was waived by the deponent.

I further certify that I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I have hereunto set my hand of office at Chicago, Illinois, this 11th day of October 2023.

_____
Illinois CSR No. 084-004093

JANET LUPA, 09/25/2023

**Exhibits**

**1 Lupa 092523-1** 12:3,7 14:22

**2 Lupa 092523-2** 16:1

**0**

**02** 8:4

**1**

**1** 12:3,7 13:14,22 14:22 17:6

**12972** 12:20

**12:54** 22:21

**140** 7:9

**151** 7:10

**178** 7:11

**180** 7:11

**1989** 6:9 7:8,17,18 8:5,10,13 12:15
  14:24 15:17 16:8 18:19 19:16 20:1

**2**

**2** 14:4 16:1

**25** 8:1

**26th** 10:17

**4**

**4:30** 14:24 18:24 20:16

**4:39** 12:16

**5**

**5** 12:12,20 15:1

**5555** 12:13

**6**

**6:10** 16:13 17:7

**7**

**7-7-89** 16:13

**75** 8:4

**7th** 6:9 7:7 12:15,24 13:1 14:24

**8**

**8907-7** 12:21

**A**

**A-5** 16:12

**a.m.** 12:16 14:24 16:13 17:7

**adjourned** 22:20

**answering** 11:2 20:22

**answers** 4:18 5:5 20:13

**anyone's** 21:5

**appeared** 17:7

**appointment** 7:19

**approximately** 9:13

**area** 9:3 12:12,20 15:1

**arrived** 19:9

**assistant** 12:18

**assume** 6:5

**assuming** 12:22

**attached** 6:10

**attire** 18:23 20:16

**attorney** 10:8,21 12:19 15:7

**Attorney's** 8:10,14 9:12,19

**Avenue** 12:13

**aware** 7:3

**B**

**back** 7:16,18 8:5,10,12 10:15,17
  15:16 16:8 17:1,6 18:19

**backside** 16:11

**badge** 18:20

**Barbara** 12:18 14:13 16:14 17:20

**based** 13:4 17:4 20:9 21:13,23

**basically** 19:12

**Bates** 7:9

**beginning** 12:10

**behest** 21:5

**bell** 16:7

**Book** 12:21

**bottom** 13:14,22 14:6,8,11

**break** 5:13,14,17 17:24 18:4

**built** 20:3

**bullpen** 11:13

**C**

**California** 10:17

**call** 8:16 9:7,18

**called** 4:9 9:1,2,24 10:3

**Carney** 18:8,10 21:9,10,24 22:1

**case** 15:9 16:6 19:18

**certified** 7:21,24

**chance** 6:11

**Chicago** 12:13,14

**City** 18:10

**clean** 18:1

**clear** 6:18 11:10 19:10

**closeup** 16:10

**co-defense** 17:24

**complete** 11:10

**confirm** 14:23

**consistent** 14:6

**contest** 5:12

**Cook** 8:6,9,13 9:11,19 12:14

**copies** 10:16

**copy** 6:8,10,14 22:15

**correct** 8:5,7 9:6 11:20 14:3,9
  15:23 19:13,15 20:13,14,19,20,22,
  23 21:2,3

**correcting** 13:3

**corrections** 21:5

**counsels** 17:24

**County** 8:6,9,14 9:11,19 12:14

**couple** 10:16 20:6

**couple-minute** 18:4

JANET LUPA, 09/25/2023

**court** 4:24 5:3 8:18 19:4,23

**court-** 6:8 14:15

**court-reported** 4:14 7:14 9:3,13 15:22 19:2,5

**Crimes** 12:12,20 15:1

**criminal** 16:6

**D**

**dealt** 15:21

**Department** 12:13

**deponent** 10:11,14 15:8

**deposition** 4:6,15 6:8,16 10:2 19:6

**depositions** 8:15

**detective** 9:3 10:10,21 12:19 15:10 16:14

**device** 19:22,23

**directly** 8:6 20:18

**documents** 7:2

**dress** 19:1

**dressed** 18:23

**duly** 4:9

**duties** 8:12 9:5

**E**

**edification** 7:8

**edits** 21:4

**employment** 7:18,20

**endurance** 5:12

