IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAIME RIOS

    Plaintiff,

        vs.                            Case No. 1:22-cv-03973

REYNALDO GUEVARA
MICHAEL MASON
JOANN HALVORSEN AS
SPECIAL REPRESENTATIVE FOR
ERNEST HALVORSEN, DECEASED
CITY OF CHICAGO

    Defendants.                             JURY TRIAL DEMANDED

    Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUES OF WHETHER DEFENDANT REYNALDO GUEVARA BEAT CRISTINO GARCIA WITH A PHONEBOOK AND A BILLYCLUB OR FLASHLIGHT AND CONCEALED THAT INFORMATION FROM PROSECUTORS, AS TO WHETHER THAT INFORMATION COULD HAVE BEEN DISCOVERED WITH REASONABLE DILIGENCE, AND AS TO WHETHER IT WAS MATERIAL**

Plaintiff, Jaime Rios, by and through his attorneys, Stephen L. Richards and Joshua S.M. Richards submits the following memorandum of law in support of his motion for judgment, as a matter of law against defendant Reynaldo Guevara on the issues of whether: (1) Reynaldo Guevara beat Cristino Garcia with a phonebook and a billyclub or flashlight, (2) Reynaldo Guevara concealed that information from prosecutors, (3) that information could not have been discovered with reasonable diligence, and (4) whether that information was material. Jaime Rios

1

asks that the court resolve some or all of these issues against defendant Reynaldo Guevara and/or grant judgment as a matter of law on Count XII of the complaint.

## INTRODUCTION

Prior to trial, Jaime Rios moved for partial summary judgment on Counts XI [1] and XII of the complaint. (Dkt ## 109, 113, 130). Defendant Reynaldo Guevara responded in opposition to the motion. (Dkt ## 122, 123, 128). Jaime Rios replied. (Dkt # 132). Guevara filed a sur-reply. (Dkt # 150). The court denied the motion for partial summary judgment. (Dkt # 215, 13-21).

With respect to Count XII, this court ruled that summary judgment was not appropriate because Aubrey O'Quinn, who Garcia identified as a witness to the bearing gave a declaration in which he stated that he never witnessed Guevara hitting a suspect. (Dkt # 215, 21).

## FACTS AT THIS TRIAL

With respect to Count XII, the following facts have been adduced.

Cristino Garcia testified that in July of 1989, he was arrested by "Detective" O'Quinn and taken to the police station at Grand and Central. (R. 121-22).

Garcia testified that at Grand and Central he was placed in an interrogation room. Guevara accused him of the murder. When Garcia denied it, Reynaldo Guevara "slapped" Garcia "around," by placing a phonebook on Garcia's head and hitting Garcia on his head. (R. 122).

Garcia further described the beating as follows:

> "Well, he was putting the phone book on my head and hitting me downward with a flashlight, a steel big flashlight. And I had told him to stop, that I would sign the paper if you
> let me make a phone call. And I went to call my sister, and I told her where was I at and what was going on and she told me not to sign no paper and she would send a lawyer.
> The police officers were listening to me on the phone and they told me to

---

[1] Jaime Rios acknowledges that as to Count XI, the claim that Guevara concealed Garcia's alibi, there is now an issue of fact because Garcia testified inconsistently as to whether Guevara was present when Garcia gave the alibi to Aubrey O'Quinn, so that judgment under Rule 50 would not be appropriate.

hang up, and then they threw me back in the bullpen -- not the bullpen, interrogation room, put me back in there, and proceeded with their slapping me across the face and hitting me over the head with the Billy club and the phone book."

(R. 124).

Garcia described Reynaldo Guevara as a male Hispanic who wore glasses, was slightly heavyset, and wore a gold ring with an Indian on it. (R. 127).

Karen Shields, one of Jaime Rios's public defenders at his trial, testified that if a prosecutor had told her that an alleged accomplice of Jaime Rios had been beaten with phonebooks, that was something she would have wanted to investigate. During the course of the Jaime Rios prosecution, the prosecutors never told her anything like that. (R. 224). Nor did she remember any family member of Cristino Garcia telling her about the beating. (R.

Karen Shields testified that Cristino Garcia was listed as a prosecution witness on the State's answer to discovery. (R. 225-26).

