IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAIME RIOS, ) | |
| ) | Case No. 22 CV 3973 |
| Plaintiff, ) | |
| ) | Judge Jeremy Daniel |
| vs. ) | |
| ) | |
| REYNALDO GUEVARA, MICHAEL MASON, ) | |
| ERNEST HALVORSEN, CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## **DEFENDANT GUEVARA'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

NOW COMES Defendant, REYNALDO GUEVARA, by and through his attorneys, Timothy P. Scahill and Graham P. Miller of BORKAN & SCAHILL, LTD., and pursuant to Fed. R. Civ. P. 50(a)(2), moves for Judgment as a Matter of Law. In support thereof, Guevara states as follows:

### INTRODUCTION

It is clear from the conclusion of the presentation of evidence in this case that Defendant Guevara is entitled to judgment as a matter of law on several of Plaintiff Jaime Rios' remaining claims. Specifically, Plaintiff has failed to proffer evidence sufficient for a jury to return a verdict for him on Counts II (Fabrication of Confidential Informants), X (Fabrication of Carrero's Testimony), XI (Suppressing Garcia's Alleged Alibi), XII (Suppressing the Alleged Physical Abuse of Garcia), and XIII (Malicious Prosecution). Moreover, Guevara is entitled to Qualified Immunity on these claims. Accordingly, Guevara must be granted judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on these five claims.

1

**STANDARD**

A directed verdict should be entered when "under the governing law, there can be but one reasonable conclusion as to the verdict" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). Pursuant to Federal Rule of Civil Procedure 50(a) "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. Fed. R. Civ. P. 50(a). Regarding how judges should consider this type of motion, the Supreme Court poignantly stated as follows:

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Anderson*, 477 U.S. at 251 (citations omitted). Finally, the question of Qualified Immunity is a question of law for the trial court to resolve, not for the jury. *Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir. 1988).

**ARGUMENT**

I. **Guevara Is Entitled to Judgment As A Matter of Law On The Remainder of Count II Because Plaintiff Has Proffered No Evidence That The Information Provided By the Confidential Informants Was Fabricated.**

In Count II of Plaintiff's Amended Complaint, Plaintiff alleges that Guevara fabricated the existence of and information provided by the two confidential informants that told him (and Gang Specialist Stephen Gawrys and Defendant Detective Michael Mason) that Plaintiff and Christino

2

"Tino" Garcia were responsible for the murder of Luis Morales. Ex. A (2nd Amend. Compl.) at Ct. II. Plaintiff claims this alleged fabrication violated his 14th Amendment right to a fair trial. *Id*. After Plaintiff's counsel revealed for the first time during trial that he had information about the identity of these confidential, yet failed to disclose any such information to Defendants during discovery, this Court dismissed as a discovery sanction the part of Plaintiff's claim in Count II that alleged the existence of the confidential informants was fabricated, but permitted Plaintiff to proceed on his claim that *the information* provided by these informants was fabricated. Dckt. # 328. However, at trial, Plaintiff offered no competent evidence to establish that the information provided by these informants was fabricated, that the information violated a *trial* right outside Guevara's absolute testimonial immunity, or that such evidence was material to Plaintiff's conviction. Finally, if not entitled to absolute immunity, Guevara is entitled to Qualified Immunity on this claim.

At the outset, Plaintiff has put on no affirmative evidence to establish the information that Plaintiff and Tino were involved in the shooting of Morales was fabricated. Instead, on adverse direct examination of Defendant Michael Mason, Plaintiff elicited testimony from Detective Mason that Guevara had brought the informants to Detective Mason and that Detective Mason had personally met and spoke with the two confidential informants on July 6, 1989 and again on July 9, 1989. Tr. at 774:20-774:23, 779:4.[1] Detective Mason testified that the informants told *him* directly that they were getting information that Jaime Rios and Tino were responsible for the shooting on 1440 N. Leavitt. Tr. at 779:9-779:22. Guevara's partner, Steven Gawrys, also testified that he personally spoke with the confidential informants. Tr. at 1943:4-1943:10. Thus, this evidence corroborates the existence of the confidential informants and the information they told Guevara about Rios.

---

[1] Reference to the trial record in this case is designated as "Tr. at X."