**ENGQUIST** 4:2,5,12 17:22 18:4,6, 15 20:6,8 21:8,11,23 22:2,4,12,18

**entitled** 5:19

**everyone's** 7:8

**EXAMINATION** 4:11 18:17 20:7 21:14

**examined** 4:10

**exhibit** 8:22 12:3,7 14:4,22 16:1,6 19:11

**exhibits** 11:24

**expect** 5:10

**explain** 22:8

**extra** 20:2

**F**

**face** 15:21

**fact** 14:23

**fair** 6:5,6 15:19

**familiar** 4:13

**fast** 5:22

**fatal** 15:9

**features** 20:2

**felony** 8:16

**find** 6:13

**fine** 22:18

**finished** 13:24

**follow-ups** 21:12

**followup** 20:6

**foremost** 4:18

**format** 13:8 14:14

**Friday** 12:15

**friend** 15:16

**friends** 15:14

**front** 6:21 20:18

**G**

**gave** 17:7,13

**give** 7:17 8:24

**giving** 10:2,22 15:5 17:17 20:12

**Grand** 12:13

**ground** 4:16

**guess** 11:3

**H**

**hand** 10:8

**handwriting** 16:16

**happy** 22:15

**head** 4:22

**homicides** 8:16

**hour** 12:15

**house** 19:14,18

**Hundreds** 9:15

**I**

**ID** 18:20

**idea** 4:14 7:17

**Illinois** 12:14,15

**including** 15:4

**information** 10:3 15:6

**initial** 14:8

**initially** 7:9 12:7

**initials** 13:15,19,22

**inside** 19:13

**interrupt** 12:23

**interview** 10:4,9 11:17 12:12 13:10

**introduce** 21:20

**involved** 19:18

**ipad** 6:22

**items** 7:12

**J**

**Jaime** 12:11 16:8,15

**Jamie** 14:13

**Janet** 4:4,8 12:21 13:5

**Jeans** 19:3

**JGS** 7:9,11

**job** 7:20 9:5

**July** 6:9 7:7 8:10,13 13:1 14:24

**June** 12:15,24

**L**

**L-U-P-A** 4:4

**leave** 11:11,16

**legal** 8:19

**location** 11:18

JANET LUPA, 09/25/2023

**long** 5:10,11

**looked** 16:8

**loud** 4:19

**Lupa** 4:4,6,8,13 5:13 6:7 7:6,13 12:21 13:5 16:12 18:7,11 20:6 22:7,12,19

---

**M**

**machine** 11:4,19 19:24 20:18 21:16

**machines** 20:2

**make** 8:19 10:16 18:1 19:16,17 21:4

**making** 5:22

**marked** 7:11 12:2 15:24 16:5

**markings** 14:6

**Mason** 12:19 14:13 15:10,11,14 16:15

**matter** 5:11

**memory** 11:22

**Michael** 12:19 15:10,11,14 16:14

**Mike** 14:13

**mine** 16:18

**misspeak** 13:2

**Morales** 15:9

**morning** 18:24 20:17

---

**N**

**names** 10:2 15:3

**nature** 4:23

**night** 8:17 17:7

**Nodding** 4:22

**normal** 14:7

**notes** 19:16,17

**notice** 4:7

**Number** 12:3,7,20,21 14:22 16:1

---

**O**

**office** 8:10,14 9:12,20 10:18 11:14

**options** 22:7

**oral** 4:19

**original** 10:17

---

**P**

**p.m.** 22:21

**participants** 14:2,8,17 15:4

**pass** 18:2

**pending** 5:16

**people** 17:1 19:10,12,13

**People's** 16:6

**person** 10:2,22 11:1 15:4,20 17:12,17 20:12,21 21:17

**photograph** 6:10 7:10 12:8 16:5, 22 17:2,5

**photographs** 12:8

**picture** 10:13,15 16:7,12,21 17:9

**place** 7:16

**plain** 20:21 21:17

**police** 9:1,14,18 12:13

**practice** 9:17,22 14:7,19 17:4 21:19

**preparation** 6:16

**present** 10:21 12:17,18 17:17

**pretty** 5:7

**prior** 6:7

**proceedings** 22:20

**professional** 18:23 20:16

**pull** 8:21

**pursuant** 4:6

**put** 10:14 16:20

---