Karen Shields testified that at the time of Jaime Rios's trial, it was difficult to interview prosecution witnesses. She testified that when public defender investigators interviewed prosecution witnesses, prosecutors always brought up the issue in court and claimed "they shouldn't be talking to our witnesses." (R. 221). Because of this opposition, the practice of interviewing prosecution witnesses was "frowned on." (R. 222).

Karen Shields agreed that there would have been particular "obstacles and dangers" to interviewing an alleged accomplice in a murder case, including the danger of an accomplice, who had been named in the defendant's statement, "flipping on," or giving unfavorable information about the defendant. (R. 225).

Reynaldo Guevara has taken the fifth with respect to the following facts.

On July 28, 1989, Reynaldo Guevara was at Area 5 at approximately 4:00 p.m. when

3

Cristino Garcia was brought to the station by gang specialists O'Quinn and Mertes. He does not have an alibi for the time when Cristino Garcia was interrogated. (R. 1785).

On July 28, 1989, Guevara interrogated Cristino Garcia about the Luis Morales murder investigation. A Hispanic woman dressed in a suit and vest was present when he interrogated Cristino Garcia. Cristino Garcia refused to say that he was present for or had participated in the murder. (R. 1786).

When Cristino Garcia refused to say anything about the murder and denied involvement, Guevara placed a large phone book on Garcia's head and beat him by striking the phone book with a billy club or a flashlight through the phone book. (R. 1786).

Cristino Garcia then told Guevara that he would give you a statement if Guevara let him make a phone call. He let Cristino Garcia make the phone call, (E. 1787).

Guevara heard Cristino Garcia sister tell Cristino Garcia not to say anything and that a lawyer was on the way to the station. (R. 1787).

After Guevara overheard this conversation, he again beat Cristino Garcia with a flashlight or the billy club and the phone book. He stopped when he was told that Cristino Garcia's lawyer had arrived at the station. (R. 1787).

Guevara never told any state's attorney that he had beat Cristino Garcia with a billy club and the phone book and that Cristino Garcia had refused to make a statement. (R. 1788).

Although the trial evidence is not easy to summarize, the following points about it may be made: (1) Jaime Rios testified at trial and denied committing the murder, (2) Jaime Rios testified that Reynaldo Guevara was present when Michael Mason pulled Jaime Rios's hair and slammed his head into a table, (2) Jaime Rios testified that Reynaldo Guevara threatened to take his children, (3) Jaime Rios testified that his court reported statement was false (4) the defense

4

introduced evidence that Aubrey O'Quinn had arrested Cristino Garcia and taken him to Area 5, (5) Michael Mason and Reynaldo Guevara testified at trial and denied the allegations of coercion and mistreatment, (6) Luis Huertas, an eyewitness, identified Jaime Rios as the murderer, (7) there was evidence that another suspect, Jose "Macho" Melendez, had originally been identified as the murderer, (8) Benjamin Carrero testified that on the night of the murder, Jaime Rios had given him a gun, recanted his grand jury testimony that Rios had said Rios had just shot someone, and was impeached with his grand jury testimony, admitted as substantive evidence, and (9) no physical or forensic evidence linked Jaime Rios to the crime.

## ARGUMENT

Under Federal Rule of Civil Procedure Rule 50(a):

(a) Judgment as a Matter of Law.

(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment."

A court may enter judgment as a matter of law (JMOL) against a party who "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "A legally sufficient amount of evidence need not be overwhelming, but it must be

5

more than a 'mere scintilla.'" *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004) (quoting *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000)). A motion for JMOL "may be made at any time before the case is submitted to the jury" and must "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).

The reviewing standard "'mirrors'" that for summary judgment, such that "'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). The question is thus "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff," who bears the "onus of proof," "is entitled to a verdict." *Anderson*, 477 U.S. at 252 (citation and internal quotation marks omitted).

A motion for JMOL can apply to a *Brady* claim. See *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019)(holding that *Brady* violation had been established but that plaintiff had not established that defendant had conspired to violate *Brady*).