3

At Plaintiff's criminal trial, Guevara testified that during the investigation of the murder of Luis Morales, he spoke with several individuals on the street, two of whom were confidential informants he had worked with in the past, and who told him they had heard Plaintiff and Tino were involved in the shooting of Luis Morales. Tr. 393:7-394:5, 401:13-403:9. While Plaintiff presumably maintains that the information the confidential informants heard on the street and communicated to Guevara was false (since he claims he was not involved in the shooting), he has produced no evidence to suggest Guevara was not told this by the confidential informants. In fact, a portion of Plaintiff's criminal defense attorneys' cross examination of Guevara pursued the theory that these informants were part of a rival gang, that such informants often lie, and that the informants' information was secondhand or thirdhand, they were not on the scene at all. Tr. 401:13-403:9. In sum, there is evidence in this trial from three separate individuals that all say they spoke with the two confidential informants and those informants stated they had heard Plaintiff was involved in the shooting. Plaintiff has introduced no evidence that, even if false, the confidential informants' information was fabricated such that a reasonable jury could find a violation by Guevara of Plaintiff's Fourteenth Amendment rights.

Guevara is also entitled to judgment as a matter of law because the only evidence Guevara supplied at trial related to the confidential informants was his testimony, for which Guevara is subject to absolute immunity for any such acts. *Briscoe v. LaHue*, 460 U.S. 325, 332 (1983); *see also Knox v. Curtis*, 771 Fed. Appx. 656, 657-58 (7th Cir. 2019); *Canen v. Chapman*, 847 F.3d 407, 415 (7th Cir. 2017); *Maxson v. Dwyer*, 2017 WL 1493712, *5 (N.D. Ill. 2017).

Guevara is also entitled to judgment as a matter of law because a reasonable jury could not find that the information related to the informants was material for *Brady* purposes. Again, Guevara's testimony at Plaintiff's criminal trial was that confidential informants without personal

4

knowledge supplied the police with rumors that Plaintiff was involved in the murder. Tr. 393:7-394:5, 401:13-403:9. With respect to materiality, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Bielanski v. County of Kane*, 550 F.3d 632, 643-45 (7th Cir. 2008). "The mere possibility that an item of … information might … affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *See U.S. v. Agurs*, 427 U.S. 97, 109-10 (1976). "In performing the materiality analysis, courts are to consider the "cumulative effect" of the evidence at issue "as opposed to considering each piece alone." *Lyons v. Vill. of Woodridge*, 2011 WL 2292299, *8 (N.D. Ill. 2011); *Phillips v. Allen*, 743 F. Supp. 2d 931, 948 (N.D. Ill. 2010); *see also Agurs*, 427 U.S. at 112. The issue of whether evidence is material is a question of law for the court to decide. *See Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 350 (7th Cir. 2019)("Coleman contends the materiality of this evidence is a fact question for the jury. But the Supreme Court has ruled on Brady materiality as a matter of law, as has this court.").

Plaintiff's conviction was not premised in any way on third-hand hearsay but, rather, was supported by overwhelming direct evidence including, most significantly, the testimony of an eyewitness, Luis Huertas, who saw Plaintiff pull the trigger killing Morales. How the police landed on Plaintiff as a suspect is entirely irrelevant to his guilt at trial. Rumor information-even if false- would have no impact on the assessment of guilt given highly inculpatory eyewitness testimony. Thus, this evidence could never be material for the purposes of a Due Process claim. *See Hart v. Mannina*, 798 F.3d 578, 593 (7th Cir. 2015)(eyewitness testimony rendered uncertainty of other witness immaterial); *U.S. v. Villasenor*, 664 F.3d 673, 683 (7th Cir. 2011)(materiality not established because there was other incriminating evidence that supported conviction); *U.S. v.*

5

*Bland*, 517 F.3d 930, 934 (7th Cir. 2008)(same); *U.S. v. Wilson*, 481 F.3d 475, 478 (7th Cir. 2007)(same); *U.S. v. Baker*, 453 F.3d 419, 423 (7th Cir. 2006)(same); *Mola v. Warden*, 2020 WL 6149803, *6 (N.D. Ind. 2020)(existence of eyewitnesses established that other evidence was not material).