**Q**

**question** 5:19,21 6:2,4 17:11,19

**question's** 5:16

**questions** 5:7,23 7:4 11:1,2 18:11, 13 20:12,22

**quick** 17:23 20:6 21:12

---

**R**

**reason** 5:13

**recall** 9:10,12 17:20

**recess** 18:5

**recognized** 15:20

**recollection** 7:13

**record** 4:3,5 8:19 19:21 22:6

**recorded** 11:19 19:11

**recorder** 19:20 20:3

**referred** 12:6

**reflect** 4:5

**refresh** 7:13

**remember** 5:3

**repeat** 5:24

**rephrase** 5:24

**reported** 6:9 12:20 14:16

**reporter** 5:4 7:22,24

**reporter's** 4:24

**reporters** 8:19

**reporting** 19:24

**reserve** 22:7,10

**respects** 4:15

**responding** 9:17

**review** 6:11,15

**reviewing** 7:6 11:22 14:22

**Richards** 18:15,16,18 20:5 21:11, 12,15,22

**Riley** 12:18 14:13 16:14 17:20

**ring** 16:7

**Rios** 7:9,11 12:11 14:13 16:8,15 17:6

**room** 10:4,9,20 11:11,17 12:12 13:10 17:1 19:13 20:9 21:2

**roughly** 8:3

**rules** 4:16

**run** 5:7

JANET LUPA, 09/25/2023

## S

**sake** 4:24
**Schalka** 18:8,13 21:9 22:2,3
**send** 6:14 22:15
**sense** 5:22
**series** 12:8
**services** 9:18
**set** 10:24 11:15
**sets** 13:14
**share** 8:22
**shirt** 19:3
**shooting** 15:9
**shorthand** 7:21,24
**shoulders** 4:23
**show** 10:15 11:23 12:2 13:23 15:24
**shrugging** 4:22
**sign** 14:20 17:1
**signature** 14:12,16 22:9,10,11
**signatures** 16:14,19
**silly** 17:10
**sitting** 6:19 20:11,15
**slow** 5:24
**smoothly** 5:7
**someone's** 11:14
**sort** 18:20 19:6
**sound** 17:10
**speak** 5:5,6 17:13
**speaking** 5:21 6:22
**specifically** 8:9
**specifics** 13:13
**spell** 4:3
**spots** 14:16
**stamped** 7:9
**standard** 9:17,22 14:14,19
**Star** 12:19
**state** 4:2

**state's** 8:9,14 9:11,19 10:8,20 12:19 15:7
**statement** 4:14 6:9 7:7,14 9:3 10:5,20,22 11:10,17 12:9,11 13:6,9 14:2,9,17,20,23 15:4,5,6 17:8,12, 13,16,17 19:11,21 20:11 21:1
**statements** 9:13 14:15,16 15:22 19:2,5
**station** 8:18 9:14,19 10:1 18:20,22 19:14,18
**Stenograph** 11:5,19 20:17
**stenographer** 11:4
**stenography** 19:22,23 21:16
**sticker** 10:14 17:5
**subpoena** 4:7
**swear** 19:6
**sworn** 4:1,10

## T

**takes** 5:12
**taking** 16:22 19:2 20:10
**talk** 17:24
**talking** 9:2,4 14:1
**tape** 19:20
**testified** 4:10
**thing** 5:15
**things** 4:23
**time** 5:4 10:15 16:20,21 22:13
**today** 6:13,16 18:7
**today's** 6:8
**Tonet** 6:14
**torch** 18:2
**transcript** 7:7
**type** 10:6,7 11:11,12,18 13:9 17:11,16
**typed** 14:15 21:1 22:14
**typewriter** 11:15
**typical** 19:1
**typing** 20:18 21:1,6

## U

**unclear** 5:22
**understand** 5:20,21 6:1
**understood** 6:5
**unit** 8:16

## V

**view** 20:21 21:17
**Violent** 12:12,20 15:1
**visits** 18:20,22
**voice** 5:4

## W

**waive** 22:7,9,11
**walk** 11:23
**wear** 18:20
**West** 12:13
**witness's** 14:12
**witnesses** 15:5 16:13
**word** 21:1,2
**words** 17:13
**work** 7:23
**worked** 8:6
**working** 8:9,13 9:11 15:12

## Y

**year** 8:2
**years** 7:23 8:1 9:11

## Z

**Zoom** 6:18