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, due process requires that the government "disclose evidence materially favorable to the accused," including both exculpatory and impeachment evidence. *Youngblood v. West Virginia*, 547 U.S. 867 (2006) (per curiam); *Giglio v. United States*, 405 U.S. 150 (1972). *Brady* applies to prosecutors and police officers alike. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). When assessing a Brady claim, the court asks whether: (1) evidence was suppressed; (2) it was favorable to the defense; and (3) it was material. *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). Where evidence was available to a criminal defendant through the exercise of reasonable diligence, it has not been suppressed within the meaning of *Brady*. See, e.g., *United States v. Earnest*, 129 F.3d 906, 910 (7th Cir.

1997).

Regarding materiality, "'[e]vidence qualifies as material when there is 'any reasonable likelihood' it could have 'affected the judgment of the jury.'" *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (quoting *Giglio*, 405 U.S. at 154; *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). A litigant "need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted. He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." Id. (citing *Smith v. Cain*, 132 S. Ct. 627, 629-31 (2012)); see also *Kyles*, 514 U.S. at 434. The question as to whether suppressed evidence was material depends on the strength of other evidence used in the criminal proceedings—it might take only a little evidence to disturb an already-weak conviction. *United States v. Agurs*, 427 U.S. 97, 113 (1976).

Here, points 1. and 2. (suppression and favorability) have been established through the unrebutted testimony of Cristino Garcia and Karen Shields. As to point 3., (materiality) given the trial evidence, no reasonable jury could conclude that there was no reasonable likelihood of a different outcome.

The motion for summary judgment was denied on this claim because the defendant introduced a series of declarations by Aubrey O'Quinn in which he stated that he had never witnessed Reynaldo Guevara beat a suspect. (Dkts # 122, 128, 128-10). Had Aubrey O'Quinn testified in the defense case here, Rule 50 would not apply and there would be no motion. However, Aubrey O'Quinn did not testify.

There is therefore no question that Reynaldo Guevara suppressed evidence that Cristino Garcia denied committing the murder. There is also no question that Guevara suppressed evidence that he beat Cristino Garcia in an attempt to get Cristino Garcia to falsely implicate

7

Jaime Rios.

Karen Shields's unrebutted testimony as to the reasons that she did not attempt to interview Cristino Garcia establish that the evidence could not have been discovered by the exercise of reasonable diligence. (R. 221, 222, 225). Moreover, defense witness Anthony Carballo's testimony that he did not interview Garcia because Garcia's invocation of his right to silence would have made such an interview "unethical," while dubious, is further evidence that the evidence could not have been uncovered by the exercise of reasonable diligence.

Therefore, at a minimum, under Rule 50(a)(1)(A), this court should resolve these two issues against defendant Guevara and instruct the jury that it has been established that the evidence was suppressed, and the jury should only consider the third issue, whether the suppressed evidence was material.

Given the trial evidence, this court should also grant JMOL on this claim altogether. No reasonable jury could conclude that there is no reasonable likelihood that the outcome of the trial would have been different if the jury had known that Garcia was denying involvement and that Guevara had beat Garcia in an unsuccessful attempt to get him to implicate Jaime Rios. This evidence would have undermined the linchpin of the prosecution's case – the credibility of the court reported statement.

Therefore, the Rule 50 motion should be granted on this claim, and this court should order a trial on damages only with respect to those claims.

                                                              Respectfully Submitted,

                                                              JAIME RIOS

By and through

/s/ Stephen L. Richards

By: Stephen L. Richards Attorney for Plaintiff
53 West Jackson
Suite 756
Chicago, IL 60604
773-817-6927
sricha5461@aol.com Attorney No: 6191946

## CERTIFICATE OF SERVICE

Stephen L. Richards certifies that on February 18, 2026 he served **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUES OF WHETHER DEFENDANT REYNALDO GUEVARA BEAT CRISTINO GARCIA WITH A PHONEBOOK AND A BILLYCLUB OR FLASHLIGHT AND CONCEALED THAT INFORMATION FROM PROSECUTORS, AS TO WHETHER THAT INFORMATION COULD HAVE BEEN DISCOVERED WITH REASONABLE DILIGENCE, AND AS TO WHETHER IT WAS MATERIAL** through the ECF filing system.

*/s/ Stephen L. Richards*
By: Stephen L. Richards
Attorney for Plaintiff
53 W. Jackson, Suite 756
Chicago, IL 60604
(773) 817-6927
sricha5461@aol.com
Attorney No: 6191946