Finally, Guevara is entitled to qualified immunity on this claim, as it was not clearly established in 1989 that the fabrication of informants, who did not establish probable cause to arrest or to prosecute, was a constitutional violation.

II. **Guevara Is Entitled To Judgment As A Matter Of Law On Count X Because Plaintiff Has Not Established That Carrero's Allegedly Coerced Testimony Was Material.**

Count X alleges that Defendant Guevara fabricated evidence by coercing Benjamin Carrero to falsely state Jaime Rios had given Carrero a gun and told Carrero he had just shot someone. Ex. A at Ct. X. The evidence in this case is that, at Plaintiff's criminal trial, Carrero testified that Plaintiff had given him the gun, but had not told Carrero that he had shot anyone. Tr. at 591:7-591:10. However, as far as Plaintiff's fabrication claim is based on Carrero's testimony, Plaintiff has not met his burden to establish Carrero's testimony was material to his conviction. If anything, this testimony was helpful to Plaintiff. Again, "courts must consider the "cumulative effect" of the evidence at issue "as opposed to considering each piece alone." *Lyons*, 2011 WL 2292299, at *8; *Phillips*, 743 F. Supp. At 948. The specific probative value of the evidence Carrero supplied compared to the other evidence in this case establishes that the allegedly "fabricated" evidence would have had *de minimus* impact upon the confidence in the criminal verdict for the purposes of the materiality. The criminal jury heard from Carrero that Plaintiff had provided him with a .32 caliber revolver the day following the Morales murder, but specifically denied that Plaintiff had made any statements admitting that this weapon was used in any criminal activity. Tr. at 591:7-591:10. At trial, the State presented eyewitness evidence through witness Huertas that Plaintiff was

6

the shooter. The only firearm-related evidence recovered at the scene were shell casings from a .25 caliber automatic weapon. The weapon recovered from Carrero was not a .25 caliber nor a semi-automatic or automatic weapon; it was a revolver. As has been made clear to both the jury in the instant case and the jury in the underlying criminal matter, revolvers do not eject shell casings. In other words, even accepting Carrero's original statements as true, there was no evidence at the trial that the gun recovered from Carrero was the gun used to shoot Morales. On the other hand, there was a wealth of other evidence supporting Plaintiff's role in the Morales murder including the eyewitness testimony of Luis Huertas and Plaintiff's own court-reported confession. Plaintiff has offered no evidence that would suggest to a reasonable jury that Carrero's testimony would have materially changed the result of his trial in light of the strength of the other inculpatory evidence against him. Moreover, Guevara is entitled to qualified immunity on this claim because it was not clearly established in 1989 that concealment of evidence of this type would constitute a constitutional violation.

### III. Guevara Is Entitled To Judgment As A Matter Of Law On Count XI Because Plaintiff Has Not Introduced Evidence That Guevara Had Any Knowledge Of Garcia's Alibi, Nor Was Garcia's Alleged Alibi Exculpatory.

In Count XI, Plaintiff alleges that Guevara concealed exculpatory evidence: that Garcia had given Guevara an alibi. Ex. A at Ct. XI. Plaintiff alleges that had he known Garcia gave an alibi, he would have subpoenaed Garcia to testify on his behalf. There are several reasons why Plaintiff has not met his burden on this claim.

At trial in this matter, Garcia testified expressly that he never gave this alibi to Guevara. Tr. at 178:2-178:7. He gave the alibi to another officer, Officer O'Quinn, the officer who arrested him. Tr. at 178:2-178:7 (**Q. So is it your testimony that you -- that this alibi or whatever it is that we are talking about, that this is information that you gave to Mr. Guevara? A. No, I**

7

**gave it to O'Quinn. Q. You gave it to O'Quinn, not Guevara, right? A. O'Quinn**). Garcia then attempted to speculate that Guevara may have overheard the alibi (Tr. at 178:8-178:14 (Q. So you didn't even tell Mr. Guevara about this supposed alibi at all, did you? A. He heard. I think he was in the room. I believe he was in the room. Q. So it was not just you and O'Quinn when he was asking the questions? A. It was both of them, probably.), However, he later clarified that **Guevara was not present** when Garcia gave the alibi to Officer O'Quinn. Tr. at 179:9-179:12 (Q. So Mr. Guevara, as you remember it now, was not present when you were even having this discussion about this alibi, right? A. If I said that, that is the way it is). Then, when Plaintiff's counsel attempted to rehabilitate Garcia on the issue, Garcia stated he could not recall whether anyone else was present when he gave his alibi to Officer O'Quinn. Tr. at 210:19-210:24 (Q. Now, counsel asked you about the alibi you gave about ordering pizza, and I want to ask you this: Do you recall which officer you told that to? A. To O'Quinn. Q. And when you told that to O'Quinn, was anyone else around? A. I don't recall), 211:14-211:16 (Q. Do you know where Officer Guevara was when you were talking to O'Quinn about the alibi? A. No. I don't recall). No other evidence was elicited by Plaintiff supporting the claim that Guevara was even aware of this alleged alibi given by Garcia, and thus there is no legally sufficient evidentiary basis to proceed on a claim that Guevara held any such information from the prosecution.

Moreover, as was made clear during Garcia's testimony, this purported alibi was not an alibi at all. It is undisputed that the shooting and murder of Luis Morales occurred between 11:45 p.m. and midnight on June 27, 1989. Tr. at 12:24-13:14. The "alibi" that was elicited by Plaintiff's counsel on direct examination of Garcia was that on June 27, 1989, Garcia was at home with his mom and girlfriend eating pizza and rib tips for dinner. Tr. at 120:7-120:14, 142:8-142:12. But Garcia testified that he was home with his mother and girlfriend eating pizza and rib tips around

8

"dinner time," around 6:00 p.m. or 7:00 p.m. on June 27, 1989. Tr. 141:12-141:19. Garcia testified that he was not at home eating pizza and rib tips around midnight. Tr. at 143:19-143:22. Garcia testified that he could not recall whether he was home eating the pizza and rib tips with his mother and girlfriend on June 27, 1989 at 5:00 p.m. or 9:00 p.m., but he was not eating dinner at midnight that night. Tr. at 143:13-143:17. As such, this is not an alibi for the murder of Luis Morales, which occurred between 11:45 p.m. and midnight on June 27, 1989. And, had Garcia testified to this alibi at trial, it would not have exculpated him from the murder of Luis Morales, much less Rios. Such evidence would not meet the materiality element of a *Brady* claim.

Finally, as best can be gleaned from Garcia's testimony in this trial, Garcia stated that had he in fact been asked to testify in Plaintiff's criminal trial, he would have pled the Fifth, he did not want to testify. Tr. at 131:3-131:13, 171:17-171:21 ("If I would have been asked to testify I would have pled the Fifth"). Thus, even assuming Garcia had an actual alibi, and assuming he told the alibi to Guevara (neither of which was established by the evidence), no reasonable jury could find that disclosure of that "alibi" would have materially affected the result of Plaintiff's criminal trial.

At minimum, Guevara is entitled to qualified immunity as it was not clearly established in 1989 that Guevara's conduct under these circumstances would constitute a constitutional violation.

## IV. Guevara Is Entitled To Judgment As A Matter Of Law On Count XII Because The Evidence Of Garcia's Alleged Abuse Was Not Concealed.

Count XII alleges that Defendant Guevara concealed exculpatory evidence that he beat Garcia, "evidence that that would have established that Guevara had a pattern and practice of using physical and psychological coercion." Ex. A at Ct. XII. Garcia testified at trial that Guevara put a phone book on his head and started hitting him on the head in an attempt to get him to confess. Tr. at 122:7-122:17. Count XII is based on the allegation that this abuse by Guevara occurred and that Guevara failed to disclose it. Following the close of Plaintiff's case, however, Guevara is entitled

9

to judgment as a matter of law on this claim because the evidence established that this alleged abuse, if true, was not concealed for purposes of a *Brady* claim.

Garcia testified that while this alleged abuse was occurring, the Assistant State's Attorney was standing just outside the interview room watching. Tr. at 123:9-124:20 ("Officer O'Quinn was standing on the outside of the door watching. And the lady that said she was a State Attorney, she was sitting there too and didn't say nothing." "Q. And so Officer O'Quinn is outside, the lady State's Attorney is sitting there saying nothing, and is it Officer Guevara who is hitting you? A. Yes, Officer Guevara is the one."). Once prosecutors are aware of alleged *Brady* material, a police officer is no longer responsible for providing any such information to a criminal defendant. *Mims v. City of Chicago*, 155 F. 4th 970, 975 (7th Cir. 2025) ("Put another way, a criminal defendant generally cannot establish a *Brady* violation by pointing to a police failure to disclose exculpatory evidence if the prosecutor was aware of that evidence or obtained it from another source"). Under *Brady*, a police officer is obligated to turn over exculpatory or impeaching evidence to the prosecutor, who then has a duty to disclose that evidence to the defense. *Id.*; *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). The police can only be liable for a *Brady* violation if they conceal exculpatory evidence from the prosecution, thereby depriving the prosecution of the ability to disclose it. *Id*. In other words, once a prosecutor is aware of information that may be considered *Brady* material, it remains the responsibility of the prosecutor to provide this evidence to the defense not the police. *Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir. 2015); *Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012). Information known by one prosecutor "must be attributed" to other attorneys in the prosecutor's office (*see Giglio v. U.S.*, 405 U.S. 150, 154 (1972)), and "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or compartmentalizing information about different aspects of a case" (*Carey v. Duckworth*, 738 F.2d

875, 878 (7th Cir. 1984)). Further, "once the prosecution has the evidence, it is the prosecution's—not the officer's—duty to disclose it to the defense." *Moran v. Calumet City*, 54 F.4th 483, 493 (7th Cir. 2022). Accordingly, the fact that the ASA was present for the alleged beating of Garcia by Guevara is fatal to Plaintiff's *Brady* claim based on such allegedly concealed evidence.

Moreover, Plaintiff can point to no clearly established law in 1989 holding that officers had *Brady* obligations to affirmatively disclose the matters at issue, particularly when such information is already known to the prosecution. Specifically, it was not clearly established then, and still not now, that a police officer can be liable under the Due Process Clause to a criminal defendant for the alleged physical coercion of a witness. *Petty v. City of Chi.*, 754 F.3d 416, 422 (7th Cir. 2014) ("Although Petty may have used terms and phrases such as 'manufactured false evidence' and 'false identification,' when one closely examines the evidence, it is clear that his case is a coercion case. There is not one shred of evidence to suggest that CPD officers fabricated evidence, which would have been a due process violation. 'Manufactured false evidence' and 'false identification' are not magic talismans that will transform a coercion case into an evidence fabrication case and give rise to a cognizable claim where one does not exist.").

V. **Guevara Is Entitled To Judgment As A Matter Of Law On Plaintiff's Malicious Prosecution Claim Because There Was An Independent Basis For Probable Cause And Because Guevara Did Not "Commence Or Continue" The Prosecution.**

Defendant Guevara is also entitled to judgment as a matter of law on Plaintiff's state law malicious prosecution claim against Defendant Guevara. To establish a malicious prosecution claim under Illinois law, the plaintiff must prove "the absence of probable cause…" *Beaman v. Freesmeyer,* 2021 IL 125617, ¶ 74; *Colbert v. City of Chicago,* 851 F.3d 649, 655 (7th Cir. 2017). Probable cause is "an absolute bar to an action for malicious prosecution." *Burrell v. Sauk Village,* 2017 IL App (1st) 163392, ¶ 16 (quoting *Turner v. City of Chicago,* 91 Ill. App. 3d 931, 934-35

11

(1980)). Moreover, a defendant "commences or continues" a prosecution for purposes of a malicious prosecution claim only when the defendant was actively instrumental in causing the prosecution. JI 32. Plaintiff has failed to establish both of these elements at trial.

At trial, the criminal trial testimony of eye witness Luis Huertas was read into the record by Plaintiff as substantive evidence. Tr. at 460:14-502:4. The evidence revealed that, on July 7, 1989, Huertas identified Plaintiff as the shooter of Luis Morales in a lineup. Tr. at 482:6-484:16. Plaintiff also read in Huertas' deposition testimony from September 18, 2023. Tr. at 502:19-547:4. That testimony established, *inter alia*, that: (1) even today Huertas stands by his identification of Plaintiff as the shooter of Luis Morales (Tr. at 528:5-528:17, 531:15-531:25); (2) Heurtas never saw a photo of Rios prior to the lineup (or at any time) (Tr. at 536:18-536:21, 537:1-537:3); (3) Guevara never showed Huertas any photos of anyone (Tr. at 535:1-535:4); and (4) Guevara nor any other police officer ever told Huertas who to pick out of the lineup (Tr. at 528:25-529:2, 534:6-534:7, 541:15-541:22). While Huertas' May 2020 affidavit, written by Plaintiff's investigator and disavowed by Huertas, was referenced in that testimony, the only permissible purpose for the affidavit would be impeachment; it was not admitted into evidence. *See* Tr. at 530:9-538:3, 1848:22-1848:23. Thus, the only evidence in this case is that Luis Huertas identified Plaintiff as the shooter of Luis Morales on July 7, 1989 without any improper suggestion or coercion by Guevara or anyone else.

An eyewitness identification, even if questionable, is sufficient to create probable cause. *See, e.g., Moran v. Calumet City*, 54 F.4th 483, 499–500 (7th Cir. 2022); *Coleman v. City of Peorioa*, 925 F.3d 336, 351 (7th Cir. 2019); *see also Cairel v. Alderden,* 821 F.3d 823, 835 (7th Cir. 2016) (eyewitness identification provided probable cause to arrest, despite witness' hesitancy and inconsistencies with earlier descriptions); *Blackmon v. City of Chicago,* 700 F. Supp. 3d at 632

("The Seventh Circuit has repeatedly held that eyewitness identification creates probable cause, even if the identification is questionable or the officers subjectively doubt its accuracy." (collecting cases)), *rev'd on other grounds by Blackmon v. City of Chicago*, 132 F.4th 522 (7th Cir. 2025); *Holt v. City of Chicago,* 2022 IL App (1st) 220400, ¶69 (reports from purported victims or witnesses of crimes sufficient to establish probable cause); *People v. Maxey,* 2011 IL App (1st) 100011, ¶¶ 54-55; (information from victim or eyewitness to crime entitled to great weight in evaluating reliability for probable cause for arrest). Here, Plaintiff has introduced no evidence to impugn Huertas' identification of Plaintiff, and Huertas' identification is independently sufficient to establish probable cause, thereby defeating Plaintiff's malicious prosecution claim as a matter of law.

Moreover, there was no evidence elicited at trial that Guevara "commenced or continued" the prosecution of Plaintiff. Again, to satisfy this element of a malicious prosecution claim, Plaintiff must prove that Guevara was actively instrumental in causing Plaintiff's prosecution. JI 32. There is a presumption of prosecutorial independence, that is, that a prosecutor exercises independent judgment when deciding to charge someone with a crime and when deciding to continue prosecuting that charge, which is only overcome where a defendant improperly exerted pressure on the prosecutor, knowingly provided false information to the prosecutor, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution. *Id*. The trial prosecutor for Plaintiff's criminal trial, Anthony Carballo, testified that Guevara never attempted to lean on, pressure, or influence him regarding the decision to go forward with Plaintiff's prosecution.[2] He testified multiple times that the decision to charge and prosecute Plaintiff was that of the State's Attorneys Office alone. He further testified that the

---

[2] As of the writing of this Motion, Defendants do not have a copy of the transcript of Carballo's testimony on February 17, 2026.

confidential informants' information played no role in the decision to prosecute. Accordingly, Plaintiff has not introduced evidence in this case sufficient for a reasonable jury to find that Guevara "commenced" or "continued" Plaintiff's prosecution, and Guevara is entitled to judgment as a matter of law on Plaintiff's Malicious Prosecution claim.

WHEREFORE, Defendant Guevara prays this Honorable Court grant him Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a)(2) on Counts II, X, XI, XII, and XIII, and for whatever additional relief this Court deems just.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:    /s/ Graham P. Miller
          *Special Assistant Corporation Counsel*

Steven B. Borkan
Timothy P. Scahill
Graham P. Miller
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
*Attorneys for Reynaldo Guevara*